| AOC-105 Doc. Code: CI<br>Rev. 1-07<br>Page 1 of 1<br>Commonwealth of Kentucky<br>Court of Justice www.courts.ky.gov<br>CR 4.02; CR Official Form 1 | CIVIL SUMMONS | Case No. 15-CI-778<br>Court ☑ Circuit ☐ District<br>County Pike |
|---|---|---|

**PLAINTIFF**

Jennifer Bingham, as Executrix of the Estate of Helen Ray
P.O. Box 394

Mouthcard Kentucky 41548

**VS.**

**DEFENDANT**

SAK JR., LLC
200 Galleria Pkwy
Ste. 1800
Atlanta Georgia 30339
1st 5 of Zip

**Service of Process Agent for Defendant:**

CT Corporation System
306 W. Main Street
Suite 512
Frankfort Kentucky 40601

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or** by **an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: 8-4, 2015

ANNA PINSON SPEARS, Clerk

By: CW D.C.

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:

______________________________

this _____ day of ________________, 2______.

Served by: ______________________________

______________________________ Title

| AOC-105 Doc. Code: CI<br>Rev. 1-07<br>Page 1 of 1<br>Commonwealth of Kentucky<br>Court of Justice www.courts.ky.gov<br>CR 4.02; CR Official Form 1 | CIVIL SUMMONS | Case No. 15-CI-778<br>Court ☑ Circuit ☐ District<br>County Pike |
|---|---|---|

**PLAINTIFF**

Jennifer Bingham, as Executrix of the Estate of Helen Ray
P.O. Box 394

Mouthcard Kentucky 41548

**VS.**

**DEFENDANT**

SBK, LLC
3450 Ridgewood Rd.

Atlanta Georgia 30327

**Service of Process Agent for Defendant:**

CT Corporation System
306 W. Main Street
Suite 512
Frankfort Kentucky 40601

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or** by **an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: 8-4, 2015

ANNA PINSON SPEARS, Clerk

By: CW D.C.

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:

______________________________

this _____ day of ______________, 2_____.

Served by: ______________________________

______________________________ Title

| AOC-105 Doc. Code: CI<br>Rev. 1-07<br>Page 1 of 1<br>Commonwealth of Kentucky<br>Court of Justice www.courts.ky.gov<br>CR 4.02; CR Official Form 1 | CIVIL SUMMONS | Case No. 15-CI-778<br>Court ☑ Circuit ☐ District<br>County Pike |
|---|---|---|

**PLAINTIFF**

Jennifer Bingham, as Executrix of the Estate of Helen Ray
P.O. Box 394

Mouthcard Kentucky 41548

**VS.**

**DEFENDANT**

Life Care Centers of America, Inc.
3570 Keith Street, N.W.

Cleveland Tennessee 37311

**Service of Process Agent for Defendant:**
CSC Lawyers Incorporating Service Company
421 W. Main Street

Frankfort Kentucky 40601
City

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or** by **an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: 8-4, 2015 ANNA PINSON SPEARS Clerk

By: [signature] D.C.

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:

______________________________

this _____ day of ________________, 2______.

Served by: ______________________________

______________________________ Title

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 15-CI-778

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v. **COMPLAINT**

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA)
d/b/a MOUNTAIN VIEW HEALTH CARE CENTER
3450 Ridgewood Rd.
Atlanta, GA 30327 DEFENDANTS

Serve: CT Corporation System
306 W. Main Street
Suite 512
Frankfort, KY 40601

FILED
ANNA PINSON SPEARS
AUG - 4 2015
PIKE CIRCUIT/DISTRICT COURT
BY: D.C.

KENTUCKY MEDICAL INVESTORS, LLC (GA)
3450 Ridgewood Rd.
Atlanta, GA 30327

Serve: CT Corporation System
306 W. Main Street
Suite 512
Frankfort, KY 40601

KENTUCKY MEDICAL INVESTORS, LLC
8325 Highway 60.
P.O. Box 249
Georgetown, TN 37336-0249

Serve: National Registered Agents, Inc.
306 W. Main Street
Suite 512
Frankfort, KY 40601

KENTUCKY MEDICAL INVESTORS, L.T.D.
3450 Ridgewood Rd.
Atlanta, GA 30327

Serve: CT Corporation System
306 W. Main Street
Suite 512
Frankfort, KY 40601

SAK JR., LLC
200 Galleria Pkwy
Ste. 1800
Atlanta, GA 30339

Serve: CT Corporation System
306 W. Main Street
Suite 512
Frankfort, KY 40601

SBK, LLC
3450 Ridgewood Rd.
Atlanta, GA 30327

Serve: CT Corporation System
306 W. Main Street
Suite 512
Frankfort, KY 40601

LIFE CARE CENTERS OF AMERICA, INC.
3570 Keith Street, N.W.
Cleveland, TN 37311

Serve: CSC Lawyers Incorporating Service Company
421 W. Main Street
Frankfort, KY 40601

MISTY WARD, in her capacity as
Administrator of Mountain View Health Care Center
945 West Russell St.
Elkhorn City, KY 41522

Serve: Misty Ward
945 West Russell St.
Elkhorn City, KY 41522

JUDITH BRANHAM, in her capacity as
Administrator of Mountain View Health Care Center
945 West Russell St.
Elkhorn City, KY 41522

Serve: Judith Branham
945 West Russell St.
Elkhorn City, KY 41522

John Does 1 Through 5, Unknown Defendants

COMES NOW the Plaintiff, Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, and on behalf of the Wrongful Death Beneficiaries of Helen Ray, deceased, and for this cause of action against Defendants, Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center; Kentucky Medical Investors, LLC (GA); Kentucky Medical Investors, LLC; Kentucky Medical Investors, LTD; SAK JR., LLC; SBK, LLC; Life Care Centers of America, Inc.; Misty Ward, in her capacity as Administrator of Mountain View Health Care Center; Judith Branham, in her capacity as Administrator of Mountain View Health Care Center, and Unknown Defendants, states as follows:

1. Jennifer Bingham is the Executrix of the Estate of Helen Ray, deceased, as appointed by the Order of Pike County District Court, Probate Division, Case No. 14-P-00683 (attached hereto as Exhibit A) and therefore brings this action on behalf of Helen Ray, deceased, pursuant to the Survival of Actions Statute (KRS 411.140), and on behalf of the wrongful death beneficiaries of Helen Ray pursuant to the Wrongful Death Statute (KRS 411.130). Additionally, Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, brings this action on behalf of Helen Ray, pursuant to the Resident's Rights Statute (KRS 216.515, KRS 216.520) and common law.

2. Upon information and belief, Helen Ray was admitted as a resident of Kentucky

Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center located at 945 West Russell Street, Elkhorn City, Pike County, Kentucky 41522 on or around July 16, 2008 and, excepting periods of hospitalization, remained a resident there until her death on June 19, 2014. At all relevant times referenced herein, Helen Ray was of unsound mind and remained of unsound mind until her death.

3.    Defendant Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center is a Foreign Limited Liability Company with its principal office located at 3450 Ridgewood Rd., Atlanta, Fulton County, Georgia 30327 is authorized to do business in the Commonwealth of Kentucky. Upon information and belief, at times material this action, Defendant Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center owned, operated, managed, controlled, and /or provided services to Mountain View Health Care Center. Defendant Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center was, at times material to this action, the "licensee" of the facility. Under the laws and regulations promulgated and enforced by the Cabinet for Health and Family Services, as licensee of the facility, Defendant Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center was legally responsible for the facility and for ensuring compliance with all laws and regulations related to the operation of the facility. The causes of action made the basis of this suit arise out of such business conducted by said Defendant Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Helen Ray. The registered agent for service of process of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center is CT Corporation System, 306 W. Main Street, Ste. 512, Frankfort, Franklin County, Kentucky 40601.

4.    Defendant Kentucky Medical Investors, LLC (GA) is a Foreign Limited Liability Company with its principal office located at 3450 Ridgewood Rd., Atlanta, Fulton County, Georgia 30327. Upon information and belief, at times material to this action, Defendant Kentucky Medical Investors, LTD (GA) engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. At times material to this action, Defendant Kentucky Medical Investors, LTD (GA) owned, operated, managed, controlled, and/or provided services for nursing facilities, including Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in Elkhorn City, Pike County, Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant Kentucky Medical Investors, LTD (GA) in the ownership, operation, management, control and/or services provided for the facility during the residency of Helen Ray. The registered agent for service of process of Kentucky Medical Investors, LTD (GA) is CT Corporation System, 306 W. Main Street, Ste. 512, Frankfort, Franklin County, Kentucky 40601.

5.    Defendant Kentucky Medical Investors, LLC is a Foreign Limited Liability Company with its principal office located at 8325 Hwy 60, Bradley County, Georgetown, TN. Upon information and belief, at times material to this action, Defendant Kentucky Medical Investors, LLC engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. At times material to this action, Defendant Kentucky Medical Investors, LLC owned, operated, managed, controlled, and/or provided services for nursing facilities, including Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in Elkhorn City, Pike County, Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant Kentucky Medical Investors, LLC in the ownership, operation, management, control and/or services provided for the facility

during the residency of Helen Ray. The registered agent for service of process of Kentucky Medical Investors, LLC is National Registered Agents, Inc., 306 W. Main Street, Ste. 512, Frankfort, Franklin County, Kentucky 40601.

6.      Defendant Kentucky Medical Investors, LTD is a Foreign Limited Liability Company with its principal office located at 3450 Ridgewood Rd., Atlanta, Fulton County, Georgia 30327. Upon information and belief, at times material to this action, Defendant Kentucky Medical Investors, LTD engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. At times material to this action, Defendant Kentucky Medical Investors, LTD owned, operated, managed, controlled, and/or provided services for nursing facilities, including Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in Elkhorn City, Pike County, Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant Kentucky Medical Investors, LTD in the ownership, operation, management, control and/or services provided for the facility during the residency of Helen Ray. The registered agent for service of process of Kentucky Medical Investors, LTD is CT Corporation System, 306 W. Main Street, Ste. 512, Frankfort, Franklin County, Kentucky 40601.

7.      Defendant SAK JR., LLC is a Foreign Limited Liability Company with its principal office located at 200 Galleria Pkwy, Ste. 1800, Atlanta, Fulton County, Georgia 30339. Upon information and belief, at times material to this action, Defendant SAK JR., LLC engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. At times material to this action, Defendant SAK JR., LLC owned, operated, managed, controlled, and/or provided services for nursing facilities, including Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in Elkhorn City, Pike County,

Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant SAK JR., LLC in the ownership, operation, management, control and/or services provided for the facility during the residency of Helen Ray. The registered agent for service of process of SAK JR., LLC is CT Corporation System, 306 W. Main Street, Ste. 512, Frankfort, Franklin County, Kentucky 40601.

8.      Defendant SBK, LLC is a Foreign Limited Liability Company with its principal office located at 3450 Ridgewood Rd., Atlanta, Fulton County, Georgia 30327. Upon information and belief, at times material to this action, Defendant SBK, LLC engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. At times material to this action, Defendant SBK, LLC owned, operated, managed, controlled, and/or provided services for nursing facilities, including Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in Elkhorn City, Pike County, Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant SBK, LLC in the ownership, operation, management, control and/or services provided for the facility during the residency of Helen Ray. The registered agent for service of process of SBK, LLC is CT Corporation System, 306 W. Main Street, Ste. 512, Frankfort, Franklin County, Kentucky 40601.

9.      Defendant Life Care Centers of America, Inc. is a Foreign Corporation with its principal office located at 3570 Keith Street, Cleveland, Bradley County, TN 37312. Upon information and belief, at times material to this action, Defendant Life Care Centers of America, Inc. engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. At times material to this action, Defendant Life Care Centers of America, Inc. owned, operated, managed, controlled, and/or provided services for nursing

facilities, including Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in Elkhorn City, Pike County, Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant Life Care Centers of America, Inc. in the ownership, operation, management, control and/or services provided for the facility during the residency of Helen Ray. The registered agent for service of process of Life Care Centers of America, Inc. is CSC Lawyers Incorporating Service Company, 421 W. Main Street, Frankfort, Franklin County, Kentucky 40601.

10.    Upon information and belief, Defendant Misty Ward was an Administrator of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center during the residency of Helen Ray. The causes of action that make the basis of this suit arise out of Defendant, Misty Ward's administration of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center during the residency of Helen Ray. Defendant Misty Ward may be served as indicated in the caption.

11.    Upon information and belief, Defendant Judith Branham was an Administrator of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center during the residency of Helen Ray. The causes of action that make the basis of this suit arise out of Defendant, Judith Branham's administration of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center during the residency of Helen Ray. Defendant Judith Branham may be served as indicated in the caption.

12.    John Does 1 through 5, Unknown Defendants are entities and/or persons, either providing care and services to Helen Ray, or directly or vicariously liable for the injuries of Helen Ray. Plaintiff is currently unable to identify these Unknown Defendants, despite diligent efforts, but may discover such identities upon further investigation. Said Defendants are named

insofar as their acts and/or omissions were negligent, tortious or otherwise wrongful with respect to care, treatment and services to Helen Ray during her residency at Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center.

13.     Whenever the term "Nursing Home Defendants" is utilized within this suit, such term collectively refers to and includes Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center; Kentucky Medical Investors, LTD (GA); Kentucky Medical Investors, LLC; Kentucky Medical Investors, LTD; SAK JR, LLC, SBK, LLC, and Life Care Centers of America, Inc.

14.     Nursing Home Defendants controlled the operation, planning, management, budget and quality control of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center. The authority exercised by Nursing Home Defendants over the nursing facility included, but was not limited to, control of marketing, human resources management, training, staffing, creation, and implementation of all policy and procedure manuals used by the nursing facility, federal and state reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax and accounting control through fiscal policies established by Nursing Home Defendants.

15.     Whenever the term "Administrator Defendants" is utilized within this suit, such term collectively refers to and includes Misty Ward and Judith Branham.

16.     Whenever the term "Defendants" is utilized within this suit, such term collectively refers to and includes all named Defendants in this lawsuit.

17.     Jurisdiction and venue are proper in this Court.

## CAUSES OF ACTION AGAINST NURSING HOME DEFENDANTS

## FACTUAL ALLEGATIONS

18. Plaintiff incorporates all of the allegations contained in Paragraphs 1-17 as if fully set forth herein.

19. Helen Ray began residing at Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center (sometimes referred to as "the facility") on approximately July 16, 2008, and, other than periods of hospitalization, remained a resident there until her death on June 19, 2014.

20. Upon information and belief, Helen Ray was looking to the Nursing Home Defendants for treatment of her total needs for custodial, nursing and medical care and not merely as the situs where others not associated with the facility would treat her.

21. At all relevant times mentioned herein, Nursing Home Defendants owned, operated, managed, controlled and/or provided services for Mountain View Health Care Center, either directly, or through a joint enterprise, partnership and/or the agency of each other and/or other diverse subalterns, subsidiaries, governing bodies, agents, servants or employees.

22. Nursing Home Defendants are directly or vicariously liable for any acts and omissions by any person or entity, controlled directly or indirectly, including any governing body, officer, partner, employee, ostensible or apparent agent, consultant or independent contractor, whether in-house or outside individuals, entities, agencies or pools.

23. Nursing Home Defendants failed to discharge their obligations of care to Helen Ray with a conscious disregard for her rights and safety. At all times mentioned herein, Nursing Home Defendants, through their corporate officers and administrators, had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries suffered by

Helen Ray, as more fully set forth below. Nursing Home Defendants knew that this facility could not provide the minimum standard of care to the weak and vulnerable residents of Mountain View Health Care Center, including Helen Ray.

24. Nursing Home Defendants were on notice and aware of problems with resident care at Mountain View Health Care Center based on surveys conducted at the facility by the Cabinet for Health & Family Services prior to and during the residency of Helen Ray, yet failed to take appropriate action(s) to address and remedy said problems.

25. Due to the wrongful conduct of Nursing Home Defendants, Helen Ray suffered accelerated deterioration of her health and physical condition beyond that caused by the normal aging process, including , but not limited to, the following injuries:

a) Multiple falls with injuries;

b) Dehydration, weight loss and malnutrition;

c) Infections, including urinary tract infections and sepsis;

d) Pressure ulcers;

e) Bruises, blisters and burns of unknown origin;

f) Contractures; and

f) Death.

26. Helen Ray also suffered extreme pain and suffering, mental anguish, disability, disfigurement, hospitalizations, degradation, and unnecessary loss of personal dignity, all of which were caused by the wrongful conduct of Nursing Home Defendants as alleged herein.

**NEGLIGENCE**

27. Plaintiff re-alleges and incorporates all of the allegations contained in Paragraphs 1-26 as if fully set forth herein.

28.     Nursing Home Defendants owed a non-delegable duty to Helen Ray to provide the custodial care, services and supervision that a reasonably careful nursing home would provide under similar circumstances.

29.     Upon information and belief, Nursing Home Defendants knowingly developed and maintained staffing levels at the facility in disregard of patient acuity levels as well as the minimal time to perform the essential functions of providing care to Helen Ray.

30.     Nursing Home Defendants negligently failed to deliver care, services and supervision, including, but not limited to, the following acts and omissions:

a)      Failure by the members of the governing body of the facility to discharge their legal and lawful obligation by:

1)      ensuring compliance with the rules and regulations designed to protect the health and safety of the residents, such as Helen Ray, as promulgated by the Cabinet for Health and Family Services, Division of Long Term Care;

2)      ensuring compliance with the resident care policies for the facility; and

3)      ensuring that appropriate corrective measures were implemented to correct problems concerning inadequate resident care.

b)      Failure to develop, implement and follow policies to assist Helen Ray in attaining and maintaining the highest level of physical, mental and psychological well-being;

c)      Failure to maintain/provide all records on Helen Ray in accordance with accepted professional standards and practices;

d)      Failure to provide the minimum number of qualified personnel to meet the total needs of Helen Ray;

e)      Failure to provide adequate nursing staff and other personnel that was properly qualified and trained;

f)      Failure to ensure that Helen Ray  received adequate and proper care;

g)      Failure to protect the safety of Helen Ray;

h) Failure adequately, timely and appropriately educate and inform caregivers at the facility of the needs, level of assistance, and prescribed care and treatment for Helen Ray;

i) Failure to increase the number of personnel at the facility to ensure that Helen Ray received timely and appropriate custodial care, including, but not limited to, supervision;

j) Failure to have in place adequate guidelines, and policies and procedures of the facility and to administer those policies through enforcement of any rules, regulations, by-laws or guidelines;

k) Failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care at the facility;

l) Failure to provide a safe environment for care, treatment and recovery, and to exercise ordinary care and attention for the safety of Helen Ray in proportion to her particular physical and mental ailments, known or discoverable by the exercise of reasonable skill and diligence;

m) Failure to take all necessary and reasonable custodial measures to prevent the onset and progression of pressure sores during Helen Ray's residency; and

n) Failure to inform the physician and family of significant changes in condition.

31. A reasonably careful nursing facility would not have failed to provide the care listed above. It was foreseeable that these breaches of ordinary care would result in serious injuries to Helen Ray. With regard to each of the foregoing acts of negligence, Nursing Home Defendants acted with oppression, fraud, malice, or were grossly negligent by acting with wanton or reckless disregard for the health and safety of Helen Ray.

32. Nursing Home Defendants further breached their duty of care to Helen Ray by violating certain laws and regulations in force in the Commonwealth of Kentucky at the time of the occurrences discussed herein including, but not limited to, those detailed below. These violations by the Nursing Home Defendants are further evidence of their negligence and include, but are not limited to, violation(s) of the following:

a)    Violation(s) of KRS   209.005 *et seq.* and the regulations promulgated thereunder, by abuse, neglect and/or exploitation of Helen Ray;

b)    Violation(s) of KRS 508.090 *et seq.*, criminal abuse, by committing intentional, wanton or reckless abuse of Helen Ray, who was physically helpless or mentally helpless or permitting Helen Ray, a person of whom Nursing Home Defendants had actual custody, to be abused. Such abuse caused serious physical injury, placed Helen Ray in a situation that might cause her serious physical injury, and/or caused torture, cruel confinement or cruel punishment of Helen. Ray;

c)    Violation(s) of KRS 530.080 *et seq.*, endangering the welfare of an incompetent person, by knowingly acting in a manner which resulted in an injury to the physical and/or mental welfare of Helen Ray, who was unable to care for herself because of her illness;

d)    Violation(s) of KRS 506.080, criminal facilitation of criminal act(s), by acting with knowledge that another person or entity was committing one or more of the foregoing criminal acts or intending to commit one or more the foregoing criminal acts, and engaged in conduct which knowingly provided another person or entity the means or opportunity for the commission of such criminal act(s) and which in fact aided another person or entity to commit the criminal act(s); and/or

e)    Violation(s) of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services, pursuant to provisions of KRS Chapter 216 and the regulations promulgated thereunder, as well as the applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII or XIX of the Social Security Act.

33.    As a direct and proximate result of such grossly negligent, wanton or reckless conduct, Helen Ray suffered the injuries described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Nursing Home Defendants including, but not limited to, medical expenses, extreme pain and suffering, mental anguish, disability, disfigurement, hospitalization, unnecessary loss of personal dignity, and death, in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

## MEDICAL NEGLIGENCE

34. Plaintiff re-alleges and incorporates all of the allegations contained in Paragraphs 1-33 as if fully set forth herein.

35. Nursing Home Defendants had a duty to provide the standard of professional medical care and services of a reasonably competent nursing facility acting under the same and similar circumstances.

36. Nursing Home Defendants failed to meet applicable standards of medical care. The medical negligence or malpractice of Nursing Home Defendants included, but was not limited to, the following acts and omissions:

a) The overall failure to ensure that Helen Ray received the following:

1) timely and accurate care assessments;

2) prescribed treatment, medication and diet;

3) necessary supervision; and

4) timely nursing and medical intervention due to significant changes in condition.

b) Failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified uurse assistants and medication aides to meet the total needs of Helen Ray throughout her residency and provide a safe environment;

c) Failure to provide and implement an adequate nursing care plan based on the needs of Helen Ray;

d) Failure to provide care, treatment, diet, monitoring, assistance and medication in accordance with physician's orders;

e) Failure to assess the risk and prevent, treat or heal the development or skin issues including bruising, blisters and burns;

f) Failure to ensure Helen Ray was not deprived of the services necessary to maintain her health and welfare; and

g) Failure to inform the physician and family of significant changes in condition.

37. It was foreseeable that the breaches of care listed above would result in serious injuries Helen Ray. A reasonably competent nursing facility acting under the same or similar circumstances would not have failed to provide the care listed above.

38. With regard to each of the foregoing acts of professional or medical negligence, Nursing Home Defendants acted with oppression, fraud, malice, or were grossly negligent by acting with wanton or reckless disregard for the health and safety of Helen Ray.

39. As a direct and proximate result of such negligence, oppression, fraud, malice, or gross negligence, Helen Ray suffered the injuries described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Nursing Home Defendants including, but not limited to, medical expenses, extreme pain and suffering, mental anguish, disfigurement, hospitalizations, degradation, and unnecessary loss of personal dignity, in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court plus costs and all other relief to which Plaintiff is entitled by law.

## CORPORATE NEGLIGENCE

40. Plaintiff re-alleges and incorporates all of the allegations contained in Paragraphs 1 – 39 as if fully set forth herein.

41. Upon information and belief, Helen Ray was looking to Nursing Home Defendants' facility for treatment of her physical ailments and not merely as the situs where others not associated with the facility would treat her for her problems. There is a presumption that the treatment Helen Ray received was being rendered through employees of Nursing Home Defendants and that any negligence associated with that treatment would render Nursing Home Defendants responsible. Nursing Home Defendants, or persons or entities under their control, or

to the extent Nursing Home Defendants were vicariously liable through the ostensible or apparent agency of others, owed a non-delegable duty to residents, including Helen Ray, to use the degree and skill of care which is expected of reasonably competent medical practitioners acting in the same or similar circumstances.

42.    Nursing Home Defendants owed a non-delegable duty to assist Helen Ray in attaining and maintaining the highest level of physical, mental and psychological well-being.

43.    Nursing Home Defendants owed a duty to Helen Ray to maintain their facility, including providing and maintaining medical equipment and supplies, and hiring, supervising and retaining nurses and other staff employees to meets the needs of residents, including Helen Ray, and are directly liable for the failure to exercise reasonable care in hiring, supervising, training and retaining sufficient numbers of qualified nurses and other staff employees and caregivers during the residency of Helen Ray. Said failures placed the residents of the facility, including Helen Ray, at risk of harm, and a result, Nursing Home Defendants are directly liable for injuries suffered by Helen Ray as a result of these failures to exercise reasonable care.

44.    Nursing Home Defendants owed a duty to Helen Ray to have in place procedures and protocols that properly care for residents and to administer these policies through enforcement of any rules, regulations, by-laws or guidelines, which were adopted by Nursing Home Defendants to ensure smoothly run facilities and adequate resident care.

45.    Nursing Home Defendants owed a duty to Helen Ray to provide a safe environment, treatment and recovery, and to exercise ordinary care and attention for the safety of residents in proportion to the physical and mental ailments of each particular resident, known or discoverable by the exercise of reasonable skill and diligence. The duty of reasonable care and attention extended to safeguarding Helen Ray from danger due to her inability to care for herself.

Nursing Home Defendants had a duty to protect Helen Ray from any danger which the surroundings would indicate might befall her in view of any peculiar trait exhibited by her or which her condition or aberration would suggest as likely to happen.

46. With regard to each of the foregoing acts of negligence, Nursing Home Defendants acted with oppression, fraud, malice, or were grossly negligent by acting with wanton or reckless disregard for the health and safety of Helen Ray.

47. As a direct and proximate result of such negligence, oppression, fraud, malice, or gross negligence, Helen Ray suffered the injuries described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Nursing Home Defendants including, but not limited to, medical expenses, extreme pain and suffering, mental anguish, degradation, unnecessary loss of personal dignity, and death in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of the Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

## VIOLATIONS OF LONG TERM CARE RESIDENT'S RIGHTS

48. Plaintiff incorporates all of the allegations contained in Paragraphs 1 -47 as if fully set forth herein.

49. Nursing Home Defendants violated statutory duties owed to Helen Ray as a resident of a long term care facility, KRS 216.510 *et seq.* These statutory duties were non-delegable.

50. The violations of the resident's rights of Helen Ray include, but are not limited to, the following:

a) Violation of the right to be free from mental and physical abuse and neglect;

b)   Violation of the right to be treated with consideration, respect, and full recognition of her dignity and individuality, including privacy in treatment and in care for her personal needs;

c)   Violation of the right to have a responsible party or family member or her guardian to be informed of the resident's medical condition unless medically contraindicated and documented by a physician in the resident's medical record;

d)   Violation of the right to have a responsible party or family member or her guardian notified immediately of any accident, sudden illness, disease, unexplained absence, or anything unusual involving the resident;

e)   Violation of the right to have an adequate and appropriate resident care plan developed, implemented and updated to meet her needs; and

f)   Violation of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services, pursuant to provisions of KRS Chapter 216 and the regulations promulgated there under.

51.   As a result of the aforementioned violations of the Resident's Rights Statutes by Nursing Home Defendants, pursuant to KRS 216.515(26), Plaintiff is entitled to recover actual damages in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, as well as costs and attorney's fees.

52.   With regard to the aforementioned violations of the Resident's Rights Act, Nursing Home Defendants acted with oppression, fraud, malice, or were grossly negligent by acting with wanton and reckless disregard for the rights of Helen Ray and, pursuant to KRS 216.515(26), Plaintiff is entitled to punitive damages from Nursing Home Defendants in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, as well as costs and attorney's fees.

## CAUSE OF ACTION AGAINST ADMINISTRATOR DEFENDANTS

## FACTUAL ALLEGATIONS

53.     Plaintiff incorporates all of the allegations contained in Paragraph 1-52 as if fully set forth herein.

54.     Upon information and belief, Misty Ward and Judith Branham were Administrators of Mountain View Health Care Center during Helen Ray's residency there.

55.     As nursing home administrators licensed by the Commonwealth of Kentucky, Administrator Defendants owed ordinary duties of care to Helen Ray, as well as professional duties and statutory duties owed to residents by licensed, nursing home administrators in Kentucky, pursuant to the Nursing Home Administrators Licensure Act of 1970, codified as KRS sections 216A.010 *et seq*.

56.     As the holder(s) of the nursing home administrator's license, Administrator Defendants were legally and individually responsible for the operation of the facility and the welfare of its residents pursuant to Chapter 216A of the Kentucky Revised Statutes and Title 201, Chapter 6 of the Kentucky Administrative Regulations.

57.     Administrator Defendants were also responsible for the total management of the facility pursuant to federal law.

58.     Administrator Defendants' management responsibilities included ensuring that the facility operated and provided services in compliance with all applicable federal, state, and local laws, regulations, and codes, and within accepted professional standards and principles.

59.     Administrator Defendants were responsible for ensuring that the facility complied with state and federal regulations related to nursing facilities. Administrator Defendants had duties to administrate the facility in a manner that enabled it to use resources effectively and

efficiently to attain or maintain the highest practicable, physical, mental and psychological well-being of each resident. The nursing facility, under the leadership of its administrators, is also required to operate and provide services in compliance with all applicable federal, state and local laws, regulations and codes and with accepted professional standards and principles that apply to professionals providing services in such a facility. Administrator Defendants breached their duties of care to Helen Ray by failing to meet these requirements.

## NEGLIGENCE

60.    Plaintiff incorporates all of the allegations contained in Paragraph 1-59 as if fully set forth herein.

61.    As the administrators of the facility, Administrator Defendants owed a duty to the residents of Mountain View Health Care Center, including Helen Ray, to provide services as a reasonable administrator within accepted standards for nursing home administrators.

62.    Administrator Defendants breached their duties owed to the residents of Mountain View Health Care Center, including Helen Ray, during their tenure as administrators by failing to supervise nurses and nurses' aides and failing to hire sufficient nurses and nurses' aides and, as such, the nurses and nurses' aides were unable to provide Helen Ray the care she required. The negligence of Administrator Defendants includes, but is not limited to, the following acts and omissions:

    a)    Failure to monitor or provide the number of qualified nursing personnel at the facility to ensure that Helen Ray:

        1)    received timely and accurate care assessments;

        2)    received prescribed treatment, medication, and diet;

        3)    received timely custodial, nursing and medical intervention due to a significant change in condition; and

4)   was protected from injuries by the correct use of ordered and reasonable safety measures.

b)   Failure to adequately screen, evaluate, and test for competence in selecting personnel to work at the facility;

c)   Failure to ensure that Helen Ray was provided with basic and necessary care and supervision;

d)   Failure to ensure that Helen Ray received care, treatment, and medication as prescribed or in accordance with physician's orders;

e)   Failure to ensure that Helen Ray attained and maintained her highest level of physical, mental, and psychosocial well-being;

f)   Failure to ensure that Helen Ray was treated with the dignity and respect that all nursing home residents are entitled to receive;

g)   Failure to provide a safe environment for Helen Ray;

h)   Failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care at the facility;

i)   Failure to discipline or terminate employees at the facility assigned to Helen Ray that were known to be careless, incompetent, and unwilling to comply with the policy and procedures of the facility and the rules and regulations promulgated by the Cabinet for Health and Family Services;

j)   Failure to adopt adequate guidelines, policies, and procedures for:

    1)   investigating the relevant facts, underlying deficiencies, or licensure violations or penalties found to exist at the facility by the Cabinet for Health and Family Services or any other authority;

    2)   determining the cause of any such deficiencies, violations, or penalties;

    3)   establishing the method and means for correcting deficiencies or licensure violations or penalties found to exist at the facility;

    4)   determining whether the facility had sufficient numbers of personnel to meet the total needs of Helen Ray ; and,

    5)   documenting, maintaining files, investigating and responding to any complaint regarding the quality of resident care, or misconduct by employees at the facility, regardless of whether such complaint derived

from a resident of said facility, an employee of the facility, or any interested person.

k)    Failure to maintain all records on Helen Ray in accordance with accepted professional standards and practice that were complete, accurately documented, readily accessible, and systematically organized with respect to her diagnosis, treatment, and appropriate care plans of care and treatment.

l)    Failure to inform the physician and family of significant changes in condition.

m)   Failure to increase the number of personnel at the facility to ensure that Helen Ray received timely and appropriate custodial care, including, but not limited to, supervision.

n)    Failure to ensure that staff provided proper supervision, treatment, assessment and monitoring of Helen Ray in order to prevent falls with injuries, infections, skin issues and death

63.    A reasonably careful nursing home administrator would have foreseen that the failure to provide the ordinary care listed above would result in serious injuries to Helen Ray. Each of the foregoing acts of negligence on the part of Administrator Defendants were accompanied by such wanton or reckless disregard for the health and safety of Helen Ray as to constitute gross negligence.

64.    Additionally, Administrator Defendants failed to operate, manage or administer Mountain View Health Care Center in compliance with federal, state, and local laws, regulations, and codes intended to protect nursing home residents, including, but not limited to:

a)    Failure to ensure compliance with rules and regulations of the Cabinet for Health and Family Services, pursuant to Chapters 216, 216B and 13A of the Kentucky Revised Statutes and the administrative regulations promulgated there under, and the federal minimum standards imposed by the United States Department of Health and Human Services, 42 C.F.R. sections 405.301 *et seq.*;

b)    Failure to ensure compliance with laws and regulations promulgated by the Cabinet for Health and Family Services to provide the minimum number of staff necessary to assist Helen Ray  with her needs;

c) Failure to ensure compliance with law and regulations of the Board of Licensure for Nursing Home Administrators pursuant to the Nursing Home Administrators Licensure Act of 1970, Kentucky Revised Statutes sections 216A.010 *et seq.*;

d) Failure to provide the necessary care and services to attain or maintain the highest practicable, physical, mental, and psychosocial well-being of Helen Ray , and in accordance with the comprehensive assessment and plan of care created at the facility;

e) Failure to provide sufficient nursing staff and nursing personnel to provide adequate and appropriate nursing care to Helen Ray in accordance with the resident care plan generated at the facility;

f) Failure to administer the facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental and psychosocial well-being of Helen Ray .

g) Failure to ensure a nursing care plan based on Helen Ray 's problems and needs was established which contained measurable objectives and time tables to meet her medical, nursing, mental, and psychosocial needs as identified in her comprehensive assessment when Helen Ray's needs changed; and

h) Failure to notify Helen Ray 's family and physician of a need to alter her treatment significantly.

65. Helen Ray was member of a class intended to be protected by the above laws and regulations. The injuries alleged in Paragraph 25 resulted from events the laws and regulations were designed to prevent.

66. It was foreseeable that these breaches of statutory duties would result in serious injuries to Helen Ray. Each of the foregoing acts of negligence on the part of Administrator Defendants were accompanied by such wanton or reckless disregard for the health and safety of Helen Ray as to constitute gross negligence.

67. As a direct and proximate result of such negligent, grossly negligent, wanton, or reckless conduct, Helen Ray suffered the injuries described herein, and Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Administrator Defendants including, but not limited to, medical expenses, extreme pain and suffering, mental anguish,

disfigurement, hospitalizations, degradation, and unnecessary loss of personal dignity, in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

**CAUSES OF ACTION AGAINST ALL DEFENDANTS**
**WRONGFUL DEATH**

68. Plaintiff incorporates all of the allegations contained in Paragraphs 1-67.

69. As a direct and proximate result of the previously alleged conduct, all of which was grossly negligent, wanton or reckless, the Defendants caused the death of Helen Ray by their wrongful conduct.

70. Helen Ray suffered personal injuries, including excruciating pain and suffering, mental anguish, and emotional distress. The pain, disfigurement and loss of dignity suffered by Helen Ray caused her family to suffer more than normal grief upon her death.

71. As a direct and proximate result of such wrongful death suffered by Helen Ray, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against the Defendants including, but not limited to, medical expenses, funeral expenses and other related costs, pain and suffering, the grief suffered by statutory beneficiaries, mental anguish, disability and loss of life in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court, as well as cost and attorney's fees, plus costs and all other relief to which Plaintiff is entitled by law.

**DAMAGES**

72. Plaintiff incorporates all of the allegations contained in Paragraphs 1-69 as if fully set forth herein.

73. As a direct and proximate result of the negligence of all Defendants as set out above, Helen Ray suffered injuries including, but not limited to, those listed herein. As a result, Helen Ray incurred significant medical expenses, and suffered embarrassment and, physical impairment, and incurred funeral expenses.

74. Plaintiff seeks punitive and compensatory damages against all Defendants in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, and on behalf of the Wrongful Death Beneficiaries of Helen Ray, deceased, prays for judgment against Defendants, Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center; Kentucky Medical Investors, LTD (GA); Kentucky Medical Investors, LLC; Kentucky Medical Investors, LTD; SAK JR., LLC; SBK, LLC; Life Care Centers of America, Inc.; Misty Ward, in her capacity as Administrator of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center; Judith Branham, in her capacity as Administrator of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center, and Unknown Defendants; in an amount to be determined from the evidence, the costs herein expended, and all other relief to which Plaintiff is entitled, including TRIAL BY JURY.

*Respectfully Submitted,*

**GARCIA, ARTIGLIERE & MEDBY**

M. Brandon Faulkner
220 West Main Street, Suite 2250
Louisville, Kentucky 40202
Telephone:(502) 584-3805
Facsimile:(502) 584-3811
***Attorneys for Plaintiff***

778

FILED
ANNA PINSON SPEARS
AUG 10 2015
PIKE CIRCUIT/DISTRICT COURT
BY: D.C.

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Judith Branham, Administrator
945 West Russell Street
Elkhorn City, KY 41522

9590 9403 0331 5155 8682 33

2. Article Number (Transfer from service label)

7015 0640 0001 2084 9087

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by (Printed Name) C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

15-CI-778

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt



FILED
ANNA PINSON SPEARS
AUG 10 2015
PIKE CIRCUIT/DISTRICT COURT
BY: D.C.

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Misty Ward, Administrator
945 W. Russell Street
Elkhorn City, KY 41522

9590 9403 0331 5155 8682 26

2. Article Number *(Transfer from service label)*

7015 0640 0001 2084 9094

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by *(Printed Name)* C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

15-CI-778

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☒ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Return Receipt for Merchandise
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 15-CI-00778

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFF

v.

**NOTICE OF ENTRY OF APPEARANCE OF COUNSEL**

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER, et al.

DEFENDANTS

*** *** ***

Notice is hereby given of the entry of appearance of Stephen M. Garcia ("Mr. Garcia"), with the law firm of Garcia, Artigliere & Medby, as an additional attorney of record for the Plaintiff in the above-referenced matter. Please be advised Mr. Garcia was admitted to the Kentucky Bar Association on August 24, 2015 and shall serve as trial counsel for any trial scheduled in this matter.

*Respectfully submitted,*

**GARCIA ARTIGLIERE & MEDBY**

Stephen M. Garcia
M. Brandon Faulkner
220 West Main Street, Suite 2250
Louisville, Kentucky 40202
Telephone: 502.584.3805
Facsimile: 502.584.3811
***Attorneys for Plaintiff***

**CERTIFICATE OF SERVICE**

This is to certify the original copy of the foregoing was sent via first class, United States mail, postage prepaid to **Clerk, Pike County Circuit Court, P.O. Box 1002, Pikeville, Kentucky 41502**, and a true and correct copy of the foregoing mailedthis 31st day of August, 2015 to the following:

J. Peter Cassidy, III
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
PH: 859.226.0057
Fax: 859.226.0059
*Counsel for Defendants*

*Counsel for Plaintiff*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the ESTATE of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v. **ANSWER**

FILED
ANNA PINSON SPEARS
SEP 04 2015
PIKE CIRCUIT/DISTRICT COURT
BY: D.C.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER; KENTUCKY MEDICAL INVESTORS, LLC (GA); KENTUCKY MEDICAL INVESTORS, LLC; KENTUCKY MEDICAL INVESTORS, LTD.; SAK JR., LLC; SBK, LLC; LIFE CARE CENTERS OF AMERICA, INC.; MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; JUDITH BRANHAM in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * * * *

Defendant, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View"), for its Answer to Plaintiff's Complaint, states as follows:

**FIRST DEFENSE**

Plaintiff's Complaint fails, in whole or in part, to state a claim for which relief can be granted.

**SECOND DEFENSE**

This Answering Defendant affirmatively pleads under CR 9.01 that Plaintiff lacks capacity to sue. Further, Plaintiff is not the real party in interest under CR 17 and has failed to join an indispensable party under CR 19, therefore exposing Mountain View to the risk of multiple and inconsistent judgments, and Plaintiff's Complaint should therefore be dismissed on that basis.

**THIRD DEFENSE**

Under KRS §216.515, Kentucky's Resident's Rights Statute, Plaintiff lacks standing to bring this action. Plaintiff is neither the resident, nor is the guardian of Helen Ray seeking to enforce the resident's rights, which rights do not survive her death. Further, under CR 17, Plaintiff is not the real party in interest to bring any claim under KRS §216.515. Finally, KRS §216.515 applies only to long-term care facilities, as that term is defined in KRS §216.510.

**FOURTH DEFENSE**

Subject to what discovery may reveal, the claims in this lawsuit are subject to a binding Voluntary Agreement for Arbitration, requiring dismissal of this action pursuant to 9 U.S.C. §2 and KRS §417.050, which state that a written arbitration agreement is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract

**FIFTH DEFENSE**

As to the numbered paragraphs of Plaintiff's Complaint, Mountain View states as follows:

1. Mountain View denies the allegations contained in Paragraph 1 of Plaintiff's Complaint.

2. With respect to the allegations contained in Paragraph 2 of Plaintiff's Complaint, Mountain View admits that Helen Ray admitted as a resident of Mountain View Health Care

Center, 945 W. Russell St., Elkhorn City, Pike County, KY 41522, and that she died on June 19, 2014, but denies all remaining allegations contained in Paragraph 2 of Plaintiff's Complaint at this time for want of knowledge.

3.      With respect to the allegations contained in Paragraph 3 of Plaintiff's Complaint, Mountain View admits that Kentucky Medical Investors, LLC is a foreign limited liability company authorized to transact business in the Commonwealth of Kentucky as Kentucky Medical Investors, LLC (GA), that its principal office is located at 3450 Ridgewood Rd., Atlanta, Fulton County, GA 30327, that its registered agent for service of process in this Commonwealth is CT Corporation System, 306 W. Main St., Ste. 512, Frankfort, Franklin County, KY 40601, that it holds the license from the Commonwealth of Kentucky to operate Mountain View Health Care Center, and that it has reserved the assumed name of Mountain View Health Care Center with the Kentucky Secretary of State, but denies all remaining allegations contained in Paragraph 3 of Plaintiff's Complaint.

4.      With respect to the allegations contained in Paragraph 4 of Plaintiff's Complaint, Mountain View admits that Kentucky Medical Investors, LLC is a foreign limited liability company authorized to transact business in the Commonwealth of Kentucky as Kentucky Medical Investors, LLC (GA), and that its principal office is located at 3450 Ridgewood Rd., Atlanta, Fulton County, GA 30327, but denies all remaining allegations contained in Paragraph 4 of Plaintiff's Complaint.

5.      With respect to the allegations contained in Paragraph 5 of Plaintiff's Complaint, Mountain View states that the allegations contained in this paragraph are not directed towards Mountain View, so that no response to this paragraph is necessary. To the extent these allegations may be construed against Mountain View, the same are denied.

6. With respect to the allegations contained in Paragraph 6 of Plaintiff's Complaint, Mountain View admits and affirmatively states that Kentucky Medical Investors, LTD was a foreign limited partnership but that it no longer exits, having been converted to Kentucky Medical Investors, LLC, a Georgia limited liability company authorized to transact business in the Commonwealth of Kentucky as Kentucky Medical Investors, LLC (GA), but denies all remaining allegations contained in Paragraph 6 of Plaintiff's Complaint.

7. With respect to the allegations contained in Paragraph 7 of Plaintiff's Complaint, Mountain View states that the allegations contained in this paragraph are not directed towards Mountain View, so that no response to this paragraph is necessary. To the extent these allegations may be construed against Mountain View, the same are denied.

8. With respect to the allegations contained in Paragraph 8 of Plaintiff's Complaint, Mountain View states that the allegations contained in this paragraph are not directed towards Mountain View, so that no response to this paragraph is necessary. To the extent these allegations may be construed against Mountain View, the same are denied.

9. With respect to the allegations contained in Paragraph 9 of Plaintiff's Complaint, Mountain View states that the allegations contained in this paragraph are not directed towards Mountain View, so that no response to this paragraph is necessary. To the extent these allegations may be construed against Mountain View, the same are denied.

10. Mountain View denies any and all allegations set forth in Paragraph 10 of Plaintiff's Complaint.

11. With respect to the allegations contained in Paragraph 11 of Plaintiff's Complaint, Mountain View admits that Judith Branham was the Administrator of Mountain View Health

Care Center during a portion of the residency of Helen Ray, but denies all remaining allegations contained in Paragraph 11 of Plaintiff's Complaint.

12.    Mountain View denies the allegations contained in Paragraph 12 of Plaintiff's Complaint for want of knowledge. To the extent the allegations contained in Paragraph 12 relate to Mountain View, the allegations are specifically denied.

13.    Paragraph 13 of Plaintiff's Complaint alleges a stylistic description to which an Answer is not required. To the extent an Answer is deemed required these allegations should be considered denied or avoided.

14.    The allegations contained in Paragraph 14 of Plaintiff's Complaint state pure legal conclusions that should be taken as denied or avoided.

15.    Paragraph 15 of Plaintiff's Complaint alleges a stylistic description to which an Answer is not required. To the extent an Answer is deemed required these allegations should be considered denied or avoided.

16.    Paragraph 16 of Plaintiff's Complaint alleges a stylistic description to which an Answer is not required. To the extent an Answer is deemed required these allegations should be considered denied or avoided.

17.    Mountain View denies any and all allegations set forth in Paragraph 17 of Plaintiff's Complaint.

18.    With respect to Paragraph 18 of Plaintiff's Complaint, Mountain View reincorporates by reference as if fully stated herein Paragraphs 1 through 17 of this Answer.

19.    With respect to the allegations contained in Paragraph 19 of Plaintiff's Complaint, Mountain View admits that Helen Ray admitted as a resident of Mountain View Health Care

Center and that she died on June 19, 2014, but denies all remaining allegations contained in Paragraph 19 of Plaintiff's Complaint at this time for want of knowledge.

20.    Mountain View denies the allegations contained in Paragraph 20 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

21.    With respect to the allegations contained in Paragraph 21 of Plaintiff's Complaint, Mountain View admits that it holds the license to operate Mountain View Health Care Center from the Commonwealth of Kentucky, but denies all remaining allegations contained in Paragraph 21 of Plaintiff's Complaint.

22.    Mountain View denies the allegations contained in Paragraph 22 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

23.    Mountain View denies the allegations contained in Paragraph 23 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

24.    Mountain View denies the allegations contained in Paragraph 24 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

25.     Mountain View denies the allegations contained in Paragraph 25 of Plaintiff's Complaint as directed towards Mountain View, including but not limited to subparagraphs a) through f). To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

26.     Mountain View denies the allegations contained in Paragraph 26 of Plaintiff's Complaint as directed towards Mountain View.  To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

27.     With respect to Paragraph 27 of Plaintiff's Complaint, Mountain View reincorporates by reference as if fully stated herein Paragraphs 1 through 26 of this Answer.

28.     The allegations contained in Paragraph 28 of Plaintiff's Complaint state pure legal conclusions that should be taken as denied or avoided.

29.     Mountain View denies the allegations contained in Paragraph 29 of Plaintiff's Complaint as directed towards Mountain View.  To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

30.     Mountain View denies the allegations contained in Paragraph 30 of Plaintiff's Complaint as directed towards Mountain View, including but not limited to subparagraphs a) through n). To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

31.     Mountain View denies the allegations contained in Paragraph 31 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are

directed towards other Defendants, no response to those allegations from Mountain View is necessary.

32.     Mountain View denies the allegations contained in Paragraph 32 of Plaintiff's Complaint as directed towards Mountain View, including but not limited to subparagraphs a) through e). To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

33.     Mountain View denies the allegations contained in Paragraph 33 of Plaintiff's Complaint as directed towards Mountain View.  To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

34.     With respect to Paragraph 34 of Plaintiff's Complaint, Mountain View reincorporates by reference as if fully stated herein Paragraphs 1 through 33 of this Answer.

35.     The allegations contained in Paragraph 35 of Plaintiff's Complaint state pure legal conclusions that should be taken as denied or avoided.

36.     Mountain View denies the allegations contained in Paragraph 36 of Plaintiff's Complaint as directed towards Mountain View, including but not limited to subparagraphs a) through g). To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

37.     Mountain View denies the allegations contained in Paragraph 37 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

38.    Mountain View denies the allegations contained in Paragraph 38 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

39.    Mountain View denies the allegations contained in Paragraph 39 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

40.    With respect to Paragraph 40 of Plaintiff's Complaint, Mountain View reincorporates by reference as if fully stated herein Paragraphs 1 through 39 of this Answer.

41.    Mountain View denies the allegations contained in Paragraph 41 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

42.    Mountain View denies the allegations contained in Paragraph 42 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

43.    Mountain View denies the allegations contained in Paragraph 43 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

44.    Mountain View denies the allegations contained in Paragraph 44 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

45.    Mountain View denies the allegations contained in Paragraph 45 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

46.    Mountain View denies the allegations contained in Paragraph 46 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

47.    Mountain View denies the allegations contained in Paragraph 47 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

48.    With respect to Paragraph 48 of Plaintiff's Complaint, Mountain View reincorporates by reference as if fully stated herein Paragraphs 1 through 47 of this Answer.

49.    Mountain View denies the allegations contained in Paragraph 49 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

50.    Mountain View denies the allegations contained in Paragraph 50 of Plaintiff's Complaint as directed towards Mountain View, including but not limited to subparagraphs a) through f). To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

51.    Mountain View denies the allegations contained in Paragraph 51 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

52.    Mountain View denies the allegations contained in Paragraph 52 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

53.    With respect to Paragraph 53 of Plaintiff's Complaint, Mountain View reincorporates by reference as if fully stated herein Paragraphs 1 through 52 of this Answer.

54.    With respect to the allegations contained in Paragraph 54 of Plaintiff's Complaint, Mountain View states that the allegations contained in this paragraph are not directed towards Mountain View, so that no response to this paragraph is necessary.  To the extent these allegations may be construed against Mountain View, the same are denied.

55.    With respect to the allegations contained in Paragraph 55 of Plaintiff's Complaint, Mountain View states that the allegations contained in this paragraph are not directed towards Mountain View, so that no response to this paragraph is necessary.  To the extent these allegations may be construed against Mountain View, the same are denied.

56.     With respect to the allegations contained in Paragraph 56 of Plaintiff's Complaint, Mountain View states that the allegations contained in this paragraph are not directed towards Mountain View, so that no response to this paragraph is necessary.    To the extent these allegations may be construed against Mountain View, the same are denied.

57.     With respect to the allegations contained in Paragraph 57 of Plaintiff's Complaint, Mountain View states that the allegations contained in this paragraph are not directed towards Mountain View, so that no response to this paragraph is necessary.    To the extent these allegations may be construed against Mountain View, the same are denied.

58.     With respect to the allegations contained in Paragraph 58 of Plaintiff's Complaint, Mountain View states that the allegations contained in this paragraph are not directed towards Mountain View, so that no response to this paragraph is necessary.    To the extent these allegations may be construed against Mountain View, the same are denied.

59.     With respect to the allegations contained in Paragraph 59 of Plaintiff's Complaint, Mountain View states that the allegations contained in this paragraph are not directed towards Mountain View, so that no response to this paragraph is necessary.    To the extent these allegations may be construed against Mountain View, the same are denied.

60.     With respect to Paragraph 60 of Plaintiff's Complaint, Mountain View reincorporates by reference as if fully stated herein Paragraphs 1 through 59 of this Answer.

61.     With respect to the allegations contained in Paragraph 61 of Plaintiff's Complaint, Mountain View states that the allegations contained in this paragraph are not directed towards Mountain View, so that no response to this paragraph is necessary.    To the extent these allegations may be construed against Mountain View, the same are denied.

62.    With respect to the allegations contained in Paragraph 62 of Plaintiff's Complaint, Mountain View states that the allegations contained in this paragraph are not directed towards Mountain View, so that no response to this paragraph is necessary.    To the extent these allegations may be construed against Mountain View, the same are denied, including but not limited to subparagraphs a) through n).

63.    With respect to the allegations contained in Paragraph 63 of Plaintiff's Complaint, Mountain View states that the allegations contained in this paragraph are not directed towards Mountain View, so that no response to this paragraph is necessary.    To the extent these allegations may be construed against Mountain View, the same are denied.

64.    With respect to the allegations contained in Paragraph 64 of Plaintiff's Complaint, Mountain View states that the allegations contained in this paragraph are not directed towards Mountain View, so that no response to this paragraph is necessary.    To the extent these allegations may be construed against Mountain View, the same are denied, including but not limited to subparagraphs a) through h).

65.    With respect to the allegations contained in Paragraph 65 of Plaintiff's Complaint, Mountain View states that the allegations contained in this paragraph are not directed towards Mountain View, so that no response to this paragraph is necessary.    To the extent these allegations may be construed against Mountain View, the same are denied.

66.    With respect to the allegations contained in Paragraph 66 of Plaintiff's Complaint, Mountain View states that the allegations contained in this paragraph are not directed towards Mountain View, so that no response to this paragraph is necessary.    To the extent these allegations may be construed against Mountain View, the same are denied.

67.    With respect to the allegations contained in Paragraph 67 of Plaintiff's Complaint, Mountain View states that the allegations contained in this paragraph are not directed towards Mountain View, so that no response to this paragraph is necessary.    To the extent these allegations may be construed against Mountain View, the same are denied.

68.    With respect to Paragraph 68 of Plaintiff's Complaint, Mountain View reincorporates by reference as if fully stated herein Paragraphs 1 through 67 of this Answer.

69.    Mountain View denies the allegations contained in Paragraph 69 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

70.    Mountain View denies the allegations contained in Paragraph 70 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

71.    Mountain View denies the allegations contained in Paragraph 71 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

72.    With respect to Paragraph 72 of Plaintiff's Complaint, Mountain View reincorporates by reference as if fully stated herein Paragraphs 1 through 69 of this Answer.

73.    Mountain View denies the allegations contained in Paragraph 73 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are

directed towards other Defendants, no response to those allegations from Mountain View is necessary.

74. Mountain View denies the allegations contained in Paragraph 74 of Plaintiff's Complaint as directed towards Mountain View. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Mountain View is necessary.

69. Mountain View denies any and all allegations contained in Plaintiff's Complaint which have not specifically been admitted to above.

**SIXTH DEFENSE**

Mountain View pleads any and all applicable CR 8.03 affirmative defenses as if set forth at length herein, including but not limited to arbitration and award, assumption of risk, contributory negligence, estoppel, laches, and statute of limitations.

**SEVENTH DEFENSE**

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any are found were caused in whole or in part by Plaintiff's contributory and/or comparative negligence by reason of her failure to use the degree of care which would have been used by an ordinary, reasonable and prudent person under the same or similar circumstances. Any damages to which Plaintiffs may be found to be entitled are barred and should be reduced in proportion to the amount of fault attributable to Plaintiff or Plaintiff's decedent. Subject to what discovery may reveal, the negligence of Plaintiff and/or Helen Ray proximately caused, contributed to, and was a substantial factor in causing the injuries and damages, if any, alleged in the Complaint.

**EIGHTH DEFENSE**

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any occurred, were caused in whole or in part by the primary, active, superseding, intervening negligence and/or intentional acts of Plaintiff and/or persons or entities other than Mountain View for which Mountain View has no liability or responsibility and which were the proximate cause and/or a substantial factor in causing said injuries and damages, if any, and Plaintiff's claims are, therefore, barred or should be reduced in proportion to the fault attributable to persons other than Mountain View.

**NINTH DEFENSE**

Plaintiff's claim for punitive damages is barred by the provisions of KRS §411.184 and the prohibition against excessive fines contained in the 8th Amendment to the United States Constitution, by the Due Process Clause of the 14th Amendment to the United States Constitution, as well as §§ 2 and 14 of the Kentucky Constitution. The substantive proof of, and the procedures set out in Kentucky's punitive damages system, violate the Due Process Clause of the 14th Amendment of the United States Constitution and provisions of the Kentucky Constitution.

**TENTH DEFENSE**

The conduct of Mountain View was not the proximate cause or a substantial factor in causing any of the injuries or damage, if any occurred, alleged by Plaintiff.

**ELEVENTH DEFENSE**

To the extent that there exists any person or entity who has paid any amounts to or for the benefit of Plaintiff or Plaintiff's representative on account of events or injuries or damages alleged in the Complaint and who have not been properly notified of their subrogation rights,

Plaintiff has failed to comply with KRS §411.188 and the Complaint is barred. Alternatively, Plaintiff is precluded from recovery of amounts which are the subject of subrogation rights. Moreover, to the extent such person or entity exists, Plaintiff is not the real party in interest to the extent of any such payment.

**TWELFTH DEFENSE**

Plaintiff has failed to plead special damages, if any, with specificity as required by Rule 9.6 of the Kentucky Rules of Civil Procedure and any claims for special damages are therefore barred.

**THIRTEENTH DEFENSE**

Mountain View reserves all defenses related to insufficiency of process or service of process.

**FOURTEENTH DEFENSE**

Subject to what discovery may reveal, Plaintiff consented, either expressly or impliedly to any and all care, contact or actions taken by Mountain View or its employees.

**FIFTEENTH DEFENSE**

Subject to what discovery may reveal, Mountain View reserves the right to contend that Plaintiff did not properly mitigate damages.

**SIXTEENTH DEFENSE**

Mountain View reserves the right to supplement this Answer and plead any and all additional defenses and affirmative defenses that arise during the course of the litigation.

WHEREFORE, Defendant, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA), demands as follows:

1. Dismissal of Plaintiff's Complaint;

2. Its costs, expenses and attorney's fees as allowed by law; and

3. Any and all other relief to which it may appear entitled.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

J. Peter Cassidy, III, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this 2nd day of September, 2015, upon the following, via U.S. Mail:

M. Brandon Faulkner, Esq.
Garcia, Artigliere & Medby
220 W. Main St., Ste. 2250
Louisville, KY 40202

Kentucky Medical Investors, LLC
National Registered Agents, Inc.
306 W. Main St., Ste. 512
Frankfort, KY 40601

Misty Ward
945 W. Russell St.
Elkhorn City, KY 41522

Judith Branham
945 W. Russell St.
Elkhorn City, KY 41522

ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the ESTATE of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v. **ANSWER**

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * * * *

Defendant, Life Care Centers of America, Inc. (hereinafter "Life Care"), for its Answer to Plaintiff's Complaint, states as follows:

**FIRST DEFENSE**

Plaintiff's Complaint fails, in whole or in part, to state a claim for which relief can be granted.

**SECOND DEFENSE**

This Answering Defendant affirmatively pleads under CR 9.01 that Plaintiff lacks capacity to sue. Further, Plaintiff is not the real party in interest under CR 17 and has failed to

join an indispensable party under CR 19, therefore exposing Life Care to the risk of multiple and inconsistent judgments, and Plaintiff's Complaint should therefore be dismissed on that basis.

**THIRD DEFENSE**

Under KRS §216.515, Kentucky's Resident's Rights Statute, Plaintiff lacks standing to bring this action. Plaintiff is neither the resident, nor is the guardian of Helen Ray seeking to enforce the resident's rights, which rights do not survive her death. Further, under CR 17, Plaintiff is not the real party in interest to bring any claim under KRS §216.515. Finally, KRS §216.515 applies only to long-term care facilities, as that term is defined in KRS §216.510.

**FOURTH DEFENSE**

Subject to what discovery may reveal, the claims in this lawsuit are subject to a binding Voluntary Agreement for Arbitration, requiring dismissal of this action pursuant to 9 U.S.C. §2 and KRS §417.050, which state that a written arbitration agreement is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract

**FIFTH DEFENSE**

As to the numbered paragraphs of Plaintiff's Complaint, Life Care states as follows:

1. Life Care denies the allegations contained in Paragraph 1 of Plaintiff's Complaint.

2. With respect to the allegations contained in Paragraph 2 of Plaintiff's Complaint, Life Care admits that Helen Ray admitted as a resident of Mountain View Health Care Center, 945 W. Russell St., Elkhorn City, Pike County, KY 41522, and that she died on June 19, 2014, but denies all remaining allegations contained in Paragraph 2 of Plaintiff's Complaint at this time for want of knowledge.

3. With respect to the allegations contained in Paragraph 3 of Plaintiff's Complaint, Life Care states that the allegations contained in this paragraph are not directed towards Life Care, so

that no response to this paragraph is necessary. To the extent these allegations may be construed against Life Care, the same are denied.

4.      With respect to the allegations contained in Paragraph 4 of Plaintiff's Complaint, Life Care states that the allegations contained in this paragraph are not directed towards Life Care, so that no response to this paragraph is necessary. To the extent these allegations may be construed against Life Care, the same are denied.

5.      With respect to the allegations contained in Paragraph 5 of Plaintiff's Complaint, Life Care states that the allegations contained in this paragraph are not directed towards Life Care, so that no response to this paragraph is necessary. To the extent these allegations may be construed against Life Care, the same are denied.

6.      With respect to the allegations contained in Paragraph 6 of Plaintiff's Complaint, Life Care states that the allegations contained in this paragraph are not directed towards Life Care, so that no response to this paragraph is necessary. To the extent these allegations may be construed against Life Care, the same are denied.

7.      With respect to the allegations contained in Paragraph 7 of Plaintiff's Complaint, Life Care states that the allegations contained in this paragraph are not directed towards Life Care, so that no response to this paragraph is necessary. To the extent these allegations may be construed against Life Care, the same are denied.

8.      With respect to the allegations contained in Paragraph 8 of Plaintiff's Complaint, Life Care states that the allegations contained in this paragraph are not directed towards Life Care, so that no response to this paragraph is necessary. To the extent these allegations may be construed against Life Care, the same are denied.

9. With respect to the allegations contained in Paragraph 9 of Plaintiffs' Complaint, Life Care admits that Defendant, Life Care Centers of America, Inc., is a foreign corporation with its principal office located at 3570 Keith St., NW, Cleveland, Bradley County, TN, that its agent for service of process in Kentucky is CSC-Lawyers Incorporating Service Company, 421 West Main St., Frankfort, Franklin County, KY 40601, and that it manages Mountain View Health Care Center in Elkhorn City, Pike County, Kentucky, but denies all remaining allegations contained in Paragraph 9 of Plaintiffs' Complaint.

10. Life Care denies any and all allegations set forth in Paragraph 10 of Plaintiff's Complaint.

11. With respect to the allegations contained in Paragraph 11 of Plaintiff's Complaint, Life Care admits that Judith Branham was the Administrator of Mountain View Health Care Center during a portion of the residency of Helen Ray, but denies all remaining allegations contained in Paragraph 11 of Plaintiff's Complaint.

12. Life Care denies the allegations contained in Paragraph 12 of Plaintiff's Complaint for want of knowledge. To the extent the allegations contained in Paragraph 12 relate to Life Care, the allegations are specifically denied.

13. Paragraph 13 of Plaintiff's Complaint alleges a stylistic description to which an Answer is not required. To the extent an Answer is deemed required these allegations should be considered denied or avoided.

14. The allegations contained in Paragraph 14 of Plaintiff's Complaint state pure legal conclusions that should be taken as denied or avoided.

15.    Paragraph 15 of Plaintiff's Complaint alleges a stylistic description to which an Answer is not required.  To the extent an Answer is deemed required these allegations should be considered denied or avoided.

16.    Paragraph 16 of Plaintiff's Complaint alleges a stylistic description to which an Answer is not required.  To the extent an Answer is deemed required these allegations should be considered denied or avoided.

17.    Life Care denies any and all allegations set forth in Paragraph 17 of Plaintiff's Complaint.

18.    With respect to Paragraph 18 of Plaintiff's Complaint, Life Care reincorporates by reference as if fully stated herein Paragraphs 1 through 17 of this Answer.

19.    With respect to the allegations contained in Paragraph 19 of Plaintiff's Complaint, Life Care admits that Helen Ray admitted as a resident of Mountain View Health Care Center and that she died on June 19, 2014, but denies all remaining allegations contained in Paragraph 19 of Plaintiff's Complaint at this time for want of knowledge.

20.    Life Care denies the allegations contained in Paragraph 20 of Plaintiff's Complaint as directed towards Life Care.  To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

21.    With respect to the allegations contained in Paragraph 21 of Plaintiff's Complaint, Life Care admits that it manages Mountain View Health Care Center, but denies all remaining allegations contained in Paragraph 21 of Plaintiff's Complaint.

22.    Life Care denies the allegations contained in Paragraph 22 of Plaintiff's Complaint as directed towards Life Care.  To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

23.    Life Care denies the allegations contained in Paragraph 23 of Plaintiff's Complaint as directed towards Life Care.  To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

24.    Life Care denies the allegations contained in Paragraph 24 of Plaintiff's Complaint as directed towards Life Care.  To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

25.    Life Care denies the allegations contained in Paragraph 25 of Plaintiff's Complaint as directed towards Life Care, including but not limited to subparagraphs a) through f). To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

26.    Life Care denies the allegations contained in Paragraph 26 of Plaintiff's Complaint as directed towards Life Care.  To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

27.    With respect to Paragraph 27 of Plaintiff's Complaint, Life Care reincorporates by reference as if fully stated herein Paragraphs 1 through 26 of this Answer.

28.    The allegations contained in Paragraph 28 of Plaintiff's Complaint state pure legal conclusions that should be taken as denied or avoided.

29.    Life Care denies the allegations contained in Paragraph 29 of Plaintiff's Complaint as directed towards Life Care.  To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

30.    Life Care denies the allegations contained in Paragraph 30 of Plaintiff's Complaint as directed towards Life Care, including but not limited to subparagraphs a) through n). To the

extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

31.    Life Care denies the allegations contained in Paragraph 31 of Plaintiff's Complaint as directed towards Life Care. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

32.    Life Care denies the allegations contained in Paragraph 32 of Plaintiff's Complaint as directed towards Life Care, including but not limited to subparagraphs a) through e). To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

33.    Life Care denies the allegations contained in Paragraph 33 of Plaintiff's Complaint as directed towards Life Care.  To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

34.    With respect to Paragraph 34 of Plaintiff's Complaint, Life Care reincorporates by reference as if fully stated herein Paragraphs 1 through 33 of this Answer.

35.    The allegations contained in Paragraph 35 of Plaintiff's Complaint state pure legal conclusions that should be taken as denied or avoided.

36.    Life Care denies the allegations contained in Paragraph 36 of Plaintiff's Complaint as directed towards Life Care, including but not limited to subparagraphs a) through g). To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

37.    Life Care denies the allegations contained in Paragraph 37 of Plaintiff's Complaint as directed towards Life Care. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

38.    Life Care denies the allegations contained in Paragraph 38 of Plaintiff's Complaint as directed towards Life Care. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

39.    Life Care denies the allegations contained in Paragraph 39 of Plaintiff's Complaint as directed towards Life Care. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

40.    With respect to Paragraph 40 of Plaintiff's Complaint, Life Care reincorporates by reference as if fully stated herein Paragraphs 1 through 39 of this Answer.

41.    Life Care denies the allegations contained in Paragraph 41 of Plaintiff's Complaint as directed towards Life Care. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

42.    Life Care denies the allegations contained in Paragraph 42 of Plaintiff's Complaint as directed towards Life Care. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

43.    Life Care denies the allegations contained in Paragraph 43 of Plaintiff's Complaint as directed towards Life Care. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

44.    Life Care denies the allegations contained in Paragraph 44 of Plaintiff's Complaint as directed towards Life Care. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

45.    Life Care denies the allegations contained in Paragraph 45 of Plaintiff's Complaint as directed towards Life Care. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

46.    Life Care denies the allegations contained in Paragraph 46 of Plaintiff's Complaint as
directed towards Life Care. To the extent any allegations contained in this paragraph are directed
towards other Defendants, no response to those allegations from Life Care is necessary.

47.    Life Care denies the allegations contained in Paragraph 47 of Plaintiff's Complaint as
directed towards Life Care. To the extent any allegations contained in this paragraph are directed
towards other Defendants, no response to those allegations from Life Care is necessary.

48.    With respect to Paragraph 48 of Plaintiff's Complaint, Life Care reincorporates by
reference as if fully stated herein Paragraphs 1 through 47 of this Answer.

49.    Life Care denies the allegations contained in Paragraph 49 of Plaintiff's Complaint as
directed towards Life Care. To the extent any allegations contained in this paragraph are directed
towards other Defendants, no response to those allegations from Life Care is necessary.

50.    Life Care denies the allegations contained in Paragraph 50 of Plaintiff's Complaint as
directed towards Life Care, including but not limited to subparagraphs a) through f). To the
extent any allegations contained in this paragraph are directed towards other Defendants, no
response to those allegations from Life Care is necessary.

51.    Life Care denies the allegations contained in Paragraph 51 of Plaintiff's Complaint as
directed towards Life Care. To the extent any allegations contained in this paragraph are directed
towards other Defendants, no response to those allegations from Life Care is necessary.

52.    Life Care denies the allegations contained in Paragraph 52 of Plaintiff's Complaint as
directed towards Life Care. To the extent any allegations contained in this paragraph are directed
towards other Defendants, no response to those allegations from Life Care is necessary.

53.    With respect to Paragraph 53 of Plaintiff's Complaint, Life Care reincorporates by
reference as if fully stated herein Paragraphs 1 through 52 of this Answer.

54.     With respect to the allegations contained in Paragraph 54 of Plaintiff's Complaint, Life Care states that the allegations contained in this paragraph are not directed towards Life Care, so that no response to this paragraph is necessary. To the extent these allegations may be construed against Life Care, the same are denied.

55.     With respect to the allegations contained in Paragraph 55 of Plaintiff's Complaint, Life Care states that the allegations contained in this paragraph are not directed towards Life Care, so that no response to this paragraph is necessary. To the extent these allegations may be construed against Life Care, the same are denied.

56.     With respect to the allegations contained in Paragraph 56 of Plaintiff's Complaint, Life Care states that the allegations contained in this paragraph are not directed towards Life Care, so that no response to this paragraph is necessary. To the extent these allegations may be construed against Life Care, the same are denied.

57.     With respect to the allegations contained in Paragraph 57 of Plaintiff's Complaint, Life Care states that the allegations contained in this paragraph are not directed towards Life Care, so that no response to this paragraph is necessary. To the extent these allegations may be construed against Life Care, the same are denied.

58.     With respect to the allegations contained in Paragraph 58 of Plaintiff's Complaint, Life Care states that the allegations contained in this paragraph are not directed towards Life Care, so that no response to this paragraph is necessary. To the extent these allegations may be construed against Life Care, the same are denied.

59.     With respect to the allegations contained in Paragraph 59 of Plaintiff's Complaint, Life Care states that the allegations contained in this paragraph are not directed towards Life Care, so

that no response to this paragraph is necessary. To the extent these allegations may be construed against Life Care, the same are denied.

60.     With respect to Paragraph 60 of Plaintiff's Complaint, Life Care reincorporates by reference as if fully stated herein Paragraphs 1 through 59 of this Answer.

61.     With respect to the allegations contained in Paragraph 61 of Plaintiff's Complaint, Life Care states that the allegations contained in this paragraph are not directed towards Life Care, so that no response to this paragraph is necessary. To the extent these allegations may be construed against Life Care, the same are denied.

62.     With respect to the allegations contained in Paragraph 62 of Plaintiff's Complaint, Life Care states that the allegations contained in this paragraph are not directed towards Life Care, so that no response to this paragraph is necessary. To the extent these allegations may be construed against Life Care, the same are denied, including but not limited to subparagraphs a) through n).

63.     With respect to the allegations contained in Paragraph 63 of Plaintiff's Complaint, Life Care states that the allegations contained in this paragraph are not directed towards Life Care, so that no response to this paragraph is necessary. To the extent these allegations may be construed against Life Care, the same are denied.

64.     With respect to the allegations contained in Paragraph 64 of Plaintiff's Complaint, Life Care states that the allegations contained in this paragraph are not directed towards Life Care, so that no response to this paragraph is necessary. To the extent these allegations may be construed against Life Care, the same are denied, including but not limited to subparagraphs a) through h).

65.     With respect to the allegations contained in Paragraph 65 of Plaintiff's Complaint, Life Care states that the allegations contained in this paragraph are not directed towards Life Care, so

that no response to this paragraph is necessary. To the extent these allegations may be construed against Life Care, the same are denied.

66.    With respect to the allegations contained in Paragraph 66 of Plaintiff's Complaint, Life Care states that the allegations contained in this paragraph are not directed towards Life Care, so that no response to this paragraph is necessary. To the extent these allegations may be construed against Life Care, the same are denied.

67.    With respect to the allegations contained in Paragraph 67 of Plaintiff's Complaint, Life Care states that the allegations contained in this paragraph are not directed towards Life Care, so that no response to this paragraph is necessary. To the extent these allegations may be construed against Life Care, the same are denied.

68.    With respect to Paragraph 68 of Plaintiff's Complaint, Life Care reincorporates by reference as if fully stated herein Paragraphs 1 through 67 of this Answer.

69.    Life Care denies the allegations contained in Paragraph 69 of Plaintiff's Complaint as directed towards Life Care. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

70.    Life Care denies the allegations contained in Paragraph 70 of Plaintiff's Complaint as directed towards Life Care. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

71.    Life Care denies the allegations contained in Paragraph 71 of Plaintiff's Complaint as directed towards Life Care. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

72.    With respect to Paragraph 72 of Plaintiff's Complaint, Life Care reincorporates by reference as if fully stated herein Paragraphs 1 through 69 of this Answer.

73. Life Care denies the allegations contained in Paragraph 73 of Plaintiff's Complaint as directed towards Life Care. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

74. Life Care denies the allegations contained in Paragraph 74 of Plaintiff's Complaint as directed towards Life Care. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from Life Care is necessary.

69. Life Care denies any and all allegations contained in Plaintiff's Complaint which have not specifically been admitted to above.

**SIXTH DEFENSE**

Life Care pleads any and all applicable CR 8.03 affirmative defenses as if set forth at length herein, including but not limited to arbitration and award, assumption of risk, contributory negligence, estoppel, laches, and statute of limitations.

**SEVENTH DEFENSE**

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any are found were caused in whole or in part by Plaintiff's contributory and/or comparative negligence by reason of her failure to use the degree of care which would have been used by an ordinary, reasonable and prudent person under the same or similar circumstances. Any damages to which Plaintiffs may be found to be entitled are barred and should be reduced in proportion to the amount of fault attributable to Plaintiff or Plaintiff's decedent. Subject to what discovery may reveal, the negligence of Plaintiff and/or Helen Ray proximately caused, contributed to, and was a substantial factor in causing the injuries and damages, if any, alleged in the Complaint.

**EIGHTH DEFENSE**

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any occurred, were caused in whole or in part by the primary, active, superseding, intervening negligence and/or intentional acts of Plaintiff and/or persons or entities other than Life Care for which Life Care has no liability or responsibility and which were the proximate cause and/or a substantial factor in causing said injuries and damages, if any, and Plaintiff's claims are, therefore, barred or should be reduced in proportion to the fault attributable to persons other than Life Care.

**NINTH DEFENSE**

Plaintiff's claim for punitive damages is barred by the provisions of KRS §411.184 and the prohibition against excessive fines contained in the 8th Amendment to the United States Constitution, by the Due Process Clause of the 14th Amendment to the United States Constitution, as well as §§ 2 and 14 of the Kentucky Constitution. The substantive proof of, and the procedures set out in Kentucky's punitive damages system, violate the Due Process Clause of the 14th Amendment of the United States Constitution and provisions of the Kentucky Constitution.

**TENTH DEFENSE**

The conduct of Life Care was not the proximate cause or a substantial factor in causing any of the injuries or damage, if any occurred, alleged by Plaintiff.

**ELEVENTH DEFENSE**

To the extent that there exists any person or entity who has paid any amounts to or for the benefit of Plaintiff or Plaintiff's representative on account of events or injuries or damages alleged in the Complaint and who have not been properly notified of their subrogation rights,

Plaintiff has failed to comply with KRS §411.188 and the Complaint is barred. Alternatively, Plaintiff is precluded from recovery of amounts which are the subject of subrogation rights. Moreover, to the extent such person or entity exists, Plaintiff is not the real party in interest to the extent of any such payment.

**TWELFTH DEFENSE**

Plaintiff has failed to plead special damages, if any, with specificity as required by Rule 9.6 of the Kentucky Rules of Civil Procedure and any claims for special damages are therefore barred.

**THIRTEENTH DEFENSE**

Life Care reserves all defenses related to insufficiency of process or service of process.

**FOURTEENTH DEFENSE**

Subject to what discovery may reveal, Plaintiff consented, either expressly or impliedly to any and all care, contact or actions taken by Life Care or its employees.

**FIFTEENTH DEFENSE**

Subject to what discovery may reveal, Life Care reserves the right to contend that Plaintiff did not properly mitigate damages.

**SIXTEENTH DEFENSE**

Life Care reserves the right to supplement this Answer and plead any and all additional defenses and affirmative defenses that arise during the course of the litigation.

WHEREFORE, Defendant, Life Care Centers of America, Inc., demands as follows:

1. Dismissal of Plaintiff's Complaint;

2. Its costs, expenses and attorney's fees as allowed by law; and

3. Any and all other relief to which it may appear entitled.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

J. Peter Cassidy, III, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANT,
LIFE CARE CENTERS OF AMERICA, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this 2nd day of September, 2015, upon the following, via U.S. Mail:

M. Brandon Faulkner, Esq.
Garcia, Artigliere & Medby
220 W. Main St., Ste. 2250
Louisville, KY 40202

Kentucky Medical Investors, LLC
National Registered Agents, Inc.
306 W. Main St., Ste. 512
Frankfort, KY 40601

Misty Ward
945 W. Russell St.
Elkhorn City, KY 41522

Judith Branham
945 W. Russell St.
Elkhorn City, KY 41522

ATTORNEY FOR DEFENDANT,
LIFE CARE CENTERS OF AMERICA, INC.

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

FILED
ANNA PINSON SPEARS
SEP 08 2015
PIKE CIRCUIT/DISTRICT COURT
BY: D.C.

JENNIFER BINGHAM, as Executrix of the ESTATE of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

**ANSWER**

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * * * *

Defendant, SAK JR., LLC (hereinafter "SAK JR, LLC"), for its Answer to Plaintiff's Complaint, states as follows:

**FIRST DEFENSE**

This Court does not have jurisdiction over SAK JR, LLC. SAK JR, LLC provided no medical care or accommodations to Helen Ray, conducts no business in and has no employees within the Commonwealth of Kentucky, has no nexus to the Commonwealth of Kentucky, and is not a proper party to this lawsuit. Plaintiff's claims against SAK JR, LLC therefore must be dismissed pursuant to CR 12.02(b) and CR 12.02(c).

**SECOND DEFENSE**

Plaintiff's Complaint fails, in whole or in part, to state a claim for which relief can be granted.

**THIRD DEFENSE**

This Answering Defendant affirmatively pleads under CR 9.01 that Plaintiff lacks capacity to sue. Further, Plaintiff is not the real party in interest under CR 17 and has failed to join an indispensable party under CR 19, therefore exposing SAK JR, LLC to the risk of multiple and inconsistent judgments, and Plaintiff's Complaint should therefore be dismissed on that basis.

**FOURTH DEFENSE**

Under KRS §216.515, Kentucky's Resident's Rights Statute, Plaintiff lacks standing to bring this action. Plaintiff is neither the resident, nor is the guardian of Helen Ray seeking to enforce the resident's rights, which rights do not survive her death. Further, under CR 17, Plaintiff is not the real party in interest to bring any claim under KRS §216.515. Finally, KRS §216.515 applies only to long-term care facilities, as that term is defined in KRS §216.510.

**FIFTH DEFENSE**

Subject to what discovery may reveal, the claims in this lawsuit are subject to a binding Voluntary Agreement for Arbitration, requiring dismissal of this action pursuant to 9 U.S.C. §2 and KRS §417.050, which state that a written arbitration agreement is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract

**SIXTH DEFENSE**

As to the numbered paragraphs of Plaintiff's Complaint, SAK JR, LLC states as follows:

1. SAK JR, LLC denies the allegations contained in Paragraph 1 of Plaintiff's Complaint.

2. SAK JR, LLC denies the allegations contained in Paragraph 2 of Plaintiff's Complaint for want of knowledge.

3. With respect to the allegations contained in Paragraph 3 of Plaintiff's Complaint, SAK JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SAK JR, LLC, the same are denied.

4. With respect to the allegations contained in Paragraph 4 of Plaintiff's Complaint, SAK JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SAK JR, LLC, the same are denied.

5. With respect to the allegations contained in Paragraph 5 of Plaintiff's Complaint, SAK JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SAK JR, LLC, the same are denied.

6. With respect to the allegations contained in Paragraph 6 of Plaintiff's Complaint, SAK JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SAK JR, LLC, the same are denied.

7. With respect to the allegations contained in Paragraph 7 of Plaintiff's Complaint, SAK JR, LLC admits that Defendant, SAK JR, LLC is a foreign limited liability company, but denies any remaining allegations contained in Paragraph 7 of Plaintiff's Complaint.

8. With respect to the allegations contained in Paragraph 8 of Plaintiff's Complaint, SAK JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR,

LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SAK JR, LLC, the same are denied.

9. With respect to the allegations contained in Paragraph 9 of Plaintiff's Complaint, SAK JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SAK JR, LLC, the same are denied.

10. With respect to the allegations contained in Paragraph 10 of Plaintiff's Complaint, SAK JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SAK JR, LLC, the same are denied.

11. With respect to the allegations contained in Paragraph 11 of Plaintiff's Complaint, SAK JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SAK JR, LLC, the same are denied.

12. SAK JR, LLC denies the allegations contained in Paragraph 12 of Plaintiff's Complaint for want of knowledge. To the extent the allegations contained in Paragraph 12 relate to SAK JR, LLC, the allegations are specifically denied.

13. Paragraph 13 of Plaintiff's Complaint alleges a stylistic description to which an Answer is not required. To the extent an Answer is deemed required these allegations should be considered denied or avoided.

14. The allegations contained in Paragraph 14 of Plaintiff's Complaint state pure legal conclusions that should be taken as denied or avoided.

15.    Paragraph 15 of Plaintiff's Complaint alleges a stylistic description to which an Answer is not required.    To the extent an Answer is deemed required these allegations should be considered denied or avoided.

16.    Paragraph 16 of Plaintiff's Complaint alleges a stylistic description to which an Answer is not required.    To the extent an Answer is deemed required these allegations should be considered denied or avoided.

17.    SAK JR, LLC denies any and all allegations set forth in Paragraph 17 of Plaintiff's Complaint.

18.    With respect to Paragraph 18 of Plaintiff's Complaint, SAK JR, LLC reincorporates by reference as if fully stated herein Paragraphs 1 through 17 of this Answer.

19.    SAK JR, LLC denies the allegations contained in Paragraph 19 of Plaintiff's Complaint for want of knowledge.

20.    SAK JR, LLC denies the allegations contained in Paragraph 20 of Plaintiff's Complaint as directed towards SAK JR, LLC.    To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

21.    SAK JR, LLC denies the allegations contained in Paragraph 21 of Plaintiff's Complaint as directed towards SAK JR, LLC.    To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

22.    SAK JR, LLC denies the allegations contained in Paragraph 22 of Plaintiff's Complaint as directed towards SAK JR, LLC.    To the extent any allegations contained in this paragraph are

directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

23.    SAK JR, LLC denies the allegations contained in Paragraph 23 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

24.    SAK JR, LLC denies the allegations contained in Paragraph 24 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

25.    SAK JR, LLC denies the allegations contained in Paragraph 25 of Plaintiff's Complaint as directed towards SAK JR, LLC, including but not limited to subparagraphs a) through f). To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

26.    SAK JR, LLC denies the allegations contained in Paragraph 26 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

27.    With respect to Paragraph 27 of Plaintiff's Complaint, SAK JR, LLC reincorporates by reference as if fully stated herein Paragraphs 1 through 26 of this Answer.

28.    The allegations contained in Paragraph 28 of Plaintiff's Complaint state pure legal conclusions that should be taken as denied or avoided.

29.     SAK JR, LLC denies the allegations contained in Paragraph 29 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

30.     SAK JR, LLC denies the allegations contained in Paragraph 30 of Plaintiff's Complaint as directed towards SAK JR, LLC, including but not limited to subparagraphs a) through n). To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

31.     SAK JR, LLC denies the allegations contained in Paragraph 31 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

32.     SAK JR, LLC denies the allegations contained in Paragraph 32 of Plaintiff's Complaint as directed towards SAK JR, LLC, including but not limited to subparagraphs a) through e). To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

33.     SAK JR, LLC denies the allegations contained in Paragraph 33 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

34.     With respect to Paragraph 34 of Plaintiff's Complaint, SAK JR, LLC reincorporates by reference as if fully stated herein Paragraphs 1 through 33 of this Answer.

35.     The allegations contained in Paragraph 35 of Plaintiff's Complaint state pure legal conclusions that should be taken as denied or avoided.

36.     SAK JR, LLC denies the allegations contained in Paragraph 36 of Plaintiff's Complaint as directed towards SAK JR, LLC, including but not limited to subparagraphs a) through g). To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

37.     SAK JR, LLC denies the allegations contained in Paragraph 37 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

38.     SAK JR, LLC denies the allegations contained in Paragraph 38 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

39.     SAK JR, LLC denies the allegations contained in Paragraph 39 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

40.     With respect to Paragraph 40 of Plaintiff's Complaint, SAK JR, LLC reincorporates by reference as if fully stated herein Paragraphs 1 through 39 of this Answer.

41.     SAK JR, LLC denies the allegations contained in Paragraph 41 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are

directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

42.    SAK JR, LLC denies the allegations contained in Paragraph 42 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

43.    SAK JR, LLC denies the allegations contained in Paragraph 43 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

44.    SAK JR, LLC denies the allegations contained in Paragraph 44 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

45.    SAK JR, LLC denies the allegations contained in Paragraph 45 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

46.    SAK JR, LLC denies the allegations contained in Paragraph 46 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

47.    SAK JR, LLC denies the allegations contained in Paragraph 47 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

48.    With respect to Paragraph 48 of Plaintiff's Complaint, SAK JR, LLC reincorporates by reference as if fully stated herein Paragraphs 1 through 47 of this Answer.

49.    SAK JR, LLC denies the allegations contained in Paragraph 49 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

50.    SAK JR, LLC denies the allegations contained in Paragraph 50 of Plaintiff's Complaint as directed towards SAK JR, LLC, including but not limited to subparagraphs a) through f). To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

51.    SAK JR, LLC denies the allegations contained in Paragraph 51 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

52.    SAK JR, LLC denies the allegations contained in Paragraph 52 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

53.     With respect to Paragraph 53 of Plaintiff's Complaint, SAK JR, LLC reincorporates by reference as if fully stated herein Paragraphs 1 through 52 of this Answer.

54.     With respect to the allegations contained in Paragraph 54 of Plaintiff's Complaint, SAK JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SAK JR, LLC, the same are denied.

55.     With respect to the allegations contained in Paragraph 55 of Plaintiff's Complaint, SAK JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SAK JR, LLC, the same are denied.

56.     With respect to the allegations contained in Paragraph 56 of Plaintiff's Complaint, SAK JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SAK JR, LLC, the same are denied.

57.     With respect to the allegations contained in Paragraph 57 of Plaintiff's Complaint, SAK JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SAK JR, LLC, the same are denied.

58.     With respect to the allegations contained in Paragraph 58 of Plaintiff's Complaint, SAK JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SAK JR, LLC, the same are denied.

59.    With respect to the allegations contained in Paragraph 59 of Plaintiff's Complaint, SAK

JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR,

LLC, so that no response to this paragraph is necessary. To the extent these allegations may be

construed against SAK JR, LLC, the same are denied.

60.    With respect to Paragraph 60 of Plaintiff's Complaint, SAK JR, LLC reincorporates by

reference as if fully stated herein Paragraphs 1 through 59 of this Answer.

61.    With respect to the allegations contained in Paragraph 61 of Plaintiff's Complaint, SAK

JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR,

LLC, so that no response to this paragraph is necessary. To the extent these allegations may be

construed against SAK JR, LLC, the same are denied.

62.    With respect to the allegations contained in Paragraph 62 of Plaintiff's Complaint, SAK

JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR,

LLC, so that no response to this paragraph is necessary. To the extent these allegations may be

construed against SAK JR, LLC, the same are denied, including but not limited to subparagraphs

a) through n).

63.    With respect to the allegations contained in Paragraph 63 of Plaintiff's Complaint, SAK

JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR,

LLC, so that no response to this paragraph is necessary. To the extent these allegations may be

construed against SAK JR, LLC, the same are denied.

64.    With respect to the allegations contained in Paragraph 64 of Plaintiff's Complaint, SAK

JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR,

LLC, so that no response to this paragraph is necessary. To the extent these allegations may be

construed against SAK JR, LLC, the same are denied, including but not limited to subparagraphs a) through h).

65.    With respect to the allegations contained in Paragraph 65 of Plaintiff's Complaint, SAK JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SAK JR, LLC, the same are denied.

66.    With respect to the allegations contained in Paragraph 66 of Plaintiff's Complaint, SAK JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SAK JR, LLC, the same are denied.

67.    With respect to the allegations contained in Paragraph 67 of Plaintiff's Complaint, SAK JR, LLC states that the allegations contained in this paragraph are not directed towards SAK JR, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SAK JR, LLC, the same are denied.

68.    With respect to Paragraph 68 of Plaintiff's Complaint, SAK JR, LLC reincorporates by reference as if fully stated herein Paragraphs 1 through 67 of this Answer.

69.    SAK JR, LLC denies the allegations contained in Paragraph 69 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

70.    SAK JR, LLC denies the allegations contained in Paragraph 70 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are

directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

71. SAK JR, LLC denies the allegations contained in Paragraph 71 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

72. With respect to Paragraph 72 of Plaintiff's Complaint, SAK JR, LLC reincorporates by reference as if fully stated herein Paragraphs 1 through 69 of this Answer.

73. SAK JR, LLC denies the allegations contained in Paragraph 73 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

74. SAK JR, LLC denies the allegations contained in Paragraph 74 of Plaintiff's Complaint as directed towards SAK JR, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SAK JR, LLC is necessary.

69. SAK JR, LLC denies any and all allegations contained in Plaintiff's Complaint which have not specifically been admitted to above.

**SEVENTH DEFENSE**

SAK JR, LLC pleads any and all applicable CR 8.03 affirmative defenses as if set forth at length herein, including but not limited to arbitration and award, assumption of risk, contributory negligence, estoppel, laches, and statute of limitations.

**EIGHTH DEFENSE**

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any are found were caused in whole or in part by Plaintiff's contributory and/or comparative negligence by reason of her failure to use the degree of care which would have been used by an ordinary, reasonable and prudent person under the same or similar circumstances. Any damages to which Plaintiffs may be found to be entitled are barred and should be reduced in proportion to the amount of fault attributable to Plaintiff or Plaintiff's decedent. Subject to what discovery may reveal, the negligence of Plaintiff and/or Helen Ray proximately caused, contributed to, and was a substantial factor in causing the injuries and damages, if any, alleged in the Complaint.

**NINTH DEFENSE**

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any occurred, were caused in whole or in part by the primary, active, superseding, intervening negligence and/or intentional acts of Plaintiff and/or persons or entities other than SAK JR, LLC for which SAK JR, LLC has no liability or responsibility and which were the proximate cause and/or a substantial factor in causing said injuries and damages, if any, and Plaintiff's claims are, therefore, barred or should be reduced in proportion to the fault attributable to persons other than SAK JR, LLC.

**TENTH DEFENSE**

Plaintiff's claim for punitive damages is barred by the provisions of KRS §411.184 and the prohibition against excessive fines contained in the 8th Amendment to the United States Constitution, by the Due Process Clause of the 14th Amendment to the United States Constitution, as well as §§ 2 and 14 of the Kentucky Constitution. The substantive proof of, and the procedures set out in Kentucky's punitive damages system, violate the Due Process Clause of

the 14th Amendment of the United States Constitution and provisions of the Kentucky Constitution.

**ELEVENTH DEFENSE**

The conduct of SAK JR, LLC was not the proximate cause or a substantial factor in causing any of the injuries or damage, if any occurred, alleged by Plaintiff.

**TWELFTH DEFENSE**

To the extent that there exists any person or entity who has paid any amounts to or for the benefit of Plaintiff or Plaintiff's representative on account of events or injuries or damages alleged in the Complaint and who have not been properly notified of their subrogation rights, Plaintiff has failed to comply with KRS §411.188 and the Complaint is barred. Alternatively, Plaintiff is precluded from recovery of amounts which are the subject of subrogation rights. Moreover, to the extent such person or entity exists, Plaintiff is not the real party in interest to the extent of any such payment.

**THIRTEENTH DEFENSE**

Plaintiff has failed to plead special damages, if any, with specificity as required by Rule 9.6 of the Kentucky Rules of Civil Procedure and any claims for special damages are therefore barred.

**FOURTEENTH DEFENSE**

SAK JR, LLC reserves all defenses related to insufficiency of process or service of process.

**FIFTEENTH DEFENSE**

Subject to what discovery may reveal, Plaintiff consented, either expressly or impliedly to any and all care, contact or actions taken by SAK JR, LLC or its employees.

**SIXTEENTH DEFENSE**

Subject to what discovery may reveal, SAK JR, LLC reserves the right to contend that Plaintiff did not properly mitigate damages.

**SEVENTEENTH DEFENSE**

SAK JR, LLC reserves the right to supplement this Answer and plead any and all additional defenses and affirmative defenses that arise during the course of the litigation.

WHEREFORE, Defendant, SAK JR., LLC, demands as follows:

1. Dismissal of Plaintiff's Complaint;

2. Its costs, expenses and attorney's fees as allowed by law; and

3. Any and all other relief to which it may appear entitled.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

J. Peter Cassidy, III, Esq.
2452 Sir Barton Way, Ste 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANT,
SAK JR., LLC

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this 2nd day of September, 2015, upon the following, via U.S. Mail:

M. Brandon Faulkner, Esq.
Garcia, Artigliere & Medby
220 W. Main St., Ste. 2250
Louisville, KY 40202

Kentucky Medical Investors, LLC
National Registered Agents, Inc.
306 W. Main St., Ste. 512
Frankfort, KY 40601

Misty Ward
945 W. Russell St.
Elkhorn City, KY 41522

Judith Branham
945 W. Russell St.
Elkhorn City, KY 41522

ATTORNEY FOR DEFENDANT,
SAK JR., LLC

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

FILED
ANNA PINSON SPEARS
SEP 08 2015
PIKE CIRCUIT/DISTRICT COURT
BY: [signature] D.C.

JENNIFER BINGHAM, as Executrix of the ESTATE of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased,

PLAINTIFFS

v.

**ANSWER**

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS,

DEFENDANTS

* * * * * * * * * * * * *

Defendant, SBK, LLC (hereinafter "SBK, LLC"), for its Answer to Plaintiff's Complaint, states as follows:

**FIRST DEFENSE**

This Court does not have jurisdiction over SBK, LLC. SBK, LLC provided no medical care or accommodations to Helen Ray, conducts no business in and has no employees within the Commonwealth of Kentucky, has no nexus to the Commonwealth of Kentucky, and is not a proper party to this lawsuit. Plaintiff's claims against SBK, LLC therefore must be dismissed pursuant to CR 12.02(b) and CR 12.02(c).

**SECOND DEFENSE**

Plaintiff's Complaint fails, in whole or in part, to state a claim for which relief can be granted.

**THIRD DEFENSE**

This Answering Defendant affirmatively pleads under CR 9.01 that Plaintiff lacks capacity to sue. Further, Plaintiff is not the real party in interest under CR 17 and has failed to join an indispensable party under CR 19, therefore exposing SBK, LLC to the risk of multiple and inconsistent judgments, and Plaintiff's Complaint should therefore be dismissed on that basis.

**FOURTH DEFENSE**

Under KRS §216.515, Kentucky's Resident's Rights Statute, Plaintiff lacks standing to bring this action. Plaintiff is neither the resident, nor is the guardian of Helen Ray seeking to enforce the resident's rights, which rights do not survive her death. Further, under CR 17, Plaintiff is not the real party in interest to bring any claim under KRS §216.515. Finally, KRS §216.515 applies only to long-term care facilities, as that term is defined in KRS §216.510.

**FIFTH DEFENSE**

Subject to what discovery may reveal, the claims in this lawsuit are subject to a binding Voluntary Agreement for Arbitration, requiring dismissal of this action pursuant to 9 U.S.C. §2 and KRS §417.050, which state that a written arbitration agreement is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract

**SIXTH DEFENSE**

As to the numbered paragraphs of Plaintiff's Complaint, SBK, LLC states as follows:

1. SBK, LLC denies the allegations contained in Paragraph 1 of Plaintiff's Complaint.

2.       SBK, LLC denies the allegations contained in Paragraph 2 of Plaintiff's Complaint for want of knowledge.

3.       With respect to the allegations contained in Paragraph 3 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC, so that no response to this paragraph is necessary.   To the extent these allegations may be construed against SBK, LLC, the same are denied.

4.       With respect to the allegations contained in Paragraph 4 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC, so that no response to this paragraph is necessary.   To the extent these allegations may be construed against SBK, LLC, the same are denied.

5.       With respect to the allegations contained in Paragraph 5 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC, so that no response to this paragraph is necessary.   To the extent these allegations may be construed against SBK, LLC, the same are denied.

6.       With respect to the allegations contained in Paragraph 6 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC, so that no response to this paragraph is necessary.   To the extent these allegations may be construed against SBK, LLC, the same are denied.

7.       With respect to the allegations contained in Paragraph 7 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC, so that no response to this paragraph is necessary.   To the extent these allegations may be construed against SBK, LLC, the same are denied.

8.    With respect to the allegations contained in Paragraph 8 of Plaintiff's Complaint, SBK, LLC admits that Defendant, SBK, LLC, is a foreign limited liability company with its principal office located at 3450 Ridgewood Rd., Atlanta, Fulton County, GA  30327, but denies any remaining allegations contained in Paragraph 8 of Plaintiff's Complaint.

9.    With respect to the allegations contained in Paragraph 9 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC, so that no response to this paragraph is necessary.  To the extent these allegations may be construed against SBK, LLC, the same are denied.

10.    With respect to the allegations contained in Paragraph 10 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC, so that no response to this paragraph is necessary.  To the extent these allegations may be construed against SBK, LLC, the same are denied.

11.    With respect to the allegations contained in Paragraph 11 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC, so that no response to this paragraph is necessary.  To the extent these allegations may be construed against SBK, LLC, the same are denied.

12.    SBK, LLC denies the allegations contained in Paragraph 12 of Plaintiff's Complaint for want of knowledge. To the extent the allegations contained in Paragraph 12 relate to SBK, LLC, the allegations are specifically denied.

13.    Paragraph 13 of Plaintiff's Complaint alleges a stylistic description to which an Answer is not required.  To the extent an Answer is deemed required these allegations should be considered denied or avoided.

14.    The allegations contained in Paragraph 14 of Plaintiff's Complaint state pure legal conclusions that should be taken as denied or avoided.

15.    Paragraph 15 of Plaintiff's Complaint alleges a stylistic description to which an Answer is not required.  To the extent an Answer is deemed required these allegations should be considered denied or avoided.

16.    Paragraph 16 of Plaintiff's Complaint alleges a stylistic description to which an Answer is not required.  To the extent an Answer is deemed required these allegations should be considered denied or avoided.

17.    SBK, LLC denies any and all allegations set forth in Paragraph 17 of Plaintiff's Complaint.

18.    With respect to Paragraph 18 of Plaintiff's Complaint, SBK, LLC reincorporates by reference as if fully stated herein Paragraphs 1 through 17 of this Answer.

19.    SBK, LLC denies the allegations contained in Paragraph 19 of Plaintiff's Complaint for want of knowledge.

20.    SBK, LLC denies the allegations contained in Paragraph 20 of Plaintiff's Complaint as directed towards SBK, LLC.  To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

21.    SBK, LLC denies the allegations contained in Paragraph 21 of Plaintiff's Complaint as directed towards SBK, LLC.  To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

22.     SBK, LLC denies the allegations contained in Paragraph 22 of Plaintiff's Complaint as
directed towards SBK, LLC.  To the extent any allegations contained in this paragraph are
directed towards other Defendants, no response to those allegations from SBK, LLC is
necessary.

23.     SBK, LLC denies the allegations contained in Paragraph 23 of Plaintiff's Complaint as
directed towards SBK, LLC.  To the extent any allegations contained in this paragraph are
directed towards other Defendants, no response to those allegations from SBK, LLC is
necessary.

24.     SBK, LLC denies the allegations contained in Paragraph 24 of Plaintiff's Complaint as
directed towards SBK, LLC.  To the extent any allegations contained in this paragraph are
directed towards other Defendants, no response to those allegations from SBK, LLC is
necessary.

25.     SBK, LLC denies the allegations contained in Paragraph 25 of Plaintiff's Complaint as
directed towards SBK, LLC, including but not limited to subparagraphs a) through f). To the
extent any allegations contained in this paragraph are directed towards other Defendants, no
response to those allegations from SBK, LLC is necessary.

26.     SBK, LLC denies the allegations contained in Paragraph 26 of Plaintiff's Complaint as
directed towards SBK, LLC.  To the extent any allegations contained in this paragraph are
directed towards other Defendants, no response to those allegations from SBK, LLC is
necessary.

27.     With respect to Paragraph 27 of Plaintiff's Complaint, SBK, LLC reincorporates by
reference as if fully stated herein Paragraphs 1 through 26 of this Answer.

28.     The allegations contained in Paragraph 28 of Plaintiff's Complaint state pure legal conclusions that should be taken as denied or avoided.

29.     SBK, LLC denies the allegations contained in Paragraph 29 of Plaintiff's Complaint as directed towards SBK, LLC.  To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

30.     SBK, LLC denies the allegations contained in Paragraph 30 of Plaintiff's Complaint as directed towards SBK, LLC, including but not limited to subparagraphs a) through n). To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

31.     SBK, LLC denies the allegations contained in Paragraph 31 of Plaintiff's Complaint as directed towards SBK, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

32.     SBK, LLC denies the allegations contained in Paragraph 32 of Plaintiff's Complaint as directed towards SBK, LLC, including but not limited to subparagraphs a) through e). To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

33.     SBK, LLC denies the allegations contained in Paragraph 33 of Plaintiff's Complaint as directed towards SBK, LLC.  To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

34.     With respect to Paragraph 34 of Plaintiff's Complaint, SBK, LLC reincorporates by reference as if fully stated herein Paragraphs 1 through 33 of this Answer.

35.     The allegations contained in Paragraph 35 of Plaintiff's Complaint state pure legal conclusions that should be taken as denied or avoided.

36.     SBK, LLC denies the allegations contained in Paragraph 36 of Plaintiff's Complaint as directed towards SBK, LLC, including but not limited to subparagraphs a) through g). To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

37.     SBK, LLC denies the allegations contained in Paragraph 37 of Plaintiff's Complaint as directed towards SBK, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

38.     SBK, LLC denies the allegations contained in Paragraph 38 of Plaintiff's Complaint as directed towards SBK, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

39.     SBK, LLC denies the allegations contained in Paragraph 39 of Plaintiff's Complaint as directed towards SBK, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

40.     With respect to Paragraph 40 of Plaintiff's Complaint, SBK, LLC reincorporates by reference as if fully stated herein Paragraphs 1 through 39 of this Answer.

41.    SBK, LLC denies the allegations contained in Paragraph 41 of Plaintiff's Complaint as directed towards SBK, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

42.    SBK, LLC denies the allegations contained in Paragraph 42 of Plaintiff's Complaint as directed towards SBK, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

43.    SBK, LLC denies the allegations contained in Paragraph 43 of Plaintiff's Complaint as directed towards SBK, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

44.    SBK, LLC denies the allegations contained in Paragraph 44 of Plaintiff's Complaint as directed towards SBK, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

45.    SBK, LLC denies the allegations contained in Paragraph 45 of Plaintiff's Complaint as directed towards SBK, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

46.    SBK, LLC denies the allegations contained in Paragraph 46 of Plaintiff's Complaint as directed towards SBK, LLC. To the extent any allegations contained in this paragraph are

directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

47.    SBK, LLC denies the allegations contained in Paragraph 47 of Plaintiff's Complaint as directed towards SBK, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

48.    With respect to Paragraph 48 of Plaintiff's Complaint, SBK, LLC reincorporates by reference as if fully stated herein Paragraphs 1 through 47 of this Answer.

49.    SBK, LLC denies the allegations contained in Paragraph 49 of Plaintiff's Complaint as directed towards SBK, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

50.    SBK, LLC denies the allegations contained in Paragraph 50 of Plaintiff's Complaint as directed towards SBK, LLC, including but not limited to subparagraphs a) through f). To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

51.    SBK, LLC denies the allegations contained in Paragraph 51 of Plaintiff's Complaint as directed towards SBK, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

52.    SBK, LLC denies the allegations contained in Paragraph 52 of Plaintiff's Complaint as directed towards SBK, LLC. To the extent any allegations contained in this paragraph are

directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

53.    With respect to Paragraph 53 of Plaintiff's Complaint, SBK, LLC reincorporates by reference as if fully stated herein Paragraphs 1 through 52 of this Answer.

54.    With respect to the allegations contained in Paragraph 54 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC, so that no response to this paragraph is necessary.  To the extent these allegations may be construed against SBK, LLC, the same are denied.

55.    With respect to the allegations contained in Paragraph 55 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC, so that no response to this paragraph is necessary.  To the extent these allegations may be construed against SBK, LLC, the same are denied.

56.    With respect to the allegations contained in Paragraph 56 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC, so that no response to this paragraph is necessary.  To the extent these allegations may be construed against SBK, LLC, the same are denied.

57.    With respect to the allegations contained in Paragraph 57 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC, so that no response to this paragraph is necessary.  To the extent these allegations may be construed against SBK, LLC, the same are denied.

58.    With respect to the allegations contained in Paragraph 58 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC,

so that no response to this paragraph is necessary. To the extent these allegations may be construed against SBK, LLC, the same are denied.

59.   With respect to the allegations contained in Paragraph 59 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SBK, LLC, the same are denied.

60.   With respect to Paragraph 60 of Plaintiff's Complaint, SBK, LLC reincorporates by reference as if fully stated herein Paragraphs 1 through 59 of this Answer.

61.   With respect to the allegations contained in Paragraph 61 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SBK, LLC, the same are denied.

62.   With respect to the allegations contained in Paragraph 62 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SBK, LLC, the same are denied, including but not limited to subparagraphs a) through n).

63.   With respect to the allegations contained in Paragraph 63 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SBK, LLC, the same are denied.

64.   With respect to the allegations contained in Paragraph 64 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC,

so that no response to this paragraph is necessary. To the extent these allegations may be construed against SBK, LLC, the same are denied, including but not limited to subparagraphs a) through h).

65.     With respect to the allegations contained in Paragraph 65 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SBK, LLC, the same are denied.

66.     With respect to the allegations contained in Paragraph 66 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SBK, LLC, the same are denied.

67.     With respect to the allegations contained in Paragraph 67 of Plaintiff's Complaint, SBK, LLC states that the allegations contained in this paragraph are not directed towards SBK, LLC, so that no response to this paragraph is necessary. To the extent these allegations may be construed against SBK, LLC, the same are denied.

68.     With respect to Paragraph 68 of Plaintiff's Complaint, SBK, LLC reincorporates by reference as if fully stated herein Paragraphs 1 through 67 of this Answer.

69.     SBK, LLC denies the allegations contained in Paragraph 69 of Plaintiff's Complaint as directed towards SBK, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

70.     SBK, LLC denies the allegations contained in Paragraph 70 of Plaintiff's Complaint as directed towards SBK, LLC. To the extent any allegations contained in this paragraph are

directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

71. SBK, LLC denies the allegations contained in Paragraph 71 of Plaintiff's Complaint as directed towards SBK, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

72. With respect to Paragraph 72 of Plaintiff's Complaint, SBK, LLC reincorporates by reference as if fully stated herein Paragraphs 1 through 69 of this Answer.

73. SBK, LLC denies the allegations contained in Paragraph 73 of Plaintiff's Complaint as directed towards SBK, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

74. SBK, LLC denies the allegations contained in Paragraph 74 of Plaintiff's Complaint as directed towards SBK, LLC. To the extent any allegations contained in this paragraph are directed towards other Defendants, no response to those allegations from SBK, LLC is necessary.

69. SBK, LLC denies any and all allegations contained in Plaintiff's Complaint which have not specifically been admitted to above.

**SEVENTH DEFENSE**

SBK, LLC pleads any and all applicable CR 8.03 affirmative defenses as if set forth at length herein, including but not limited to arbitration and award, assumption of risk, contributory negligence, estoppel, laches, and statute of limitations.

**EIGHTH DEFENSE**

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any are found were caused in whole or in part by Plaintiff's contributory and/or comparative negligence by reason of her failure to use the degree of care which would have been used by an ordinary, reasonable and prudent person under the same or similar circumstances. Any damages to which Plaintiffs may be found to be entitled are barred and should be reduced in proportion to the amount of fault attributable to Plaintiff or Plaintiff's decedent. Subject to what discovery may reveal, the negligence of Plaintiff and/or Helen Ray proximately caused, contributed to, and was a substantial factor in causing the injuries and damages, if any, alleged in the Complaint.

**NINTH DEFENSE**

Subject to what discovery may reveal, the injuries and damages alleged in the Complaint, if any occurred, were caused in whole or in part by the primary, active, superseding, intervening negligence and/or intentional acts of Plaintiff and/or persons or entities other than SBK, LLC for which SBK, LLC has no liability or responsibility and which were the proximate cause and/or a substantial factor in causing said injuries and damages, if any, and Plaintiff's claims are, therefore, barred or should be reduced in proportion to the fault attributable to persons other than SBK, LLC.

**TENTH DEFENSE**

Plaintiff's claim for punitive damages is barred by the provisions of KRS §411.184 and the prohibition against excessive fines contained in the 8th Amendment to the United States Constitution, by the Due Process Clause of the 14th Amendment to the United States Constitution, as well as §§ 2 and 14 of the Kentucky Constitution. The substantive proof of, and the procedures set out in Kentucky's punitive damages system, violate the Due Process Clause of

the 14th Amendment of the United States Constitution and provisions of the Kentucky Constitution.

**ELEVENTH DEFENSE**

The conduct of SBK, LLC was not the proximate cause or a substantial factor in causing any of the injuries or damage, if any occurred, alleged by Plaintiff.

**TWELFTH DEFENSE**

To the extent that there exists any person or entity who has paid any amounts to or for the benefit of Plaintiff or Plaintiff's representative on account of events or injuries or damages alleged in the Complaint and who have not been properly notified of their subrogation rights, Plaintiff has failed to comply with KRS §411.188 and the Complaint is barred. Alternatively, Plaintiff is precluded from recovery of amounts which are the subject of subrogation rights. Moreover, to the extent such person or entity exists, Plaintiff is not the real party in interest to the extent of any such payment.

**THIRTEENTH DEFENSE**

Plaintiff has failed to plead special damages, if any, with specificity as required by Rule 9.6 of the Kentucky Rules of Civil Procedure and any claims for special damages are therefore barred.

**FOURTEENTH DEFENSE**

SBK, LLC reserves all defenses related to insufficiency of process or service of process.

**FIFTEENTH DEFENSE**

Subject to what discovery may reveal, Plaintiff consented, either expressly or impliedly to any and all care, contact or actions taken by SBK, LLC or its employees.

**SIXTEENTH DEFENSE**

Subject to what discovery may reveal, SBK, LLC reserves the right to contend that Plaintiff did not properly mitigate damages.

**SEVENTEENTH DEFENSE**

SBK, LLC reserves the right to supplement this Answer and plead any and all additional defenses and affirmative defenses that arise during the course of the litigation.

WHEREFORE, Defendant, SBK, LLC, demands as follows:

1. Dismissal of Plaintiff's Complaint;
2. Its costs, expenses and attorney's fees as allowed by law; and
3. Any and all other relief to which it may appear entitled.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

J. Peter Cassidy, III, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANT,
SBK, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this 2nd day of September, 2015, upon the following, via U.S. Mail:

M. Brandon Faulkner, Esq.
Garcia, Artigliere & Medby
220 W. Main St., Ste. 2250
Louisville, KY 40202

Kentucky Medical Investors, LLC
National Registered Agents, Inc.
306 W. Main St., Ste. 512
Frankfort, KY 40601

Misty Ward
945 W. Russell St.
Elkhorn City, KY 41522

Judith Branham
945 W. Russell St.
Elkhorn City, KY 41522

ATTORNEY FOR DEFENDANT,
SBK, LLC

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 15-CI-00778

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFF

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER, et al. DEFENDANTS

*** *** ***

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES**

Comes the Plaintiff, by counsel, and respectfully moves the Court to compel the Defendants, Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center and Misty Ward and Judith Branham, in their capacity as Administrators of Mountain View Health Care Center (hereinafter "Defendants") to answer her First Set of Interrogatories and Requests for Production of Documents. In support of her Motion, Plaintiff states as follows:

**FACTUAL BACKGROUND:**

On August 4, 2015, Plaintiff filed suit against Defendants for negligence stemming from the care and treatment of Helen Ray ("Ms. Ray") while a resident of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center. Plaintiff's Complaint was accompanied by her First Set of Interrogatories and Request for Production of Documents. See **Exhibit 1**. Defendants' responses to same were originally due on or before September 21, 2015. Having not received said responses, on September 29, 2015, the undersigned wrote defense counsel inquiring as to the status of the overdue discovery responses. See **Exhibit 2**. In

response to same, Defendants requested a second copy of said discovery requests via letter dated October 5, 2015, presumably indicating they were unaware of the previously tendered discovery requests. See **Exhibit 3.** The undersigned complied with this request and, as a professional courtesy, extended the deadline for Defendants to respond to on or before October 16, 2015. See **Exhibit 4.** Unfortunately, Plaintiff did not receive Defendants' Responses or any further communication requesting an additional extension in which to respond. Nonetheless, in yet another instance of professional courtesy and in effort to avoid unnecessarily involving the Court, Plaintiff allowed the Defendants yet another twenty-five days (25) days of additional time to provide responses prior to the filing of this Motion. Unfortunately, Defendants lackadaisical approach to discovery and compliance with the Kentucky Rules of Civil Procedure leaves Plaintiff with no option but to seek the Court's assistance in compelling the overdue discovery responses.

Plaintiff's claims are based on the injuries suffered by Ms. Ray as the result of Defendants' neglect. All of the discovery requests submitted by Plaintiff is permissible under CR 26, and goes to the heart of Plaintiff's case. Defendants should be compelled to produce the information set forth therein.

**CONCLUSION**

WHEREFORE, Plaintiff asks that this Honorable Court Grant Plaintiff's Motion to Compel and give the Defendants ten (10) days to comply, and any other relief Plaintiff may be entitled to.

Respectfully Submitted,

**GARCIA ARTIGLIERE & MEDBY**

Stephen M. Garcia
M. Brandon Faulkner
220 W. Main Street, Suite 2250
Louisville, KY 40202
Phone: 502.584.3805
Facsimile: 502.584.3811
***Attorneys for Plaintiff***

**CERTIFICATE OF SERVICE**

This is to certify the original copy of the foregoing was sent via first class, United States mail, postage prepaid to **Clerk, Pike County Circuit Court, P.O. Box 1002, Pikeville, Kentucky 41502**, and a true and correct copy of the foregoing mailed this 10 day of November, 2015 to the following:

J. Peter Cassidy, III
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
PH: 859.226.0057
Fax: 859.226.0059
***Counsel for Defendants***

*Counsel for Plaintiff*

# EXHIBIT 1



COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 15-CI-77

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFF

v. **PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO MISTY WARD AND JUDITH BRANHAM, IN THEIR CAPACITY AS ADMINISTRATORS OF MOUNTAIN VIEW HEALTH CARE CENTER**

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER, et al. DEFENDANTS

*** *** *** ***

Comes the Plaintiff, Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, and on behalf of the Wrongful Death Beneficiaries of Helen Ray, deceased, by counsel, and propounds the following Interrogatories and Requests for Production of Documents to the Defendants, Misty Ward and Judith Branham, in their capacity as Administrators of Mountain View Health Care Center to be answered fully under oath and within forty-five (45) days from the date of service hereof, in accordance with and pursuant to Civil Rules 33 and 34, as follows:

**DEFINITIONS AND INSTRUCTIONS**

1. **"Defendants."** The term **"Defendants"** refers to R Misty Ward and Judith Branham, in their capacity as Administrators of Mountain View Health Care Center, and their attorneys, agents, employees, partners, and all persons acting or purporting to act on his behalf.

2. **"You"** or **"Your."** The terms **"you"** and **"your,"** refer, individually and collectively to the individual, partnership, or corporate Defendant to whom these requests are addressed, and all agents, employees, partners, officers, directors and all persons acting or purporting to act on the behalf of said Defendant.

3. **"Person."** The term **"person"** is defined as "a human being, and where appropriate, a public or private corporation, an unincorporated association, a partnership, a government, or a governmental authority." KRS 500.080 (12).

4. **"Document(s)"** and/or **"Documentation."** The terms **"document(s)"** and/or **"documentation"** includes all written, graphic or otherwise recorded matter however produced or reproduced, including the originals (or any copies when originals are not available) and non-identical copies (where different from the original because notes were made on such copies or because said copies may have been sent to different individuals than originals, or for any other reason) and preliminary or final drafts of writings, records, and recordings of every kind and description, whether inscribed by hand or by mechanical, electronic, microfilm, photographic or other means, as well as phonic (such as tape recordings) or visual reproductions of all statements, conversations or events and including, without limitation, correspondence, teletype messages, notes, reports, compilations, schedules, studies, tabulations, tallies, maps, charts, diagrams, drawings, plans, pictures, computer runs, advertising and promotional material, press releases, minutes and records of any memoranda of all press releases, minutes and records of any memoranda of all types, inter-office and intra-office communications, notes of conversations, vouchers, financial calculations and statements, working papers, statistical analyses, invoices, purchase orders, expense account records, stenographers, notebooks, desk calendars, appointment books, diaries, manuals, pamphlets, brochures, escrow instructions, contracts,

deeds, agreements, title reports, listings, authorizations, and any abstracts, summaries and analyses of the above, and all other recorded matter of every nature and kind.

5.      **"Residency."** The term **"residency"** is defined as the period during which time Helen Ray was a resident of, Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center, from the date of admission until the date of discharge, or from on or about July 16, 2008 to on or about June 19, 2014.

6.      **"Facility."** The term **"facility"** is defined as Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center located at 945 West Russell St., Elkhorn City, Pike County, Kentucky 41522.

7.      **"Identify."** The term **"identify"** means to state or a statement of:

a.    in the case of a person other than a natural person, its name, the address of its principal place of business (including zip code), its telephone number, and the name of its chief executive officer, as well as, if it has a person other than a natural person that ultimately controls it, that other person's name, the address of that person's principal place of business (including zip code), that other person's telephone number, and that person's chief executive officer;

b.    in the case of a natural person, his or her name, residential address and telephone number, business address and telephone number, employer, and title or position;

c.    in the case of a communication, its date, type (e.g., telephone conversation or discussion), the place where it occurred, the identity of the person who made the communication, the identity of the person that received the communication, the identity of each other person present when it was made, and the subject matter discussed;

d.    in the case of a document, the title of the document, the author, the title or position of the author, the addressee, each recipient, the type of document, the subject matter, the date of preparation, and its number of pages; and

e. in the case of an agreement, its date, the place where it occurred, the identity of all persons who were parties to the agreement, the identity of each person who has knowledge of the agreement and all other persons present when it was made, and the subject matter of the agreement.

8. **"Services."** The term "**services**" means any services whatsoever, including, but not limited to, nursing services, managerial services, accounting services, consultant services, supervisory services, and payroll services.

9. To preserve the privacy of residents other than Girdell Hall, Defendant may delete, obliterate, or otherwise redact the names of residents other than Girdell Hall from answers to discovery.

10. If objections are interposed to any Interrogatory or Request for Production of Documents, the complete basis for the objection shall be stated. If it is contended that the information sought is privileged for any reason, it is requested that the factual basis of such privilege be stated and that a privilege log be provided so that Plaintiff has the means and opportunity to fully evaluate the claim of privilege.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Please **identify** all persons that **you** reported **facility** operational matters to, and whether on a daily, weekly or monthly basis.

**ANSWER:**

**INTERROGATORY NO. 2:** Please **identify** the procedures utilized by **you** during the state survey process at the **facility** while you were Administrator during Helen Ray's **residency**, including, but not limited to:

a) **Persons** and their titles who were notified that a survey was being conducted

b) Any initiatives undertaken by **you** or **your** staff; and,

c) Preparations made for survey exit conferences with the state surveyors.

**ANSWER:**

**INTERROGATORY NO. 3:** Please **identify** the areas of care and treatment that **you** routinely discussed with incoming residents and/or their families regarding the services **your facility** would provide while **you** were Administrator during Helen Ray's **residency**.

**ANSWER:**

**INTERROGATORY NO. 4:** Please **identify** the procedure for implementing a plan of correction after deficiencies were cited by state surveyors at the **facility** while **you** were Administrator during Helen Ray's **residency**.

**ANSWER:**

**INTERROGATORY NO. 5:** Please **identify** all facilities where **you** have worked in the capacity of nursing home administrator.

**ANSWER:**

**INTERROGATORY NO. 6:** Please **identify** by name and dates of submission all reports that **you** submitted to either a corporate or home office regarding quality of care issues at the **facility** while **you** were Administrator during Helen Ray's **residency** (i.e. staffing, acuity levels, levels of care, key indicators, etc.).

**ANSWER:**

**INTERROGATORY NO. 7:**  Please **identify** the procedures utilized to investigate problems at the **facility** while **you** were Administrator during Helen Ray's **residency** including, but not limited to, falls, resident care concerns, incidents or unusual occurrences, or any other area of concern that would prompt a **facility** investigation.

**ANSWER:**

**INTERROGATORY NO. 8:**  Please **identify** the procedure during Helen Ray's **residency** for notifying a resident's family of significant changes in a resident's condition.

**ANSWER:**

**INTERROGATORY NO. 9:**  Please **identify** the procedures during Helen Ray's **residency** for notifying the Cabinet for Health and Family Services, Office of Inspector General, Department for Community Based Services, Adult Protective Services, Long Term Care Ombudsman, Department of Elder Affairs, or law enforcement offices of any significant changes in a resident's condition resulting in the resident being in immediate jeopardy.

**ANSWER:**

**INTERROGATORY NO. 10:**  Please **identify** whether **you** ever notified residents and/or their families of any deficiencies cited by any state or federal agency, the Cabinet for Health and Family Services, Office of Inspector General, Department for Community Based Services, Adult Protective Services, Long Term Care Ombudsman, Department of Elder Affairs, or law enforcement offices at the facility while **you** were Administrator during the **residency**. If so, please state how the residents and/or their families were notified.

**ANSWER:**

**INTERROGATORY NO. 11:** Please state whether the **facility** ever provided refunds to residents and/or the state for services and care not provided while **you** were employed at the **facility** as Administrator.

**ANSWER:**

**INTERROGATORY NO. 12:** Please **identify your** responsibilities as Administrator of the **facility**.

**ANSWER:**

**INTERROGATORY NO. 13:** Please **identify** the process utilized to evaluate **your** job performance at the **facility** while **you** were Administrator and **identify** the **person** who performed this evaluation.

**ANSWER:**

**INTERROGATORY NO. 14:** Please **identify** the procedures and processes utilized by **you** to evaluate the job performance of **persons** at the **facility** while **you** were Administrator in supervisory positions, including but not limited to the Director of Nursing and the Assistant Director of Nursing.

**ANSWER:**

**INTERROGATORY NO. 15:** Please state the nature of **your** involvement, if any, with the preparation and submission of the annual budget for the **facility** during Helen Ray's **residency.**

**ANSWER:**

**INTERROGATORY NO. 16:** Please list the names of the **persons** who assisted **you** in preparing the budget for the **facility** while **you** were Administrator during Helen Ray's **residency.**

**ANSWER:**

**INTERROGATORY NO. 17:** Please **identify** the name and occupation of the **person** or **persons** who gave the final approval of the budget at the **facility.**

**ANSWER:**

**INTERROGATORY NO. 18:** During **your** tenure as Administrator, please list how many occasions, including dates if possible, the **facility** was staffed below the Commonwealth of Kentucky minimum standards as defined by state laws addressing staffing ratios in long-term care facilities according to the National Conference of State Legislature's Health Policy Tracking Service, as well as the minimum standards as defined by KRS 205.510 to 205.645, KRS 205.510, and the members of any Long-Term Care Staffing Committee in place during Helen Ray's **residency.**

**ANSWER:**

**INTERROGATORY NO. 19:** During your tenure as Administrator, please list how many occasions, including dates, if possible, the facility was staffed below the federal regulation minimum standards.

**ANSWER:**

**INTERROGATORY NO. 20:** Please describe in detail your educational background that qualified you for your position as a nursing home administrator.

**ANSWER:**

**INTERROGATORY NO. 21:** Please describe all continuing education you have completed in the past three years.

**ANSWER:**

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST NO. 1:** Please provide a copy of your administrator license.

**RESPONSE:**

**REQUEST NO. 2:** Please produce all reports, correspondence, memorandums and/or any other form of communication or documents not included as a part of the "normal" facility chart used to memorialize the care and treatment rendered to Helen Ray at the facility during the residency.

**RESPONSE:**

*Respectfully Submitted,*

GARCIA, ARTIGLIERE & MEDBY

M. Brandon Faulkner
220 West Main Street, Suite 2250
Louisville, Kentucky 40202
Telephone:(502) 584-3805
Facsimile: (502) 584-3811
*Counsel for Plaintiff*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 15-CI-778

FILED
ANNA PINSON SPEARS
AUG - 4 2015
PIKE CIRCUIT/DISTRICT COURT
BY:
D.C.

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased,

PLAINTIFF

v.

**PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO KENTUCKY MEDICAL INVESTORS, LLC (GA) D/B/A MOUNTAIN VIEW HEALTH CARE CENTER**

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER, et al.

DEFENDANTS

*** *** *** ***

Comes the Plaintiff, Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, and on behalf of the Wrongful Death Beneficiaries of Helen Ray, deceased, by counsel, and propounds the following Interrogatories and Requests for Production of Documents to the Defendant, Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center to be answered fully under oath and within forty-five (45) days from the date of service hereof, in accordance with and pursuant to Civil Rules 33 and 34, as follows

**DEFINITIONS AND INSTRUCTIONS**

1. **"Defendant."** The term **"Defendant"** refers to Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center, and its attorneys, agents, employees, partners, officers, directors, and all persons acting or purporting to act on its behalf.

2. **"You"** or **"Your."** The terms **"you"** and **"your,"** refer, individually and collectively to the individual, partnership, or corporate Defendant(s) to whom these requests are

addressed, and all agents, employees, partners, officers, directors and all persons acting or purporting to act on the behalf of said Defendant(s).

3. **"Person."** The term **"person"** is defined as "a human being, and where appropriate, a public or private corporation, an unincorporated association, a partnership, a government, or a governmental authority." KRS 500.080 (12).

4. **"Document(s)"** and/or **"Documentation."** The terms **"document(s)"** and/or **"documentation"** includes all written, graphic or otherwise recorded matter however produced or reproduced, including the originals (or any copies when originals are not available) and non-identical copies (where different from the original because notes were made on such copies or because said copies may have been sent to different individuals than originals, or for any other reason) and preliminary or final drafts of writings, records, and recordings of every kind and description, whether inscribed by hand or by mechanical, electronic, microfilm, photographic or other means, as well as phonic (such as tape recordings) or visual reproductions of all statements, conversations or events and including, without limitation, correspondence, teletype messages, notes, reports, compilations, schedules, studies, tabulations, tallies, maps, charts, diagrams, drawings, plans, pictures, computer runs, advertising and promotional material, press releases, minutes and records of any memoranda of all press releases, minutes and records of any memoranda of all types, inter-office and intra-office communications, notes of conversations, vouchers, financial calculations and statements, working papers, statistical analyses, invoices, purchase orders, expense account records, stenographers, notebooks, desk calendars, appointment books, diaries, manuals, pamphlets, brochures, escrow instructions, contracts, deeds, agreements, title reports, listings, authorizations, and any abstracts, summaries and analyses of the above, and all other recorded matter of every nature and kind.

5. **"Residency."** The term **"residency"** is defined as the period during which time Helen Ray was a resident of, Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center, from the date of admission until the date of discharge, or from on or about July 16, 2008 to on or about June 19, 2014.

6. **"Facility."** The term **"facility"** is defined as Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center located at 945 West Russell St., Elkhorn City, Pike County, Kentucky 41522.

7. **"Identify."** The term **"identify"** means to state or a statement of:

a. in the case of a person other than a natural person, its name, the address of its principal place of business (including zip code), its telephone number, and the name of its chief executive officer, as well as, if it has a person other than a natural person that ultimately controls it, that other person's name, the address of that person's principal place of business (including zip code), that other person's telephone number, and that person's chief executive officer;

b. in the case of a natural person, his or her name, residential address and telephone number, business address and telephone number, employer, and title or position;

c. in the case of a communication, its date, type (e.g., telephone conversation or discussion), the place where it occurred, the identity of the person who made the communication, the identity of the person that received the communication, the identity of each other person present when it was made, and the subject matter discussed;

d. in the case of a document, the title of the document, the author, the title or position of the author, the addressee, each recipient, the type of document, the subject matter, the date of preparation, and its number of pages; and

e. in the case of an agreement, its date, the place where it occurred, the identity of all persons who were parties to the agreement, the identity of each person who has knowledge of the agreement and all other persons present when it was made, and the subject matter of the agreement.

8. **"Services."** The term **"services"** means any services whatsoever, including, but not limited to, nursing services, managerial services, accounting services, consultant services, supervisory services, and payroll services.

9. To preserve the privacy of residents other than Helen Ray, Defendant may delete, obliterate, or otherwise redact the names of residents other than Helen Ray from answers to discovery.

10. If objections are interposed to any Interrogatory or Request for Production of Documents, the complete basis for the objection shall be stated. If it is contended that the information sought is privileged for any reason, it is requested that the factual basis of such privilege be stated and that a privilege log be provided so that Plaintiff has the means and opportunity to fully evaluate the claim of privilege.

**INTERROGATORIES**

**INTERROGATORY NO. 1:** Please **IDENTIFY** all **PERSONS** employed by the facility during the residency of Helen Ray and further **IDENTIFY** any **PERSONS** who on **YOUR** behalf, provided any **SERVICES** to Helen Ray during her **RESIDENCY** at the **FACILITY**, and state whether each individual is a current or former employee of the **FACILITY** or any named **DEFENDANT**.

**ANSWER:**

**INTERROGATORY NO. 2:** Please **IDENTIFY** all "Management Personnel" who were employed at the **FACILITY** during the **RESIDENCY**, including but not limited to the Administrator, Director of Nursing, Assistant Director of Nursing, Medical Director and all Department Heads, and state whether each individual is a current or former employee of the **FACILITY** or any named **DEFENDANT**.

**ANSWER:**

**INTERROGATORY NO. 3:** Please describe the exact nature of **SERVICES** provided by any named **DEFENDANT** herein or other third-party entity, including any management company, to the **FACILITY** during Helen Ray's **RESIDENCY**.

**ANSWER:**

**INTERROGATORY NO. 4:** **IDENTIFY** all members of the governing body for the **FACILITY** during the **RESIDENCY**. The term "governing body" as used in this Interrogatory shall refer to that which is defined in Title 42 of the *Code of Federal Regulations* §483.75(d).

**ANSWER:**

**INTERROGATORY NO. 5:** Please state whether **YOU** had a system to record consumer, resident or employee suggestions (i.e., suggestion box, 800 number, etc.) regarding the **FACILITY**. If so, please **IDENTIFY**, with sufficient particularity to form the basis of a request to produce, the names and types of records for the consumer, resident or employee suggestions; the person or persons primarily responsible for sorting, filtering or responding to

consumer, resident or employee suggestions; and the name and business address of the records custodian who maintains the above consumer, resident or employee suggestions.

**ANSWER:**

**INTERROGATORY NO. 6:** Specifically state each and every date any **PERSON** engaged by **YOU** to render **SERVICES** at the **FACILITY** notified any physician or family member of Helen Ray about any change in her condition or any problem with respect to care received by Helen Ray at the **FACILITY**.

**ANSWER:**

**INTERROGATORY NO. 7:** Please **IDENTIFY**, with sufficient particularity to formulate the basis of a request to produce, all **DOCUMENTS** of any kind prepared and/or maintained by the **FACILITY**, which pertain in any way to Helen Ray and state the name, title and business address of the custodian of each such record.

**ANSWER:**

**INTERROGATORY NO. 8:** Do **YOU** claim that Helen Ray or any other **PERSON** or entity was at fault, negligent, or comparatively negligent, in whole or in part, for the claims asserted against **YOU** in this lawsuit? If **your** answer is "Yes" please **IDENTIFY** said individual(s) and describe in detail each act or omission on the part of Plaintiff or any other **PERSON** or entity that **YOU** contend constituted negligence or fault or caused in whole or part Plaintiff's injuries.

**ANSWER:**

**REQUEST NO. 9:** Please provide all **DOCUMENT(s)** consisting of the "Nurse Staffing Information" for the **FACILITY** during Helen Ray's **RESIDENCY**. The term "Nurse Staffing Information" as used in this Request shall refer to that which is defined in Title 42 of the *Code of Federal Regulations* § 483.30(e):

(e) *Nurse staffing information*—

(1) *Data requirements.* The facility must post the following information on a daily basis:

(i) Facility name.

(ii) The current date.

(iii) The total number and the actual hours worked by the following categories of licensed and unlicensed nursing staff directly responsible for resident care per shift:

(A) Registered nurses.

(B) Licensed practical nurses or licensed vocational nurses (as defined under State law).

(C) Certified nurse aides.

(iv) Resident census.

(2) *Posting requirements.*

(i) The facility must post the nurse staffing data specified in paragraph (e)(1) of this section on a daily basis at the beginning of each shift.

(ii) Data must be posted as follows:

(A) Clear and readable format.

(B) In a prominent place readily accessible to residents and visitors.

(3) *Public access to posted nurse staffing data.* The facility must, upon oral or written request, make nurse staffing data available to the public for review at a cost not to exceed the community standard.)

This references are not made a part of the inquiry but rather submitted for ease of reference of the responding party.).

**RESPONSE:**

**REQUEST NO. 10:**  Please provide all time cards and other time recordings for all personnel, (including relief or pool personnel) who worked at the **FACILITY** at any time during Helen Ray's **RESIDENCY** at the **FACILITY**.

**RESPONSE:**

**REQUEST NO. 11:**  Please provide all work schedules, employee sign-in sheets and time sheets which show the identity, number (quantity) and/or classification of staff (including but not limited to R.N., L.P.N, nurses' aides, orderlies, medication aides, etc.) who worked at the **FACILITY** at any time during Helen Ray's **RESIDENCY** at the **FACILITY**.

**RESPONSE:**

**REQUEST NO. 12:**  Please provide all **DOCUMENT(s)** evidencing in-service education or training classes conducted at the **FACILITY** for employees having any responsibility for any aspect of resident care encompassing the time period of July 2008 through June 2014

**RESPONSE:**

**REQUEST NO. 13:** Please produce the **FACILITY** quality indicator reports generated for the **FACILITY** encompassing the time period of July 2008 through June 2014.

**RESPONSE:**

**REQUEST NO. 14:** Please provide all **DOCUMENT(s)** received from employees of the **FACILITY** which in any manner whatsoever reference the staffing levels of the **FACILITY** encompassing the time period of July 2008 through June 2014.

**RESPONSE:**

**REQUEST NO. 15:** Please provide all **DOCUMENT(s)** reflecting, evidencing and/or consisting of any questionnaires, inquiries and/or surveys of employees of the **FACILITY** referencing, relating to and/or memorializing employee satisfaction relating to any aspect of employment at the **FACILITY** including, but not limited to, adequacy of staffing encompassing the time period of July 2008 through June 2014.

**RESPONSE:**

**REQUEST NO. 16:** Please provide all **DOCUMENT(s)** reflecting, evidencing and/or consisting of any questionnaires, inquiries and/or surveys of residents and/or family members of the facility referencing, relating to and/or memorializing employee satisfaction relating to any aspect of care provided at the **FACILITY** encompassing the time period of July 2008 through June 2014. (The names of any and all residents, other than Helen Ray, should be redacted.)

**RESPONSE:**

**REQUEST NO. 17:**  Please produce the floor plan of the **FACILITY** that reflects the
**FACILITY** during the **RESIDENCY**.

    **RESPONSE:**

**REQUEST NO. 18:**  Please produce a copy of the organizational chart(s) and/or
corporate structure(s) of **DEFENDANT** in effect during Helen Ray's **RESIDENCY** at the
**FACILITY**.

    **RESPONSE:**

**REQUEST NO. 19:**  Please produce all contracts with outside consultants or medical
doctors who provided care or **SERVICES** to the **RESIDENCY** at the **FACILITY**.

    **RESPONSE:**

**REQUEST NO. 20:**  Please produce all resident council minutes for meetings that took
place at the **FACILITY** encompassing the time period of July 2008 through June 2014.  (The
names of any and all residents, other than Helen Ray, should be redacted.)

    **RESPONSE:**

**RESPONSE NO. 21:**  Please produce all family council minutes for meetings that took
place at the **FACILITY** encompassing the time period of July 2008 through June 2014.  (The
names of any and all residents, other than Helen Ray, should be redacted.)

    **RESPONSE:**

**REQUEST NO. 22:** Please produce all surveys, mock surveys, **DOCUMENTS**, reports and tools encompassing the time period of July 2008 through June 2014, which memorialize **DEFENDANT'S** evaluation and monitoring of the **FACILITY'S** compliance with mandatory regulations, policies and procedures, and care given to residents.

**RESPONSE:**

**REQUEST NO. 23:** Please produce all personnel files, in their entirety, for any R.N., LPN, CNA, Nurse Aide, or any other licensed or unlicensed individual that rendered care to Helen Ray during her **RESIDENCY** at the **FACILITY**. (Any social security numbers, financial information (bank information, retirement information, etc.), or personal health information should be redacted.)

**RESPONSE:**

**REQUEST NO. 24:** Please produce all **DOCUMENTS** that reflect or relate to discussions of staffing at the **FACILITY**, including but not limited to, inter-company memoranda, electronic mail, handwritten notes, correspondence or any other **DOCUMENTS** that reflect discussions of staffing at the **FACILITY** encompassing the time period of July 2008 through June 2014.

**RESPONSE:**

**REQUEST NO. 25:** Please produce all **DOCUMENTS** that reflect or relate to the operating budget at the **FACILITY**, including but not limited to, inter-company memoranda, electronic mail, handwritten notes, correspondence or any other **DOCUMENTS** that reflect

discussions of the operating budget at the **FACILITY** encompassing the time period of July 2008 through July 2014

**RESPONSE:**

**REQUEST NO. 26:**    Please produce all documentation and/or reports from any consultant or management personnel hired to evaluate the adequacy of care rendered to residents at the **FACILITY** anytime during Helen Ray's **RESIDENCY.**

**RESPONSE:**

**REQUEST NO. 27:**    Please produce all budget variance reports that memorialize **DEFENDANT'S** evaluation of the expenditures, including but not limited to staffing, supplies, and food at the **FACILITY**, and how the aforesaid expenditures compared to budget productions for the **FACILITY** encompassing the time period of July 2008 through June 2014.

**RESPONSE:**

**REQUEST NO. 28:**    Please produce all bonus or incentive programs, applicable to administrators or other staff of the **FACILITY**, applicable to all district staff responsible for overseeing or assisting with operations at the **FACILITY**, and all Regional staff in the region which included the **FACILITY** encompassing the time period of July 2008 through June 2014.

**RESPONSE:**

**REQUEST NO. 29:**    A copy of all electronic mail transmissions from any **DEFENDANT** employee, agent or representative concerning staffing or resident care issues at

the **FACILITY** encompassing the time period of the **RESIDENCY** and six months prior. This Request specifically seeks electronic mail related to lack of staff and/or the effect of lack of staff on resident care, including electronic mail related to the number of falls at the **FACILITY**. (The names of any and all residents, other than Helen Ray, should be redacted.)

**RESPONSE:**

**REQUEST NO. 30:** A copy of all electronic mail transmissions from the administrator of the **FACILITY** to the **DEFENDANT'S** regional or national corporate offices or from the **DEFENDANT'S** regional or national corporate offices to the administrator of the **FACILITY** concerning payroll related to CNA and Nurse staffing at the facility, resident care at the **FACILITY**, increasing the census numbers at the **FACILITY**, and increasing (or decreasing) staffing at the **FACILITY** encompassing the time period of the **RESIDENCY** and six months prior.

**RESPONSE:**

**REQUEST NO. 31:** Please produce all electronic mail transmissions from any **DEFENDANT** employee, agent or representative, containing any of the following terms and/or derivations thereof: Helen Ray, falls, staff, budget, PPD, labor hours, census, skilled mix, Medicare, survey deficiencies, neglect, and abuse encompassing the time period of the **RESIDENCY** and six months prior.

**RESPONSE:**

**REQUEST NO. 32:** Please produce all annual reports prepared by **DEFENDANT** and/or parent company, for the years 2008 through 2014.

**RESPONSE:**

**REQUEST NO. 33:** Please produce all **FACILITY** cost reports for the years 2008 through 2014.

**RESPONSE:**

**REQUEST NO. 34:** Please produce all **DOCUMENT(s)** which evidence or reflect statements from any **PERSON** (including Plaintiff or his family members) that were obtained in the normal course of business before the responding **DEFENDANT** had formal notice of this lawsuit which concern Helen Ray.

**RESPONSE:**

**REQUEST NO. 35:** Please produce all **DOCUMENT(s)** sent by any agent, employee or representative of the **DEFENDANT** (this includes attorneys for the **DEFENDANT**) sent to any former employee(s) of the **FACILITY** which in any manner reference Helen Ray or reference the subject matter of this litigation.

**RESPONSE:**

**REQUEST NO. 36:** Please provide all insurance agreements and policies which afford coverage to the responding **DEFENDANT** or its agents, employees, or officers for any conduct

alleged against them for any the allegations of the Plaintiff as set forth in the operative complaint.

**RESPONSE:**

**REQUEST NO. 37:** Please produce all **DOCUMENTS** that concern Helen Ray in any way that have not been produced in response to request for production above.

**RESPONSE:**

*Respectfully Submitted,*

**GARCIA, ARTIGLIERE & MEDBY**

M. Brandon Faulkner
220 West Main Street, Suite 2250
Louisville, Kentucky 40202
Telephone:(502) 584-3805
Facsimile: (502) 584-3811
***Counsel for Plaintiff***

# EXHIBIT 2

GARCIA, ARTIGLIERE & MEDBY
220 WEST MAIN STREET
SUITE 2250
LOUISVILLE, KENTUCKY 40202
TELEPHONE (502) 584-3805
FACSIMILE (502) 584-3811

September 29, 2015

**VIA FACSIMILE AND U.S. MAIL**

J. Peter Cassidy, III, Esq.
Quintairos, Prieto, Wood & Boyer, PA
2452 Sir Barton Way, Ste. 300
Lexington, KY  40509

**Re:  Helen Ray vs. Mountain View Healthcare Center**

Dear Mr. Cassidy:

As you know, Plaintiff's Complaint was accompanied by her first set of Interrogatories and Requests for Production of Documents, Requests for Admissions and second set of Interrogatories and Requests for Production of Documents to the Defendants. Responses to said discovery were due on or before September 21, 2015. The time for Defendants to serve responses having now passed, we respectfully request these overdue responses be in our office within seven (7) days from the date of this correspondence.

As always, do not hesitate to call for any reason. We solicit your prompt attention to this matter and thank you in advance for your anticipated cooperation.

Very truly yours,

Michael Brandon Faulkner

MBF:sjh
cc:  Client
K:\Ray, Helen (15-081-KY)\Correspondence\Cassidy.Overdue.Discovery.docx

P 1
09.29.2015 16:40
Serial No. A121011013606

## TX Result Report

| Destination | Start Time | Time | Prints | Result | Note |
|---|---|---|---|---|---|
| 1-859-226-0069 | 09-29 16:40 | 00:00:20 | 002/002 | OK | PC |

**Result** OK : Communication OK S-OK : Stop Communication Busy : Busy No Ans : No Answer
Cont : Continue LOVR : Receiving Length Over SOVR : Exceed Broadcast No. M-Full : Memory Full
NG : Other Error IL-PJL : PJL Error LGN-ER : Login Error

**Note** TMR : Timer TX PC : PC-Fax POL : Polling Call : Manual TX
FWD : Forward Fcode : F-Code BUL : Bulletin I-Fax : Internet Fax

GARCIA, ARTIGLIERE & MEDBY
220 WEST MAIN STREET
SUITE 2250
LOUISVILLE, KENTUCKY 40202
TELEPHONE (502) 584-3801
FACSIMILE (502) 584-3811

September 29, 2015

**VIA FACSIMILE AND U.S. MAIL**

J. Peter Cassidy, III, Esq.
Quintairos, Prieto, Wood & Boyer, PA
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509

**Re: Helen Ray vs. Mountain View Healthcare Center**

Dear Mr. Cassidy:

As you know, Plaintiff's Complaint was accompanied by her first set of Interrogatories and Requests for Production of Documents, Requests for Admissions and second set of Interrogatories and Requests for Production of Documents to the Defendants. Responses to said discovery were due on or before September 21, 2015. The time for Defendants to serve responses having now passed, we respectfully request these overdue responses be in our office within seven (7) days from the date of this correspondence.

As always, do not hesitate to call for any reason. We solicit your prompt attention to this matter and thank you in advance for your anticipated cooperation.

Very truly yours,

Michael Brandon Faulkner

MBF:sjh
cc: Client
K:\Ray, Helen (15-021-KY)\Correspondence\Cassidy.Overdue Discovery.docx

# EXHIBIT 3



QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

ATTORNEYS AT LAW

WWW.QPWBLAW.COM

2452 SIR BARTON WAY, SUITE 300
LEXINGTON, KY 40509
TELEPHONE: (859) 226-0057 ♦ FACSIMILE: (859) 226-0059

J. Peter Cassidy, III
PCassidy@qpwblaw.com

October 5, 2015

**VIA FACSIMILE & U.S. MAIL**
M. Brandon Faulkner, Esq.
Garcia, Artigliere & Medby
220 W. Main St., Ste. 2250
Louisville, KY 40202

**RE: Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, and on behalf of the Wrongful Death Beneficiaries of Helen Ray, deceased vs. Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center, et al. -- Pike Circuit Court, Civil Action No. 15-CI-778**

Dear Brandon:

I am in receipt of your letter requesting the status of Defendants' discovery responses. Could you please send to me the discovery requests you wish to have answered? Thank you.

Sincerely,

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**

J. Peter Cassidy, III

JPC/cjm
87177

# EXHIBIT 4

GARCIA, ARTIGLIERE & MEDBY
220 WEST MAIN STREET
SUITE 2250
LOUISVILLE, KENTUCKY 40202
TELEPHONE (502) 584-3805
FACSIMILE (502) 584-3811

October 6, 2015

**VIA FACSIMILE AND U.S. MAIL**

J. Peter Cassidy, III, Esq.
Quintairos, Prieto, Wood & Boyer, PA
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509

**Re: Helen Ray vs. Mountain View Healthcare Center**

Dear Mr. Cassidy:

We are in receipt of your correspondence dated October 5, 2015 wherein you request copies of Plaintiff's discovery requests that were filed simultaneously with the Complaint on August 4, 2015. As such, please find enclosed said discovery requests. As you know, Defendants' responses to same are now overdue. Therefore, we respectfully request that Defendants' responses be in our office by close of business on Friday, October 16, 2015.

As always, do not hesitate to call for any reason. We solicit your prompt attention to this matter and thank you in advance for your anticipated cooperation.

Very truly yours,

***Dictated but not read***

Michael Brandon Faulkner

MBF:sjh
cc: Client
K:\Ray, Helen (15-081-KY)\Correspondence\Cassidy.02.Discovery.docx

P 1

**TX Result Report**

10.06.2015 16:36
Serial No. A121011013606

| Destination | Start Time | Time | Prints | Result | Note |
|---|---|---|---|---|---|
| 1-859-226-0059 | 10-06 16:28 | 00:07:26 | 034/034 | OK | PC |

**Result** OK : Communication OK S-OK : Stop Communication Busy : Busy No Ans : No Answer
Cont : Continue LOVR : Receiving Length Over SOVR : Exceed Broadcast No. M-Full : Memory Full
NG : Other Error 1L-PJL : PJL Error LGN-ER : Login Error

**Note** TMR : Timer TX PC : PC-Fax POL : Polling Call : Manual TX
FWD : Forward Fcode : F-Code BUL : Bulletin I-Fax : Internet Fax

GARCIA, ARTIGLIERE & MEDBY
228 WEST MAIN STREET
SUITE 2250
LOUISVILLE, KENTUCKY 40202
TELEPHONE (502) 584-5806
FACSIMILE (502) 584-3811

October 6, 2015

**VIA FACSIMILE AND U.S. MAIL**

J. Peter Cassidy, III, Esq.
Quintairos, Prieto, Wood & Boyer, PA
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509

**Re: Helen Ray vs. Mountain View Healthcare Center**

Dear Mr. Cassidy:

We are in receipt of your correspondence dated October 5, 2015 wherein you request copies of Plaintiff's discovery requests that were filed simultaneously with the Complaint on August 4, 2015. As such, please find enclosed said discovery requests. As you know, Defendants' responses to same are now overdue. Therefore, we respectfully request that Defendants' responses be in our office by close of business on Friday, October 16, 2015.

As always, do not hesitate to call for any reason. We solicit your prompt attention to this matter and thank you in advance for your anticipated cooperation.

Very truly yours,

*Dictated but not read*

Michael Brandon Faulkner

MBF:sjh
cc: Client
K:\Ray, Helen (15-081-KY)\Correspondence\Cassidy 02.Discovery.docx

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

FILED
ANNA PINSON SPEARS
NOV 24 2015
PIKE CIRCUIT/DISTRICT COURT
BY: D.C.

JENNIFER BINGHAM, as Executrix of the
ESTATE of HELEN RAY, deceased,
and on behalf of the Wrongful Death
Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v. **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a
MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * * * * *

Defendant, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View"), for its Response to Plaintiff's Motion to Compel, states as follows:

## ARGUMENT

This is a nursing home negligence action concerning Mountain View Health Care Center and former resident Helen Ray. Plaintiff has alleged negligence in the care and treatment of Ms. Ray during her nearly six year residency at Mountain View Health Care Center. As referenced in her Motion, Plaintiff propounded discovery requests with her Complaint on August 5, 2015.

Defendant has been working on gathering the necessary documents and information to properly

respond to Plaintiff's Interrogatories and Requests for Production of Documents. Because of the

length of Mr. Ray's residency, there have been thousands of pages to review and Defendant is

close to finalizing its responses. As such, Defendant would respectfully request thirty (30) days

to serve responses to Plaintiff's discovery requests.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this 19th day of November, 2015, upon the following, via U.S. Mail and facsimile:

M. Brandon Faulkner, Esq.
Garcia, Artigliere & Medby
220 W. Main St., Ste. 2250
Louisville, KY 40202

Kentucky Medical Investors, LLC
National Registered Agents, Inc.
306 W. Main St., Ste. 512
Frankfort, KY 40601

Misty Ward
945 W. Russell St.
Elkhorn City, KY 41522

Judith Branham
945 W. Russell St.
Elkhorn City, KY 41522

ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION NO. II

ACTION NO. 15-CI-00778

ESTATE OF HELEN RAY, by & through its Executrix, JENNIFER BINGHAM — PLAINTIFF

V. — ORDER

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA), ET AL — DEFENDANTS

*****************

This cause coming before the Court on the Plaintiff's Motion to Compel the Defendants to answer discovery filed in the record on August 4, 2015, and the Court having reviewed the record and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the Plaintiff's Motion to Compel the Defendants to answer discovery filed in the record on August 4, 2015, is GRANTED, and the Defendants shall have ten (10) days from today's date to answer the discovery filed in the record on August 4, 2015.

ENTERED this 20th day of November, 2015.

HON. THOMAS SMITH, SPECIAL JUDGE
(sitting in lieu of the regular sitting Judge of Pike Circuit Court, Division No. II)

CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Order was this day mailed to the parties and/or their attorneys of record, this the 20 day of November, 2015.

ANNA PINSON SPEARS, CLERK
PIKE CIRCUIT COURT

BY: ______________________
D.C.

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

FILED
ANNA PINSON SPEARS
NOV 30 2015
PIKE CIRCUIT/DISTRICT COURT
BY: D.C.

JENNIFER BINGHAM, as Executrix of the ESTATE of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

**DEFENDANT'S MOTION FOR ADDITIONAL TIME**

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a
MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * * * *

Defendant, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View"), through counsel, and pursuant to Kentucky Rules of Civil Procedure 6.02(a), hereby move this Court for an additional thirty (30) days time in which to serve Responses to Plaintiff's Discovery Requests.

This is a nursing home negligence action concerning Mountain View Health Care Center and former resident Helen Ray. Plaintiff has alleged negligence in the care and treatment of Ms. Ray during her nearly **six year** residency at Mountain View Health Care Center. Ms. Ray's chart for that time period is more than 5600 pages long and after a review of the chart, many of the

nursing notes included are illegible. Thus, in an effort to provide Plaintiff with a legible copy of the chart, Defendants have been working with a third party to rescan the original chart so that the records provided to Plaintiff in response to their discovery requests will be legible. This has taken some time, but can be done in the next thirty (30) days. As such, Defendant respectfully requests thirty (30) days to create legible copies of the entire chart and serve responses to Plaintiff's discovery requests.

This Motion is not made for the purpose of delay, or for any other improper purpose. Further, Plaintiff will not be prejudiced by allowing Defendant an additional 30 days.

WHEREFORE, for the reasons stated herein, Defendants respectfully request this Court enter an Order allowing Defendants until December 30, 2015 to create legible copies of the entire chart and serve their Responses to Plaintiff's discovery requests in this matter.

**NOTICE**

This matter will come before the Court for a hearing on the 4th day of December, 2015, at the hour of 9:00 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this 25th day of November, 2015, upon the following, via U.S. Mail and facsimile:

M. Brandon Faulkner, Esq.
Garcia, Artigliere & Medby
220 W. Main St., Ste. 2250
Louisville, KY 40202

Kentucky Medical Investors, LLC
National Registered Agents, Inc.
306 W. Main St., Ste. 512
Frankfort, KY 40601

Misty Ward
945 W. Russell St.
Elkhorn City, KY 41522

Judith Branham
945 W. Russell St.
Elkhorn City, KY 41522

ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 15-CI-00778

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFF

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER, et al. DEFENDANTS

*** *** ***

**RESPONSE TO DEFENDANTS' MOTION FOR ADDITIONAL TIME**

Comes the Plaintiff, by and through counsel, and for her Response in Opposition to Defendants' Motion for Additional Time in Which to Answer Discovery states as follows:

**INTRODUCTION**

Plaintiff's Motion for Additional Time in which to serve Responses to Plaintiff's First Set of Interrogatories and Requests for Production should be denied. As set forth in more detail below, despite having had more than four (4) months and multiple extensions in which to respond to said discovery, Defendants have failed to provide even the most basic of discovery information. Defendants lackadaisical approach to discovery and compliance with the Kentucky Rules of Civil Procedure has deprived Plaintiff a meaningful opportunity to further investigate and timely prosecute this claim and should not be further tolerated by the Court. In fact, Defendants' failures previously left Plaintiff with no option but to seek the Court's assistance in compelling the overdue discovery responses via a Motion to Compel filed on November 10, 2015. Said Motion was subsequently granted by Order of the Court on November 20, 2015 and gave

Defendants' ten (10) in which to provide the requested discovery. Unfortunately, Defendants failed to comply and are thus in direct violation of this Court's Order. Nonetheless, Defendants seek yet another extension of thirty (30) days in which to provide Plaintiff even the most basic of information regarding this claim. Defendants' failure have prejudiced Plaintiff's pursuit of her claims and should not be further tolerated by the Court. Defendants' Motion should thus be denied.

## STATEMENT OF FACTS

1. Plaintiff's first set of discovery to Defendants was filed with the Complaint on August 4, 2015. Defendants' responses to same were originally due on or before September 21, 2015.

2. Having not received Defendants' responses on or before the deadline, the undersigned wrote defense counsel on September 29, 2015 inquiring as to the status of the overdue discovery responses. See **Exhibit 1**. In response to same, Defendants requested a second copy of said discovery requests via letter dated October 5, 2015, presumably indicating they were unaware of the previously tendered discovery requests. See **Exhibit 2.** The undersigned complied with this request and, as a professional courtesy, extended the deadline for Defendants to respond to on or before October 16, 2015. See **Exhibit 3.**

3. Plaintiff did not receive Defendants' Responses or any further communication requesting an additional extension in which to respond. Nonetheless, in yet another instance of professional courtesy and in effort to avoid unnecessarily involving the Court, Plaintiff allowed the Defendants yet another twenty-five days (25) days of additional time to provide responses prior to the filing of a Motion to Compel Discovery Responses on November 10, 2015. Unfortunately, Defendants lackadaisical approach to discovery and compliance with the Kentucky

Rules of Civil Procedure left Plaintiff with no option but to seek the Court's assistance in compelling the overdue discovery responses.

4. Accordingly, this Court entered an Order on November 20, 2015, granting Plaintiff's Motion to Compel. **Exhibit 4.** Defendants were ordered to answer Plaintiff's discovery within ten (10) days – said deadline being November 30, 2015.

5. Rather than comply with the Court's Order, Defendants have failed yet again to provide Plaintiff with even the most basic discovery responses. Instead, Defendants now seek to void this Court's order by filing a Motion for Additional Time. Defendants are requesting an additional Thirty (30) days in which to serve Responses to Plaintiff's discovery filed on record August 4, 2015. In essence, Defendants are requesting the Court grant them more than five (5) months to respond to even the most basic of discovery requests.

## ARGUMENT

Plaintiff's claims are based on the injuries suffered by Ms. Ray as the result of Defendants' neglect. All of the discovery requests submitted by Plaintiff is permissible under CR 26, and goes to the heart of Plaintiff's case. Plaintiff understands that if substantive responses are being provided, along with documents, this may take additional time to compile. Accordingly, Plaintiff has granted Defendants multiple extensions now totaling nearly four (4) months to gather the requested documents. However, the time has come for Defendants to comply with both the Kentucky Rules of Civil Procedure and the Orders of this Court. Defendants' lackadaisical approach to discovery and compliance with Orders of the Court should not rewarded with yet another extension of time in which to respond. Plaintiff is entitled to the requested documentation and timely prosecution of her claim(s).

**CONCLUSION**

WHEREFORE, for the above stated reasons, Plaintiff respectfully requests this Court deny Defendants' Motion for Additional Time and compel the Defendants to comply with this Court's Order entered on November 20, 2015. Plaintiff also requests reimbursement for the time and expenses incurred by her counsel in responding to this Motion in light of Defendants' failure to comply with previous Orders of the Court.

Respectfully Submitted,

**GARCIA ARTIGLIERE & MEDBY**

Stephen M. Garcia
M. Brandon Faulkner
220 W. Main Street, Suite 2250
Louisville, KY 40202
Phone: 502.584.3805
Facsimile: 502.584.3811
***Attorneys for Plaintiff***

**CERTIFICATE OF SERVICE**

This is to certify the original copy of the foregoing was sent via first class, United States mail, postage prepaid to **Clerk, Pike County Circuit Court, P.O. Box 1002, Pikeville, Kentucky 41502**, and a true and correct copy of the foregoing mailed this 1 day of December, 2015 to the following:

J. Peter Cassidy, III
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
PH: 859.226.0057
Fax: 859.226.0059
***Counsel for Defendants***

*Counsel for Plaintiff*

# EXHIBIT 1

GARCIA, ARTIGLIERE & MEDBY
220 WEST MAIN STREET
SUITE 2250
LOUISVILLE, KENTUCKY 40202
TELEPHONE (502) 584-3805
FACSIMILE (502) 584-3811

September 29, 2015

**VIA FACSIMILE AND U.S. MAIL**

J. Peter Cassidy, III, Esq.
Quintairos, Prieto, Wood & Boyer, PA
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509

**Re: Helen Ray vs. Mountain View Healthcare Center**

Dear Mr. Cassidy:

As you know, Plaintiff's Complaint was accompanied by her first set of Interrogatories and Requests for Production of Documents, Requests for Admissions and second set of Interrogatories and Requests for Production of Documents to the Defendants. Responses to said discovery were due on or before September 21, 2015. The time for Defendants to serve responses having now passed, we respectfully request these overdue responses be in our office within seven (7) days from the date of this correspondence.

As always, do not hesitate to call for any reason. We solicit your prompt attention to this matter and thank you in advance for your anticipated cooperation.

Very truly yours,

Michael Brandon Faulkner

MBF:sjh
cc: Client
K:\Ray, Helen (15-081-KY)\Correspondence\Cassidy.Overdue.Discovery.docx

P 1
09.29.2015 16:40
Serial No. A121011013606

TX Result Report

| Destination | Start Time | Time | Prints | Result | Note |
|---|---|---|---|---|---|
| 1-859-229-0059 | 09-29 16:40 | 00:00:20 | 002/002 | OK | PC |

Result OK : Communication OK S-OK : Stop Communication Busy : Busy No Ans : No Answer
Cont : Continue LOVR : Receiving Length Over SOVR : Exceed Broadcast No. M-Full : Memory Full
NG : Other Error IL-PJL : PJL Error LGN-ER : Login Error

Note TMR : Timer TX PC : PC-Fax POL : Polling Call : Manual TX
FWD : Forward Fcode : F-Code BUL : Bulletin I-Fax : Internet Fax

GARCIA, ARTIGLIERE & MEDBY
220 WEST MAIN STREET
SUITE [illegible]
LOUISVILLE, KENTUCKY [illegible]
TELEPHONE [illegible]
FACSIMILE [illegible]

September 29, 2015

**VIA FACSIMILE AND U.S. MAIL**

J. Peter Cassidy, III, Esq.
Quintairos, Prieto, Wood & Boyer, PA
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509

Re: **Helen Ray vs. Mountain View Healthcare Center**

Dear Mr. Cassidy:

As you know, Plaintiff's Complaint was accompanied by her first set of Interrogatories and Requests for Production of Documents, Requests for Admissions and second set of Interrogatories and Requests for Production of Documents to the Defendants. Responses to said discovery were due on or before September 21, 2015. The time for Defendants to serve responses having now passed, we respectfully request these overdue responses be in our office within seven (7) days from the date of this correspondence.

As always, do not hesitate to call for any reason. We solicit your prompt attention to this matter and thank you in advance for your anticipated cooperation.

Very truly yours,

Michael Brandon Faulkner

MBF:ajb
cc: Client
[illegible]

**EXHIBIT 2**

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
ATTORNEYS AT LAW
WWW.QPWBLAW.COM
2452 SIR BARTON WAY, SUITE 300
LEXINGTON, KY 40509
TELEPHONE: (859) 226-0057 ♦ FACSIMILE: (859) 226-0059

J. Peter Cassidy, III
PCassidy@qpwblaw.com

October 5, 2015

**VIA FACSIMILE & U.S. MAIL**
M. Brandon Faulkner, Esq.
Garcia, Artigliere & Medby
220 W. Main St., Ste. 2250
Louisville, KY 40202

**RE: Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, and on behalf of the Wrongful Death Beneficiaries of Helen Ray, deceased vs. Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center, et al. – Pike Circuit Court, Civil Action No. 15-CI-778**

Dear Brandon:

I am in receipt of your letter requesting the status of Defendants' discovery responses. Could you please send to me the discovery requests you wish to have answered? Thank you.

Sincerely,

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**

J. Peter Cassidy, III

JPC/cjm
87177

**EXHIBIT 3**

GARCIA, ARTIGLIERE & MEDBY
220 WEST MAIN STREET
SUITE 2250
LOUISVILLE, KENTUCKY 40202
TELEPHONE (502) 584-3805
FACSIMILE (502) 584-3811

October 6, 2015

**VIA FACSIMILE AND U.S. MAIL**

J. Peter Cassidy, III, Esq.
Quintairos, Prieto, Wood & Boyer, PA
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509

**Re: Helen Ray vs. Mountain View Healthcare Center**

Dear Mr. Cassidy:

We are in receipt of your correspondence dated October 5, 2015 wherein you request copies of Plaintiff's discovery requests that were filed simultaneously with the Complaint on August 4, 2015. As such, please find enclosed said discovery requests. As you know, Defendants' responses to same are now overdue. Therefore, we respectfully request that Defendants' responses be in our office by close of business on Friday, October 16, 2015.

As always, do not hesitate to call for any reason. We solicit your prompt attention to this matter and thank you in advance for your anticipated cooperation.

Very truly yours,

*Dictated but not read*

Michael Brandon Faulkner

MBF:sjh
cc: Client
K:\Ray, Helen (15-081-KY)\Correspondence\Cassidy.02.Discovery.docx

P 1
10.06.2015 16:38
Serial No. A121011013606

## TX Result Report

| Destination | Start Time | Time | Prints | Result | Note |
|---|---|---|---|---|---|
| 1-859-226-0069 | 10-06 16:28 | 00:07:26 | 034/034 | OK | PC |

Result OK : Communication OK S-OK : Stop Communication Busy : Busy No Ans : No Answer
Cont : Continue LOVR : Receiving Length Over SOVR : Exceed Broadcast No. M-Full : Memory Full
NG : Other Error 1L-PJL : PJL Error LGN-ER : Login Error

Note TMR : Timer TX PC : PC-Fax POL : Polling Call : Manual TX
FWD : Forward Fcode : F-Code BUL : Bulletin I-Fax : Internet Fax

GARCIA, ARTIGLIERE & MEDBY
[illegible] WEST MAIN STREET
SUITE [illegible]
LOUISVILLE, KENTUCKY [illegible]
TELEPHONE [illegible]
FACSIMILE [illegible]

October 6, 2015

**VIA FACSIMILE AND U.S. MAIL**

J. Peter Cassidy, III, Esq.
Quinlan, Priste, Wood & Boyer, PA
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509

Re: Helen Ray vs. Mountain View Healthcare Center

Dear Mr. Cassidy:

We are in receipt of your correspondence dated October 5, 2015 wherein you request copies of Plaintiff's discovery requests that were filed simultaneously with the Complaint on August 4, 2015. As such, please find enclosed said discovery requests. As you know, Defendants' responses to same are now overdue. Therefore, we respectfully request that Defendants' responses be in our office by close of business on Friday, October 16, 2015.

As always, do not hesitate to call for any reason. We solicit your prompt attention to this matter and thank you in advance for your anticipated cooperation.

Very truly yours,

*Dictated but not read*

Michael Brandon Faulkner

MBF:sjh
cc: Client
[illegible]

# EXHIBIT 4

ENTERED
ANNA PINSON SPEARS
NOV 20 2015
PIKE CIRCUIT/DISTRICT COURT
BY: D.C.

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION NO. II

ACTION NO. 15-CI-00778

ESTATE OF HELEN RAY, by & through its Executrix, JENNIFER BINGHAM — PLAINTIFF

V. — ORDER

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA). ET AL — DEFENDANTS

******************

This cause coming before the Court on the Plaintiff's Motion to Compel the Defendants to answer discovery filed in the record on August 4, 2015, and the Court having reviewed the record and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the Plaintiff's Motion to Compel the Defendants to answer discovery filed in the record on August 4, 2015, is GRANTED, and the Defendants shall have ten (10) days from today's date to answer the discovery filed in the record on August 4, 2015.

ENTERED this 20th day of November, 2015.

HON. THOMAS SMITH, SPECIAL JUDGE
(sitting in lieu of the regular sitting Judge of Pike Circuit Court, Division No. II)

CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Order was this day mailed to the parties and/or their attorneys of record, this the 20 day of November, 2015.

ANNA PINSON SPEARS, CLERK
PIKE CIRCUIT COURT

BY: ______________________
D.C.

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION NO. II

ACTION NO. 15-CI-00778

ESTATE OF HELEN RAY, by & through its Executrix, JENNIFER BINGHAM — PLAINTIFF

V. — ORDER

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA), ET AL — DEFENDANTS

************

This cause coming before the Court on the Defendants' Motion for Extension of Time to respond to the Plaintiff's discovery requests, and the Court having reviewed the record and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the Defendants' Motion for Extension of Time to respond to the Plaintiff's discovery requests is GRANTED, and the Defendants shall have until December 30, 2015, to respond to the Plaintiff's discovery requests.

ENTERED this 4th day of December, 2015.

ENTERED
ANNA PINSON SPEARS
DEC - 4 2015
PIKE CIRCUIT/DISTRICT COURT
BY: D.C.

HON. THOMAS SMITH, SPECIAL JUDGE
(sitting in lieu of the regular sitting Judge of Pike Circuit Court, Division No. II)

CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Order was this day mailed to the parties and/or their attorneys of record, this the 4 day of Dec, 2015.

ANNA PINSON SPEARS, CLERK
PIKE CIRCUIT COURT

BY: CW
D.C.

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the ESTATE of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v. **NOTICE OF SERVICE OF DISCOVERY**

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * * * *

Notice is hereby given that on December 8, 2015, the undersigned counsel for Defendants, Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center and Life Care Centers of America, Inc., served the following on Plaintiff:

1. Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center's First Set of Interrogatories to Plaintiff;

2. Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center's First Set of Requests for Production to Plaintiff;

3. Life Care Centers of America, Inc.'s First Set of Interrogatories to Plaintiff;

4. Life Care Centers of America, Inc.'s First Set of Requests for Production to Plaintiff;

5. Life Care Centers of America, Inc.'s First Set of Requests for Admission to Plaintiff;

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANTS,
KENTUCKY MEDICAL INVESTORS, LLC (GA) D/B/A MOUNTAIN VIEW HEALTH CARE CENTER AND LIFE CARE CENTERS OF AMERICA, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this 8th day of December, 2015, upon the following, via U.S. Mail and facsimile:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Garcia, Artigliere & Medby
220 W. Main St., Ste. 2250
Louisville, KY 40202

Lynzi Archibald, Esq.
Miller & Martin, PLLC
Suite 1200 Volunteer Bldg.
832 Georgia Ave.
Chattanooga, TN 37402

Misty Ward
945 W. Russell St.
Elkhorn City, KY 41522

Judith Branham
945 W. Russell St.
Elkhorn City, KY 41522

ATTORNEY FOR DEFENDANTS,
KENTUCKY MEDICAL INVESTORS, LLC (GA) D/B/A MOUNTAIN VIEW HEALTH CARE CENTER AND LIFE CARE CENTERS OF AMERICA, INC.

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the ESTATE of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v. **NOTICE OF SERVICE**

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * * * *

Defendant, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View"), by counsel, and pursuant to Rule 5.06 of the Kentucky Rules of Civil Procedure, hereby give notice that on the 30th day of December, 2015, the parties hereto were served via first class United States mail, postage prepaid with the following:

1. Mountain View Health Care Center's Answers to Interrogatories; and

2. Mountain View Health Care Center's Responses to Requests for Production of Documents.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this 30th day of December, 2015, upon the following, via U.S. Mail:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Garcia, Artigliere & Medby
220 W. Main St., Ste. 2250
Louisville, KY 40202

Lynzi Archibald, Esq.
Miller & Martin, PLLC
Suite 1200 Volunteer Bldg. 832 Georgia Ave.
Chattanooga, TN 37402

ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 15-CI-00778

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFF

v.

**NOTICE OF DISMISSAL OF DEFENDANT KENTUCKY MEDICAL INVESTORS, LLC WITHOUT PREJUDICE**

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER, et al. DEFENDANTS

*** *** *** ***

Pursuant to Kentucky Rule of Civil Procedure 41.01(1), Plaintiff Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, and on Behalf of the Wrongful Death Beneficiaries of Helen Ray, deceased, hereby gives notice that all claims asserted against Defendant Kentucky Medical Investors, LLC in the above-referenced matter are being dismissed without prejudice at this time in light of the Affidavit attached hereto as **Exhibit A**. However, Plaintiff has the right to re-name said entity as a Defendant at any time should discovery provide support for allegations of Kentucky Medical Investor, LLC's involvement in the ownership, operation, management, control and/or provision of services to Mountain View Health Care Center or for any other reasons appropriate under the Kentucky Rules of Civil Procedure.

Respectfully Submitted,

**GARCIA ARTIGLIERE & MEDBY**

Stephen M. Garcia
M. Brandon Faulkner
220 W. Main Street, Suite 2250
Louisville, KY 40202
Phone: 502.584.3805
Facsimile: 502.584.3811
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

This is to certify the original copy of the foregoing was sent via first class, United States mail, postage prepaid to **Clerk, Pike County Circuit Court, P.O. Box 1002, Pikeville, Kentucky 41502**, and a true and correct copy of the foregoing mailed this 3rd day of February, 2016 to the following:

J. Peter Cassidy, III
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
PH: 859.226.0057
Fax: 859.226.0059
*Counsel for Defendants*

Lynzi J. Archibald, Esq.
Miller & Martin, PLLC
832 Georgia Ave., Ste. 1200
Chattanooga, TN 37402
Facsimile: 423.785.8480

*Counsel for Plaintiff*

# EXHIBIT A

# IN THE CIRCUIT COURT FOR PIKE COUNTY, KENTUCKY

RECEIVED
DEC 2 9 2015
BY: ....................

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased,

Plaintiff,

v.

No. 15-CI-778

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER; KENTUCKY MEDICAL INVESTORS, LLC (GA); KENTUCKY MEDICAL INVESTORS, LLC; KENTUCKY MEDICAL INVESTORS, LTD; SAK JR., LLC; SBK, LLC; LIFE CARE CENTERS OF AMERICA, INC.; MISTY WARD, Administrator; JUDITH BRANHAM, Administrator; and JOHN DOES 1-5, UNKNOWN DEFENDANTS,

Defendants.

## AFFIDAVIT OF J. FRANKLIN FARROW

1. My name is J. Franklin Farrow. I am over the age of eighteen (18) and competent to testify to the matters herein. This affidavit is based upon my personal knowledge.

2. I am a corporate officer of Kentucky Medical Investors, LLC, specifically, the Secretary of such entity.

3. Kentucky Medical Investors, LLC, is an entity which operates assisted living facilities in the State of Kentucky.

4. Kentucky Medical Investors, LLC, does not operate any assisted living facilities in Elkhorn City, Pike County, Kentucky.

5. Kentucky Medical Investors, LLC, does not currently and has at no time in the past (including July 16, 2008 through June 19, 2014) own, operate, manage, control, and/or provide services for any skilled nursing facilities in the State of Kentucky, including but not limited to Kentucky Medical Investors, LLC (GA) doing business as Mountain View Health Care Center in Elkhorn City, Pike County, Kentucky.

**FURTHER THIS AFFIANT SAITH NOT.**

J. FRANKLIN FARROW

Sworn to and subscribed before me this 21st day of December, 2015.

Notary Public

My Commission Expires: 12/20/2016

PEGGY A. TURNER STATE OF TENNESSEE NOTARY PUBLIC HAMILTON COUNTY

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 15-CI-00778

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFF

v.

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER , et al. DEFENDANTS

*** *** *** ***

**AMENDED NOTICE OF CR 30.02(6) DEPOSITION OF KENTUCKY MEDICAL INVESTORS, L.L.C. (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER**

PLEASE TAKE NOTICE that pursuant to Kentucky Rule of Civil Procedure 30.02(6) and for all purposes provided by the Kentucky Rules of Civil Procedure, on **Wednesday, March 23, 2016** beginning at **10:00 a.m., EST** and continuing until completed at the **Law Office of Michael Pack and Ron Diddle, 137 Pike St., Unit 1, Pikeville, KY 41501**, previously noticed for **Thursday, March 3, 2016,** Plaintiff, by counsel, will take the deposition of Kentucky Medical Investors, L.L.C. (GA) d/b/a Mountain View Health Care Center on the following topics:

1. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** within the care, custody and/or control of the **FACILITY** which refer to and/or reference in whatsoever manner, the **PLAINTIFF**. (The term "**PLAINTIFF**" shall refer to Helen Ray. The term "FACILITY", as used in this and all subsequent inquiries, shall refer to Kentucky Medical Investors, L.L.C. (GA) d/b/a Mountain View Health Care Center, wherein PLAINTIFF was a resident. The terms **"DOCUMENT(S)"** and/or **"DOCUMENTATION"**, as used in this and all subsequent inquiries shall mean, includes all written, graphic or otherwise recorded matter however produced or reproduced, including the originals (or any copies when originals are not available) and non-identical copies (where different from the original because notes were made on such copies or because said copies may have been sent to different individuals than originals, or for any other reason) and preliminary or final drafts of writings, records, and recordings of every kind and description, whether inscribed by hand or by mechanical, electronic, microfilm, photographic or other means, as well as phonic (such as tape recordings) or visual reproductions of all statements, conversations or events and including, without limitation, correspondence, teletype messages, notes, reports, compilations, schedules, studies, tabulations, tallies, maps, charts, diagrams, drawings, plans, pictures, computer runs, advertising and promotional material, press releases, minutes and

records of any memoranda of all press releases, minutes and records of any memoranda of all types, inter-office and intra-office communications, notes of conversations, vouchers, financial calculations and statements, working papers, statistical analyses, invoices, purchase orders, expense account records, stenographers, notebooks, desk calendars, appointment books, diaries, manuals, pamphlets, brochures, escrow instructions, contracts, deeds, agreements, title reports, listings, authorizations, and any abstracts, summaries and analyses of the above, and all other recorded matter of every nature and kind.)

2.      The date and time of each occasion upon which the **PLAINTIFF** suffered any "fall" in the **FACILITY**.

3.      The identify and employment status, and as to all former employees the last known residence address and telephone number, of each person who **YOU** contended has any knowledge or information relating to any "fall" suffered by the **PLAINTIFF** in the **FACILITY**. (For purposes of these inquiries, **YOU** and **YOUR** refers individually and collectively to the individual, partnership, or corporate defendant to whom this request is addressed and all persons acting or purporting to act on the behalf of said defendant.)

4.      The identity and employment status, and as to all former employees the last known residence address and telephone number, of each person who on **YOUR** behalf assessed the condition of the **PLAINTIFF** after any "fall" suffered by the **PLAINTIFF** in the **FACILITY**.

5.      The identity and employment status, and as to all former employees the last known residence address and telephone number, of each person who **YOU** contend witnessed any fall suffered by the **PLAINTIFF** in the **FACILITY**. (For purposes of these inquiries, **YOU** and **YOUR** refers individually and collectively to the individual, partnership, or corporate defendant to whom this request is addressed and all persons acting or purporting to act on the behalf of said defendant.)

6.      The identity and employment status, and as to all former employees the last known residence address and telephone number, of each person who on **YOUR** behalf assessed the condition of the **PLAINTIFF** after any fall suffered by the **PLAINTIFF** in the **FACILITY**.

7.      The existence of and nature of the business relationship between **YOU** and any of the named co-defendant(s) in this action during the time frame during which **PLAINTIFF** was a patient in the **FACILITY**.

8.      The existence of, scope of, and intent of any and all **FACILITY** policies and procedures which were in effect during the admission of the **PLAINTIFF** in the **FACILITY** in accordance with the provisions of 902 KAR 20:026 § 3(3). (902 KAR 20:026 § 3(3) provides as follows: "The **FACILITY** shall have written policies and procedures governing all aspects of the operation of the facility and the services provided.")

9.      The purpose of and frequency of In-Service Education provided to **FACILITY** employees, including but not limited to In-Service education programs, for a period of time commencing six months prior to the admission in the **FACILITY** through the last date of the admission of the **PLAINTIFF** in the **FACILITY** in accordance with 902 KAR 20:026 § 3(9). (902 KAR 20:026 § 3(9)(e) provides as follows: "There shall be an in-service education program in effect for all nursing personnel at regular intervals in addition to a thorough job orientation for new personnel.")

10.     The purpose, scope of, and nature of all training and job orientation provided to **FACILITY** employees for a period of time commencing six months prior to the admission in the **FACILITY** through the last date of the admission of the **PLAINTIFF** in the **FACILITY** in

accordance with 902 KAR 20:026 § 3(9). (902 KAR 20:026 § 3(9)(e) provides as follows: "There shall be an in-service education program in effect for all nursing personnel at regular intervals in addition to a thorough job orientation for new personnel.")

11.     The mechanisms utilized for determining and recording levels of staff in any wing or station in which the **PLAINTIFF** was in the **FACILITY** and the identity and location of all person(s) responsible for same, in effect during the time which **PLAINTIFF** was a patient of **FACILITY** in accordance with 902 KAR 20:026 § 3(9). (902 KAR 20:026 § 3(9)(d) provides as follows: "The **FACILITY** shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis.")

12.     The **FACILITY** Policies and Procedures relating to assessing employees' job performance, memorializing discipline of employees and/or complaints received as it pertains to employees in effect during the time which **PLAINTIFF** was a patient of **FACILITY**;

13.     The existence of, title of, location of, intent of, content of, and custodian of all **DOCUMENTS** utilized by the **FACILITY** during the time period during which the **PLAINTIFF** was a resident of the **FACILITY** so as to ensure that all **FACILITY** staff who provided services to the **PLAINTIFF** were fit to perform their job duties in accordance with 902 KAR 20:026 § 3(9). (902 KAR 20:026 § 3(9)(b) provides as follows: "Current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, evaluation of performance, records of in-service training and on-going education, along with employee's name, address and Social Security number.").

14.     The name, location, terms, scope, and content of any agreement between the **FACILITY** and any named defendant herein or any other entity relating to management, administrative and/or consulting services provided to the **FACILITY** during the stay of the **PLAINTIFF** in the **FACILITY**.

15.     The date of creation, circumstances of creation, existence, content of, and name, and as to former employees the last known residence address and telephone number, of all persons whose names are listed on any **FACILITY** Incident Report and/or Unusual Occurrence report and/or any investigation resulting therefrom relating to, or mentioning, the **PLAINTIFF**;

16.     The job title and scope of job responsibilities for any and all **FACILITY** employees during the time she was a patient at the **FACILITY** in accordance with 902 KAR 20:026 § 3(9). (902 KAR 20:026 § 3(9)(a) provides as follows: "Written job descriptions shall be developed for each category of personnel to include qualifications, lines of authority and specific duty assignments.")

17.     The identity and employment status, and as to all former employees the last known residence address and telephone number, of each individual, agency, partnership or corporation who served as the "governing body" of the **FACILITY** during the time **PLAINTIFF** was a patient at the **FACILITY** in accordance with 42 CFR § 483.75. (42 CFR § 483.75(d)(1) provides as follows: The facility must have a governing body, or designated persons functioning as a governing body, that is legally responsible for establishing and implementing policies regarding the management and operation of the facility.")

18.     The identity and employment status, and as to all former employees the last known residence address and telephone number, of each individual, agency, partnership or corporation who

served as the "licensee" of the **FACILITY** during the time **PLAINTIFF** was a patient at the **FACILITY** in accordance with 902 KAR 20:026 § 3(1). (902 KAR 20:026 § 3(1) provides as follows: "The licensee shall be legally responsible for the facility and for compliance with federal, state and local laws and regulations pertaining to the operation of the facility.")

19.    The identity and employment status, and as to all former employees the last known residence address and telephone number, of each individual who served as the "administrator" of the **FACILITY** during the time **PLAINTIFF** was a patient at the **FACILITY** in accordance with 902 KAR 20:026 § 3(2). (902 KAR 20:026 § 3(2) provides as follows: "All facilities shall have an administrator who is responsible for the facility and who shall delegate such responsibility in his absence.")

20.    The identity and employment status, and as to all former employees the last known residence address and telephone number, of each individual who participated in any fall-related "nursing care plan" during the time **PLAINTIFF** was a patient at the **FACILITY** in accordance with 902 KAR 20:026 § 3(2). (902 KAR 20:026 § 3(2) provides as follows: "All facilities shall have an administrator who is responsible for the facility and who shall delegate such responsibility in his absence.")

21.    The identity and employment status, and as to all former employees the last known residence address and telephone number, of each individual who served as the physician to **PLAINTIFF** during the time **PLAINTIFF** was a patient at the **FACILITY** in accordance with 902 KAR 20:026 § 4(2). (902 KAR 20:026 § 4(2)(d) provides as follows: "There shall be written nursing care plans for each patient based on the nature of illness, treatment prescribed, long and short term goals and other pertinent information. (1) The nursing care plan shall be a personalized, daily plan for individual patients. It shall indicate what nursing care is needed, how it can best be accomplished for each patient, what are the patient's preferences, what methods and approaches are most successful, and what modifications are necessary to insure best results.")

22.    The existence of, scope of, and content of any and all **FACILITY** "nursing staff data/information" during the admission of the **PLAINTIFF** in the **FACILITY** in accordance with the provisions of 42 CFR § 483.30(e). (42 CFR § 483.30(e)(3) provides as follows: "The Facility must, upon oral or written request, make nurse staffing data available to the public for review at a cost not to exceed the community standard .")

23.    The **IDENTITY** of all persons who the assessed the pressure sore risk potential of the **PLAINTIFF** during the admission of the **PLAINTIFF** in the **FACILITY** as well as the existence of, name of and custodian of all **DOCUMENTS** which memorialize the effort. (For the purposes of these inquiries, the term **IDENTITY** means to state or a statement of: a. in the case of a person other than a natural person, its name, the address of its principal place of business (including zip code), its telephone number, and the name of its chief executive officer, as well as, if it has a person other than a natural person that ultimately controls it, that other person's name, the address of that person's principal place of business (including zip code), that other person's telephone number, and that person's chief executive officer; b. in the case of a natural person, his or her name, residential address and telephone number, business address and telephone number, employer, and title or position; c. in the case of a communication, its date, type (e.g., telephone conversation or discussion), the place where it occurred, the identity of the person who made the communication, the identity of the person that received the communication, the identity of each other person present when it was made, and the subject matter discussed; d. in the case of a document, the title of the document, the author, the title or position of the author, the addressee, each recipient, the type of document, the subject matter, the date of preparation, and its number of pages; and e. in the case of an agreement, its date, the place where it occurred, the identity of all persons

who were parties to the agreement, the identity of each person who has knowledge of the agreement and all other persons present when it was made, and the subject matter of the agreement.)

24. The determination made as to the skin integrity and the existence of any pressure sores upon the person of the **PLAINTIFF** by **FACILITY** personnel conducting any skin assessment of the **PLAINTIFF** upon admission to the **FACILITY** as well as the name of and custodian of all **DOCUMENTS** which memorialize the effort.

25. The date of the deponent fist learning of the existence of any decubitus ulcer on the body of the **PLAINTIFF** during the admission of the **PLAINTIFF** in the **FACILITY** as well as the location and staging of any such decubitus ulcer, the **IDENTITY** of the person who made said discovery and the existence of, name of and custodian of all **DOCUMENTS** which memorialize the effort.

26. The **IDENTITY** of all persons who the turned and repositioned the **PLAINTIFF** to relieve pressure on bony prominences of the **PLAINTIFF** during the admission of the **PLAINTIFF** in the **FACILITY** as well as the existence of, name of and custodian of all **DOCUMENTS** which memorialize the effort;

27. The **IDENTITY** of all persons who prepared, modified, updated, changed and/or altered any **FACILITY** Care Plan or Plan of Care of the **PLAINTIFF** during the admission of the **PLAINTIFF** in the **FACILITY** as well as the date of, and reasons for each modification, update, change or alteration;

28. The date of the deponent fist learning of the existence of any injury of unknown origin on the body of the **PLAINTIFF** during the admission of the **PLAINTIFF** in the **FACILITY** as well as the location and description of said inury, the **IDENTITY** of the person who made said discovery and the existence of, name of and custodian of all **DOCUMENTS** which memorialize the effort;

29. The number of residents of residents in the **FACILITY** who suffered from pressure sores, decubitus ulcers, falls and injuries of unknown origin during the residency of the **PLAINTIFF** in the **FACILITY** as well as six (6) months prior and the existence of, name of, custodian of and methodology of creation of, purpose of and recipients of, all **DOCUMENTS** which memorialize same;

Pursuant to CR 30.02(6), Kentucky Medical Investors, L.L.C. (GA) d/b/a Mountain View Health Care Center is directed to "designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which he will testify" as described above.

**DEPONENTS ARE DIRECTED TO PRODUCE THE FOLLOWING DOCUMENTS IN RESPONSE TO THE ATTACHED SUBPOENA DUCES TECUM**

**Request for Production of Documents No. 1:**

Please provide copies of any and all **DOCUMENTS** in the deponent's care, custody or control which pertain, reference and/or refer to the **PLAINTIFF**. (902 KAR 20:300 § 3(2)(b) provides that the resident shall have the right to inspect and purchase photocopies of all records pertaining to the resident, upon written request and forty-eight (48) hour notice to the facility).

**Request for Production of Documents 2:**

Please provide a blank "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** utilized by the **FACILITY** to report or memorialize any occurrence relating to a resident which were utilized during the residency of the **PLAINTIFF** in the **FACILITY**. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents 3:**

Please provide any "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** utilized by the **FACILITY** to report or memorialize any occurrence relating to a resident which in any fashion mentions or relates to the **PLAINTIFF**. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents 4:**

Please provide each "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** prepared by the **FACILITY** to report or memorialize the development of pressure sores, falls or aspiration as to any **FACILITY** resident during the time frame during which the

**PLAINTIFF** was a resident of the **FACILITY**. (The names of all residents other than the **PLAINTIFF** should be redacted from the production.) (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents No. 5:**

Please provide all **DOCUMENTS** which reflect the number of residents in the **FACILITY** who suffered from pressure sores, falls or injuries of unknown origin during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY**. (The name of any resident other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 6:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action referencing the **PLAINTIFF** and/or by **YOU** to any named Defendant in this action referencing the **PLAINTIFF**.

**Request for Production of Documents No. 7:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant, or by **YOU** to any named Defendant in this action referencing the staffing levels in the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 8:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant, or by **YOU** to any named Defendant in this action referencing the operating budget and/or financial performance of the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior.

**Request for Production of Documents No. 9:**

Please provide the **FACILITY NURSING STAFFING INFORMATION** during the time

frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior (The term **NURSING STAFFING INFORMATION** as utilized in this inquiry is defined as that term is defined in 42 C.F.R. §483.30(e) which is as follows:

   (e)    *Nurse staffing information*—(1) *Data requirements.* The facility must post the following information on a daily basis:

   (i)    Facility name.

   (ii)    The current date.

   (iii)    The total number and the actual hours worked by the following categories of licensed and unlicensed nursing staff directly responsible for resident care per shift:

   (A)    Registered nurses.

   (B)    Licensed practical nurses or licensed vocational nurses (as defined under State law).

   (C)    Certified nurse aides.

   (iv)    Resident census.

   (2)    *Posting requirements.* (i) The facility must post the nurse staffing data specified in paragraph (e)(1) of this section on a daily basis at the beginning of each shift.

   (ii) Data must be posted as follows:

   (A)    Clear and readable format.

   (B) In a prominent place readily accessible to residents and visitors.

   (3)    *Public access to posted nurse staffing data.* The facility must, upon oral or written request, make nurse staffing data available to the public for review at a cost not to exceed the community standard.)

**Request for Production of Documents No. 10:**

Please provide all **DOCUMENTS** which confirm that the **FACILITY** Nursing service personnel were employed and in at least the number …to provide the necessary nursing services for each resident of the **FACILITY** during the time the **PLAINTIFF** was a resident of the **FACILITY** in accordance with the requirements of 902 KAR 20:300 § 9 which states "[t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest

practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 § 3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 § 4(2)(a) provides [t]here shall be twenty (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receive proper care to prevent decubiti and shall be kept comfortable, clean, and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect.)

**Request for Production of Documents No. 11:**

Please provide all **DOCUMENTS** which evidence the **FACILITY** "in-service training and ongoing education" in accordance with the requirements of (902 KAR 20:048 § 3(10)(b) during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number. The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 12:**

Please produce all **DOCUMENTS** which were provided to those who attended any In-Service education put on by the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (The names of all residents other than the **PLAINTIFF**

should be redacted from the production.)

**Request for Production of Documents No. 13:**

Please provide all **DOCUMENTS** which consist of the **FACILITY** policies, procedures, manuals or guidelines in effect during the time frame during which the **PLAINTIFF** was a resident in the **FACILITY** relating to operations and resident care of the **FACILITY** as well as the **FACILITY** mechanisms utilized for determining and recording levels of staff in the **FACILITY** and the identity and location of all person(s) responsible for same; the **FACILITY** Business Office Policies and Procedures; and the **FACILITY** Policies and Procedures relating to assessing employees job performance and for memorializing discipline of employees and/or complaints received as it pertains to employees. (902 KAR 20:048 § 3(4) provides that the facility shall establish written policies and procedures that govern all services provided by the facility. The written policies shall include: (a) Patient care and services to include physician, nursing, pharmaceutical (including medication stop orders policy), and residential services. (b) Adult and child protection. The facility shall have written policies which assure the reporting of cases of abuse, neglect or exploitation of adults and children pursuant to KRS Chapters 209 and 620. (c) Use of restraints. The facility shall have a written policy that addresses the use of restraints and a mechanism for monitoring and controlling their use. (d) Missing patient procedures. The facility shall [have] a written procedure to specify in a step-by-step manner the actions which shall be taken by staff when a patient is determined to be lost, unaccounted for or on other unauthorized absence.)

**Request for Production of Documents No. 14:**

Please provide all **DOCUMENTS** in accordance with the requirements of 902 KAR 20:048 § 3 constituting the job description of any and all **FACILITY** personnel set forth below which were in effect during the residency of the **PLAINTIFF** at the **FACILITY**. (902 KAR 20:048 § 3(10)(a) provides written job descriptions shall be developed for each category of personnel, to include qualifications, lines of authority and specific job assignments.) These include, but are not limited to, the following:

1.      Administrator;

2.    Director of Nursing;

3.    Business Office Manager;

4.    Minimum Data Set Coordinator;

5.    Case Managers;

6.    Registered Nurses;

7.    Licensed Vocational Nurses;

8.    Charge Nurses;

9.    Certified Nursing Assistants;

10.   Restorative Nursing Assistants;

11.   Physical Therapists;

12.   Admissions Coordinator;

13.   Business Office Manager;

14.   Social Services Director;

15.   Activities Personnel;

16.   Dietary Services Personnel;

17.   Director of Staff Development;

18.   Medical Director.

**Request for Production of Documents No. 15:**

Please provide all **DOCUMENTS** constituting the **FACILITY** Employee Handbook in effect during the residency of the **PLAINTIFF** at the **FACILITY**.

**Request for Production of Documents No. 16:**

Please provide all **DOCUMENTS** constituting Orientation Manuals intended for utilization by **FACILITY** new employees during the residency of the **PLAINTIFF** at the **FACILITY**.

**Request for Production of Documents No. 17:**

Please provide all **DOCUMENTS** constituting the **FACILITY** Code of Conduct for employees in effect during the residency of the **PLAINTIFF** at the **FACILITY**.

**Request for Production of Documents No. 18:**

Please provide all **DOCUMENTS** which constitute any Corporate Integrity Agreement by which the **FACILITY** was bound during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY**.

**Request for Production of Documents No. 19:**

Please provide a list identifying all individuals who were employed at the **FACILITY** during the residency of **PLAINTIFF**; state whether each individual provided any care or services to **PLAINTIFF**, and state whether each individual is currently an employee of the **FACILITY** or any Defendant. For each individual identified as a former employee, please provide current contact information to include most recent telephone number and address.

**Request for Production of Documents No. 20::**

Please provide all **DOCUMENTS** which **IDENTIFY** and/or reference the nature of the business relationship between **YOU** and any of the named co-defendant(s) in this action during the time frame during which **PLAINTIFF** was a patient in the **FACILITY**.

*Respectfully Submitted,*

**GARCIA, ARTIGLIERE & MEDBY**

Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III
220 West Main Street, Suite 2250
Louisville, Kentucky 40202
Telephone: (502) 584-3805
Facsimile: (502) 584-3811
***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

This is to certify that the original of the foregoing was mailed first class United States mail, postage prepaid, to the **Clerk, Pike County Circuit Court, P.O. Box 1002, Pikeville, Kentucky 41502,** and that a true and correct copy of the foregoing was duly faxed and mailed this 1 day of March 2016 to the following:

J. Peter Cassidy, III
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
PH: 859.226.0057
Fax: 859.226.0059
*Counsel for Defendants*

Kentuckiana Reporters
455 South 4th Street
Suite 250
Louisville, KY 40202
Facsimile: 502.584.0119

*Counsel for Plaintiff*

AOC-025.1 Doc. Code: RS
Rev. 3-09
Page 1 of 1
Commonwealth of Kentucky
Court of Justice www.courts.ky.gov
CR 45; RCr 7.02

☐ SUBPOENA
☒ SUBPOENA DUCES TECUM

Case No. 15-CI-778
Court Division II
County Pike
Date 7/26/16

Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, and on behalf of the Wrongful Death Beneficiaries of Helen Ray, deceased — PLAINTIFF

VS

Kentucky Medical Investors, L.L.C. (GA) d/b/a Mountain View Health Care Center, et al. — DEFENDANT

**The Commonwealth of Kentucky to:**

Name: Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center
Address: Peter Cassidy, III
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509

**You are commanded to appear before:** *(select one of three choices)*

☐ ______ Court ☐ The Grand Jury of ______ County
☒ Other a deposition

**You are to appear at:** Diddle & Pack, PLLC, 137 Pike ST, #1, Pikeville, KY 41501

on the 16 day of August, 20 16 at 9:00 ☒ a.m. OR ☐ p.m. ☒ Eastern ☐ Central Time

☐ To testify in behalf of
☐ To produce

☒ To give depositions

**You are commanded to produce and permit inspection and copying of the following documents or objects (or to permit inspection of premises):**

on the ______ day of ______, 20___ at ______ ☐ a.m. OR ☐ p.m. ☐ Eastern ☐ Central Time
at the following address:

Issuing Officer/Attorney Licensed In Kentucky
By:

M. Brandon Faulkner
**Name of Requesting Attorney**
**Phone#** (502) 584-3805

**PROOF OF SERVICE**

This subpoena was served by delivery of a true copy to: Peter Cassidy, III

This 26 day of July, 2016 By: Charity Smith

Title

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION TWO
CIVIL ACTION NO. 15-CI-778

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFF

v. **NOTICE OF CR 30.02(6) DEPOSITION OF KENTUCKY MEDICAL INVESTORS, LLC (GA) D/B/A MOUNTAIN VIEW HEALTH CARE CENTER**

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER, et al. DEFENDANTS

*** *** *** ***

Please take notice that pursuant to Kentucky Rule of Civil Procedure 30.02(6) and for all purposes provided by the Kentucky Rules of Civil Procedure on **August 16, 2016** at the **office of Diddle & Pack, PLLC located at 137 Pike Street #1, Pikeville, KY 41501 beginning at 9:00 a.m. EST**, Plaintiff, by Counsel, will take the deposition of **Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center**. Pursuant to CR 30.02(6), **Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center** is directed to "designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which he will testify" on each of the topics of inquiry detailed below.

1. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** within the care, custody and/or control of the deponent which pertain, refer to and/or reference, in whatsoever manner, the **PLAINTIFF** (For this inquiry and all subsequent inquiries **PLAINTIFF** shall refer to **Helen Ray**. The terms **"DOCUMENT(S)"** and/or **"DOCUMENTATION"**, as used in this and all subsequent inquiries shall mean, includes all written, graphic or otherwise recorded matter however produced or reproduced, including the

originals (or any copies when originals are not available) and non-identical copies (where different from the original because notes were made on such copies or because said copies may have been sent to different individuals than originals, or for any other reason) and preliminary or final drafts of writings, records, and recordings of every kind and description, whether inscribed by hand or by mechanical, electronic, microfilm, photographic or other means, as well as phonic (such as tape recordings) or visual reproductions of all statements, conversations or events and including, without limitation, correspondence, teletype messages, notes, reports, compilations, schedules, studies, tabulations, tallies, maps, charts, diagrams, drawings, plans, pictures, computer runs, advertising and promotional material, press releases, minutes and records of any memoranda of all press releases, minutes and records of any memoranda of all types, inter-office and intra-office communications, notes of conversations, vouchers, financial calculations and statements, working papers, statistical analyses, invoices, purchase orders, expense account records, stenographers, notebooks, desk calendars, appointment books, diaries, manuals, pamphlets, brochures, escrow instructions, contracts, deeds, agreements, title reports, listings, authorizations, and any abstracts, summaries and analyses of the above, and all other recorded matter of every nature and kind.) (902 KAR 20:300 § 3(2)(b) provides that the resident shall have the right to inspect and purchase photocopies of all records pertaining to the resident, upon written request and forty-eight (48) hours notice to the facility.);

2. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action pertaining to or referencing the **PLAINTIFF** and/or by **YOU** to any named Defendant in this action referencing the **PLAINTIFF**. (For purposes of these inquiries, **YOU** and **YOUR** refers individually and collectively to the defendant to whom this request is addressed and all persons acting or purporting to act on the behalf of said defendant.) (902 KAR 20:300 § 3(2)(b) provides that the resident shall have the right to inspect and purchase photocopies of all records pertaining to the resident, upon written request and forty-eight (48) hours notice to the facility.);

3. The scope, nature and purpose in the **FACILITY** of any and all Policy and Procedures in place during the residency of **PLAINTIFF** in the **FACILITY**. (902 KAR 20:048 § 3(4) provides that the facility shall establish written policies and procedures that govern all services provided by the facility. The written policies shall include: (a) Patient care and services to include physician, nursing, pharmaceutical (including medication stop orders policy), and residential services. (b) Adult and child protection. The facility shall have written policies which assure the reporting of cases of abuse, neglect or exploitation of adults and children pursuant to KRS Chapters 209 and 620. (c) Use of restraints. The facility shall have a written policy that addresses the use of restraints and a mechanism for monitoring and controlling their use. (d) Missing patient procedures. The facility shall [have] a written procedure to specify in a step-by-step manner the actions which shall be taken by staff when a patient is determined to be lost, unaccounted for or on other unauthorized absence.);

4. The intake process utilized by the **FACILITY** to determine the needs of an incoming resident and the purpose for same in effect upon the date of admission of the **PLAINTIFF** as a resident of the **FACILITY**. (902 KAR § 7 provides that [t]he facility shall conduct initially and periodically a comprehensive, accurate, standardized, reproducible assessment of each resident's functional capacity...(e) [t]he results of [which] are used to develop, review, and revise the resident's comprehensive plan of care, under subsection (4) of this section.);

5. The process, intent and reason for the creation of **FACILITY** Care Plans and modifications thereto as to the **PLAINTIFF** and **FACILITY** residents in general during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY**. (902 KAR § 7(4) provides that (a) [t]he facility shall develop a comprehensive care plan for each resident that includes measurable objectives and timetables to meet a resident's medical, nursing and psychosocial

needs that are identified in the comprehensive assessment [that is]...3. periodically reviewed and revised by a team of qualified persons after each assessment.);

6. The **IDENTITY** of all persons who the assessed the fall risk potential of the **PLAINTIFF** during the time period of **PLAINTIFF'S RESIDENCY** in the **FACILITY**, as well as the name of and custodian of all **DOCUMENTS** which memorialize the effort;

7. The **FACILITY** definition of the term "fall" during the during the time frame during which **PLAINTIFF** was a resident of **FACILITY** as well as the existence of, name of, content of, intent of and custodian of all **DOCUMENTS** which reflect said definition;

8.   When and how the deponent contends that the **PLAINTIFF** suffered each fall in the **FACILITY**, as well as the **IDENTITY** of all persons who the **FACILITY** contends witnessed any such fall, or any witness who the **FACILITY** contends possess any information as to any such fall; as well as the **IDENTITY** of all persons who the **FACILITY** contends assessed the physical and mental condition of the **PLAINTIFF** after any such fall as well as the findings of the assessment(s) and the existence of, name of, the intent of and the custodian of any **DOCUMENTS** which memorialize said fall(s) and/or assessment(s).

9. The **IDENTITY** of all persons who prepared, modified, updated, changed and/or altered any **FACILITY** Care Plan or Plan of Care of the **PLAINTIFF** as well as the reasons for each modification, update, change or alteration;

10. The **IDENTITY** of all persons who on behalf the **FACILITY** contacted the physician of the **PLAINTIFF** after any fall in the **FACILITY**, as well as the date and time of, and modality by which the communication was made and the **IDENTITY** of the person who contacted the physician and content of any such communication. (902 KAR 20:300 § 2(i)(1) provides that [e]xcept in a medical emergency or when a resident is incompetent, a facility shall consult with the resident immediately and notify the resident's physician, and if known, the resident's legal representative or interested family member within twenty-four (24) hours when there is: a. An accident involving the resident which results in injury; b. A significant change in the resident's physical, mental, or psychosocial status; c. A need to alter treatment significantly; or d. A decision to transfer or discharge the resident from the facility as specified in Section 4(1) of this administrative regulation.)

11. The **IDENTITY** of all persons who on behalf the **FACILITY** contacted any **LEGAL REPRESENTATIVE OR INTERESTED FAMILY MEMBER** of the **PLAINTIFF** after any fall suffered by the **PLAINTIFF** in the **FACILITY**, as well as the date and time of the notification and modality by which the communication was made and the name of the person contacted and content of any such communication. ("**LEGAL REPRESENTATIVE OR INTERESTED FAMILY MEMBER**" shall mean "legal representative or interested family member" as that term is defined/referenced in 902 KAR 20:300 § 2(i)(1). 902 KAR 20:300 § 2(i)(1) provides that [e]xcept in a medical emergency or when a resident is incompetent, a facility shall consult with the resident immediately and notify the resident's physician, and if known, the resident's legal representative or interested family member within twenty-four (24) hours when there is: a. An accident involving the resident which results in injury; b. A significant change in the resident's physical, mental, or psychosocial status; c. A need to

alter treatment significantly; or d. A decision to transfer or discharge the resident from the facility as specified in Section 4(1) of this administrative regulation.)

12. The date of creation, circumstances of events leading to the creation, existence of, **IDENTITY** of the author and all persons whose names are listed upon, and the content of all **FACILITY** Incident Reports and/or Unusual Occurrence reports relating to and/or referencing the **PLAINTIFF.** (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report.);

13. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** that confirm that the **FACILITY** had sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident and to meet the total needs each resident and to the **PLAINTIFF** during the time the **PLAINTIFF** was a resident of the **FACILITY** in accordance with the requirements of 902 KAR 20:300 § 9 and/or 902 KAR 20:048 § 3, 4. (902 KAR 20:300 § 9 provides [t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 § 3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 § 4(2)(a) provides [t]here shall be twenty (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receive proper care to prevent decubiti and shall be kept comfortable, clean, and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect.);

14. The mechanisms utilized for determining and recording levels of staff in the **FACILITY** and the **IDENTITY** all person(s) responsible for same, as well as the role staffing plays in the provision of care to residents of the **FACILITY** during the time frame of December 5, 2009 to December 11, 2009; January 3, 2010 to January 9, 2010, July 12, 2011 to July 18, 2011, July 28, 2013 to August 3, 2013; September 13, 2013 to September 19, 2013; and October 6, 2013 to October 12, 2013. (902 KAR 20:300 § 9 provides [t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 § 3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 § 4(2)(a) provides [t]here shall be twenty (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be

available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receive proper care to prevent decubiti and shall be kept comfortable, clean, and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect.);

15. The existence of, name of, intent of and custodian of all **DOCUMENTS** utilized by the deponent during the time frame during which **PLAINTIFF** was a resident of the **FACILITY** to determine the ratio of **NURSING HOURS** per patient day. (902 KAR 20:300 § 9 provides [t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 § 3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 § 4(2)(a) provides [t]here shall be twenty (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receive proper care to prevent decubiti and shall be kept comfortable, clean, and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect.);

16. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action and/or by **YOU** to any named Defendant in this action referencing the staffing levels of the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY**, as well as the **IDENTITY** of all persons who authored and/or received said **DOCUMENT(S)**;

17. The occurrence of, intent of and utilization by the deponent of any **FACILITY** "resident" and/or "family" council meeting which took place during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior as well as the existence of, name of, the intent of and the custodian of any **DOCUMENT** which memorialize and/or reference such meetings;

18. The occurrence of, intent of and utilization by the deponent of any employee "exit interviews" which reflect **FACILITY** operations during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior and as to any **DOCUMENT** reflecting the effort, the name of, content of and identity and location of the custodian of, said **DOCUMENT(S)**;

19. The utilization of, intent of and form of any "resident satisfaction surveys" and/or "family satisfaction surveys" and/or "employee satisfaction surveys" relating to **FACILITY** operations during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior, and the existence of, name of and name and location of the custodian of, any **DOCUMENT** reflecting the effort;

20. The occurrence of, intent of and utilization of by the deponent any "hotline" or "grievance procedure" which reflect **FACILITY** operations during any portion of the time period of during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior and as to any **DOCUMENT** reflecting the effort, the existence of, name of, content of

and identity and location of the custodian of said **DOCUMENT(S)**;

21. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** that the **FACILITY** utilized during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY** to ensure that its nursing service personnel were employed ...with the qualifications ...to provide the necessary nursing services for each resident of the **FACILITY** during the time the **PLAINTIFF** was a resident of the **FACILITY.** (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number.);

22. The existence of, name of, the intent of and the custodian of, any **DOCUMENTS** which the deponent relied upon during the time frame during which **PLAINTIFF** was a resident of **FACILITY** to ensure that any **FACILITY** employee who provided any services to the **PLAINTIFF** on behalf of the **FACILITY** were fit to perform their job duties. (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number.);

23. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** which evidence **YOUR** "in-service training and ongoing education" of **FACILITY** employees in accordance with the requirements of 902 KAR 20:048 § 3(10)(b)during the residency of the **PLAINTIFF** in the **FACILITY**. (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number. The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

24. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action and/or by **YOU** to any named Defendant in this action referencing the operating budget and/or financial performance of the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior as well as the **IDENTITY** of all persons who authored and/or received said **DOCUMENT(S)**;

25. The manner by which, and amount of any, consideration was paid by the **FACILITY** to any defendant named herein for services performed during the residency of the **PLAINTIFF** in the **FACILITY**;

26. The name, location, terms, scope, and content of any agreement, administrative services agreement and/or consulting agreement between the **FACILITY** and any named defendant herein relating to management, administrative and/or consulting services provided to the **FACILITY** during the residency of the **PLAINTIFF** in the **FACILITY** in accordance with the requirements of 902 KAR 20:048 § 3(3). (902 KAR 20:048 § 3(3)(b) provides the facility shall require and maintain written recommendations or comments from consultants regarding the program and its development on a per visit basis.);

27. The scope of job responsibilities for any and all **FACILITY** employees, including but not limited to, the categories set forth below during the time which **PLAINTIFF** was a resident of **FACILITY** in accordance with the requirements of 902 KAR 20:048 § 3. (902 KAR 20:048 § 3(10)(a) provides written job descriptions shall be developed for each category of

personnel, to include qualifications, lines of authority and specific job assignments.):

- Administrator;
- Director of Nursing;
- Admissions Coordinator;
- Business Office Manager;
- Director of Social Services;
- Director of Staff Development;
- Director of Activities;
- Director of Dietary Services;
- Minimum Data Set Coordinator;
- Case Managers;
- Charge Nurses;
- Registered Nurses;
- Licensed Vocational Nurses;
- Certified Nursing Assistants;
- Restorative Nurse's Aides;
- Physical Therapists;
- Occupational Therapists;
- Speech Therapists

28. The **FACILITY** policies and procedures relating to, as well as any effort to, adhere to applicable rules laws and regulations effecting the operations of the **FACILITY** during the residency of the **PLAINTIFF** in the **FACILITY** and the reasons for same. (902 KAR 20:048 § 3(4) provides that the facility shall establish written policies and procedures that govern all services provided by the facility. The written policies shall include: (a) Patient care and services to include physician, nursing, pharmaceutical (including medication stop orders policy), and residential services. (b) Adult and child protection. The facility shall have written policies which assure the reporting of cases of abuse, neglect or exploitation of adults and children pursuant to KRS Chapters 209 and 620. (c) Use of restraints. The facility shall have a written policy that addresses the use of restraints and a mechanism for monitoring and controlling their use. (d) Missing patient procedures. The facility shall [have] a written procedure to specify in a step-by-step manner the actions which shall be taken by staff when a patient is determined to be lost, unaccounted for or on other unauthorized absence.);

29. The existence of, name of, the intent of, reasons for, content of and the custodian of any **DOCUMENTS** as to any Corporate Integrity Agreement by which the **FACILITY** was bound to operate during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior through the date of this deposition.

30. The mechanisms utilized for determining and recording levels of staff in **FACILITY** and the identity and location of all person(s) responsible for same during the residency of **PLAINTIFF** in the **FACILITY**;

31. The **IDENTITY**, employment status and last known residence address and telephone number of all persons who on behalf the **FACILITY** provided any services to **PLAINTIFF** during the time frame **PLAINTIFF** was a resident of the **FACILITY**;

32. The intake process utilized by the **FACILITY** to determine the needs of an incoming resident and the purpose for same in effect upon the date of admission of the **PLAINTIFF** as a resident of the **FACILITY**;

33. The process, intent and reason for the creation of **FACILITY** Care Plans and modifications

thereto as to the **PLAINTIFF** and **FACILITY** residents in general during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY** in accordance with the requirements of 902 KAR 20:048 § 4(2)(d). (902 KAR 20:048 § 4(2)(d) provides there shall be a written nursing care plan for each patient based on the nature of illness, treatment prescribed, long and short term goals and other pertinent information. 1. The nursing care plan shall be a personalized, daily plan for individual patients. It shall indicate what nursing care is needed, how it can best be accomplished for each patient, what are the patients preferences, what methods and approaches are most successful, and what modifications are necessary to ensure best results. 2. Nursing care plans shall be available for use by all nursing personnel. 3. Nursing care plans shall be reviewed and revised as needed. 4. Relevant nursing information from the nursing care plan shall be included with other medical information when patients are transferred.);

34. The number of residents of residents in the **FACILITY** who suffered from falls during the residency of the **PLAINTIFF** in the **FACILITY** as well as six (6) months prior and the existence of, name of, custodian of and methodology of creation of, purpose of and recipients of, all **DOCUMENTS** which memorialize same;

**DEPONENTS ARE DIRECTED TO PRODUCE THE FOLLOWING DOCUMENTS IN RESPONSE TO THE ATTACHED SUBPOENA DUCES TECUM**

**Request for Production of Documents No. 1:**

Please provide copies of any and all **DOCUMENTS** in the deponent's care, custody or control which pertain, reference and/or refer to the **PLAINTIFF**. (902 KAR 20:300 § 3(2)(b) provides that the resident shall have the right to inspect and purchase photocopies of all records pertaining to the resident, upon written request and forty-eight (48) hour notice to the facility).

**Request for Production of Documents 2:**

Please provide a blank "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** utilized by the **FACILITY** to report or memorialize any occurrence relating to a resident which were utilized during the residency of the **PLAINTIFF** in the **FACILITY**. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents 3:**

Please provide any "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** utilized by the **FACILITY** to report or memorialize any occurrence relating to a resident which in any fashion mentions or relates to the **PLAINTIFF**. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents 4:**

Please provide each "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** prepared by the **FACILITY** to report or memorialize the development of falls and/or pressure ulcers as to any **FACILITY** resident during the time frame during which the **PLAINTIFF**

was a resident of the **FACILITY**. (The names of all residents other than the **PLAINTIFF** should be redacted from the production.) (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents No. 5:**

Please provide all **DOCUMENTS** which reflect the number of residents in the **FACILITY** who suffered from falls during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY**. (The name of any resident other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 6:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action referencing the **PLAINTIFF** and/or by **YOU** to any named Defendant in this action referencing the **PLAINTIFF**.

**Request for Production of Documents No. 7:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant, or by **YOU** to any named Defendant in this action referencing the staffing levels in the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 8:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant, or by **YOU** to any named Defendant in this action referencing the operating budget and/or financial performance of the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior.

**Request for Production of Documents No. 9:**

Please provide all **DOCUMENTS** which reflect the number of residents in the **FACILITY** who suffered falls during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6)

months prior. (The name of any resident other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents 10:**

Please provide the **FACILITY NURSING STAFFING INFORMATION** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior (The term **NURSING STAFFING INFORMATION** as utilized in this inquiry is defined as that term is defined in 42 C.F.R. §483.30(e) which is as follows:

> (e) *Nurse staffing information*—(1) *Data requirements.* The facility must post the following information on a daily basis:
>
> (i) Facility name.
>
> (ii) The current date.
>
> (iii) The total number and the actual hours worked by the following categories of licensed and unlicensed nursing staff directly responsible for resident care per shift:
>
> (A) Registered nurses.
>
> (B) Licensed practical nurses or licensed vocational nurses (as defined under State law).
>
> (C) Certified nurse aides.
>
> (iv) Resident census.
>
> (2) *Posting requirements.* (i) The facility must post the nurse staffing data specified in paragraph (e)(1) of this section on a daily basis at the beginning of each shift.
>
> (ii) Data must be posted as follows:
>
> (A) Clear and readable format.
>
> (B) In a prominent place readily accessible to residents and visitors.
>
> (3) *Public access to posted nurse staffing data.* The facility must, upon oral or written request, make nurse staffing data available to the public for review at a cost not to exceed the community standard.)

**Request for Production of Documents No. 11:**

Please provide all **DOCUMENTS** which confirm that the **FACILITY** Nursing service personnel were employed and in at least the number …to provide the necessary nursing services for

each resident of the **FACILITY** during the time the **PLAINTIFF** was a resident of the **FACILITY** in accordance with the requirements of 902 KAR 20:300 § 9 which states "[t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 § 3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 § 4(2)(a) provides [t]here shall be twenty (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receive proper care to prevent decubiti and shall be kept comfortable, clean, and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect.)

**Request for Production of Documents No. 12:**

Please provide all **DOCUMENTS** which evidence the **FACILITY** "in-service training and ongoing education" in accordance with the requirements of (902 KAR 20:048 § 3(10)(b) during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number. The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 14:**

Please produce all **DOCUMENTS** which constitute **YOUR** In-Service education during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior.

**Request for Production of Documents No. 15:**

Please produce all **DOCUMENTS** which were provided to those who attended any In-Service education put on by the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 16:**

Please provide all **DOCUMENTS** which consist of the **FACILITY** policies, procedures, manuals or guidelines in effect during the time frame during which the **PLAINTIFF** was a resident in the **FACILITY** relating to operations and resident care of the **FACILITY** as well as the **FACILITY** mechanisms utilized for determining and recording levels of staff in the **FACILITY** and the identity and location of all person(s) responsible for same; the **FACILITY** Business Office Policies and Procedures; and the **FACILITY** Policies and Procedures relating to assessing employees job performance and for memorializing discipline of employees and/or complaints received as it pertains to employees.  (902 KAR 20:048 § 3(4) provides that the facility shall establish written policies and procedures that govern all services provided by the facility. The written policies shall include: (a) Patient care and services to include physician, nursing, pharmaceutical (including medication stop orders policy), and residential services. (b) Adult and child protection. The facility shall have written policies which assure the reporting of cases of abuse, neglect or exploitation of adults and children pursuant to KRS Chapters 209 and 620. (c) Use of restraints. The facility shall have a written policy that addresses the use of restraints and a mechanism for monitoring and controlling their use. (d) Missing patient procedures. The facility shall [have] a written procedure to specify in a step-by-step manner the actions which shall be taken by staff when a patient is determined to be lost, unaccounted for or on other unauthorized absence.)

**Request for Production of Documents No. 17:**

Please provide all **DOCUMENTS** in accordance with the requirements of 902 KAR 20:048 § 3 constituting the job description of any and all **FACILITY** personnel set forth below which were in effect during the residency of the **PLAINTIFF** at the **FACILITY**. (902 KAR 20:048 § 3(10)(a) provides written job descriptions shall be developed for each category of personnel, to include qualifications, lines of authority and specific job assignments.) These include, but are not limited to, the following:

1. Administrator;
2. Director of Nursing;
3. Business Office Manager;
4. Minimum Data Set Coordinator;
5. Case Managers;
6. Registered Nurses;
7. Licensed Vocational Nurses;
8. Charge Nurses;
9. Certified Nursing Assistants;
10. Restorative Nursing Assistants;
11. Physical Therapists;
12. Admissions Coordinator;
13. Business Office Manager;
14. Social Services Director;
15. Activities Personnel;
16. Dietary Services Personnel;
17. Director of Staff Development;
18. Medical Director;

**Request for Production of Documents No. 18:**

Please provide all **DOCUMENTS** constituting the **FACILITY** Employee Handbook in

effect during the residency of the **PLAINTIFF** at the **FACILITY**.

**Request for Production of Documents No. 19:**

Please provide all **DOCUMENTS** constituting Orientation Manuals intended for utilization by **FACILITY** new employees during the residency of the **PLAINTIFF** at the **FACILITY**.

**Request for Production of Documents No. 20:**

Please provide all **DOCUMENTS** constituting the **FACILITY** Code of Conduct for employees in effect during the residency of the **PLAINTIFF** at the **FACILITY**.

**Request for Production of Documents No. 21:**

Please provide all **DOCUMENTS** which constitute any Corporate Integrity Agreement by which the **FACILITY** was bound during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY**.

*Respectfully Submitted,*

**GARCIA, ARTIGLIERE & MEDBY**

Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III
444 East Main Street, Suite 108
Lexington, Kentucky 40507
Telephone: (502) 584-3805
Facsimile: (502) 584-3811
***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

This is to certify that the original of the foregoing was mailed first class United States mail, postage prepaid, to the **Clerk, Pike County Circuit Court, P.O. Box 1002, Pikeville, Kentucky 41502,** and that a true and correct copy of the foregoing was duly mailed this 26th day of July, 2016 to the following:

J. Peter Cassidy, III
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
PH: 859.226.0057
Fax: 859.226.0059
***Counsel for Defendants***

***Counsel for Plaintiff***

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the ESTATE of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v. **MOTION TO INSPECT GUARDIANSHIP FILE**

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

**MOTION**

Defendant, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View"), moves the Court to enter the following Order allowing Mountain View to inspect and/or copy any and all documents, transcripts or recordings in the Guardianship case involving Helen Ray.

Mountain View hereby certifies the following to be the reasons necessary for inspection and/or copying of documents, transcriptions or recordings contained in this guardianship case

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000001 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MOT : 000001 of 000004

file. Mountain View Health Care Center is a nursing home facility located in Elkhorn City, Pike County, Kentucky, at which Respondent, Hellen Ray resided from July 16, 2008 through June 19, 2014. Jennifer Bingham, as Executrix for the Estate of Helen Ray, has sued Mountain View alleging that Helen Ray suffered physical, mental and emotional injuries while a resident at Mountain View. Ms. Bingham filed her complaint alleging negligence on the part of Mountain View Health Care Center in August of 2015 in her capacity as Executrix of the Estate of Helen Ray (the "Civil Case").

Notably, prior to initiation of the Civil Case, a Guardianship matter was initiated and pursuant to the Pike County District Court's Order of July 17, 2008, Jennifer Bingham was appointed the Emergency Guardian of Helen Ray ("Ms. Ray"). On April 29, 2010, an Order was entered appointing Jennifer Bingham to be Ms. Ray's guardian after a jury trial was conducted finding Ms. Ray wholly disabled. Both of these guardianship proceedings occurred during Ms. Ray's residency at Mountain View. Ms. Ray passed away on June 19, 2014. According to the Complaint, Ms. Ray allegedly suffered abuse and neglect at the hands of the Movant during the entirety of her stay at Mountain View. This includes the roughly six years that Ms. Bingham was serving as Ms. Ray's Guardian. Pursuant to Ms. Bingham's statutory duties as Guardian, sje was required by the Pike District Court to submit periodic statements regarding Helen Ray's health and welfare during this approximately six year period, during which Plaintiff alleges Helen Ray was the victim of abuse and neglect.

The conditions of Helen Ray, mentally, physically and emotionally, are issues which are relevant and material to this litigation now pending in this Court. A Memorandum in Support of Movant's Motion is attached hereto. A proposed Order is also attached.

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000002 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MOT : 000002 of 000004

Mountain View initially brought this motion seeking to inspect the guardianship file in the Pike District Court. After a hearing on the matter, Judge Friendly issued the attached Order holding Mountain View's motion in abeyance pending a ruling from the Pike Circuit Court as he did not have jurisdiction over the matter. The Order also notes that should this Court grant the motion, no further proceedings in Pike District Court are necessary. *See* Exhibit A, Order.

**NOTICE**

Please take notice that this matter will come before the Court for a hearing on Friday, August 19, 2016, at the hour of 9:00 a.m. (EST) or as soon thereafter as can be heard.

Respectfully submitted,

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000003 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MOT : 000003 of 000004

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 12th day of August, 2016, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507

*/s/ Matthew C. Cocanougher*
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000004 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MOT : 000004 of 000004

COMMONWEALTH OF KENTUCKY
PIKE DISTRICT COURT
CASE NO. 08-H-00153-001

COMMONWEALTH OF KENTUCKY, ex rel. PETITIONER

v. **ORDER**

HELEN FULLER RAY

RESPONDENT

*** *** ***

Having heard the arguments of counsel, reviewed the record herein and being otherwise sufficiently advised, its is hereby ORDERED that: Movant's motion to inspect and/or copy any and all documents, transcripts or recordings in the above-captioned Guardianship case is hereby **held in abeyance** pending a ruling from the Pike Circuit Court as this Court does not have jurisdiction over this matter; it is further ordered that should the Pike Circuit Court grant the Movant's motion, no further proceedings in the Pike District Court shall be necessary.

Judge, Pike District Court

Date: May 12, 2016

**HAVING SEEN:**

Matthew Cocanougher w/ permission by PLG

J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
Facsimile: 859-226-0059
***Counsel for Defendant Life Care Centers of America, Inc.***

K:\Ray, Helen (15-081-KY)\Pleadings\District.Court.Order.Motion.Inspect.Amended.docx

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000005 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000001 of 000002

Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III
GARCIA, ARTIGLIERE & MEDBY
444 E. Main Street, Suite 108
Lexington, KY 40507
Phone: 502.584.3805
Facsimile: 502.584.3811
*Attorneys for Plaintiff*

## CLERK'S CERTIFICATE OF SERVICE

This is to certify that a true and correct executed copy of the foregoing was duly mailed this 3 day of May, 2016 to the following:

J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
Facsimile: 859-226-0059
***Counsel for Defendant Life Care Centers Of America, Inc.***

Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III
GARCIA, ARTIGLIERE & MEDBY
444 E. Main Street, Suite 108
Lexington, KY 40507
Facsimile: 502.584.3811
***Attorneys for Plaintiff***

CLERK, PIKE DISTRICT COURT

K:\Ray, Helen (15-081-KY)\Pleadings\District.Court.Order.Motion.Inspect.Amended.docx

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000006 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000002 of 000002

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000007 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000001 of 000010

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the
ESTATE of HELEN RAY, deceased,
and on behalf of the Wrongful Death
Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a
MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION TO INSPECT GUARDIANSHIP FILE**

Defendant, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View"), through counsel, moves this Court for an order allowing inspection and copying of all documents, transcripts or recordings of the guardianship action involving Helen Ray. In support of this Motion, Mountain View states as follows:

## RELEVANT FACTS

On August 4, 2015, Jennifer Bingham, as Executrix of the Estate of Helen Ray ("Ms. Bingham" or "Plaintiff"), sued Mountain View, alleging that Helen Ray ("Ms. Ray") suffered physical, mental and emotional injuries while a resident at Mountain View Health Care Center (the "Civil Case"). Prior to the initiation of the Civil Case, a Guardianship matter was initiated and pursuant to the Pike District Court's Order of July 17, 2008, Ms. Bingham was appointed the Emergency Guardian of Ms. Ray. On April 29, 2010, after a jury trial found Ms. Ray to be wholly disabled, Ms. Bingham was appointed Guardian of Ms. Ray. Ms. Ray passed away on June 19, 2014. According to the Complaint in the Civil Matter, Ms. Ray allegedly suffered abuse and neglect at the hands of the Movant during the entirety of her stay at Mountain View. This includes the roughly six year period that Ms. Bingham was serving as Ms. Ray's Guardian. Pursuant to her statutory duties as Guardian, Ms. Bingham was required by the Pike District Court to submit periodic statements regarding Helen Ray's health and welfare during this approximately six year period, during which Plaintiff alleges Helen Ray was the victim of abuse and neglect.

In her Complaint, Ms. Bingham alleges that Ms. Ray suffered "accelerated deterioration of her health and physical condition beyond that caused by the normal aging process," including multiple physical injuries, a loss of personal dignity, extreme pain and suffering, degradation, "disability" and mental anguish among other listed injuries. Plaintiff alleges that all injuries were caused by Mountain View's wrongful and negligent conduct. See Complaint ¶25 and 26. Plaintiff seeks compensatory and punitive damages against Mountain View.

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000008 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000002 of 000010

## ANALYSIS

**A. Disclosure of information in the guardianship file is appropriate under these circumstances.**

KRS 387.770(3) controls this motion and provides in pertinent part:

> **387.770 Confidentiality of records; expungement of records; disclosure of information, log.**
> **….**
> (3) Any person seeking to obtain confidential information contained in the court files or the court records of proceedings under KRS 387.500 to 387.770 may file a written motion stating why the information is needed. The court may issue an order to disclose such information upon a showing that the disclosure is appropriate under the circumstances and in the best interest of the person or the public. The court shall maintain a log of the individuals and entities granted access to the file or records.

The threshold set forth in this statute is met here. The Court is to order disclosure of a guardianship file upon a showing that (1) the disclosure is appropriate under the circumstances; and (2) in the best interest of the person (ward) or the public.

As to the first threshold, the requested disclosure is appropriate under the circumstances, as is necessary to discover information and testimony directly related to Plaintiff's claims leveled against Mountain View of the alleged negligence and mistreatment of Ms. Ray. The guardianship file will contain not only the judgment in this matter, but sworn written statements relating to Ms. Ray's physical and mental condition, as well as sworn trial testimony. This testimony concerning Ms. Ray's physical, emotional and mental conditions was given under oath, and contains the added indicia of trustworthiness that comes from sworn testimony. There is simply no other alternative from which such testimony can be obtained, and in the interest of justice, Mountain View should be given access to this information. Such sworn testimony, which was tantamount to the Pike District Court's decision in the guardianship matter, is central to the allegations contained in Plaintiff's complaint.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000009 of 000092
MEM : 000003 of 000010

Further, Plaintiff has placed Ms. Ray's mental and physical status, health and well-being at issue, during a very long time period when Jennifer Bingham was legally obligated to inform this court of any changes to these conditions. Ms. Bingham, as executrix of Ms. Ray's estate, is now leveling serious accusations against Mountain View during a time period for which Ms. Ray's well-being was being closely monitored by the Pike District Court. Pursuant to KRS Chapter 387, Ms. Bingham was required by law to provide periodic updates to the Pike District Court on the mental and physical condition of Ms. Ray while she served in her capacity as Ms. Ray's guardian. During the entire time that Jennifer Bingham served as guardian, Ms. Ray was a resident of Mountain View. During this time, Ms. Bingham was duty bound after giving an oath to the Pike District Court to discharge her duties as Guardian to look after Ms. Ray's best interests and welfare. Mountain View is entitled to have the audio-video transcript of Jennifer Bingham giving this very oath to the Court. It is unknown by Mountain View whether Ms. Bingham noted any concerns about the care being received at the nursing home in these periodic reports, but if she failed to note any concerns and failed to discharge her duty as guardian, as she swore to this Court that she would, Mountain View is entitled to cross-examine her specifically about that. Mountain View is entitled to review this information, including the reports tendered by Ms. Bingham in the defense of their case, and disclosure of this information is wholly appropriate under these circumstances.

As to the second threshold, justice dictates that Mountain View, as members of the public and defendants in a civil suit brought by the Plaintiff, be allowed to access these records to effectuate their defense. This information is not available through any other discoverable source, and therefore Mountain View and the Pike Circuit Court have the right to discover the whole truth about Ms. Ray's physical, emotional and mental conditions. Mountain View does not have

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000010 of 000092
MEM : 000004 of 000010

any other means to access official court records that directly relate to Ms. Ray's mental, physical or emotional welfare. Nothing is more vital to Kentucky's justice system than an unfettered search for truth in a court of law.[1] In this case, the truth will go undiscovered if the Court denies access to the guardianship file.

The basis for Plaintiff's claims stems from allegations made by Plaintiff as to the source of Ms. Ray's injuries, namely that Ms. Ray suffered numerous physical and mental injuries at Mountain View's hands, including but not limited to "disability," "mental anguish," and "extreme pain and suffering." Many of Plaintiff's claims for damages also inherently assume Ms. Ray's ability to comprehend and appreciate her physical surroundings with few limitations on the capacity of her mental and emotional states. As the Court can see, direct evidence and testimony concerning the true state of Ms. Ray's mental and emotional capacities during the final years of her life, along with her physical conditions, are critical to Mountain View's defense.

Mountain View seeks the material contained in the guardianship proceeding as relevant to determining Ms. Ray's mental, emotional and physical conditions. KRS 387.540 mandates that the guardianship file include an interdisciplinary evaluation report by a physician, a psychologist, and a social worker. See KRS 387.540(1). In addition, the statute requires the interdisciplinary evaluation report to contain a description of the nature and extent of the disabilities and physical condition, an opinion on the type of guardianship needed, and a description of the social, educational, medical and rehabilitative services being utilized by the respondent. See KRS

[1] The Supreme Court of the United States has recognized that restrictions and limitations on the use of testimony are to be interpreted narrowly. "Testimonial exclusionary rules and privileges contravene the fundamental principle that " 'the public . . . has a right to every man's evidence.' " United States v. Bryan, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950). As such, they must be strictly construed and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." Trammel v. U.S. 445 U.S. 40, 50, 100 S.Ct. 906, 912 (1980)

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000011 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000005 of 000010

387.540(4)(a), (b) and (f). Mountain View expects that this file will provide all true and pertinent information.

The records generated in guardianship proceedings are relevant to allegations of the type currently leveled against Mountain View in the Civil Matter. Other district courts in Kentucky have recognized this fact, and granted similar motions to inspect. Appropriately redacted copies of said orders are attached hereto as Exhibit B.

The information contained in the interdisciplinary report, and in the guardianship file in general, cannot be obtained from any other source. Notably, the file will contain sworn statements by the Guardian, who was serving as Guardian and tendering reports as to the condition of the Respondent, while Ms. Ray was allegedly being abused. Pursuant to KRS 387.670, the Guardian is required to file with the court on at least an annual basis a verified report that states, among other things, the ward's current mental, physical and social condition; a summary of the medical, social, educational, vocational and other professional services received; an outline of the guardian's visits to the ward; and a recommendation as to the need for continued guardianship. Movant anticipates that several of these reports were prepared during that period of Ms. Ray's residency at Mountain View, during which Plaintiff alleges Ms. Ray was abused. An appropriately redacted copy of a similar report is attached hereto as Exhibit C.

To further demonstrate that the information provided by the Guardianship file is not readily available through other sources, Mountain View attaches an appropriately redacted copy of several Interdisciplinary Reports as Exhibit D. Form AOC-765 requires specific identification and an explicit description of the ward's disabilities at the time of the hearing. This information includes physical and mental health assessments in direct response to the question of why the person is being considered for guardianship. See Form AOC-765 at ¶ #1. The report answers questions

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000012 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000006 of 000010

about whether the ward can function on his own; can physically care for himself; is mentally aware of his surroundings; has emotional cognition; can feed, bathe and groom himself; even whether he knows what day it is or what his name is. See id. It requires the physicians and clinicians to identify why guardianship is necessary. See id. at ¶ #3. It identifies any evaluator's dissenting opinion concerning the proposed guardian or the need for guardianship. See id. at ¶ #12. It provides recommendations for the scope and limitations of guardianship. See id. at ¶ #4. It provides information concerning medical, mental, rehabilitative and educational treatment already being provided to the ward at the time of the hearing. See id. at ¶ 7. It frequently contains a listing of the ward's current medications and any recent medical discharge information. See id. It often contains sworn statements of the proposed guardian concerning his ward's condition(s). See id. It identifies any possible alternatives to guardianship. See id. at ¶ #8.

In short, the Interdisciplinary Report is a professional, collective evaluation of the ward's physical, mental and emotional conditions. These reports, completed by licensed physicians and licensed clinicians, provide a veritable "snap shot" of the ward's state of being at the time of the guardianship hearing. Finally, to reemphasize that the information contained therein is not available from other sources, Movant attaches a redacted letter from a physician refusing to provide this information even after access to the guardianship file *had already been granted*. As the Court can see, even with a HIPAA medical release signed by the guardian, the physician refused to provide Defendants with the requested information. See, e.g., Letter dated August 6, 2011, attached as Exhibit E.

Nothing could be more relevant to Mountain View's defense against Plaintiff's allegations that it caused Ms. Ray's physical injuries, loss of personal dignity, extreme pain and suffering, degradation, mental anguish, and even "disability" than a report prepared by neutral

Presiding Judge: HON. STEVEN DANIEL COMBS (635210) 4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000013 of 000092
MEM : 000007 of 000010

professionals explaining and detailing the extent of Ms. Ray's conditions. Further, there is no better indication of Ms. Bingham's thoughts on the care being provided by the nursing home than her sworn statements to this court. Such information is vital to Mountain View's defense.

Finally, any asserted interests of Ms. Ray in maintaining the confidentiality of the requested records were certainly eliminated following her death. Under Kentucky law, an individual's right to privacy terminates upon death, and any interests of Ms. Bingham in Ms. Ray's privacy rights terminated upon her death. See 1986 Ky. Op. Atty. Gen. 2-195, Ky. OAG 86-31, 1986 WL 222292 (Ky. A.G. 1986) ("A deceased person has no personal privacy rights and the personal privacy rights of living persons do not extend to matters concerning deceased relatives."); citing McLean v. Rodgers, 300 N.W. 2d 389, 391 (Mich. App. 1980) ("The right to privacy is a personal one ending with the death of the person to whom it is of value"); See also 1988-1991 Ky. Op. Atty. Gen. 2-4 (Ky. A.G. 1988) ("Requested records cannot be withheld from public inspection on the grounds of personal privacy when those records pertain to persons who are deceased as the right of privacy of those persons terminated at the time of their deaths. A deceased person has no personal privacy rights[.]"); See also Loft v. Fuller, 408 So. 2d 619 (Fla. App. 1981).

**B. Plaintiff has waived any confidentiality provided by KRS 387.770.**

In addition, Mountain View asserts that Plaintiff has waived any confidentiality of information provided by KRS 387.770. By asserting certain physical and mental injuries in her Complaint, Plaintiff has put Ms. Ray's physical and mental condition at issue, and similar to the waiver of psychotherapist/patient privilege provided by KRE 507 (c)(3), Plaintiff should not be allowed to make Ms. Ray's mental and physical condition a central element of her Complaint while shielding that assertion from attack by using the confidentiality provisions of KRS

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000014 of 000092
MEM : 000008 of 000010

387.770. "A party claiming damages in the form of mental anguish stemming exclusively from the alleged negligent act must anticipate that the opposing party will be allowed to fairly present mitigating evidence of his mental state before the incident." Dudley v. Stevens, 338 S.W. 3d 774, 776 (Ky. 2011). Similarly, Plaintiff must anticipate, and justice requires, that Mountain View be allowed access to any information that may be used to explain Ms. Ray's mental state.

Any legitimate concern for privacy should not be extended to protect the identity of civil plaintiffs who, like in this case, voluntarily, positively and purposefully avail themselves of the court system with the intent to obtain monetary damages. There is no logical reason to allow a plaintiff to shield relevant information from the accused defendant and from the Court, especially after that Plaintiff has purposefully placed Ms. Ray's condition at issue, while affirmatively accusing the defendant party of acts that have not yet been proven.

## CONCLUSION

In the interests of justice, Mountain View should be allowed access to these guardianship records to learn the whole truth about Ms. Ray's mental, emotional and physical conditions. For the above reasons, Mountain View has met the statutory requirements delineated by KRS 387.770(3) and is entitled to know what testimony and/or evidence was presented during the Guardianship proceedings regarding the physical conditions and disabilities of Ms. Ray and her capacity to understand and comprehend events that occurred in her life. Therefore, Mountain View respectfully requests that this Court grant its Motion to Inspect the guardianship file.

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000015 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000009 of 000010

Respectfully submitted,

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 12th day of August, 2016, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507

*/s/ Matthew C. Cocanougher*
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000016 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000010 of 000010

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000017 of 000092

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 15-CI-778

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v. **COMPLAINT**

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER
3450 Ridgewood Rd.
Atlanta, GA 30327 DEFENDANTS

Serve: CT Corporation System
306 W. Main Street
Suite 512
Frankfort, KY 40601

KENTUCKY MEDICAL INVESTORS, LLC (GA)
3450 Ridgewood Rd.
Atlanta, GA 30327

Serve: CT Corporation System
306 W. Main Street
Suite 512
Frankfort, KY 40601

KENTUCKY MEDICAL INVESTORS, LLC
8325 Highway 60.
P.O. Box 249
Georgetown, TN 37336-0249

Serve: National Registered Agents, Inc.
306 W. Main Street
Suite 512
Frankfort, KY 40601

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000001 of 000073

KENTUCKY MEDICAL INVESTORS, L.T.D.
3450 Ridgewood Rd.
Atlanta, GA 30327

Serve: CT Corporation System
306 W. Main Street
Suite 512
Frankfort, KY 40601

SAK JR., LLC
200 Galleria Pkwy
Ste. 1800
Atlanta, GA 30339

Serve: CT Corporation System
306 W. Main Street
Suite 512
Frankfort, KY 40601

SBK, LLC
3450 Ridgewood Rd.
Atlanta, GA 30327

Serve: CT Corporation System
306 W. Main Street
Suite 512
Frankfort, KY 40601

LIFE CARE CENTERS OF AMERICA, INC.
3570 Keith Street, N.W.
Cleveland, TN 37311

Serve: CSC Lawyers Incorporating Service Company
421 W. Main Street
Frankfort, KY 40601

MISTY WARD, in her capacity as
Administrator of Mountain View Health Care Center
945 West Russell St.
Elkhorn City, KY 41522

Serve: Misty Ward
945 West Russell St.
Elkhorn City, KY 41522

Presiding Judge: HON. STEVEN DANIEL COMBS (635210) 4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000018 of 000092

EXH : 000002 of 000073

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000019 of 000092

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000003 of 000073

JUDITH BRANHAM, in her capacity as
Administrator of Mountain View Health Care Center
945 West Russell St.
Elkhorn City, KY 41522

Serve: Judith Branham
945 West Russell St.
Elkhorn City, KY 41522

John Does 1 Through 5, Unknown Defendants

COMES NOW the Plaintiff, Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, and on behalf of the Wrongful Death Beneficiaries of Helen Ray, deceased, and for this cause of action against Defendants, Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center; Kentucky Medical Investors, LLC (GA); Kentucky Medical Investors, LLC; Kentucky Medical Investors, LTD; SAK JR., LLC; SBK, LLC; Life Care Centers of America, Inc.; Misty Ward, in her capacity as Administrator of Mountain View Health Care Center; Judith Branham, in her capacity as Administrator of Mountain View Health Care Center, and Unknown Defendants, states as follows:

1. Jennifer Bingham is the Executrix of the Estate of Helen Ray, deceased, as appointed by the Order of Pike County District Court, Probate Division, Case No. 14-P-00683 (attached hereto as Exhibit A) and therefore brings this action on behalf of Helen Ray, deceased, pursuant to the Survival of Actions Statute (KRS 411.140), and on behalf of the wrongful death beneficiaries of Helen Ray pursuant to the Wrongful Death Statute (KRS 411.130). Additionally, Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, brings this action on behalf of Helen Ray, pursuant to the Resident's Rights Statute (KRS 216.515, KRS 216.520) and common law.

2. Upon information and belief, Helen Ray was admitted as a resident of Kentucky

Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center located at 945 West Russell Street, Elkhorn City, Pike County, Kentucky 41522 on or around July 16, 2008 and, excepting periods of hospitalization, remained a resident there until her death on June 19, 2014. At all relevant times referenced herein, Helen Ray was of unsound mind and remained of unsound mind until her death.

      3.    Defendant Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center is a Foreign Limited Liability Company with its principal office located at 3450 Ridgewood Rd., Atlanta, Fulton County, Georgia 30327 is authorized to do business in the Commonwealth of Kentucky. Upon information and belief, at times material this action, Defendant Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center owned, operated, managed, controlled, and /or provided services to Mountain View Health Care Center. Defendant Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center was, at times material to this action, the "licensee" of the facility. Under the laws and regulations promulgated and enforced by the Cabinet for Health and Family Services, as licensee of the facility, Defendant Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center was legally responsible for the facility and for ensuring compliance with all laws and regulations related to the operation of the facility. The causes of action made the basis of this suit arise out of such business conducted by said Defendant Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Helen Ray. The registered agent for service of process of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center is CT Corporation System, 306 W. Main Street, Ste. 512, Frankfort, Franklin County, Kentucky 40601.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)    4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000020 of 000092

EXH : 000004 of 000073

4. Defendant Kentucky Medical Investors, LLC (GA) is a Foreign Limited Liability Company with its principal office located at 3450 Ridgewood Rd., Atlanta, Fulton County, Georgia 30327. Upon information and belief, at times material to this action, Defendant Kentucky Medical Investors, LTD (GA) engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. At times material to this action, Defendant Kentucky Medical Investors, LTD (GA) owned, operated, managed, controlled, and/or provided services for nursing facilities, including Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in Elkhorn City, Pike County, Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant Kentucky Medical Investors, LTD (GA) in the ownership, operation, management, control and/or services provided for the facility during the residency of Helen Ray. The registered agent for service of process of Kentucky Medical Investors, LTD (GA) is CT Corporation System, 306 W. Main Street, Ste. 512, Frankfort, Franklin County, Kentucky 40601.

5. Defendant Kentucky Medical Investors, LLC is a Foreign Limited Liability Company with its principal office located at 8325 Hwy 60, Bradley County, Georgetown, TN. Upon information and belief, at times material to this action, Defendant Kentucky Medical Investors, LLC engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. At times material to this action, Defendant Kentucky Medical Investors, LLC owned, operated, managed, controlled, and/or provided services for nursing facilities, including Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in Elkhorn City, Pike County, Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant Kentucky Medical Investors, LLC in the ownership, operation, management, control and/or services provided for the facility

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000021 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000005 of 000073

during the residency of Helen Ray. The registered agent for service of process of Kentucky Medical Investors, LLC is National Registered Agents, Inc., 306 W. Main Street, Ste. 512, Frankfort, Franklin County, Kentucky 40601.

6. Defendant Kentucky Medical Investors, LTD is a Foreign Limited Liability Company with its principal office located at 3450 Ridgewood Rd., Atlanta, Fulton County, Georgia 30327. Upon information and belief, at times material to this action, Defendant Kentucky Medical Investors, LTD engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. At times material to this action, Defendant Kentucky Medical Investors, LTD owned, operated, managed, controlled, and/or provided services for nursing facilities, including Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in Elkhorn City, Pike County, Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant Kentucky Medical Investors, LTD in the ownership, operation, management, control and/or services provided for the facility during the residency of Helen Ray. The registered agent for service of process of Kentucky Medical Investors, LTD is CT Corporation System, 306 W. Main Street, Ste. 512, Frankfort, Franklin County, Kentucky 40601.

7. Defendant SAK JR., LLC is a Foreign Limited Liability Company with its principal office located at 200 Galleria Pkwy, Ste. 1800, Atlanta, Fulton County, Georgia 30339. Upon information and belief, at times material to this action, Defendant SAK JR., LLC engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. At times material to this action, Defendant SAK JR., LLC owned, operated, managed, controlled, and/or provided services for nursing facilities, including Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in Elkhorn City, Pike County,

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000022 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000006 of 000073

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000023 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000007 of 000073

Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant SAK JR., LLC in the ownership, operation, management, control and/or services provided for the facility during the residency of Helen Ray. The registered agent for service of process of SAK JR., LLC is CT Corporation System, 306 W. Main Street, Ste. 512, Frankfort, Franklin County, Kentucky 40601.

8. Defendant SBK, LLC is a Foreign Limited Liability Company with its principal office located at 3450 Ridgewood Rd., Atlanta, Fulton County, Georgia 30327. Upon information and belief, at times material to this action, Defendant SBK, LLC engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. At times material to this action, Defendant SBK, LLC owned, operated, managed, controlled, and/or provided services for nursing facilities, including Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in Elkhorn City, Pike County, Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant SBK, LLC in the ownership, operation, management, control and/or services provided for the facility during the residency of Helen Ray. The registered agent for service of process of SBK, LLC is CT Corporation System, 306 W. Main Street, Ste. 512, Frankfort, Franklin County, Kentucky 40601.

9. Defendant Life Care Centers of America, Inc. is a Foreign Corporation with its principal office located at 3570 Keith Street, Cleveland, Bradley County, TN 37312. Upon information and belief, at times material to this action, Defendant Life Care Centers of America, Inc. engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. At times material to this action, Defendant Life Care Centers of America, Inc. owned, operated, managed, controlled, and/or provided services for nursing

facilities, including Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in Elkhorn City, Pike County, Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant Life Care Centers of America, Inc. in the ownership, operation, management, control and/or services provided for the facility during the residency of Helen Ray. The registered agent for service of process of Life Care Centers of America, Inc. is CSC Lawyers Incorporating Service Company, 421 W. Main Street, Frankfort, Franklin County, Kentucky 40601.

10. Upon information and belief, Defendant Misty Ward was an Administrator of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center during the residency of Helen Ray. The causes of action that make the basis of this suit arise out of Defendant, Misty Ward's administration of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center during the residency of Helen Ray. Defendant Misty Ward may be served as indicated in the caption.

11. Upon information and belief, Defendant Judith Branham was an Administrator of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center during the residency of Helen Ray. The causes of action that make the basis of this suit arise out of Defendant, Judith Branham's administration of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center during the residency of Helen Ray. Defendant Judith Branham may be served as indicated in the caption.

12. John Does 1 through 5, Unknown Defendants are entities and/or persons, either providing care and services to Helen Ray, or directly or vicariously liable for the injuries of Helen Ray. Plaintiff is currently unable to identify these Unknown Defendants, despite diligent efforts, but may discover such identities upon further investigation. Said Defendants are named

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000024 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000008 of 000073

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000025 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000009 of 000073

insofar as their acts and/or omissions were negligent, tortious or otherwise wrongful with respect to care, treatment and services to Helen Ray during her residency at Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center.

13. Whenever the term "Nursing Home Defendants" is utilized within this suit, such term collectively refers to and includes Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center; Kentucky Medical Investors, LTD (GA); Kentucky Medical Investors, LLC; Kentucky Medical Investors, LTD; SAK JR, LLC, SBK, LLC, and Life Care Centers of America, Inc.

14. Nursing Home Defendants controlled the operation, planning, management, budget and quality control of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center. The authority exercised by Nursing Home Defendants over the nursing facility included, but was not limited to, control of marketing, human resources management, training, staffing, creation, and implementation of all policy and procedure manuals used by the nursing facility, federal and state reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax and accounting control through fiscal policies established by Nursing Home Defendants.

15. Whenever the term "Administrator Defendants" is utilized within this suit, such term collectively refers to and includes Misty Ward and Judith Branham.

16. Whenever the term "Defendants" is utilized within this suit, such term collectively refers to and includes all named Defendants in this lawsuit.

17. Jurisdiction and venue are proper in this Court.

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000026 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000010 of 000073

## CAUSES OF ACTION AGAINST NURSING HOME DEFENDANTS

## FACTUAL ALLEGATIONS

18. Plaintiff incorporates all of the allegations contained in Paragraphs 1-17 as if fully set forth herein.

19. Helen Ray began residing at Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center (sometimes referred to as "the facility") on approximately July 16, 2008, and, other than periods of hospitalization, remained a resident there until her death on June 19, 2014.

20. Upon information and belief, Helen Ray was looking to the Nursing Home Defendants for treatment of her total needs for custodial, nursing and medical care and not merely as the situs where others not associated with the facility would treat her.

21. At all relevant times mentioned herein, Nursing Home Defendants owned, operated, managed, controlled and/or provided services for Mountain View Health Care Center, either directly, or through a joint enterprise, partnership and/or the agency of each other and/or other diverse subalterns, subsidiaries, governing bodies, agents, servants or employees.

22. Nursing Home Defendants are directly or vicariously liable for any acts and omissions by any person or entity, controlled directly or indirectly, including any governing body, officer, partner, employee, ostensible or apparent agent, consultant or independent contractor, whether in-house or outside individuals, entities, agencies or pools.

23. Nursing Home Defendants failed to discharge their obligations of care to Helen Ray with a conscious disregard for her rights and safety. At all times mentioned herein, Nursing Home Defendants, through their corporate officers and administrators, had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries suffered by

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000027 of 000092

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000011 of 000073

Helen Ray, as more fully set forth below. Nursing Home Defendants knew that this facility could not provide the minimum standard of care to the weak and vulnerable residents of Mountain View Health Care Center, including Helen Ray.

24. Nursing Home Defendants were on notice and aware of problems with resident care at Mountain View Health Care Center based on surveys conducted at the facility by the Cabinet for Health & Family Services prior to and during the residency of Helen Ray, yet failed to take appropriate action(s) to address and remedy said problems.

25. Due to the wrongful conduct of Nursing Home Defendants, Helen Ray suffered accelerated deterioration of her health and physical condition beyond that caused by the normal aging process, including , but not limited to, the following injuries:

a) Multiple falls with injuries;

b) Dehydration, weight loss and malnutrition;

c) Infections, including urinary tract infections and sepsis;

d) Pressure ulcers;

e) Bruises, blisters and burns of unknown origin;

f) Contractures; and

f) Death.

26. Helen Ray also suffered extreme pain and suffering, mental anguish, disability, disfigurement, hospitalizations, degradation, and unnecessary loss of personal dignity, all of which were caused by the wrongful conduct of Nursing Home Defendants as alleged herein.

**NEGLIGENCE**

27. Plaintiff re-alleges and incorporates all of the allegations contained in Paragraphs 1-26 as if fully set forth herein.

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000028 of 000092

28. Nursing Home Defendants owed a non-delegable duty to Helen Ray to provide the custodial care, services and supervision that a reasonably careful nursing home would provide under similar circumstances.

29. Upon information and belief, Nursing Home Defendants knowingly developed and maintained staffing levels at the facility in disregard of patient acuity levels as well as the minimal time to perform the essential functions of providing care to Helen Ray.

30. Nursing Home Defendants negligently failed to deliver care, services and supervision, including, but not limited to, the following acts and omissions:

a) Failure by the members of the governing body of the facility to discharge their legal and lawful obligation by:

1) ensuring compliance with the rules and regulations designed to protect the health and safety of the residents, such as Helen Ray, as promulgated by the Cabinet for Health and Family Services, Division of Long Term Care;

2) ensuring compliance with the resident care policies for the facility; and

3) ensuring that appropriate corrective measures were implemented to correct problems concerning inadequate resident care.

b) Failure to develop, implement and follow policies to assist Helen Ray in attaining and maintaining the highest level of physical, mental and psychological well-being;

c) Failure to maintain/provide all records on Helen Ray in accordance with accepted professional standards and practices;

d) Failure to provide the minimum number of qualified personnel to meet the total needs of Helen Ray;

e) Failure to provide adequate nursing staff and other personnel that was properly qualified and trained;

f) Failure to ensure that Helen Ray received adequate and proper care;

g) Failure to protect the safety of Helen Ray;

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000012 of 000073

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000029 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000013 of 000073

h) Failure adequately, timely and appropriately educate and inform caregivers at the facility of the needs, level of assistance, and prescribed care and treatment for Helen Ray;

i) Failure to increase the number of personnel at the facility to ensure that Helen Ray received timely and appropriate custodial care, including, but not limited to, supervision;

j) Failure to have in place adequate guidelines, and policies and procedures of the facility and to administer those policies through enforcement of any rules, regulations, by-laws or guidelines;

k) Failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care at the facility;

l) Failure to provide a safe environment for care, treatment and recovery, and to exercise ordinary care and attention for the safety of Helen Ray in proportion to her particular physical and mental ailments, known or discoverable by the exercise of reasonable skill and diligence;

m) Failure to take all necessary and reasonable custodial measures to prevent the onset and progression of pressure sores during Helen Ray's residency; and

n) Failure to inform the physician and family of significant changes in condition.

31. A reasonably careful nursing facility would not have failed to provide the care listed above. It was foreseeable that these breaches of ordinary care would result in serious injuries to Helen Ray. With regard to each of the foregoing acts of negligence, Nursing Home Defendants acted with oppression, fraud, malice, or were grossly negligent by acting with wanton or reckless disregard for the health and safety of Helen Ray.

32. Nursing Home Defendants further breached their duty of care to Helen Ray by violating certain laws and regulations in force in the Commonwealth of Kentucky at the time of the occurrences discussed herein including, but not limited to, those detailed below. These violations by the Nursing Home Defendants are further evidence of their negligence and include, but are not limited to, violation(s) of the following:

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000030 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000014 of 000073

a) Violation(s) of KRS 209.005 *et seq.* and the regulations promulgated thereunder, by abuse, neglect and/or exploitation of Helen Ray;

b) Violation(s) of KRS 508.090 *et seq.*, criminal abuse, by committing intentional, wanton or reckless abuse of Helen Ray, who was physically helpless or mentally helpless or permitting Helen Ray, a person of whom Nursing Home Defendants had actual custody, to be abused. Such abuse caused serious physical injury, placed Helen Ray in a situation that might cause her serious physical injury, and/or caused torture, cruel confinement or cruel punishment of Helen. Ray;

c) Violation(s) of KRS 530.080 *et seq.*, endangering the welfare of an incompetent person, by knowingly acting in a manner which resulted in an injury to the physical and/or mental welfare of Helen Ray, who was unable to care for herself because of her illness;

d) Violation(s) of KRS 506.080, criminal facilitation of criminal act(s), by acting with knowledge that another person or entity was committing one or more of the foregoing criminal acts or intending to commit one or more the foregoing criminal acts, and engaged in conduct which knowingly provided another person or entity the means or opportunity for the commission of such criminal act(s) and which in fact aided another person or entity to commit the criminal act(s); and/or

e) Violation(s) of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services, pursuant to provisions of KRS Chapter 216 and the regulations promulgated thereunder, as well as the applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII or XIX of the Social Security Act.

33. As a direct and proximate result of such grossly negligent, wanton or reckless conduct, Helen Ray suffered the injuries described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Nursing Home Defendants including, but not limited to, medical expenses, extreme pain and suffering, mental anguish, disability, disfigurement, hospitalization, unnecessary loss of personal dignity, and death, in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000031 of 000092

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000015 of 000073

## MEDICAL NEGLIGENCE

34. Plaintiff re-alleges and incorporates all of the allegations contained in Paragraphs 1-33 as if fully set forth herein.

35. Nursing Home Defendants had a duty to provide the standard of professional medical care and services of a reasonably competent nursing facility acting under the same and similar circumstances.

36. Nursing Home Defendants failed to meet applicable standards of medical care. The medical negligence or malpractice of Nursing Home Defendants included, but was not limited to, the following acts and omissions:

a) The overall failure to ensure that Helen Ray received the following:

   1) timely and accurate care assessments;

   2) prescribed treatment, medication and diet;

   3) necessary supervision; and

   4) timely nursing and medical intervention due to significant changes in condition.

b) Failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants and medication aides to meet the total needs of Helen Ray throughout her residency and provide a safe environment;

c) Failure to provide and implement an adequate nursing care plan based on the needs of Helen Ray;

d) Failure to provide care, treatment, diet, monitoring, assistance and medication in accordance with physician's orders;

e) Failure to assess the risk and prevent, treat or heal the development or skin issues including bruising, blisters and burns;

f) Failure to ensure Helen Ray was not deprived of the services necessary to maintain her health and welfare; and

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000032 of 000092

g) Failure to inform the physician and family of significant changes in condition.

37. It was foreseeable that the breaches of care listed above would result in serious injuries Helen Ray. A reasonably competent nursing facility acting under the same or similar circumstances would not have failed to provide the care listed above.

38. With regard to each of the foregoing acts of professional or medical negligence, Nursing Home Defendants acted with oppression, fraud, malice, or were grossly negligent by acting with wanton or reckless disregard for the health and safety of Helen Ray.

39. As a direct and proximate result of such negligence, oppression, fraud, malice, or gross negligence, Helen Ray suffered the injuries described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Nursing Home Defendants including, but not limited to, medical expenses, extreme pain and suffering, mental anguish, disfigurement, hospitalizations, degradation, and unnecessary loss of personal dignity, in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court plus costs and all other relief to which Plaintiff is entitled by law.

**CORPORATE NEGLIGENCE**

40. Plaintiff re-alleges and incorporates all of the allegations contained in Paragraphs 1 – 39 as if fully set forth herein.

41. Upon information and belief, Helen Ray was looking to Nursing Home Defendants' facility for treatment of her physical ailments and not merely as the situs where others not associated with the facility would treat her for her problems. There is a presumption that the treatment Helen Ray received was being rendered through employees of Nursing Home Defendants and that any negligence associated with that treatment would render Nursing Home Defendants responsible. Nursing Home Defendants, or persons or entities under their control, or

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000016 of 000073

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000033 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000017 of 000073

to the extent Nursing Home Defendants were vicariously liable through the ostensible or apparent agency of others, owed a non-delegable duty to residents, including Helen Ray, to use the degree and skill of care which is expected of reasonably competent medical practitioners acting in the same or similar circumstances.

42. Nursing Home Defendants owed a non-delegable duty to assist Helen Ray in attaining and maintaining the highest level of physical, mental and psychological well-being.

43. Nursing Home Defendants owed a duty to Helen Ray to maintain their facility, including providing and maintaining medical equipment and supplies, and hiring, supervising and retaining nurses and other staff employees to meets the needs of residents, including Helen Ray, and are directly liable for the failure to exercise reasonable care in hiring, supervising, training and retaining sufficient numbers of qualified nurses and other staff employees and caregivers during the residency of Helen Ray. Said failures placed the residents of the facility, including Helen Ray, at risk of harm, and a result, Nursing Home Defendants are directly liable for injuries suffered by Helen Ray as a result of these failures to exercise reasonable care.

44. Nursing Home Defendants owed a duty to Helen Ray to have in place procedures and protocols that properly care for residents and to administer these policies through enforcement of any rules, regulations, by-laws or guidelines, which were adopted by Nursing Home Defendants to ensure smoothly run facilities and adequate resident care.

45. Nursing Home Defendants owed a duty to Helen Ray to provide a safe environment, treatment and recovery, and to exercise ordinary care and attention for the safety of residents in proportion to the physical and mental ailments of each particular resident, known or discoverable by the exercise of reasonable skill and diligence. The duty of reasonable care and attention extended to safeguarding Helen Ray from danger due to her inability to care for herself.

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000034 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000018 of 000073

Nursing Home Defendants had a duty to protect Helen Ray from any danger which the surroundings would indicate might befall her in view of any peculiar trait exhibited by her or which her condition or aberration would suggest as likely to happen.

46. With regard to each of the foregoing acts of negligence, Nursing Home Defendants acted with oppression, fraud, malice, or were grossly negligent by acting with wanton or reckless disregard for the health and safety of Helen Ray.

47. As a direct and proximate result of such negligence, oppression, fraud, malice, or gross negligence, Helen Ray suffered the injuries described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Nursing Home Defendants including, but not limited to, medical expenses, extreme pain and suffering, mental anguish, degradation, unnecessary loss of personal dignity, and death in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of the Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

## VIOLATIONS OF LONG TERM CARE RESIDENT'S RIGHTS

48. Plaintiff incorporates all of the allegations contained in Paragraphs 1 -47 as if fully set forth herein.

49. Nursing Home Defendants violated statutory duties owed to Helen Ray as a resident of a long term care facility, KRS 216.510 *et seq*. These statutory duties were non-delegable.

50. The violations of the resident's rights of Helen Ray include, but are not limited to, the following:

a) Violation of the right to be free from mental and physical abuse and neglect;

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000035 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000019 of 000073

b) Violation of the right to be treated with consideration, respect, and full recognition of her dignity and individuality, including privacy in treatment and in care for her personal needs;

c) Violation of the right to have a responsible party or family member or her guardian to be informed of the resident's medical condition unless medically contraindicated and documented by a physician in the resident's medical record;

d) Violation of the right to have a responsible party or family member or her guardian notified immediately of any accident, sudden illness, disease, unexplained absence, or anything unusual involving the resident;

e) Violation of the right to have an adequate and appropriate resident care plan developed, implemented and updated to meet her needs; and

f) Violation of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services, pursuant to provisions of KRS Chapter 216 and the regulations promulgated there under.

51. As a result of the aforementioned violations of the Resident's Rights Statutes by Nursing Home Defendants, pursuant to KRS 216.515(26), Plaintiff is entitled to recover actual damages in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, as well as costs and attorney's fees.

52. With regard to the aforementioned violations of the Resident's Rights Act, Nursing Home Defendants acted with oppression, fraud, malice, or were grossly negligent by acting with wanton and reckless disregard for the rights of Helen Ray and, pursuant to KRS 216.515(26), Plaintiff is entitled to punitive damages from Nursing Home Defendants in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, as well as costs and attorney's fees.

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000036 of 000092

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000020 of 000073

## CAUSE OF ACTION AGAINST ADMINISTRATOR DEFENDANTS

## FACTUAL ALLEGATIONS

53. Plaintiff incorporates all of the allegations contained in Paragraph 1-52 as if fully set forth herein.

54. Upon information and belief, Misty Ward and Judith Branham were Administrators of Mountain View Health Care Center during Helen Ray's residency there.

55. As nursing home administrators licensed by the Commonwealth of Kentucky, Administrator Defendants owed ordinary duties of care to Helen Ray, as well as professional duties and statutory duties owed to residents by licensed, nursing home administrators in Kentucky, pursuant to the Nursing Home Administrators Licensure Act of 1970, codified as KRS sections 216A.010 *et seq*.

56. As the holder(s) of the nursing home administrator's license, Administrator Defendants were legally and individually responsible for the operation of the facility and the welfare of its residents pursuant to Chapter 216A of the Kentucky Revised Statutes and Title 201, Chapter 6 of the Kentucky Administrative Regulations.

57. Administrator Defendants were also responsible for the total management of the facility pursuant to federal law.

58. Administrator Defendants' management responsibilities included ensuring that the facility operated and provided services in compliance with all applicable federal, state, and local laws, regulations, and codes, and within accepted professional standards and principles.

59. Administrator Defendants were responsible for ensuring that the facility complied with state and federal regulations related to nursing facilities. Administrator Defendants had duties to administrate the facility in a manner that enabled it to use resources effectively and

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000037 of 000092

efficiently to attain or maintain the highest practicable, physical, mental and psychological well-being of each resident. The nursing facility, under the leadership of its administrators, is also required to operate and provide services in compliance with all applicable federal, state and local laws, regulations and codes and with accepted professional standards and principles that apply to professionals providing services in such a facility. Administrator Defendants breached their duties of care to Helen Ray by failing to meet these requirements.

**NEGLIGENCE**

60. Plaintiff incorporates all of the allegations contained in Paragraph 1-59 as if fully set forth herein.

61. As the administrators of the facility, Administrator Defendants owed a duty to the residents of Mountain View Health Care Center, including Helen Ray, to provide services as a reasonable administrator within accepted standards for nursing home administrators.

62. Administrator Defendants breached their duties owed to the residents of Mountain View Health Care Center, including Helen Ray, during their tenure as administrators by failing to supervise nurses and nurses' aides and failing to hire sufficient nurses and nurses' aides and, as such, the nurses and nurses' aides were unable to provide Helen Ray the care she required. The negligence of Administrator Defendants includes, but is not limited to, the following acts and omissions:

a) Failure to monitor or provide the number of qualified nursing personnel at the facility to ensure that Helen Ray:

1) received timely and accurate care assessments;

2) received prescribed treatment, medication, and diet;

3) received timely custodial, nursing and medical intervention due to a significant change in condition; and

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000021 of 000073

4) was protected from injuries by the correct use of ordered and reasonable safety measures.

b) Failure to adequately screen, evaluate, and test for competence in selecting personnel to work at the facility;

c) Failure to ensure that Helen Ray was provided with basic and necessary care and supervision;

d) Failure to ensure that Helen Ray received care, treatment, and medication as prescribed or in accordance with physician's orders;

e) Failure to ensure that Helen Ray attained and maintained her highest level of physical, mental, and psychosocial well-being;

f) Failure to ensure that Helen Ray was treated with the dignity and respect that all nursing home residents are entitled to receive;

g) Failure to provide a safe environment for Helen Ray;

h) Failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care at the facility;

i) Failure to discipline or terminate employees at the facility assigned to Helen Ray that were known to be careless, incompetent, and unwilling to comply with the policy and procedures of the facility and the rules and regulations promulgated by the Cabinet for Health and Family Services;

j) Failure to adopt adequate guidelines, policies, and procedures for:

1) investigating the relevant facts, underlying deficiencies, or licensure violations or penalties found to exist at the facility by the Cabinet for Health and Family Services or any other authority;

2) determining the cause of any such deficiencies, violations, or penalties;

3) establishing the method and means for correcting deficiencies or licensure violations or penalties found to exist at the facility;

4) determining whether the facility had sufficient numbers of personnel to meet the total needs of Helen Ray ; and,

5) documenting, maintaining files, investigating and responding to any complaint regarding the quality of resident care, or misconduct by employees at the facility, regardless of whether such complaint derived

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000038 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000022 of 000073

from a resident of said facility, an employee of the facility, or any interested person.

k) Failure to maintain all records on Helen Ray in accordance with accepted professional standards and practice that were complete, accurately documented, readily accessible, and systematically organized with respect to her diagnosis, treatment, and appropriate care plans of care and treatment.

l) Failure to inform the physician and family of significant changes in condition.

m) Failure to increase the number of personnel at the facility to ensure that Helen Ray received timely and appropriate custodial care, including, but not limited to, supervision.

n) Failure to ensure that staff provided proper supervision, treatment, assessment and monitoring of Helen Ray in order to prevent falls with injuries, infections, skin issues and death

63. A reasonably careful nursing home administrator would have foreseen that the failure to provide the ordinary care listed above would result in serious injuries to Helen Ray. Each of the foregoing acts of negligence on the part of Administrator Defendants were accompanied by such wanton or reckless disregard for the health and safety of Helen Ray as to constitute gross negligence.

64. Additionally, Administrator Defendants failed to operate, manage or administer Mountain View Health Care Center in compliance with federal, state, and local laws, regulations, and codes intended to protect nursing home residents, including, but not limited to:

a) Failure to ensure compliance with rules and regulations of the Cabinet for Health and Family Services, pursuant to Chapters 216, 216B and 13A of the Kentucky Revised Statutes and the administrative regulations promulgated there under, and the federal minimum standards imposed by the United States Department of Health and Human Services, 42 C.F.R. sections 405.301 *et seq.*;

b) Failure to ensure compliance with laws and regulations promulgated by the Cabinet for Health and Family Services to provide the minimum number of staff necessary to assist Helen Ray with her needs;

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000039 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000023 of 000073

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000040 of 000092

c) Failure to ensure compliance with law and regulations of the Board of Licensure for Nursing Home Administrators pursuant to the Nursing Home Administrators Licensure Act of 1970, Kentucky Revised Statutes sections 216A.010 *et seq.*;

d) Failure to provide the necessary care and services to attain or maintain the highest practicable, physical, mental, and psychosocial well-being of Helen Ray , and in accordance with the comprehensive assessment and plan of care created at the facility;

e) Failure to provide sufficient nursing staff and nursing personnel to provide adequate and appropriate nursing care to Helen Ray in accordance with the resident care plan generated at the facility;

f) Failure to administer the facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental and psychosocial well-being of Helen Ray .

g) Failure to ensure a nursing care plan based on Helen Ray 's problems and needs was established which contained measurable objectives and time tables to meet her medical, nursing, mental, and psychosocial needs as identified in her comprehensive assessment when Helen Ray's needs changed; and

h) Failure to notify Helen Ray 's family and physician of a need to alter her treatment significantly.

65. Helen Ray was member of a class intended to be protected by the above laws and regulations. The injuries alleged in Paragraph 25 resulted from events the laws and regulations were designed to prevent.

66. It was foreseeable that these breaches of statutory duties would result in serious injuries to Helen Ray. Each of the foregoing acts of negligence on the part of Administrator Defendants were accompanied by such wanton or reckless disregard for the health and safety of Helen Ray as to constitute gross negligence.

67. As a direct and proximate result of such negligent, grossly negligent, wanton, or reckless conduct, Helen Ray suffered the injuries described herein, and Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Administrator Defendants including, but not limited to, medical expenses, extreme pain and suffering, mental anguish,

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000024 of 000073

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000041 of 000092

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000025 of 000073

disfigurement, hospitalizations, degradation, and unnecessary loss of personal dignity, in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

## CAUSES OF ACTION AGAINST ALL DEFENDANTS
## WRONGFUL DEATH

68. Plaintiff incorporates all of the allegations contained in Paragraphs 1-67.

69. As a direct and proximate result of the previously alleged conduct, all of which was grossly negligent, wanton or reckless, the Defendants caused the death of Helen Ray by their wrongful conduct.

70. Helen Ray suffered personal injuries, including excruciating pain and suffering, mental anguish, and emotional distress. The pain, disfigurement and loss of dignity suffered by Helen Ray caused her family to suffer more than normal grief upon her death.

71. As a direct and proximate result of such wrongful death suffered by Helen Ray, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against the Defendants including, but not limited to, medical expenses, funeral expenses and other related costs, pain and suffering, the grief suffered by statutory beneficiaries, mental anguish, disability and loss of life in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court, as well as cost and attorney's fees, plus costs and all other relief to which Plaintiff is entitled by law.

## DAMAGES

72. Plaintiff incorporates all of the allegations contained in Paragraphs 1-69 as if fully set forth herein.

73. As a direct and proximate result of the negligence of all Defendants as set out above, Helen Ray suffered injuries including, but not limited to, those listed herein. As a result, Helen Ray incurred significant medical expenses, and suffered embarrassment and, physical impairment, and incurred funeral expenses.

74. Plaintiff seeks punitive and compensatory damages against all Defendants in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, and on behalf of the Wrongful Death Beneficiaries of Helen Ray, deceased, prays for judgment against Defendants, Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center; Kentucky Medical Investors, LTD (GA); Kentucky Medical Investors, LLC; Kentucky Medical Investors, LTD; SAK JR., LLC; SBK, LLC; Life Care Centers of America, Inc.; Misty Ward, in her capacity as Administrator of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center; Judith Branham, in her capacity as Administrator of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center, and Unknown Defendants; in an amount to be determined from the evidence, the costs herein expended, and all other relief to which Plaintiff is entitled, including TRIAL BY JURY.

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000042 of 000092

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000026 of 000073

Page ID#: 255

*Respectfully Submitted,*

**GARCIA, ARTIGLIERE & MEDBY**

M. Brandon Faulkner
220 West Main Street, Suite 2250
Louisville, Kentucky 40202
Telephone:(502) 584-3805
Facsimile:(502) 584-3811
*Attorneys for Plaintiff*

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000043 of 000092

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000027 of 000073

K:\Ray, Helen\Pleadings\Complaint.01.docx

Page 27 of 27

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

TENDERED 4-25-12
BY C Noal D.C.

COMMONWEALTH OF KENTUCKY
MADISON DISTRICT COURT
CASE NO.: 10-H-35-001

COMMONWEALTH OF KENTUCKY *ex rel.* PETITIONER

ENTERED
OCT 25 2012
MADISON DISTRICT COURT
DARLENE G. SNYDER, CLERK

v.

[redacted] RESPONDENT

ORDER

This matter having come before the Court on the motion of Defendants/Movants, Extendicare, Inc.; Fir Lane Terrace Convalescent Center, Inc. d/b/a Kenwood Health & Rehabilitation Center and Madison Health & Rehabilitation Center; Extendicare Health Network, Inc.; Extendicare Homes, Inc.; Extendicare REIT; Extendicare, L.P.; Extendicare Holdings, Inc.; Extendicare Health Services, Inc.; and Extendicare Health Facility Holdings, Inc. (collectively "Movants",) to obtain a complete copy of the entire case file and proceedings in the above-styled action, the Court having reviewed the Record and being otherwise sufficiently advised:

**IT IS HEREBY ORDERED AND ADJUDGED** as follows:

1. This Court looks to KRS 387.770(3), for guidance on the disclosure of the information in a confidential guardianship proceeding, which provides that the movant show the disclosure is appropriate under the circumstances and in the best interest of the person or the public. This Court also notes that the guardianship file is a record of the Court of Justice, and as such, it is the duty of this Court to determine access to its own records. Ex Parte Farley, 570 S.W. 2d 617, 624 (Ky. 1978); Ky. Const. §§ 109.116; KRS 26A.200.

EXHIBIT
B

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000044 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000028 of 000073

2. Movants have met the threshold requirements of KRS 387.770. By filing suit against the Movants in Madison Circuit Court, alleging that [redacted] suffered physical, mental and emotional injuries, Respondent/Plaintiff has put the mental, physical and emotional health of [redacted] at issue, making the disclosure of the contents of this guardianship proceeding appropriate under the circumstances.

3. Further, the contents of the guardianship file contain the type of information which cannot be obtained from any other source, including prior sworn statements of Respondent/Plaintiff relating to the condition [redacted] Due to the unique nature of such information, it is inequitable to allow the Respondent/Plaintiff to place such matters at issue in the Circuit Court matter, but shield the disclosure of relevant documents from the Defendants/Movants. The interests of justice require the disclosure of the contents of the file, and such interests satisfy the statute's requirements that the disclosure be in the best interests of the public.

WHEREFORE Movants' Motion to copy the entire case file including transcripts and audio recordings is SUSTAINED; and the Madison District Clerk is directed to copy the entire case file and proceedings of this Action and provide same to counsel for Movants and Respondent.

THIS IS A FINAL AND APPEALABLE ORDER, THERE BEING NO JUST REASON OR CAUSE FOR DELAY.

Date: 10-25-12

MADISON DISTRICT JUDGE

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000045 of 000092
EXH : 000029 of 000073

Tendered by:

Tiffany L. Phillips
M. Brandon Faulkner
COUNSEL FOR MOVANTS

**CLERK'S CERTIFICATE OF SERVICE**

This is to certify that a true and accurate copy of the foregoing was served via U.S. mail, first class, postage prepaid, on the 25 day of October, 2012, upon:

Tiffany Lauderdale Phillips, Esq.
M. Brandon Faulkner, Esq.
2452 Sir Barton Way, Suite 300
Lexington, KY 40509

Lisa E. Circeo, Esq.
Wilkes & McHugh, P.A.
P.O. Box 1747
Lexington, KY 40588

Darlene Snyder by C Neal D.C.
CLERK MADISON DISTRICT COURT

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000046 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000030 of 000073

ENTERED
NOV 03 2011
FRANKLIN CIRCUIT COURT
SALLY JUMP, CLERK

COMMONWEALTH OF KENTUCKY
FRANKLIN DISTRICT COURT
CASE NUMBER: 10-H-00036

COMMONWEALTH OF KENTUCKY *ex rel.* PETITIONER

v.

[redacted] RESPONDENT

**** **** **** **** ****

## ORDER

This matter having come before the Court on the Motion of Defendants/Movants, Owenton Manor Nursing, LLC, d/b/a Owenton Manor Care and Rehabilitation Center, Sun Healthcare Group, Inc., SunBridge Healthcare Corporation, Harborside Healthcare Corporation, HBR Kentucky, LLC, Glenda Lawrence in her capacity as Administrator of Harborside Healthcare and Stacie Shive, in her capacity as Administrator of Owenton Manor Care and Rehabilitation, (collectively herein "Movants") to obtain a complete copy of the entire case file and proceedings in the above-styled action. The Court having reviewed the record, heard argument of counsel, and being otherwise sufficiently advised, now makes the following Findings of Fact and Conclusions of Law, and Orders as follows:

## FINDINGS OF FACT

1. [redacted] was admitted as a resident to the Owenton Manor Nursing, LLC, d/b/a Owenton Manor Care and Rehabilitation Center ("Owenton") on or about June 29, 2006 to December 15, 2009 and January 15, 2010 until March 20, 2010.

2. Subsequent to [redacted]'s admission to Owenton, [redacted] was appointed as Guardian of [redacted], an incapacitated person by Order of the Franklin County District Court.

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000047 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000031 of 000073

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000048 of 000092

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000032 of 000073

3. [redacted] as Guardian of [redacted], sued Movants in the Owen Circuit Court alleging, inter alia, that [redacted] suffered physical, mental, and emotional injuries, including disability while a resident at Owenton.

4. Movants filed their Motion seeking access to the confidential guardianship files in this matter pursuant to KRS 387.770(3). A hearing was held October 24, 2011 where counsel for both parties was present and arguments were heard.

## CONCLUSIONS OF LAW

1. This Court looks to KRS 387.770(3) for guidance on the disclosure of the information in a confidential guardianship proceeding, which provides that the movant show the disclosure is appropriate under the circumstances, and in the best interest of the person or the public. This Court also notes that the guardianship file is a record of the Court of Justice, and as such, it is the duty of this Court to determine access to its own records. Ex Parte Farley, 570 S.W. 2d 617, 624 (Ky. 1978); Ky. Const. §§ 109,116; KRS 26A.200.

2. Movants have met the threshold requirements of KRS 387.770. By filing suit against the Movants in Owen Circuit Court, alleging that [redacted] suffered physical, mental, and emotional injuries, Respondent/Plaintiffs have put the mental, physical, and emotional health of [redacted] at issue, making the disclosure of the contents of this guardianship proceeding appropriate under the circumstances.

3. Further, the contents of the guardianship file contains the type of information which cannot be obtained from any other source; including, prior sworn statements of Respondent/Plaintiff relating to the condition of [redacted]. Due to the unique nature of such information, it is inequitable to allow the Respondent/Plaintiff to place such matters at issue in the Circuit Court matter, but shield the disclosure of relevant documents from the

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000049 of 000092

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000033 of 000073

Defendant/Movants. The interests of justice require the disclosure of the contents of the file and such interests satisfy the statute's requirements that the disclosure be in the best interests of the public.

WHEREFORE Movants' Motion to copy the entire case file, including transcripts and audio recordings, is SUSTAINED; and the Franklin District Clerk is directed to copy the entire case file and proceedings of this Action, including any audio recording of the trial or hearing to establish guardianship and provide same to counsel for Movants and Respondent.

This is a final and appealable Order, there being no just reason or cause for delay.

Date: 11/2/11

FRANKLIN DISTRICT JUDGE

**Prepared and Tendered by:**

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

J. Peter Cassidy, III, Esq.
Heather M. McCollum, Esq.
2333 Alexandria Dr.
Lexington, KY 40504

-and-

Donald L. Miller, II, Edq.
9300 Shelbyville Road
Suite 400
Louisville, KY 40222
**COUNSEL FOR MOVANTS**

**CLERK'S CERTIFICATE OF SERVICE**

I, Clerk of the Franklin District Court, hereby certify that a true and accurate copy of the foregoing Order was served via U.S. mail, first class, postage prepaid, on the ______ day of ____________________, 2011, upon the following:

Donald L. Miller, II, Esq.
9300 Shelbyville Road, Suite 400
Louisville, KY 40222

J. Peter Cassidy, III, Esq.
Heather M. McCollum, Esq.
2333 Alexandria Drive
Lexington, KY 40504

Mary J. Perry, Esq.
WILKES & McHUGH, P.A.
One North Dale Mabry, STE. 800
Tampa, FL 33609

Sandra D. Sutter
WILKES & McHUGH, P.A.
P.O. Box 1747
429 North Broadway
Lexington, KY 40508

______________________________
CLERK, FRANKLIN DISTRICT COURT

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000050 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000034 of 000073

COMMONWEALTH OF KENTUCKY
50TH JUDICIAL DISTRICT
MERCER DISTRICT COURT
CASE NO. 10-H-00014-001

COMMONWEALTH OF KENTUCKY PETITIONER

VS. ORDER

[redacted] RESPONDENT

This matter having come on for hearing on March 11, 2011 on Motion to inspect and/or copy documents, transcripts or recordings in the disability case of [redacted] The Court having heard proof, taken testimony, and having reviewed the Motion to Inspect, Memorandum in Support of Motion to Inspect, and the Response to Motion to Inspect, and having reviewed Orders entered by the Warren District Court and Fayette District Court regarding motions to inspect mental health files, and having reviewed the record in its entirety it is hereby Ordered and Adjudged:

This Court finds that KRS 387.770(3) provides that a person seeking to obtain a court file or records may receive an order, "to disclose such information upon a showing that the disclosure is appropriate under the circumstances and in the best interest of the person or the public." In light of the fact that a civil action has been filed against the Movant in Mercer Circuit Court, Civil Action No. 10-CI-000392, alleging that [redacted] client of the Movant, suffered accelerated deterioration of her health and physical condition beyond that caused by the normal aging process, and that [redacted] suffered medical negligence while at

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000051 of 000092
EXH : 000035 of 000073

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000052 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000036 of 000073

Harrodsburg Health Care Center, this Court finds that the proceedings of the disability file of [redacted] are relevant to the allegations of the Complaint.

Accordingly, this Court hereby Orders that Paul A. Dzenitis, Esq. or a representative of his law firm, Reminger Co., LPA, counsel for Kindred Nursing Centers, Limited Partnership d/b/a Harrodsburg Health Care Center, be allowed to inspect and/or copy any and all documents and recordings in this case.

In entering this Order, the Court has duly inquired into the basis for the above Motion and finds that the reasons therefore are adequate to support the entry of the above Order.

This the 1 day of April, 2011.

Hon. Jeff L. Dotson, District Judge
Mercer District Court

CERTIFICATE OF SERVICE

This is to certify that, on this 1st day of April, 2011, the foregoing Order was served by first class mail to Hon. Paul A. Dzenitis and Hon. Richard E. Circco.

Beth Neal, Clerk

By: [signature] D.C.

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000053 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000037 of 000073

COMMONWEALTH OF KENTUCKY
30TH JUDICIAL DISTRICT
BOYLE DISTRICT COURT
CASE NO. 09-H-00107-001

COMMONWEALTH OF KENTUCKY PETITIONER

VS. ORDER

[redacted] RESPONDENT

ENTERED
NOV 22 2011
JONI H. TERRY
CLERK, BOYLE CIRCUIT COURT

This matter having come on for hearing on October 3, 2011 on Motion to inspect and/or copy documents, transcripts or recordings in the disability case of [redacted] The Court having heard proof, taken testimony, and having reviewed the **Motion to Inspect, Memorandum in Support of Motion to Inspect, Jerry Leffew's Response to Kindred Nursing Centers Limited Partnership et al.'s Motion to Inspect, and Reply to Plaintiff's Response to Motion to Inspect** and having reviewed Orders entered by the Warren District Court and Fayette District Court regarding motions to inspect mental health files, and having reviewed the record in its entirety it is hereby Ordered and Adjudged:

This Court finds that KRS 387.770(3) provides that a person seeking to obtain a court file or records may receive an order, "to disclose such information upon a showing that the disclosure is appropriate under the circumstances and in the best interest of the person or the public." In light of the fact that a civil action has been filed against the Movant in Mercer Circuit Court, Civil Action No. 11-CI-00090, alleging that [redacted] client of the Movant, suffered physical, mental and emotional injuries while a resident at Harrodsburg Health Care Center, and that [redacted] suffered "accelerated deterioration of his health and physical condition beyond that caused by the normal aging process", including multiple physical injuries, a loss of personal dignity, extreme pain and suffering.

2/7

degradation, mental anguish, and even "disability" among other listed injuries, which Plaintiff alleges that all injuries were caused by the Movants' wrongful and negligent conduct, this Court finds that the proceedings of the disability file of [redacted] are relevant to the allegations of the Complaint.

Accordingly, this Court hereby Orders that J. Peter Cassidy, III, Esq. or a representative of his law firm, Quintairos, Prieto, Wood and Boyer, P.A., as counsel for Kindred Nursing Centers, Limited Partnership d/b/a Harrodsburg Health Care Center, be allowed to inspect and/or copy any and all documents and recordings in this case.

In entering this Order, the Court has duly inquired into the basis for the above Motion and finds that the reasons therefore are adequate to support the entry of the above Order.

It is further Ordered that based upon this ruling, this case shall be removed from the Court docket of December 9, 2011, unless re-noticed by the parties.

This the 21 day of November, 2011.

Hon. Jeff L. Dotson, District Judge
Boyle District Court

CERTIFICATE OF SERVICE

This is to certify that on this 22 day of November, 2011, the foregoing Order was served by first class mail to Hon. Donald L. Miller, II; Hon. J. Peter Cassidy, III, Hon. Nathaniel R. Kissel, and Hon. Richard E. Circeo.

Joni H. Terry, Clerk

By: ______________ D.C.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000054 of 000092
EXH : 000038 of 000073

ENTERED
GEORGE FLYNN, CLERK
AUG 2 8 2013
PULASKI-DIST COURT
BY ______ D.C.

COMMONWEALTH OF KENTUCKY
PULASKI DISTRICT COURT
CASE NO.: 13-H-18-1

COMMONWEALTH OF KENTUCKY *ex rel.* PETITIONER

v.

[redacted] RESPONDENT

ORDER

This matter having come before the Court on the motion of Defendants/Movants, Extendicare, Inc.; Extendicare Homes, Inc. d/b/a Sunrise Manor Nursing and Rehabilitation Center; Extendicare Health Network, Inc.; Extendicare REIT; Extendicare, L.P.; Extendicare Holdings, Inc.; Extendicare Health Services, Inc.; and Extendicare Health Facility Holdings, Inc. (collectively "Movants",) to obtain a complete copy of the entire case file and proceedings in the above-styled action, the Court having reviewed the Record and being otherwise sufficiently advised:

IT IS HEREBY ORDERED AND ADJUDGED as follows:

1. This Court looks to KRS 387.770(3), for guidance on the disclosure of the information in a confidential guardianship proceeding, which provides that the movant show the disclosure is appropriate under the circumstances and in the best interest of the person or the public. This Court also notes that the guardianship file is a record of the Court of Justice, and as such, it is the duty of this Court to determine access to its own records. Ex Parte Farley, 570 S.W. 2d 617, 624 (Ky. 1978); Ky. Const. §§ 109,116; KRS 26A.200.

2. Movants have met the threshold requirements of KRS 387.770. By filing suit against the Movants in Pulaski Circuit Court, alleging that [redacted] suffered physical, mental

49

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000055 of 000092
EXH : 000039 of 000073

and emotional injuries, Respondent/Plaintiff has put the mental, physical and emotional health of [redacted] at issue, making the disclosure of the contents of this guardianship proceeding appropriate under the circumstances.

3. Further, the contents of the guardianship file contain the type of information which cannot be obtained from any other source, including prior sworn statements of Respondent/Plaintiff relating to the condition of [redacted]. Due to the unique nature of such information, it is inequitable to allow the Respondent/Plaintiff to place such matters at issue in the Circuit Court matter, but shield the disclosure of relevant documents from the Defendants/Movants. The interests of justice require the disclosure of the contents of the file, and such interests satisfy the statute's requirements that the disclosure be in the best interests of the public.

WHEREFORE Movants' Motion to copy the entire case file including transcripts and audio recordings is SUSTAINED; and the Pulaski District Clerk is directed to copy the entire case file and proceedings of this Action and provide same to counsel for Movants and Respondent.

THIS IS A FINAL AND APPEALABLE ORDER, THERE BEING NO JUST REASON OR CAUSE FOR DELAY.

Date: August 27, 2013

[signature]
PULASKI DISTRICT JUDGE

Tendered by:

J. Peter Cassidy, III
COUNSEL FOR MOVANTS

50

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000056 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000040 of 000073

CLERK'S CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing was served via U.S. mail, first class, postage prepaid, on the 28 day of Aug, 2013, upon:

J. Peter Cassidy, III, Esq.
Anthony B. Gray, Esq.
2452 Sir Barton Way, Suite 300
Lexington, KY 40509

Ross F. Mann, Esq.
Wilkes & McHugh, P.A.
P.O. Box 1747
Lexington, KY 40588

M. Burkett D.C.
CLERK PULASKI DISTRICT COURT

51

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000057 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000041 of 000073

COMMONWEALTH OF KENTUCKY
CLARK DISTRICT COURT
CASE NUMBER: 11-H-00014-001

COMMONWEALTH OF KENTUCKY ex rel PETITIONER

v.

[redacted] RESPONDENT

**ORDER**

**** **** **** **** ****

This matter having come before the Court on the motion of Defendants/Movants, Kindred Nursing Centers Limited Partnership, d/b/a/ Fountain Circle Health and Rehabilitation, Kindred Nursing Centers East, Kindred Hospitals Limited Partnership, Kindred Healthcare, Inc., Kindred Healthcare Operating, Inc., Kindred Rehab Services, Inc. d/b/a Peoplefirst Rehabilitation, Clark Dennis McNatt, in his capacity as Administrator of Fountain Circle Health and Rehabilitation, and Nancy C. Russell, in her capacity as Administrator of Fountain Circle Health and Rehabilitation (collectively "Movants"); to obtain a complete copy of the entire case file and proceedings in the above-styled action; the Court having reviewed the Record and being otherwise sufficiently advised:

IT IS HEREBY ORDERED AND ADJUDGED as follows:

1. The disclosure of the requested guardianship record is appropriate and in the best interest of justice, as the Respondent herein has placed her mental, physical and emotional conditions in issue in a lawsuit filed in the Clark Circuit Court, Case No. 11-CI-00463;

2. Movants' Motion to copy the entire case file including transcripts and audio recordings is SUSTAINED; and

ENTERED 7/20/12
PAULA S. JOSLIN
CLARK CIRCUIT/DISTRICT COURT
BY [signature] D.C.

52

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000058 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000042 of 000073

3. The Clark District Clerk is directed to copy the entire case file and proceedings of this Action and provide same to counsel for Movants and Respondent, to be used only for Movants stated purpose and not otherwise disclosed.

THIS IS A FINAL AND APPEALABLE ORDER, THERE BEING NO JUST REASON OR CAUSE FOR DELAY.

Date: 6.14.12

CLARK DISTRICT JUDGE

Tendered By:

Donald L. Miller, II
J. Peter Cassidy, III
Nathaniel R. Kissel
COUNSEL FOR MOVANTS

## CLERK'S CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing was served via U.S. mail, first class, postage prepaid, on the ______ day of August, 2011, upon:

Donald L. Miller, II, Esq.
9300 Shelbyville Road, Suite 400
Louisville, KY 40222

J. Peter Cassidy, III, Esq.
Nathaniel R. Kissel, Esq.
2333 Alexandria Drive
Lexington, KY 40504

Richard E. Circeo, Esq.
Wilkes & McHugh, P.A.
P.O. Box 1747
Lexington, KY 40588

CLERK CLARK DISTRICT COURT

53

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000059 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000043 of 000073



KRS 387.770
KRS 202A.091

CASE NO. 07-H-29-1

WARREN DISTRICT COURT
MENTAL HEALTH DIVISION

IN RE: H[redacted]

ORDER

**** **** **** **** ****

Upon Motion of Rosewood Healthcare Center ("Rosewood"), and the Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED THAT Donald L. Miller, II or a representative of his law firm, Reminger Co., LPA, counsel for Rosewood be allowed to inspect and/or copy any and all documents and recordings in this case.

In entering this Order, the Court has duly inquired into the basis for the above Motion and finds that the reasons therefore are adequate to support the entry of the above Order.

JUDGE, WARREN DISTRICT COURT

DATE: 3-26-2010

TENDERED
DATE: 3/18/10

Copies to:

Donald Miller, II, Esq.
Paul A. Dzenitis, Esq.
Reminger Co., LPA
One Riverfront Plaza
401 West Main Street, Suite 710
Louisville, KY 40202

Lisa E. Circeo, Esq.
Wilkes & McHugh, P.A.
429 North Broadway
Lexington, KY 40508

ENTERED 3/26/10
PAT HOWELL GOAD, CLERK
WARREN CIRCUIT COURT DIV # I
BY ____ D.C.

57

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000060 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000044 of 000073

COMMONWEALTH OF KENTUCKY
LARUE DISTRICT COURT
CASE NO.: 09-H-00017-0001

RHONDA CARSON as LEGAL GUARDIAN of [redacted], PLAINTIFF/RESPONDENT

v. **ORDER**

KINDRED NURSING CENTERS LIMITED PARTNERSHIP d/b/a WOODLAND TERRACE HEALTH CARE FACILITY; and TONYA HAINES, DEFENDANTS/MOVANTS

Upon Motion of Harrodsburg Health Care Center ("Harrodsburg"), and the Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED THAT Jan G. Ahrens, Esq. or a representative of her law firm, Quintairos, Prieto, Wood & Boyer, P.A., counsel for Kindred Nursing Centers Limited Partnership d/b/a Woodland Terrace Health Care Facility and Tonya Haines be allowed to inspect and/or copy any and all documents and recordings in this case.

In entering this Order, the Court has duly inquired into the basis for the above Motion and finds that the reasons therefore are adequate to support the entry of the above Order.

ENTERED
DATE 4/20/11
LARRY G. BELL
LaRue Circuit Clerk

JUDGE, LARUE DISTRICT COURT

DATE: 04-19-2011

Copies to:

Jan G. Ahrens
9300 Shelbyville Rd., Ste. 400
Louisville, KY 40222

Danny E. Darnall, Esq.
911 North Mulberry Street
Elizabethtown, KY 42701

TENDERED
Date: 4/19/11

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000061 of 000092
EXH : 000045 of 000073




4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000062 of 000092

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been served this 15th day of April, 2011, via U.S. Mail Service, postage prepaid, upon the following:

Danny R. Dennell, Esq.
911 North Mulberry Street
Elizabethtown, KY 42701
COUNSEL FOR PLAINTIFF/RESPONDENT

Original to:

Clerk of the Court
LaRue District Court
P.O. Box 191
Hodgenville, KY 42748-0191

[signature]
COUNSEL FOR DEFENDANTS/MOVANTS

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000046 of 000073

ENTERED 3-14-14
PAULA S. JOSLIN
CLARK CIRCUIT/DISTRICT
BY [signature]

COMMONWEALTH OF KENTUCKY
CLARK DISTRICT COURT
CASE NUMBER: 11-H-00039-001

COMMONWEALTH OF KENTUCKY, ex rel PETITIONER

v.

[redacted] RESPONDENT

**ORDER**

**** **** **** **** ****

This matter having come before the Court on the motion of Defendants/Movants, Kindred Nursing Centers Limited Partnership d/b/a Fountain Circle Health and Rehabilitation; Kindred Nursing Centers East, LLC; Kindred Hospitals Limited Partnership; Kindred Healthcare, Inc.; Kindred Healthcare Operating, Inc; and Kindred Rehab Services, Inc. d/b/a Peoplefirst Rehabilitation (collectively "Movants"); to obtain a complete copy of the entire case file and proceedings in the above-styled action; the Court having reviewed the Record and being otherwise sufficiently advised:

**IT IS HEREBY ORDERED AND ADJUDGED** as follows:

1. The disclosure of the requested guardianship record is appropriate and in the best interest of justice, as the Respondent herein has placed his mental, physical and emotional conditions in issue in a lawsuit filed in the Clark Circuit Court, Case No. [redacted]

2. Movants' Motion to copy the entire case file including transcripts and audio recordings is SUSTAINED; and

3. The Clark District Clerk is directed to copy the entire case file and proceedings of this Action and provide same to counsel for Movants and Respondent.

THIS IS A FINAL AND APPEALABLE ORDER, THERE BEING NO JUST REASON OR CAUSE FOR DELAY.

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000063 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000047 of 000073

Date: March 13, 2014

William "Bo" Leach
Special CLARK DISTRICT JUDGE

Tendered by:

[signature]
J. Peter Cassidy, III
Nathaniel R. Kissel
COUNSEL FOR MOVANTS

**CLERK'S CERTIFICATE OF SERVICE**

This is to certify that a true and accurate copy of the foregoing was served via U.S. mail, first class, postage prepaid, on the 14th day of March, 2014, upon:

J. Peter Cassidy, III, Esq.
Nathaniel R. Kissel, Esq.
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Suite 300
Lexington, KY 40503

Roscoe F. Mann, III, Esq.
Wilkes & McHugh, P.A.
429 North Broadway
P.O. Box 1747
Lexington, KY 40588

J.T. Gilbert, Esq.
Coy, Gilbert & Gilbert
212 N. Second Street
Richmond, KY 40475

Brian N. Thomas, Esq.
Clark County Attorney
17 Cleveland Ave., First Floor
Winchester, KY 40391

Dodd Dixon, Esq.
830 Bypass Rd.
Winchester, KY 40391

[signature]
CLERK CLARK DISTRICT COURT

2

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000064 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000048 of 000073



COMMONWEALTH OF KENTUCKY
ROWAN DISTRICT COURT
CASE NO.: 12-H-40-1

COMMONWEALTH OF KENTUCKY, ex rel. PETITIONER

v.

[redacted] RESPONDENT

**** **** **** **** ****

**AGREED ORDER**

This matter having come before the Court on the motion of Life Care Centers of America, Inc. ("Movant") to obtain a complete copy of the entire case file and proceedings in the above-styled action; the Court having reviewed the Record and being otherwise sufficiently advised:

**IT IS HEREBY ORDERED AND ADJUDGED** as follows:

1. The disclosure of the requested guardianship record is appropriate and in the best interest of justice, as the Respondent herein has placed her mental, physical and emotional conditions in issue in a lawsuit filed in the Rowan Circuit Court, Case No. 14-CI-90223, now removed to the U.S. District Court, Eastern District, Case No.: 14-cv-00144-HRW;

2. Movant's Motion to copy the entire case file including transcripts and audio recordings is GRANTED;

3. Respondent has no objection and agrees that this order shall be entered;

4. The Rowan County Attorney, Honorable Cecil Watkins and Rowan County Guardian ad Litem, Honorable Joyce Stevens, have no objections and agree that this order shall be entered, and;

4. The Rowan District Clerk is directed to copy the entire case file and proceedings of this Action and provide same to counsel for Movant and Respondent.

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000065 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000049 of 000073

THIS IS A FINAL AND APPEALABLE ORDER, THERE BEING NO JUST REASON OR CAUSE FOR DELAY.

Date: 03/12/2015

[signature]
ROWAN DISTRICT JUDGE

Tendered by:

[signature]
J. Peter Cassidy, III
Allison S. Eastland
COUNSEL FOR MOVANTS

[signature]
Hon. Cecil Watkins
ROWAN COUNTY ATTORNEY

Jeffrey Sampson
Jeffrey T. Sampson
COUNSEL FOR [redacted]
GUARDIAN OF [redacted]
Signed w/ permission by A. EASTLAND

Joyce P. Stevens
Hon. Joyce Stevens
ROWAN COUNTY Guardian ad Litem

**CLERK'S CERTIFICATE OF SERVICE**

This is to certify that a true and accurate copy of the foregoing was served via U.S. mail, first class, postage prepaid, on the 17 day of March, 2015, upon:

J. Peter Cassidy, III, Esq.
Allison S. Eastland, Esq.
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Suite 300
Lexington, KY 40503

Hon. Cecil Watkins
Rowan County Attorney
600 West Main Street, Courthouse
Morehead, KY 40351

Jeffrey T. Sampson, Esq.
The Sampson Law Firm
450 S. 3rd St., 4th Fl.
Louisville, KY 40202

Hon. Joyce Stevens
Rowan Guardian ad Litem
105 East Main Street
Morehead, KY 40351

Beverly Stacy DC
CLERK, ROWAN DISTRICT COURT

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000066 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000050 of 000073

AOC-790 Doc. Code: RGD
Rev. 12-03
Page 1 of 3

Commonwealth of Kentucky
Court of Justice
www.courts.ky.gov
KRS 387.670

ANNUAL REPORT
OF GUARDIAN

REDACTED
Case No. 07- H
Court
County

COMMONWEALTH OF KENTUCKY

VS.

REDACTED

RESPONDENT

* * * * * * * * * * * *

I, the undersigned, state that I am the [ ] Guardian [ ] Limited Guardian of the above-named Respondent, and report to the Court as follows:

1. Present age of Ward: 84
2. Date of birth: REDACTED
3. Current address of Ward:
4. Ward's present living arrangement is:

[ ] Own home
[X] Nursing home
[ ] Guardian's home
[ ] Skilled care
[ ] Hospital
[ ] Intermediate care
[ ] Relative's home
[ ] Personal care

Relationship

[ ]
Other:

5. Ward has been at present residence since Dec 29 2006
If Ward has lived elsewhere during the reporting period, list description and address of each residence and the length of stay at each.

EXHIBIT C

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000067 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000051 of 000073

AOC-780
Rev. 12-03
Page 2 of 3

Doc. Code: RGD

6. During this reporting period, the Ward's mental condition has:

[√] Remained about the same.

[ ] Improved. Describe:

[ ] Deteriorated. Describe:

7. During this reporting period, the Ward's physical health has:

[√] Remained about the same.

[ ] Improved. Describe:

[ ] Deteriorated. Describe:

8. During this reporting period, the Ward's social condition has:

[√] Remained about the same.

[ ] Improved. Describe:

[ ] Deteriorated. Describe:

9. During this reporting period, the Ward has received the following services:

Medical: at nursing home

Educational:

Social:

Vocational:

Other:

10. My visits and activities on behalf of the Ward were:

family visits

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000068 of 000092

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000052 of 000073

AOC-790
Rev. 12-03
Page 3 of 3

Doc. Code: RGD

11. The guardian [✓] should [ ] should not be continued or modified for the following reasons:

______________________________________________

______________________________________________

12. I [✓] do [ ] do not have responsibility for managing the Ward's estate. If so, an accounting of the estate [ ] is attached [ ] was filed last year.

13. A standby guardian [✓] has [ ] has not been appointed.

Date

REDACTED
Guardian

REDACTED
Guardian's Phone Number

REDACTED
Guardian's Social Security Number

REDACTED
Address

* * * * * * * * * * * *

SUBSCRIBED and SWORN to before me this 13th day of June, 2008.

My Commission expires: ______________________

Notary Public

* * * * * * * * * * * *

To be signed by Standby Guardian if one is appointed.

I, the undersigned, state that I am the Standby Guardian of the above-named Respondent and continue to be willing to serve in the event of the death, resignation, removal or incapacity of the Guardian.

Date

Signature of Standby Guardian

Standby Guardian's Phone Number

Standby Guardian's Social Security Number

Address

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000069 of 000092

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000053 of 000073

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000070 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000054 of 000073

REDACTED

FILED AND ENTERED
ATTEST, WILMA F. LYNCH, CLERK
DEC 0 9 2009
FAYETTE DISTRICT CLERK
BY ______ DEPUTY

CABINET FOR HEALTH AND FAMILY SERVICES
DEPARTMENT FOR COMMUNITY BASED SERVICES

Steven L. Beshear
Governor

Southern Bluegrass Service Region
Division of Protection and Permanency
1165 Centre Parkway, Suite 180
Lexington, Kentucky 40517
(859) 271-8765

Janie Miller
Secretary

COURT CASE NUMBER:
COURT CASE NAME:

## INTERDISCIPLINARY EVALUATION

This report was completed by a representative of the Cabinet for Health and Family Services by Order of Appointment of Examination by Fayette County District Court, Jury Trials Division. This information has been gathered through personal interviews, observations, and review of available records.

**PERSONAL INFORMATION:**

s an year-old Caucasian female who is currently residing at at been residing here since April of 2009. has been a widow since 1986 and was married for 39 years. worked as a nurse's aide 10 years ago. Her granddaughter, reported her grandmother used to like to travel, sew and attend church.

The Cabinet for Health and Family Services is completing this assessment after granddaughter, filed a petition for guardianship in order to ensure her grandmother's needs continue to be met. reported her mother was caring for but passed away a year ago. Worker observed on November 23, 2009 at 12:00 pm at had recently had her entire hip removed in July 2007, after having complications with a hip replacement. Worker observed her bed, being fed by one of the caretakers at the facility.

**PHYSICAL AND MENTAL ASSESSMENT:**

According to doctor, she is diagnosed with Alzheimer's Disease, Unspecified Psychosis, Anxiety, and Depressive Disorder. is on numerous medications, which include Kaopectate, Aricept, Lovenox, Isosorbide Dinitrate, Metoprolol Titrate, Valproic Acid, Zoloft, Zyprexa, Seroquel, Lorazepam, Namenda, Senna, and Famtidine. requires total care in order to complete the activities of daily living. did not know what day it was and could not tell worker where she was. currently is unable to walk and has to be placed in a wheel chair. She is unable to feed herself, bathe herself and groom herself. is currently overseeing her grandmother's finances.

189

EXHIBIT
D

COURT CASE NUMBER:
PAGE 2

REDACTED

**ASSESSMENT:**
Worker was able to evaluate on November 23, 2009 at 12:00 pm in her room at the has resided there for 8 months and she is cared for by the staff at this center. reported she sees her grandmother every day and will assist with her feedings and/or medications when she is able to do so. is unable to live independently without the assistance of others. She is at a point in her life where she requires total assistance with all her medications, her feedings, and using the restroom.

**ENVIRONMENTAL/SUPPORT SYSTEMS:**
largest support system is her granddaughter, was being cared for by her daughter, until she passed away last year. reported her grandmother has needed assistance for over eleven years now. appears to be very concerned about her grandmother's well-being and at this time appears to be most appropriate person supporting her. also receives support from the staff at the facility.

**RECOMMENDATIONS:**
There is no other alternative to guardianship for as she has advanced Alzheimer's Disease and is unable to make decisions regarding personal, medical, and financial affairs. This worker recommends that a full guardian be appointed to assume responsibility for personal affairs, living arrangements and medical decisions. This worker also recommends that a full conservator be appointed to assume responsibility for financial affairs.

Respectfully submitted,

Approved by:

190

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000071 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000055 of 000073

REDACTED

| AOC-768 Doc. Code: RIET Rev. 8-07 Page 1 of 3 | | Case No. |
|---|---|---|
| Commonwealth of Kentucky Court of Justice www.courts.ky.gov | REPORT OF INTERDISCIPLINARY EVALUATION TEAM | Court DISTRICT |
| KRS 387.540 | | County [REDACTED] |

COMMONWEALTH OF KENTUCKY
PETITIONER

VS.

RESPONDENT

FILED AND ENTERED
ATTEST, WILLIAM F. LYNCH CLERK
NOV 25 2009
BY [signature] DEPUTY

* * * * * * * * * * * * *

We, the undersigned, hereby report to the court as follows:

1. That the nature and extent of the Respondent's disabilities may be described as follows:
Patient with cognitive impairment due to advanced Alzheimers disease.

2. That the evaluations ordered regarding the Respondent are current and were performed and signed by the following individuals:

| Evaluation | Name | Title | Date Performed |
|---|---|---|---|
| Intellectual: | | | |
| Physical: | | | 9-1-09 |
| Educational: | | | |
| Adaptive Behavior: | | | |
| Social Skills: | | | |

491

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000072 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000056 of 000073

AOC-758 Doc Code: PIET
Rev. 8-07
Page 2 of 3

That guardianship:

☑ is needed for the following reason:

Due to severe cognitive impairment secondary to Alzheimer's.

☐ is not needed for the following reason:

4. That the recommendation(s) of the type, scope, and duration of guardianship for the Respondent is/are as follows:

Full guardianship necessary indefinitely due to scope of illness.

5. That conservatorship:

☑ is needed for the following reason:

as above.

☐ is not needed for the following reason:

That the recommendation(s) of the type, scope, and duration of conservatorship for the Respondent is/are as follows:

as above

7. That the social, educational, medical, and rehabilitative services currently being provided to the Respondent are as follows:

Patient currently requires full care at a long-term care facility.

8. That appropriate alternatives to guardianship/conservatorship:

☐ Are available (explain):

☑ Are not available (explain):

Patient with advanced Alzheimer's with no expectation of cognitive improvement

9. That the recommendations and reasons as to the most appropriate treatment or rehabilitation plan and living arrangement for the Respondent are as follows:

Patient requires the assistance of a long-term care facility.

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000073 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000057 of 000073

AOC-NN
Rev. 8-07
Page 3 of 3

REDACTED

10. That for the Respondent to attend the hearing on the Petition filed herein:

☒ Would subject him/her to serious risk of harm.

☐ Would not subject him/her to serious risk of harm.

11. That appended hereto is a list of all medications currently being given the Respondent on a continuous basis, the dosage of the medication, and a description of its impact upon the Respondent's mental and physical condition and behavior. See attached

12. That any dissenting opinions or other comments are as follows:

_______________

_______________

_______________

X 11/16/2009
Date

_______________ Signature of Licensed Physician

_______________ Signature of Licensed/Certified Psychologist

_______________ Signature of Licensed/Certified Social Worker

_______________ Signature of Other

_______________ Name of Facility or Agency

_______________

_______________ Address

_______________ Telephone Number

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000074 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000058 of 000073

REDACTED

AOC-763 Doc. Code: RIET
Rev. 2-03
Page 1 of 3

Case No.

Commonwealth of Kentucky
Court of Justice
KRS 387.540

REPORT OF INTERDISCIPLINARY EVALUATION TEAM

Court District
County Lake

COMMONWEALTH OF KENTUCKY
PETITIONER

VS.

RESPONDENT

Filed: Date 10-13-09
LARRY D. BELL
Clerk, Lake District Court
By: D.C.

We, the undersigned, hereby report to the court as follows:

1. That the nature and extent of the Respondent's disabilities may be described as follows:

6? year old man who is currently residing at since September 2, 2009. has been married for 41 years and his wife has taken care of him for 38 years at their home (after Vietnam War) is diagnosed with pneumonia, paranoid schizophrenia, Chronic Obstruction Pulmonary Disorder (COPD), Chest Pain, Dementia, Hyperlipidemia (liver enzymes are off), Hypertension, Insomnia, Esophageal Reflux, Senile Delirium, Swollen Prostate, blood disorder (thickening of blood) and is on oxygen. cannot carry on a 2-way conversation but is able to understand simple dialogue. does not say anything unless he is asked and then the answer is either "yes" or "no". needs assistance with his activity of daily living tasks with prompting and cuing in bathing, dressing, grooming, toileting and eating (he probably can eat by himself but he doesn't so staff has to feed him). can get out of bed himself but does have an unsteady gait; he has a history of falls; he uses a wander guard does not know what medications he is taking; staff at distributes his medications does not know how much money he receives is now handling his finances/payments to the facility as of September 21, 2009. Psychologist report shows while home, was out of control (agitated, belligerent, tearful and anxious) and threatened suicide 3 different times and requires much reassurance; psychiatrist recommended nursing home placement is unable to make informed decisions concerning his safety and well-being and needs assistance with his personal/financial/ medical matters.

2. That the evaluations ordered regarding the Respondent are current and were performed and signed by the following individuals:

| Evaluation: | Name | Title | Date Performed |
|---|---|---|---|
| Intellectual: | | | |
| Physical: | | | |
| Educational: | | | |
| Adaptive Behavior: | | Social Service Clinician I | September 25, 2009 |
| Social Skills: | | Social Service Clinician I | September 25, 2009 |

Filed Date 3-19-10
LARRY D. BELL
Clerk, Lake District Court
By: D.C.

Commonwealth Exhibit #1

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000075 of 000092

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000059 of 000073

AOC-765 Doc. Code: RIET
Rev. 1-01
Page 2 of 3

3. That guardianship:

X is needed for the following reason:

is unable to make informed decisions regarding his personal affairs including food, shelter, clothing, personal hygiene and health care.

___ is not needed for the following reason:

4. That the recommendation(s) of the type, scope, and duration of guardianship for the Respondent is/are as follows:

Full guardianship for foreseeable future.

5. That conservatorship:

X is needed for the following reason:

is unable to make informed decisions regarding his finances and needs someone to make decisions in his best interest.

___ is not needed for the following reason:

6. That the recommendation(s) of the type, scope and duration of conservatorship for the Respondent is/are as follows:

Full conservatorship for foreseeable future.

7. That the social, educational, medical and rehabilitative services currently being provided to the Respondent are as follows:

Services are currently being provided by staff at

8. That appropriate alternatives to guardianship/conservatorship:

___ Are available (explain):

X Are not available (explain):

is unable to make informed decisions regarding his personal and financial affairs for his own safety and well-being. A least restrictive alternative to guardianship/conservatorship would place in a vulnerable situation.

9. That the recommendations and reasons as to the most appropriate treatment or rehabilitation plan and living arrangement for the Respondent are as follows:

Current living arrangements and services are appropriate.

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000076 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000060 of 000073

REDACTED

AOC-765 Doc. Code: RIET
Rev. 1-01
Page 3 of 3

10. That for the Respondent to attend the hearing on the Petition filed herein:

_X_ Would subject him/her to serious risk of physical harm.

___ Would not subject him/her to serious risk of physical harm.

11. That appended hereto is a list of all medications currently being given the Respondent on a continuous basis, the dosage of the medication, and a description of its impact upon the Respondent's mental and physical condition.

See attached list.

12. That any dissenting opinions or other comments are as follows:

has faithfully been caring for her husband throughout their marriage. has gotten to the point where he needs 24/7 care; his doctor suggested facility placement due to the level of his needs desires to still be the overseer of her husband's affairs and to make sure he receives everything he needs.

10-13-09
Date

Signature of Licensed Physician

Signature of Licensed/Certified Psychologist

Signature of a Social Worker with Graduate Degree in Social Work

Signature of Other

Cabinet for Health and Family Services
Name of Facility or Agency

Address

Telephone Number

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000077 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000061 of 000073



*Medications for* *as of 09-23-09*

Children's Aspirin 81mg – One tablet by mouth daily for hypercoagulable state (thin blood)

Folic Acid 1mg – One tablet by mouth daily for swollen blood vessels

Toprol XL 25mg – One tablet by mouth everyday – used for hypertension

Habitrol (nicotine) 14mg/24 hour patch topical daily – used to help nicotine withdrawals

Protonix 40mg – One by mouth daily – used for esophageal reflux

Coumadin (Warfarin Sodium) 4mg – One by mouth daily – used to thin blood

Pulmicort 0.5mg Nebulizer Inhalation – Twice a day for COPD

Duoneb Unit Dose Nebulizer Inhalation – Every 6 hours for COPD

Klonopin (Clonazepam) 1 mg – One tablet by mouth twice a day – used for paranoid schizophrenia

Seroquel (Quetiapine) 200mg – One tablet by mouth twice a day – used for paranoid schizophrenia

**Note: Was taking Prednisone 20mg – One by mouth daily for 7 days only (discontinued on 9-21-09) for pneumonia*

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000078 of 000092

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000062 of 000073

REDACTED

Mar 28 2007 01:18PM P2
Mailed 3-27-07

| AOC-788 Rev. 11-06 Doc. Code: FIIST | | Case No |
|---|---|---|
| Commonwealth of Kentucky Court of Justice | REPORT OF INTERDISCIPLINARY EVALUATION TEAM | Court District - Birth |
| KRS 387.540 | | County |

COMMONWEALTH OF KENTUCKY
PETITIONER

VS.

RESPONDENT

* * * * * * * * * * * * *

We, the undersigned, hereby report to the court as follows:

1. That the nature and extent of the Respondent's disabilities may be described as follows: has advanced Alzheimer's disease is years old. He also has behavior manifested by decreased memory and intellectual ability. He also has behavior difficulties with confusion and paranoia. He is unable to walk or care for himself due to severe arthritis of the spine & kidney failure.

2. That the evaluations ordered regarding the Respondent are current and were performed and signed by the following individuals:

| | Name | Title | Date Performed |
|---|---|---|---|
| Evaluation | | | |
| Intellectual: | | | |
| Physical: | | | |
| Educational: | | | |
| Adaptive Behavior: | | | |
| Social Skills: | | | |

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000079 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000063 of 000073

3. That guardianship:

☒ Is needed for the following reason:
Pt is not expected to leave nursing home. He is unable to perform activities of daily living such as eating, bathing, walking. He is unable to handle financial issues

☐ Is not needed for the following reason:

4. That the recommendation(s) of the type, scope, and duration of guardianship for the Respondent is/are as follows:
needs someone to look after all his needs, physical, emotional and financial. He is not capable of doing anything on his own.

5. That conservatorship:

☐ Is needed for the following reason:

☐ Is not needed for the following reason:

6. That the recommendation(s) of the type, scope, and duration of conservatorship for the Respondent is/are as follows:

7. That the social, educational, medical, and rehabilitative services currently being provided to the Respondent are as follows:
Pt is currently residing in a nursing home. It is not felt he can benefit from social, educational or rehabilitative activity due to his advanced dementia. His personal care needs are met by family & nursing home staff. His doctor is monitoring his medical care.

8. That appropriate alternatives to guardianship/conservatorship:

☐ Are available (explain):

☒ Are not available (explain):
Patient's condition (i.e. intellectual failure & physical problems) are too advanced to allow any alternative arrangements.

9. That the recommendations and reasons as to the most appropriate treatment or rehabilitation plan and living arrangement for the Respondent are as follows:
Pt who is presently recovering from surgery. Pt requires level of care that cannot be provided by his family in his home. It is not felt he can benefit from rehabilitation

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000080 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000064 of 000073

REDACTED

10. That for the Respondent to attend the hearing on the Petition filed herein:

☑ Would subject him to serious risk of physical harm.

☐ Would not subject him to serious risk of physical harm.

11. That appended hereto is a list of all medications currently being given the Respondent on a continuous basis, the dosage of the medication, and a description of its impact upon the Respondent's mental and physical condition.

12. That any dissenting opinions or other comments are as follows:

March 15, 2007
Date

Signature of Licensed Physician

Signature of Licensed/Certified Psychologist

Signature of a Social Worker with Graduate Degree in Social Work

Signature of Other

Name of Facility or Agency

Address

Telephone Number

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000081 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000065 of 000073

REDACTED

NEUROLOGY

March 27, 2007

To Whom It May Concern:

current medications include the following:

1.) Levothyroxine for hypothyroidism
2.) Olive Oil for skin integrity
3.) Ferrous Sulfate for anemia
4.) Flomax for prostate problems
5.) Furosemide 20mg one tablet daily for fluid retention
6.) Glycolax Powder to prevent constipation
7.) Multivitamins for general nutrition
8.) Namenda 5mg twice daily for cognitive decline
9.) Travatan Eye Drops for glaucoma
10.) Bactrim for recurrent urinary tract infections
11.) ~~Aricept 10mg daily for cognitive decline~~
12.) Mirtazapine 15mg daily for depression and behavioral abnormalities
13.) Seroquel 100mg at bedtime for dementia and behavioral symptoms
14.) Tramadol one tablet at bedtime for chronic pain
15.) Hydrocodone one tablet every six hours as needed for pain
16.) Promethazine 25mg as needed for nausea and vomiting
17.) Acetaminophen one tablet as needed for pain or fever

It is not felt that any of these medications would have significant negative effects upon the patient's cognition.

Yours Truly,

Neurology DMQ: kjo

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000082 of 000092
EXH : 000066 of 000073

REDACTED

| AOC-765 Doc. Code: RIET<br>Rev. 3-06 03/16/2007 01:37 pm<br>Page 1 of 3 Ver. 1.01<br>Commonwealth of Kentucky<br>Court of Justice www.kycourts.net<br>KRS 387.540 | REPORT OF INTERDISCIPLINARY EVALUATION TEAM | Case No. ______<br>Court District Division I<br>County Warren |
|---|---|---|

COMMONWEALTH OF KENTUCKY
PETITIONER

VS.

RESPONDENT

* * * * * * * * * * * * *

We, the undersigned, hereby report to the court as follows:

1. That the nature and extent of the Respondent's disabilities may be described as follows:
Senile Dementia, Hypothyroidism; Glaucoma; Anemia; Chronic Renal Failure; Degenerative Disc Disease; Disoriented to Time & Place, Incontinent Of B/B, HOH, Severe Deficits in Adaptive Behaviors.

2. That the evaluations ordered regarding the Respondent are current and were performed and signed by the following individuals:

| Evaluation | Name | Title | Date Performed |
|---|---|---|---|
| Intellectual: | Deferred | | |
| Physical: | | | |
| Educational: | Deferred | | |
| Adaptive Behavior: | | | |
| Social Skills: | | | |

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000083 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000067 of 000073

AOC-766 Doc. Code: RIST
Rev. 3-03
Page 2 of 3

3. That guardianship:

[✓] is needed for the following reason:
Adaptively, the respondent meets his needs as a 1-year, 6-month individual. He does not know the date of his birth, current day, month or year. He requires total assist with all ADL'S. The respondent is incapable of making personal choices.

[ ] is not needed for the following reason:

4. That the recommendation(s) of the type, scope, and duration of guardianship for the Respondent is/are as follows:
Totally disabled. Full and permanent guardian.

5. That conservatorship:

[✓] is needed for the following reason:
Respondent is totally unaware of his financial circumstance and his mental status precludes making financial choices.

[ ] is not needed for the following reason:

6. That the recommendation(s) of the type, scope, and duration of conservatorship for the Respondent is/are as follows:
Totally disabled. Full and permanent conservator.

7. That the social, educational, medical, and rehabilitative services currently being provided to the Respondent are as follows:
Respondent currently resides at Family visits often.

8. That appropriate alternatives to guardianship/conservatorship:

[ ] Are available (explain):

[✓] Are not available (explain):
Respondent is no longer competent to consent to a less restrictive mode.

9. That the recommendations and reasons as to the most appropriate treatment or rehabilitation plan and living arrangement for the Respondent are as follows:
Respondent continue his present living arrangement to insure he receives the supervision and skilled nursing care he requires.

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000084 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000068 of 000073

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000085 of 000092

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH-I- : 000069 of 000073

ACC-765          Dos. Cabal FIRT                                    · REDACTED
Rev. 8-03
Page 8 of 5

10. That for the Respondent to attend the hearing on the Petition filed herein:

☑ Would subject him/her to serious risk of physical harm.

☐ Would not subject him/her to serious risk of physical harm.

11. That appended hereto is a list of all medications currently being given to the Respondent on a continuous basis, the dosage of the medication, and a description of its impact upon this Respondent's mental and physical condition.

12. That any dissenting opinions or other comments are as follows:

8-16-07
_____          _____
Date                              Signature of Licensed Physician

                                    _____
                                    Signature of Licensed/Certified Psychologist

                                    _____
                                    Signature of a Social Worker with
                                    Graduate Degree in Social Work

                                    _____
                                    Signature of Other

_____
Name of Facility or Agency

_____
Address

_____
Telephone Number

REDACTED

| AOC-765 Doc. Code: RIET<br>Rev. 3-08 09/8/2007 03:48 pm<br>Page 1 of 3 Ver. 1.01<br>Commonwealth of Kentucky<br>Court of Justice www.kycourts.net<br>KRS 387.540 | REPORT OF INTERDISCIPLINARY EVALUATION TEAM | Case No.<br>Court District Division I<br>County Warren |
|---|---|---|

COMMONWEALTH OF KENTUCKY
PETITIONER

VS.

RESPONDENT

* * * * * * * * * * * * *

We, the undersigned, hereby report to the court as follows:

1. That the nature and extent of the Respondent's disabilities may be described as follows: has been diagnosed with Alzheimer's dementia (advanced), hypothyroidism, mental status changes, acute renal failure, intervascular depletion, urinary bladder stones, anemia,, chronic open angle glaucoma, and chronic renal failure.

2. That the evaluations ordered regarding the Respondent are current and were performed and signed by the following individuals:

| Evaluation | Name | Title | Date Performed |
|---|---|---|---|
| Intellectual: | | | |
| Physical: | | | |
| Educational: | | | |
| Adaptive Behavior: | | | |
| Social Skills: | | | 09/01/2007 |

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000086 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000070 of 000073

AOC-755 Doc. Code: RIET
Rev. 8-08
Page 2 of 3

REDACTED

3. That guardianship:

☑ is needed for the following reason:

s unable to make informed decisions regarding his personal affairs.

☐ is not needed for the following reason:

4. That the recommendation(s) of the type, scope, and duration of guardianship for the Respondent is/are as follows:

Full and permanent guardianship.

5. That conservatorship:

☑ is needed for the following reason:

s unable to make informed decisions regarding his financial affairs.

☐ is not needed for the following reason:

6. That the recommendation(s) of the type, scope, and duration of conservatorship for the Respondent is/are as follows:

Full and permanent conservatorship.

7. That the social, educational, medical, and rehabilitative services currently being provided to the Respondent are as follows:

is currently receiving 24 hour care and supervision at

8. That appropriate alternatives to guardianship/conservatorship:

☐ Are available (explain):

☑ Are not available (explain):

would not be able to consent to a less restrictive means.

9. That the recommendations and reasons as to the most appropriate treatment or rehabilitation plan and living arrangement for the Respondent are as follows:

requires 24 hour care and supervision.

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000087 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000071 of 000073

REDACTED

AOC-765 Doc. Code: RIET
Rev. 8-03
Page 3 of 3

10. That for the Respondent to attend the hearing on the Petition filed herein:

☐ Would subject him/her to serious risk of physical harm.

☐ Would not subject him/her to serious risk of physical harm.

11. That appended hereto is a list of all medications currently being given the Respondent on a continuous basis, the dosage of the medication, and a description of its impact upon the Respondent's mental and physical condition.

12. That any dissenting opinions or other comments are as follows:

There are no dissenting opinions as far as this worker is aware of at this time.

03/06/2007
Date

Signature of Licensed Physician

Signature of Licensed/Certified Psychologist

Signature of a Social Worker With Graduate Degree in Social Work

Signature of Other

Name of Facility or Agency

Address

Telephone Number

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000088 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000072 of 000073

STEPHEN H. WEST, M.D., Ph.D.
Licensed Consulting Psychologist
1300 West Broadway
Louisville, Kentucky 40203
(502) 643-5040

August 5, 2011

Sara Panlagua de Aponte
Quintairos, Prieto, Wood & Boyer, PA
9300 Shelbyville Road, Suite 400
Louisville, KY 40222

Re:   Kindred Nursing Centers, et al., v.  REDACTED, Guardian, et al.
      Guardianship of REDACTED    08-H-   REDACTED

Dear Ms. Panlagua:

I am in receipt of your letter of July 14, 2011 that includes an authorization from
REDACTED for the release of any records in my possession concerning her ward,
REDACTED. I regret to inform you that these materials will not be sufficient to
authorize me to do so. Any information or opinion I may have concerning
was obtained and created pursuant to an order of the District Court of
Jefferson County, Guardianship/Disability Division, and remains subject to the
orders of that court. I will require an order from that court directing the release to
you of such information as I may have if I am to do so.

Respectfully,

Stephen H. West, M.D., Ph.D.

cc:   Carla Briscoe, Jefferson District Court
      Kristin Hochner, CHFS
      Tina James, M.D.




EXHIBIT
3

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the ESTATE of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

**** **** **** **** ****

**ORDER**

This matter having come before the Court on the motion of Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View") to obtain a complete copy of the entire case file and proceedings in Helen Ray's guardianship action; the Court having reviewed the Record and being otherwise sufficiently advised:

**IT IS HEREBY ORDERED AND ADJUDGED** as follows:

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000090 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
TD : 000001 of 000003

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000091 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
TD : 000002 of 000003

1. The disclosure of the requested guardianship record is appropriate and in the best interest of justice, as the Plaintiff herein has placed Ms. Ray's mental, physical and emotional conditions in issue in a lawsuit filed in the Pike Circuit Court, Case No. 15-CI-00778;

2. Mountain View's Motion to copy the entire case file including transcripts and audio recordings is GRANTED; and

3. The Pike District Clerk is directed to copy the entire case file and proceedings of this Action and provide same to counsel for Mountain View and Plaintiff.

So ordered, this the _____ day of __________________, 2016.

______________________________________
JUDGE, PIKE CIRCUIT COURT
DIVISION II

**Drafted and tendered by:**

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

Tendered 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

**CLERK'S CERTIFICATE OF SERVICE**

I hereby certify that on the ___ of _____________, 2016, I mailed a copy of the foregoing via regular mail to the following:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507
*Counsel for Plaintiff*

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
*Counsel for Defendant*

_______________________________________
PIKE CIRCUIT CLERK

4E96A386-AC40-45E5-94B1-1D97DA07FED3 : 000092 of 000092
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
TD : 000003 of 000003

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the
ESTATE of HELEN RAY, deceased,
and on behalf of the Wrongful Death
Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

**DEFENDANT'S MOTION TO COMPEL CABINET TO ALLOW INSPECTION AND COPYING OF RECORDS**

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a
MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * * * *

Defendant, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View"), through counsel, and moves this court to allow the Defendant to inspect and copy all records of Adult Protective Services ("APS"), Office of Inspector General ("OIG"), and Cabinet for Health and Family Services ("CHFS") regarding Helen Ray.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
3AECE095-6D40-44D1-9386-E64C5DD2D380 : 000001 of 000008
COM : 000001 of 000004

This is a personal injury case alleging negligence, abuse, and neglect against Mountain View. Plaintiff is alleging Ms. Ray was abused and neglected during the entirety of her nearly six year residency at Mountain View from approximately July 16, 2008 to June 19, 2014. Defendants have requested from CHFS, via letter and executed CHFS-305 form, copies of all documentation related to investigations into the care provided to Helen Ray by Mountain View. In response, Defendant received a 40 page report with records pertaining to three APS investigations in Ms. Ray's care. There were more than 20 surveys conducted by the Cabinet for Health and Family Services at Mountain View during the time period of Ms. Ray's residency. It is very possible, that she was a sampled resident in one of these investigations. Defendant is requesting copies of the complete investigative file.

Plaintiff's assertions regarding the quality of the care Helen Ray received at Mountain View and the extent to which the investigations of state agencies corroborate or refute Plaintiff's allegations of abuse and neglect at the facility, are at the core of Plaintiff's allegations against Mountain View. These investigations would include notes from investigators related to the interviews of staff, and perhaps observation of Ms. Ray. The contents of these notes relate directly to the allegations made by the Plaintiff in this matter.

It is evident from Plaintiff's Complaint that she seeks to connect certain regulatory deficiencies found at Mountain View to her allegations of abuse and neglect. In fact, Plaintiff has sought to establish these regulations, and the surveys performed by OIG as establishing the standard of care for nursing facilities. To the extent that Plaintiff is permitted to assert that the violations of any regulation noted by surveyors at the facility is a violation of the standard of care, Defendant is entitled to access all of the information gathered by investigators to determine

3AECE095-6D40-44D1-9386-E64C5DD2D380 : 000002 of 000008
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
COM : 000002 of 000004

if Ms. Ray's care was ever deemed deficient by the Cabinet, as well as the exact nature of any deficiencies assessed.

Based on the above evidence, the Defendant moves this Court to compel the Cabinet for Health and Family Services, and the Office of Inspector General to produce **all** records of investigation into the care provided to Helen Ray, including any investigative notes, formal reports, email correspondence, written correspondence, audio and video tapes, transcripts, notes, medical records and any other documents related to the investigation into any care provided to Helen Ray, and to provide a complete copy of any APS, OIG, or CHFS report.

I hereby certify the following to be the reasons necessary for inspection of records contained in the APS, OIG, and CHFS files. Mountain View Health Care Center is a skilled nursing facility located in Pike County, Kentucky, to which Helen Ray was admitted from July 16, 2008 to June 19, 2014. Plaintiff alleges that Mountain View abused and neglected Ms. Ray while she was a resident at Mountain View. Any investigations conducted by CHFS, OIG and other governmental agencies regarding abuse or neglect against Helen Ray, especially abuse that involves the very allegations that have been made by Plaintiff in this matter, is an issue which is relevant and material to this litigation and its discovery is reasonably calculated to lead to the discovery of admissible evidence in defense of this claim.

**NOTICE**

This matter will come before the Court for a hearing on the 19th day of August, 2016, at the hour of 9:00 a.m. (EST), or as soon thereafter as can be heard.

3AECE095-6D40-44D1-9386-E64C5DD2D380 : 000003 of 000008
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
COM : 000003 of 000004

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 12th day of August, 2016, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507

Carrie Hall
Open Records Administrator
Cabinet for Health and Family Services
275 East Main Street
Frankfort, KY 40621

David T. Lovely, Esq.
Assistant Counsel
Office of Inspector General
275 E. Main St., 5W-B
Frankfort, KY 40621

*/s/ Matthew C. Cocanougher*
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

3AECE095-6D40-44D1-9386-E64C5DD2D380 : 000004 of 000008
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
COM : 000004 of 000004

3AECE095-6D40-44D1-9386-E64C5DD2D380 : 000005 of 000008

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

TD : 000001 of 000004

***ELECTRONICALLY FILED***

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the
ESTATE of HELEN RAY, deceased,
and on behalf of the Wrongful Death
Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v. **ORDER**

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a
MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * *

This matter having come before the Court for a hearing on Motion of Defendant to inspect any and all documents, transcripts, and other records of Adult Protective Services ("APS"), Cabinet for Health and Family Services ("CHFS"), and Office of Inspector General ("OIG") relating to any investigations of alleged abuse, neglect, exploitation, or any other regulatory investigation involving Helen Ray; the Court having reviewed the record, heard arguments of counsel, and being otherwise fully and sufficiently advised:

**IT IS HEREBY ORDERED AND ADJUDGED** as follows:

1. Defendant has presented sufficient reasoning and evidence to warrant the disclosure of all records of any investigations related to Helen Ray;

2. Defendant's Motion to copy and inspect the CHFS, OIG, and APS files, including all and any investigative notes, formal reports, resident rosters, email correspondence, written correspondence, audio and video tapes, transcripts, notes, medical records and any other documents regarding Helen Ray, is SUSTAINED; and

3. CHFS, OIG, and APS are directed to make available for inspection and copying all and any investigative notes, formal reports, resident rosters, email correspondence, written correspondence, audio and video tapes, transcripts, notes, medical records and any other documents regarding Helen Ray including but not limited to their entire non-redacted agency file maintained as to Helen Ray to Defendant's counsel within five (5) days of entry of this Order.

4. Failure to comply with this Order will result in sanctions, including CHFS, OIG and APS being held in contempt of Court.

This is a final and appealable Order, there being no just reason or cause for delay.

________________________________________
JUDGE, PIKE CIRCUIT COURT
DIVISION II

3AECE095-6D40-44D1-9386-E64C5DD2D380 : 000006 of 000008
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
TD : 000002 of 000004

Tendered 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

**Drafted and tendered by:**

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

3AECE095-6D40-44D1-9386-E64C5DD2D380 : 000007 of 000008
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
TD : 000003 of 000004

3AECE095-6D40-44D1-9386-E64C5DD2D380 : 000008 of 000008

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

TD : 000004 of 000004

**CLERK'S CERTIFICATE OF SERVICE**

I hereby certify that on the ___ of ______________, 2016, I mailed a copy of the foregoing via regular mail to the following:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile

Carrie Hall
Open Records Administrator
Cabinet for Health and Family Services
275 East Main Street
Frankfort, KY 40621

David T. Lovely, Esq.
Cabinet for Health and Family Services
Office of Legal Services
275 E. Main St., 5W-B
Frankfort, KY 40621

_______________________________
PIKE CIRCUIT CLERK

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the
ESTATE of HELEN RAY, deceased,
and on behalf of the Wrongful Death
Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a
MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

---

**DEFENDANTS' MOTION TO QUASH, OR IN THE ALTERNATIVE, FOR PROTECTIVE ORDER**

---

Defendant, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View"), hereby moves the Court, pursuant to CR 26.03(1), to quash, or in the alternative, to issue a protective order in light of the discovery disputes outlined below. In support of this motion Defendants state as follows:

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000001 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000001 of 000013

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000002 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000002 of 000013

**BACKGROUND**

This is a medical malpractice action in which the Plaintiffs allege that Defendant breached nursing standards of care that caused certain alleged injuries and death to Helen Ray. Ms. Ray was a resident at the Elkhorn City facility from July 16, 2008 to June 19, 2014. After her nearly six year residency at Mountain View, Ms. Ray passed away on June 19, 2014. Her death certificate lists Cardiac Arrythmia and ASVD as the causes of death. Medical standards of care and medical causation are the central issues in this lawsuit. Ultimately, a jury will have to determine whether Defendant breached the standard of care in its treatment of Ms. Ray and whether any breach was caused by compensable injury.

Discovery has progressed and both parties have now served and answered a set of written discovery. Recently, Plaintiffs served a thirty-four (34) paragraph CR 30.02(6) Deposition of Mountain View's Corporate Representative, including an additional twenty-one (21) Requests for Production of Documents from the corporate representative. *See* Notice attached hereto as Exhibit A. This notice covers many discovery requests that were already propounded by Plaintiff and answered by Defendant. For those requests, Plaintiff is requesting that Defendant go through Ms. Ray's chart, which she have already been provided and have equal access to, and discover information that is just as easily discovered by Plaintiff's counsel. These requests should be denied as Plaintiff is just as capable as Defendants to review the records and determine these answers.

This notice also contains some overly broad requests wholly unrelated to the care and treatment Ms. Ray received at Mountain View (See topics 2-3, 12-30, and 34, discussed in more detail below). As such, Defendant respectfully requests that this Court quash Plaintiff's Notice

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000003 of 000067

and related Requests for Production of Documents to prevent them from the undue burden and expense of preparing a corporate representative to testify as to broad topics regarding Ms. Ray's nearly six year residency for topics that Defendant has already responded to in written discovery. In the alternative, this Court should enter a protective order narrowing Plaintiff's overly broad topics 2-3, 12-30, and 34. Defendants seek to quash, or in the alternative, for this Court to issue a protective order as to Plaintiff's requests, and incorporate herein by reference Defendant's Objections to Plaintiff's Notice to Take Deposition of Corporate Representative Pursuant to CR 30.02(6).

**APPLICABLE LAW**

Pursuant to CR 26.02(1), parties are allowed to discover "any matter, not privileged, which is *relevant* to the subject matter involved in the pending action." (emphasis added). If the information sought is not privileged, the only question is whether it is relevant or likely to lead to relevant and admissible evidence. *See* CR 26.02(1); *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 811 (Ky. 2004). If the information sought is irrelevant to a party's claim or defense and not reasonably calculated to lead to the discovery of admissible evidence, discovery into such matters would be inappropriate. *Id.*; *Morrow v. Brown, Todd & Heyburn*, 957 S.W.2d 722, 727 (Ky. 1997). Additionally, under KRE 402, evidence which is not relevant is not admissible.

The Sixth Circuit has held that "[a]lthough a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to go fishing,' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978)). The purpose of pretrial discovery is to simplify and clarify the issues in a case, to eliminate or significantly

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

QSH : 000003 of 000013

reduce the element of surprise, and to achieve a balanced search for truth. *LeFleur V. Shoney's, Inc.*, 83 S.W.3d 474, 478 (Ky. 2002). In that context, it has been a long-recognized principle in this Commonwealth that discovery proceedings must be kept within reasonable bounds and restricted to questions having substantial and material relevancy. *Humana Inc. v. Fairchild*, 603 S.W.2d 918, 922 (Ky. App. 1980). In overseeing discovery, the trial court shall keep the inquiry within reasonable bounds and restrict questions to those having substantial relevancy to a sensible investigation. *Carpenter v. Wells*, 358 S.W.2d 524, 526 (Ky. 1962). Discovery should not be permitted into collateral issues that are irrelevant to the claims before the court. *Brooks v. Brooks Furniture Mfrs., Inc.*, 325 S.W.3d 904, 916 (Ky. App. 2010). Here, Plaintiff's discovery requests have overstepped all reasonable bounds and therefore Defendants are seeking protection from this Court.

CR 30.02(6) is nearly identical to Federal Rule of Civil Procedure 30(b)(6). "For a Rule 30(b)(6) deposition to operate effectively, the deposing party must designate the areas of inquiry with **reasonable particularity**…" *U.S. v. Taylor*, 166 F.R.D. 356, 360 (M.D.N.C. 1996)(emphasis added). This is because testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the corporation, not of the individual deponents. *Id.* The designated witness is "speaking for the corporation," and this testimony must be distinguished from that of a "mere corporate employee" whose deposition is not considered that of the corporation and whose presence must be obtained by subpoena. 8A Wright, Miller & Marcus § 2103, at 36–37.

Since FRCP 30(b)(6) does not set its own discovery standard, the standard provided in FRCP 26(b)(1) should be used to determine whether information sought is relevant and is capable of leading to discovery of relevant information. *Hooker v. Norfolk S. Ry.*, 204 F.R.D 124 (S.D. Ind. 2001). Discovery under FRCP 26(b)(1) is "subject to the limitations imposed by

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000004 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000004 of 000013

Rule 26(b)(2)(C)." Under Rule 26(b)(2)(C), a court "must limit the frequency or extent of discovery otherwise allowed by these rules" if:

> i. the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> ii. the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> iii. the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Because CR 30.02(6) and FRCP 30(b)(6) are nearly identical, the limitations on discovery also should be read similarly. "If proof of relevancy or need is not established or if discovery would nevertheless be unreasonable, oppressive, annoying, or embarrassing, or otherwise unduly injurious, discovery should be denied." *Evercom Sys., Inc. v. Combined Pub. Commc'ns, Inc.*, 2012 WL 3555314, at *4 (W.D. Ky. Aug 16, 2012). Further, CR 26.03(1) allows for courts to issue protective orders limiting discovery in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

To prevent the abuse of discovery, the trial court has full authority to issue a protective order under CR 26.03(1). This Rule states that:

> Upon motion by the person from with whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the judicial district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

*Id.*; *see also Ewing v. May*, 705 S.W.2d 910, 913 (Ky. 1986). Indeed, a protective order is proper where a party requires protection from annoyance, embarrassment, oppression, or undue

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000005 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000005 of 000013

expense or burden, and the trial court may forbid inquiry into certain topics and/or limit the scope of discovery to relevant matters. *Id.*; *Sexton v. Bates*, 41 S.W.3d 452, 455 (Ky. App. 2001) (court acted well within its broad discretion to determine what discovery is appropriate and to tailor discovery to materially relevant information).

**PLAINTIFF'S CR 30.02(6) DEPOSITION NOTICE SHOULD BE QUASHED, OR IN THE ALTERNATIVE, A PROTECTIVE ORDER SHOULD BE ISSUED.**

Defendants should not have to produce a corporate representative to testify regarding the irrelevant and overly broad topics enumerated in Plaintiff's deposition notice. *See* Exhibit A. The trier of fact will determine whether Defendants breached the requisite standard of care concerning the care and treatment of Ms. Ray. To make that determination under Kentucky law, the trier of fact must consider whether Mountain View used that degree of care and skill which is expected of a reasonably competent provider in the same class to which it belongs, acting in the same or similar circumstances. *See Blair v. Eblen*, 461 S.W.2d 373 (Ky. 1970). In Kentucky, the degree and skill to be expected of Mountain View is based upon the standard set by the medical profession only. To prevail, Plaintiff must provide expert testimony that the care Ms. Ray received breached the applicable professional standard of care.

Here, Plaintiff seeks by CR 30.02(6) notice to obtain information regarding Defendants' policies and procedures as well as administrative information and identification of individual persons employed by Mountain View. *See* Exhibit A. Due to the nature of information sought by Plaintiff, it would be an undue burden and expense to have a corporate level representative appear for a deposition given the less expensive alternatives available to seek this information (e.g., interrogatories or other forms of written discovery). As such, Plaintiff should be precluded from using CR 30.02(6) for this purpose.

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000006 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000006 of 000013

Plaintiff's CR 30.02(6) notice prematurely attempts to bind Defendant to testimony on an incredibly broad set of topics all the while Plaintiff has not disclosed her experts and there are no deadlines in place for her to disclose her experts. Thus, Plaintiff is attempting to box Defendant in on the elements of her claim before providing her required expert testimony as to what specific breaches of the standard of care and damages she is claiming. Much like contention interrogatories or discovery seeking work product, the Court should not allow Plaintiff's strategy at this stage of the litigation.

*U.S., ex rel. Nat. Res. Def. Council v. Lockheed Martin Corp.*, 2014 WL 6909652, at *3–4 (W.D. Ky. Dec. 8, 2014) discussed contention interrogatories including mixed questions of law and fact in depth, citing their pros and cons:

> Contention interrogatories, in particular, receive the advisory committee's special attention. While the advisory committee sought to allow the use of contention interrogatories, it sought to avoid a rule "where[ ] parties were chained to misconceived contentions or theories, and ultimate determination on the merits was frustrated." Fed.R.Civ.P. 33(b) 1970 advisory committee's notes. Accordingly, courts have typically given answers to interrogatories requesting contentions greater leeway in satisfying Rule 26(e)'s "timely" supplementation requirement. *See, e.g., HTC Corp. v. Tech. Properties Ltd.*, C08–00882 JF HRL, 2011 WL 97787 (N.D.Cal. Jan. 12, 2011) ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before discovery is undertaken."); *In re eBay Seller Antitrust Litigation*, No. C07–1882 JF (RS), 2008 WL 5212170, at *1 (N.D.Cal. Dec. 11, 2008); *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 95 (E.D.Pa.1992) ("In fact, courts tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery almost is complete."); *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 332–38 (N.D.Cal.1985).
>
> Despite this leniency in timing, contention interrogatories can serve valuable purposes even at early stages of the litigation. These purposes include dispensing with frivolous claims, serving as predicates for other motions, narrowing the scope of discovery, and facilitating settlement discussions. *Cleveland Const., Inc. v. Gilbane Bldg. Co.*, 2006 WL 2167238 at *7 (E.D.Ky. July 31, 2006) (*citing Convergent* ). Contention interrogatories' usefulness in early stages of litigation cautions courts to balance fairness and efficiency. While recognizing the impossibility of fully answering contention interrogatories at the outset of discovery, courts rely on compliance with the 26(e) duty to supplement to inform

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000007 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000007 of 000013

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

> opposing counsel of the allegations they face. Opposing parties should be informed of allegations against them as those allegations arise. This case, in part, asks this court to evaluate when the duty to supplement should displace the generally lenient attitude towards contention interrogatories.

The Court went on to discuss cases with voluminous discovery and multiple allegations, like the case before this Court, finding:

> Second, in cases with voluminous discovery and multiple allegations, all parties should expect changes to contention interrogatory responses. Both the advisory committee notes and case law warn of such changes. "Since [contention] interrogatories involving mixed questions of law and fact may create disputes between the parties which are best resolved after much or all of the other discovery has been completed, the court is expressly authorized to defer an answer." Fed.R.Civ.P. 33 advisory committee notes (1970). "Answers to interrogatories must often be supplied before investigation is completed and can rest only upon knowledge which is available at the time." *Freed v. Erie Lackawanna Ry. Co.*, 445 F.2d 619, 621 (6th Cir.1971). "The district court has considerable discretion in overseeing compliance with the Federal Rules of Civil Procedure, including discretion to permit parties to defer supplementing responses to contention interrogatories until theories of the case have ripened for trial." *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed.Cir.2012). Given the well-recognized problems parties face giving complete answers to contention interrogatories early in the litigation process, litigants are well-advised to anticipate changes.

*Id.* at *5.

Like contention interrogatories, Plaintiff is attempting to bind Defendant, through its corporate representative, to certain contentions and theories at this early stage in the litigation. While overly broad, Plaintiff's CR 30.02(6) Notice would be more appropriate after much more discovery has taken place. At a minimum, Plaintiff should be forced to disclose her expert witnesses to provide Defendant with information regarding the specific breaches of the standard of care and damages claimed. As *Lockheed Martin Corp.* points out, the questions sought in Plaintiff's Notice are best resolved after much more discovery has been completed. At this point, the parties have exchanged initial discovery responses, but there are no deadlines for expert disclosures and neither party has disclosed an expert.

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000008 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000008 of 000013

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000009 of 000067

Plaintiff's CR 30.02(6) Notice is also similar to a discovery request for work product. Without disclosing her experts and providing specific breaches of the standard of care and damages, Plaintiff seeks to bind Defendant to testimony on an incredibly broad set of topics at this early stage, to prematurely bind Defendant's expert to that testimony. In so doing, she attempts to discover Defendant's work-product by seeking to gather Defendant's counsel's mental impressions in preparing the corporate representative to respond to the areas of inquiry.

The work product privilege provided in CR 26.02(3)(a) is nearly identical to its federal counterpart, Fed. R. Civ. P. 26(b)(3), and provides that the court "shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." CR 26.02(3)(a). "The work-product doctrine is designed to protect an adversary system of justice," *Morrow v. Brown, Todd & Heyburn*, 957 S.W.2d 722, 724 (Ky. 1997), and is rooted in the United States Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

Kentucky's civil rule on work product, CR 26.02(3)(a), provides, in pertinent part:

> Subject to the provisions of paragraph (4) of this rule, a party may obtain discovery of <u>documents and tangible things</u> otherwise discoverable under paragraph (1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

Accordingly, a two-step analysis is necessary under this rule to determine if particular documents are discoverable under CR 26.02(3)(a). First, the court must determine whether the material is work product because it was prepared in anticipation of litigation. *Duffy v. Wilson*,

QSH : 000009 of 000013

289 S.W.3d 555, 559 (Ky. 2009). Second, if the material is work product, the court must determine whether the requesting party has a "substantial need" for the material and is unable to obtain the "substantial equivalent" without "undue hardship." *Id.*

*Newsome v. Lowe*, 699 S.W.2d 748 (Ky. Ct. App. 1985) is instructive on this point. The relevant issue in *Newsome* was whether a pre-litigation consultant report from a physician to Plaintiff's counsel was properly discoverable. The Court found it was privileged work product, explaining:

> The respondent now wants to discover information concerning Dr. Nathanson as the prelitigation consultant. We say that that aspect of Dr. Nathanson is not discoverable. We come to this conclusion for two reasons: First, we believe that when a consultant is hired for the purpose, as was Dr. Nathanson, of evaluating claims and rendering consultative evaluation reports, his consultation reports are certainly within the orbit of privileged matters. Prelitigation consultative evaluations are encouraged; if there is no confidentiality with them, the procedure will not be utilized. One need only read the cases of *Raine v. Drasin*, Ky., 621 S.W.2d 895 (1981), and *Daugherty v. Runner*, Ky.App., 581 S.W.2d 12 (1978), to sense the advisability of obtaining prelitigation evaluations, particularly in professional negligence cases...
>
> The purpose for restricting the discovery of the prelitigation consultative letter is to protect the confidentiality of such matters and to encourage the use of such consultations. Baseless and frivolous claims should not be pursued, and whether they are such in complex and technical cases, principally in professional negligence cases, requires free and open exchange of information with the consultant.

*Id.* at 751–52.

Plaintiff's 30.02(6) Notice should be quashed at this stage of the litigation as it is similar to an attempt to determine Defendant's counsel's theories of the case **before** having to disclose her expert witnesses. Like a contention interrogatory or request for work product, she is improperly attempting to box Defendant in to what will be its expert testimony before expert deadlines and before she has disclosed her own expert.

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000010 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000010 of 000013

The Notice should also be quashed as the information sought is intrusive, harassing, and makes no sense from a discovery perspective. Plaintiff cannot believe that the proposed discovery is relevant to the care given to Ms. Ray at Mountain View. The proposed discovery does not have any tendency whatsoever to make the existence of any fact that is of consequence to the determination more or less probable than it would be without the evidence. The proposed discovery is confidential and proprietary, and neither relevant nor material to the subject matter of any claim or defense. Nor is it reasonably calculated to lead to the discovery of admissible evidence. Allowing Plaintiff to delve into these overly-broad and irrelevant topics would unduly prejudice Defendants. This overreaching and harassing conduct on the part of Plaintiff is exactly the type of situation where this Court should exercise the authority provided to it by CR 26.03 to protect Defendants from Plaintiff's abusive use of the discovery process. Based on the forgoing, Plaintiff should be prevented from noticing and/or Plaintiff's CR 30.02(6) notice to take the deposition of a corporate representative should be quashed. Accordingly, Defendants seek that Plaintiff initially address these issues in written discovery rather than to incur the cost of a CR 30.02(6) deposition at this early stage of the litigation.

Several categories and subcategories in Plaintiff's notice deal with specific policies and procedures in place during the residency of Ms. Ray. Moreover, an additional twelve categories and/or subcategories deal with staff, staffing or staff training. These topics should be covered in the deposition of the Director of Nursing and/or the Administrator of Mountain View at the time of Ms. Ray's residency. While Plaintiff has yet to request these depositions, Defendants anticipate they are forthcoming.

In the alternative, to the extent Plaintiff's deposition notice is not quashed, this Court should issue a protective order limiting the scope of Plaintiff's 30.02(6) deposition to matters

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000011 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000011 of 000013

having substantial and material relevancy to the claims alleged in the Complaint. Plaintiff's request for deposition testimony about nursing home operations, policies and procedures for compliance with nursing home certification requirements, and other proprietary business information is neither relevant nor necessary to this action. As such, Plaintiff should be barred from making inquiry into such matters. Accordingly, to the extent Plaintiff's 30.02(6) deposition notice is not quashed, Defendants request a protective order limiting the scope of Plaintiff's deposition to relevant matters (i.e., the actual care given to Ms. Ray at Mountain View) and forbidding Plaintiff from inquiring into any other matters included in her Notice of CR 30.02(6) Deposition.

## CONCLUSION

In summary, Defendants seek this Court's intervention to quash Plaintiff's CR 30.02(6) notice, or in the alternative to limit the requests made by Plaintiff and to use interrogatories instead of requiring production of a corporate representative to testify.

## NOTICE

This matter will come before the Court for a hearing on the 19th day of August, 2016, at the hour of 9:00 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ Matthew C. Cocanougher
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000012 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000012 of 000013

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 12th day of August, 2016, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507

*/s/ Matthew C. Cocanougher*
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000013 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000013 of 000013

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000014 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000001 of 000054

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the ESTATE of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

---

**OBJECTIONS TO PLAINTIFF'S NOTICE OF CR 30.02(6) DEPOSITION OF MOUNTAIN VIEW HEALTH CARE CENTER, AN ASSUMED NAME OF KENTUCKY MEDICAL INVESTORS, LLC (GA)**

---

Defendant, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View"), hereby submits the following Objections to Plaintiff's Notice of CR 30.02(6) Deposition of Mountain View.

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000015 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000002 of 000054

## DEFINITIONS

A. "Notice" – means the Plaintiff's Notice of CR 30.02(6) Deposition of Mountain View served in this case including, but not limited to, all matters and requests contained therein.

B. "Irrelevant" – The information sought pursuant to the Notice concerns a matter that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. The information sought pursuant to the Notice must be reasonably calculated to lead to the discovery of admissible evidence based upon the allegations contained in the Complaint in this case and/or exceeds the scope of discovery permitted by the Rules of Civil Procedure.

C. "Unduly burdensome" – The information sought pursuant to the Notice seeks discovery which is unduly burdensome or expensive, taking into account the needs of the case, limitations on the parties' resources, and the importance of the issues at stake in the litigation.

D. "Vague" – The information sought pursuant to the Notice contains a word or phrase that is not adequately defined, or the overall matter/item is confusing, and Defendant is unable to reasonably ascertain what information is being sought.

E. "Ambiguous" - The information sought pursuant to the Notice contains a word or phrase that has more than one possible meaning or interpretation, causing uncertainty or confusion, and Defendant is unable to reasonably ascertain what information is being sought.

F. "Overly broad" – The information sought pursuant to the Notice is beyond the scope of, or beyond the time period relevant to, the subject matter of this litigation as set forth in the Complaint. Accordingly, Plaintiff seeks information that is irrelevant and unduly burdensome to produce.

## GENERAL OBJECTIONS

These General Objections are incorporated into Defendant's specific Objections to Plaintiff's enumerated matters/items contained in Plaintiff's Notice of CR 30.02(6) Deposition of Deposition of Mountain View as set forth below:

A. The objections and statements set forth in this section apply to each of the matters/items contained in Plaintiff's Notice of CR 30.02(6) Deposition of Mountain View and are not necessarily repeated in each individual Objection set forth below. The assertion of same,

similar or additional objections and specific objections, or the failure to assert any objection, to an individual subject matter does not waive any objections of Defendant set forth in this section or the following sections.

B. Defendant objects to the matters/items on the grounds and to the extent that they call for disclosure of information constituting, containing or revealing privileged attorney/client communications and/or information protected by the attorney work product doctrine or other applicable privileges. Defendant objects to disclosing, and will not intentionally disclose, any information otherwise responsive to the Notice that is protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

C. Defendant objects to the Notice to the extent that it calls for the disclosure of confidential or proprietary business information of Defendant prior to the entry by the Court of an appropriate confidentiality order.

D. Defendant objects to the Notice to the extent that it purports to call for the disclosure of information without temporal and/or subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

E. Defendant objects to the Notice to the extent that it requires Defendant to identify documents or information in documents when the information sought can be obtained as easily by Plaintiff through a review of applicable documents produced in discovery or publicly available documents or information.

F. Defendant objects to the Notice on the grounds and to the extent that it requires the disclosure of information contained in confidential medical records in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") or other federal regulations including but not limited to Standards for Privacy of Individually Identifiable Health Information, 45 CFR Parts 160 and 164 or the rights provided to residents of long-term care facilities provided by KRS 216.510(7).

G. Defendant objects to the Requests to the extent that they seek information relating to time periods before or after Helen Ray was a resident at Mountain View.

H. Defendant objects to the Notice on the grounds and to the extent that it seeks information that is irrelevant to the present action and any allegation in the Complaint or any alleged injury to Plaintiff. Defendant additionally objects to the Notice on the grounds and to the extent that investigation and/or compilation of the information requested would be overly burdensome, oppressive and expensive. Moreover, pursuant to the United States Supreme Court decision in *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003), the discovery sought is constitutionally impermissible in at least the following respects:

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000016 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000003 of 000054

1. Plaintiff has failed to identify any specific legitimate state interest supporting an award of punitive damages in this case.

2. Plaintiff's inquiries seek information concerning events or occurrences bearing no relation to Plaintiff's actual harm.

3. Plaintiff's inquiries seek information concerning events or occurrences dissimilar from the events described by Plaintiff in the Complaint.

4. Plaintiff suffered little or no harm and the harm alleged is of a constitutionally minor nature thereby precluding any punitive award in excess of compensatory damages.

5. Plaintiff has failed to identify any penal fine associated with her allegations against Defendant and, therefore, the inquiries are constitutionally irrelevant.

I. Defendant objects to any matter/issue that seeks information or documents relating to its quality assurance committee or any information or documents generated by or for its quality assurance committee as that information and those documents are protected from disclosure by 42 U.S.C. §1396r(b)(1)(B) and 42 CFR §483.75(o)(3).

J. Defendant objects to any matter/issue on the grounds and to the extent that it seeks information about any non-party employee or former employee of Mountain View as a violation of those employees' rights to privacy and confidentiality and as having no relevance to the claims or defenses asserted in this action.

K. Defendant objects to the Notice to the extent that it seeks to expand or modify the breadth or scope of, or increase Defendant's duties under the Rules of Civil Procedure or Orders of Court.

L. Defendant objects to the Notice insofar as it seeks disclosure of information that will become known to Defendant only after the completion or discovery or is otherwise premature.

M. Defendant objects to the Notice insofar as it causes annoyance, oppression, undue burden, or expense. The vast majority of information sought in the Notice is administrative in nature and therefore should be addressed contemporaneously with the fact depositions of the Director of Nursing or Administrator.

N. Defendant reserves the right to supplement its Objections to Plaintiff's Notice of CR 30.02(6) Deposition of Mountain View according to the applicable Rules of Civil Procedure or Orders of Court.

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000017 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000004 of 000054

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000018 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000005 of 000054

**SPECIFIC OBJECTIONS TO PLAINTIFF'S NOTICE OF CR 30.02(6) DEPOSITION OF DEPOSITION OF MOUNTAIN VIEW**

**Matter/Topic No. 1**: The existence of, name of, the intent of and the custodian of any DOCUMENTS within the care, custody and/or control of the deponent which pertain, refer to and/or reference, in whatsoever manner, the PLAINTIFF (For this inquiry and all subsequent inquiries PLAINTIFF shall refer to Helen Ray. The terms "DOCUMENT(S)" and/or "DOCUMENTATION", as used in this and all subsequent inquiries shall mean, includes all written, graphic or otherwise recorded matter however produced or reproduced, including the originals (or any copies when originals are not available) and non-identical copies (where different from the original because notes were made on such copies or because said copies may have been sent to different individuals than originals, or for any other reason) and preliminary or final drafts of writings, records, and recordings of every kind and description, whether inscribed by hand or by mechanical, electronic, microfilm, photographic or other means, as well as phonic (such as tape recordings) or visual reproductions of all statements, conversations or events and including, without limitation, correspondence, teletype messages, notes, reports, compilations, schedules, studies, tabulations, tallies, maps, charts, diagrams, drawings, plans, pictures, computer runs, advertising and promotional material, press releases, minutes and records of any memoranda of all press releases, minutes and records of any memoranda of all types, inter-office and intra-office communications, notes of conversations, vouchers, financial calculations and statement, working papers, statistical analyses, invoices, purchase orders, expense account records, stenographers, notebooks, desk calendars, appointment books, diaries, manuals, pamphlets, brochrues, escrow instructions, contracts, deeds, agreements, title reports, listings, authorizations, and any abstracts, summaries and analyses of the above, and all other recorded

matter of every nature and kind.) (902 KAR 20:300 § 3(2)(b) provides that the resident shall have the right to inspect and purchase photocopies of all records pertaining to the resident, upon written request and forty-eight (48) hours notice to the facility.

**Objection**:

Defendant objects to matter/topic No. 1 on the grounds that the language used is vague and ambiguous. Moreover, this matter/topic is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Additionally, Defendant objects to matter/topic No. 1 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of “identification” information. This is especially true as Ms. Ray’s residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 2**: The existence of, name of, the intent of and the custodian of any DOCUMENTS which were provided to YOU by any named Defendant in this action pertaining to or referencing the PLAINTIFF and/or by YOU to any named Defendant in this action referencing the PLAINTIFF. (For purposes of these inquiries, YOU and YOUR refers individually and collectively to the defendant to whom this request is addressed and all persons acting or purporting to act on the behalf of said defendant.) (902 KAR 20:300 § 3(2)(b) provides that the resident shall have the right to inspect and purchase photocopies of all records pertaining to the resident, upon written request and forty-eight (48) hours notice to the facility.

**Objection**:

Defendant objects to matter/topic No. 2 on the grounds that the language used is vague and ambiguous. Moreover, this matter/topic is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000019 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000006 of 000054

Additionally, Defendant objects to matter/topic No. 2 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

Defendant, for the purpose of this deposition, is solely Mountain View. As it is a separate and independent entity, Defendant, Mountain View, objects to any line of questioning seeking information about other entities, including but not limited to, SAK JR., LLC; SBK, LLC; and Life Care Centers of America, Inc.

**Matter/Topic No. 3**: The scope, nature and purpose in the FACILITY of any and all Policy and Procedures in place during the residency of PLAINTIFF in the FACILITY. (902 KAR 20:048 § 3(4) provides that the facility shall establish written policies and procedures that govern all services provided by the facility. The written policies shall include: (a) Patient care and services to include physician, nursing, pharmaceutical (including medication stop orders policy), and residential services. (b) Adult and child protection. The facility shall have written policies which assure the reporting of cases of abuse, neglect or exploitation of adults and children pursuant to KRS Chapters 209 and 620. (c) Use of restraints. The facility shall have da written policy that addresses the use of restraints and a mechanism for monitoring and controlling their use. (d) Missing patient procedures. The facility shall [have] a written procedure to specify a step by step manner the actions which shall be taken by staff when a patient is determined to be lost, unaccounted for or on other unauthorized absence.);

**Objection**:

Defendant objects to matter/topic No. 3 on the grounds that the language used is vague and ambiguous. Moreover, this matter/topic is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000020 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000007 of 000054

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000021 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000008 of 000054

Additionally, Defendant objects to matter/topic No. 3 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

Defendant objects to this Request on the grounds that it seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in that the Request is not limited to information relevant to Helen Ray or the allegations contained in Plaintiff's Complaint in this action. For example, the request, as written, could be interpreted to include "policies and procedures" relating to issues totally unrelated to Helen Ray and the level of care she received, which could include hundreds if not thousands of pages of totally irrelevant and inadmissible information.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

**Matter/Topic No. 4**: The intake process utilized by the FACILITY to determine the needs of an incoming resident and the purpose for same in effect upon the date of Admission of the PLAINTIFF as a resident of the FACILITY. (902 KAR § 7 provides that [t]he facility shall conduct initially and periodically a comprehensive, accurate, standardized, reproducible assessment of each resident's functional capacity...(e) [t]he results of [which] are used to develop, review, and revise the resident's comprehensive plan of care, under subsection (4) of this section.

**Objection**:

Defendant objects to matter/topic No. 4 on the grounds that the language used is vague and ambiguous. Moreover, this matter/topic is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant objects to matter/topic No. 4 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of

information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information.

**Matter/Topic No. 5**: The process, intent and reason for the creation of FACILITY Care Plans and modifications thereto as to the PLAINTIFF and FACILITY residents in general during the time frame during which the PLAINTIFF was a resident of the FACILITY. (902 KAR § 7(4) provides that (a) the facility shall develop a comprehensive care plan for each resident that includes measurable objectives and timetables to meet a resident's medical, nursing and psychosocial needs that are identified in the comprehensive assessment [that is]...3. periodically reviewed and revised by a team of qualified persons after each assessment.);

**Objection**:

Defendant objects to matter/topic No. 5 on the grounds that the language used is vague and ambiguous. Moreover, this matter/topic is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Additionally, Defendant objects to matter/topic No. 5 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 6**: The IDENTITY of all persons who the assessed the fall risk potential of the PLAINTIFF during the time period of PLAINTIFF'S RESIDENCY in the FACILITY, as well as the name of and custodian of all DOCUMENTS which memorialize the effort.

**Objection**:

Defendant objects to matter/topic No. 6 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000022 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000009 of 000054

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Additionally, Defendant objects to matter/topic No. 6 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 7**: The FACILITY definition of the term "fall" during the time frame during which PLAINTIFF was a resident of the FACILITY as well as the existence of, name of, content of, intent of and custodian of all DOCUMENTS which reflect said definition.

**Objection**:

Defendant objects to matter/topic No. 7 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information.

**Matter/Topic No. 8**: When and how the deponent contends that the PLAINTIFF suffered each fall in the FACILITY, as well as the IDENTITY of all persons who the FACILITY CONTENDS witnessed any such fall, or any witness who the FACILITY contends possesses any information as to any such fall; as well as the IDENTITY of all persons who the FACILITY contends assessed the physical and mental condition of the PLAINTIFF after any such fall as well as the findings of the assessment(s) and the existence of, name of, the intent of and the custodian of any DOCUMENTS which memorialize said fall(s) and/or assessments(s).

**Objection**:

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000023 of 000067

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000010 of 000054

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000024 of 000067

Defendant objects to matter/topic No. 8 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Additionally, Defendant objects to matter/topic No. 8 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 9**: The IDENTITY of all persons who prepared, modified, updated, changed and/or altered any FACILITY Care Plan or Plan of Care of the PLAINTIFF as well as the reasons for each modification, update, change or alteration.

**Objection**:

Defendant objects to matter/topic No. 9 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Additionally, Defendant objects to matter/topic No. 9 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000011 of 000054

privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

**Matter/Topic No. 10**: The IDENTITY of all persons who on behalf of the FACILITY contacted the physician of the PLAINTIFF after any fall in the FACILITY, as well as the date and time of, and modality by which the communication was made and the IDENTITY of the person who contacted the physician contact of any such communication. (902 KAR 20:300 § 2(i)(l) provides that [e]xcept in a medical emergency or when a resident is incompetent, a facility shall consult with the resident immediately and notify the resident's physician, mental, or psychosocial status; c. A need to alter treatment significantly; or d. A decision to transfer or discharge the resident from the facility as specified in Section 4(l) of this administrative regulation.)

**Objection**:

Defendant objects to matter/topic No. 10 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege.

Additionally, Defendant objects to matter/topic No. 10 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 11**: The IDENTITY of all persons who on behalf of the FACILITY contacted any LEGAL REPRESENTATIVE or INTERESTED FAMILY MEMBER of the PLAINTIFF after any fall suffered by PLAINTIFF in the FACILITY, as well as the date and time of, and modality by which the communication was made and the name of the person who contacted the

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000025 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000012 of 000054

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000026 of 000067

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000013 of 000054

physician contact of any such communication. ("LEGAL REPRESENTATIVE OR INTERESTED FAMILY MEMBER" shall mean "legal representative or interested family member" as that term is defined/referenced in 902 KAR 20:300 § 2(i)(l). (902 KAR 20:300 § 2(i)(l) provides that [e]xcept in a medical emergency or when a resident is incompetent, a facility shall consult with the resident immediately and notify the resident's physician, mental, or psychosocial status; c. A need to alter treatment significantly; or d. A decision to transfer or discharge the resident from the facility as specified in Section 4(l) of this administrative regulation.)

**Objection**:

Defendant objects to matter/topic No. 11 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege.

Additionally, Defendant objects to matter/topic No. 11 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 12**: The date of creation, circumstances of events leading to the creation, existence of, IDENTITY of the author and all persons whose names are listed upon, and the content of all FACILITY Incident Reports and/or Unusual Occurrence reports relating to and/or referencing the PLAINTIFF. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or

staff shall be made and signed by the administrator of nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report.);

**Objection**:

Defendant objects to matter/topic No. 12 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Additionally, Defendant objects to matter/topic No. 12 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 13**: The existence of, name of, the intent of and the custodian of any DOCUMENTS that confirm that the FACILITY had sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident and to meet the total needs each resident and to the PLAINTIFF during the time the PLAINTIFF was a resident of the FACILITY in accordance with the requirements of 902 KAR 20:300 § 9 and/or 902 KAR 20:048 §3, 4. (902 KAR 20:300 § 9 provides [t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000027 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000014 of 000054

KAR 20:048 §3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 §4(2)(a) provides [t]here shall be twenty four (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receiver proper care to prevent decubiti and shall be kept comfortable, clean and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect;

**Objection**:

Defendant objects to matter/topic No. 13 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Additionally, Defendant objects to matter/topic No. 13 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000028 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000015 of 000054

**Matter/Topic No. 14**: The mechanisms utilized for determining and recording levels of staff in the FACILITY and the IDENTITY of all person(s) responsible for same, as well as the role staffing plays in the provision of care to residents of the FACILITY during the time frame of December 5, 2009 to December 11, 2009; January 3, 2010 to January 9, 2010; July 12, 2011 to July 18, 2011; July 28, 2013 to August 3, 2013; September 13, 2013 to September 19, 2013 and October 6, 2013 to October 12, 2013. (902 KAR 20:300 § 9 provides [t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 §3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 §4(2)(a) provides [t]here shall be twenty four (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receiver proper care to prevent decubiti and shall be kept comfortable, clean and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect;

**Objection**:

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000029 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000016 of 000054

Defendant objects to matter/topic No. 14 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Additionally, Defendant objects to matter/topic No. 14 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 15**: The existence of, name of, intent of and custodian of all DOCUMENTS utilized by the deponent during the time frame during which PLAINTIFF was a resident of the FACILITY to determine the ratio of NURSING HOURS per patient day. (902 KAR 20:300 § 9 provides [t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 §3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 §4(2)(a) provides [t]here shall be twenty four (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000030 of 000067

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000017 of 000054

15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receiver proper care to prevent decubiti and shall be kept comfortable, clean and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect;

**Objection**:

Defendant objects to matter/topic No. 15 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Additionally, Defendant objects to matter/topic No. 15 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 16**: The existence of, name of, intent of and custodian of all DOCUMENTS which were provided to YOU by any named Defendant in this action and/or by YOU to any named Defendant in this action referencing the staffing levels of the FACILITY during the time frame PLAINTIFF was a resident of the FACILITY, as well as the IDENTITY of all persons who authored and/or received said DOCUMENT(S).

**Objection**:

Defendant objects to matter/topic No. 16 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000031 of 000067

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000018 of 000054

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Additionally, Defendant objects to matter/topic No. 16 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

Defendant, for the purpose of this deposition, is solely Mountain View. As it is a separate and independent entity, Defendant, Mountain View, objects to any line of questioning seeking information about other entities, including but not limited to, SAK JR., LLC; SBK, LLC; and Life Care Centers of America, Inc.

**Matter/Topic No. 17**: The occurrence of, intent of and utilization by the deponent of any FACILITY "resident" and/or "family" council meeting which took place during the time frame PLAINTIFF was a resident of the FACILITY and six (6) months prior as well as the existence of, name of, the intent of and the custodian of any DOCUMENT which memorialize and/or reference such meetings.

**Objection**:

Defendant objects to matter/topic No. 17 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000032 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000019 of 000054

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000033 of 000067

Additionally, Defendant objects to matter/topic No. 17 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 18**: The occurrence of, intent of and utilization by the deponent of any employee "exit interviews" which reflect FACILITY operations during the time frame PLAINTIFF was a resident of the FACILITY and six (6) months prior and as to any DOCUMENT reflecting the effort, the name of, content of and identity and location of the custodian of, said DOCUMENT(S).

**Objection**:

Defendant objects to matter/topic No. 18 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this matter/topic on the grounds and to the extent that it calls for personal, private information pertaining to employees of Defendant regardless of whether those individuals provided any direct care to Helen Ray and, therefore, the matter/topic is overly broad, unduly burdensome and seeks irrelevant and confidential information. Further, Defendant objects to this Request on the grounds and to the extent that it requires Defendant to violate any statutory, contractual, and/or common law duty to maintain in confidence the personal identifying information of any individual.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Additionally, Defendant objects to matter/topic No. 18 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000020 of 000054

**Matter/Topic No. 19**: The utilization of, intent of and form of any "resident satisfaction surveys" and/or "family satisfaction surveys" and/or "employee satisfaction surveys" relating to FACILITY operations during the time frame PLAINTIFF was a resident of the FACILITY and six (6) months prior, and the existence of, name of and name and location of the custodian of, any DOCUMENT reflecting the effort.

**Objection**:

Defendant objects to matter/topic No. 19 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this matter/topic on the grounds and to the extent that it calls for personal, private information pertaining to employees of Defendant regardless of whether those individuals provided any direct care to Helen Ray and, therefore, the matter/topic is overly broad, unduly burdensome and seeks irrelevant and confidential information. Further, Defendant objects to this Request on the grounds and to the extent that it requires Defendant to violate any statutory, contractual, and/or common law duty to maintain in confidence the personal identifying information of any individual.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Additionally, Defendant objects to matter/topic No. 19 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 20**: The occurrence of, intent of and utilization of by the deponent any "hotline" or "grievance procedure" which reflect FACILITY operations during any portion of the time period of during the time frame PLAINTIFF was a resident of the FACILITY and six (6)

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000034 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000021 of 000054

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000035 of 000067

months prior and as to any DOCUMENT reflecting the effort, the existence of, name of, content of and identity and location of the custodian of said DOCUMENT(S).

**Objection**:

Defendant objects to matter/topic No. 20 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this matter/topic on the grounds and to the extent that it calls for personal, private information pertaining to employees of Defendant regardless of whether those individuals provided any direct care to Helen Ray and, therefore, the matter/topic is overly broad, unduly burdensome and seeks irrelevant and confidential information. Further, Defendant objects to this Request on the grounds and to the extent that it requires Defendant to violate any statutory, contractual, and/or common law duty to maintain in confidence the personal identifying information of any individual.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Additionally, Defendant objects to matter/topic No. 20 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 21**: The existence of, name of, the intent of and the custodian of any DOCUMENTS that the FACILITY utilized during the time frame during which the PLAINTIFF was a resident of the FACILITY to ensure that its nursing service personnel were employed ...with the qualifications... to provide the necessary nursing services for each resident of the FACILITY during the time the PLAINTIFF was a resident of the FACILITY. (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000022 of 000054

required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number.);

**Objection**:

Defendant objects to matter/topic No. 21 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this matter/topic on the grounds and to the extent that it calls for personal, private information pertaining to employees of Defendant regardless of whether those individuals provided any direct care to Helen Ray and, therefore, the matter/topic is overly broad, unduly burdensome and seeks irrelevant and confidential information. Further, Defendant objects to this Request on the grounds and to the extent that it requires Defendant to violate any statutory, contractual, and/or common law duty to maintain in confidence the personal identifying information of any individual.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Additionally, Defendant objects to matter/topic No. 21 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 22**: The existence of, name of, the intent of and the custodian of, any DOCUMENTS which the deponent relied upon during the time frame during which PLAINTIFF was a resident of the FACILITY to ensure that any FACILITY employee who provided any services to the PLAINTIFF on behalf of the FACILITY were fir to perform their job duties. (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000036 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000023 of 000054

registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number.);

**Objection**:

Defendant objects to matter/topic No. 22 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this matter/topic on the grounds and to the extent that it calls for personal, private information pertaining to employees of Defendant regardless of whether those individuals provided any direct care to Helen Ray and, therefore, the matter/topic is overly broad, unduly burdensome and seeks irrelevant and confidential information. Further, Defendant objects to this Request on the grounds and to the extent that it requires Defendant to violate any statutory, contractual, and/or common law duty to maintain in confidence the personal identifying information of any individual.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Additionally, Defendant objects to matter/topic No. 22 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 23**: The existence of, name of, the intent of and the custodian of, any DOCUMENTS which evidence YOUR "in-service training and ongoing education" of FACILITY employees in accordance with the requirements of 902 KAR 20:048 §3(10)(b) during the residency of the PLAINTIFF in the FACILITY. (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law,

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000037 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000024 of 000054

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000038 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000025 of 000054

health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number.);

**Objection**:

Defendant objects to matter/topic No. 23 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this matter/topic on the grounds and to the extent that it calls for personal, private information pertaining to employees of Defendant regardless of whether those individuals provided any direct care to Helen Ray and, therefore, the matter/topic is overly broad, unduly burdensome and seeks irrelevant and confidential information. Further, Defendant objects to this Request on the grounds and to the extent that it requires Defendant to violate any statutory, contractual, and/or common law duty to maintain in confidence the personal identifying information of any individual.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Additionally, Defendant objects to matter/topic No. 23 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 24**: The existence of, name of, the intent of and the custodian of any DOCUMENTS which were provided to You by any named Defendant in this action and/or by YOU to any named Defendant in this action referencing the operating budget and/or financial performance of the FACILITY during the time frame PLAINTIFF was a resident of the FACILITY and six (6) months prior as well as the IDENTITY of all persons who authored and/or received said DOCUMENT(S).

**Objection**:

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000039 of 000067

Defendant objects to matter/topic No. 24 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Defendant, for the purpose of this deposition, is solely Mountain View. As it is a separate and independent entity, Defendant, Mountain View, objects to any line of questioning seeking information about other entities, including but not limited to, SAK JR., LLC; SBK, LLC; and Life Care Centers of America, Inc.

Additionally, Defendant objects to matter/topic No. 24 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 25**: The manner by which, and amount of any, consideration was paid by the FACILITY to any defendant named herein for services performed during the residency of the PLAINTIFF in the FACILITY.

**Objection**:

Defendant objects to matter/topic No. 25 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Defendant, for the purpose of this deposition, is solely Mountain View. As it is a separate and independent entity, Defendant, Mountain View, objects to any line of questioning seeking

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000026 of 000054

information about other entities, including but not limited to, SAK JR., LLC; SBK, LLC; and Life Care Centers of America, Inc.

Additionally, Defendant objects to matter/topic No. 25 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 26**: The name, location, terms, scope, and content of any agreement, administrative services agreement and/or consulting agreement between the FACILITY and any named defendant herein relating to management, administrative and/or consulting services provided to the FACILITY during the residency of the PLAINTIFF in the FACILITY in accordance with the requirements of 902 KAR 20:048 § 3(3). (902 KAR 20:048 § 3(3)(b) provides the facility shall require and maintain written recommendations or comments from consultants regarding the program and its development on a per visit basis.);

**Objection**:

Defendant objects to matter/topic No. 26 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Defendant, for the purpose of this deposition, is solely Mountain View. As it is a separate and independent entity, Defendant, Mountain View, objects to any line of questioning seeking information about other entities, including but not limited to, SAK JR., LLC; SBK, LLC; and Life Care Centers of America, Inc.

Additionally, Defendant objects to matter/topic No. 26 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000040 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000027 of 000054

type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 27**: The scope of job responsibilities for any and all FACILITY employees, including but not limited to, the categories set forth below during the time which PLAINTIFF was a resident of FACILITY in accordance with the requirements of 902 KAR 20:048 §3, (902 KAR 20:048 §3(10)(a) provides written job descriptions shall be developed for each category of personnel, to include qualifications, lines of authority and specific job assignments.):

- Administrator;
- Director of Nursing;
- Admissions Coordinator;
- Business Office Manager;
- Director of Social Services;
- Director of Staff Development;
- Director of Activities;
- Director of Dietary Services;
- Minimum Data Set Coordinator;
- Case Managers;
- Charge Nurses;
- Registered Nurses;
- Licensed Vocational Nurses;
- Certified Nursing Assistants;
- Restorative Nurse's Aides;
- Physical Therapists;

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000041 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000028 of 000054

- Occupational Therapists;
- Speech Therapists

**Objection**:

Defendant objects to matter/topic No. 27 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this matter/topic on the grounds and to the extent that it calls for personal, private information pertaining to employees of Defendant regardless of whether those individuals provided any direct care to Helen Ray and, therefore, the matter/topic is overly broad, unduly burdensome and seeks irrelevant and confidential information. Further, Defendant objects to this Request on the grounds and to the extent that it requires Defendant to violate any statutory, contractual, and/or common law duty to maintain in confidence the personal identifying information of any individual.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Additionally, Defendant objects to matter/topic No. 27 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 28**: The FACILITY policies and procedures relating to, as well as any effort to, adhere to applicable rules laws and regulations effecting the operations of the FACILITY during the residency of the PLAINTIFF in the FACILITY and the reasons for same. (902 KAR 20:048 § 3(4) provides that the facility shall establish written policies and procedures that govern all services provided by the facility. The written policies shall include: (a) Patient care and services to include physician, nursing, pharmaceutical (including medication stop orders policy), and residential services. (b) Adult and child protection. The facility shall have written policies

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000042 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000029 of 000054

which assure the reporting of cases of abuse, neglect or exploitation of adults and children pursuant to KRS Chapters 209 and 620. (c) Use of restraints. The facility shall have da written policy that addresses the use of restraints and a mechanism for monitoring and controlling their use. (d) Missing patient procedures. The facility shall [have] a written procedure to specify a step by step manner the actions which shall be taken by staff when a patient is determined to be lost, unaccounted for or on other unauthorized absence.);

**Objection**:

Defendant objects to matter/topic No. 28 on the grounds that the language used is vague and ambiguous. Moreover, this matter/topic is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Additionally, Defendant objects to matter/topic No. 28 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

Defendant objects to this Request on the grounds that it seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in that the Request is not limited to information relevant to Helen Ray or the allegations contained in Plaintiff's Complaint in this action. For example, the request, as written, could be interpreted to include "policies and procedures" relating to issues totally unrelated to Helen Ray and the level of care she received, which could include hundreds if not thousands of pages of totally irrelevant and inadmissible information.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

**Matter/Topic No. 29**: The existence of, name of, the intent of, reasons for, content of and the custodian of any DOCUMENTS as to any Corporate Integrity Agreement by which the

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000043 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000030 of 000054

FACILITY was bound to operate during the time frame PLAINTIFF was a resident of the FACILITY and six (6) months prior through the date of this deposition.

**Objection**:

Defendant objects to matter/topic No. 29 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Additionally, Defendant objects to matter/topic No. 29 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of “identification” information. This is especially true as Ms. Ray’s residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 30**: The mechanisms utilized for determining and recording levels of staff in FACILITY and the identity and location of all person(s) responsible for same during the residency of PLAINTIFF in the FACILITY.

**Objection**:

Defendant objects to matter/topic No. 30 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Additionally, Defendant objects to matter/topic No. 30 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000044 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000031 of 000054

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000045 of 000067

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000032 of 000054

type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 31**: The IDENTITY, employment status and last known residence address and telephone number of all persons who on behalf of the FACILITY provided any services to PLAINTIFF during the time frame PLAINTIFF was a resident of the FACILITY.

**Objection**:

Defendant objects to matter/topic No. 31 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Additionally, Defendant objects to matter/topic No. 31 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 32**: The intake process utilized by the FACILITY to determine the needs of an incoming resident and the purpose for same in effect upon the date of admission of the PLAINTIFF as a resident of the FACILITY.

**Objection**:

Defendant objects to matter/topic No. 32 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Additionally, Defendant objects to matter/topic No. 32 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 33**: The process, intent and reason for the creation of FACILITY Care Plans and modifications thereto as to the PLAINITFF and FACILITY residents in general during the time frame during which the PLAINTIFF was a resident of the FACILITY in accordance with the requirements of 902 KAR 20:048 § 4(2)(d). (902 KAR 20:048 § 4(2)(d) provides there shall be a written nursing care plan for each patient based on the nature of illness, treatment prescribed, long and short term goals and other pertinent information. 1. The nursing care plan shall be a personalized, daily plan for individual patients. It shall indicate what nursing care is needed, how it can best be accomplished for each patient, what are the patients preferences, what methods and approaches are most successful, and what modifications are necessary to ensure best results. 2. Nursing care plans shall be available for use by all nursing personnel. 3. Nursing care plans shall be reviewed and revised as needed. 4. Relevant nursing information from the nursing care plan shall be included with other medical information when patients are transferred.);

**Objection**:

Defendant objects to matter/topic No. 33 on the grounds that the language used is vague and ambiguous. Moreover, this matter/topic is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000046 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000033 of 000054

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000047 of 000067

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Additionally, Defendant objects to matter/topic No. 33 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

**Matter/Topic No. 34**: The number of residents in the FACILITY who suffered from falls during the residency of the PLAINTIFF in the FACILITY as well as six (6) months prior and the existence of, name of, custodian of and methodology of creation of, purpose of and recipients of, all DOCUMENTS which memorialize same.

**Objection**:

Defendant objects to matter/topic No. 34 on the grounds that it is overly broad and unduly burdensome to the extent that it purports to call for the disclosure of information without subject matter limitation, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

Additionally, Defendant objects to matter/topic No. 8 on the grounds that the discovery tool Plaintiff has chosen is the most expensive and unduly burdensome tool available considering the type of information that is being sought and that interrogatories are the appropriate tool for this type of "identification" information. This is especially true as Ms. Ray's residency spanned nearly six years and her chart is more than 5,000 pages.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000034 of 000054

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000048 of 000067

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000035 of 000054

**DOCUMENTS REQUESTED TO BE PRODUCED**

**DEFINITIONS**

A. "Request" – means the Plaintiff's Request for Production of Documents in Response to the Subpoena Duces Tecum of 30.02(6) Deposition along with Plaintiff's Complaint, including, but not limited to, all instructions and definitions contained therein.

B. "Irrelevant" – The information sought by the Request concerns a matter that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. The information sought by the Request must be reasonably calculated to lead to the discovery of admissible evidence based upon the allegations contained in the Complaint in this case.

C. "Unduly burdensome" – The information sought by the Request seeks discovery which is unduly burdensome or expensive, taking into account the needs of the case, limitations on the parties' resources, and the importance of the issues at stake in the litigation.

D. "Vague" – The information sought by the Request contains a word or phrase that is not adequately defined, or the overall Request is confusing, and Defendant is unable to reasonably ascertain what information is being sought.

E. "Overly broad" – The information sought by the Request is beyond the scope of, or beyond the time period relevant to, the subject matter of this litigation as set forth in the Complaint. Accordingly, the Request seeks information that is irrelevant and unduly burdensome to produce.

**GENERAL OBJECTIONS**

These General Objections are incorporated into Defendant's specific Responses to Plaintiff's Request for Production as set forth below:

A. The objection and statements set forth in this section apply to each of the Requests propounded by Plaintiff and are not necessarily repeated in each individual Response set forth below. The assertion of same, similar or additional objections and specific objections, or the failure to assert any objection, to an individual subject matter does not waive any objections of Defendant set forth in this section or the following sections.

B. Defendant objects to the Requests on the grounds and to the extent that they call for disclosure of information constituting, containing or revealing privileged attorney/client communications and/or information protected by the attorney work product doctrine or other applicable privileges. Defendant objects to disclosing, and will not intentionally disclose, any information otherwise responsive to the Requests that is protected from

disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

C. Defendant objects to the Requests to the extent that they call for the disclosure of confidential or proprietary business information of Defendant prior to the entry by the Court of an appropriate confidentiality order.

D. Defendant objects to the Requests to the extent that they purport to call for the disclosure of information without temporal and/or subject matter limitation, fail to specify the information sought with reasonable particularity, or purport to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

E. Defendant objects to the Requests to the extent that they require Defendant to identify documents or information in documents when the information sought can be obtained as easily by Plaintiff through a review of applicable documents produced in discovery or publicly available documents or information.

F. Defendant objects to the Requests on the grounds and to the extent that they require the disclosure of information contained in confidential medical records in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") or other federal regulations including but not limited to Standards for Privacy of Individually Identifiable Health Information, 45 CFR Parts 160 and 164 or the rights provided to residents of long-term care facilities provided by KRS 216.510(7).

G. Defendant objects to the Requests to the extent that they seek information relating to time periods before or after Helen Ray was a resident at Mountain View.

H. Defendant objects to the Requests on the grounds and to the extent that they seek information that is irrelevant to the present action and any allegation in the Complaint or any alleged injury to Plaintiff. Defendant additionally objects to the Requests on the grounds and to the extent that they are not limited temporally in a manner that is relevant to the present action and that investigation and/or compilation of the information requested would be overly burdensome, oppressive and expensive. Moreover, pursuant to the United States Supreme Court decision in *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003), the discovery sought is constitutionally impermissible in at least the following respects:

1. Plaintiff has failed to identify any specific legitimate state interest supporting an award of punitive damages in this case.

2. Plaintiff's inquiries seek information concerning events or occurrences bearing no relation to Plaintiff's actual harm.

3. Plaintiff's inquiries seek information concerning events or occurrences dissimilar from the events described by Plaintiff in the Complaint.

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000049 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000036 of 000054

4. Plaintiff suffered little or no harm and the harm alleged is of a constitutionally minor nature thereby precluding any punitive award in excess of compensatory damages.

5. Plaintiff has failed to identify any penal fine associated with his allegations against Defendants and, therefore, the inquiries are constitutionally irrelevant.

I. Defendant objects to any Request that seeks information or documents relating to its quality assurance committee or any information or documents generated by or for its quality assurance committee as that information and those documents are protected from disclosure by 42 U.S.C. §1396r(b)(1)(B) and 42 CFR §483.75(o)(3).

J. Defendant objects to any Requests on the grounds and to the extent that they seek information about any non-party employee or former employee of Mountain View as a violation of those employees' rights to privacy and confidentiality and as having no relevance to the claims or defenses asserted in this action.

K. Defendant objects to the Requests to the extent that they seek to expand or modify the breadth or scope of, or increase Defendant's duties under, the Rules of Civil Procedure or Orders of Court.

L. Defendant reserves the right to supplement its Responses to the Plaintiff's Requests for Production according to the applicable Rules of Civil Procedure or Orders of Court.

M.

**REQUEST NO. 1:** Please provide copies of any and all DOCUMENTS in the deponent's care, custody or control which pertain, reference and/or refer to the PLAINTIFF. (902 KAR 20:300 § 3(2)(b) provides that the resident shall have the right to inspect and purchase photocopies of all records pertaining to the resident, upon written request and forty-eight (48) hours notice to the facility.

**RESPONSE:**

Defendant objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000050 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000037 of 000054

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000051 of 000067

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000038 of 000054

objects to this Request on the grounds and to the extent that it calls for confidential, propriety business information.

**REQUEST NO. 2:** Please provide a blank "Incident Report" and/or "Unusual Occurrence Report" and/or any other DOCUMENT utilized by the FACILITY to report or memorialize any occurrence relating to a resident which were utilized during the residency of PLAINTIFF in the FACILITY. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator of nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report.);

**RESPONSE:**

Defendant objects to this Request on the grounds that it is vague in that the words "Incident Report(s)" and "Unusual Occurrence Report(s)" are not defined and are subject to multiple interpretations and would require Defendant to speculate as to their meaning, which Defendant is not required to do. Defendant further objects to this Request on the grounds that it seeks information or documents relating to Defendant's quality assurance committee or any information or documents generated by or for Defendant's quality assurance committee as that information and those documents are protected from disclosure by 42 U.S.C. §1396r(b)(1)(B) and 42 CFR § 483.75(o)(3).

**REQUEST NO. 3:** Please provide any "Incident Report(s)" and/or "Unusual Occurrence Report(s)" and/or any other DOCUMENT utilized by the FACILITY to report or memorialize any occurrence relating to a resident which in any fashion mentions or relates to the PLAINTIFF. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator of nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report.);

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000052 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000039 of 000054

**<u>RESPONSE</u>:**

Defendant objects to this Request on the grounds that it is vague in that the words "Incident Report(s)" and "Unusual Occurrence Report(s)" are not defined and are subject to multiple interpretations and would require Defendant to speculate as to their meaning, which Defendant is not required to do. Defendant further objects to this Request on the grounds that it seeks information or documents relating to Defendant's quality assurance committee or any information or documents generated by or for Defendant's quality assurance committee as that information and those documents are protected from disclosure by 42 U.S.C. §1396r(b)(1)(B) and 42 CFR § 483.75(o)(3).

**<u>REQUEST NO. 4</u>:** Please provide each "Incident Report(s)" and/or "Unusual Occurrence Report(s)" and/or any other DOCUMENT utilized by the FACILITY to report or memorialize the development of falls and/or pressure ulcers as to any FACILITY resident during the time frame during which the PLAINTIFF was a resident of the FACILITY. (The names of all residents other than the PLAINTIFF should be redacted from the production.) (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator of nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report.);

**<u>RESPONSE</u>:**

Defendant objects to this Request on the grounds that it is vague in that the words "Incident Report(s)" and "Unusual Occurrence Report(s)" are not defined and are subject to multiple interpretations and would require Defendant to speculate as to their meaning, which Defendant is not required to do. Defendant further objects to this Request on the grounds that it seeks information or documents relating to Defendant's quality assurance committee or any information or documents generated by or for Defendant's quality assurance committee as that information and those documents are protected from disclosure by 42 U.S.C. §1396r(b)(1)(B) and 42 CFR § 483.75(o)(3).

**<u>REQUEST NO. 5</u>:** Please provide all DOCUMENTS which reflect the number of residents in the FACILITY who suffered from falls during the time frame during which the PLAINTIFF was

a resident of the FACILITY. (The name of any resident other than the PLAINTIFF should be redacted from the production.)

**RESPONSE:**

Defendant objects to this Request on the grounds that it is overly broad, burdensome and seeks information irrelevant to the subject matter of the claims asserted in the Complaint, and, therefore, not reasonably calculated to lead to the discovery of admissible evidence. The Request seeks documents and information that have no bearing or direct relationship to whether the care received by Helen Ray at Mountain View met the applicable standard of care.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for proprietary confidential business information.

**REQUEST NO. 6:** Please provide all DOCUMENTS which were provided to YOU by any named Defendant in this action referencing the PLAINTIFF and/or by you to any named Defendant in this action referencing the PLAINTIFF.

**RESPONSE:**

Defendant, for the purpose of this deposition, is solely Mountain View. As it is a separate and independent entity, Defendant, Mountain View, objects to any line of questioning seeking information about other entities, including but not limited to, SAK JR., LLC; SBK, LLC; and Life Care Centers of America, Inc.

Defendant objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, propriety business information.

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000053 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000040 of 000054

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000054 of 000067

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000041 of 000054

**REQUEST NO. 7:** Please provide all DOCUMETNS which were provided to YOU by any named Defendant, or by YOU to any named Defendant in this action referencing the staffing levels in the FACILITY during the time frame PLAINTIFF was a resident of the FACILITY and six (6) months prior. (The names of all residents other than the PLAINTIFF should be redacted from the production.)

**RESPONSE:**

Defendant, for the purpose of this deposition, is solely Mountain View. As it is a separate and independent entity, Defendant, Mountain View, objects to any line of questioning seeking information about other entities, including but not limited to, SAK JR., LLC; SBK, LLC; and Life Care Centers of America, Inc.

Defendant objects to this Request on the grounds that it is overly broad, burdensome and seeks information irrelevant to the subject matter of the claims asserted in the Complaint, and, therefore, not reasonably calculated to lead to the discovery of admissible evidence. The Request seeks documents and information that have no bearing or direct relationship to whether the care received by Helen Ray at Mountain View met the applicable standard of care.

Defendant objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, propriety business information.

**REQUEST NO. 8:** Please provide all DOCUMENTS which were provided to YOU by any named Defendant, or by YOU to any named Defendant in this action referencing the operating budget and/or financial performance of the FACILITY during the time frame PLAINTIFF was a resident of the FACILITY and six (6) months prior.

**RESPONSE:**

Defendant, for the purpose of this deposition, is solely Mountain View. As it is a separate and independent entity, Defendant, Mountain View, objects to any line of questioning seeking information about other entities, including but not limited to, SAK JR., LLC; SBK, LLC; and Life Care Centers of America, Inc.

Defendant objects to this Request on the grounds that it is overly broad, burdensome and seeks information irrelevant to the subject matter of the claims asserted in the Complaint, and, therefore, not reasonably calculated to lead to the discovery of admissible evidence. The Request seeks documents and information that have no bearing or direct relationship to whether the care received by Helen Ray at Mountain View met the applicable standard of care.

Defendant objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, propriety business information.

**REQUEST NO. 9:** Please provide all DOCUMENTS which reflect the number of residents in the FACILITY who suffered falls during the time frame PLAINTIFF was a resident of the FACILITY and six (6) months prior. (The name of any resident other than the PLAINTIFF should be redacted from the production.)

**RESPONSE:**

Defendant objects to this Request on the grounds that it is overly broad, burdensome and seeks information irrelevant to the subject matter of the claims asserted in the Complaint, and, therefore, not reasonably calculated to lead to the discovery of admissible evidence. The Request seeks documents and information that have no bearing or direct relationship to whether the care received by Helen Ray at Mountain View met the applicable standard of care.

Defendant objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000055 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000042 of 000054

Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, propriety business information.

**REQUEST NO. 10:** Please provide the FACILITY NURSING STAFFING INFORMATION during the tiem frame PLAINTIFF was a resident of the FACILITY and six (6) months prior. The term "Nurse Staffing Information" as used in this Request shall refer to that which is defined in Title 42 of the *Code of Federal Regulations* §483.30(e) which is as follows:

(e) *Nurse Staffing information*

(1) *Data requirements*. The facility must post the following information on a daily basis:

(i) Facility name;

(ii) The current date;

(iii) The total number and the actual hours worked by the following categories of licensed and unlicensed nursing staff directly responsible for resident care per shift:

(A) Registered nurses.

(B) Licensed practical nurses or licensed vocational nurses (as defined under State law).

(C) Certified nurse aids.

(iv) Resident census.

(2) *Posting requirements.*

(i) The facility must post the nurse staffing data specified in paragraph (e)(1) of this section on a daily basis at the beginning of each shift.

(ii) Data must be posted as follows:

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000056 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000043 of 000054

(A) Clear and readable format.

(B) In a prominent place readily accessible to residents and visitors.

(3) *Public access to posted nurse staffing data.* The facility must, upon oral or written request, make nurse staffing data available to the public for review at a cost not to exceed the community standard.

**RESPONSE:**

Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks irrelevant information that bears no direct relationship to whether care received by Helen Ray during her residency at Mountain View met the applicable standard of care.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

**REQUEST NO. 11:** Please provide all DOCUMENTS which confirm that the FACILITY Nursing service personnel were employed and in at least the number...to provide the necessary nursing services for each resident of the FACILITY during the time the PLAINTIFF was a resident of the FACILITY in accordance with the requirements of 902 KAR 20:300 § 9 which states [t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 §3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000057 of 000067

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000044 of 000054

and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 §4(2)(a) provides [t]here shall be twenty four (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receiver proper care to prevent decubiti and shall be kept comfortable, clean and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect;

**RESPONSE:**

Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks irrelevant information that bears no direct relationship to whether care received by Helen Ray during her residency at Mountain View met the applicable standard of care.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

**REQUEST NO. 12:** Please provide all DOCUMENTS which evidence the FACILITY "in-service training and ongoing education" in accordance with the requirements of (902 KAR 20:048 § 3(10)(b) during the time frame PLAINTIFF was a resident of the FACILITY and six (6) months prior. (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000058 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000045 of 000054

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000059 of 000067

current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number.);

**RESPONSE:**

Defendant objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks irrelevant information that bears no direct relationship to whether care received by Helen Ray during her residency at Mountain View met the applicable standard of care.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

**REQUEST NO. 14:** Please produce all DOCUMENTS which constitute YOUR In-Service Education during the time frame PLAINTIFF was a resident of the FACILITY and six (6) months prior.

**RESPONSE:**

Defendant objects to this Request on the grounds that it seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in that the Request is not limited to information relevant to Helen Ray or the allegations contained in Plaintiff's Complaint in this action. For example, the request, as written, could be interpreted to include "policies and procedures" relating to issues totally unrelated to Helen Ray and the level of care she received, which could include hundreds if not thousands of pages of totally irrelevant and inadmissible information.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000046 of 000054

objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

**REQUEST NO. 15:** Please produce all DOCUMENTS which were provided to those who attended any In-Service education put on by the FACILITY during the tiem frame PLAINTIFF was a resident of the FACILITY and six (6) months prior. (The names of all residents other than the PLAINTIFF should be redacted from the production.

**RESPONSE:**

Defendant objects to this Request on the grounds that it seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in that the Request is not limited to information relevant to Helen Ray or the allegations contained in Plaintiff's Complaint in this action. For example, the request, as written, could be interpreted to include "policies and procedures" relating to issues totally unrelated to Helen Ray and the level of care she received, which could include hundreds if not thousands of pages of totally irrelevant and inadmissible information.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

**REQUEST NO. 16:** Please provide all DOCUMENTS which consist of the FACILITY policies, procedures, manuals or guidelines in effect during the time frame during which the PLAINTIFF was a resident in the FACILITY relating to operations and resident care of the FACILITY as well as the FACILITY mechanisms utilized for determining and recording levels of staff in the FACILITY Policies and Procedures; and the FACILITY Policies and Procedures relating to assessing employees job performance and for memorializing discipline of employees and/or complaints received as it pertains to employees. (902 KAR 20:048 § 3(4) provides that the facility shall establish written policies and procedures that govern all services provided by the

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000060 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000047 of 000054

facility. The written policies shall include: (a) Patient care and services to include physician, nursing, pharmaceutical (including medication stop orders policy), and residential services. (b) Adult and child protection. The facility shall have written policies which assure the reporting of cases of abuse, neglect or exploitation of adults and children pursuant to KRS Chapters 209 and 620. (c) Use of restraints. The facility shall have da written policy that addresses the use of restraints and a mechanism for monitoring and controlling their use. (d) Missing patient procedures. The facility shall [have] a written procedure to specify a step by step manner the actions which shall be taken by staff when a patient is determined to be lost, unaccounted for or on other unauthorized absence.);

**RESPONSE:**

Defendant objects to this Request on the grounds that it seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in that the Request is not limited to information relevant to Helen Ray or the allegations contained in Plaintiff's Complaint in this action. For example, the request, as written, could be interpreted to include "policies and procedures" relating to issues totally unrelated to Helen Ray and the level of care she received, which could include hundreds if not thousands of pages of totally irrelevant and inadmissible information.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

**REQUEST NO. 17:** Please provide all DOCUMENTS in accordance with the requirements of 902 KAR 20:048 § 3 constituting the job description of any and all FACILITY personnel set forth below which were in effect during the residency of the PLAINTIFF at the FACILITY. (902 KAR 20:048 §3(10)(a) provides written job descriptions shall be developed for each category of

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000061 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000048 of 000054

personnel, to include qualifications, lines of authority and specific job assignments.) These include, but are not limited to, the following:

1. Administrator;
2. Director of Nursing;
3. Business Office Manager;
4. Minimum Data Set Coordinator;
5. Case Managers;
6. Registered Nurses;
7. Licensed Vocational Nurses;
8. Charge Nurses;
9. Certified Nursing Assistants;
10. Restorative Nursing Assistants;
11. Physical Therapists;
12. Admissions Coordinator;
13. Business Office Manager;
14. Social Services Director;
15. Activities Personnel;
16. Dietary Services Personnel;
17. Director of Staff Development;
18. Medical Director;

**RESPONSE:**

Defendant objects to this Request on the grounds that it seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in that the Request is not limited to information relevant to Helen Ray or the allegations contained in Plaintiff's Complaint in this action. For example, the request, as written, could be interpreted to include

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000062 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000049 of 000054

"policies and procedures" relating to issues totally unrelated to Helen Ray and the level of care she received, which could include hundreds if not thousands of pages of totally irrelevant and inadmissible information.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

**REQUEST NO. 18:** Please provide all DOCUMENTS constituting the FACILITY Employee Handbook in effect during the residency of the PLAINTIFF at the FACILITY.

**RESPONSE:**

Defendant objects to this Request on the grounds that it seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in that the Request is not limited to information relevant to Helen Ray or the allegations contained in Plaintiff's Complaint in this action. For example, the request, as written, could be interpreted to include issues totally unrelated to Helen Ray and the level of care she received, which could include hundreds if not thousands of pages of totally irrelevant and inadmissible information.

Defendant objects to this Request on the grounds that the language used is vague and ambiguous. Moreover, this Request is overly broad and unduly burdensome, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000063 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000050 of 000054

objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

**REQUEST NO. 19:** Please provide all DOCUMENTS constituting Orientation Manuals intended for utilization by FACILITY new employees during the residency of the PLAINTIFF at the FACILITY.

**RESPONSE:**

Defendant objects to this Request on the grounds that it seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in that the Request is not limited to information relevant to Helen Ray or the allegations contained in Plaintiff's Complaint in this action. For example, the request, as written, could be interpreted to include issues totally unrelated to Helen Ray and the level of care she received, which could include hundreds if not thousands of pages of totally irrelevant and inadmissible information.

Defendant objects to this Request on the grounds that the language used is vague and ambiguous. Moreover, this Request is overly broad and unduly burdensome, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

**REQUEST NO. 20:** Please provide all DOCUMENTS constituting the FACILITY Code of Conduct for employees in effect during the residency of the PLAINTIFF at the FACILITY.

**RESPONSE:**

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000064 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000051 of 000054

Defendant objects to this Request on the grounds that it seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in that the Request is not limited to information relevant to Helen Ray or the allegations contained in Plaintiff's Complaint in this action. For example, the request, as written, could be interpreted to include issues totally unrelated to Helen Ray and the level of care she received, which could include hundreds if not thousands of pages of totally irrelevant and inadmissible information.

Defendant objects to this Request on the grounds that the language used is vague and ambiguous. Moreover, this Request is overly broad and unduly burdensome, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

**REQUEST NO. 21:** Please provide all DOCUMENTS which constitute any Corporate Integrity Agreement by which the FACILITY was bound during the time frame during which the PLAINTIFF was a resident of the FACILITY.

**RESPONSE:**

Defendant objects to this Request on the grounds that it seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence in that the Request is not limited to information relevant to Helen Ray or the allegations contained in Plaintiff's Complaint in this action. For example, the request, as written, could be interpreted to include issues totally unrelated to Helen Ray and the level of care she received, which could include hundreds if not thousands of pages of totally irrelevant and inadmissible information.

Defendant objects to this Request on the grounds that the language used is vague and ambiguous. Moreover, this Request is overly broad and unduly burdensome, fails to specify the information sought with reasonable particularity, or purports to demand information irrelevant to the subject

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000065 of 000067

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000052 of 000054

matter involved in this action or not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this Request on the grounds and to the extent that it seeks documents protected by the attorney-client privilege, the work-product privilege, 42 U.S.C. § 1396r(b)(1)(B), 42 C.F.R. § 483.75(o)(3), and related regulations (confidentiality of records of quality assessment and assurance committee); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); 45 CFR parts 160 and 164 Standards for Privacy of Individually Identifiable Health Information; rights provided to residents of long term care facilities provided by KRS § 216.510(7) and any other applicable privilege. Defendant further objects to this Request on the grounds and to the extent that it calls for confidential, proprietary business information.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000066 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000053 of 000054

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000067 of 000067
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000054 of 000054

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 12th day of August, 2016, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507

*/s/ Matthew C. Cocanougher*
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the
ESTATE of HELEN RAY, deceased,
and on behalf of the Wrongful Death
Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a
MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

---

**MOTION FOR QUALIFIED PROTECTIVE ORDER TO HAVE *EX PARTE* COMMUNICATIONS WITH TREATING MEDICAL PROVIDERS**

---

**NOTICE**

Please take notice that this matter will come before the Court for a hearing on Friday, August 19, 2016, at the hour of 9:00 a.m. (EST) or as soon thereafter as can be heard.

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000001 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MOT : 000001 of 000003

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000002 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MOT : 000002 of 000003

**MOTION**

Defendant, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View") through counsel, moves this Court to enter a Qualified Protective Order allowing Defendants to have *ex parte* communications with Helen Ray's treating medical providers.

A memorandum of law in support of this Motion is attached.

Respectfully submitted,

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 12th day of August, 2016, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507

*/s/ Matthew C. Cocanougher*
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000003 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MOT : 000003 of 000003

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000004 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000001 of 000013

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the ESTATE of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR QUALIFIED PROTECTIVE ORDER TO HAVE *EX PARTE* COMMUNICATIONS WITH TREATING MEDICAL PROVIDERS**

---

Defendant, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter “Mountain View”), through counsel, and respectfully request that this Court grant the Defendant’s authorization to have *ex parte* communications with Helen Ray’s treating health care providers; including informal, private interviews, with Defendant’s

counsel, or in the alternative precluding such *ex parte* communications between Plaintiff's counsel and Ms. Ray's treating health care providers.

## I. INTRODUCTION

This is a nursing home negligence action in which the Plaintiff alleges that Mountain View Health Care Center ("Mountain View") breached nursing standards of care that caused certain alleged injuries to Helen Ray. Plaintiff specifically alleges that Ms. Ray suffered accelerated deterioration of her health and physical condition beyond that caused by the normal aging process, including but not limited to the following: multiple falls with injuries; dehydration, weight loss and malnutrition; infections, including urinary tract infections and sepsis; pressure ulcers; bruises, blisters and burns of unknown origin; contractures; and death.

Plaintiff enjoys unlimited *ex parte* contacts with these medical witnesses. Absent a court order granting Defendant equal access, Plaintiff will maintain the unfair advantage of informally communicating with the key witnesses to prepare and influence their testimony.

There is no physician/patient or any other privilege in Kentucky prohibiting Defendant from also informally and privately interviewing Ms. Ray's medical providers; and neither HIPAA nor Kentucky privacy law precludes Ms. Ray's providers from discussing her medical condition with Defendants. By bringing this action against Defendants, Plaintiff has placed her medical condition at issue and waived all privacy and confidentiality rights. Plaintiff is preventing Defendants from having equal access to the medical witnesses, violating Defendants' due process rights.

## II. LEGAL ARGUMENT

Recently, the Supreme Court of Kentucky held in favor of allowing *ex parte* communications. In Caldwell v Chauvin, 464 S.W.3d 139 (Ky. 2015), Defendants filed a

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000005 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000002 of 000013

Motion to allow *ex parte* communication with treating physicians. See Exhibit A. Over Plaintiff's objection, the Trial Court granted the Order. Plaintiff's filed for a writ of prohibition. The case worked its way to the Supreme Court which issued a well-reasoned opinion in support of *ex parte* communications. The Supreme Court's addressed the case of Geary v. Schoering, 979 S.W.2d 134 (Ky. App. 1998) which has been argued in the past by counsel for Plaintiff to prevent *ex parte* communications. The Supreme Court expressly overruled that line of reasoning, stating that ex parte communications are not "the ex parte use of a subpoena power." Instead the Supreme Court, relied on Roberts v Estep, supra, for the proposition that "no Kentucky law prohibits a defendant from contacting ex parte the Plaintiff's treating physicians."

It is well established that communications made for the purpose of medical treatment are not privileged; and there is no physician-patient privilege in Kentucky. Stidham v. Clark, 74 S.W.3d 719, 727 (Ky. 2002). The privileges recognized under Kentucky law are provided in Article Five of the Kentucky Rules of Evidence (KRE), which does not include a physician-patient privilege. Kentucky only recognizes six (6) privileges prohibiting the disclosure of information.

1. Attorney – Client Privilege;
2. Husband – Wife Privilege;
3. Religious Privilege;
4. Counselor – Client Privilege;
5. Psychotherapist – Patient Privilege; and
6. Identity of Informer Privilege.

Weiss v. Astellas Pharma, US, Inc, et al., 2007 WL 2137782 (July 23, 2007). See Exhibit A.

The Kentucky Supreme Court has consistently declined, except in the most compelling situations, to recognize a privilege that has not been established through legislative enactment or expressed in the general laws of evidence. Williams v. Vulcan-Hart Corp., 136 F.R.D. 457, 460 (W.D. Ky. 1991).

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000006 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000003 of 000013

Even if Plaintiff believes that there is a type of general physician-patient privilege under Kentucky law, both the Kentucky Supreme Court and the Kentucky legislature have made it clear that privileges are waived when the subject of the allegedly protected communications is placed in issue by a plaintiff. The Kentucky Rules of Evidence and common-law cases recognize that a privilege is waived when a person places protected information at issue by filing a claim. For example, Rule 507, which sets forth the psychotherapist-patient privilege, provides that there is no privilege for any relevant communications under the rule "if the patient is asserting that patient's mental condition as an element of a claim or defense…." Ky. Rev. Stat. Ann. Rule 507(c)(3) (2006); see Allen v. Dep't for Human Res., 540 S.W.2d 597, 598 (Ky. 1976); Bond v. Bond, 887 S.W.2d 558, 561 (Ky. Ct. App. 1994). Kentucky courts have refused to allow plaintiffs to turn privileges on and off at their whim to gain litigation advantage. See Matthews v. Commonwealth, 709 S.W.3d 414, 419 (Ky. 1985); Harris v. Commonwealth, 688 S.W.2d 338 (Ky. 1984). Plaintiff may not, as Plaintiff attempts here, ignore alleged privilege when it furthers her case to do so (i.e. by discussing plaintiff's medical condition in her complaint and in other pleadings) and then assert privilege when defendants seek to independently investigate the veracity of plaintiff's allegations and fully and adequately engage in discovery.

Kentucky courts have consistently permitted defendants to have *ex parte* communications with a plaintiff's providers. In 1993, the Supreme Court of Kentucky in Roberts v. Estep, 845 S.W.2d 544 (Ky. 1993), held that because Kentucky has no statute forbidding *ex parte* communications between a defendant and a plaintiff's treating physicians, such contact is allowed. Id. at 547. In Roberts, a Workers' Compensation claim, the defendant contacted the plaintiff's treating physician to discuss his medical condition. Id. The plaintiff attempted to do

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000007 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000004 of 000013

exactly what Plaintiff has done in this case, namely prevent the defendants' counsel from having *ex parte* communication with Ms. Young's medical providers. Id. In permitting *ex parte* communications, the Roberts court noted that informal interviews with treating physicians have consistently been allowed by Kentucky courts. Id.

In Davenport v. Ephraim McDowell Mem'l Hosp., 769 S.W.2d 56 (Ky. App. 1989), the Court of Appeals held that the trial court properly issued an order giving the defendant permission to communicate with the plaintiff's treating physicians who plaintiff had intended to use as expert witnesses. Id. at 62. Plaintiff/appellant unsuccessfully argued that any communication by the treating physicians with defense counsel was a violation of the Inter-professional Code jointly adopted by the Kentucky Medical Association and the Kentucky Bar Association. Id. The trial court's order permitted the defendant to contact the treating physicians, but allowed the individual medical providers to determine if they wanted to speak to counsel regarding the plaintiff. Id.

> The order was not improper. It merely gave the court's permission to the appellees' attorneys to approach the treating physicians. No obligation was placed upon the physicians. They were free to react in any way dictated by their professional consciences, from fully discussing Sylvia's medical history and condition to abruptly slamming their office doors in the attorneys' faces.

Id.

Kentucky courts have continued to recognize a defendant's right to informally interview a plaintiff's providers since the implementation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). In Meek v. Vasconez, 2006 WL 1652736 (June 16, 2006, discretionary review denied February 14, 2007), the plaintiff/appellant sought to exclude testimony by the plaintiff's treating physician because defendant had contacted the physician *ex parte* after he had been disclosed as a witness. See Exhibit B. In allowing the treating physician to testify, the trial court, even though it believed there was no HIPAA violation, ruled that any

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000008 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000005 of 000013

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000009 of 000098

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

MEM : 000006 of 000013

possible violation could be remedied through allowing either party to speak with the treating physician, independently, before he testified at trial. Id.

The District Court in the Eastern District of Kentucky held that a defendant is permitted to have *ex parte* communications with the plaintiff's treating physicians if the physicians are willing to do so. Weiss v. Astellas Pharma, US, Inc, et al., 2007 WL 2137782 at 4 (E.D. Ky. July 23, 2007). In Weiss, the defendants moved to compel a HIPAA authorization allowing *ex parte* interviews of the plaintiff's providers after the plaintiff had produced an authorization limiting providers to a disclosure only of plaintiff's medical records. Id. at 5. Magistrate Judge James Todd, after conducting an extensive review of nearly every state's circuit court opinions concerning *ex parte* communications, granted defendant's motion ruling that applicable law permits both defendants and plaintiffs to conduct private interviews of medical fact witnesses. Judge Todd stated that by filing suit, the plaintiff expressly and squarely placed his medical condition at issue. Id. Weiss rejected the plaintiff's demand to be present during defense interviews holding that such interviews are a permissible investigation and preparation of possible defense theories. Id.

Judge Todd also rejected the plaintiff's argument that the fiduciary relationship between physician and patient codified in KRS 311.595(16) bars such *ex parte* communications:

> For the following reasons, the Magistrate Judge is unpersuaded by plaintiff's argument that this statute prevents his treating physicians from having *ex parte* communications with defendants' counsel, at least so far as to those portions of plaintiff's medical records that are relevant to this action are concerned: **(1) defendants have not asked for the disclosure of plaintiff's communications with his treating physicians; those communications are confidential and should remain confidential; (2) by filing this lawsuit, plaintiff has placed his medical condition at issue and has authorized the release of his medical records; therefore, plaintiff's treating physicians are free to discuss plaintiff's medical records that are relevant to this case with defendants' counsel, and so long as the physician does not disclose plaintiff's**

**communications made to the physician, there is no violation of K.R.S. § 311.595(16).**

Id. (Emphasis Added).

Judge Todd concluded that the defendants were not only entitled to receive plaintiff's medical records pursuant to the plaintiff's originally executed authorization for same, they were also free to have *ex parte* communications with the plaintiff's treating physicians concerning those records so long as the physicians were willing to voluntarily confer with defendant's counsel. Id.

Even more recently, on August 15, 2013, the U.S. District Court for the Western District of Kentucky, in a nursing home negligence action with allegations similar to those brought by Plaintiff in the instant matter, granted Defendants' motion for a qualified protective order for *ex parte* communications with Plaintiff's decedent's treating physicians and/or healthcare providers. See Exhibit D, Order in Patricia Ann Pace, as Administratrix of the Estate of Sarah Elizabeth Pace, Deceased v. Medco Franklin RE, LLC d/b/a Medco Center of Franklin, et al., U.S. District Court, Western District of Kentucky, Oakview Division, Civil Action No. 1:12-CV-00132-TBR. The Court found that a physician-patient privilege is not recognized under Kentucky and/or federal law, nor does Kentucky have a statute expressly prohibiting *ex parte* communications. The Court also concluded that HIPAA does not prohibit such *ex parte* communications, recognizing that confidential health information will be protected by a properly worded qualified protective order. Id. at 14.

As the Kentucky Supreme Court, Kentucky Court of Appeals and Federal Courts in Stidham, Davenport, Meek, Weiss and Pace have recognized, there is no physician-patient privilege established by statute or case law that would prohibit Defendants from having *ex parte* communications with Ms. Ray's treating health care providers.

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000010 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000007 of 000013

Roberts, although pre-HIPAA, clearly held that since there is no physician-patient privilege, *ex parte* communications must be allowed. Additionally, the Kentucky Supreme Court, Kentucky Court of Appeals and Federal Courts have also consistently allowed *ex parte* communications and interviews to be conducted by counsel for the defendant without permission, oversight or interference by plaintiff's counsel.

In addition, local circuit courts in Kentucky have recently recognized that *ex parte* communications between counsel for defendants and a plaintiff's treating medical providers is permissible. On April 20, 2015, the McCracken Circuit Court entered an Order in the case of Sarah Ware, et. al. vs. Paducah Health Facilities, LP, et.al., 14-CI-00647, allowing *ex parte* communications. See Exhibit E On March 16, 2012, the Meade Circuit Court, presiding over a similar alleged nursing home abuse and wrongful death case denied the plaintiff's motion to bar defendants from having contact with the nursing home resident's treating physicians. See Exhibit F, Order in Troy Carver, as Administrator of the Estate of Charles Carver, deceased, v. Extendicare, et al., Meade Circuit Court Case No. 10-CI-00287 (May 23, 2012). Likewise, a three member arbitration panel also held that such communications were acceptable. See Exhibit G, Order in Jimmy Colburn, as Administrator of the Estate Michael Colburn, Deceased v. Extendicare Homes, Inc., d/b/a Fordsville Nursing and Rehabilitation Center; and David Brown, in his capacity as Administrator (April 22, 2012). Furthermore, a similar order was entered into by agreed order in another lawsuit. See Exhibit H, Order in David Lemaster, Executor of the Estate of Dosha H. Lemaster v. Extendicare Homes Inc., d/b/a Salyersville Health Care Center, et al., Magoffin Circuit Court, Case No. 09-CI-00127 (May 18, 2012). Likewise, a similar order was entered at the defendants' request by Boyle Circuit Court in another nursing home case. See Exhibit I, Qualified Protective Order entered in Downs v. Kindred Healthcare, Inc., et al., Boyle

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000011 of 000098
MEM : 000008 of 000013

Circuit Court, Case No. 13-CI-00303 (January 27, 2014). Finally, in two other recent nursing home negligence cases, the Courts in Division 3 and 4 of the Kenton Circuit Court entered the defendants' proposed Qualified Protective Orders that are identical to the one tendered by undersigned counsel. See collective Exhibit J, Qualified Protective Orders entered in Haley v. Woodcrest Manor, LLC, et al., Kenton Circuit Court, Division III, Civil Action No. 13-CI-1577 (August 20, 2014) and Medlock v. Extendicare Health Services, Inc., et al., Kenton Circuit Court, Division IV, Civil Action No. 13-CI-1244 (September 22, 2014). These Courts' rulings are based on the long-standing principle that communications made for the purpose of medical treatment are not privileged under Kentucky law.

Plaintiff's claims in this litigation clearly place Ms. Ray's medical conditions at issue. While Defendant is aware of the fiduciary duty of Ms. Ray's physicians and other providers to not disclose the confidential communications that they may have had with her, that duty does not override the right of Defendants to conduct *ex parte* communications with them to properly explore the medical issues during discovery in this action. No recognized privilege exists under Kentucky law.

Even so, by explicitly prohibiting communications with Ms. Ray's treating medical providers, Plaintiff is denying Defendant access to fact witnesses while their counsel is free to conduct unlimited *ex parte* interviews with Ms. Ray's medical providers. Plaintiff's actions are wholly inconsistent with decades of discovery in medical malpractice actions in Kentucky and have effectively precluded Defendant's ability to conduct discovery because of current HIPAA regulations; state and federal law; and physician regulations.

The Due Process Clause of the United States Constitution requires fundamental fairness. *See*, County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998); Pac. Mut. Life Ins. Co. v.

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000012 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000009 of 000013

Haslip, 499 U.S. 1, 15 (1991); Lassiter v. Dep't of Soc. Servs. of Durham County, 452 U.S. 18, 26, 33 (1981). The Kentucky constitution also requires due process. Commonwealth v. Spaulding, 991 S.W. 2d 651, 657 (Ky. 1999) (recognizing right to due course of law and right to due process under Kentucky and United States constitutions). By explicitly prohibiting Defendant's *ex parte* communication with fact witnesses, Plaintiff is actively and knowingly violating Defendants' due process rights. Plaintiff's actions are prejudicial to Defendant's ability to fully explore and support its position with regard to Plaintiff's claims.

Plaintiff also cannot hide behind the regulations promulgated by Congress when they enacted and passed into law HIPAA. HIPAA was designed to ensure the protection of protected health information from unauthorized disclosures, not to allow Plaintiff to use it as a means to prevent meaningful discovery. 45 C.F.R. §164.512(e) allows the disclosure of protected healthcare information, including oral information, in judicial proceedings when procedural safeguards are implemented. Because Kentucky does not provide for such "stringent" procedural safeguards regarding the protection of health information, HIPAA's provision for a qualified protective order is the appropriate and necessary method to allow defendants to conduct *ex parte* interviews with the critical medical fact witnesses in this case.

Defendant acknowledges and accepts that they will have to abide by the procedural safeguards contained in the proposed accompanying protective order that will protect Ms. Ray's privacy rights by, for example, requiring Defendant to secure all medical information received during this litigation and limit the use of same only for purposes of defending Plaintiff's claims in this litigation.

If this Court should deny the Defendants' request for a qualified protective order, then Defendant requests that the Court order Plaintiff's counsel not to engage in such discussions

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000013 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000010 of 000013

either. Unless this Court imposes such restrictions, Plaintiff's counsel will have an unfair advantage. That advantage is not mitigated by the fact that some of Plaintiff's medical providers may be deposed. *See*, Wharton v. Calderon, 127 F.3d 1201, 1204 (9th Cir. 1997) ("Witness interviews serve a different purpose than depositions."); IBM, 526 F.2d at 41 & 4 (same); Patton v. Novartis Consumer Health, Inc., No.4:02-CV-0047-DFH-WGH, 2005 WL 1799509, at *4 (S.D. Ind. July 25, 2005), (noting "enormous practical difference between talking with a witness informally and privately, and talking with the same witness on the record and/or with opposing counsel present"). Depositions do not permit counsel to prepare for trial or make the arrangements needed to ensure a physician-witness' presence in court:

> Medical witnesses are, at best, difficult to deal with . . .. The ability to pick up the telephone and talk informally with a doctor about the arrangements to testify is essential if the defendant is to avoid incurring the wrath of the physician by serving a subpoena and requiring the physician to appear at trial in the same manner as other witnesses. Moreover, since the physician's testimony is usually technical and scientific in nature, it is particularly important that the attorney who expects to elicit testimony from a physician have an opportunity to review with the witness the questions to be asked and the answers to be given.
>
> Brandt v. Med. Def. Assocs., 856 S.W.2d 667, 674 (Mo. 1993) (en banc) (emphasis added).

Thus, to the extent Defendant is barred from having informal, *ex parte* contacts with Ms. Ray's treating providers, fundamental fairness requires that Plaintiff's counsel be barred from such *ex parte* contacts as well.

It is manifestly unfair not to afford Defendant's counsel the same unhindered ability as Plaintiff's counsel to speak with the medical fact witnesses who will be crucial to Defendants' defenses to Plaintiff's claims. All applicable law establishes that both Defendants and Plaintiff must be granted equal opportunity to engage in *ex parte* communications with all medical fact witnesses.

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000014 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000011 of 000013

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000015 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000012 of 000013

## IV. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court **GRANT** its Motion for a Qualified Protective Order allowing defense counsel to have *ex parte* communications with Ms. Ray's treating health care providers during discovery in this action; or in the alternative enter an order prohibiting all parties, including Plaintiff's counsel, from having *ex parte* communication with Ms. Ray's treating health care providers.

Respectfully submitted,

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 12th day of August, 2016, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507

*/s/ Matthew C. Cocanougher*
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000016 of 000098

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

MEM : 000013 of 000013

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

# EXHIBIT A

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000017 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000001 of 000078

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000018 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000002 of 000078

464 S.W.3d 139
Supreme Court of Kentucky.

Stacey Caldwell, Appellant
v.
Honorable A.C. McKay Chauvin, Judge, Jefferson Circuit Court, Appellee
and
Dr. Frank P. Castro, d/b/a Palo Alto Spine, LLC, Real Party in Interest

2014–SC–000390–MR
RENDERED: JUNE 11, 2015

**Synopsis**
**Background:** Patient, a plaintiff in underlying medical malpractice action, petitioned for writ of prohibition preventing trial court from enforcing its order permitting physician, the defendant, to conduct ex parte interviews of patient's treating physicians as part of the informal pretrial discovery process. The Court of Appeals denied petition, finding that patient did not have a right to confidentiality in her communications with her treating physicians. Patient appealed.

**Holdings:** The Supreme Court, Minton, C.J., held that:

[1] patient presented claim of error for which writ of prohibition was an available remedy;

[2] privacy rule of Health Insurance Portability and Accountability Act (HIPAA) did not prohibit physician's ex parte interviews of patient's treating physicians as part of the informal pretrial discovery process;

[3] procedural prerequisites to disclosure of protected health information under litigation exception to HIPAA's privacy rule could only be satisfied by order of a court or administrative tribunal;

[4] no testimonial privilege existed to prohibit the interviews;

[5] American Medical Association's Code of Medical Ethics did not carry the force of law to prohibit the interviews;

[6] no contrary state law existed to afford patient privacy protections greater than those provided by HIPAA; and

[7] trial court's discovery order did not necessarily violate HIPAA.

Affirmed.

Keller, J., concurred and issued opinion in which Barber and Noble, JJ., joined.

West Headnotes (25)

[1] **Prohibition**
Nature and scope of remedy
The issuance of a writ of prohibition is an extraordinary remedy that is disfavored.

Cases that cite this headnote

[2] **Prohibition**
Nature and scope of remedy
Courts are cautious and conservative both in entertaining petitions for writ of prohibition and in granting such relief.

Cases that cite this headnote

[3] **Prohibition**
Remedy by appeal, certiorari, or writ of error in general
**Prohibition**
Want or Excess of Jurisdiction
**Prohibition**
Errors and irregularities
A writ of prohibition may be granted upon a showing that: (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court, or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000019 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000003 of 000078

Cases that cite this headnote

[4] **Prohibition**
Remedy by appeal in particular actions or proceedings
**Prohibition**
Particular proceedings

Patient, a medical malpractice plaintiff, presented claim of error for which writ of prohibition was an available remedy, such that Supreme Court would consider the claim on the merits; patient sought to challenge trial court's pretrial discovery order permitting physician, the defendant, to conduct ex parte interviews of patient's treating physicians, and an appeal would not prevent the alleged resulting great injustice and irreparable injury if the order went unchecked, and the petition raised an issue of first impression bearing importantly on the public administration of the law, specifically concerning whether ex parte interviews of a medical malpractice patient's treating physicians as part of the informal pretrial discovery process violated the physician-patient privilege or various laws.

Cases that cite this headnote

[5] **Prohibition**
Grounds for Relief

Great injustice or irreparable harm that will occur absent issuance of a writ of prohibition is an injury of a ruinous nature.

Cases that cite this headnote

[6] **Prohibition**
Errors and irregularities

Under the "certain-special-cases exception" to the great injustice and irreparable harm requirement for issuance of writs of prohibition, the writ may be issued if substantial miscarriage of justice will result from the lower court's error, and correction of the error is necessary and appropriate in the interest of orderly judicial administration.

Cases that cite this headnote

[7] **Prohibition**
Scope of inquiry and powers of court

Strict adherence to prerequisites for issuance of writs of prohibition is a practical and convenient formula for determining, prior to deciding the issue of alleged error, if petitioner may avail himself of this remedy.

Cases that cite this headnote

[8] **Prohibition**
Scope of inquiry and powers of court

Strictures concerning issuance of writs of prohibition evince a reluctance to reach the merits of alleged errors in writ proceedings.

Cases that cite this headnote

[9] **Prohibition**
Scope of inquiry and powers of court

The test that must be satisfied before the Court may analyze the alleged error giving rise to petition for writ of prohibition was designed expressly to limit the number of writ cases that proceed to the merits of the controversy because writ proceedings necessitate an abbreviated record which magnifies the chance of incorrect rulings that would prematurely and improperly cut off the rights of litigants.

Cases that cite this headnote

[10] **Prohibition**
Discretion as to grant of writ

The issuance of a writ of prohibition is inherently discretionary.

Cases that cite this headnote

[11] **Prohibition**
Discretion as to grant of writ

Even if the requirements are met and error found, the grant of a writ of prohibition remains within the sole discretion of the Court.

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000020 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000004 of 000078

Cases that cite this headnote

[12] Appeal and Error
Cases Triable in Appellate Court

Appeal and Error
Review of Questions of Fact

When questions of law or findings of fact made by the Court of Appeals en route to their ultimate decision are raised, the Supreme Court reviews de novo and for clear error, respectively.

Cases that cite this headnote

[13] Prohibition
Scope of inquiry and powers of court

Rather than first addressing the availability of a writ of prohibition, the Court of Appeals may proceed directly to the merits of a dispute when they are uncomplicated and doing so would promote the end of judicial economy in limiting the breadth of analysis appellate courts undertake when considering writs.

Cases that cite this headnote

[14] Insurance
Conversion

Insurance
Preexisting Conditions

Congress enacted Health Insurance Portability and Accountability Act (HIPAA) with the primary purpose of making health insurance more portable to prevent the denial of insurance coverage for preexisting conditions when employees change jobs and, in so doing, change health insurance providers. 42 U.S.C.A. § 1320d et seq.

Cases that cite this headnote

[15] Privileged Communications and Confidentiality
Health information statutes and regulations

Privacy rule of Health Insurance Portability and Accountability Act (HIPAA) did not prohibit physician's ex parte interviews of patient's treating physicians as part of the informal pretrial discovery process in medical malpractice action, although HIPAA's strictures did regulate disclosure of protected health information during the course of such interviews; for instance, the litigation exception to the privacy rule permitted disclosure of protected health information "in the course of any judicial or administrative proceeding" either "[i]n response to an order of a court or administrative tribunal" or "[i]n response to a subpoena, discovery request, or other lawful process." 45 C.F.R. § 164.502(a)(1); 45 C.F.R. § 164.512(e)(1)(i)-(ii).

1 Cases that cite this headnote

[16] Pretrial Procedure
Particular Subjects of Disclosure

Privileged Communications and Confidentiality
Health information statutes and regulations

Procedural prerequisites to disclosure of protected health information during physician's ex parte interviews of patient's treating physicians under the litigation exception to the privacy rule of Health Insurance Portability and Accountability Act (HIPAA), requiring disclosure to occur in response to a subpoena, discovery request, or other "lawful process," could only be satisfied by order of a court or administrative tribunal; ex parte interviews did not come within the meaning of "lawful process" as used in the HIPAA provisions. 45 C.F.R. § 164.502(a)(1); 45 C.F.R. § 164.512(e)(1)(i)-(ii).

Cases that cite this headnote

[17] Statutes
Plain Language; Plain, Ordinary, or Common Meaning

Statutes
Legal terms; legal meaning

Courts typically define words according to their ordinary meanings when interpreting statutes, but that general rule yields when a word or phrase has a technical meaning within the law.

Cases that cite this headnote

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000021 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000005 of 000078

[18] Health
Preemption
States
Particular cases, preemption or supersession

State law is contrary to and thus preempted by Health Insurance Portability and Accountability Act's (HIPAA) privacy rule only if it would be impossible for a covered entity to comply with both the state requirement and the rule, or the former is an obstacle to accomplishing the full purposes and objectives of HIPAA's administrative simplification provisions. 45 C.F.R. § 160.203.

Cases that cite this headnote

[19] Health
Preemption
States
Particular cases, preemption or supersession

If a state law contrary to Health Insurance Portability and Accountability Act's (HIPAA) privacy rule requires a more stringent standard of privacy, HIPAA's preemption provisions are inapplicable and state law controls. 45 C.F.R. § 160.203.

Cases that cite this headnote

[20] Pretrial Procedure
Discovery methods and procedure

Voluntary ex parte contacts with fact witnesses are a permissible form of informal discovery absent some limitation found outside the discovery rules.

Cases that cite this headnote

[21] Privileged Communications and Confidentiality
Physician-Patient Privilege

No testimonial privilege existed for communications made between patient and her treating physicians for the purpose of medical treatment, for purposes of determining whether physician, the defendant against whom patient brought medical malpractice action, could conduct ex parte interviews of patient's treating physicians as part of the informal pretrial discovery process.

Cases that cite this headnote

[22] Privileged Communications and Confidentiality
Physician-Patient Privilege

No testimonial privilege exists for communications made between a patient and physician for the purpose of medical treatment.

Cases that cite this headnote

[23] Pretrial Procedure
Discovery methods and procedure

American Medical Association's Code of Medical Ethics did not carry the force of law to prohibit physician from conducting ex parte interviews of patient's treating physicians as part of the informal pretrial discovery process, in medical malpractice action; although the Code was promulgated under statutory authority and violations of the Code were punished by the Board under statutory authority, that tangential statutory basis was insufficient to give the Code the force of law and create an all-encompassing right to confidentiality by patients. Ky. Rev. Stat. Ann. §§ 311.565(1)(j), 311.595.

Cases that cite this headnote

[24] Pretrial Procedure
Discovery methods and procedure

No contrary state law existed to afford patient privacy protections greater than those provided by the privacy rule of Health Insurance Portability and Accountability Act (HIPAA), which did not prohibit physician from conducting ex parte interviews of patient's treating physicians as part of the informal pretrial discovery process, in medical malpractice action. 45 C.F.R. § 164.502(a)(1); 45 C.F.R. § 164.512(e)(1)(i)-(ii).

Cases that cite this headnote

[25] Pretrial Procedure
Discovery methods and procedure

Trial court's order permitting physician to conduct ex parte interview of patient's treating physicians as part of the informal pretrial discovery process in medical malpractice action, while leaving the treating physicians' participation in the ex parte interview and the disclosure of patient's medical information subject to the doctors' discretion, did not necessarily violate the privacy rule of Health Insurance Portability and Accountability Act (HIPAA), which required disclosure of medical information to occur in response to a subpoena, discovery request, or other "lawful process"; trial court's order did nothing to displace the duty of privacy placed on health care providers by HIPAA's privacy regulations, and the order did not supplant or alter the duty placed on the physicians possessing patient's protected health information. 45 C.F.R. § 164.502(a)(1); 45 C.F.R. § 164.512(e)(1)(i)-(ii).

Cases that cite this headnote

*142 ON APPEAL FROM COURT OF APPEALS, CASE NO. 2014–CA–000456–OA, JEFFERSON CIRCUIT COURT NO. 09–CI–007369

Attorneys and Law Firms

Counsel for Appellant: Eric M. Lamb, Lamb & Lamb, PSC, Erwin A. Sherman, Sherman and Osborne

Appellee: Judge Arch Cox McKay Chauvin, Jefferson Circuit Court, Division 8

Counsel for Real Party in Interest, Dr. Frank P. Castro, D/B/A Palo Alto Spine, LLC: Donald Kenneth Brown, Jr., Casey Alan Krill, Mark Edward Hammond, Robert Clayton Veldman, O'Bryan, Brown & Toner, PLLC

Counsel for Amicus Curiae Kentucky Justice Association: H. Philip Grossman, Grossman & Moore, PLLC, Paul A. Casi, II, Jeffrey Wayne Adamson, Paul A. Casi, II, P.S.C., Kevin Crosby Burke

Counsel for Amicus Curiae Kentucky Defense Counsel: Bradley A. Case, Dinsmore & Shohl, LLP

Opinion

OPINION OF THE COURT BY CHIEF JUSTICE MINTON

**1 Litigants have historically been permitted to conduct ex parte[1] interviews with *143 fact witnesses. These interviews serve various purposes but are mainly directed at investigating the facts of the case and curtailing litigation costs by allowing litigants to gauge the usefulness of a witness's potential testimony by interviewing the witness before paying for a discovery deposition.

Whether this time-honored method of informal discovery extends to the plaintiffs treating physicians and what role the federal Health Insurance Portability and Accountability Act of 1996 (HIPAA) plays in regulating these interviews has been an issue across the country for some time. And the issue has come before many of Kentucky's circuit courts and the federal courts in both the Western and Eastern Districts of Kentucky. Today we decide conclusively whether litigants in Kentucky may, and under what conditions, engage in ex parte interviews with treating physicians.

In an original action before the Court of Appeals, Stacey Caldwell, the plaintiff in the underlying medical-malpractice action, sought a writ of prohibition preventing the trial court from enforcing its order permitting counsel for Dr. Frank Castro,[2] the defendant in the underlying action, to contact Caldwell's treating physicians ex parte. Importantly, no provision in the trial court's order compelled any physician to have contact with Castro's counsel or disclose any information, nor did it authorize disclosure of protected health information; whether or not to disclose any information was left to the treating physician's discretion. Before the Court of Appeals, Caldwell argued that because she was entitled to confidentiality in her communications with her healthcare providers, the trial court's order permitting ex parte contact with those providers was in error.

The Court of Appeals declined to issue a writ because it found Caldwell did not have a right to confidentiality in her communications with her treating physicians. As a result, the Court of Appeals concluded the trial court's order was not erroneous.

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

Presiding Judge: HON. STEVEN DANIEL COMBS (635210) B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000022 of 000098 EXH : 000006 of 000078

**2 Based on our review of Kentucky and federal law, we conclude that no law inhibits litigants from seeking ex parte interviews with the opposing party's treating physicians. But the disclosure of medical information during those ex parte meetings is controlled by HIPAA. For disclosure to be permitted, the party must first obtain a court order authorizing disclosure in a voluntary ex parte interview. Upon review of the instant order, it is clear the trial court declined to authorize ex parte disclosure of Caldwell's health information thus failing to satisfy HIPAA. But because the trial court is explicit in its refusal to authorize ex parte disclosures, we find it unnecessary to issue an extraordinary writ.

## I. FACTUAL AND PROCEDURAL HISTORY.

The underlying litigation stems from a discectomy Castro performed on Caldwell. *144 Caldwell had a long history of spinal problems predating the procedure, but she alleges the surgery was unnecessary and negligently performed. Caldwell claims she suffered painful nerve damage and restricted mobility because of this surgery.

During the course of discovery and after obtaining Caldwell's medical records, Castro moved the trial court to enter a qualified protective order permitting him to make ex parte contacts with Caldwell's healthcare providers. Following a hearing, the trial court concluded there is no bar prohibiting Castro's counsel from contacting ex parte Caldwell's healthcare providers because they are ultimately fact witnesses and the information they possess is not subject to an evidentiary privilege. The trial court's order [3] limited the scope of Castro's counsel's permissible ex parte contacts to those physicians who treated Caldwell "for the injuries that are the subject matter of this litigation" but expressly declined to authorize disclosure of Caldwell's health information. The court's order also explicitly stated it was neither requiring any physician to speak with Castro nor compelling disclosure of any information to Castro, noting the "treating physicians are free to accept or decline counsel's request as they see fit."

Caldwell filed a petition for a writ of prohibition and a motion for intermediate relief [4] with the Court of Appeals. In her petition, Caldwell argued, as she does now, she was entitled to a writ because the trial court's order violated the physician-patient privilege, her right to confidentiality in her communications with her doctors, and the order was not authorized by federal law. The Court of Appeals denied her motion for intermediate relief without discussion. It also omitted analysis of the writ prerequisites and proceeded directly to the merits of her allegation of error.

Upon reaching the merits, the Court of Appeals declined to issue a writ and presented two main reasons for so holding. First, it concluded no Kentucky law prohibits the trial court from authorizing ex parte correspondence with nonexpert treating physicians. And second, the Court of Appeals reasoned the trial court's order did not violate any right Caldwell may have to privacy of her medical information because the order does not compel any disclosure. The court declined to address the impact of HIPAA's privacy regulations on Castro's ability to communicate ex parte with Caldwell's physicians, deciding "the order of the trial court relied solely upon Kentucky authority."

**3 Caldwell appeals that denial to this Court as a matter of right. [5]

## II. ANALYSIS.

[1] [2] [3] [4] The issuance of a writ is an extraordinary remedy that is disfavored by our jurisprudence. [6] We are, therefore, "cautious and conservative both in entertaining *145 petitions for and in granting such relief." [7]

> A writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted. [8]

[5] Caldwell makes no proper argument that the trial court was without jurisdiction to enter the challenged discovery order. [9] She seeks the second class of writ. And when seeking a writ of the second class, a petitioner must first show she has no adequate remedy by appeal or otherwise. If this requirement can be met, the petitioner must then show she will suffer great injustice or irreparable harm absent the

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works. 

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000023 of 000098
EXH : 000007 of 000078

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000024 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000008 of 000078



issuance of a writ. This has consistently been defined as injury of a "ruinous nature." [10]

[6] The latter requirement is not absolute, however. In what has come to be known as the "certain-special-cases exception," our precedent allows waiver of the great injustice and irreparable harm element in cases where the instant harm may not rise to the level of irreparable but a "substantial miscarriage of justice will result if the lower court is proceeding erroneously, *and* correction of the error is necessary and appropriate in the interest of orderly judicial administration." [11]

[7] [8] [9] [10] [11] Proof of the elements described above is a condition precedent to contemplation of the merits underlying a writ petition. Strict adherence to these prerequisites "is a practical and convenient formula for determining, *prior to deciding the issue of alleged error,* if petitioner may avail himself of this remedy." [12] These strictures evince a reluctance to reach the merits of alleged errors in writ proceedings. Indeed, the test that must be satisfied before the Court may analyze the alleged error was designed expressly to limit "the number of writ cases that proceed to the merits of the controversy" [13] because writ proceedings "necessitate an abbreviated record which magnifies the chance of incorrect rulings that would prematurely and improperly cut off the rights of litigants." [14] It bears repeating that the issuance of a writ is inherently discretionary. Even if the requirements are met and error found, the grant of a writ remains *146 within the sole discretion of the Court. [15]

**4 [12] [13] Because of the discretion inherent in granting a writ, we review the decision of the Court of Appeals for an abuse of discretion. When questions of law or findings of fact made by the Court of Appeals en route to their ultimate decision are raised, however, we review de novo and for clear error, respectively. The Court of Appeals in the present case has omitted analysis of the writ prerequisites in its opinion denying Caldwell's petition for a writ, opting instead to proceed directly to the merits. [16] So we review the availability of the writ remedy de novo.

Caldwell's argument in favor of her entitlement to an extraordinary writ is grounded in state-law principles. She claims the trial court's order permitting Castro's counsel to communicate ex parte with her treating physicians was error because: communications with treating physicians are, or should be, treated as privileged; the American Medical Association's Code of Medical Ethics carries the force of law in prohibiting nonconsented disclosure of confidential information; Kentucky case law prohibits trial courts from authorizing defendant's counsel to communicate with a plaintiff's treating physicians ex parte; and the trial court's order is "confusing and misleading."

Caldwell also argues, at least initially, that HIPAA does not create an entitlement to ex parte contacts for defendants. It is not until the last page of her reply brief that Caldwell makes a one-paragraph argument that HIPAA prohibits the ex parte meetings she seeks a writ to prevent. The amicus on her behalf, the Kentucky Justice Association, took up the HIPAA argument and presented us with a comprehensive argument explaining why, in its view, the trial court's order violates HIPAA. Castro, of course, refutes Caldwell's allegations of error; and although he presents a capable argument regarding HIPAA's impact on ex parte communications with nonparty treating physicians, Kentucky Defense Counsel, Inc., supplied an amicus brief buttressing Castro's cause regarding HIPAA.

We have often held discovery disputes satisfy the no-adequate-remedy-by-appeal requirement. Cases so holding often focus on the inability of information disclosed under an erroneous discovery order to be recalled. [17] In those cases, "[t]he injury suffered ... will be complete upon compliance with the order and such injury could not thereafter be rectified in subsequent proceedings in the case." [18]

This case is no different. Although Caldwell's main objection is with the form of discovery permitted by the trial court's order, the gravamen of her complaint is that through ex parte discovery—which, by definition, takes place beyond the watchful eye of opposing counsel or the court—confidential or otherwise undiscoverable information, or information protected *147 by federal law, may be disclosed without Caldwell's consent and to her detriment. If that were to happen—and we must presume it will happen when assessing the availability of the writ remedy [19]—Caldwell would be left without an avenue of appellate recourse to rectify her grievance. [20]

**5 We also find this issue to satisfy the certain-special-cases exception because its resolution is necessary to ensure the orderly administration of justice in the Commonwealth. This exception has been reserved for "first-impression

Presiding Judge: HON. STEVEN DANIEL COMBS (635210) B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000025 of 000098
EXH : 000009 of 000078

questions[ ] bearing importantly on the public administration of the law or on a party's fundamental rights."[21] We find this to be a Case of the former and conclude it is particularly suited to application of this exception because of the unique procedural posture in which this issue typically will arise.

This case presents our appellate courts with their first opportunity to address this issue,[22] even though the bulk of HIPAA's privacy regulations were promulgated nearly fifteen years ago.[23] Our inability to address this issue before today notwithstanding, it has been percolating through state courts,[24] federal district courts,[25] and academic circles[26] for a decade. And the issue has arisen in the trial courts of the Commonwealth. The parties have provided citation to Kentucky courts that have struggled to address this exact issue in discovery orders.

Discovery disputes, as a general matter, come before this Court nearly always via writ petitions. The very nature of informal *148 discovery is likely to increase this trend because restrictions on ex parte communications are even less likely to be challenged on appeal once final judgment is reached. It stands to reason that the only manner in which this issue may reach this Court is through a writ petition. We find it necessary, therefore, to reach the merits of this issue to ensure that the decisions of our trial courts concerning ex parte contacts with treating physicians comport with Kentucky and federal law;[27] otherwise, those decisions may continue to evade appellate review. Caldwell's instant petition presents a claim for which a writ is an appropriate remedy at this Court's discretion pending an analysis of the merits.[28]

**6 Turning to the merits of Caldwell's writ petition, we will first address HIPAA's impact because, as we discuss below, the HIPAA analysis necessarily subsumes the state-law arguments championed by Caldwell.

**A. HIPAA Does not Prohibit Ex Parte Interviews with Treating Physicians, but it Does Regulate the Protected Health Information to be Disclosed in Ex Parte Interviews.**

[14] [15] [16] Congress enacted HIPAA with the primary purpose of making health insurance more "portable" to prevent the denial of insurance coverage for preexisting conditions when employees change jobs and, in so doing, change health-insurance providers.[29] As part of HIPAA's expansive reform, Congress charged the Secretary of the United States Department of Health and Human Services (HHS) with promulgating regulations "with respect to the privacy of individually identifiable health information" if Congress had not done so three years after HIPAA's enactment.[30] When Congress failed to act, HHS adopted, after notice and public comment, privacy regulations ensuring patients' privacy as medical records began their move to storage in a digital format.[31]

The cornerstone of HIPAA's privacy rule presents a broad prohibition on the disclosure of medical information, providing that "[a] covered entity or business associate may not use or disclose protected health information, except as permitted or required by this subpart."[32] A *covered entity* is defined to include health plans; health care clearinghouses; and health care providers, such as physicians and hospitals. *149 [33] *Protected health information* includes, with exceptions irrelevant here, "individually identifiable health information" transmitted or maintained in whatever form or medium.[34] *Health information* includes information "whether oral or recorded in any form or medium" that pertains to the physical health of an individual.[35]

HIPAA provides for *mandatory* disclosure of protected health information by a covered entity under only two circumstances: (1) upon a request by an individual for her own health information or (2) when requested by the Secretary of HHS to investigate HIPAA compliance.[36] *Permissible* uses and disclosures of protected health information are more numerous and reside in C.F.R. 164.502(a)(1).[37] Among the permissible disclosures authorized by HIPAA, is the "litigation exception," which permits disclosure of protected health information "in the course of any judicial or administrative proceeding" either "[i]n response to an order of a court of administrative tribunal" or "[i]n response to a subpoena, discovery request, or other lawful process," so long as additional safeguards are met.[38]

**7 Noticeably absent from the sea of HIPAA privacy regulations is any mention of ex parte communications between counsel and a covered entity.[39] In fact, the privacy rule does not purport explicitly to regulate the permissibility of ex parte communications or interviews as an informal discovery tool.[40] But the absence of express reference to ex parte interviews does not render HIPAA inapplicable to regulate such contacts. Because HIPAA, by its terms, applies to the oral disclosure of health information, it has routinely

Filed Case: 7:17-cv-00046-KKC-EBA 15-CI-00778 08/12/2016 Doc #: 1-1 Anna Pinson Spears, Pike Circuit Clerk Filed: 03/08/17 Page: 395 of 906 - Page ID#: 405

been held that the disclosure of protected health information in ex parte interviews falls within the ambit of HIPAA.[41]

The divergence of judicial opinion focuses on what impact HIPAA and its litigation exception have on the continued viability of ex parte contacts with treating physicians.[42] Some courts have concluded, *150 and Caldwell and her amicus have argued, that the judicial exception is wholly inapplicable to informal ex parte discovery because its covert nature renders it outside "the course of any judicial or administrative proceeding," which is a prerequisite for disclosure under that section. The contrary analysis, promoted by Castro and his amicus, reasons that HIPAA does not prohibit ex parte interviews with treating physicians, it "merely superimposes procedural prerequisites" to authorize disclosure of protected health information.

The leading case espousing the former position is *State ex rel. Proctor v. Messina*, decided by the Supreme Court of Missouri.[43] In that case, the court narrowly defined the litigation exception's leading language: "in the course of a judicial ... proceeding."[44] As a result, the court concluded that disclosure under that exception "must be under the supervisory authority of the court either through discovery or through other formal court procedures."[45] Because the Missouri Rules of Civil Procedure do not provide a mechanism for courts to oversee ex parte communications, the court held 45 C.F.R. § 164.512(e), which permits disclosures "in the course of judicial proceedings, does not apply to a meeting for ex parte communications."[46]

**8 The opposing viewpoint may be found in the Court of Appeals of New York's decision in *Arons v. Jutkowitz*.[47] The court in *Arons* concluded that "the Privacy Rule does not prevent this informal discovery from going forward, it merely superimposes procedural prerequisites."[48] Those procedural prerequisites, the court explained, include satisfying one of the two prongs of the litigation exception in order to permit disclosure of protected health information by the covered entity.[49] This reasoning has been adopted by the Supreme Court of Michigan, holding that ex parte interviews were permitted under HIPAA and disclosure of protected health information permitted so long as the second prong of the litigation exception was satisfied by provision of "satisfactory assurance" that efforts have been made to obtain a qualified protective order.[50]

We find more persuasive the New York court's position. We do not define "in the course of any judicial ... proceeding" as narrowly as the *Messina* court in light of the Secretary of HHS's commentary in the Federal Register pertaining to 45 C.F.R. § 164.512, which explains the Privacy Rule *151 was "not intended to disrupt current practice whereby an individual who is a party to a proceeding and has put his or her medical condition at issue will not prevail without consenting to the production of his or her protected information."[51] Viewing HIPAA's privacy regulations as "merely superimpos[ing] procedural prerequisites" over informal ex parte discovery is the most appropriate analytical approach. If a party satisfies the superimposed procedural prerequisites by fulfilling the litigation exception's requirement, the resulting ex parte contact has been drawn well within "the course of [the] judicial ... proceeding" as required by HIPAA.

Before moving on, it is worth taking a close look into the procedural prerequisites imposed by HIPAA. For an ex parte interview with a treating physician to comply with HIPAA, it must fall within the litigation exception. The text of this provision reads:

(1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:

(i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or

(ii) In response to a subpoena, discovery request, *or other lawful process*, that is not accompanied by an order of a court or administrative tribunal, if:

(A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

(B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000026 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000010 of 000078

secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.[52]

**9 Where our analysis differs from that of the courts cited above comes in our definition of the emphasized language "or other lawful process." Both *Arons* and *Holman* defined this phrase broadly enough to encompass an ex parte interview and held that compliance with this second prong—providing "satisfactory assurance" that the subject of the protected health information was notified of the request or that a qualified protective order had been sought—was adequate to meet HIPAA's superimposed procedural prerequisites. We do not define *lawful process* so broadly.

[17] We typically define words according to their ordinary meanings when interpreting statutes, but that general rule yields when a word or phrase has a technical meaning within the law.[53] And the *152 latter is the case here. Black's Law Dictionary defines *process* as "[t]he proceedings in any action or prosecution," or a "summons or writ, esp. to appear or respond in court."[54] This entry concludes by noting the *process* as defined above is also termed *legal process*.

We find the second definition of *process* to be applicable here because its definition must be informed by the items that precede it. Defining *lawful process* as "a summons or writ, esp. to appear or respond in court" is in keeping with the general tenor of that section that also includes subpoenas and discovery requests. The common-sense definition of *lawful process* —any action that is not in violation of law —is too far-reaching when considering the balance of the provision. Applying this definition of *lawful process*, we are constrained to conclude that ex parte interviews do not fall within this strict definition of *lawful process*. Even though we have concluded that ex parte interviews are conducted within the course of a judicial proceeding, they are still decidedly informal and entirely voluntary, unbefitting of the designation of lawful process ascribed to formal discovery tools. Therefore, we hold that protected health information may only be disclosed under HIPAA's litigation exception if the exception's first prong is satisfied by order of the trial court.

This interpretation of the litigation exception is also consistent with our reliance on trial courts as gatekeepers of discovery[55] —even informal discovery, when appropriate. Under our construction of the litigation exception, for the ex parte disclosure of protected health information to comport with HIPAA, a party must first seek authorization from the trial court. If we were to adopt the application of the litigation exception as contemplated in *Arons*, disclosure of protected health information would be permitted under HIPAA, yet, still within the discretion of treating physicians upon counsel's provision of "satisfactory assurance" that: "reasonable efforts" have been made to *notify* the subject of the protected health information of the request; or a qualifying protective order has been *sought*.[56] Notice need not have been achieved nor a qualified protective order obtained to satisfy the second prong of the litigation exception as construed by *Arons* —"sufficient assurance" of "reasonable efforts" to provide notice or merely seeking a qualified protective order would suffice. Indeed, Castro argues he has met this low standard by obtaining the order at issue, even though by its own terms the order withholds authorization for the disclosure of protected health information and does not meet the required protective standards outlined in 45 C.F.R. § 165.512(e)(1)(v). To interpret the litigation exception as allowing disclosure of protected health information under the second prong in contravention of an order declining to authorize disclosure under the first prong undercuts the discretion vested in trial courts.

**10 *153 We conclude HIPAA does not prohibit ex parte interviews, but its strictures do regulate disclosure of protected health information during their course. We further hold HIPAA's procedural prerequisites to disclosure of protected health information may only be satisfied by order of a court or administrative tribunal[57] because ex parte interviews do not come within the meaning of *lawful process* as used in 45 C.F.R. § 165.512(e)(1)(ii).

[18] [19] But our analysis does not end here. HIPAA's privacy rule contains a preemption clause whereby any "contrary" provision of state law is preempted absent the application of an enumerated exception.[58] State law is "contrary" to HIPAA "only if it would be impossible for a covered entity to comply with both the state requirement and the Rule, or the former is an obstacle to accomplishing the full purposes and objectives of HIPAA's 'administrative simplification' provisions."[59] But if a "contrary" law requires a *more stringent* standard of privacy, HIPAA's preemption provisions are inapplicable and state law controls. So we must undertake an analysis of Kentucky law to determine what law controls the instant dispute.

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000027 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000011 of 000078

**B. Kentucky Law Places no Restrictions on Voluntary Ex Parte Interviews with Nonexpert Treating Physicians.**

[20] There is a dearth of Kentucky law dealing with litigants' ability to confer ex parte with nonparty fact witnesses. And the cases that do broach this topic do so upon the allegation that an ex parte contact was rendered impermissible only by way of some express rule.[60] But what we can glean from those cases is that their analysis begins—without fail—with the presumption that ex parte contacts with willing fact witnesses are permissible absent express limitation. Although these contacts are not mentioned in our civil rules pertaining to discovery,[61] those rules are not meant to be exhaustive and do not express any intent to foreclose the "time honored"[62] tool of informal discovery that is the ex parte interview.[63] Also, to disallow *154 parties equal access to an effective and inexpensive method of establishing operative facts would conflict with the purpose our civil rules were meant to serve.[64] So we begin our analysis of Kentucky law as it pertains to ex parte communications with treating physicians by accepting the same premise impliedly accepted in our precedent and by the parties in the present case: voluntary ex parte contacts with fact witnesses, are a permissible form of informal discovery absent some limitation found outside our discovery rules.

**11 Caldwell argues such a limitation prohibiting ex parte communications with treating physicians may be derived from multiple sources of Kentucky law. She first alleges the existence of a physician-patient privilege operates to limit the viability of ex parte communications with treating physicians, or, alternatively, that these situations should be treated as if a privilege does exist. Next, she claims that the American Medical Association's Code of Medical Ethics, adopted by the Kentucky State Board of Medical Licensure under its statutory authority, carries the force of law in prohibiting nonconsented disclosure of confidential information. Lastly, she argues that Kentucky case law prohibits defendants from contacting ex parte nonparty treating physicians.

*1. Kentucky Does not Recognize a Physician–Patient Privilege, and We Decline to Act as Though One Does Apply Here.*

[21] Caldwell's first argument—that her communications with her physician are privileged and thereby protected from ex parte disclosure under Kentucky law—is disingenuous at best. This argument runs headlong into decades of precedent and ignores the unambiguous text of our rules of evidence pertaining to privilege.[65]

[22] For better or worse, our jurisprudence has been unwavering in its rejection of the patient-physician privilege.[66] We see no reason to engage in a lengthy analysis of this settled issue of law. All privileges, unless otherwise created by statute,[67] are explicitly stated in our rules of evidence. The physician-patient privilege is conspicuously absent from those provisions.[68] And our common law did not recognize such a privilege.[69] We cannot articulate *155 it more clearly than the late Justice Keller did in his concurrence in *Stidham v. Clark*, so we will not attempt to: "[N]o *testimonial privilege* exists in Kentucky for communications made between a patient and physician for the purpose of medical treatment."[70]

Having found no privilege to exist, Caldwell argues, in the alternative, that we should nonetheless treat her communications with her physicians as though they are privileged. We readily accept that the communications between a patient and her physician are sensitive in nature. That said, our court system has operated relatively smoothly since its inception without the privilege Caldwell seeks. We have heretofore not identified a cognizable right to a privilege in medical communications and again decline to do so today.

It is high time litigants abandon this tired argument. Our disinclination to recognize a physician-patient privilege or to apply the faux privilege that Caldwell argues for in the alternative is well documented. Any change that will see a physician-patient privilege recognized in Kentucky will come by way of a change to our rules of evidence or through the legislature's authority to create privileges recognized in *Stidham*.

*2. The American Medical Association's Code of Medical Ethics Does not Carry the Force of Law to Render Ex Parte Contacts with Physicians Impermissible.*

**12 [23] Caldwell next argues that the confidentiality provisions contained in the American Medical Association's Code of Medical Ethics guarantees her right to confidentiality because the Kentucky Board of Medical Licensure adopted the Code of conduct under authority granted by statute and also possesses statutory authority to levy punishment for ethical violations.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000028 of 000098
EXH : 000012 of 000078

Filed Case: 7:17-cv-00046-KKC-EBA Doc #: 1-1 Filed: 03/08/17 Page: 398 of 906 - Page ID#: 408
15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

The Kentucky Board of Medical Licensure is granted statutory authority to "promulgate a code of conduct governing the practice of medicine and osteopathy, which shall be based upon generally recognized principles of professional conduct."[71] The Board is also statutorily afforded the concomitant authority to discipline practitioners within its purview for ethical violations.[72]

To satisfy its statutory grant of authority, the Board adopted the AMA Code of Medical Ethics. The provision of the Code relevant to the instant proceedings reads:

> Confidentiality.The information disclosed to a physician during the course of the relationship between physician and patient is confidential to the greatest possible degree. The patient should feel free to make a full disclosure of information to the physician in order that the physician may most effectively provide needed services. The patient should be able to make this disclosure with the knowledge that the physician will respect the confidential nature of the communication. The physician should not reveal confidential communications or information without the express consent of the patient, unless required to do so by law.[73]

*156 This provision clearly creates a professional duty that requires healthcare providers to maintain the confidentiality of patient information. But Caldwell overstates the weight of the Code of Medical Ethics. It is true that the Code was promulgated under statutory authority and that violations of the Code are punished by the Board under statutory authority. But that tangential statutory basis is insufficient to give the Code the force of law and create an all-encompassing right to confidentiality by patients.

Indeed, other ethical codes policing the medical community—even one adopted jointly with the Kentucky Bar Association—have been held to lack the weight of law.[74] "The Code professes to be an ethical guide, not an authority binding the courts."[75] We are not alone in our conclusion that ethical standards levied within the medical community are not binding on courts.[76] Further, counsel's ability to seek an ex parte interview with a physician bound by the Code does not prevent the physician from abiding by his professional duty of confidentiality.

**13 A physician's ethical duty of confidentiality, even if promulgated by a professional body under statutory authority, does not carry the weight of law to limit a litigant's ability to engage in ex parte interviews with physicians. Admittedly, the ethical duty may restrain the physician's willingness to agree to such an interview; but it in no way prohibits a party to litigation from requesting one.

*3. Kentucky Case Law Does not Preclude Litigants from Interviewing Ex Parte Treating Physicians.*

[24] For her last argument, Caldwell cites *Geary v. Schroering*[77] as the preeminent Kentucky case barring ex parte contact with treating physicians. As with her previous state-law arguments, Caldwell again overstates the scope of the law she cites.

In *Geary*, the trial court ordered the personal-injury plaintiff to sign a blank medical authorization allowing the "unrestricted release" of *all* her medical information to the defendant.[78] The Court of Appeals, in a writ proceeding, likened the blank authorization to an ex parte subpoena.[79] Such ex parte subpoenas, the Court of Appeals noted, were forbidden by *Munroe v. Kentucky Bar Association.*[80]

The Court of Appeals went on in *Geary* to extol the virtues of our civil rules by explaining that the medical records sought by the defendant may be discovered through traditional discovery methods, such as formal subpoenas and depositions.[81] The court further stressed the importance of "adversarial safeguards" in *157 the discovery process.[82]

The tenor of the opinion of the Court of Appeals in *Geary* appears to support Caldwell's position, but *Geary's* analysis diverges from the instant issue by contemplating ex parte subpoenas. The case at hand contains no suggestion of the use of ex parte subpoenas, nor can it rightfully be said that a litigant requesting an ex parte interview (or an order permitting the defendant to make such a request) is akin to an ex parte subpoena. By their very nature, informal ex parte interviews are voluntary and, thus, unlike the ex parte use of subpoena power.

Caldwell also takes issue with the trial court and the Court of Appeals citing *Davenport v. Ephraim McDowell Memorial Hospital, Inc.*,[83] as support for the contested order because its holding was premised upon an earlier version of CR 26.02. In *Davenport*, the trial court entered an order permitting a medical-malpractice defendant to request an ex parte meeting with the plaintiff's treating physicians, whom the plaintiff had

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk
Presiding Judge: HON. STEVEN DANIEL COMBS (635210) B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000029 of 000098
EXH : 000013 of 000078

enlisted as expert witnesses ahead of trial. [84] On appeal, the Court of Appeals concluded the trial court's order was proper, seizing on the language in the then-existing version of CR 26.02(4)(a)(ii) that permitted discovery from expert witnesses "by other means" not enumerated by the civil rules at the discretion of the trial court. [85]

We agree that discussion of *Davenport* is misplaced. The 2004 amendment to CR 26.02 removed the "by other means" language relied upon by the Court of Appeals in holding the trial court's order valid. For this reason, *Davenport's* analysis of ex parte communications with expert witnesses is outdated.

But simply because the language that authorized the court's order in *Davenport* has been removed, that does not shift *Davenport* into a tacit abolition of litigants' ability to seek ex parte meetings with the opposing party's physicians. One crucial fact renders *Davenport* inapplicable as an indictment against ex parte contacts with physicians: it concerns physicians retained as expert witnesses. Once retained as experts, CR 26.02(4)—both the version extant in *Davenport* and the iteration currently in force—lists exclusively the manner in which discovery may be obtained. [86] So removal of the language permitting authorization of discovery "by other means" vitiates ex parte interviews with physicians retained as *expert witnesses*, but no such language limits discovery from nonexpert fact witnesses to the formal methods authorized in our Civil Rules.

**14 The case that we find most applicable to the present controversy evaded citation by both the trial court and the Court of Appeals. In *Roberts v. Estep*, [87]—the only case touching on this issue to be decided by this Court—we held that no Kentucky law prohibits a defendant from contacting ex parte the plaintiffs treating physicians. [88] Caldwell attempts to undercut the strength of this holding noting *Roberts* was a workers' compensation case and KRS 342.020 requires waiver of any privilege or *158 confidentiality when filing claim. [89] Caldwell correctly states the law but not its impact on the Court's decision.

*Roberts* does not cite to KRS 342.020 and waiver, compulsory or otherwise. The Court concluded that the defendant's ex parte contact with plaintiff was not rendered impermissible by Kentucky law; it did not conclude that waiver under KRS 342.020(8) authorized the defendant's contact. Had the Court in *Roberts* based its decision on KRS 342.020, we think it would have said so. We will not read into the Court's analysis law that is not patent in its opinion.

In support of her argument against the trial court's order, Caldwell cites statutory and case law from various jurisdictions that prohibit ex parte contacts with treating physicians. While we respect the decisions of our sister states, we nonetheless find their citation unpersuasive. Most notably this is because most of the cited decisions were based on state laws that have no counterpart in Kentucky law—namely the physician-patient privilege and statutes explicitly prohibiting ex parte interviews with treating physicians. That other states found it prudent to adopt a physician-patient privilege or to prohibit by statutory enactment the type of contacts Caldwell currently challenges does little to alter our analysis of Kentucky law.

Upon conclusion of our analysis of Kentucky law, and having addressed each of Caldwell's state-law arguments, we have unearthed no law that limits a litigant's ability to conduct informal ex parte interviews when the fact witness to be interviewed is a treating physician. [90] They are like any other fact witness in the eyes of the law, and litigants may request voluntary ex parte interviews with nonexpert treating physicians as they please. But Kentucky law does not create an entitlement or right to conduct ex parte interviews with treating physicians.

So Kentucky law cannot be "contrary" to HIPAA as pertaining to ex parte interviews with treating physicians because our law speaks to their viability. [91] We conclude, therefore, that there are no limitations on a defendant's ability to request an ex parte interview with the plaintiff's treating physician. But the physician's ability to disclose the plaintiffs protected health information in an ex parte correspondence is regulated by HIPAA, so disclosure may only be permitted by order of the trial court satisfying 45 C.F.R. § 164.512(e)(1)(i). Like with all other discovery matters, trial courts will remain the gatekeepers and may grant or deny a party's request for a HIPAA-compliant order authorizing ex parte disclosure of protected health information at their discretion. [92]

***159 C. The Challenged Order Does not Satisfy HIPAA's Procedural Requirements for the Disclosure of Protected Health Information; but Because the Order Expressly Withholds the Necessary Authorization, a Writ Need not Issue.**

Presiding Judge: HON. STEVEN DANIEL COMBS (635210) B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000030 of 000098
EXH : 000014 of 000078

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000031 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000015 of 000078

**15 [25] Having determined the law applicable to ex parte interviews with treating physicians, we must now apply that law to the facts at hand. After little more than a cursory review of the challenged trial court order, it becomes manifest that the order does not satisfy the requirements of HIPAA to permit disclosure of protected health information during ex parte interviews.

As addressed above, for disclosure of protected health information to comply with HIPAA, a litigant must first obtain an order authorizing disclosure under 45 C.F.R. § 164.512(e)(1)(i). The instant order does not meet this requirement. In fact, the order acknowledged the need for authorization to permit disclosure of Caldwell's protected health information by her physicians yet declined to authorize disclosure.

The present order has done nothing more than maintain the status quo. It has effectively, and correctly, stated the status of the law currently: defense counsel may seek an ex parte interview with Caldwell's treating physicians, but those physicians may not disclose her protected health information without facing HIPAA sanctions. Indeed, the order states as much—"the treating physician may be unable ... to speak with counsel absent specific authorization from the [c]ourt permitting him to do so. The [c]ourt is vested with the discretion to provide such authorization. However, the [c]ourt is not inclined to do so in the instant case...."

We decline to exercise our discretion to issue a writ in this instance even though any ex parte disclosure of protected health information would surely violate HIPAA. This injury is too speculative to merit such an extraordinary remedy. The order leaves the treating physicians' participation in the ex parte interview and the disclosure of Caldwell's medical information—if they do choose to undertake the interview—to the doctors' discretion. The harm is not immediate enough to require an extraordinary remedy to rectify Caldwell's potential grievance.

Further, the trial court's order does nothing to displace the duty of privacy placed on healthcare providers by HIPAA's privacy regulations. The order does not supplant or alter the duty placed on the physicians possessing Caldwell's protected health information. The order's authorization of the ex parte contacts that Castro sought was also unnecessary based on our analysis; Castro's counsel did not need the court's blessing to seek an ex parte meeting with Caldwell's physicians. The meetings, even without the challenged order, would be, of course, at the discretion of the physician, just as they are under the order.

Given these circumstances, we find the trial court's order to be an accurate statement of the law as it is presently situated and that any potential HIPAA violation is too speculative to merit extraordinary relief in the form of a writ. So we affirm the decision of the Court of Appeals denying Caldwell's petition for a writ.

## III. CONCLUSION.

Based on the foregoing, we conclude nothing in Kentucky law prohibits defendants from seeking ex parte contacts with nonexpert physicians that treated the plaintiff as if they are ordinary fact witnesses. We similarly conclude that HIPAA does not prohibit ex parte interviews with treating physicians as a tool of informal *160 discovery. That HIPAA does not operate to bar these contacts does not relieve treating physicians of the constraints of HIPAA's privacy regulations. HIPAA controls disclosure of protected health information. Trial courts may satisfy HIPAA and authorize disclosure of the plaintiffs protected health information in an ex parte interview by entering an order that complies with 45 C.F.R. § 164.512(e)(1)(i).

**16 We conclude that the order challenged in the instant proceeding did not comply with 45 C.F.R. § 164.512(e)(1)(i), and any disclosures made during ex parte interviews authorized by the order would be in violation of HIPAA. But the order is explicit in its failure to authorize disclosure and its grant of permission allowing Castro's counsel to seek ex parte interviews with Caldwell's physicians was not necessary to authorize this practice. So we find the challenged order to be nothing more than an accurate recitation of the law pertaining to ex parte interviews with the opposing party's treating physicians and does not merit an extraordinary writ of prohibition.

All sitting. All concur. Keller, J., concurs by separate opinion in which Barber and Noble, JJ., join.

KELLER, J., CONCURRING:

I concur with the result of the majority opinion but write separately because I believe that it is time for Kentucky to adopt a general physician-patient privilege. As the majority

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000032 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000016 of 000078

states, "We have heretofore not identified a cognizable right to a privilege in medical communications and again decline to do so today." That statement is only partially correct. KRE 507 recognizes that communications between a psychotherapist and patient are privileged. A psychotherapist is defined, in part, as "[a] person licensed by the state of Kentucky, or by the laws of another state, *to practice medicine* ... while engaged in the diagnosis or treatment of a mental condition." KRE 507(2)(A) (emphasis added). Thus, Kentucky does recognize that medical communications are privileged as long as they occur within the mental health setting. It is understood that sensitive and highly personal information is exchanged between a patient and his or her psychotherapist. Likewise, a patient being treated by a physician for purely *physical* ailments must reveal sensitive health information in order to facilitate treatment. I can discern no logical reason for the exclusion of medical communications regarding physical health from privilege when communications regarding mental health are privileged.

I note that the other privileges in Article V of the KRE, with the exception of the spousal privilege, prohibit disclosure, not just testimony. Therefore, a general physician-patient privilege should, if similar to the psychotherapist-patient privilege, also prevent disclosure of privileged communications unless a patient places her medical condition into controversy and the information is obtained in conformity with the rules of procedure.

Barber and Noble, JJ., join.

**All Citations**

464 S.W.3d 139, 2015 WL 3653447

Footnotes

1 The law often attaches a negative connotation to communications labeled as ex parte. *See* Black's Law Dictionary 597 (7th ed.1999) (*"ex parte communication:* A generally prohibited communication between counsel and the court when opposing counsel is not present."). Our use of the phrase ex parte throughout this opinion is devoid of those implications contrived from clandestine—and impermissible—communications between an attorney and a judge or a party known to be represented by counsel. Instead, we use this phrase in a manner that is true to the basic definition of the Latin phrase, "from or on behalf of one side of the lawsuit," to refer to a meeting between counsel and a fact witness without prior notification to opposing counsel and the court. BRYAN A. GARNER, GARNER'S DICTIONARY OF MODERN LEGAL USAGE 343 (3d ed.2011). Other jurisdictions, as well as the parties and amici presently before us, have routinely referred to these interactions as ex parte without invoking the level of impropriety ordinarily associated with ex parte communications. We do the same.

2 Dr. Castro practices for Palo Alto Spine, LLC.

3 The court's order, although entitled "Qualified Protective Order," is nothing of the sort. The order does not mandate any disclosure and does not require any protective measures to ensure the confidentiality of information discovered pursuant to the order. Although it is a qualified protective order in name, the trial court's order also fails to satisfy HIPAA's requirements for qualified protective orders as outlined in 45 C.F.R. 164.512(e)(1)(v).

4 *See*Kentucky Rules of Civil Procedure (CR) 76.36(4).

5 CR 76.36(7)(a) ("An appeal may be taken to the Supreme Court as a matter of right from a judgment or final order in any proceeding originating in the Court of Appeals."); *see also*Ky. Const. § 115 ("In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court....").

6 *Ridgeway Nursing & Rehab. Facility, LLC v. Lane,* 415 S.W.3d 635, 639 (Ky. 2013).

7 *Bender v. Eaton,* 343 S.W.2d 799, 800 (Ky.1961).

8 *Hoskins v. Maricle,* 150 S.W.3d 1, 10 (Ky.2004).

9 Caldwell made a passing allegation that the trial court was acting outside its jurisdiction in entering the allegedly erroneous discovery order. This argument is presented for the first time in a footnote in Caldwell's reply brief. Aside from the absurdity of arguing that a trial court lacks jurisdiction to enter a discovery order in a pending civil case, Kentucky courts have declined to entertain arguments so introduced. *See Smith v. Commonwealth,* 366 S.W.3d 399, 401 (Ky.2012) (quoting *Milby v. Mears,* 580 S.W.2d 724, 728 (Ky.App.1979) ("[T]he reply brief is not a device for raising new issues....")). Because this issue is not properly before us, we make no further mention of it.

10 *Bender,* 343 S.W.2d at 801.

11 *Id.*

12 *Id.*

13 *Cox v. Braden*, 266 S.W.3d 792, 796 (Ky. 2008).

14 *Interactive Media Entm't & Gaming Ass'n v. Wingate*, 320 S.W.3d 692, 695 (Ky.2010) (internal quotation marks omitted).

15 *Edwards v. Hickman*, 237 S.W.3d 183, 189 (Ky.2007).

16 It is worth noting that this practice has support in our writ jurisprudence. Our precedent authorizes proceeding directly to the merits of a dispute when they are uncomplicated and doing so would promote the end of "judicial economy in limiting the breadth of analysis appellate courts undertake when considering writs." *So. Fin. Life Ins. Co. v. Combs*, 413 S.W.3d 921, 927 n. 20 (Ky.2013). The Court of Appeals used that approach, but we choose the more traditional analytical approach.

17 *See, e.g., Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 810 (Ky.2004) ("[T]here will rarely be an adequate remedy on appeal if the alleged error is an order that allows discovery."); *Bender*, 343 S.W.2d at 802.

18 *Bender*, 343 S.W.2d at 802.

19 *See Commonwealth, Cabinet for Health and Family Servs. v. Chauvin*, 316 S.W.3d 279, 283 (Ky.2010) ("In applying this threshold test, the petitioner's allegations are assumed to be true.").

20 *See Bender*, 343 S.W.2d at 802 ("Once the information is furnished it cannot be recalled."); *Young v. Carran*, 289 S.W.3d 586, 588 (Ky.App.2008) ("This court has recently held that HIPAA does not create a state-based private cause of action for violations of its provisions. We also note that federal courts have uniformly held that HIPAA does not create a private cause of action even at the federal level.") (citations omitted).

We except from this conclusion Caldwell's argument citing the "confusing and misleading" nature of the challenged order. Caldwell *did* have an adequate remedy available to rectify this issue. As the Court of Appeals recognized, "a motion for clarification in the trial court was an available and adequate remedy that precludes extraordinary relief." We agree with the Court of Appeals and conclude that a writ is not available to Caldwell on those grounds.

21 *Inverultra, S.A. v. Wilson*, 449 S.W.3d 339, 349 (Ky.2014).

22 A similar claim was raised before, but the Court of Appeals concluded that the plaintiff's allegation 'that [her treating physician's] ex parte conversations with [the defendant] were violations of both HIPAA and the Kentucky Rules of Medical Ethics' was not timely raised. *See Miller v. Jewish Hosp. Healthcare Servs., Inc.*, 2004-CA-001832-MR, 2005 WL 2469688 (Ky.App. Oct. 7, 2005). This Court denied discretionary review.

23 *See*Standards for Privacy of Individually Identifiable Health Information, 65 Fed.Reg. 82,462–01 (Dec. 28, 2000) (to be codified at 45 C.F.R. pts. 160 & 164).

24 *See, e.g., State ex rel. Proctor v. Messina*, 320 S.W.3d 145 (Mo. 2010) (en banc); *Arons v. Jutkowitz*, 9 N.Y.3d 393, 850 N.Y.S.2d 345, 880 N.E.2d 831 (2007).

25 *See, e.g., Bayne v. Provost*, 359 F.Supp.2d 234 (N.D.N.Y 2005); *Nat'l Abortion Fed'n v. Ashcroft*, 2004 WL 292079 (N.D. Ill. Feb 6, 2004).

26 *See, e.g., Joseph Regalia & V. Andrew Cass, Navigating the Law of Defense Counsel Ex parte Interviews of Treating Physicians*, 31 J. CONTEMP. HEALTH L. & POL'Y 35 (2015); Scott Aripoli, Comment, *Hungry Hungry HIPAA: Has The Regulation Bitten Off More Than It Can Chew By Prohibiting Ex parte Communication With Treating Physicians?*, 75 UMKC L.Rev. 499, 500 (2006).

27 To be sure, this is not to imply that writ petitions will satisfy the certain-special-cases exception simply because they concern a discovery matter. To the contrary, most discovery disputes concern the application of settled principles of law at the discretion of capable trial judges. This case is distinguished from run-of-the-mill discovery writs because if we decline to reach the merits of this issue, trial courts will be left with no precedential guidance going forward.

28 *See Commonwealth v. Peters*, 353 S.W.3d 592, 596 (Ky.2011) (concluding the special-cases exception applied where "the issue in the present case has far-reaching implications regarding pretrial procedure in the Commonwealth").

29 *See Arons*, 850 N.Y.S.2d 345, 880 N.E.2d at 839–40 ("Congress enacted HIPAA principally to increase the portability and continuity of health insurance and to simplify administrative procedures so as to reduce health care costs.").

30 Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub.L. No. 104–191, § 264(c)(1), 110 Stat.1936, 2033–34.

31 *See*65 Fed.Reg. 82,462–01 (codified at 45 C.F.R. pts. 160 & 164).

32 45 C.F.R. § 164.502(a).

33 45 C.F.R. § 160.103.

34 *Id.*

35 *Id.*

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000033 of 000098
EXH : 000017 of 000078

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000034 of 000098

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000018 of 000078

36 45 C.F.R. § 164.502(a)(2).

37 See65 Fed.Reg. 82,462, 82,657 ("We note that nothing in the [privacy] rule requires covered entities to act on authorizations that they receive, even if those authorizations are valid. A covered entity presented with an authorization is permitted to make the disclosure authorized, but is not required to do so.").

38 45 C.F.R. § 164.512(e)(1)(i)-(ii).

39 *See Bayne*, 359 F.Supp.2d at 240 ("Absent within the four corners of the relevant rules and regulations and the enabling statute is any mention of the *ex parte interview* of a health provider, such as whether to prescribe or proscribe such actions ....').

40 *See Smith v. Am. Home Prods. Corp. Wyeth–Ayerst Pharm.*, 372 N.J.Super. 105, 855 A.2d 608, 622 (Law Div.2003) ("Nowhere in HIPAA does the issue of *ex parte* interviews with treating physicians, as an informal discovery device, come into view. The court is aware of no intent by Congress to displace any specific state court rule, statute or case law ... on ex parte interviews."); Joseph Regalla & V. Andrew Cass, *Navigating the Law of Defense Counsel Ex parte Interviews of Treating Physicians*, 31 J. CONTEMP. HEALTH L. 85 POL'Y at 48. ("[N]either the Act, nor its legislative history, expressly prohibits defense counsel ex parte interviews.").

41 *See, e.g., Messina*, 320 S.W.3d at 150 ("This federal regulation's use of the term *oral* communication clearly includes *ex parte 'oral'* communications with a physician....").

42 Scott Aripoli, Comment, *Hungry Hungry HIPAA: Has The Regulation Bitten Off More Than It Can Chew By Prohibiting Ex parte Communication With Treating Physicians?*, 75 UMKC L.Rev. at 500 ("Whether HIPAA truly does preclude defense attorneys from conducting ex parte interviews with treating physicians has yet to be concretely settled in jurisdictions that have traditionally allowed ex parte communications.... Unfortunately, no two jurisdictions seem to have found a uniform line of reasoning with regard to answering this question.").

43 320 S.W.3d 145 (Mo.2010) (en banc).

44 *Id.* at 156.

45 *Id.*

46 *Id.* at 157.

47 9 N.Y.3d 393, 850 N.Y.S.2d 345, 880 N.E.2d 831 (2007).

48 *Id.*, 850 N.Y.S.2d 345, 880 N.E.2d at 842.

49 *Id.*

50 *Holman v. Rasak*, 486 Mich. 429, 785 N.W.2d 98, 105–08 (2010); 45 C.F.R. § 164.512(1)(e)(ii)(B) ("A covered entity may disclose protected health information in the course of any judicial ... proceeding: In response to a subpoena, discovery request, or other lawful process that is not accompanied by an order of a court or administrative tribunal, if: The covered entity receives satisfactory assurance ... from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order ....").

51 65 Fed.Reg. 82,462, 82,530.

52 45 C.F.R. § 164.512(e)(1)(i)-(ii) (emphasis added).

53 *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 535 (Ky.2011) (quoting *Baker v. White*, 251 Ky. 691, 65 S.W.2d 1022, 1024 (1933) ("[I]n the interpretation and construction of statutes, words and phrases employed by the lawmaking body must be given their plain and ordinary meaning according to popular usage, unless they have acquired a technical sense, in which event, they will be given such accepted technical meaning.")).

54 BLACK'S LAW DICTIONARY 1222 (7th ed.)

55 *Primm v. Isaac*, 127 S.W.3d 630, 634 (Ky.2004) ("Generally, control of discovery is a matter of judicial discretion.").

56 45 C.F.R. § 165.512(e)(1)(ii)(A)-(B); *Arons*, 850 N.Y.S.2d 345, 880 N.E.2d at 842 ("As a practical matter, this means that the attorney who wishes to contact an adverse party's treating physician must first obtain a valid HIPAA authorization or a court of administrative order; or must issue a subpoena, discovery request or other lawful process with satisfactory assurances relating to either notification or a qualified protective order.").

57 See45 C.F.R. § 164.512(e)(1)(i).

58 45 C.F.R. § 160.203 (pertaining to the preemptive effect of HIPAA's regulations).

59 *Arons*, 850 N.Y.S.2d 345, 880 N.E.2d at 841–42 (citing 45 C.F.R. § 160.202).

60 *See, e.g., Shoney's, Inc. v. Lewis*, 875 S.W.2d 514 (Ky.1994) (finding ex parte contacts between plaintiffs counsel and defendant's managerial employees to be impermissible only because of the application of Supreme Court Rule (SCR) 3.130–4.2 prohibiting counsel to contact a party represented by counsel unless authorized to do so); *Hillard v. Commonwealth*, 158 S.W.3d 758 (Ky.2005) (holding use of subpoena power to compel a witness's appearance for an ex

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

parte interview impermissible as an abuse of subpoena power, not because the ex parte contact itself was impermissible); *see also Radford v. Lovelace*, 212 S.W.3d 72, 82 (Ky.2006)*overruled on other grounds byCardine v. Commonwealth*, 283 S.W.3d 641 (Ky.2009) ("It is important for us to remember that both sides have the right to interview witnesses before trial.") (quotation marks omitted).

61 *See*CR 26–37.05.

62 Angela T. Burnette & D'Andrea J. Morning, *HIPAA and Ex parte Interviews—The Beginning of the End?*, J. HEALTH & LIFE SCI.L. 73, 77 (April 2008).

63 *See Domako v. Rowe*, 438 Mich. 347, 475 N.W.2d 30, 36 (1991) ("The omission of [ex parte] interviews from the court rules does not mean that they are prohibited, because the rules are not meant to be exhaustive. Their absence from the court rules does indicate that they are not mandated and that the physician cannot be forced to comply, but there is nothing in the court rules precluding an interview if the physician chooses to cooperate.") (citation omitted).

64 *Naive v. Jones*, 353 S.W.2d 365, 367 (Ky.1961) ("The civil rules prescribe a *practical* pattern for the conduct of litigation and the *effective* administration of justice.") (emphasis added); *Doe v. Eli Lilly & Co., Inc.*, 99 F.R.D. 126, 128 (D.D.C.1983) ("As a general proposition, however, no party to litigation has anything resembling a proprietary right to any witness's evidence."); *see also Langdon v. Champion*, 745 P.2d 1371, 1375 n. 8 (Alaska 1987) ("[T]o disallow a viable, efficient, cost effective method of ascertaining the truth because of the mere possibility of abuse, smacks too much of throwing out the baby with the bath water.").

65 KRE 501–11.

66 *See, e.g., Stidham v. Clark*, 74 S.W.3d 719, 729 (Ky.2002) (Keller, J., concurring); *H.H. Waegner & Co. v. Moock*, 303 Ky. 222, 197 S.W.2d 254, 256 (1946); *Boyd v. Wynn*, 286 Ky. 173, 150 S.W.2d 648, 650 (1941); *Louisville & N.R. Co. v. Crockett's Adm'x*, 232 Ky. 726, 24 S.W.2d 580, 583 (Ky.1930).

67 *Commonwealth, Cabinet for Health and Family Servs.*, 316 S.W.3d at 284 ("Kentucky evidentiary rules recognize the ability of the legislature to control their contents, presumably including privileges, limited only by section 116 of the Kentucky Constitution.").

68 See KRE 501–11.

69 *Boyd*, 150 S.W.2d at 450 ("At common law neither the physician nor the patient could claim the privilege of refusing to disclose confidential communications between them in the course of the physician's attendance upon or treatment of the patient in a professional capacity.").

70 *Stidham*, 74 S.W.3d at 729 (Keller, J., concurring).

71 Kentucky Revised Statutes (KRS) 311.565(1)(j).

72 KRS 311.595(9), (16).

73 American Medical Association, Council on Ethical and Judicial Affairs, CODE OF MEDICAL ETHICS § 5.05 (1994). Castro and Amicus Curiae Kentucky Defense Counsel, Inc., note that the quoted provision, the one relied on by Caldwell, is an outdated version of this section. This is correct; but the updated version is substantially the same as the one relied upon by Caldwell, and the amendment does not affect out analysis. *See* American Medical Association, Council on Ethical and Judicial Affairs, CODE OF MEDICAL ETHICS § 5.05 (2007).

74 *Davenport v. Ephraim McDowell Mem. Hosp.*, 769 S.W.2d 56, 62 (Ky.App. 1988).

75 *Id.*

76 *Bryant v. Hilst*, 136 F.R.D. 487, 492 (D. Kan. 1991) ("The court finds the code of ethics inapplicable to the issues before the court. First, it is not binding law."); *Bryson v. Tillinghast*, 749 P.2d 110, 114 (Okla. 1988) ("[E]thical standards are aspirational in nature and not enforceable by law.").

77 979 S.W.2d 134 (Ky.App.1998).

78 *Id.* at 135.

79 *Id.* at 136.

80 927 S.W.2d 839 (Ky.1996).

81 979 S.W.2d at 136.

82 *Id.*

83 769 S.W.2d 56 (Ky.App.1988).

84 *Id.* at 62.

85 *Id.*

86 CR 26.02(4) ("Discovery of *facts known* and opinions held by experts ... may be obtained *only* as follows....").

87 845 S.W.2d 544 (Ky.1993).

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000035 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000019 of 000078

88 *Id.* at 647.

89 KRS 342.020(8).

90 This holding, of course, does not vitiate any professional duties of confidentiality by which physicians may be bound. That those duties do not carry the weight of law does not render them inapplicable or unenforceable in the proper venue.

91 *See Arons,* 850 N.Y.S.2d 345, 880 N.E.2d at 842 ("[W]here there is a State provision and no comparable or analogous federal provision, or the converse is the case, there is no possibility of preemption because in the absence of anything to compare there cannot be a contrary requirement ....") (citing Standards for Privacy of Individually Identifiable Health Information, 64 Fed.Reg. 59,918, 59,995) (Nov. 3, 1999) (quotation marks and alterations omitted).

92 *See Holman,* 785 N.W.2d at 108–09 ("HIPAA does not require a trial court to grant a motion for a protective order. Therefore, a trial court retains its discretion ... to issue protective orders and to impose conditions on ex parte interviews.").

End of Document

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000036 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000020 of 000078

# EXHIBIT B

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000037 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000021 of 000078

Only the Westlaw citation is currently available.

Unpublished opinion. See KY ST RCP Rule 76.28(4) before citing.

Court of Appeals of Kentucky.
Jane A. MEEK and Ricky L. Meek, Individually and Next Friend for Their Children, Aaron Wallace Meek and Michael Barrett Meek, Appellants
v.
Henry G. VASCONEZ, M.D., Appellee.

No. 2005-CA-000397-MR.
June 16, 2006.
Discretionary Review Denied by Supreme Court Feb. 14, 2007.

Appeal from Fayette Circuit Court, Action No. 01-CI-02394; Mary C. Noble, Judge.
Mitchell D. Kinner, A. David Blankenship, Prestonsburg, KY, for appellants.

T. Cornelius Sturgill, Jr., Lexington, KY, for appellee.

Before HENRY and VANMETER, Judges; BUCKINGHAM, Senior Judge.[FN1]

FN1. Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

*OPINION*

BUCKINGHAM, Senior Judge.

*1 Jane A. Meek and Ricky L. Meek, individually and as next friend of their children, appeal from a judgment of the Fayette Circuit Court rendered in favor of Dr. Henry C. Vasconez following a jury trial and from the court's order denying their motion for a new trial. We affirm.

On June 26, 2000, Dr. Vasconez, who was a surgeon at the University of Kentucky Medical Center, performed surgical procedures on Mrs. Meek to release muscle contractions in the neck area that had resulted from previous cancer surgeries and radiation treatments. The civil complaint filed by the Meeks in the Fayette Circuit Court alleged that Dr. Vasconez committed medical negligence, resulting in right phrenic nerve paralysis and right laryngeal nerve paralysis. Following discovery, the case was tried before a jury in late September 2004. The jury returned a verdict in favor of Dr. Vasconez. The Meeks then filed a motion for a new trial, which the circuit court denied. This appeal by the Meeks followed.

The Meeks argue that the court erred in denying their motion for a new trial. Trial courts have broad discretion in granting or refusing a new trial, and this court "will not interfere unless it appears that there has been an abuse of discretion." *Whelan v. Memory-Swift Homes, Inc.*, 315 S.W.2d 593, 594 (Ky.1958).

The Meeks's first argument is that Dr. Vasconez and his attorney engaged in egregious misconduct during the trial that was so prejudicial to the Meeks that it warranted the granting of a new trial. They rely on CR[FN2] 59.01(b) and the case of *Risen v. Pierce*, 807 S.W.2d 945 (Ky.1991).

FN2. Kentucky Rules of Civil Procedure.

The facts as they relate to this argument indicate that Dr. Vasconez testified in his discovery deposition that he did not have an opinion as to what caused Mrs. Meek's nerve injuries. Because of that testimony, the court ordered that he could not offer an opinion on causation at the trial. The Meeks argue that Dr. Vasconez and his attorney "made every attempt at getting his opinion on causation to the jury" despite the court's ruling.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000038 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000022 of 000078

The Meeks make specific reference to three questions that Dr. Vasconez was allowed to answer during his trial testimony. The questions related to whether he cut the recurrent laryngeal nerve, why he believes that did not happen, and whether Mrs. Meek's hoarseness and shortness of breath was caused by anything he did during the operation. The Meeks also point to a direct question asked by Dr. Vasconez's attorney as to "what was the cause in your opinion?" The court did not allow Dr. Vasconez to answer that question. Finally, the Meeks point to Dr. Vasconez's comment that "I have an opinion and I would like to express it if I may." Again, the court told Dr. Vasconez that he could not answer that question. The Meeks argue that the aforementioned testimony and statement constitute egregious misconduct warranting a new trial.

While the court ruled before trial that Dr. Vasconez could not testify as to his opinion on the causation issue, it also held that he could testify as to the procedures he performed, its effect on Mrs. Meek, and anything else that was consistent with his discovery deposition testimony. Having reviewed Dr. Vasconez's testimony, we conclude that the questions and answers given were within the bounds of the pretrial order of the court. Further, we note that Dr. Vasconez was not allowed to answer the "magic" question as to causation and was not allowed to express his opinion pursuant to his request to the court. Finding no error in this regard, we conclude that the trial court did not abuse its discretion in denying the Meeks's motion for a new trial on this ground. FN3

FN3. The *Risen* case is not applicable herein because that case involved egregious misconduct by counsel and this case does not.

*2 The Meeks's second argument is that the court erred in allowing Dr. Daniel Kenady, Mrs. Meek's treating oncology surgeon, to testify as to his opinion on causation. The facts indicate that prior to trial, Dr. Vasconez gave the Meeks's attorney a proposed witness list which contained a section entitled "Non-Retained Experts." That section stated:

> The Defendant expects to call as witnesses each of the treating health care providers of Mrs. Meek. Said persons will be expected to render opinions based upon their education, training and experience. For those persons who have given a deposition, the Defendant expects their opinion testimony to be consistent with their depositions.

Although Dr. Vasconez apparently gave little Rule 26 disclosure concerning Dr. Kenady, the Meeks did depose him.

We reject the Meeks's argument for two reasons. First, having reviewed Dr. Kenady's testimony, we conclude that his trial testimony as to causation testimony was not at odds with his deposition testimony. Second, the Meeks's attorney stated at a pretrial conference that they did not have a problem with the calling of "non-retained experts" as witnesses "because we've deposed everybody that we thought would be involved."

The Meeks's third argument is that Dr. Vasconez's attorneys engaged in misconduct by having unauthorized communications with Dr. William Regine, Mrs. Meek's treating physician, in violation of HIPAA. The facts indicate that Dr. Vasconez's attorneys talked with Dr. Regine prior to trial. At a pretrial conference, the court recognized this was a possible HIPAA violation and called it a "somewhat shady practice." The court allowed Dr. Vasconez to call Dr. Regine as a witness because he had disclosed on a witness list that he might call Mrs. Meek's treating physicians as witnesses at trial. However, the court ruled that Dr. Regine could not give expert opinions because no Rule 26 disclosures had been made with respect to him. He was allowed only to give factual testimony based on his knowledge gained through his treatment of Mrs. Meek. The court also held that Dr. Regine could testify as a rebuttal witness since rebuttal witnesses did not have to be disclosed.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210) B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000039 of 000098
EXH : 000023 of 000078

The Meeks's argument centers on whether the court should have allowed Dr. Regine to testify in any manner because of the alleged HIPAA violation. Dr. Vasconez argues in response that there was no HIPAA violation. He notes that the University of Kentucky Medical Center Malpractice Insurance Act required the University of Kentucky to defend the malpractice action against him. He further notes that the statute requires the production of information. Because Dr. Regine was also an employee of the University of Kentucky, Dr. Vasconez maintains that the statute permitted the disclosure of the health information to Dr. Vasconez's counsel, who had been retained by the University of Kentucky to defend the action against him. Further, Dr. Vasconez argues that even if the communications constituted a violation of HIPAA, a new trial would not have been an appropriate remedy.

*3 Both parties cite *Law v. Zuckerman*, 307 F.Supp.2d 705 (D.Md.2004), to support their arguments.[FN4] In that case the court held that any HIPAA violation in connection with an attorney's contact with a physician was effectively remedied when the court ordered that either party could speak with the physician before he testified about the issues set forth in the plaintiff's medical records. *Id.* at 713. In the case *sub judice*, the court fashioned the same remedy. It allowed the Meeks's attorney to interview Dr. Regine prior to his being called as a witness at trial. In short, we conclude that the trial court did not abuse its discretion in remedying the HIPAA violation, if there was one.

FN4. There are apparently no Kentucky cases addressing this subject.

In connection with this argument, the Meeks argue that the court erred in allowing Dr. Regine to give expert opinions of which they had little or no knowledge prior to trial. Having reviewed Dr. Regine's testimony, we conclude that the court properly limited his testimony to that which rebutted the testimony given by the Meeks's expert witnesses.

The Meeks's fourth argument is that the court erred in allowing Dr. Vasconez to use rebuttal expert witnesses to rebut the opinions of their expert witnesses "when the plaintiffs' case on liability was presented to the jury by videotaped depositions and the defendant, in contradiction of a court order, failed to disclose the identity of any expert witness or any Rule 26 information." The Meeks argue that no part of their case-in-chief on the issue of liability was new or unanticipated and that Kentucky law as well as law from other jurisdictions confines rebuttal evidence to that which answers new or unanticipated matters introduced by the opposing party. In addition to citing cases from other jurisdictions, the Meeks cite *Ajax Coal Co. v. Collins*, 269 Ky. 222, 106 S.W.2d 617 (1937), and *Morrow v. Stivers*, 836 S.W.2d 424, 430 (Ky.App.1992).

Dr. Vasconez also cites the *Ajax Coal Co.* case to support his position. In that case the court allowed expert witness testimony in rebuttal because the party "could not anticipate the evidence that would be offered by appellant until it was presented." 106 S.W.2d at 618. Quoting from older cases, the court also stated that "it was held that rebuttal evidence is not confined to proving or disproving facts testified to by the witnesses on the other side, but that is nonetheless rebuttal evidence which tends to counteract or overcome the legal effect of the evidence for the other side." *Id.* at 618-19. In the *Morrow* case, this court approved of the trial court allowing the plaintiff in a medical malpractice case to introduce a rebuttal expert witness because the defendant had introduced a new element as to causation which could not have been addressed by the plaintiff in his case-in-chief. *Id.* at 430.

The Meeks argue that with the advent of videotaped testimony, the rules regarding rebuttal witnesses must evolve and adapt to this new method of presenting evidence. They assert that "[i]n cases with videotaped evidentiary depositions, a party should not be able to disregard Rule 26 and be allowed to testify in contradiction of testimony known prior to the trial." They argue that the court's permitting Dr. Vasconez to call rebuttal ex-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000040 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000024 of 000078

pert witnesses "was improper, was an abuse of discretion, and was manifestly unfair to the Appellants who knew nothing about the subject matter to which Appellee's experts would testify."

¶4 The circuit court here stated that it knew "of no case that says you're required to disclose what your rebuttal testimony is going to be." Likewise, we know of no authority requiring a party to do so. Furthermore, we conclude, as did the circuit court, that the expert witness testimony offered by Dr. Vasconez met the definition of rebuttal evidence set forth in the *Ajax Coal Co.* case. *See also Houser v. Coursey*, 310 Ky. 625, 628, 221 S.W.2d 432, 434 (1949). In short, we find no error in this regard.[FN8]

FN8. The identity of Dr. Vasconez's rebuttal expert witnesses is not made clear to us in the briefs. Apparently, those witnesses were treating physicians and were disclosed on Dr. Vasconez's witness list, although they were not disclosed specifically by name. Also, all rebuttal witnesses were apparently deposed by the Meeks, with the exception of Dr. Regine.

The judgment of the Fayette Circuit Court is affirmed.

ALL CONCUR.

Ky.App.,2006.
Meek v. Vasconez
Not Reported in S.W.3d, 2006 WL 1652736 (Ky.App.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000041 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000025 of 000078

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

EXHIBIT C

Presiding Judge: HON. STEVEN DANIEL COMBS (635210) B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000042 of 000098

EXH : 000026 of 000078

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000043 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000027 of 000078

Westlaw. Page 1

Not Reported in F.Supp.2d, 2007 WL 2137782 (E.D.Ky.), Prod.Liab.Rep. (CCH) P 17,815
(Cite as: 2007 WL 2137782 (E.D.Ky.))

United States District Court,
E.D. Kentucky,
Central District at Lexington.
Philip C. WEISS, et al., Plaintiffs
v.
ASTELLAS PHARMA, US, INC., et al., Defendants.

Civil Action No. 05-527-JMH.
July 23, 2007.

David Robert Buchanan, Seeger Weiss LLP, New York, NY, H. Philip Grossman, Jennifer A. Moore, Grossman & Moore, PLLC, Louisville, KY, Larry M. Roth, Law Offices of Larry M. Roth, P.A., Orlando, FL, for Plaintiffs.

Ann Elizabeth Georgehead, Susan S. Wettle, Frost Brown Todd LLC, Louisville, KY, Harvey L. Kaplan, Mark C. Hegarty, Shook, Hardy & Bacon, Kansas City, MO, Cynthia L. Kendrick, James D. Hicks, Joe G. Hollingsworth, Katharine R. Latimer, Kirby T. Griffis, Spriggs & Hollingsworth, Washington, DC, Shea W. Conley, Reminger & Reminger Co., LPA, Samuel E. Isaacs, II, Lexington, KY, for Defendants.

MEMORANDUM OPINION AND ORDER
JAMES B. TODD, United States Magistrate Judge.
I. INTRODUCTION

*1 This is a products liability action. Plaintiffs Philip C. Weiss and Cassandra Weiss, his wife, bring this action against defendants Astellas Pharma, US, Inc. ("APUS") and Novartis Pharmaceuticals Corporation ("NPC"), alleging that as the result of using defendants' products, Elidel and Protopic,[FN1] which were prescribed for him by his dermatologist for treatment of a skin condition, atopic dermatitis, plaintiff Philip C. Weiss ("Weiss") developed cutaneous T-cell lymphoma. Specifically, plaintiffs allege that beginning in November of 2003 through November of 2004, Weiss used and applied both Elidel and Protopic, as prescribed by his physician, and that on or about December 3, 2004, Weiss was diagnosed with cutaneous T-cell lymphoma.

FN1. Elidel is manufactured by defendant NPC; Protopic is manufactured by defendant APUS.

Plaintiff Philip C. Weiss asserts claims against defendants for negligence, negligent failure to warn, intentional misrepresentation, and strict liability. Plaintiff Cassandra Weiss asserts a claim against defendants for loss of consortium. Plaintiffs seek compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys' fees, and costs.

This matter is presently before the court on defendants' motion to compel plaintiff Philip Weiss to execute HIPAA[FN2]-compliant authorizations permitting defendants' counsel to have *ex parte* contacts with plaintiffs treating physicians, or, alternatively, to preclude plaintiffs' counsel from having *ex parte* contacts with plaintiff's treating physicians. This motion has been fully briefed and is ripe for review.[FN3]

FN2. HIPAA is an acronym for "Health Insurance Portability and Accessibility Act of 1996."

FN3. Pursuant to numerical paragraph 1 of the district court's Scheduling Order entered herein on January 24, 2007, all discovery disputes were referred to the Magistrate Judge for resolution. [DE # 145].

II. DEFENDANTS' MOTION TO COMPEL

As grounds for their motion to compel plaintiff Philip Weiss to execute HIPAA-compliant authorizations permitting defendants' counsel to have *ex parte* contacts with his treating physicians, defendants contend that the *ex parte* contacts they seek are permissible because Kentucky does not have a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

Page 2

Not Reported in F.Supp.2d, 2007 WL 2137782 (E.D.Ky.), Prod.Liab.Rep. (CCH) P 17,813
(Cite as: 2007 WL 2137782 (E.D.Ky.))

physician-patient privilege and allows such *ex parte* contacts. Defendants also argue that even if Kentucky recognized a physician-patient privilege, Weiss has waived the privilege by placing his medical condition at issue with the filing of this action and by authorizing the release of his medical records. Additionally, defendants submit that HIPAA permits a physician to disclose the medical information at issue herein. Furthermore, defendants argue that allowing plaintiffs counsel to have *ex parte* contacts and communication with plaintiff's treating physicians, while not also allowing defendants' counsel to have *ex parte* contacts with plaintiff's treating physicians violates defendants' due process rights. Alternatively, defendants assert that if the court does not permit their counsel to have *ex parte* contact with plaintiff's treating physicians, then in order to level the playing field, plaintiffs counsel should also be prohibited from having *ex parte* contact with plaintiff's treating physicians.

In response, plaintiffs object to the foregoing motion, in its entirety, arguing that allowing defendants' counsel to conduct *ex parte* interviews with plaintiff's treating physicians would unnecessarily risk disclosing plaintiff's protected, confidential medical information, which would also be in violation of Kentucky state law, HIPAA, and the regulations promulgated pursuant thereto. Plaintiffs argue that Kentucky's lack of a physician-patient testimonial privilege is not the issue before the court and that defendants' lengthy discussion of Kentucky's testimonial privileges ignores the real issue at hand, *viz.*, that communications between a physician and patient are confidential communications and that a patient's protected fiduciary relationship with his physician prohibits his physician from disclosing the content of these communications to third parties, and that defendants' argument attempts to confuse these two, separate and distinct issues.

Discussion/Analysis

*2 Since the court has jurisdiction over this matter by reason of diversity of citizenship, pursuant to 28 U.S.C. § 1332, resolution of the present motion first requires consideration of the extent to which Kentucky law recognizes and protects the confidentiality of the physician/patient relationship; therefore, the court must first look to Kentucky law on that issue. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). The duty to ascertain state law on the matter of privileges is established by Rule 501 of the Federal Rules of Evidence, which states in relevant part that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." Fed.R.Evid. 501.

The privileges recognized under Kentucky law are provided in Article Five of the Kentucky Rules of Evidence (KRE). The privileges listed therein include: (1) attorney-client, Rule 503; (2) husband-wife, Rule 504; (3) religious privilege, Rule 505; (4) counselor-client, Rule 506; (5) psychotherapist-patient, Rule 507; and (6) identity of informer, Rule 508. *See* Kentucky Rules of Evidence, Article V., Privileges. Thus, there is no physician-patient privilege in Kentucky, as seen in *Stidham v. Clark*, 74 S.W.3d 719, 727 (Ky.2002) ("Communications made for the purpose of treatment are not privileged at all" under Kentucky law), and Kentucky courts have consistently allowed informal interviews with treating physicians. *See, e.g., Roberts v. Estep*, 845 S.W.2d 544, 547 (Ky.1993) (there is no Kentucky statute that precludes *ex parte* contact with treating physicians); *Davenport v. Ephraim McDowell Mem'l Hosp., Inc.* 769 S.W.2d 56, 62 (Ky.Ct.App.1988) (affirming the trial court's order allowing informal contacts with treating physicians).

"It has consistently been the expressed policy of the Kentucky Supreme Court to decline to recognize a privilege where it has not been expressed in the general laws of evidence existing in the state or in legislative enactment, except in the most compelling situations." *Williams v. Vulcan-Hart Corp.*,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000044 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000028 of 000078

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

Page 3

Not Reported in F.Supp.2d, 2007 WL 2137782 (E.D.Ky.), Prod.Liab.Rep. (CCH) P 17,815
(Cite as: 2007 WL 2137782 (E.D.Ky.))

136 F.R.D. 457, 460 (W.D.Ky.1991). *See also Stidham*, 74 S.W.3d at 722-23 ("testimonial privileges are generally disfavored and should be strictly construed"); *Haney v. Yates*, 40 S.W.3d 352, 355 (Ky.2000) ("privileges should be strictly construed, because they contravene the fundamental principle that the ... public has a right to every man's evidence") (internal citations omitted); *Sisters of Charity Health Sys., Inc. v. Raikes*, 984 S.W.2d 464, 469 (Ky.1998) (noting that privileges must be strictly construed because they can tilt the legal playing field). Indeed, Kentucky law states that "[e]xcept as otherwise provided by Constitution or statute or by these or other rules promulgated by the Supreme Court of Kentucky, no person has a privilege to: ... (2)[r]efuse to disclose any matter; ... or (4)[p]revent another from being a witness or disclosing any matter or producing any object or writing." Ky.Rev.Stat. Ann. Rule 501 (2006); *see also Stidham*, 74 S.W.3d at 723 (holding that Kentucky's testimonial privileges are limited to those codified in Kentucky Rule of Evidence 501, and that Rule 501 "includes no provision for common law development of testimonial privileges").

*3 Although the Kentucky legislature has chosen to create privileges in the limited context of psychotherapists (see Ky.Rev.Stat. Ann. Rule 507 (2006)), school or sexual assault counselors (see *id.* at Rule 506), and certain specific diseases (see *id.* at §§ 214.625(HIV) and 214.420 (sexually transmitted disease records)), it has not promulgated similar protections with respect to physicians, consistent with decades of case law recognizing that no such privilege otherwise exists in Kentucky. *See, e.g., Louisville & N .R. Co. v. Crockett's Adm'x*, 24 S.W.2d 580, 583 (Ky.1930) (common law rule that neither physician nor patient can claim privilege of refusing to disclose alleged confidential communications between them still in force in Kentucky and has not been changed by statute); *Boyd v. Wynn*, 150 S.W.2d 648, 650 (Ky.1941); *Williams v. Taylor*, 151 S.W.2d 783, 787-88 (Ky.1941).

Consequently, the Magistrate Judge concludes that the physician-patient privilege does not exist in Kentucky either by common law or statutory enactment. However, a decision on this present motion does not turn solely on state law issues. Resolution of this motion also requires the court to consider the scope and application of the Federal Rules of Civil Procedure, particularly those rules governing discovery.

Given that plaintiff has no substantive state law privilege, the federal court must turn to its own procedural rules in considering defendants' request for *ex parte* contacts with plaintiff's treating physicians. *See Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 296 (6th Cir.2007) (In diversity cases, a federal court applies the substantive law of the forum state, but the procedural law of the federal courts); *see also Welch v. La. Power & Light Co.*, 466 F.2d 1344, 1345 (5th Cir.1972) ("[T]he Supreme Court has established a strong presumption that the federal rules govern, rather than state law, in cases involving arguably procedural matters."); *Patton v. Novartis Consumer Health, Inc.*, No. 4:02-CV-0047-DFH-WGH, 2005 WL 1799509, at *3 (S.D.Ind. July 25, 2005) ("the ground rules for witness interviews are essentially procedural in character and are thus governed by federal law."); *Eve v. Sandoz Pharm. Corp.*, No. IP98-1429-C-Y/S, 2002 WL 32153352, at *3 (S.D.Ind. May 16, 2002) ("[W]hen the issue before the court is not what may be discovered, but how that discovery may be obtained or (in this case) how trial preparation may be conducted, that issue is a matter of federal procedural law."); *Shots v. CSX Transp., Inc.*, 887 F.Supp. 206, 208 (S.D.Ind.1995) (holding that the FRCP "leave to the district court the discretion whether to allow ex parte conferences"); *Everson v. Dalkon Shield Claimants Trust*, No. 82-1021-MLB, 1993 WL 245972, at *1 (D. Kan. June 2, 1993) ("The method for discovering unprivileged material-whether by written interrogatories, requests for admissions, depositions, or *ex parte* interviews-is entirely a matter of procedure governed by the Federal Rules of Civil Procedure"); *Filz v. Mayo Found.*, 136 F.R.D.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

Presiding Judge: HON. STEVEN DANIEL COMBS (635210) B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000045 of 000098
EXH : 000029 of 000078

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000046 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000030 of 000078

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

Page 4

Not Reported in F.Supp.2d, 2007 WL 2137782 (E.D.Ky.), Prod.Liab.Rep. (CCH) P 17,815
(Cite as: 2007 WL 2137782 (E.D.Ky.))

163, 170 (D.Minn.1991) (applying federal law to question whether *ex parte* interviews of treating physicians should be allowed).

*4 The Sixth Circuit has repeatedly held "[t]here is no federal physician-patient privilege." *Hadley v. Cranston*, 181 F.3d 99, 1999 WL 313770, at *1 (6th Cir.1999) (unpublished table opinion); *accord United States v. Perryman*, 14 F. App'x 328, 329 (6th Cir.2001); *Hancock*, 958 F.2d at 1373. Moreover, the Federal Rules of Civil Procedure do not restrict contact with witnesses to formal mechanisms such as sworn depositions. *See, e.g., Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir.1977) ("informality in the discovery of information is desired"); *Williams v. Rene*, 72 F.3d 1096, 1103 (3d Cir.1995) (rejecting efforts to restrict *ex parte* interviews with treating physicians, noting the benefits of informal gathering of evidence in lieu of "the more expensive and time-consuming procedure of a formal deposition"); *Patton*, 2005 WL 1799509, at *4 (noting that the Federal Rules "have never been thought to preclude the use of such venerable, if informal, discovery techniques as the *ex parte* interview of a witness who is willing to speak"); *Stewart v. Women in Cmty. Serv., Inc.*, No. CV-N-97-234-DWH (PHA), 1998 WL 777997, at *4 (D.Nev. Oct. 7, 1998) (quoting *Felder v. Wyman*, 139 F.R.D. 85, 91 (D.S.C.1991)) ("Private interviews by attorneys have been recognized as a 'time-honored' method for conducting discovery.").

Numerous federal courts have held that a defendant is entitled to conduct *ex parte* interviews with a plaintiff's treating physicians. *See, e.g., Hancock*, 958 F.2d at 1373 ("Because the federal courts do not recognize a federal physician-patient privilege, appellants' arguments regarding the scope of that privilege must be rejected and the district court's decision [allowing *ex parte* contacts] affirmed"); *Williams*, 72 F.3d at 1103-04 (rejecting argument that defense was required, consistent with local law, to provide notice to plaintiff in advance of *ex parte* contacts with treating physician and holding that "counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel and without a transcript being made") (internal quotation omitted); *Croskey v. BMW of N. Am.*, No. 02-73747, 2005 WL 4704767, at * 4 (E.D.Mich. Nov. 10, 2005) ("To allow Plaintiff to block the interview [with plaintiff's treating physician] would ... impede Defendant's access to evidence."); *Shots*, 887 F.Supp. at 208 ("Where the plaintiff does not suggest that any other medical condition exists which merits protection from disclosure, the policy considerations which protect the physician-patient relationship can safely be subverted to those policy considerations which expedite the discovery process."); *Everhart v. Nat'l Passenger R.R.*, No. IP 01-1221-C-H/K, 2003 WL 83569, at *2 (S.D.Ind. Jan. 9, 2003) ("the Court must balance the risks of disclosure of this information with that of the Defendant's right to mount its defenses for trial and to have equal access to pertinent witnesses"); *Felder*, 139 F.R.D. at 91 (*ex parte* conferences between defense counsel and physician permissible in part because "nothing explicit or implicit in" the Federal Rules of Civil Procedure precludes such discovery); *Bryant v. Hilst*, 136 F.R.D. 487, 492 (D.Kan.1991) (holding that because treating physicians are fact witnesses with non-duplicable information concerning major areas of the action, both parties should have unfettered access); *Thomsen v. Mayo Found.*, No. 4-84-1239, 1986 WL 9159, at *2 (D.Minn. Aug. 20, 1986) (holding that a physician should not "be treated in any manner differently than other non-party witnesses"); *accord Patton*, 2005 WL 1799509, at *5; *Watson v. Olathe Med. Ctr., Inc.*, No. 01-2382-CM, 2002 WL 75393 (D.Kan. Jan. 8, 2002); *Eve*, 2002 WL 32153352, at *2; *Stewart*, 1998 WL 777997; *Stiles v. United States*, 111 F.R.D. 59 (S.D.Cal.1986); *Doe v. Eli Lilly Co.*, 99 F.R.D. 126-28 (D.D.C.1983).

*5 As these courts have recognized, treating physicians are important fact witnesses, and "[a]bsent a privilege, no party is entitled to restrict an opponent's access to a witness, however partial

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000047 of 000098
EXH : 000031 of 000078

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

Page 5

Not Reported in F.Supp.2d, 2007 WL 2137782 (E.D.Ky.), Prod.Liab.Rep. (CCH) P 17,813
(Cite as: 2007 WL 2137782 (E.D.Ky.))

or important to him...." *Id.* at 128; *see also Williams,* 72 F.3d at 1103 ("all parties have a right to interview an adverse party's witnesses"); *Thomsen,* 1986 WL 9159, at *2 ("[I]n the absence of a privilege, each citizen is available within the normal bounds as a 'witness.'"); *Sipes,* 111 F.R.D. at 61 ("[Treating] physicians are percipient fact witnesses, and as such, the information and opinions they possess should be freely accessible to both parties ... as would be the case with any other ordinary fact witness.").

For all of the foregoing reasons, the Magistrate Judge concludes that defendants' counsel should be permitted to have *ex parte* contact with plaintiff's treating physicians and to conduct *ex parte* interviews with those treating physicians, *but only if those treating physicians are willing to be interviewed by defendants' counsel.* Private interviews permit investigation and preparation of possible defense theories without revealing potential work product. The presence of plaintiff's counsel during these witness interviews could cause "interference and disruption." *Filz,* 136 F.R.D. at 169 n. 7; *see also Williams,* 72 F.3d at 1103 (defendant had right to interview treating physician "without the presence or consent of opposing counsel") (internal quotation omitted); *Doe,* 99 F.R.D. at 128-29 (presence of plaintiff's counsel during interviews of physicians unfairly enables plaintiff "to monitor [defendant's] progress ... while his own preparation is under no such scrutiny"). Further, interviews are less burdensome and more cost-effective than depositions in obtaining information from treating physicians. *See, e.g., Williams,* 72 F.3d at 1103.

The Magistrate Judge is unpersuaded by plaintiff's argument that the fiduciary relationship he has with his treating physicians prohibits the *ex parte* interviews defendants seek to conduct with his treating physicians. While it is true that plaintiff has a fiduciary relationship with his treating physicians and that plaintiff's medical records are confidential, with the filing of this lawsuit, plaintiff has placed his medical condition at issue; therefore, as evidenced by the authorizations plaintiff has executed permitting the release of his medical records to the defendants, the Magistrate Judge concludes that the defendants are authorized to receive plaintiff's medical records that are relevant to this case. Hence, defendants' counsel are also authorized to receive these medical records and, for all of the reasons stated above, are free to have *ex parte* discussions with plaintiff's treating physicians, so long as plaintiff's treating physicians are willing to voluntarily confer with defendants' counsel, concerning the medical records that are relevant to this case.

*6 Plaintiff also argues that K.R.S. § 311.595(16) prohibits his treating physicians from disclosing his medical information to defendants. K.R.S. § 311.595(16) provides that any physician who has "willfully violated a confidential communication" may have his or her license suspended or revoked for a period of time. For the following reasons, the Magistrate Judge is unpersuaded by plaintiff's argument that this statute prevents his treating physicians from having *ex parte* communications with defendants' counsel, at least so far as to those portions of plaintiff's medical records that are relevant to this action are concerned: (1) defendants have not asked for the disclosure of plaintiff's communications with his treating physicians; those communications are confidential and should remain confidential; (2) by filing this lawsuit, plaintiff has placed his medical condition at issue and has authorized the release of his medical records; therefore, plaintiff's treating physicians are free to discuss plaintiff's medical records that are relevant to this case with defendants' counsel, and so long as the physician does not disclose plaintiff's communications made to the physician, there is no violation of K.R.S. § 311.595(16).

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to compel plaintiff Philip Weles to execute HIPAA-compliant authorizations permitting defendants' counsel to have *ex*

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000048 of 000098
EXH : 000032 of 000078

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

Page 6

Not Reported in F.Supp.2d, 2007 WL 2137782 (E.D.Ky.), Prod.Liab.Rep. (CCH) P 17,813
(Cite as: 2007 WL 2137782 (E.D.Ky.))

*parte* contacts with plaintiff's treating physicians, or, alternatively, to preclude plaintiffs' counsel from having *ex parte* contacts with plaintiff's treating physicians [DE# 147] is DENIED.

2. Defendants' counsel are free to have *ex parte* contact and communications with plaintiff's treating physicians, so long as plaintiff's treating physicians are willing to voluntarily meet and confer with defendants' counsel, concerning plaintiff's medical records that are relevant to this action.

3. Plaintiff's treating physicians having *ex parte* communications with defendants' counsel would not be a violation of K.R.S. § 311.595(16) so long as plaintiff's communications made to his physicians, which remain confidential, are not disclosed to defendants' counsel.

E.D.Ky.,2007.
Weiss v. Astellas Pharma, US, Inc.
Not Reported in F.Supp.2d, 2007 WL 2137782 (E.D.Ky.), Prod.Liab.Rep. (CCH) P 17,813

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

EXH : 000033 of 000078
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000049 of 000098

# EXHIBIT D

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000050 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000034 of 000078

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:12-CV-00132-TBR

PATRICIA ANN PACE, AS ADMINISTRATRIX OF THE ESTATE OF SARAH ELIZABETH PACE, DECEASED — PLAINTIFF

vs.

MEDCO FRANKLIN RE, LLC, D/B/A MEDCO CENTER OF FRANKLIN; MEDCO FRANKLIN RE, LLC; EXTENDICARE HEALTH SERVICES, INC., and JOHN DOES 1 THROUGH 5, UNKNOWN DEFENDANTS — DEFENDANTS

ORDER

This matter is before the Court on motion of Defendants, Medco Franklin RE, LLC, d/b/a Medco Center of Franklin and Extendicare Health Services, Inc. ("Defendants"), in support of a qualified protective order for *ex parte* communications with Sarah Elizabeth Pace's ("Pace") treating healthcare providers (DN 41). Patricia Ann Pace, as Administratrix of the Estate of Sarah Elizabeth Pace, deceased, ("Plaintiff") has filed a response (DN 42) and Defendants have replied (DN 47). This matter is now ripe for adjudication.

Background

This case arises from Pace's stay and treatment at a nursing facility owned and operated by Defendants. She was a resident at the facility from September 2, 2011 until October 18, 2011 when she was transferred to the Medical Center in Franklin. She subsequently died at the Medical Center on October 22, 2011. Plaintiff, Patricia Ann Pace, is the Administratrix of the Estate of Sarah Elizabeth Pace, and she brings various causes of action against the Defendants, including

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000051 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000035 of 000078

negligence, medical negligence, corporate negligence, violation of long term resident's rights, wrongful death, and other statutory and regulatory violations (DN 1).

Defendants anticipate that there will be significant testimony from Pace's physicians and other providers as to whether her preexisting medical conditions and complex medical history caused any of the injuries alleged in this lawsuit (DN 41, Defendants' Motion for a Qualified Protective Order at Page 4). As a result, Defendants seek a protective order for the purpose of participating in *ex parte* communications with Pace's treating healthcare providers.

Motion for protective order for *ex parte* communications

As grounds for their motion for a protective order allowing *ex parte* communications with Pace's treating healthcare providers, Defendants argue that the *ex parte* communications they seek are permissible because of the following reasons: (1) Kentucky does not recognize the physician-patient privilege, (2) Kentucky does not have a statute which expressly forbids *ex parte* communication between a Defendant and Plaintiff's treating physician, (3) even if Kentucky recognized a physician-patient privilege, Plaintiff has waived the privilege by placing the medical condition of Pace at issue with the filing of this action, (4) *ex parte* communication is not prohibited under the Health Insurance Portability and Accountability Act ("HIPPA") as long as safeguards are in place to protect the confidentiality of the protected health information acquired, and (5) Defendant's due process rights are violated if *ex parte* communication with Plaintiff's treating healthcare providers is not allowed (DN 41, Defendants' Motion for Qualified Protective Order at Pages 5-17). In the alternative, Defendants assert that if the court denies the motion for a qualified protective order, then in order to level the playing field, Plaintiff's counsel should also be prohibited

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000052 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000036 of 000078

from engaging in *ex parte* communication with Plaintiff's treating healthcare providers (DN 41, Defendants' Motion for a Qualified Protective Order at Pages 16-17).

In response, Plaintiff objects to the aforementioned motion, in its entirety, arguing that *ex parte* communication is unfair and improper, in addition to being in violation of Kentucky state law and HIPPA (DN 42, Plaintiff's response at Pages 3-13). Furthermore, Plaintiff contends that Defendants do not have the right to equal access to witnesses holding confidential information and that they should obtain information through the regular channels of discovery (DN 42, Plaintiff's Response at Pages 7-10)

In the alternative, Plaintiff maintains that if the Court allows Defendants to participate in *ex parte* communications with Plaintiff's treating healthcare providers that the Court direct Defendants to provide Plaintiff with notice of the proposed contact and an opportunity to be present before any meeting or interview occurs in order to ensure that confidential information is not disclosed (DN 42, Plaintiff's Response at Page 13).

Physician-patient Privilege

Because the court has jurisdiction over this matter by reason of diversity of citizenship pursuant to 28 U.S.C. § 1332(a)[1], resolution of the present motion first requires consideration of the extent to which Kentucky law recognizes and protects the confidentiality of the physician-patient relationship. *See* In re Powerhouse Licensing, LLC, 441 F.3d 467, 472 (6th Cir. 2006) ("In a diversity case, the court applies ... state law to resolve attorney-client claims."). The duty to apply

[1] Pursuant to the Notice of Removal, this Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332(a), because the citizenship of Patricia Ann Pace (for diversity purposes) is Kentucky and the citizenship of Medco Franklin is Wisconsin (DN 1).

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000053 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000037 of 000078

state law on the matter of privileges is established by Fed. R. Evid. 501, which states that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."

Article Five of the Kentucky Rules of Evidence lists the six privileges recognized under Kentucky law. The recognized privileges include: (1) attorney-client, (2) husband-wife, (3) religious, (4) counselor-client, (5) psychotherapist-patient, and (6) identity of informer. Ky. R. Evid. 503-508. Therefore, there is no physician-patient privilege in Kentucky. *See* Stidham v. Clark, 74 S.W.3d 719, 727 (Ky. 2002) (Supreme Court of Kentucky has held that no testimonial privilege exists in Kentucky for communications made between patient and physician for the purpose of medical treatment).

"It has consistently been the expressed policy of the Kentucky Supreme Court to decline to recognize a privilege where it has not been expressed in general laws of evidence existing in the sate or in legislative enactment, except in the most compelling situations." Weiss v. Astellas Pharma, US, Inc., 2007 WL 2137782, *2 (E.D. Ky. 2007) (*quoting* Williams v. Vulcan-Hart Corp., 136 F.R.D. 457, 460 (W.D. Ky. 1991)); *see also* Stidham, 74 S.W.3d at 722-23 ("testimonial privileges are generally disfavored and should be strictly construed"). Based on the foregoing reasons, it is clear that a physician-patient privilege does not exist in Kentucky.

In Weiss, *supra*, the Eastern District Court of Kentucky faced the same question of whether Defendants were allowed to participate in *ex parte* communications with Plaintiff's treating physicians. As a starting point for its analysis, the District Court acknowledged that a physician-patient privilege does not exist in Kentucky. Id., *3-4. It went on to consider the scope and application of the Federal Rules of Civil Procedure because the question does not solely require

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000054 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000038 of 000078

scrutiny of state law issues. Id. Because of the intertwining of state and federal issues here, the undersigned looks to federal law as well. The Sixth Circuit has repeatedly held that "[t]here is no federal physician-patient privilege." Id., *4 (*citing* Boddie v. Cranston, 181 F.3d 99, 1999 WL 313770, *1 (6th Cir. 1999); *see also* United States v. Perryman, 2001 WL 856966, *1 (6th Cir. 2001) (*citing* Hancock v. Dodson, 958 F.2d 1367, 1373 (6th Cir. 1992)). Because no physician-patient privilege exists under Kentucky or federal law, there is no risk that *ex parte* communications would be in violation of such a privilege.

In the alternative, Defendants argue if Plaintiff believes that there is a physician-patient privilege under Kentucky law, then Plaintiff has waived that privilege when she placed confidential information at issue by filing this claim (DN 41, Defendants' Motion for a Qualified Protective Order at Page 7). Whether Plaintiff has waived the privilege need not be considered because there is no privilege to waive.

While the undersigned concludes that the physician-patient privilege is not recognized under Kentucky or federal law, the absence of such a privilege does not fully answer the question of whether *ex parte* communications with Plaintiff's treating healthcare providers are allowed. Resolution of this motion requires further examination of state and federal law.

Statutes with regard to *ex parte* communication

Consideration turns to whether any statutes exist allowing or forbidding *ex parte* communications, as in this instance. Defendants argue that no statute exists expressly prohibiting *ex parte* communications and that courts in Kentucky have been favorable to allowing such communications, even prior to HIPPA (DN 41, Defendants' Motion for Qualified Order; DN 47,

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000055 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000039 of 000078

Defendants' Reply). Some states, however, disallow *ex parte* communications by state law. For example, the applicable statute in Arizona reads as follows:

> In a civil action a physician or surgeon shall not, without the consent of his patient, or the conservator or guardian of the patient, be examined as to any communication made by his patient with reference to any physical or mental disease or disorder or supposed physical or mental disease or disorder or as to any such knowledge obtained by personal examination of the patient.

A.R.S. § 12-2235. A similar statute in Arkansas states that "any informal ex parte contact or communication with the patient's physician or psychotherapist is prohibited, unless the patient expressly consents." A.R.E. Rule 503(d)(3)(B). Other statutes containing analogous prohibitions can be found in Louisiana, Mississippi, Pennsylvania, Rhode Island, and Virginia. *See* Melissa Phillips Reading and Laura Marshall Strong, *Has HIPPA Really Changed the Landscape*, MEDICAL LIABILITY AND HEALTH CARE LAW, 32 (2011). The undersigned agrees with Defendants that Kentucky does not contain any such statutes.

Furthermore, in Kentucky, courts have allowed defense counsel to participate in *ex parte* communications with plaintiff's treating physicians before HIPPA became law. *See* Roberts v. Estep, 845 S.W.2d 544 (Ky. 1993). Also, in Davenport v. Ephraim McDowell Mem'l Hosp., 769 S.W.2d 56, 62 (Ky. App. 1989), the Court of Appeals of Kentucky concluded that the trial court properly issued an order allowing defense counsel to approach plaintiff's treating physicians whom the plaintiff had intended to use as expert witnesses.

In opposition, Plaintiff argues that *ex parte* communication is not allowed under Kentucky law (DN 42, Plaintiff's Response at Pages 6-7). In furtherance of that argument, she cites to Geary v. Schroering, 979 S.W.2d 134 (Ky. App. 1998); however, her understanding of the case is misplaced. In Geary, the pertinent issue was not with regard to *ex parte* communications, but

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000056 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000040 of 000078

Presiding Judge: HON. STEVEN DANIEL COMBS (635210) B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000057 of 000098
EXH : 000041 of 000078

instead it dealt with using *ex parte* subpoenas to obtain medical records and information from plaintiff. Id. The Court of Appeals of Kentucky decided that the trial court could not compel plaintiff to execute a medical authorization permitting "unrestricted release" of all medical information because it would circumvent the rules of subpoenas and discovery. Id. at 135-6. Because the Court in Geary never considered *ex parte* communications with healthcare providers, the holding in the case is not binding here.

Moreover, Plaintiff's privacy concern has been addressed by the implementation of HIPPA, in particular 45 C.F.R. § 164.512(e), which provides that a court may issue a qualified protective order in order to allow a plaintiff's healthcare providers to disclose his or her protected health information. This point will be addressed in more detail below.

Confidentiality of physician-patient relationship

Plaintiff argues that even if Kentucky does not recognize a physician-patient privilege, the communications between a physician and patient are still protected by virtue of confidentiality (DN 42, Plaintiff's Response at Pages 3-6). In support of her position, Plaintiff calls attention to the American Medical Association's Principles of Medical Ethics ("AMA Medical Code of Ethics"), which outlines standards of conduct defining the essentials of honorable behavior for the physician. More specifically, Plaintiff cites to Article IV of the AMA Medical Code of Ethics, which is set forth as follows:

> A physician shall respect the rights of patients, colleagues, and other health professionals, and shall safeguard patient confidences and privacy within the constraints of the law.

(emphasis added). Plaintiff cites to several other codes and oaths which can be found in Plaintiff's

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000058 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000042 of 000078

brief at DN 42; however, the undersigned will not address them at length because they are not relevant in the analysis. The undersigned notes that the Code professes to be an ethical guide, not an authority binding on the courts. *See* Davenport, *supra*, 769 S.W.2d at 62. Moreover, the establishment of a qualified protective order, which will be discussed in detail below, ensures that the treating physicians in the instant matter will act "within the constraints of the law." Any concerns Plaintiff has with the *ex parte* communications will be addressed in the qualified protective order.

The boundaries of HIPPA

The Health Insurance Portability and Accountability Act ("HIPPA") became law on August 21, 1996, and sets forth the first comprehensive federal standards for protecting the privacy of personal health information. The standards, contained at 45 C.F.R. §§ 160 and 164, regulate the use and disclosure of protected health information. Protected health information is "individually identifiable health information," which means that the statute protects information about the medical condition of a particular person, rather than widespread medical information. 45 C.F.R. § 160.103.

HIPPA contains a preemption provision whereby the statute and regulations promulgated thereunder should supersede any contrary provision of state law. *See* 45 C.F.R. § 160.203. However, this general rule does not apply if the "[s]tate law relates to the privacy of individually identifiable health information and is more *stringent* than a standard, requirement, or implementation specification" adopted under HIPPA. 45 C.F.R. § 160.203(b) (emphasis added). Because Kentucky law does not expressly prohibit *ex parte* communication, Kentucky law is not more stringent than the requirements set forth under HIPPA and, therefore, HIPPA guides the analysis in this matter.

The starting point for the analysis of whether *ex parte* communication is permissible in light of HIPPA is 45 C.F.R. § 164.512, which governs the disclosure of confidential health information in judicial proceedings. In pertinent part, the statute reads as follows:

> Permitted disclosure. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
> (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order, or
> (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
> (A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
> (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

*See* 45 C.F.R. § 164.512(e)(1) (emphasis added).

HIPPA neither expressly prohibits *ex parte* communications with healthcare providers for an adverse party, nor does it expressly authorize such communications. Federal courts vary significantly in their approach to dealing with *ex parte* communications in light of the confidential information disclosure requirements prescribed in HIPPA.

Plaintiff cites to federal cases prohibiting *ex parte* communication; however, she fails to provide reasons why the undersigned should follow the line of reasoning set forth in those cases (DN 42, Plaintiff's Response at Pages 6-7). While the undersigned respects the decisions in the cases Plaintiff has cited, these cases are not binding in the present matter. The holdings in the cases

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000059 of 000098

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000043 of 000078

Plaintiff cites for support largely rest on the whether state law recognizes the physician-patient privilege and whether state law requires more stringent standards, with regard to ex parte communications, than established under HIPPA. For example, Plaintiff cites to Bonally v. U.S., 216 F.R.D. 478, 480 (D. Az. 2003), in which the District Court of Arizona prohibited *ex parte* communication in order to preserve the integrity of the physician-patient privilege recognized in Arizona. Also, Plaintiff cites to Weaver v. Mann, 90 F.R.D. 443, 445 (D. N.D. 1981) (If defendants in malpractice case desired information from nondefendants' subsequent treating doctors, defendants should avail themselves of conventional discovery procedures provided by Federal Rules of Civil Procedure and refrain from engaging in private conversation with the doctors); Manion v. N.P.W. Medical Center, Inc., 676 F. Supp. 585, 588 (M.D. Pa. 1987) (The Court held that defense counsel was precluded from future contacts with any of Plaintiff's former or current treating physicians unless reasonable advance notice is provided to Plaintiff or his counsel).

On the other hand, some federal districts follow the line of reasoning set forth in Palazzolo v. Mann, 2009 WL 728527, *3 (E.D. Mich. 2009), in which the Eastern District Court of Michigan concluded that *ex parte* interviews are permitted under HIPPA, considering that no state statute prohibited the communication, as long as there is a protective order in place. In order for the *ex parte* interview to be within the boundaries of HIPPA, the Eastern District Court of Michigan adopted the following parameters:

> ...under 45 C.F.R. § 164.512(e)(1)(ii)(B), a qualified protective [order] requires neither specific notice to Plaintiff's counsel nor Plaintiff's consent before Defendant may interview Plaintiff's treating physician ex parte. It does, however, require clear and explicit notice to Plaintiff's treating physician both as to the purpose of the interview and to the fact that the interview is not required. Only by complying with these restrictions, and the requirements made explicit under the statute, may Defendant conduct an ex parte

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000060 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000044 of 000078

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000061 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000045 of 000078

interview with Plaintiff's treating physician. Palazzolo, 2009 WL 728527, *3-4 (citing Croskey v. BMW of North Am., 2005 WL 4704767, *5 (E.D. Mich. 2005). Also, in Bayne v. Provost, 359 F. Supp. 2d. 234, 243 (N.D. N.Y. 2005), the Northern District of New York ordered that a qualified protective order be in place in order to safeguard the confidential information that may be shared during Defendants' *ex parte* communications with Plaintiff's treating physicians.

Based on the foregoing reasons, the undersigned concludes that the *ex parte* communication Defendants seek does not violate HIPPA. Furthermore, confidentiality of Plaintiff's protected health information is safeguarded by virtue of the qualified protective order.

Equal access to fact-witnesses & informal discovery

Defendants argue that *ex parte* communication is not precluded by applicable law, will speed discovery, and most importantly, preserve Defendants' due process rights by leveling the playing field with Plaintiffs (DN 41, Defendants' Motion for Qualified Protective Order). In response, Plaintiff maintains that there is no right of "equal access" to witnesses when the witnesses hold confidential, or fiduciary relationship with the patient-plaintiff (DN 42, Plaintiff's Response at Page 9).

Plaintiff also asserts that Defendants should be limited to formal discovery to obtain information necessary to formulate a claim or defense in the present case. The undersigned rejects Plaintiff's argument, because limiting Defendants to formal discovery channels is counter to efficiency and judicial economy. Informal discovery mechanisms, such as the one requested here, serve as cost-effective means of obtaining factual information to evaluate and develop a case claim

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000062 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000046 of 000078

or defense. Furthermore, the undersigned finds the reasoning of the Eastern District Court of Kentucky on this issue to be sound, whereby Magistrate Judge Todd concluded that treating physicians are fact witnesses and, therefore, both parties should have unfettered access to pertinent information held by them. Welge, *supra*, 2007 WL 2137782, *4. Morever, Magistrate Judge Todd noted that the Federal Rules of Civil Procedure do not restrict contact with witnesses to formal mechanisms such as sworn depositions. Id. (*see*, *e.g.*, Cotton v. Hinton, 559 F.2d 1326, 1332 (5th Cir. 1977) ("informality in the discovery of information is desired"); Williams v. Rene, 72 F.3d 1096, 1103 (3rd Cir. 1995) (rejecting efforts to restrict *ex parte* interviews with treating physicians, noting the benefits of informal gathering of evidence in lieu of "the more expensive and time-consuming procedure of a formal deposition"); Patton v Novartis Consumer Health, Inc., 2005 WL 1799509, *4 (S.D. Ind. 2005) (noting that the Federal Rules "have never been thought to preclude the use of such venerable, if informal, discovery techniques as the ex parte interview of a witness who is willing to speak")). In light of the foregoing reasons, the undersigned concludes that Plaintiff's treating healthcare providers are important fact witnesses and absent a privilege or HIPPA violation, Plaintiff has no standing to restrict Defendants' access to such witnesses.

Presence of Plaintiff's counsel during *ex parte* communication

Plaintiff argues in the alternative that, if the Court allows defense counsel to participate in *ex parte* communications with Plaintiff's treating physicians, she should have advance notice of the proposed contact and an opportunity for her counsel to be present at any meeting or interview (DN 42, Plaintiff's Response at Page 13). Plaintiff contends this will ensure that confidentiality of the physician-patient relationship is not breached (DN 42, Plaintiff's Response at Page 13).

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000063 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000047 of 000078

Plaintiff provides no authority to justify her requests.[3] Allowing Plaintiff's counsel to be present during *ex parte* contacts or interviews defeats the purpose of such communications. Defense counsel should be permitted to engage in *ex parte* communications with Plaintiff's treating physicians in order to gather unbiased information and opinions related to the claim. This objective would be hindered by the presence of Plaintiff's counsel. The court in Weiss concluded that "[t]he presence of plaintiff's counsel during these witness interviews could cause 'interference and disruption.'" 2007 WL 2137782, *5 (*citing* Filz v. Mayo Foundation, 136 F.R.D. 165, 169 n.7 (D. Minn. 1991) ("The presence of patient's counsel, however, undermines one of the main purposes of *ex parte* interviews: permitting attorneys to conduct discovery without the interference and disruption that opposing counsel's presence may cause); Williams v. Rene, 72 F.3d 1096, 1102-03 (3rd Cir. 1995) ("defendant had right to interview treating physician 'without the presence or consent of opposing counsel'") (internal citations omitted); Doe v. Eli Lilly & Co., Inc., 99 F.R.D. 126, 126-28 (D. D.C. 1983) (presence of plaintiff's counsel during interviews of physicians unfairly enables plaintiff "to monitor [defendant's] progress...while his own preparation is under no such scrutiny"). In light of this case law, Plaintiff's request that Defendants provide her with notice of any *ex parte* communications and her request that counsel be present during those communications is unwarranted.

---

[3] Plaintiff argues that Defendants must provide notice of the proposed *ex parte* contact in order for the undersigned to avoid "the necessity of fashioning a remedy" as the Court in Meek v. Vasconez, 2006 WL 1652736 (Ky. App. 2006) had to do. In Meek, defense attorneys engaged in unauthorized communications (without permission of the Court or without a protective order in place) with plaintiff's treating physician, in violation of HIPPA. Id., *2-3. The Court remedied the possible violation by allowing defense attorneys to interview the treating physician prior to trial. Id., *3. This case is irrelevant to the present matter, because the undersigned has already concluded that there is no HIPPA violation, considering that *ex partes* are not prohibited under HIPPA and confidential information will be protected by virtue of the protective order.

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000064 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000048 of 000078

Plaintiff's concern about the breach of the confidential physician-patient relationship is accommodated by the qualified protective order, as prescribed under HIPPA, which will prohibit parties from using or disclosing the protected health information for any purpose other than the litigation for which the protected health information is at issue. Additionally, Plaintiff's treating physicians may choose to engage or not engage in these *ex parte* communications on a voluntary basis. Therefore, the breach of confidentiality is not at issue here.

Conclusion

Based on the foregoing reasons, the undersigned concludes that Defendants are allowed to engage in *ex parte* communications with Sarah Elizabeth Pace's treating healthcare providers. The undersigned's conclusion stems from the following determinations: (1) a physician-patient privilege is not recognized under Kentucky and/or federal law, (2) Kentucky does not contain a statute expressly prohibiting *ex parte* communications, (3) HIPPA does not prohibit *ex parte* communications, (4) confidential health information will be protected by virtue of the protective order, a widely recognized protective procedure under HIPPA, and (5) Defendants have a right to interview fact witnesses in preparation for their claim and/or defense and do so through informal discovery means.

IT IS HEREBY ORDERED that

Defendants' motion for a qualified protective order for *ex parte* communications with Sarah Elizabeth Pace's treating physicians and/or other healthcare providers (DN 41) is GRANTED. Defendants' counsel is free to have *ex parte* contact and communications with Plaintiff's treating physicians and/or other healthcare providers, as long as the qualified protective order is in place.

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000065 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000049 of 000078

Defendants shall advise Plaintiff's treating physicians and/or other healthcare providers that the qualified protective order does not compel them to participate in *ex parte* communication with defense counsel against their wishes, as required by HIPPA, but instead they may do so on a voluntary basis to discuss and/or provide Sarah Elizabeth Pace's medical records that are relevant to this action.

IT IS FURTHER ORDERED that Plaintiff's request to have advance notice of proposed *ex parte* contacts and/or interviews (DN 42) is DENIED. Also, Plaintiff's request to have counsel present before or during these *ex parte* contacts and/or interviews (DN 42) is DENIED.

H. Brent Brennenstuhl
United States Magistrate Judge

August 14, 2013

Copies: Counsel of Record

# EXHIBIT E

EXH : 000050 of 000078 Presiding Judge: HON. STEVEN DANIEL COMBS (635210) B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000066 of 000098

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000067 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000051 of 000078

COMMONWEALTH OF KENTUCKY
MEADE CIRCUIT COURT
DIVISION I
CIVIL ACTION NO. 10-CI-267

TROY CARVER, Administrator for the Estate of CHARLES CARVER — PLAINTIFF

**QUALIFIED PROTECTIVE ORDER**

V.

EXTENDICARE HOMES, INC. d/b/a/ MEDCO CENTER OF BRANDENBURG — DEFENDANT

*******************

This matter is before the Meade Circuit Court on Defendant's Motion for Modification of Order Allowing *Ex Parte* Communications requesting this Court enter a Qualified Protective Order authorizing the health care providers of Mr. Charles Carver (hereinafter "Mr. Carver") to disclose verbally and in writing any and all of Mr. Carver's protected health information to Defendants' counsel through informal private interviews; the Court having considered the parties' briefs and arguments of counsel of record, it is hereby ORDERED as follows:

A. Authorization to All of Mr. Carver's Health Care Providers for the Disclosure of All of Mr. Carver's Protected Health Information Through *Ex Parte* Communications with Counsel for Defendants:

1. All of Mr. Carver's protected health information owned, maintained or otherwise in the custody of Mr. Carver's health care providers is relevant and/or discoverable concerning the Plaintiff's claims and/or the Defendant's defenses which are the subject of this lawsuit;

2. Mr. Carver's health care providers currently have authority under the HIPAA compliant authorization executed by Plaintiff as Mr. Carver's legal representative to disclose all of Mr. Carver's protected health information to Plaintiff's counsel





through informal, independent, ex parte communications with Plaintiff's counsel and/or her agents;

3. Pursuant to the Health Information Portability and Accountability Act (HIPAA) Privacy Regulation, 45 CFR § 164.512(e)(1)(i) and applicable Kentucky state law, this Court has the authority to issue this order authorizing the health care providers of Mr. Carver to disclose any and all of Mr. Carver's protected health information of which they have knowledge or possession to the Defendants through informal private interviews with Defendants' counsel and/or their agents;

4. The health care providers of Charles Carver are expressly authorized under this order to produce all protected health information of Mr. Carver of which the provider has knowledge or possession to the Defendant through informal, independent, ex parte communications with Defendant's attorneys and/or their agents;

5. Mr. Carver's health care providers are authorized to meet with Defendant's counsel without first obtaining an authorization signed by Mr. Carver's legal representative;

6. This order provides the legal authority to Mr. Carver's health care providers to produce all of Mr. Carver's protected health information through informal communications with Defendants' counsel in complete compliance with HIPAA and all applicable law; and

7. Mr. Carver's health care providers are authorized to meet with Defendants' counsel or their agents without the presence of counsel for the Plaintiff.

B. The Parties' Use and Provision for the Security of Mr. Carver's Protected Health Information

1. The parties shall mark as "confidential" and store in a secure location all records and other information provided to them by Mr. Carver's health care providers;

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000068 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000052 of 000078

2. The parties shall ensure that only persons who are involved in this matter shall have access to the records and other information provided to them by Mr. Carver's health care providers; and

3. The parties shall not use or disclose the records and other information provided to them by Mr. Carver's health care providers for any purpose not related to the subject litigation.

So ordered, this the 11 day of May, 2012.

Hon. Bruce Butler, Judge
Meade Circuit Court

Tendered by:

Edmund J. Benson
Counsel for Defendants

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000069 of 000098

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000053 of 000078

CLERK'S CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing order has been served upon the parties by mailing same to their attorney of record, on this the 23rd day of May, 2013.

Martha Marie Eastman
Eastman Law Office, P.S.C.
3721 Taylorsville Road
Louisville, KY 40220
COUNSEL FOR PLAINTIFF

Edmund J. Benson
William J. George
Frost Brown Todd, LLC
250 West Main Street, Suite 2800
Lexington, KY 40507
COUNSEL FOR DEFENDANT

[signature]
CLERK, MEADE CIRCUIT COURT
M. [signature] D.C.

LEXLibrary 1.0.7460.0590149 5079231v1

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000070 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000054 of 000078

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

# EXHIBIT F

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000071 of 000098

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000055 of 000078

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000072 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000056 of 000078

COMMONWEALTH OF KENTUCKY
OHIO CIRCUIT COURT
CIVIL BRANCH
CIVIL ACTION NO. 11-CI-00016

JIMMY COLBURN, as Administrator of the Estate of MICHAEL COLBURN, Deceased — PLAINTIFFS

QUALIFIED PROTECTIVE ORDER

v.

EXTENDICARE HOMES, INC. d/b/a FORDSVILLE NURSING AND REHABILITATION CENTER; and DAVID BROWN, in his capacity as the Administrator of Fordsville Nursing and Rehabilitation Center, — DEFENDANTS

******************

This matter is before the Arbitration Panel on Defendants' Motion for Qualified Protective Order authorizing the health care providers of Mr. Michael Colburn (hereinafter "Mr. Colburn") to disclose verbally and in writing any and all of Mr. Colburn's protected health information to Defendants' counsel through informal private interviews; the Panel having considered the parties' briefs and arguments of counsel of record; and the Panel having determined that Plaintiff has received very effective assistance of counsel from attorney Matt McGill; it is hereby ORDERED as follows:

A. Authorization to All of Mr. Colburn's Health Care Providers for the Disclosure of All of Mr. Colburn's Protected Health Information Through Ex Parte Communications with Counsel for Defendants:

1. All of Mr. Colburn's protected health information owned, maintained or otherwise in the custody of all of Mr. Colburn's health care providers is relevant and/or discoverable concerning the Plaintiff's claims and/or the Defendants' defenses which are the subject of this lawsuit;

2. Mr. Colburn's health care providers currently have authority under the HIPAA compliant authorization executed by Plaintiff as Mr. Colburn's legal representative to disclose all of Mr. Colburn's Protected Health Information to Plaintiff's counsel

through informal, independent, *ex parte* communications with Plaintiff's attorneys and/or their agents;

3. Pursuant to the Health Information Portability and Accountability Act (HIPAA) Privacy Regulation, 45 CFR § 164.512(e)(1)(i) and applicable Kentucky state law, this Arbitration Panel is an administrative tribunal having the authority to issue this order authorizing the health care providers of Mr. Colburn to disclose any and all of Mr. Colburn's protected health information of which they have knowledge or possession to the Defendants through informal private interviews with Defendants' counsel and/or their agents;

4. The health care providers of Michael Colburn are expressly authorized, but not required, under this order to disclose all protected health information of Mr. Colburn of which the provider has knowledge or possession to Defendants through informal, independent, *ex parte* communications with Defendants' attorneys and/or their agents;

5. Mr. Colburn's health care providers are authorized to meet with Defendants' counsel without first obtaining an authorization signed by Mr. Colburn's legal representative;

6. This order provides the legal authority to Mr. Colburn's health care providers to produce Mr. Colburn's protected health information through informal communications with Defendants' counsel in complete compliance with HIPAA and all applicable law; and

7. Mr. Colburn's health care providers are authorized to meet with Defendants' counsel or their agents without the presence of counsel for the Plaintiff.

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000073 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000057 of 000078

B. The Parties' Obligations Concerning Ms. Colburn's Protected Health Information:

1. The parties shall mark as "confidential" and store in a secure location all records and other information provided to them by Ms. Colburn's health care providers;

2. The parties shall ensure that only persons who are involved in this matter shall have access to the records and other information provided to them by Ms. Colburn's health care providers; and

3. The parties shall not use or disclose the records and other information provided to them by Ms. Colburn's health care providers for any purpose not related to the subject litigation.

So ordered, this the 22 day of April, 2012.

[signature]
Arbitration Panel

Tendered by:

Edmund J. Benson
William J. George
Counsel for Defendants

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000074 of 000098

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000058 of 000078

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000075 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000059 of 000078

CLERK'S CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing order has been served upon the parties by mailing same to their attorney of record, on this the 27th day of April, 2012.

Gary S. Logsdon
101 E. Main Cross Street
P.O. Box 382
Brownsville, KY 42210-0382

Matthew M. McGill
English, Lucas, Priest & Owsley, LLP
P.O. Box 770
Bowling Green, KY 42102-0770
COUNSEL FOR PLAINTIFF

Edmund J. Benson
William J. George
Frost Brown Todd, LLC
250 West Main Street, Suite 2800
Lexington, KY 40507
COUNSEL FOR DEFENDANT

[signature]
For the Arbitration Panel

LEXLibrary LR04069.0590191 40492341

EXHIBIT G

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000076 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000060 of 000078



B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000077 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000061 of 000078

COMMONWEALTH OF KENTUCKY
MAGOFFIN CIRCUIT COURT
CIVIL BRANCH
CIVIL ACTION NO. 09-CI-00127

DAVID LEMASTER, Executor of the Estate of
DOSHA E. LEMASTER PLAINTIFF

V. **AGREED QUALIFIED PROTECTIVE ORDER**

EXTENDICARE HOMES, INC.
d/b/a/ SALYERSVILLE HEALTH CARE CENTER, et al. DEFENDANTS

********************

Upon the agreement of the parties, this Qualified Protective Order hereby authorizes the health care providers of Mrs. Dosha Lemaster (hereinafter "Mrs. Lemaster") to disclose verbally and in writing any and all of Mrs. Lemaster's protected health information to Defendants' counsel through informal private interviews; and is hereby ORDERED as follows:

<u>Authorization to All of Mrs. Lemaster's Health Care Providers for the Disclosure of All of Mrs. Lemaster's Protected Health Information Through Ex Parte Communications with Counsel for Defendants:</u>

1. The health care providers of Mrs. Lemaster are expressly authorized, but not required, under this order to disclose <u>all protected health information of Mrs. Lemaster</u> of which the provider has knowledge or possession to Defendants through informal, independent, *ex parte* communications with Defendants' counsel and/or their agents;

2. Pursuant to the Health Information Portability and Accountability Act (HIPAA) Privacy Regulation, 45 CFR § 164.512(e)(1)(i) and applicable Kentucky state law, this Court has the authority to issue this order authorizing the health care providers of Mrs. Lemaster to disclose any and all of Mrs. Lemaster's protected health information of which they have knowledge or possession to the Defendants through informal private interviews with Defendants' counsel and/or their agents;

3. Mrs. Lamaster's health care providers are authorized to meet with Defendants' counsel without first obtaining an authorization signed by Mrs. Lamaster's legal representative;

4. Mrs. Lamaster's health care providers are authorized to meet with Defendants' counsel or their agents without the presence of counsel for the Plaintiff.

So ordered, this the 17th day of May, 2012.

Judge, Magoffin Circuit Court

Tendered & Agreed to by:

Edmund J. Benson
William J. George
Counsel for Defendants

Agreed to by:

Martha Eastman (with permission and by William George)
Martha Eastman
Counsel for Plaintiff

CLERK'S CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing order has been served upon the parties by mailing same to their attorney of record, on this the 18 day of May, 2012.

Martha Marie Eastman
EASTMAN LAW OFFICE, P.S.C.
3721 Taylorsville Road
Louisville, KY 40220
COUNSEL FOR PLAINTIFF

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000078 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000062 of 000078

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000079 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000063 of 000078

Edmund J. Benson
William J. George
FROST BROWN TODD, LLC
250 West Main Street, Suite 2800
Lexington, KY 40507
COUNSEL FOR DEFENDANT

[signature]
Clerk, Magoffin Circuit Court
By [signature]

LEXLibrary 0101169.0590179 511108v3

EXHIBIT H

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000080 of 000098

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000064 of 000078

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000081 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000065 of 000078

COMMONWEALTH OF KENTUCKY
50TH JUDICIAL CIRCUIT
BOYLE CIRCUIT COURT
CASE NO.: 13-CI-00303

KENNETH DOWNS and TERRY SPARKS, as CO-ADMINISTRATORS of the ESTATE of EUGENE DOWNS, DECEASED — PLAINTIFFS

v.

**ORDER PERMITTING DEFENDANTS' TO HAVE *EX PARTE* COMMUNICATIONS WITH EUGENE DOWNS' TREATING MEDICAL PROVIDERS**

KINDRED HEALTHCARE, INC.;
KINDRED NURSING CENTERS LIMITED PARTNERSHIP
d/b/a KINDRED NURSING AND REHABILITATION - DANVILLE
f/k/a DANVILLE CENTRE FOR HEALTH AND REHABILITATION;
KINDRED NURSING CENTERS EAST, LLC;
KINDRED HOSPITALS LIMITED PARTNERSHIP;
KINDRED HEALTHCARE OPERATING, INC.;
KINDRED REHAB SERVICES, INC.
d/b/a PEOPLEfirst REHABILITATION; and
JOHN DOES 1 THOUGH 5,
UNKNOWN DEFENDANTS — DEFENDANTS

* * * * * * * * * *

This matter came before the Court for a hearing on January 8, 2014, on Defendants' Motion for Qualified Protective Order to Have *Ex Parte* Communications with Eugene Downs' Medical Providers, this Court having reviewed the briefs of the parties, including Mr. Downs' objections thereto, the record as a whole, and having also considered the arguments of counsel at the hearing, and being otherwise sufficiently advised, hereby GRANTS Defendants' Motion and authorizes but does not require the health care providers of Eugene Downs to disclose verbally and in writing any and all of Eugene Downs' protected health information to Defendants' counsel by informal private interviews through this Qualified Protective Order if they so choose.

While Defendants' counsel may meet with Eugene Downs' health care providers *ex parte*, those providers are to be notified in writing that they are not under any obligation or being compelled to speak with or provide any documentation to Defendants' counsel and the providers are entitled to compensation for the time spent meeting with Defendants' counsel if they so choose to be compensated. The Court, hereby ORDERS:

A. All of Eugene Downs' Health Care Providers May If they Wish, Disclose All of Eugene Downs' Protected Health Information Through Ex Parte Communications with Counsel for Defendants But Are Not Required To Do So.

1. The Defendants, their counsel, representatives, or agents are to inform said health care providers of the fact that they are not required, in any way, to engage in any conversation or to release any information prior to requesting anything from said health care providers.

2. All of Eugene Downs' protected health information owned, maintained, or otherwise in the custody of all of Eugene Downs' health care providers is relevant and/or discoverable concerning the Plaintiffs' claims and/or the Defendants' defenses which are the subject of this lawsuit and is particularly relevant and/or discoverable during the limited discovery phase of this litigation while the Defendants' Motion to Compel Arbitration is pending before this Court;

3. Pursuant to Health Information Portability and Accountability Act (HIPAA) Privacy Regulation, 45 CFR § 164.512(e)(1)(i) and applicable Kentucky state law, this Court has the authority to issue this order authorizing but not requiring the health care providers of Eugene Downs to disclose any and all of Eugene Downs' protected health information of which they have knowledge and possession to the Defendants through informal private interviews with Defendants' counsel and/or their agents;

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000082 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000066 of 000078

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000083 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000067 of 000078

4. The health care providers of Eugene Downs are expressly authorized, but not required, under this order to disclose all protected health information of Eugene Downs of which the provider has knowledge or possession to Defendants through informal, independent, *ex parte* communications with Defendants' attorneys and/or their agents;

5. The health care providers of Eugene Downs are to be notified in writing that they are under no obligation and are not being compelled to speak with Defendants' counsel or supply Defendants' counsel with any documentation;

6. Eugene Downs' health care providers are authorized, but not compelled, to meet with Defendants' counsel without first obtaining an authorization signed by Eugene Downs' legal representative. Mr. Downs' objections to Defendants' Motion have been heard by this Court and overruled;

7. This order provides the legal authority to Eugene Downs' health care providers to produce Eugene Downs' protected health information through informal communications with Defendants' counsel, if they so choose, in complete compliance with HIPAA and all applicable law;

8. Eugene Downs' health care providers are authorized, but not compelled, to meet with Defendants' counsel or their agents without the presence of counsel for the Plaintiff; and

9. Eugene Downs' health care providers are entitled to compensation for the time spent meeting with Defendants' counsel if they so choose to be compensated and the Defendants are to so inform the health care provider prior to seeking any information.

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000084 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000068 of 000078

BOYLE CIRCUIT COURT

CASE NO: 13-CI-303

B. The Parties Obligations Concerning Eugene Downs' Protected Health Information

1. The parties shall mark as 'confidential' and store in a secure location all records and other information provided to them by Eugene Downs' health care providers;

2. The parties shall ensure that only persons who are involved in this matter shall have access to the records and other information provided to them by Eugene Downs' health care providers; and

3. The parties shall not use or disclose the records and other information provided to them by Eugene Downs' health care providers for any purpose not related to the subject litigation.

Entered this 29th day of January, 2014.

HON. DARREN W. PECKLER,
CHIEF CIRCUIT JUDGE
BOYLE CIRCUIT COURT

CASE NO: 13-CI-309

BOYLE CIRCUIT COURT

CLERK'S CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been served this 27 day of Jan, 2014, via U.S. Mail, postage prepaid, upon the following:

Tyler Koch Forsythe
Sandra D. Sutter
Wilkes & McHugh, P.A.
429 N. Broadway
Lexington, KY 40508
COUNSEL FOR PLAINTIFF

Hon. Donald Miller II

J. Peter Cassidy, III
Matthew C. Cocanougher
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
COUNSEL FOR DEFENDANTS

BOYLE CIRCUIT CLERK

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000085 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000069 of 000078

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000086 of 000098

EXH : 000078 of 000078 Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

# EXHIBIT I

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000087 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000071 of 000078

ENTERED
KENTON CIRCUIT/DISTRICT COURT
AUG 20 2014
JOHN D. MIDDLETON
BY ALF D.C.

COMMONWEALTH OF KENTUCKY
KENTON CIRCUIT COURT
DIVISION III
CIVIL ACTION NO. 13-CI-1577

BARBARA HALEY, INDIVIDUALLY AND AS NEXT FRIEND OF HER DECEASED HUSBAND, HERBERT HALEY, AND THE ESTATE OF HERBERT HALEY, BARBARA HALEY, ADMINISTRATRIX, PLAINTIFFS

v. **QUALIFIED PROTECTIVE ORDER ALLOWING FOR *EX PARTE* COMMUNICATIONS**

WOODCREST MANOR, LLC; JOHN AND JANE DOES, M.D.'s; and JOHN AND JANE DOES, Healthcare Providers DEFENDANTS

******************

Upon Defendants' Motion, this Court having heard all parties of record and considered all pleadings, hereby authorizes the health care providers of Herbert Haley (hereinafter "Mr. Haley") to disclose verbally and in writing any and all of Mr. Haley's protected health information to Defendants' counsel by informal private interviews through this Qualified Protective Order.

It is hereby ORDERED as follows:

A. **Authorization to All of Mr. Haley's Health Care Providers for the Disclosure of All of Mr. Haley's Protected Health Information Through *Ex Parte* Communications with Counsel for Defendants:**

1. All of Mr. Haley's protected health information owned, maintained or otherwise in the custody of all of Mr. Haley's health care providers is relevant and/or discoverable concerning the Plaintiff's claims and/or the Defendants' defenses which are the subject of this lawsuit;

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000088 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000072 of 000078

2. Pursuant to the Health Information Portability and Accountability Act (HIPAA) Privacy Regulation, 45 CFR § 164.512(e)(1)(I) and applicable Kentucky state law, this Court has the authority to issue this order authorizing the health care providers of Mr. Haley to disclose any and all of Mr. Haley's protected health information, of which they have knowledge or possession to the Defendants through informal private interviews with Defendants' counsel and/or their agents;

3. The health care providers of Herbert Haley are expressly authorized, but not required, under this order to disclose all protected health information of Mr. Haley of which the provider has knowledge or possession to Defendants through informal, independent, *ex parte* communications with Defendants' attorneys and/or their agents;

4. Mr. Haley's health care providers are authorized to meet with Defendants' counsel without first obtaining an authorization signed by Mr. Haley's legal representative;

5. This order provides the legal authority to Mr. Haley's health care providers to produce Mr. Haley's protected health information through informal communications with Defendants' counsel in complete compliance with HIPAA and all applicable law; and

6. Mr. Haley's health care providers are authorized to meet with Defendants' counsel or their agents without the presence of counsel for the Plaintiff.

B. The Parties' Obligations Concerning Mr. Haley's Protected Health Information:

1. The parties shall mark as 'confidential' and store in a secure location all records and other information provided to them by Mr. Haley's health care providers;

2. The parties shall ensure that only persons who are involved in this matter shall have access to the records and other information provided to them by Mr. Haley's health care providers; and

3. The parties shall not use or disclose the records and other information provided to them by Mr. Haley's health care providers for any purpose not related to the subject litigation.

So ordered, this the 19th day of August, 2014.

Judge, Kenton Circuit Court

Drafted and tendered by:

Edmund J. Benson
Kathryn T. Martin,
Counsel for Defendants

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000089 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000073 of 000078

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000090 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000074 of 000078

CLERK'S CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing order has been served upon the parties by mailing same to their attorney of record, on this the 26th day of Aug. 2014.

Russell T. Elliott
5247 Madison Pike
Independence, KY 41051
Telephone: (513) 729-1999
Facsimile: (513) 381-4084
relliott@aeledeters.com
COUNSEL FOR PLAINTIFFS

Edmund J. Benson
Kathryn T. Martin
Frost Brown Todd, LLC
250 West Main Street, Suite 2800
Lexington, KY 40507
COUNSEL FOR DEFENDANT

John C. Middleton
by: A. Ferguson D.C.
KENTON CIRCUIT COURT CLERK

C:\Users\1099\AppData\Roaming\NetDocuments\tmEcho\Proposed Qualified Protective Order re Ex Parte.doc

ENTERED
KENTON CIRCUIT/DISTRICT COURT
SEP 22 2014
JOHN C. MIDDLETON
BY ______ D.C.

COMMONWEALTH OF KENTUCKY
KENTON CIRCUIT COURT
FOURTH DIVISION
CIVIL ACTION NO. 13-CI-01244

TERRY MEDLOCK, As Administrator of the Estate OF DEBORAH MEDLOCK, Deceased — PLAINTIFF

v. **QUALIFIED PROTECTIVE ORDER ALLOWING FOR *EX PARTE* COMMUNICATIONS**

EXTENDICARE HEALTH SERVICES, INC. et al. — DEFENDANTS

* * * * * * * * * * * * * *

Upon Motion of the Defendants, this Court hereby authorizes the health care providers of Ms. Deborah Medlock (hereinafter "Ms. Medlock") to disclose verbally and in writing any and all of Ms. Medlock's protected health information to Defendant's counsel by informal private interviews through this Qualified Protective Order. It is hereby ORDERED as follows:

A. Authorization to All of Ms. Medlock's Health Care Providers for the Disclosure of All of Ms. Medlock's Protected Health Information Through *Ex Parte* Communications with Counsel for the Defendants

1. All of Ms. Medlock's protected health information owned, maintained or otherwise in the custody of all of Ms. Medlock's health care providers is relevant and/or discoverable concerning the Plaintiff's claims and/or the Defendants' defenses which are the subject of this lawsuit;

2. Ms. Medlock's health care providers currently have authority under a HIPAA compliant authorization executed by Plaintiff as Ms. Medlock's legal representative to disclose all of Ms. Medlock's Protected Health Information to Plaintiff's counsel through informal, independent, *ex parte* communications with Plaintiff's attorneys and/or their agents;

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000091 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000075 of 000078

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000092 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000076 of 000078

3. Pursuant to the Health Information Portability and Accountability Act (HIPAA) Privacy Regulation, 45 CFR § 164.512(e)(1)(i) and applicable Kentucky state law, this Court has the authority to issue this order authorizing the health care providers of Ms. Medlock to disclose any and all of Ms. Medlock's protected health information of which they have knowledge or possession to the Defendants through informal private interviews with Defendants' counsel and/or their agents;

4. The health care providers of Deborah Medlock are expressly authorized, but not required, under this order to disclose <u>all protected health information of Ms. Medlock</u> of which the provider has knowledge or possession to the Defendants through informal, independent, *ex parte* communications with the Defendants' attorneys and/or their agents;

5. Ms. Medlock's health care providers are authorized to meet with Defendants' counsel without first obtaining an authorization signed by Ms. Medlock's legal representative;

6. This order provides the legal authority to Ms. Medlock's health care providers to produce Ms. Medlock's protected health information through informal communications with Defendants' counsel in complete compliance with HIPAA and all applicable law; and

7. Ms. Medlock's health care providers are authorized to meet with Defendants' counsel or their agents without the presence of counsel for the Plaintiff.

B. <u>The Parties' Obligations Concerning Ms. Medlock's Protected Health Information:</u>

1. The parties shall mark as 'confidential' and store in a secure location all records and other information provided to them by Ms. Medlock's health care providers;

2. The parties shall ensure that only persons who are involved in this matter shall have access to the records and other information provided to them by Ms. Medlock's health care providers; and

3. The parties shall not use or disclose the records and other information provided to them by Ms. Medlock's health care providers for any purpose not related to the subject litigation.

So ordered, this the 17th day of September 2014.

Kenton Circuit Court
Judge, Division IV

Drafted and tendered by:

Edmund J. Benson
Kathryn T. Martin
Counsel for Defendants

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000093 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000077 of 000078

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000094 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000078 of 000078

CLERK'S CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing order has been served upon the parties by mailing same to their attorney of record, on this the 22 day of Sept., 2014:

Penny Unkraut Hendy, Esq.
Jay R. Vaughan, Esq.
Timothy J. Byland, Esq.
Schachter, Hendy & Johnson, PSC
909 Wright's Summit Parkway, Suite 210
Ft. Wright, KY 41011

M. Chad Trammell, Esq.
The Trammell Law Firm, PLLC
418 North State Line Avenue
Texarkana, AR 71854

COUNSEL FOR PLAINTIFF

Edmund J. Benson
Kathryn T. Martin
Frost Brown Todd, LLC
250 West Main Street, Suite 2800
Lexington, KY 40507
COUNSEL FOR DEFENDANTS

By: Jessica Roberts D.C.
CLERK OF THE KENTON CIRCUIT COURT

(818-106) 4293v1

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the ESTATE of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

---

**QUALIFIED PROTECTIVE ORDER ALLOWING FOR *EX PARTE* COMMUNICATIONS**

---

Upon Defendant's Motion, this Court having heard all parties of record and considered all pleadings, hereby authorizes the health care providers of Helen Ray (hereinafter "Ms. Ray") to disclose verbally and in writing any and all of Ms. Ray's protected health information to Defendant's counsel by informal private interviews through this Qualified Protective Order.

It is hereby ORDERED as follows:

**A. Authorization to All of Ms. Ray's Health Care Providers for the Disclosure of all of Ms. Ray's Protected Health Information Through *Ex Parte* Communications with Counsel for Defendants:**

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000095 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
TD : 000001 of 000004

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000096 of 000098

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

TD : 000002 of 000004

1. All of Ms. Ray's protected health information owned, maintained or otherwise in the custody of all of Ms. Ray's health care providers is relevant and/or discoverable concerning the Plaintiff's claims and/or the Defendants' defenses which are the subject of this lawsuit;

2. Pursuant to the Health Information Portability and Accountability Act (HIPAA) Privacy Regulation, 45 CFR § 164.512(e)(1)(i) and applicable Kentucky state law, this Court has authority to issue this order authorizing the health care providers of Ms. Ray to disclose any and all of Ms. Ray's protected health information of which they have knowledge or possession to the Defendants through informal private interviews with Defendants' counsel and/or their agents;

3. The health care providers of Helen Ray are expressly authorized, but not required, under this order to disclose **all protected health information of Ms. Ray** of which the provider has knowledge or possession to Defendants through informal, independent, *ex parte* communications with Defendants' attorneys and/or their agents.

4. Ms. Ray's health care providers are authorized to meet with Defendants' counsel without first obtaining an authorization signed by Ms. Ray's legal representative;

5. This order provides the legal authority to Ms. Ray's health care providers to produce Ms. Ray's protected health information through informal communications with Defendants' counsel in complete compliance with HIPAA and all applicable law; and

6. Ms. Ray's health care providers are authorized to meet with Defendants' counsel or their agents without the presence of counsel for the Plaintiff.

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000097 of 000098

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

TD : 000003 of 000004

**B. The Parties' Obligations Concerning Ms. Ray's Protected Health Information:**

1. The parties shall mark as "confidential" and store in a secure location all records and other information provided to them by Ms. Ray's health care providers;
2. The parties shall ensure that only persons who are involved in this matter shall have access to the records and other information provided to them by Ms. Ray's health care providers; and
3. The parties shall not use or disclose the records and other information provided to them by Ms. Ray's health care providers for any purpose not related to the subject litigation.

So ordered, this the _____ day of ___________________, 2016.

________________________________________
JUDGE, PIKE CIRCUIT COURT
DIVISION II

**Drafted and tendered by:**

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

**CLERK'S CERTIFICATE OF SERVICE**

I hereby certify that on the ____ of _______________, 2016, I mailed a copy of the foregoing via regular mail to the following:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507
*Counsel for Plaintiff*

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
*Counsel for Defendant*

____________________________________
PIKE CIRCUIT CLERK

B194F166-3F96-4B9D-9E04-6C6E643DC992 : 000098 of 000098
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
TD : 000004 of 000004

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the ESTATE of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * * * *

**MOTION TO DISMISS RESIDENT'S RIGHTS CLAIMS AND ATTENDANT CLAIMS FOR ATTORNEYS FEES**

Defendants, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View") and Life Care Centers of America, Inc. ("Defendants"), through counsel, move this Court to dismiss Plaintiff's Resident's Rights Claims and claims for attorney's fees made pursuant to KRS §216.515(26).

The Kentucky Supreme Court's recent unanimous decision in

580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000001 of 000024
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
DIS : 000001 of 000012

*Administrator of the Estate of Lula Belle Gordon, Deceased v. Kindred Nursing Centers Limited Partnership, d/b/a Harrodsburg Health Care Center, et al.*, 2013-SC-000620, 2015 WL 4967188 (Aug. 20, 2015)(copy attached as Exhibit 1), requires dismissal of Plaintiff's claims asserted in her Complaint at paragraphs 48 through 52 alleging several violations of the Resident's Rights Act, KRS §216.515, as well as all attendant claims for attorney's fees under this statute. *Overstreet* held that "actions …brought to enforce rights created exclusively by KRS 216.515 must be brought by the 'resident or his guardian' pursuant to KRS 216.515(26), and therefore do not survive the resident's death." *Overstreet*, 2015 WL 4967188 at *1. Ms. Ray is deceased; consequently, her estate cannot maintain non-personal injury resident's rights violation claims and they must be dismissed including any claim for attorney fees.

## I. *OVERSTREET* REQUIRES DISMISSAL OF PLAINTIFF'S CLAIMS BROUGHT PURSUANT TO KRS §216.515

In *Overstreet*, the Kentucky Supreme Court definitively interpreted KRS §216.515(26), the statute permitting a cause of action for recovery under the Resident's Rights Act. Because Plaintiff asserts a right to recover compensatory and punitive damages, as well as attorney's fees, under KRS §216.515(26), *Overstreet* applies and controls this case.[1]

Plaintiffs' Complaint alleges pursuant to the Resident's Rights Act:

**VIOLATIONS OF LONG TERM CARE RESIDENT'S RIGHTS**

48. Plaintiff incorporates all of the allegations contained in Paragraphs 1 — 47 as if fully set forth herein.

49. Nursing Home Defendants violated statutory duties owed to Helen Ray as a resident of a long term care facility, KRS 216.510 *et seq.* These statutory duties were non-delegable.

[1] The statute never intended to allow "double recovery," *i.e.*, recovering twice for the same act and injury. *See Allen v. Extendicare Homes, Inc.*, No. 2012-CA-00050-MR, 2012 WL 6553823 at *4 (Ky. App. Dec. 14, 2012). *See also*, *McAuliffe v. W. States Imp. Co.*, 651 N.E.2d 957, 960 (Ohio 1995). *See also*, Section III, *infra*, concerning attorney's fees awards for personal injury claims under KRS §216.515(26).

580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000002 of 000024

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

DIS : 000002 of 000012

580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000003 of 000024

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

DIS : 000003 of 000012

50. The violations of the resident's rights of Helen Ray include, but are not limited to, the following:

a) Violation of the right to be free from mental and physical abuse and neglect;

b) Violation of the right to be treated with consideration, respect, and full recognition of her dignity and individuality, including privacy in treatment and in care for her personal needs;

c) Violation of the right to have a responsible party or family member or her guardian to be informed of the resident's medical condition unless medically contraindicated and documented by a physician in the resident's medical record;

d) Violation of the right to have a responsible party or family member or her guardian notified immediately of any accident, sudden illness, disease, unexplained absence, or anything unusual involving the resident;

e) Violation of the right to have an adequate and appropriate resident care plan developed, implemented and updated to meet her needs; and

f) Violation of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services, pursuant to provisions of KRS Chapter 216 and the regulations promulgated there under.

51. As a result of the aforementioned violations of the Resident's Rights Statutes by Nursing Home Defendants, pursuant to K.R.S. § 216.515(26), Plaintiff is entitled to recover actual damages in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, as well as costs and attorney's fees.

52. With regard to the aforementioned violations of the Resident's Rights Act, Nursing Home Defendants acted with oppression, fraud, malice, or were grossly negligent by acting with wanton and reckless disregard for the rights of Helen Ray and, pursuant to KRS 216.515(26), Plaintiff is entitled to punitive damages from Nursing Home Defendants in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, as well as costs and attorney's fees.

Complaint, p. 18-19.

Comparing Plaintiff's allegations to KRS §216.515's provisions, the Complaint alleges violations of rights enumerated in KRS §216.515 subsections (18), (19), (22) and (6), as shown:

> The allegation concerning dignity corresponds to (18): "Each resident shall be treated with consideration, respect, and full recognition of his dignity and individuality, including privacy in treatment and in care for his personal needs";
>
> The allegation concerning family members being informed of medical condition corresponds to (19) "Each resident and the responsible party or his responsible family member or his guardian has the right to be fully informed of the resident's medical condition unless medically contraindicated and documented by a physician in the resident's medical record.
>
> The allegation concerning family notification corresponds to subsection (22): "The resident's responsible party or family member or his guardian shall be notified immediately of any accident, sudden illness, disease, unexplained absence, or anything unusual involving the resident";
>
> The allegation concerning abuse and neglect corresponds to subsection (6): "All residents shall be free from mental and physical abuse, and free from chemical and physical restraints except in emergencies or except as thoroughly justified in writing by a physician for a specified and limited period of time and documented in the resident's medical record."

*See* Complaint. All of these allegations relate to injuries to the person and certainly eliminate any possibility of a separate "instruction" on duties or damages.

KRS §411.140[2] provides that the right to recover for certain actions survives an individual's death, permitting the estate to recover damages posthumously. In other words, (and with limited exceptions not applicable here), no action for "personal injury" and "injury to real or personal property" dies with an individual and may be brought by the individual's personal representative after her death.

However, and as the *Overstreet* Court recognized, KRS §216.515 claims alleging violations of those statutorily-created rights not derived from or available as common law actions

[2] **411.140 What action shall survive.**
No right of action for personal injury or for injury to real or personal property shall cease or die with the person injuring or injured, except actions for slander, libel, criminal conversation, and so much of the action for malicious prosecution as is intended to recover for the personal injury. For any other injury an action may be brought or revived by the personal representative, or against the personal representative, heir or devisee, in the same manner as causes of action founded on contract.

580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000004 of 000024
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
DIS : 000004 of 000012

for "personal injury" or "injury to real or personal property" do not fit within KRS §411.140's parameters. Therefore, those claims do not survive an individual's death. *See Overstreet*, 2015 WL 4967188 at *7. Accordingly, all of Plaintiff's allegations contained in her Complaint in paragraphs 48 through 52 concerning violations of the Residents Rights Act for subsections (18), (19) and (22) must be dismissed.

The *Overstreet* Court found that violations of the "legislatively-established" KRS §216.515 rights enumerated and existing independently of common law personal injury claims do not survive the resident's death, while the claims made under the statute for "injury to the person" are simply duplications of the common law claims. *See Overstreet*, 2015 WL 4967188 at *4-5.

*Overstreet* noted that KRS §216.515(26) expressly requires that actions to recover for these statutory rights' violations may be brought only "by the resident or his guardian." *See Overstreet*, 2015 WL 4967188 at *6. *See also*, KRS §216.515(26). The Court reasoned that, by specifying precisely who can bring the action, the legislature intended the cause of action to benefit the living resident during her lifetime and does not survive death: "There is nothing to be gained in a posthumous action, for example, to vindicate the resident's right of access to a telephone or to wear her own clothing." *Overstreet*, 2015 WL 4967188 at * 6. *Overstreet* concluded that, other than claims for **personal injury** brought under KRS §216.515(6), (Plaintiff's Complaint, paragraph 50(a), quotes language from this subparagraph), liabilities created by the statute do not fit within KRS §411.140. Consequently, an action for violations of KRS §216.515[3] must be brought during the life of the resident by the resident or his/her guardian. A personal representative cannot maintain these claims after death. *See id*. at * 7.

[3] The Court excluded from this holding KRS §216.515(6) claims that allege personal injury, as falling within KRS §411.140's parameters.

580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000005 of 000024
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
DIS : 000005 of 000012

*Overstreet* requires dismissal of Plaintiff's claims for violations of the Resident's Rights Act, pursuant to the Complaint's Paragraphs 48 through 52, along with dismissal of her attendant claims for attorney's fees made pursuant to KRS §216.515(26).

## II. KRS § 216.515(6) DID NOT CREATE A SEPARATE CAUSE OF ACTION PERMITTING DUAL RECOVERY FOR THE SAME ALLEGED WRONG

Plaintiff appears to also allege a violation of KRS §216.515(6), which *Overstreet* recognizes may include allegations of personal injury and survive the resident's death, pursuant to KRS §411.140. Regardless, Plaintiff cannot recover twice for the same act causing the same personal injury under KRS §216.515(6) and also under their stated common law theories of recovery (*see, e.g.*, Paragraphs 27 through 47 and 60 through 71 of the Complaint). This would amount to a double recovery neither intended nor permitted under Kentucky law.

As discussed above, *Overstreet* determined that the Act's purpose intended that actions for resident's rights violations arising under the statute be addressed and resolved during the residency. *See Overstreet*, 2015 WL 4967188. This is further evidenced by the statute's permitting attorney's fees as a cost-shifting enforcement measure. *See* KRS §216.515(26). KRS § 216.515(26) affirms, "The remedies provided in this section are in addition to and cumulative with other legal and administrative remedies available to a resident and to the cabinet." *See id.*

The common law right to prosecute a personal injury cause of action pre-dated KRS §216.515's enactment. Specifically with regard to personal injury claims, *Overstreet* affirmed that the statute reiterates and codifies the common law action as it relates to residents of long term care facilities; it does not create a new, separate cause of action. *See Overstreet*, 2015 WL 4967188 at *5 ("the right afforded by subsection 6 — to be free of physical abuse, *as asserted by Overstreet*, does not present a new theory of liability.")(Emphasis in original). Stated otherwise, Plaintiff's asserted common law actions to recover damages for negligent and improper

580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000006 of 000024
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
DIS : 000006 of 000012

residential care and personal injury in their Complaint, do not implicate the statute's provisions. They could have done the same even if the Legislature had never enacted KRS §216.515(26).

Other jurisdictions agree with Kentucky's interpretation:

> In order for a statutory cause of action to be "an action * * * upon a liability created by statute" … that cause of action must be one that would not exist but for the statute. Any statutory "modification, alteration or conditioning" of a common-law cause of action which falls short of creating a previously unavailable cause of action does not transform that cause of action into "an action * * * upon a liability created by statute."

*See McAuliffe v. W. States Imp. Co.*, 651 N.E.2d 957, 960 (Ohio 1995). *Accord*, *Travelers Express Co., Inc. v. Cory*, 664 F.2d 763 (9th Cir. 1981); *Thomas v. Pick Hotels Corp.*, 224 F.2d 664 (10th Cir. 1955); *Bryden v. Wilson Mem. Hosp.*, 136 A.D.2d 843 (N.Y. 1988); *Haag v. Dry Basement, Inc.*, 732 P.2d 392 (Kan. App. 1987). *See also*, 51 AMERICAN JURISPRUDENCE 2d (1970) 659, Limitation of Actions, Section 82 ("Clearly, an action is not based upon a liability created by statute if the right is one which would exist at common law in the absence of statute."). Simply speaking, Plaintiff is not entitled to recover twice for the same alleged injury.

## III. ANY ATTORNEY'S FEE AWARDS FOR KRS §216.515(6) PERSONAL INJURY CLAIMS IS PRECLUDED BY THE KENTUCKY CONSTITUTION'S PROHIBITION AGAINST SPECIAL LEGISLATION AND THE EQUAL PROTECTION CLAUSE

Plaintiff cannot receive an award of attorney's fees for her personal injury claims simply by bringing them pursuant to KRS §216.515(6). Such an award would produce both an incongruent and constitutionally prohibited result: a nursing home would be required to pay attorney fees for a bed sore, but the hospital across the street would not. The result is constitutionally impermissible.

Section 59(4) of the Kentucky Constitution states that "[t]he General Assembly shall not pass local or special acts concerning any of the following subjects, or for any of the following purposes, namely: …...Fourth: To regulate the punishment of crimes and misdemeanors, or to

580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000007 of 000024
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
DIS : 000007 of 000012

remit fines, penalties or forfeitures." Section 59(29) of the Kentucky Constitution also prohibits local and special acts "[i]n all other cases where a general law can be made applicable" and states under such circumstances that "no special law shall be enacted."

The Kentucky Supreme Court has recognized that Section 59 of the Kentucky Constitution prohibits "local or special" acts and has stated that the primary purpose of Section 59 is to prevent special privileges, favoritism and discrimination, and assure equality under the law. *Yeoman v. Commonwealth*, 983 S.W.2d 459, 466 (Ky. 1998). "A special law is a legislation which arbitrarily or beyond reasonable justification discriminates against some persons or objects and favors others." *Id. (citing Board of Educ. of Jefferson County v. Bd. Of Educ. of Louisville*, 472 S.W.2d 496, 498 (Ky. 1971)).

Kentucky's highest court formulated the test for whether legislation is special in *Schoo v. Rose*, 270 S.W.2d 940 (Ky. 1954). There, the court stated that in order for legislation to be permissible under Section 59 of the Kentucky Constitution "(1) [i]t must apply equally to all in a class, and (2) there must be distinctive and natural reasons inducing and supporting the classification." *Id.* at 941.

KRS §216.515 permits, but does not mandate, an award of attorney fees to prevailing plaintiffs asserting (and likewise, by prevailing defendants defending) violations of denominated long-term care resident's rights. *See. e.g., Alexander v. S & M Motors, Inc.*, 28 S.W.3d 303, 305 (Ky. 2000) ("When considering the construction of statutes, … "may" is permissive, and "shall" is mandatory."). Moreover, the attorney fee provision is directed to injunctions or administrative relief and not for any claim of damages. *See Romano ex rel. Romano v. Manor Care Inc.*, 861 So.2d 59, 62-63 (Fla. Dist Ct. App. 2003)(interpreting Florida's original – and one of the country's first – resident's rights statutes, which provided attorneys fees solely for the injunctive

580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000008 of 000024
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
DIS : 000008 of 000012

or administrative relief but not for any claim or action for damages). Failure to recognize the discretionary nature of the statute's attorney's fees provision as intended for administrative or injunctive relief, and not for personal injury damages, would amount to penalizing long-term care facilities like Mountain View differently than other health care providers (physicians and hospitals) and in violation of Section 59 of the Kentucky Constitution. Stated otherwise, a missed dressing change cannot result in an attorney's fee award in a long-term care facility but not in a hospital across the street.

Moreover, Kentucky follows the American Rule concerning attorney fees, which provides, "in the absence of a statute or contract expressly providing therefor, attorney fees are not allowable as costs, nor recoverable as an item of damages." *Cummings v. Covey*, 229 S.W.3d 59, 61 (Ky.App.2007). The general rule that parties are responsible for their own attorney fees applies in medical negligence litigation. *See Fields v. Womack*, 294 S.W.3d 470, 473-74 (Ky. Ct. App. 2009). Thus, Plaintiffs are not entitled to a separate award of attorney's fees under the common law rule. Likewise, they are not entitled to an award of attorney's fees pursuant to the statute, KRS §216.515(26), because it would produce a constitutionally impermissible punishment only applying to long-term care facilities.

Long-term care facilities in Kentucky are licensed and regulated under KRS Chapter 216 and are similarly situated to physicians, surgeons, dentists and hospitals licensed under KRS Chapter 216. To "entitle" Plaintiff to an award of attorney's fees for violations of KRS §216.515(6) – which only applies to long-term care facilities – would amount to special legislation in violation of Section 59 of the Kentucky Constitution.

Kentucky's highest courts have repeatedly used Section 59 to find various Kentucky statutes invalid. *See City of Louisville v. Louisville Taxicab & Transfer Co.*, 238 S.W.2d 121

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000009 of 000024
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
DIS : 000009 of 000012

(Ky. 1951); *Schoo v. Rose,* 270 S.W.2d 940 (Ky. 1954); *Com. v. McCoun*, 313 S.W.2d 585 (Ky. 1958); *City of Louisville v. Klusmeyer*, 324 S.W.2d 831 (Ky. 1959). *See also*, *Univ. of Cumberlands v. Pennybacker,* 308 S.W.3d 668, 683 (Ky. 2010) (KRS §164.7901, establishing scholarship program to attend pharmacy school only at "private four (4) year institution of higher education with a main campus located in an Appalachian Regional Commission county in the Commonwealth" constituted special legislation, violating Section 59). More recently, the Kentucky Supreme Court held KRS §241.075, which mandated liquor license restrictions applying only to businesses in certain parts of first-class cities and consolidated local governments, to be unconstitutional as violative of Sections 59 and 60 of the Kentucky Constitution. *See Louisville/Jefferson Cnty. Metro Gov't v. O'Shea's-Baxter, LLC,* 438 S.W.3d 379, 386 (Ky. 2014).

Further, "hospital" is defined in KRS Chapter 216 as "a place including nursing and convalescent homes and all institutions for the care of the sick, devoted primarily to providing, for more than twenty-four (24) hours, obstetrical or other medical or nursing care for two (2) or more nonrelated individuals." Mountain View is an institution that provides medical or nursing care for two or more individuals. Therefore, it requires a state license as does a hospital and is in the same class as other providers who also may be subject to medical negligence actions. There exists no reason for any distinction or exemption. Mountain View should be afforded the same protection from unreasonable penalties as all other health care providers. Simply put, constitutionally, personal injury claims stated as violations of KRS §216.515(6) cannot "entitle" Plaintiff to attorney's fees without unequally penalizing Mountain View differently from all other health care providers, in violation of Section 59.

580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000010 of 000024
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
DIS : 000010 of 000012

Additionally, should KRS §216.515(6) be interpreted to "entitle Plaintiff to attorney's fees" under subsection (26) as against long-term care facilities - only - when no other health care provider is subject to mandatory attorney's fees in an personal injury action, it would also violate the guarantees of equal protection of the Fourteenth Amendment of the Constitution of the United States of America and Section Three of the Kentucky Constitution.

**CONCLUSION**

*Overstreet* holds that Plaintiff, as Ms. Ray's Executrix, cannot maintain her claims made under KRS §216.515 because, as statutorily-created rights, those claims do not survive Ms. Ray's death. Likewise, Plaintiff is not entitled to an award of attorney fees either under the statute, KRS § 216.515(26), or at common law.

For all of the above reasons, Defendants respectfully request that Plaintiff's claims brought under KRS §216.515 for actual and punitive damages as well as her claims for attorney's fees now be dismissed.

**NOTICE**

This matter will come before the Court for a hearing on the 19th day of August, 2016, at the hour of 9:00 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANTS

580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000011 of 000024
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
DIS : 000011 of 000012

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 12th day of August, 2016, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507

*/s/ Matthew C. Cocanougher*
ATTORNEY FOR DEFENDANTS

580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000012 of 000024
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
DIS : 000012 of 000012

580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000013 of 000024
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000001 of 000009

479 S.W.3d 69
Supreme Court of Kentucky.

James Overstreet, Administrator of the Estate of Lula Belle Gordon, Deceased, Appellant
v.
Kindred Nursing Centers Limited Partnership, d/b/a Harrodsburg Health Care Center; Kindred Nursing Centers East, LLC; Kindred Hospitals Limited Partnership; Kindred Healthcare, Inc.; Kindred Healthcare Operating, Inc.; and Kindred Rehab Services, Inc., d/b/a Peoplefirst Rehabilitation, Appellees

2013-SC-000620-DG
|
RENDERED: AUGUST 20, 2015
|
Rehearing Denied February 18, 2016

**Synopsis**
**Background:** Administrator of nursing home resident's estate filed suit against nursing home, its parent company, and other defendants for violations of resident's enumerated rights under Long Term Care Facilities statute, based on allegations that such violations resulted in resident's injuries and death. Defendants asserted counterclaim for declaratory judgment based on limitations period governing personal injury claims despite administrator's invocation of Long Term Care Facilities statute. The Mercer Circuit Court, denied defendants' motion to dismiss in part based on determination that administrator had standing to bring suit and that claims were not barred on limitations grounds. Appeal was taken. The Court of Appeals remanded case to address declaratory judgment claim. On remand, the Circuit Court did so, and reiterated prior rulings. Appeal was taken, and The Court of Appeals, reversed and remanded with instructions to dismiss all of administrator's claims. Discretionary review was granted.

**Holdings:** The Supreme Court, Venters, J., held that:

[1] suit under Long Term Care Facilities statute was governed by five-year limitations period for actions brought under statute, and not one-year limitations period governing personal injury claims, to extent that claims were based on violations of enumerated rights that did not merely codify common law claim for personal injuries;

[2] violation of resident's statutory right to be free from mental and physical abuse was governed by one-year limitations period governing claim for personal injury; and

[3] statute allowing for personal injury claim to survive plaintiff's death did not apply to action brought by administrator for violations of resident's statutory rights under Long Term Care Facilities statute that did not codify common law claim for personal injuries.

Affirmed on other grounds.

West Headnotes (12)

[1] **Appeal and Error**
Cases Triable in Appellate Court

When only issues of law are involved in statutory interpretation and that application of a statute of limitations to a cause of action, appellate review is de novo.

Cases that cite this headnote

[2] **Statutes**
Language and intent, will, purpose, or policy
**Statutes**
Plain Language; Plain, Ordinary, or Common Meaning

When interpreting a statute, the court's foremost objective is to determine the legislature's intent, looking first to the language of the statute, giving the words their plain and ordinary meaning.

Cases that cite this headnote

[3] **Statutes**

Construction as written
**Statutes**
Plain language; plain, ordinary, common, or literal meaning

A court will construe a statute only as written, and the intent of the Legislature must be deduced from the language it used, when it is plain and unambiguous.

Cases that cite this headnote

[4] **Statutes**
Extrinsic Aids to Construction
**Statutes**
Policy considerations; public policy

When interpreting a statute that is unambiguous, the court does not consider extrinsic evidence of legislative intent and public policy.

Cases that cite this headnote

[5] **Statutes**
Policy considerations; public policy
**Statutes**
Plain, literal, or clear meaning; ambiguity

When interpreting a statute, if the statutory language is ambiguous, the court looks to other sources, including legislative history and public policy considerations, to ascertain what the legislature meant.

Cases that cite this headnote

[6] **Statutes**
Context
**Statutes**
Other Law, Construction with Reference to

When interpreting a statute, the court will read the statute as a whole, and with other parts of the law of the Commonwealth, to ensure that its interpretation is logical in context.

Cases that cite this headnote

[7] **Limitation of Actions**
Liabilities Created by Statute

The five-year limitations period for claims brought pursuant to a statute does not apply to claims based on a statutory provision that merely codifies common law liability and does not create a new theory of liability. Ky. Rev. Stat. Ann. § 413.120(2).

Cases that cite this headnote

[8] **Limitation of Actions**
Liabilities Created by Statute

Unless the statute codifying a common law liability expressly provides otherwise, the applicable statute of limitation is the one that applies to the common law cause of action.

Cases that cite this headnote

[9] **Health**
Limitations; time requirements

Statute enumerating specific rights of nursing home residents, and which provided for cause of action for violation of such rights, did not merely codify standard of care relating to personal injury claims by nursing home residents with respect to all enumerated rights, and thus, suit was governed by five-year limitations period for actions brought under statute, and not one-year limitations period governing personal injury claims, to extent that claims were based on, for example, violations of statutory right of resident to be treated with consideration, respect, and recognition of her dignity, to be suitably dressed at all times, to be given assistance when needed in maintaining

580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000014 of 000024
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000002 of 000009

hygiene and good grooming, and to have responsible party of family member notified immediately in event of accident, sudden illness, or unusual occurrence, where claims existed independently of one for personal injury and presented new theories of liability not otherwise available under common law cause of action for personal injury. Ky. Rev. Stat. Ann. §§ 216.515(18), (20), (22), 413.120(2), 413.140.

1 Cases that cite this headnote

[10] **Health**
⚷=Limitations; time requirements

Violation of nursing home resident's statutory right to be free from mental and physical abuse, with limited exceptions, based on injuries sustained by resident as alleged by administrator of resident's estate, was governed by one-year limitations period governing claim for personal injury, and not five-year limitations period governing claims brought pursuant to statute; as alleged, physical or mental injury was foreseeable consequence of violation of statutory right, and thus, statutory right encompassed nursing home's traditional common law duty to avoid negligently or intentionally injuring resident and did not create new theory of liability. Ky. Rev. Stat. Ann. §§ 216.515(6), 413.120(2), 413.140.

Cases that cite this headnote

[11] **Limitation of Actions**
⚷=Death of person entitled to sue

Statute allowing for personal injury claim to survive plaintiff's death did not apply to action against nursing home brought by administrator of nursing home resident's estate for violations of resident's statutory rights to be treated with consideration, respect, and recognition of her dignity, to be suitably dressed at all times, to be given assistance when needed in maintaining hygiene and good grooming, and to have responsible party of family member notified immediately in event of accident, sudden illness, or unusual occurrence, where statute that created cause of action for violations of nursing home resident's enumerated rights was not cause of action for personal injuries, and statute explicitly provided that action could be brought by "resident or his guardian," the latter of whom would have served only during resident/ward's lifetime. Ky. Rev. Stat. Ann. §§ 216.515(26), 411.140.

1 Cases that cite this headnote

[12] **Health**
⚷=Patients' rights
**Health**
⚷=Nursing homes

The purpose of the statute enumerating a nursing home resident's rights and creating a cause of action for the violation of such rights is to enhance the quality of living conditions for nursing home residents. Ky. Rev. Stat. Ann. § 216.515.

Cases that cite this headnote

*71 ON REVIEW FROM COURT OF APPEALS, CASE NOS. 2011–CA–002294–MR AND 2012–CA–000007–MR, MERCER CIRCUIT COURT NO. 11–CI–00296

**Attorneys and Law Firms**

COUNSEL FOR APPELLANT: Robert Earl Salyer, Corey Tomas Fannin, Wilkes & McHugh, P.A.

COUNSEL FOR APPELLEE: Donald Lee Miller, II, Kristin M. Lomond, James Peter Cassidy, III, Quintairos, Prieto, Wood & Boyer P.A., Louisville

**Opinion**

OPINION OF THE COURT BY JUSTICE VENTERS

KRS 216.515 sets forth certain rights of nursing home

Presiding Judge: HON. STEVEN DANIEL COMBS (635210) 580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000015 of 000024

EXH : 000003 of 000009

Presiding Judge: HON. STEVEN DANIEL COMBS (635210) 580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000016 of 000024
EXH : 000004 of 000009

residents. In this appeal we address the statute of limitations applicable to actions brought pursuant to that statute. We also consider whether actions based upon rights created by KRS 216.515 survive the death of the nursing home resident so that such actions may be brought after the resident's death by the personal representative of the resident's estate.

Ultimately, we conclude that claims brought under KRS 216.515(6) are subject to the one-year limitation period prescribed by KRS 413.140, to the extent that such actions seek to recover for personal injuries indistinguishable from a common law personal injury action. In contrast, actions brought pursuant to other subsections of KRS 216.515, to the extent they assert liabilities created exclusively by KRS 216.515, are subject to the five-year statute of limitations provided by KRS 413.120(2). We also conclude that actions to recover for personal injury to a nursing home resident, or for injury to the resident's real or personal property, pursuant to KRS 411.140, survive the resident's death and may be brought by the personal representative of an injured resident's estate. In contrast, actions otherwise brought to enforce rights created exclusively by KRS 216.515 must be brought by the "resident or his guardian" pursuant to KRS 216.515(26), and therefore do not survive the resident's death. Accordingly, we affirm the decision of the Court of Appeals, although we do so partly upon different grounds.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts essential to the issues of this appeal are not in dispute. Harrodsburg Health Care Center (HHCC) is a "long-term care facility" as defined in KRS 216.510(1). Lula Belle Gordon was admitted as a resident of the facility in 2002 and she remained in residence there until her death in May of 2008. More than three years after the death of Gordon, Appellant James Overstreet, Administrator of the Estate of Gordon, filed suit in the Mercer Circuit Court against several entities, including HHCC's parent company, Kindred Nursing Centers Limited Partnership. *72 We refer to those entities collectively as "Kindred."[1] The complaint alleged that Kindred violated several provisions of KRS 216.515 in its treatment and care of Gordon, resulting in her injury and death.[2]

In due course, Kindred moved to dismiss the action pursuant to CR 12.02(f) for failure to state a claim upon which relief may be granted based, in part, upon grounds that the claims were time barred. At the same time, Kindred also asserted a counterclaim for a declaratory judgment seeking the court's determination that the action should be dismissed based upon the statute of limitations.[3] Kindred argued that despite the invocation of KRS 216.515, Overstreet's cause of action was simply a common law personal injury action subject to the one-year limitation provided by KRS 413.140, with the possible extension of an additional year pursuant to KRS 413.180.[4] In opposition, Overstreet argued that his action was timely filed because it was based upon a statutory cause of action, for which KRS 413.120(2) set the controlling limitations period. KRS 413.120(2) provides a five-year statute of limitations for "[a]n action upon a liability created by statute, when no other time is fixed by the statute creating the liability."[5]

On November 30, 2011, the circuit court entered an order holding that the five-year *73 statute of limitations provided for in KRS 413.120(2) applied, reasoning that Overstreet's cause of action was based upon a violation of Gordon's statutory rights under KRS 216.515; that Overstreet had standing to bring the complaint in accordance with KRS 411.140, the survivorship statute; and dismissing Overstreet's claims against the affiliated companies.

Following appeal, the action was remanded to the trial court with directions to address Kindred's declaratory judgment claim. The trial court did so, reiterating the holdings from its original order of November 30, 2011. On subsequent appeal, the Court of Appeals reversed the trial court's decision and ordered the dismissal of Overstreet's claims. The Court of Appeals regarded *all* aspects of Overstreet's claims under KRS 216.515 as incident to a common law personal injury action and, therefore, subject to the one-year limitations period. Because the action was not filed within that time, the Court of Appeals held that it must be dismissed. We granted discretionary review to examine the statute of limitations applicable to claims arising under KRS 216.515.

[1]Because only issues of law are involved in our interpretations of KRS 216.515, Overstreet's cause of action, and in our assessment of the proper statute of limitations applicable to the causes of action at issue in this case, our review is *de novo. Grange Mutual Insurance Co. v. Trude*, 151 S.W.3d 803, 810 (Ky.2004).

[2] [3] [4] [5] [6]In construing KRS 216.515 and the associated statutes at issue in this case, it is fundamental that our foremost objective is to determine the legislature's intent, looking "first to the language of the statute, giving the words their plain and ordinary meaning." *Richardson v.*

*Louisville/Jefferson County Metro Government,* 260 S.W.3d 777, 779 (Ky.2008). Further, we construe a "statute only as written, and the intent of the Legislature must be deduced from the language it used, when it is plain and unambiguous...." *Western Kentucky Coal Co. v. Nall & Bailey,* 228 Ky. 76, 14 S.W.2d 400, 401–02 (1929). When a statute is unambiguous, we do not consider extrinsic evidence of legislative intent and public policy. *County Bd. of Educ. Jefferson County v. Southern Pac. Co.,* 225 Ky. 621, 9 S.W.2d 984, 986 (1928). However, if the statutory language is ambiguous, we look to other sources, including legislative history and public policy considerations, to ascertain what the legislature meant. *MPM Financial Group, Inc. v. Morton,* 289 S.W.3d 193, 198 (Ky.2009). Further, we "read the statute as a whole, and with other parts of the law of the Commonwealth, to ensure that our interpretation is logical in context." *Lichtenstein v. Barbanel,* 322 S.W.3d 27, 35 (Ky.2010).

## II. ANALYSIS

### A. The Statute of Limitations Applicable to Actions Brought under KRS 216.515

The central question of this appeal is whether claims brought under KRS 216.515 are subject to the five-year limitations period established by KRS 413.120(2) for "[a]n action upon a liability created by statute[.]" Our resolution of that issue compels us to parse more precisely the nature of the rights and liabilities created by the various subsections of KRS 216.515 upon which Overstreet bases his claims. We begin with the application of the following general principle.

[7] [8]The five-year limitation period provided by KRS 413.120(2) for claims brought pursuant to a statute does *not* apply to claims based on a statutory provision that "merely codifies common law liability and does not create a new theory of *74 liability." *Toche v. American Watercraft,* 176 S.W.3d 694, 698 (Ky.App.2005). In *Toche,* the Court of Appeals recognized that a claim brought under KRS 235.300 ("Civil liability for negligent operation [of boats]") did not create "a new theory of liability;" but was instead merely a codification of the basic personal injury claim in the context of a boating accident. Consequently, the one-year statute of limitations for common law personal injury claims applied. Unless the statute codifying a common law liability expressly provides otherwise, the applicable statute of limitation is the one that applies to the common law cause of action. The rationale for that principle is obvious and sound: a theory of liability cannot be regarded as having been "created by statute" as stated in KRS 413.120(2) if it otherwise existed at common law prior to the enactment of the statute.

In *Stivers v. Ellington,* 140 S.W.3d 599 (Ky.App.2004), the Court of Appeals held that the statutory foundation of the plaintiffs personal injury claim did not create a new liability; rather, it "merely substituted the legislature's determination of the standard of care for the common-law standard of care in such negligence actions." *Id.* at 601. Accordingly, the one-year limitation of KRS 413.140(1)(a) for personal injury claims applied. In *Robinson v. Hardaway,* 293 Ky. 627, 169 S.W.2d 823 (1943), our predecessor court explained that the five-year limitations period established by KRS 413.120(2) "was designed to deal with new liabilities created by statute as to which no existing statute of limitation was applicable" and was not intended to "repeal" or "pre-empt" existing limitation periods for common law causes of action. *Id.* at 824. To apply this general principle in this case, we must look closely at the nature of liabilities ostensibly created in KRS 216.515 and upon which Overstreet's claims are founded.

#### *1. Some theories of liability invoked by Overstreet under KRS 216.515 are subject to the five-year limitation of KRS 413.120(2).*

[9]KRS 216.515 consists of twenty-six subsections enumerating specific rights conferred upon residents of "long-term-care facilities." Those rights may be fairly characterized as providing a variety of protections relating to a resident's personal property, privacy, medical confidentiality, financial security, personal security, and social interaction. Overstreet's complaint specifically alleges the following violations of KRS 216.515:

a. the right to be treated with consideration, respect, and full recognition of her dignity and individuality, KRS 216.515(18);

b. the right to be suitably dressed at all times and given assistance when needed in maintaining body hygiene and good grooming, KRS 216.515(20);

c. the right to have a responsible party or family member notified immediately of any accident, sudden illness, or anything unusual involving the resident, KRS 216.515(22);

d. the right to have an adequate and appropriate residential care plan developed and implemented[6]; and

580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000017 of 000024

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000005 of 000009

580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000018 of 000024
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000006 of 000009

e. the right to be free from abuse and neglect, KRS 216.515(6).

The complaint further alleges that, as a result of these violations, Gordon suffered "Unnecessary loss of personal dignity, extreme pain and suffering, hospitalizations, *75 degradation, mental anguish, disability, disfigurement and loss of life, all of which were caused by the wrongful conduct of [HHCC]." According to the complaint, as a result of these violations Gordon suffered:

> accelerated deterioration of her health and physical condition beyond that caused by the normal aging process, as well as the following: (a) pressure sores; (b) urinary tract infections; (c) upper respiratory infections; (d) infections; (e) falls; (f) bruising; (g) skin tears; (h) fracture; (i) weight loss; (j) dehydration; (k) subdural hematoma; and (*l*) death.

The Court of Appeals concluded that Overstreet's complaint under KRS 216.515 asserted nothing more than a common law action for personal injury, and that despite "various standards of care created by the legislature," KRS 216.515 created no new theories of liability. Accordingly, and pursuant to the general principle cited above, the Court of Appeals held that the complaint was completely barred by the one-year statute of limitations applicable to personal injury actions. We do not entirely agree with that conclusion.

The liabilities created for violating at least *some* of the rights set forth in KRS 216.515, and upon which Overstreet bases his cause of action, have no apparent nexus with a common law personal injury action. For example, Gordon's rights as a nursing home resident to "be treated with consideration, respect, and full recognition of [her] dignity"[7] and "to be suitably dressed at all times"[8] are not necessarily related to a common law personal injury action. By virtue of KRS 216.515, those rights exist independent of any claim for personal injury. Similarly, other rights provided in KRS 216.515, including some not asserted by Overstreet, have no inherent connection with a cause of action for personal injury. For example, the resident's rights to spousal visits,[9] to wear her own clothing,[10] to participate in social and religious activities,[11] and to have access to a telephone,[12] exist independently of a claim for personal injury. These legislatively-established rights, along with others provided by KRS 216.515, are not codifications of common law causes of action; nor are they new standards of care attached to established common law claims. Rather, they exist by virtue of the statute outside the context of any common law cause of action. They are, indeed, new theories of liability not otherwise available under the common law causes of action. These rights are established statutorily by KRS 216.515(26), which provides that "[a]ny resident whose rights as specified in this section are deprived or infringed upon shall have a cause of action against any facility responsible for the violation."

Given the nature of the rights bestowed in many subsections of KRS 216.515, we have no difficulty in concluding that the legislature intended to do something more than codify standards of care relating to the personal injury claims of nursing home residents.[13] Consequently, we are satisfied *76 that claims based upon these new theories of liability are subject to the five-year limitation period of KRS 413.140. That would include Overstreet's claims for violations of KRS 216.515(18) (the right to be treated with consideration, respect, and full recognition other dignity and individuality); KRS 216.515(20) (the right to be suitably dressed at all times and given assistance when needed in maintaining body hygiene and good grooming); and, KRS 216.516(22) (the right to have a responsible party or family member notified immediately of any accident, sudden illness, or anything unusual involving the resident). Such claims are not subject to the one-year limitation period for personal injury claims. However, this conclusion does not resolve the issue before us. Our review of the statute and its application in this case continues. As obvious as it is to us that some subsections of KRS 216.515 represent new theories of liability, it is equally obvious that Overstreet's invocation of Subsection (6) of KRS 216.515 is nothing other than a common law personal injury claim.

***2. Overstreet's claim for personal injury under KRS 216.515(6) is subject to the one-year statute of limitations (KRS 413.140) applicable to personal injury claims.***

[10]The type of injury for which KRS 216.515(6) provides recompense is distinguishable from other subsections of the statute upon which Overstreet relies. Subsection (6) provides that "All residents shall be free from mental and physical abuse ... except in emergencies or except as thoroughly justified in writing by a physician for a specified and limited period of time and documented in the resident's medical record." One of the ordinary and foreseeable consequences of physical or mental abuse is personal injury to the abused person. Subsection 6 encompasses, in the context of a nursing home environment, the traditional common law duty to avoid

negligently or intentionally injuring another person. Unlike conduct that, for example, violates one's right of access to a telephone or one's right to be suitably dressed in one's own clothing as provided elsewhere in KRS 216.515, the right afforded by subsection 6—to be free of physical abuse, *as asserted by Overstreet,* does not present a new theory of liability.

Of course, it is certainly possible that circumstances could arise in which a claim, *not* cognizable as a common law personal injury claim, could nevertheless be characterized as "physical or mental abuse" so as to be asserted as a statutory claim under KRS 216.515(6). We do not purport in this opinion to decide the full parameters of subsection (6). We hold simply that the specific injuries alleged by Overstreet fit squarely within the traditional parameters of a common law cause of action for personal injury.

KRS 413.120(2) provides a five-year statute of limitations for "action[s] upon a liability created by statute." To the extent that Overstreet alleges personal injuries suffered by Gordon, his theory of liability was established at common law; it is not "a liability created by statute." Pursuant to the rule enunciated in *Toche* and *Stivers,* the enactment of KRS 216.515(6) did not supplant the one-year limitation of KRS 413.140(1)(a) in favor of the five-year limitation of KRS 413.120(2), even in the context of nursing home injuries.

Overstreet's complaint was filed more than three years after Gordon's death. Even allowing for the extension provided by KRS 413.180, it is evident that these claims were brought well beyond the expiration of the limitations period. Accordingly, with respect to Overstreet's claims *77 seeking damages for personal injury, we affirm the opinion of the Court of Appeals.

**B. Survival of Overstreet's Remaining Claims**

[11]Some of Overstreet's KRS 216.515 claims were not in the nature of a personal injury action, and thus were not necessarily extinguished by the expiration of the one-year limitation period. We must next address whether those claims survived Gordon's death, such that they could be properly brought by the administrator of her estate. Kindred points out that KRS 216.515(26) explicitly provides that "any resident" of a long-term care facility "shall have a cause of action" for deprivations and infringements upon the rights provided by the statute. Kindred also notes that the statute specifies that such actions may be brought "by the resident or his guardian," which Kindred interprets to mean *only* the resident or his guardian. Kindred's argument suggests that by designating "resident or his guardian," the legislature signified that the causes of action created by the statute were only for the benefit of a living resident, since guardians serve only during the lifetime of the ward, thereby excluding the possibility of a posthumous action to remedy the violations of a resident's rights under the statute. Overstreet responds that his authority to bring the actions as administrator is conferred by the survivorship statute, KRS 411.140.

Upon review of the relevant statutory text, we are compelled to agree with Kindred. First, KRS 411.140 allows for the survival of actions to recover damages for "personal injury" and "injury to real or personal property." It provides:

> No right of action for personal injury or for injury to real or personal property shall cease or die with the person injuring or injured, except actions for slander, libel, criminal conversation, and so much of the action for malicious prosecution as is intended to recover for the personal injury.[14]

So, to the extent that Overstreet's claims are based upon the common law personal injury cause of action or a wrongful death claim, they survive Gordon's death and, in the normal course of events, could have been brought by Overstreet as Gordon's personal representative. However, as noted above, the statute of limitations for those claims had expired long before the action was initiated. To the extent that the claims are based upon liabilities created by KRS 216.515, and are not simply restatements of the common law personal injury action, KRS 411.140 does not provide for their survival beyond the death of the resident.

[12]This construction of the statutory language is consistent with the apparent purpose of KRS 216.515 to 216.530. For the most part, these legislative provisions are designed to enhance the quality of living conditions for nursing home residents. They authorize court action as needed to compel compliance with statutory protections designed for the benefit and enjoyment of residents during their lifetimes. There is nothing to be gained in a posthumous action, for example, to vindicate the resident's right of access to a telephone or to wear her own clothing. And, in the event that such violations actually resulted in injury to the resident or *78 damage to his property, then the existing common law causes of action would survive pursuant to KRS 411.140, to redress the grievance on behalf of his estate. Overstreet's claims asserted under KRS 216.515 which do not allege injuries to Gordon's person or property are not saved by KRS





580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000019 of 000024
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000007 of 000009

411.140.

### C. Summary

In summary, Overstreet's claim under KRS 216.515(6) does not assert a claim for relief based upon a liability created by the statute. As relevant to Overstreet's claim, KRS 216.515(6) simply represents a codification in the nursing home context of the common law personal injury cause of action. It is, therefore, subject to the one-year statute of limitation otherwise provided for personal injury actions. Because Overstreet did not bring that aspect of his complaint within the applicable statute of limitations, we affirm the Court of Appeals' conclusion that it was properly dismissed.

We are further persuaded that the other causes of action based upon provisions of KRS 216.515, for which Overstreet seeks redress, are "liabilities created by statute," and, therefore, are subject to the five-year limitations period established by KRS 413.120. However, those causes of action do not fit within the survival provisions of KRS 411.140 and, based upon the language of KRS 216.515(26), must be brought during the lifetime of the resident by the resident or his guardian.

## III. CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Appeals although we do so upon slightly different grounds.

All sitting. All concur.

**All Citations**

479 S.W.3d 69

Footnotes

1 The Complaint identified as defendants: Kindred Nursing Centers Limited Partnership, d/b/a Harrodsburg Health Care Center (HHCC); Kindred Nursing Centers East, LLC; Kindred Hospitals Limited Partnership; Kindred Healthcare, Inc.; Kindred Healthcare Operating, Inc.; Kindred Rehab Services, Inc., d/b/a Peoplefirst Rehabilitation; Vicki Trump in her capacity as Administrator of Harrodsburg Health Care Center; and "John Does 1 through 5, Unknown Defendants." Trump was dismissed by agreed order prior to the trial court's final judgment. She and the Unknown John Does are not named as Appellees in this appeal.

2 Paragraph 26(f) of the complaint alleges a "violation of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services, pursuant to the provisions of KRS Chapter 216 and the regulations promulgated thereunder, as well as the applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII or XIX of the Social Security Act." So far as we can determine from the record, Overstreet never specifically identifies any federal standards in support of his claims and so we do not further discuss that aspect of the complaint.

3 Kindred also argued that HHCC's corporate affiliates should be dismissed as defendants on the grounds that they were not "long-term care facilities" as defined in KRS 216.510, and therefore not subject to the requirements of KRS 216.515. The trial court agreed, and dismissed the claims against those entities. The Court of Appeals did not address that aspect of Kindred's arguments, and because we sustain the dismissal on other grounds, we likewise decline to address the point.

4 KRS 413.180, in effect, tolls the running of a statute of limitations for up to one year following the death of the injured party to enable the qualification of a personal representative who can pursue the claim. It provides: "(1) If a person entitled to bring any action mentioned in KRS 413.090 to 413.160 dies before the expiration of the time limited for its commencement and the cause of action survives, the action may be brought by his personal representative after the expiration of that time, if commenced within one (1) year after the qualification of the representative. (2) If a person dies before the time at which the right to bring any action mentioned in KRS 413.090 to 413.160 would have accrued to him if he had continued alive, and there is an interval of more than one (1) year between his death and the qualification of his personal representative, that representative, for purposes of this chapter, shall be deemed to have qualified on the last day of the one-year period."

5 KRS 216.515 does not itself provide for a limitation period within which claims brought thereunder must be filed.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210) 580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000020 of 000024
EXH : 000008 of 000009

6 While the violations alleged by Overstreet generally mirror the language of KRS 216.515, we are unable to precisely match this particular claim with a corresponding subsection of KRS 216.515.

7 KRS 216.515(18)

8 KRS 216.515(20)

9 KRS 216.515(9)

10 KRS 216.515(12)

11 KRS 216.515(14)

12 KRS 216.515(21)

13 To be sure, in some circumstances the rights conferred under subsections (1–5) and (7–25) may overlap with common law causes of action other than personal injury. Further analysis of these subsections to see what interconnection they may have with a common law counterpart is beyond the scope of this opinion.

14 The statute also provides that "For any other injury an action may be brought or revived by the personal representative, or against the personal representative, heir or devisee, in the same manner as causes of action founded on contract." Overstreet makes no allegation that this section of KRS 411.140 is applicable or that he brought the lawsuit "in the same manner as causes of action founded on contract."

End of Document

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000021 of 000024
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000009 of 000009

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the
ESTATE of HELEN RAY, deceased,
and on behalf of the Wrongful Death
Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a
MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

---

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS DISMISSING RESIDENT'S RIGHTS CLAIMS AND ATTENDANT CLAIMS FOR ATTORNEY'S FEES AND PUNITIVE DAMAGES**

---

Defendants, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View") and Life Care Centers of America, Inc. ("Defendants") have moved for Partial Judgment on the Pleadings regarding Plaintiff's

580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000022 of 000024
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
TD : 000001 of 000003

Resident's Rights claims and attendant claim for attorney's fees made pursuant to KRS 216.515(26).

**IT IS HEREBY ORDERED THAT:**

(1) Defendants' motion is **GRANTED**; and

(2) Plaintiff's Resident's Rights claims asserted in the Complaint at Paragraphs 48 through 52 alleging several violations of the Resident's Rights Act, KRS 216.515, as well as all attendant claims for attorney's fees and punitive damages are **DISMISSED** pursuant to *Overstreet v. Kindred Nursing Centers Limited Partnership*, 479 S.W.3d 69 (Ky. 2015), *reh'g denied* (Feb. 18, 2016).

So ordered, this the _____ day of __________________, 2016.

______________________________________
JUDGE, PIKE CIRCUIT COURT
DIVISION II

**Drafted and tendered by:**

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANTS

Tendered 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000023 of 000024
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
TD : 000002 of 000003

**CLERK'S CERTIFICATE OF SERVICE**

I hereby certify that on the ___ of _____________, 2016, I mailed a copy of the foregoing via regular mail to the following:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507
*Counsel for Plaintiff*

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
*Counsel for Defendants*

______________________________
PIKE CIRCUIT CLERK

580F0093-98AB-4545-A4E0-4DCBBB9BCBDC : 000024 of 000024

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

TD : 000003 of 000003

3

Tendered 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the
ESTATE of HELEN RAY, deceased,
and on behalf of the Wrongful Death
Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a
MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * *

**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View") and Life Care Centers of America, Inc. ("Defendants"), through counsel, and pursuant to Kentucky Rules of Civil Procedure 56 move the Court for Partial Summary Judgment, and respectfully request that the Court dismiss with prejudice all claims based on alleged violations of federal and state nursing home statutes and

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MOT : 000001 of 000003

regulations and alleged violations of criminal statutes and regulations. A Memorandum of Law in support of Defendants' Motion is attached.

**NOTICE**

This matter will come before the Court for a hearing on the 19th day of August, 2016, at the hour of 9:00 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANTS

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

MOT : 000002 of 000003

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 12th day of August, 2016, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507

*/s/ Matthew C. Cocanougher*
ATTORNEY FOR DEFENDANTS

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

MOT : 000003 of 000003

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the
ESTATE of HELEN RAY, deceased,
and on behalf of the Wrongful Death
Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a
MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View") and Life Care Centers of America, Inc. ("Defendants"), through counsel, submit the following Memorandum of Law in Support of the Defendants' Motion for Partial Summary Judgment.

## FACTS

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

Jennifer Bingham as Executrix of the Estate of Helen Ray, deceased, and on behalf of the wrongful death beneficiaries of Helen Ray, filed this personal injury action on August 4, 2015, alleging negligence in the care and treatment provided to Helen Ray ("Ms. Ray") while she was a resident of Mountain View.

In her Complaint, Plaintiff alleges negligence, medical negligence, corporate negligence, violations of long term care resident's rights, negligence against the administrator and wrongful death. *See* Complaint. Specifically, Plaintiff alleges violations of KRS 209.005 et seq., KRS 508.090 et seq., KRS 530.080 et seq., 506.080, KRS 216, and federal laws and regulations governing the certification of long-term facilities under Titles XVIII or XIX of the Social Security Act. See Complaint at ¶ 32.

In alleging that Defendants violated these certain statutory and regulatory duties and connecting these alleged violations to their allegations related to decedent's death, Plaintiff is seeking to establish these violations as actionable as negligence *per se*, or at the very least is seeking a private right of recovery for the alleged violations of these statutes and regulations. Such recovery is prohibited under Kentucky law.

**ARGUMENT**

The statutes cited by Plaintiff exist to ensure a facility's compliance for reimbursement purposes, and do not demonstrate congressional intent to create a private cause of action. Numerous courts in Kentucky have come to this conclusion, and dismissed claims based on both these Federal statutes and their Kentucky counterparts. *See* Collective Exhibit A. In fact, the Kentucky Court of Appeals recently affirmed the Magoffin Circuit Court's dismissal of negligence per se claims in a medical malpractice case involving a nursing home. *See Dinah*

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000002 of 000023

*Puckett, as Administratrix of the Estate of Bertha Blanton v. Salyersville Healthcare Center, et al*, 2015 WL 3643437 (Ky. App. 2015) (unpublished) at Exhibit B.

## I. PLAINTIFFS CANNOT STATE A CLAIM FOR VIOLATION OF FEDERAL STATUTES AND REGULATIONS GOVERNING CERTIFICATION OF NURSING HOMES.

The Court should dismiss all of Plaintiff's claims relating to alleged violations of federal nursing home certification requirements. Violations of federal statutes and regulations are not actionable under Kentucky's law of negligence *per se*, as codified in KRS 446.070. Nor do these federal laws and regulations create a private right of action. To the contrary, numerous courts have held these federal regulations merely establish standards determining eligibility for Medicaid funding, not enforceable individual rights of recovery. In short, Plaintiff is not in the class of people the statutes and regulations are designed to protect. The duty involved is the familiar one of ordinary care.

Thus, the Court should dismiss all claims for violations of federal statutes and regulations. These allegations fail to state a claim for relief as a matter of law.

### A. Under Kentucky law, a negligence *per se* claim cannot be based on violations of federal statutes and regulations.

"KRS 446.070 codifies the common-law doctrine of negligence *per se* in Kentucky." *Young v. Carran*, 289 S.W.3d 586, 589 (Ky. App. 2009). The text of the statute provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation...." KRS 446.070. A negligence *per se* claim under KRS 446.070 is not a wholly new cause of action, "it is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." *Real Estate Mktg. v. Franz*, 885 S.W.2d 921, 926-27 (Ky. 1994). Put another way, "KRS 446.070 provides an avenue by which a damaged party may sue for a violation of a statutory standard of care if the statute in

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000003 of 000023

question provides no inclusive civil remedy and if the person is within the class of persons the statute is intended to protect." *Young*, 289 S.W 2d at 589.

It is well established that, under Kentucky law, a negligence *per se* claim may not be predicated on the violation of a federal statute or regulation because "Kentucky courts have held that the "any statute" language in KRS 446.070 is limited to Kentucky statutes and does not extend to federal statutes and regulations...." *Young*, 289 S.W.3d at 589 (affirming dismissal of negligence *per se* claim based on alleged HIPAA violations). *See also*, *T&M Jewelry, Inc. v. Hicks*, 189 S.W.3d 526, 530 (Ky. 2006) (no negligence *per se* claim for violation of federal gun control act); *Alderman v. Bradley*, 957 S.W.2d 264, 266-67 (Ky. App. 1997).[1] "The General Assembly did not intend for KRS 446.070 to embrace the whole of federal laws and ... thereby confer a private civil remedy for such a vast array of violations." *T&M Jewelry v. Hicks*, 189 S.W.3d at 530. Thus, as a matter of law, the Plaintiff may not assert a negligence *per se* claim for alleged violations of federal statutes or regulations pertaining to nursing homes.

This is particularly true where the federal laws at issue do not, themselves, confer a private right of action, which, as discussed below, the federal nursing home certification rules do not. *Alderman*, 957 S.W.2d at 267; *St. Martin v. KFC Corp.*, 935 F. Supp. 898, 907 (W.D. Ky. 1996). In *Alderman*, for example, the court noted that even when KRS 446.070 applies, a negligence *per se* claim still requires the plaintiff to be in the class intended to be protected, so the fact that the federal gun control act did not confer a private right of action for victims of gun violence indicated they were not such intended beneficiaries within the meaning of the gun

[1] *Accord*, *Jackson v. J.B. Hunt Transp., Inc.*, 384 S.W.3d 177, 182 (Ky. App. 2012) ("Our appellate courts have consistently interpreted the words 'any statute' in KRS 446.070 to include Kentucky statutes, but to exclude federal statutes and regulations. Jackson cannot base any of his claims on J.B. Hunt's violation of 49 C.F.R. 382.121, even as incorporated into the employer's policy."); *Cummins v. BIC USA, Inc.*, No. 1:08-CV-00019, 2011 WL 1399768, at *3 (W.D. Ky. April 13, 2011) (dismissing negligence *per se* claim for violation of federal regulations requiring all lighters to be equipped with child safety mechanism).

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

MEM : 000004 of 000023

control act. 957 S.W.2d at 267. In *St. Martin*, the court noted that because the FTC Act did not create a private right of action, allowing a plaintiff to assert a claim for violations of that statute under KRS 446.070 "would be contrary to the legislative scheme of the FTC Act and regulations." 935 F. Supp. at 907. The same is true here. Allowing Plaintiff to bootstrap a cause of action for violations of federal nursing home certification laws via KRS 446.070 would circumvent Congress' decision not to confer such a right.

Accordingly, violations of federal statutes and regulations concerning nursing home certification cannot form the basis for negligence *per se* under KRS 446.070. Such claims must be dismissed.

**B. There is no private right of action for violations of federal nursing home certification laws.**

Plaintiff also cannot assert a private right of action directly under the nursing home certification requirements promulgated pursuant to the Medicare and Medicaid statutes under Titles XVIII and XIX of the Social Security Act. "The great majority of courts have determined that the Medicare and Medicaid Acts do not authorize private causes of actions against nursing homes." *Brogdon v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1330 (N.D. Ga. 2000) (citing cases); *see also Duncan v. Johnson-Mathers*, No. 5:09-CV-00417-KKC, 2010 WL 3000718, *8 (E.D. Ky. July 28, 2010); *Baum v. N. Dutchess Hosp.*, 764 F. Supp. 2d 410, 423 (N.D.N.Y. 2011); *Hawkins v. County of Bent, CO*, 800 F. Supp. 2d 1162 (2011).

The certification standards set forth in the Medicare and Medicaid Acts, see 42 U.S.C. §1395i & 1396r, and their implementing regulations are requirements a facility must satisfy to be eligible to receive reimbursements under those federal programs. *Duncan*, 2010 WL 300718, at *3-4. These standards were substantially amended by the Federal Nursing Home Reform Act ("FNHRA"), enacted pursuant to the Omnibus Budget Reconciliation Act of 1987 ("OBRA"), to

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

MEM : 000005 of 000023

respond to a concern that Medicare and Medicaid allowed nursing home facilities to provide substandard care while remaining in operation and receiving federal funding. *Id*. FNHRA set forth enhanced federal standards governing quality of care and residents rights, as well as provided enhanced oversight and inspection procedures (principally carried out by state surveyors) and authorized additional intermediate sanctions short of terminating eligibility for reimbursements to enforce those requirements. *Id*.

While these federal rules may indirectly benefit nursing home residents, the statute itself and its legislative history confirm that "FNHRA did not articulate a clear and unambiguous intent to confer individual federal rights on nursing home residents, particularly against a private nursing home." *Baum*, 764 F. Supp. 2d at 425. The FNHRA, while addressing patient care requirements, focuses on the aggregate operations of a nursing home facility and its eligibility for federal reimbursement. It does not create concrete any specific legal entitlements on the part of individual residents. Rather, the "FNHRA establishes 'yardsticks' to measure aggregate performances of the programs and services, and not the particular needs of any particular person." *Id*. As the Eastern District of Kentucky court in *Duncan* explained:

> While the FNHRA clearly speaks of the rights of nursing home residents, the focus of the statute is on setting forth requirements that nursing homes must follow to maintain their certifications and eligibility and federal funding. While these requirements were surely passed with the intent to improve the quality of care received by nursing home residents, the statute's focus is on the nursing homes - not nursing home residents.

2010 WL 300718, at *8. This conclusion is supported by the fact that the FNHRA includes a provision expressly providing that its administrative sanction provisions "shall not be construed as limiting such other remedies, including any remedy available to an individual at common law." 42 U.S.C. §1396r(h)(8). This provision evinces Congress' intent not to create a new private right of action and its belief that individuals would look to common law remedies, such

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000006 of 000023

as a medical negligence claim, to redress their grievances rather than the certification standards in Titles XVIII and XIX. *See Baum*, 764 F. Supp. 2d at 426 ("[R]ather than establishing a new federally enforceable right, the statute explicitly announces that a resident may pursue any other federal and common law right."); *Brogdon*, 103 F. Supp. 2d at 1331 (same). This provision also reflects Congress' recognition that a private right of action under federal certification laws is not necessary to protect residents' interests, in light of residents' ability to protect those same interests through ordinary common law medical negligence and similar claims. *Baum*, 764 F. Supp. 2d at 426.

Thus, Plaintiff may not assert a claim for violations of federal certification requirements either indirectly under KRS 446.070 or directly under a theory that those statutes directly create an implied private right of action.

## II. PLAINTIFF CANNOT STATE A CLAIM FOR VIOLATIONS OF STATE STATUTES AND REGULATIONS CONCERNING LICENSING AND OPERATION OF NURSING HOMES.

The Court should also dismiss any claims that Plaintiff may assert for KRS 446.070 negligence *per se* claims alleging violations of KRS 216.515 et seq.

A generalized right to bring a negligence *per se* claim for any violation of any provision of KRS Chapter 216 is foreclosed as a matter of law by the specific private remedies authorized by KRS 216.515(26). Moreover, individual residents are not within the class of intended beneficiaries of the licensing and operation standards set forth in KRS 216 and its implementing regulations, since those state provisions largely mirror and implement the same federal nursing home certification requirements that, as discussed above, were not intended to convey individually enforceable rights on residents. Additionally, the standards expressed in Chapter 216 and the Cabinet's implementing regulations are too generalized to establish the standard of

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000007 of 000023

care for purposes of a negligence *per se* claim, particularly for claims that sound in medical negligence which have highly specialized requirements at common law for establishing the relevant standard of care.

**A. The specific private remedy provided in KRS 216.515(26) forecloses implication of a generalized negligence *per se* remedy under KRS 446.070.**

It is well established that negligence *per se*, as codified in KRS 446.070, is not available where the relevant statutory scheme already specifies the civil remedies available to the aggrieved party. *See e.g., Travelers Indem. Co. v. Reker*, 100 S.W.3d 756, 763 (Ky. 2003) (holding KRS 446.070 inapplicable because "KRS 342.267 is part of a statutory scheme that includes ... interrelated provisions providing civil remedies..."); *Gryzb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985) ("Where the statute both declares the unlawful act and the civil remedy available to aggrieved party, the aggrieved party is limited to the remedy provided by the statute.") To the contrary, "[t]he Kentucky Supreme Court has carefully limited the applicability of section 446.070 to situations where the statute that was allegedly violated provides no remedy for the aggrieved party." *Thompson v. Breeding*, 351 F.3d 732,737 (6th Cir. 2004). It makes no difference whether the statutory remedy is as broad or effective as one that might be implied under KRS 446.070. "[A] civil remedy need not be perfect in order to displace a private cause of action under § 446.070." *Franklin County, Ky. v. Travelers Prop. Cas. Ins. Co.,* 368 Fed. Appx. 669, 672-73 (6th Cir. 2010).

This necessarily follows from the rule that "when two statutes are in conflict, one of which deals with the subject matter in a general way and the other in a specific way, the more specific provision prevails." *Travelers v. Reker*, 100 S.W 3d at 763; *see also, Thompson*, 351 F.3d at 737. The negligence *per se* principle set forth in KRS 446.070 reflects a generalized assumption of legislative intent that the General Assembly would not intend to enact a law, and

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

MEM : 000008 of 000023

then provide no means for redress when it is violated. That assumption has no application when a statute provides a specific civil remedy, indicating that the General Assembly had considered the question of private enforcement, and consciously chose to provide a more limited remedy. *Id*.

Here, the statutory scheme Plaintiff seek to enforce, KRS Chapter 216, does contain a specific express civil remedy to vindicate the rights of nursing home residents. KRS 216.515(26) expressly authorizes residents to pursue a cause of action for damages against a facility for deprivation or infringement of the "rights **as specified in this section**."- *i.e.*, in KRS 216.515 (emphasis added). KRS 216.515 enumerates a laundry list of rights that are expressly conferred on nursing home residents individually and which are specifically enforceable by a private right of action under subsection (26). These include more particularized guarantees - like rights to visual privacy in multi-bed rooms, rights to control personal finances, rights to private meetings with state inspectors, rights to family member notification of accident or illness, and rights to written disclosures of certain facility policies and obligations - as well as more generalized guarantees, like the right to be "free from mental and physical abuse," KRS 216.515(6), and the right to be "treated with consideration, respect, and full recognition of his dignity...." KRS 216.515(18).

Thus, KRS 216.515 expressly creates a civil remedy for nursing home residents and specifies which of the substantive rights conferred by Chapter 216 shall be enforceable by private right of action. This statute was enacted as part of the same statutory scheme as the various other licensure and operations requirements set forth in Chapter 216 and its implementing regulations, which Plaintiff seeks to enforce via KRS 446.070. However, nothing in KRS 216.515 states that the rights enforceable via the remedy provided in subsection (26)

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

MEM : 000009 of 000023

include violations of the other sections of Chapter 216.[2] The legislature's decision to enumerate certain specific statutory provisions enforceable via private right of action in Chapter 216 necessarily implies the intent to exclude a private right of action for other statutory provisions in that Chapter. *Schwindel v. Meade County*, 113 S.W.3d 159, 168 (Ky. 2003) ("[T]he enumeration of particular items or categories excludes others not specifically mentioned."). Allowing other provisions of Chapter 216 to be privately enforced under the more general language of KRS 446.070 would violate this clear legislative intent.

Again, this does not mean that residents are without any remedy for tortious actions that are not specified in KRS 216.515. Residents may still bring common law claims to recover for such injuries. They simply may not use KRS 446.070 to transform every alleged statutory violation into a claim for negligence *per se*, and avoid their burden of proving the applicable standard of care based on the individual facts and circumstances of their case. *Young*, 289 S.W.3d at 589.

In sum, Chapter 216 specifies the civil remedy available to nursing home residents. Thus, residents are "limited to the remedy provided by the statute" and may not enlarge that remedy through the general provisions of KRS 446.070. *Gryzb v. Evans*, 700 S.W.2d at 401. Any claims for negligence *per se* or any other direct cause of action based on alleged violations of Chapter 216 or its implementing regulations should be dismissed.

**B. KRS Chapter 216 and its implementing regulations are not intended to confer individually enforceable protections for the benefit of residents.**

Even in those circumstances where KRS 446.070 otherwise would apply, "[i]t is not true ... that a violation of a statute or regulation necessarily implies negligence." *Alderman*, 957

[2] The only reference to the other statutory requirements of Chapter 216 is in KRS 216.515(2), which requires residents be informed in writing of the rights and responsibilities set forth in KRS 216.520 to 216.530.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

MEM : 000010 of 000023

S.W.2d at 267. Rather, "[i]n order for a violation to become negligence *per se*, the plaintiff must be a member of the class of persons intended to be protected by the regulation and the injury suffered must be an event which the regulation was designed to prevent. Only when both requirements are affirmatively demonstrated is negligence *per se* established with the applicable regulation or statute defining the relevant standard of care." *Id*; *see also, Hargis v. Baize*, 168 S.W.3d at 40 (KRS 446.070 creates claim for negligence *per se* only where "the person damaged is within the class of persons the statute intended to be protected.")

Here, the operating and licensure requirements established by KRS Chapter 216 and its implementing regulations, like the federal certification requirements they help to implement, are focused on improving the aggregate operations of nursing homes, and do not evince an intent to create individually enforceable treatment standards for particular residents. Indeed, these standards are far too generalized to supplant, under a negligence *per se* theory, the applicable standard of care for claims sounding in medical negligence.

***1. KRS Chapter 216 does not evince any intent to create enforceable rights for the benefit of residents.***

For a statutory violation to give rise to negligence *per se* under KRS 446.070, the statute must have been intended to confer a specific benefit on the class of person to whom the plaintiff belongs. *Hargis*, 168 S.W.3d at 40. Kentucky courts conducting this inquiry have looked to whether the statute reflects a legislative intent to confer concrete, enforceable rights on members of a plaintiff class. *Alderman*, 957 S.W.2d at 267. Thus, for example, in *Alderman*, the court found there was no claim for negligence *per se* for violations of gun control statutes because there was no indication the statute intended to confer rights on victims (even though potential victims would be benefitted by the law) or defined the standard of care applicable to sellers in negligence actions. *Id*. at 268.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000011 of 000023

The same is true here. Aside from the particular rights that are specifically and expressly made individually enforceable through a private right of action under the Rights of Residents provision, KRS 216.515, (which, as discussed in Section B, supra, the Plaintiffs here have no standing to bring in this action), the remaining provisions of KRS Chapter 216 and its implementing regulations, like the federal certification requirements they help to implement, are aimed at the aggregate operations of nursing homes, not defining standards of care for the benefit of individual residents. As such, they do not evince intent to confer benefits on individual nursing home residents, as would be required for a negligence *per se* claim. *Accord*, *Duncan*, *supra*, 2010 WL 3000718, at *8 ("While the FNHRA clearly speaks of the rights of nursing home residents, the focus of the statute is on setting forth requirements that nursing home facilities must follow to maintain their certifications and eligibility for federal funding ... the statute's focus is on the nursing homes, not the nursing home residents."); *Baum*, *supra*, 764 F. Supp. 2d 410, 424 ("FHRA establishes 'yardsticks' to measure aggregate performances of the programs and services, and not the particular needs of any particular person.")

By analogy, when conducting a similar analysis of the federal certification requirements, Judge Caldwell concluded that the federal regulations did not evince an "unmistakable focus on nursing home residents" because "[r]ather than focusing on individual nursing home residents, the regulation sets for [general] standards and requirements for patient care and maintenance." *Duncan*, 2010 WL 300718, at *9. The court emphasized that the regulatory requirements were phrased in terms of the facilities obligations - *i.e.*, "the facility must ensure that..." - rather than the rights or entitlements of individual residents. The court also pointed to the fact that much of the federal regulation was focused on matters related to the overall administration and operation of the nursing home, like the need for a governing body responsible for management of the

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

MEM : 000012 of 000023

facility and training requirements for nurses' aides and staff, rather than specific standards of treatment for individual residents.

The same is true of the state statutory and regulatory requirements relied upon by the Plaintiff. Indeed, the state-law licensing and operation standards set forth in KRS Chapter 216 and its implementing regulations have been adopted, in large part, to implement the very same federal-law certification that *Duncan* and numerous other decisions have held are not intended to confer benefits on individual nursing home residents. For example, 900 KAR 2:040, which defines the criteria and specific acts citable as violations pursuant to the inspection scheme set forth in KRS Chapter 216, states that the criteria for such violations include "[a]pplicable federal laws and regulations governing the certification of long-term care facilities under Title 18 and 19 of the Social Security Act."

Moreover, the standards set forth in the applicable state statutory and regulatory provisions, like the requirements of the FNHRA in *Duncan*, largely focus on overall operations of nursing home facilities and speak in terms of the obligations of licensee facilities, not the rights of individual residents. For example, 900 KAR 2:040 lists as citable violations that "the licensee has no evidence of a current inspection by the state fire marshal," that "the licensee does not maintain a system of heating and cooling capable of attaining a minimum temperature of seventy-two degrees," and that "there is not at least three (3) days' supply of food in the facility at all times." 900 KAR 2:040, §5(l)(a)5, 6, and 10. Clearly, these are not intended to confer individual rights on residents. Similarly, like the federal regulations in *Duncan*, the state regulations speak to overall staffing and training requirements, which are not addressed to individual resident entitlements. 900 KAR 2:040, §5(1)(f)4.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

MEM : 000013 of 000023

The remedial provisions of Chapter 216 also evince a focus on improving the overall operations of nursing homes, rather than individual resident's rights. In contrast to the private right of action conferred on residents for violations of the specific rights conferred by KRS 216.515, the remedy provisions concerning the remaining requirements of Chapter 216 focus on the Cabinet's interest in enforcing operational standards on the facility, not the protection of individual residents. KRS 216.577, for example, authorizes the Secretary of the Cabinet to institute a civil action against a facility to compel compliance with state and federal laws and regulations governing the certification of long term care facilities. KRS 216.573 similarly authorizes the Cabinet to institute injunctive proceedings to enforce KRS 216.537 to 216.590 or to terminate the operation of a facility that has failed to correct previously identified violations. Clearly, the focus is on the state's interest in improving the overall operations of nursing home facilities, not individual residents' rights.

***2. As a matter of law, negligence per se is not available because the state and federal statutory and regulatory standards relied upon by the Plaintiff are too vague to supplant the standard of care in a negligence case against a health care provider.***

The conclusion that KRS Chapter 216 and its implementing regulations, like the corresponding federal certification laws and regulations, are not intended to confer enforceable individual benefits on residents is confirmed by the fact that the standards established by these provisions are simply too generalized and vague to establish an enforceable standard of care for the benefit of individual residents in negligence actions against health care providers.

Indeed, numerous courts have held that violations of the kind of state and federal statutory and regulatory standards relied upon by Plaintiff cannot constitute negligence *per se* in a nursing home case. *See, e.g., Satterwhite v. Reilly*. 817 So. 2d 407, 412 (La. 2002) (noting "no court has ever imposed a tort duty upon a nursing home based solely on this regulatory

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

MEM : 000014 of 000023

provision" of the federal certification standards); *Raney v. Ashford Hall*, 2002 WL 14354, at *4 (Tex. App. Jan. 7, 2002) (finding "no authority for [plaintiff's] contention that the [state and federal] regulations and statutes establish the accepted standard of care which a nursing home owes its residents."); *Makas v. Millhaven, Inc.*, 589 F. Supp. 736, 741-42 (M.D.N.C. 1984) (holding that state nursing home patients' "rights" statute could not form standard of care for purposes of negligence *per se* because "the rights declared ... are so general and nebulous that a trier of fact could not determine whether the standard had been violated"); *Stogsdill v. Manor Convalescent Home*, 343 N.E.2d 589, 664 (Ill. App. 1976) (affirming directed verdict, holding state nursing home "minimum standards" regulations were "too vague to be sufficient indicators of the standard of care required of nursing homes by themselves").

Under Kentucky law, it is well established that in negligence cases "involving professionals or professions requiring special skill and expertise, the standard [of care] is typically measured by the standard of conduct customary in the profession under the circumstances." *Boland-Maloney Lumber Co. v. Burnett,* 302 S.W.3d 680, 686 (Ky. App. 2009). "In such cases, expert testimony is typically required to establish the standard of care." *Id*. Thus, in cases alleging negligence in the provision of health care services, a plaintiff "is generally required to put forth expert testimony to show that the defendant medical provider failed to conform to the standard of care." *Blankenship v. Collier*, 302 S.W.3d 665, 670 (Ky. 2010). Kentucky has recognized two exceptions to this rule: (1) in *res ipsa loquitor* cases, where any layperson could infer negligence from the mere occurrence of the event; and (2) cases where the defendant doctor's own admissions establish negligence. *Id*.

For a negligence *per se* claim, however, "a statutory standard of care [is] substituted for the common law standard of care." *Real Estate Mktg. v. Franz*, 885 S.W.2d 921, 926-27 (Ky.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000015 of 000023

1994). Thus, if a plaintiff were permitted to assert a claim for negligence *per se* against a health care provider based on statutory or regulatory violations, the statute or regulation would supplant the typically required expert testimony about the appropriate professional standard of care under the circumstances. *Makas*, 589 F. Supp. at 741-42. As noted above, however, most courts have concluded that state and federal nursing home minimum care standards, like those cited by Plaintiffs here, are simply too general to establish the appropriate standard of care under the circumstances for a particular patient. *See Satterwhite*, 817 So. 2d at 412; *Raney*, 2002 WL 14354, at *4; *Makas,* 589 F. Supp. at 741-42; *Stogsdill*, 343 N.E.2d at 664.

In *Makas*, 589 F. Supp. 736, for example, the plaintiff brought a claim for negligence *per se*, alleging violations of the North Carolina statutes concerning standards of care for nursing home residents, based on allegations that the resident was regularly found in a soiled state and had developed severe bruises for which the facility never provided an adequate explanation, among other things. *Id*. at 739. The plaintiff claimed that because she was alleging negligence *per se*, the standard of care was supplied by the statute, and there was no need for expert testimony. The court disagreed and dismissed the negligence *per se* claim, as a matter of law. The court observed that North Carolina law recognized that lay persons typically "lack [] the ability to evaluate whether a particular application of health care services violated the required standard of care," and thus "expert testimony on the applicable standard of care and any departure therefrom is usually required in medical malpractice actions." *Id*. at 740. The court held that established negligence law, which was codified in statute in North Carolina, obviated the need to resort to statutory requirements for the standard of care in nursing home cases. The court further held that the statutory standards were simply too vague to establish the standard of care in a health care negligence case:

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

MEM : 000016 of 000023

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

> The rights declared ... are so general and nebulous that a trier of fact could not determine whether the standard had been violated. The patient's rights are so broadly stated that submission of them to the jury as the standard of care would result in a speculative, ad hoc verdict completely unguided by any rational legal standards. The Nursing Home Patients' Bill of Rights is a laudable statement of policy and requirements imposed on licensed nursing homes with a remedial enforcement scheme which provides for injunctive relief and/or license revocation and administrative penalties. … **but it is not a substitute, through the doctrine of negligence *per se*, for the well established standard of care to be applied in negligence actions for damages against health providers.**

*Id*. at 742 (emphasis added). The same is true here. The standards established in KRS Chapter 216 and its implementing regulations are broad legislative rules that do not, and cannot, establish specific standards of care for particular patients appropriate to the patient's unique circumstances. For example, 900 KAR 2:040 lists as a prohibited "violation" admitting "[p]ersons whose care needs exceed the capability of the facility," 900 KAR 2:040, §5(l)(a)l. This broad regulatory "standard" provides no real guidance for a lay person to assess the "capability" of a facility or the "needs" of a patient, and therefore cannot be mechanically applied as the governing standard of care to a particular patient's negligence claim. The same is true of similar broad standards, such as requirements for physician notification of "serious accident of illness" or "error in medication." 900 KAR 2:040, §5(1)(a); *Accord*, *Stogsdill*, 343 N.E. 2d at 664 (because Illinois nursing home minimum care standards did not provide clear guidance on questions about specific application of broadly-worded regulatory standards concerning matters like physician notification, observation of changes in condition, and need for professional evaluation, state standards could not be used to establish relevant standard of care in negligence case).

The state and federal nursing home certification and operation standards simply cannot establish the standard of care for a particular Plaintiff's negligence claim, and therefore cannot

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

MEM : 000017 of 000023

reasonably be construed as intended to confer enforceable rights on the class of nursing home residents, as is required to give rise to a claim for negligence *per se*.[3]

## III. KRS CHAPTER 209 DOES NOT PROVIDE A BASIS FOR NEGLIGENCE *PER SE.*

The provisions of KRS Chapter 209 concerning adult protective services also do not meet the standards for assertion of a claim for negligence *per se* under KRS 446.070. Thus, Plaintiff's allegation in Paragraph 32(a) that the Defendants are liable for violations of KRS 209.005 *et seq.*, fails to state a claim. KRS Chapter 209 and its implementing regulations, 922 KAR 5:070, establish a committee and protocol for investigating elder abuse and neglect, and providing the necessary protective services when the need is found. KRS 209.005, 209.010, 209.110; 922 KAR 5:070. However, the statute and regulations themselves do not establish any standards of conduct.[4] They only provide a process for investigating potential violations of other, primarily criminal, statutes. Thus, for example, the remedial provisions of the statute and regulation focus largely on making criminal complaints and referrals for criminal prosecution. KRS 209.150; 922 KAR 5:070, §7. Other provisions concern processes for petitioning for guardianship or conservatorship of vulnerable adults KRS 209.110; 922 KAR 5:070, §9. Nothing in the statute

[3] The inapplicability of negligence per se pertains to all of Plaintiffs' claims against the Defendants. The standard of care is determined by the nature of the professional services that are alleged to have been negligently performed, not the label given to those claims by the Plaintiffs. All of Plaintiffs' claims relate to the professional standard of care for residents in a nursing home facility, which is a subject requiring specialized knowledge. *See Makas*, 589 F. Supp. at 742 (rejecting argument that claims relating to ordinary custodial care did not require expert testimony because even for routine resident maintenance tasks, "a nursing home cannot be expected to prevent the situation or in all circumstances remedy it at once … the patient and linens should be cleaned at least at reasonably routine intervals ... [but] the question of when the time between intervals becomes unreasonable is beyond the realm of common knowledge of the court or a jury").

[4] The statute contains a definitions provision, which defines terms like "abuse," "exploitation," and "neglect," and the regulations impose duties on public agency officials to take certain action if abuse or neglect as defined. 922 KAR 5:070. But no statutory provisions in Chapter 209 impose any legal duty on nursing home facilities, or the public at large, to take any specific action to prevent abuse or neglect.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

MEM : 000018 of 000023

or regulations makes any reference to nursing home facilities, much less attempts to impose a standard of care on such facilities.

Thus, KRS Chapter 209 and its implementing regulations cannot establish a basis for negligence *per se*. These provisions do not prescribe any specific standard of conduct, so they cannot provide the standard of care for purposes of a negligence *per se* claim. *Young*, 289 S.W.3d at 589. Moreover, by their terms these provisions do not impose any duties on nursing home facilities. The only duties established pertain to the duties of the public officers charged with implementing the investigation procedures outlined. Since nursing home facilities are not the target of these statutes and regulations, no negligence *per se* claim can apply. *See Davidson v. Am. Freightways*, 25 S.W.3d 94 (Ky. 2000) (because negligence *per se* requires the defendant be within the class expressly regulated by the statute, self-insurers were not liable for violations of statutes directed at "insurers").

## IV. PLAINTIFF HAS NO CAUSE OF ACTION FOR ALLEGED VIOLATIONS OF CRIMINAL ABUSE AND ENDANGERMENT STATUTES.

Plaintiff cannot state a claim for alleged violations of criminal statutes. Paragraph 32(b)-(d) alleges direct claims, for violations of various criminal statutes relating to criminal abuse, specifically endangerment of an incompetent person, KRS 530.080 *et seq*., endangerment of an incompetent person, KRS 530.080 *et seq*., and criminal facilitation of a criminal act, KRS 506.080 *et seq*. "Criminal statutes, which express prohibitions rather than personal entitlements and specify a particular remedy other than civil litigation, are accordingly poor candidates for the imputation of private rights of action." *Anthony v. Am. Gen. Fin. Servs., Inc.*, 697 S.E.2d 166, 173 (quotation omitted). Criminal statutes, by their nature, "create rights in favor of the general public, not just individuals damaged by their violation." *Id.*; *accord, T&M Jewelry, Inc.*, 189 S.W.3d at 529 (holding no claim for negligence *per se* for violations of gun control act

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000019 of 000023

"[a]lthough the Act imposes criminal penalties"). *See also, Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) ("[T]his Court has rarely implied a private right of action under a criminal statute...."); *Ashland Hosp. v. Int'l Brotherhood of Elec. Workers*, 807 F. Supp. 2d 633, 644-45 (E.D. Ky. 2011) (no private right to damages for violation of criminal provisions of Communications Decency Act). This is particularly true when another civil remedy is available for the same conduct. *Bridges v. Wooten*, 700 S.E.2d 678, 684-85 (Ga. App. 2010); *accord, R.B. Tyler Co. v. Kinser*, 346 S.W.2d 306 (Ky. 1961) (in civil action for disturbing grave, jury was properly instructed according to elements of common law action, rather than criminal prohibition concerning grave violation).

Although no Kentucky precedent authoritatively addresses the relationship between criminal prohibitions and KRS 446.070, other jurisdictions with statutes nearly identical to KRS 446.070 have refused to allow those statutes to be used to convert the entire criminal code into a supplementary body of tort law. For example, Virginia Code Ann. § 8.01-221 largely mirrors the Kentucky negligence *per se* statute, insofar as it states: "Any person injured by the violation of any statute may recover from the offender such damages as he may sustain … even though a penalty or forfeiture for such violation be thereby imposed...." Virginia Courts have consistently held that this language "creates no new right of damages for violation of some other criminal or penalty statute; no civil right of action exists unless such other statute by its terms so provides, or unless proof of the same facts that establish violation of such other statute also constitutes proof of an otherwise existing civil action for damages independent of the criminal statute." *Vansant & Gusler, Inc. v. Washington*, 429 S.E.2d 31, 34 (Va. 1993). *See also, Field v. GMAC LLC*, 600 F. Supp. 2d 679,689-90 (E.D. Va. 2008).

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
MEM : 000020 of 000023

Plaintiff cannot obtain private damages recovery for violations of criminal statutes, which are intended to benefit the public at large, not merely the narrow class of residents at nursing homes. Moreover, Plaintiff has a civil remedy under common law theories like negligence and wrongful death to recover for conduct that truly constitutes injurious abuse or neglect. There is no need to infuse criminal statutes, which reflect no intention to create private rights, into this litigation. KRS 446.070 provides no avenue for doing so. These claims should be dismissed.

## **CONCLUSION**

Plaintiff's negligence *per se* claims all fail as a matter of law. First, Kentucky law categorically precludes asserting a negligence *per se* claim on the basis of a federal statute or regulation, so Plaintiff's claims based on federal statutes and regulations governing certification of nursing homes must be dismissed. Second, state statutes concerning licensing and operation of nursing homes prohibit this result because (a) KRS 216.515(26) specifically defines the private remedy available to residents under the state nursing home licensure scheme, which precludes the use of KRS 446.070 to imply additional rights of action under other portions of that scheme; and (b) Plaintiff's claims based on Chapter 216 must be dismissed because (i) the text and structure of Chapter 216 and its implementing regulations make clear that, like their federal counterparts, they are not intended to create individually enforceable standards governing the care of particular patients, and (ii) negligence *per se* is not available because the state and federal statutes relied upon by Plaintiff are too vague to supplant the standard of care in a negligence case against a health care provider. Third, KRS Chapter 209 and its implementing regulation do not create substantive standards of care or conduct for nursing homes; they simply set forth procedures for investigating potential violations of other statutes and appointing guardians for vulnerable individuals. Fourth, Plaintiff's negligence *per se* claims under the

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

MEM : 000021 of 000023

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

criminal assault and other penal statutes also fail, as KRS 446.070 does not transform the Penal Code into a supplemental body of intentional tort law. For these reasons, Plaintiff's negligence *per se* claims should be dismissed with prejudice.

**NOTICE**

This matter will come before the Court for a hearing on the 19th day of August, 2016, at the hour of 9:00 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

______________________________

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANTS

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

MEM : 000022 of 000023

22

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 12th day of August, 2016, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507

____________________________________
ATTORNEY FOR DEFENDANTS

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

MEM : 000023 of 000023

COMMONWEALTH OF KENTUCKY
MAGOFFIN CIRCUIT COURT
CIVIL ACTION NO. 09-CI-00071

DINAH PUCKETT PLAINTIFF

FILED ✓ ENTERED
TENDERED
THIS 18th DAY OF June, 20 13
MAGOFFIN CIRCUIT COURT
TONYA ARNETT WARD, CLERK
BY: BD D.C.

VS. **ORDER**

SALYERSVILLE HEALTH CARE CENTER, et al DEFENDANTS

***** ***** *****

Defendants have moved to dismiss Plaintiff's KRS 446.070 negligence *per se* claims based on various violations of federal and state statutes and regulations, and the Court being otherwise sufficiently advised;

IT IS HEREBY ORDERED THAT:

(1) Plaintiffs' claims for negligence per se pursuant to KRS 446.070 for alleged violations of "...federal and state regulations governing skilled facilities; are **DISMISSED** with prejudice. Kentucky law precludes any claim for negligence per se, under KRS 444.070 or otherwise, based on alleged violations of federal statutes or regulations. Also, the federal statutes and regulations concerning certification of long-term care facilities, including particularly the Federal Nursing Home Reform Act ("FNHRA") and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

EXHIBIT
A

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000001 of 000030

(2) Plaintiffs' claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of alleged violations of provisions of Kentucky Revised Statute Chapter 216 and Chapter 216B, and any regulations thereunder, including but not limited to 902 KAR 20:026; 902 KAR 20:048 and 902 KAR 20:300 concerning certification of nursing homes are **DISMISSED** with prejudice. The specific statutory remedy provided in KRS 216.515(26) precludes the use of KRS 446.070 to infer additional statutory claims under other provisions of Chapther 21 and 216B or its implementing regulations. Also, the state statutes and regulations concerning certification of long-term care facilities, including KRS Chapter 216 and 216B and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

This Order is final and appealable and there is no just cause for delay.

SO ORDERED this the 17th day of June 2013.

Kimberley Childers

HON. KIMBERLEY CORNETT CHILDERS,
JUDGE, MAGOFFIN CIRCUIT COURT

Copies to:
E. Benson
E. Feamster
J. Tovely
M. Lucas

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000002 of 000030

COMMONWEALTH OF KENTUCKY

JEFFERSON CIRCUIT COURT

NO. 09CI06579

DIVISION SEVEN

JUDGE AUDRA J. ECKERLE

MONGITTA CHILDRESS, as Administratrix of the Estate of Maurice Childress

PLAINTIFF

vs.

**OPINION AND ORDER**

KINDRED NURSING CENTERS LIMITED PARTNERSHIP
d/b/a BASHFORD EAST HEALTHCARE
and
KINDRED NURSING CENTERS EAST, L.L.C.
and
KINDRED HOSPITALS LIMITED PARTNERSHIP
and
KINDRED HEALTHCARE, INC.
and
KINDRED HEALTHCARE OPERATING, INC.
and
THEODORE BURFICT, in his capacity as Administrator of Bashford East Healthcare
and
KINDRED REHAB SERVICES, INC.
d/b/a PEOPLE FIRST REHABILITATION
n/k/a REHABCARE;
and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS

DEFENDANTS

*** *** ***

This matter stands submitted on the motions of: (a) Defendants, Kindred Nursing Centers Limited Partnership d/b/a Bashford East Healthcare; Kindred Nursing Centers East, L.L.C.; Kindred Hospitals Limited Partnership; Kindred Healthcare, Inc.; Kindred Healthcare Operating, Inc.; Theodore Burfict, in his capacity as Administrator of Bashford East Healthcare; and Kindred Rehab Services, Inc. d/b/a People First

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000003 of 000030

Rehabilitation n/k/a Rehabcare (hereinafter collectively, "Kindred"), for partial judgment on the pleadings; and (b) Plaintiff, Mongitta Childress, as Administratrix of the Estate of Maurice Childress (hereinafter, "Childress"), to compel. At oral arguments on March 24, 2014, Mr. Corey T. Fannin appeared for Childress, and Mr. Pete Pullen appeared for Kindred. Having thoroughly reviewed and carefully considered the parties' arguments, the record, and applicable law, the Court will grant Kindred's motion and remand Childress' motion.

**OPINION**

A. Kindred's Motion for Partial Judgment on the Pleadings

Kindred argued that, despite language in her Complaint, Childress can state no viable claim for negligence per se because the standard of care is set by the industry, not the legislature. It stated that federal and state regulations cannot create a private cause of action because medical malpractice and negligence per se claims cannot co-exist. It also claimed that Childress does not have standing to assert a resident's rights claims because she was neither the resident nor the guardian of the resident. Kindred acknowledged that a motion in limine may have been a more appropriate vehicle to advance its arguments regarding Childress' theories at trial.

Childress responded by agreeing that the Court need not decide the issue at this time and should defer until motions in limine are heard or the jury trial is commenced. She conceded that she did not necessarily refrain from making a negligence per se claim in her Complaint; however, she truly desires to pursue an ordinary negligence, medical malpractice action. She alleged that she would use expert testimony at trial to

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000004 of 000030





COMMONWEALTH OF KENTUCKY
MADISON CIRCUIT COURT
CASE NO.: 15-CI-416
FIRST DIVISION

EARNEST CURTIS, as Administrator of the ESTATE of LOIS KELLEY, deceased, PLAINTIFF

v.

PREFERRED CARE OF DELAWARE, INC. d/b/a PREFERRED CARE, INC.; et al. DEFENDANTS

---

**ORDER SUSTAINING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

---

Defendants, Preferred Care of Delaware, Inc. d/b/a Preferred Care, Inc.; Kentucky Partners Management, LLC; Preferred Care Partners Management Group, L.P.; Richmond Health Facilities - Kenwood, L.P. d/b/a Kenwood Health and Rehabilitation Center; and Glenn Cox, in his capacity as Administrator of Kenwood Health and Rehabilitation Center, have moved for Partial Judgment on the Pleadings regarding Plaintiff's KRS 446.070 negligence *per se* claims based on various violations of federal and state statutes and regulations, and the Court being otherwise sufficiently advised;

**IT IS HEREBY ORDERED THAT:**

(1) Plaintiff's claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of "applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII and XIX of the Social Security Act" are **DISMISSED** with prejudice. (Compl. ¶ 49(f)). Kentucky law precludes any claim for negligence per se under KRS 446.070 or

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000005 of 000030

otherwise, based on alleged violations of federal statutes or regulations. Also the federal statutes and regulations concerning certification of long-term care facilities, including particularly the Federal Nursing Home Reform Act ("FNHRA") and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(2) Plaintiff's claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of provisions of KRS Chapter 216 and any administrative regulations promulgated thereunder concerning certification of nursing homes, are **DISMISSED** with prejudice. (Compl. ¶31(a),(b), and ¶ 49(f). The specific statutory remedy provided in KRS 216.515(26) precludes the use of KRS 446.070 to infer additional statutory claims under other provisions of Chapter 216 or its implementing regulations. Also, the state statutes and regulations concerning certification of long-term care facilities, including KRS Chapter 216 and 216B and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(3) Plaintiff's claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of KRS 209.005, *et seq.* and any administrative regulations promulgated thereunder, including but not limited to 922 KAR 5:070, are **DISMISSED** with prejudice. (Compl. ¶31(a)). These provisions establish a committee and protocol for investigating elder abuse and neglect and providing the necessary protective services when the need is found, but do not contain any provisions concerning the care of residents in long-term care facilities. Neither the statute nor its implementing regulations establish any substantive standards of care that could be the basis for a negligence *per se* claim, nor evince an intent to create enforceable rights for the benefit of individual nursing home residents.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000006 of 000030

SO ORDERED THIS the 17 day of MARCH, 2016.

WILLIAM G. CLOUSE, JR., CIRCUIT JUDGE

Prepared and tendered by:

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
David P. Kaiser, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
*Counsel for Defendants*

**CLERK'S CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 17 day of March, 2016, upon the following, via U.S. Mail:

David P. Kaiser, Esq.
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509

Corey T. Fannin, Esq.
Wilkes & McHugh, P.A.
429 N. Broadway
P.O. Box 1747
Lexington, KY 40588-1747

MADISON CIRCUIT CLERK

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000007 of 000030



COMMONWEALTH OF KENTUCKY
CLARK CIRCUIT COURT
CASE NO.: 14-CI-00221
FIRST DIVSION

CHRISTAL FRENCH, as ADM'X of the ESTATE of TERESA ESTES, deceased, PLAINTIFF

**ORDER**

v.

SIGNATURE HEALTHCARE, LLC;
LP WINCHESTER, LLC d/b/a
FOUNTAIN CIRCLE CARE & REHABILITATION CENTER
SHC KY HOLDINGS, LLC;
SIGNATURE CONSULTING SERVICES, LLC;
SIGNATURE CLINICAL CONSULTING SERVICES, LLC;
SHC LP HOLDINGS, LLC;
LAS PALMAS SNF, LLC;
LPSNF, LLC;
JEFFREY STIDHAM, in his capacity as ADMINISTRATOR of
FOUNTAIN CIRCLE CARE & REHABILITATION CENTER;
S'LENA HUDSON, in her capacity as ADMINISTRATOR of
FOUNTAIN CIRCLE CARE & REHABILITATION CENTER;
ELIZABETH SMITH, in her capacity as ADMINISTRATOR of
FOUNTAIN CIRCLE CARE & REHABILITATION CENTER;
KINDRED HEALTHCARE, INC.;
KINDRED NURSING CENTERS LIMITED PARTNERSHIP d/b/a
FOUNTAIN CIRCLE CARE & REHABILITATION CENTER a/k/a
KINDRED TRANSITIONAL CARE AND REHABILITATION – FOUNTAIN CIRCLE;
KINDRED NURSING CENTERS EAST, LLC;
KINDRED HOSPITALS LIMITED PARTNERSHIP;
KINDRED HEALTHCARE OPERATING, INC.; and
KINDRED REHAB SERVICES, INC. d/b/a
PEOPLE*FIRST* REHABILITATION n/k/a
REHABCARE; and
JOHN DOES 1 THROUGH 5, Unknown Defendants, DEFENDANTS

* * * * * * * * * * * *

Defendants have moved for Partial Judgment on the Pleadings regarding Plaintiff's KRS 446.070 negligence *per se* claims based on various violations of federal and state statutes and regulations, and the Court being otherwise sufficiently advised;

IT IS HEREBY ORDERED THAT:

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000008 of 000030

(1) Plaintiff's claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of provisions of KRS Chapter 216 and the regulations promulgated thereunder concerning certification of nursing homes are DISMISSED with prejudice. (Complaint ¶41(b)). The specific statutory remedy provided in KRS 216.515(26) precludes the use of KRS 446.070 to infer additional statutory claims under other provisions of Chapter 216 or its implementing regulations.

(2) Plaintiff's claims for negligence per se pursuant to KRS 446.070 for alleged violations of KRS 209.005 et seq. and any administrative regulations promulgated thereunder, including but not limited to 922 KAR 5:070, are DISMISSED with prejudice (Complaint ¶41(a)). These provisions establish a committee and protocol for investigating elder abuse and neglect and providing the necessary protective services when the need is found, but do not contain any provisions concerning the care of residents in long-term care facilities. Neither the statute nor its implementing regulations establish any substantive standards of care that could be the basis for a negligence *per se* claim, nor evince an intent to create enforceable rights for the benefit of individual nursing home residents.

(3) The Court will consider whether to permit the testimony of expert witnesses pertaining to whether state or federal regulations establish, in whole or in part, the standards of care relevant to the care and treatment provided to Teresa Estes at Fountain Circle pursuant to a an appropriate Motion *in Limine*.

This Order is final and appealable and there is no just cause for delay.

So Ordered this the 4 day of May, 2015.

JUDGE, CLARK CIRCUIT COURT

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000009 of 000030

Prepared and Tendered by:

J. Peter Cassidy, III, Esq.
Nathaniel R. Kissel, Esq.
2452 Sir Barton Way, Suite 300
Lexington, KY 40509

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been served this the 04 of May, 2016, via U.S. Mail Service, postage prepaid, upon the following:

J. Peter Cassidy, III, Esq.
Nathaniel R. Kissel, Esq.
2452 Sir Barton Way, Suite 300
Lexington, KY 40504

Tyler Koch Forsythe, Esq.
Wilkes & McHugh, P.A.
429 N. Broadway
P.O. Box 1747
Lexington, KY 40588-1747

M. Brandon Faulkner, Esq.
Christopher Piekarski, Esq.
Garcia Artigliere & Medby
220 West Main Street, Suite 2250
Louisville, KY

Clark Circuit Court Clerk

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

11/4/13
CM

800

COMMONWEALTH OF KENTUCKY
MADISON CIRCUIT COURT
DIVISION I
CIVIL ACTION NO. 12-CI-00795

FLONNIE COFFEY and SHERRA MORGAN, as Co-Administratrixes of the Estate of JAMES H. COFFEY, deceased, and FLONNIE COFFEY, Individually — PLAINTIFFS

v.

EXTENDICARE, INC.;
FIR LANE TERRACE CONVALESCENT CENTER, INC. d/b/a
KENWOOD HEALTH & REHABILITATION CENTER f/k/a
RICHMOND HEALTH & REHABILITATION COMPLEX-KENWOOD;
EXTENDICARE HEALTH NETWORK, INC.;
EXTENDICARE HOMES, INC.;
EXTENDICARE REIT;
EXTENDICARE, L.P.;
EXTENDICARE HOLDINGS, INC.;
EXTENDICARE HEALTH SERVICES, INC.;
EXTENDICARE HEALTH FACILITY HOLDINGS, INC.; AND
JOHN DOES 1 THROUGH 5, UNKNOWN DEFENDANTS — DEFENDANTS

## ORDER SUSTAINING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Defendants have moved for Partial Judgment on the Pleadings regarding Plaintiffs' KRS §446.070 negligence *per se* claims based on various violations of federal and state statutes and regulations, and the Court being otherwise sufficiently advised;

IT IS HEREBY ORDERED THAT:

(1) Plaintiffs' claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of "applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII and XIX of the Social Security Act" are DISMISSED with prejudice. (Compl. ¶ 30(e)). Kentucky law precludes any claim for negligence *per se* under KRS §446.070 or otherwise, based on alleged violations of federal statutes or regulations. Also

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000011 of 000030

the federal statutes and regulations concerning certification of long-term care facilities, including particularly the Federal Nursing Home Reform Act ("FNHRA") and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(2) Plaintiffs' claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of provisions of KRS Chapter 216 and the regulations promulgated thereunder concerning certification of nursing homes are DISMISSED with prejudice. (Compl. ¶ 30). The specific statutory remedy provided in KRS §216.515(26) precludes the use of KRS §446.070 to infer additional statutory claims under other provisions of Chapter 216 or its implementing regulations. Also, the state statutes and regulations concerning certification of long-term care facilities, including KRS Chapter 216 and 216B and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(3) Plaintiffs' claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of KRS §209.005 *et seq.* and any administrative regulations promulgated thereunder, including but not limited to 922 KAR 5:070, are DISMISSED with prejudice. (Compl. ¶30(a)). These provisions establish a committee and protocol for investigating elder abuse and neglect and providing the necessary protective services when the need is found, but do not contain any provisions concerning the care of residents in long-term care facilities. Neither the statute nor its implementing regulations establish any substantive standards of care that could be the basis for a negligence *per se* claim, nor evince an intent to create enforceable rights for the benefit of individual nursing home residents.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000012 of 000030

(4) Plaintiffs' claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of state criminal laws, including KRS §508.090 *et seq.*, KRS §530.080 *et seq.*, and §506.080 *et seq.*, are **DISMISSED** with prejudice. (Compl. ¶ 30(b)-(d)). These statutes are intended to benefit the general public, not to create specific benefits or enforceable rights for individuals damaged by their violation, and thus cannot give rise to a claim for negligence *per se* under KRS §446.070.

This Order is final and appealable and there is no just cause for delay.

SO ORDERED THIS the 18 day of December, 2013.

WILLIAM G. CLOUSE, JR., JUDGE
MADISON CIRCUIT COURT, DIVISION I

Prepared and Tendered by:

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

Donald L. Miller, Esq.
J. Peter Cassidy, II, Esq.
David P. Kaiser, Esq.
2452 Sir Barton Way, Suite 300
Lexington, Kentucky 40509
Telephone: (859) 226-0057
Facsimile: (859) 226-0059
*Counsel for Defendants*

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000013 of 000030

CLERK'S CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been served this the 19 of Dec, 2013, via U.S. Mail Service, postage prepaid, upon the following:

Donald L. Miller, Esq.
J. Peter Cassidy, II, Esq.
David P. Kaiser, Esq.
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
2452 Sir Barton Way, Suite 300
Lexington, Kentucky 40509

Carl R. Wilander, Esq.
WILKES & MCHUGH, P.A.
Tampa Commons
One North Dale Mabry Hwy, Ste. 800
Tampa, Florida 33609

CLERK, MADISON CIRCUIT COURT

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000014 of 000030



COMMONWEALTH OF KENTUCKY
MADISON CIRCUIT COURT
DIVISION II
CIVIL CASE NO.: 12-CI-469

YVONNE SAMS, as Executrix of the Estate of WILLIAM WITT, deceased — PLAINTIFF

v.

EXTENDICARE, INC.;
FIR LANE TERRACE CONVALESCENT CENTER, INC.
D/B/A KENWOOD HEALTH AND REHABILITATION CENTER
F/K/A RICHMOND HEALTH AND REHABILITATION COMPLEX-KENWOOD;
EXTENDICARE HEALTH NETWORK, INC.;
EXTENDICARE HOMES, INC.;
EXTENDICARE REIT;
EXTENDICARE, L.P.;
EXTENDICARE HOLDINGS, INC.;
EXTENDICARE HEALTH SERVICES, INC.;
EXTENDICARE HEALTH FACILITY HOLDINGS, INC.;
AND JOHN DOES 1 THROUGH 5,
UNKNOWN DEFENDANTS — DEFENDANTS

ENTERED TIME 9:00 (A.M.) P.M. DEC 05 2013 MADISON CIRCUIT COURT DARLENE SNYDER, CLERK

**ORDER SUSTAINING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Defendants have moved for Partial Judgment on the Pleadings regarding Plaintiff's KRS §446.070 negligence *per se* claims based on various violations of federal and state statutes and regulations, and the Court being otherwise sufficiently advised;

**IT IS HEREBY ORDERED THAT:**

(1) Plaintiff's claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of "applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII and XIX of the Social Security Act" are **DISMISSED** with prejudice. (Compl. ¶ 30(e)). Kentucky law precludes any claim for negligence *per se* under KRS §446.070 or otherwise, based on alleged violations of federal statutes or regulations. Also

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000015 of 000030

the federal statutes and regulations concerning certification of long-term care facilities, including particularly the Federal Nursing Home Reform Act ("FNHRA") and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(2) Plaintiff's claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of provisions of KRS Chapter 216 and the regulations promulgated thereunder concerning certification of nursing homes are **DISMISSED** with prejudice. (Compl. ¶ 30). The specific statutory remedy provided in KRS §216.515(26) precludes the use of KRS §446.070 to infer additional statutory claims under other provisions of Chapter 216 or its implementing regulations. Also, the state statutes and regulations concerning certification of long-term care facilities, including KRS Chapter 216 and 216B and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(3) Plaintiff's claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of KRS §209.005 *et seq.* and any administrative regulations promulgated thereunder, including but not limited to 922 KAR 5:070, are **DISMISSED** with prejudice (Compl. ¶ 30(a)). These provisions establish a committee and protocol for investigating elder abuse and neglect and providing the necessary protective services when the need is found, but do not contain any provisions concerning the care of residents in long-term care facilities. Neither the statute nor its implementing regulations establish any substantive standards of care that could be the basis for a negligence *per se* claim, nor evince an intent to create enforceable rights for the benefit of individual nursing home residents.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000016 of 000030

(4) Plaintiff's claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of state criminal laws, including KRS §508.090 *et seq*, KRS §530.080 *et seq*, and §506.080 *et seq*, are **DISMISSED** with prejudice. (Compl. ¶ 30(b)-(d).) These statutes are intended to benefit the general public, not to create specific benefits or enforceable rights for individuals damaged by their violation, and thus cannot give rise to a claim for negligence *per se* under KRS §446.070.

This Order is final and appealable and there is no just cause for delay.

SO ORDERED THIS the 4 day of December 2013.

HON. JEAN CHENAULT LOGUE
JUDGE, MADISON CIRCUIT COURT

Prepared and Tendered by:

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Anthony B. Gray, Esq.
2452 Sir Barton Way, Suite 300
Lexington, KY 40509
(859) 226-0057
(859) 226-0059 fax
DMiller@qpwblaw.com
PCassidy@qpwblaw.com
AGray@qpwblaw.com
*Counsel for Defendants*

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000017 of 000030

CLERK'S CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been served this the 5 of December 2013, via U.S. Mail Service, postage prepaid, upon the following:

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Suite 300
Lexington, Kentucky 40509

Tyler K. Forsythe, Esq.
Wilkes & McHugh, P.A.
429 North Broadway
P.O. Box 1747
Lexington, Kentucky 40588-1747

Darlene Snyder /[initials]
CLERK, MADISON CIRCUIT COURT

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000018 of 000030

COMMONWEALTH OF KENTUCKY
MADISON CIRCUIT COURT
CIVIL BRANCH
DIVISION II
Civil Action No. 12-CI-199

ENTERED
TIME 7:35 A.M./P.M.
OCT 17 2013
MADISON CIRCUIT COURT
DARLENE SNYDER, CLERK

SANDRA BAUMGARDNER, as Administratrix of the Estate of ETHEL E. RAINS, deceased, and on behalf of the Wrongful Death Beneficiaries of ETHEL E. RAINS, deceased

PLAINTIFF

v.

DEFENDANTS

FIR LANE TERRACE CONVALESCENT CENTER, INC. d/b/a KENWOOD HEALTH & REHABILITATION CENTER f/k/a RICHMOND HEALTH & REHABILITATION COMPLEX-KENWOOD;
EXTENDICARE, INC.;
EXTENDICARE HEALTH NETWORK, INC.;
EXTENDICARE HOMES, INC.;
EXTENDICARE REIT; EXTENDICARE, L.P.;
EXTENDICARE HOLDINGS, INC.;
EXTENDICARE HEALTH SERVICES, INC.;
EXTENDICARE HEALTH FACILITY HOLDINGS, INC.; and,
JOHN DOES 1 THROUGH 5,
UNKNOWN DEFENDANTS

**ORDER SUSTAINING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Defendants have moved for Partial Judgment on the Pleadings regarding Plaintiff's KRS 446.070 negligence *per se* claims based on various violations of federal and state statutes and regulations, and the Court being otherwise sufficiently advised;

IT IS HEREBY ORDERED THAT:

(1) Plaintiff's claims for negligence per se pursuant to KRS 446.0707 for alleged violations of "applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII and XIXI of the Social Security Act" are DISMISSED with

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000019 of 000030

prejudice. (Complaint ¶30 (e)). Kentucky law precludes any claim for negligence per se under KRS 446.070 or otherwise, based on alleged violations of federal statutes or regulations. Also the federal statutes and regulations concerning certification of long-term care facilities, including particularly the Federal Nursing Home Reform Act ("FNHRA") and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(2) Plaintiff's claims for negligence per se pursuant to KRS 446.070 for alleged violations of provisions of KRS Chapter 216 and the regulations promulgated thereunder concerning certification of nursing homes are DISMISSED with prejudice. (Complaint §30). The specific statutory remedy provided in KRS 216.515(26) precludes the use of KRS 446.070 to infer additional statutory claims under other provisions of Chapter 216 or its implementing regulations. Also, the state statutes and regulations concerning certification of long-term care facilities, including KRS Chapter 216 and 216B and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(3) Plaintiff's claims for negligence per se pursuant to KRS 446.070 for alleged violations of KRS 209.005 et seq. and any administrative regulations promulgated thereunder, including but not limited to 922 KAR 5:070, are DISMISSED with prejudice (Complaint ¶30(a)). These provisions establish a committee and protocol for investigating elder abuse and neglect and providing the necessary protective services when the need is found, but do not contain any provisions concerning the care of residents in long-term care facilities. Neither the statute nor its implementing regulations establish any substantive standards of care that could

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000020 of 000030

be the basis for a negligence per se claim, nor evince an intent to create enforceable rights for the benefit of individual nursing home residents.

(4) Plaintiff's claims for negligence per se pursuant to KRS 446.070 for alleged violations of state criminal laws, including KRS 508.090 et seq, KRS 530.080 et seq, and 506.080 et seq, are DISMISSED with prejudice. (Complaint ¶30 (b), (c) and (d).) These statutes are intended to benefit the general public, not to create specific benefits or enforceable rights for individuals damaged by their violation, and thus cannot give rise to a claim for negligence per se under KRS 446.070.

This Order is final and appealable and there is no just cause for delay.

So Ordered this the 10 day of October, 2013.

JUDGE JEAN C. LOGUE

Prepared and Tendered by:

J. Peter Cassidy, III, Esq.
David P. Kaiser, Esq.
2452 Sir Barton Way, Suite 300
Lexington, KY 40509

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

## CLERK'S CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been served this the 17 of Oct, 2013, via U.S. Mail Service, postage prepaid, upon the following:

J. Peter Cassidy, III, Esq.
David P. Kaiser, Esq.
2452 Sir Barton Way, Suite 300
Lexington, KY 40504

Tyler Forsythe, Esq.
Wilkes & McHugh, P.A.
429 North Broadway
P.O. Box 1747
Lexington, Kentucky 40588-1747

Darlene Snyder/ks
Clerk, Madison Circuit Court

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000022 of 000030

COMMONWEALTH OF KENTUCKY
CLARK CIRCUIT COURT
CASE NO.: 12-CI-00726
SECOND DIVISION

ENTERED: July 3, 2014
PAULA S. JOSLIN
CLARK CIRCUIT/DISTRICT COURT
BY: [illegible] D.C.

BRENDA MACK, as ADMINISTRATRIX of the ESTATE of SHIRLEY RUSSELL, deceased, and on behalf of the WRONGFUL DEATH BENEFICIARIES of SHIRLEY RUSSELL, PLAINTIFF

v.

KINDRED NURSING CENTERS LIMITED PARTNERSHIP D/B/A KINDRED TRANSITIONAL CARE AND REHABILITATION – FOUNTAIN CIRCLE F/K/A FOUNTAIN CIRCLE HEALTH AND REHABILITATION; KINDRED HEALTHCARE, INC.; KINDRED NURSING CENTERS EAST, LLC; KINDRED HEALTHCARE OPERATING, INC.; and KINDRED HOSPITALS LIMITED PARTNERSHIP DEFENDANTS

**ORDER SUSTAINING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Defendants have moved for Partial Judgment on the Pleadings regarding Plaintiff's KRS §446.070 negligence *per se* claims based on alleged violations of federal and state statutes and regulations; the Court having reviewed the briefing and hard arguments from counsel, and being otherwise sufficiently advised;

**IT IS HEREBY ORDERED THAT:**

(1) Plaintiff's claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII and XIX of the Social Security Act" are **DISMISSED** with prejudice. (Compl. ¶ 23(n) and ¶ 25).

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000023 of 000030

(2) Plaintiff's claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of provisions of KRS Chapter 216 and the regulations promulgated thereunder concerning certification of nursing homes are DISMISSED with prejudice. (Compl. ¶ 25(d)-(f)). The specific statutory remedy provided in KRS §216.515(26) precludes the use of KRS §446.070 to infer additional statutory claims under other provisions of Chapter 216 or its implementing regulations. Also, the state statutes and regulations concerning certification of long-term care facilities, including KRS Chapter 216 and 216B and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(3) Plaintiff's claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of KRS §209.005 *et seq.* and any administrative regulations promulgated thereunder, including but not limited to 922 KAR 5:070, are DISMISSED with prejudice. (Compl. ¶25(a)). These provisions establish a committee and protocol for investigating elder abuse and neglect and providing the necessary protective services when the need is found, but do not contain any provisions concerning the care of residents in long-term care facilities. Neither the statute nor its implementing regulations establish any substantive standards of care that could be the basis for a negligence *per se* claim, nor evince an intent to create enforceable rights for the benefit of individual nursing home residents.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000024 of 000030

(4) Plaintiff's claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of state criminal laws, including KRS §508.090 *et seq.*, KRS §530.080 *et seq.*, and §506.080 *et seq.*, are **DISMISSED** with prejudice. (Compl. ¶ 25(b), (c) and (e)). These statutes are intended to benefit the general public, not to create specific benefits or enforceable rights for individuals damaged by their violation, and thus cannot give rise to a claim for negligence *per se* under KRS §446.070.

This Order is final and appealable and there is no just cause for delay.

SO ORDERED THIS the 3 day of July, 2014.

HON. JEAN CHENAULT LOGUE, JUDGE
CLARK CIRCUIT COURT, DIVISION II

Prepared and Tendered by:

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Anthony B. Gray, Esq.
*Counsel for Defendants*

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000025 of 000030

CLERK'S CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been served this the 3rd of July, 2014, via U.S. Mail Service, postage prepaid, upon the following:

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Anthony B Gray, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509

Brent L. Moss, Esq.
Brian D. Reddick, Esq.
Matthew D. Swindle, Esq.
REDDICK MOSS, PLLC
One Information Way, Suite 201
Little Rock, AR 72202

Eric D. Wewers, Esq.
Law Offices of Eric D. Wewers, Esq.
Plaza West Building
415 North McKinley Street, Suite 1000
Little Rock, AR 72205

Sheila P. Hoistand, Esq.
Hughes & Coleman
9300 Shelbyville Road, Suite 110
Louisville, KY 40222

CLERK, CLARK CIRCUIT COURT

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

EXH : 000026 of 000030

2015 WL 3643437
Only the Westlaw citation is currently available.

Unpublished opinion. See KY ST RCP Rule 76.28(4) before citing.

NOT TO BE PUBLISHED
Court of Appeals of Kentucky.

Dinah Puckett, as the Administratrix of the Estate of Bertha Blanton, Appellant
v.
Salyersville Healthcare Center, Extendicare Homes, Inc., Extendicare Health Services, Inc. and Jason Jones, Director and Unknown Defendants, Appellees

NO. 2013–CA–001263–MR

RENDERED: JUNE 12, 2015; 10:00 A.M.

APPEAL FROM MAGOFFIN CIRCUIT COURT, HONORABLE KIMBERLY CORNETT CHILDERS, JUDGE, ACTION NO. 09–CI–00071

Attorneys and Law Firms

BRIEF FOR APPELLANT: Michael Lucas, Pikeville, Kentucky, Donald W. McFarland, Salyersville, Kentucky

BRIEF FOR APPELLEE: Edmund J. Benson, William J. George, Lexington, Kentucky, Jason P. Renzelmann, Louisville, Kentucky

BEFORE: KRAMER, J. LAMBERT, AND NICKELL, JUDGES.

*OPINION*

NICKELL, JUDGE:

*1 Dinah Puckett, as Administratrix of the Estate of Bertha Blanton, has appealed from the Magoffin Circuit Court's dismissal of her claims of negligence *per se* against Salyersville Healthcare Center ("Salyersville"), Extendicare Homes, Inc., Extendicare Health Services, Inc. (collectively "Extendicare"), Jason Jones, Director, and unknown defendants.[1] Following a careful review, we affirm.

Salyersville is a nursing home facility owned and/or operated by Extendicare. Blanton was a resident at Salyersville from May 11, 2007, to May 4, 2008. Jones was the Administrator of Salyersville during at least a portion of Blanton's residency. During her stay, Blanton allegedly suffered from falls, a fractured humerus, skin tears, bruising, malnourishment, dehydration, pneumonia and a liver laceration. On May 4, 2008, Blanton was transported by ambulance to a local hospital where she remained until passing away on May 13, 2008.

On March 12, 2009, Puckett filed the instant action alleging negligence, medical negligence, violations of the Long Term Care Resident's Rights statutes,[2] breach of contract and breach of fiduciary duty against Salyersville, and negligence claims against Jones and the unknown defendants. At issue in this appeal, Puckett further alleged Salyersville violated a sundry of state, federal and/or local laws and regulations related to long-term care facilities, which violations amounted to negligence *per se* pursuant to KRS 446.070.

Pursuant to CR [3] 12.03, the Appellees moved for a judgment on the pleadings and sought an order dismissing Puckett's negligence *per se* claims, asserting they were improper as a matter of law. They contended Puckett's claims for violations of state and federal certification laws were not independently actionable as negligence *per se* pursuant to the provisions of KRS 446.070 because the specific remedy provision of KRS 216.515(26) foreclosed such claims. Puckett countered by arguing she had not alleged any negligence *per se* claims based on violations of Blanton's rights set forth in KRS 216.515, but rather had advanced such claims for state regulatory violations relating to health facilities. Puckett argued she had certainly not advanced any claims based on violations of the federal regulatory scheme.

On June 17, 2013, the trial court granted the Appellees' motion. In dismissing Puckett's negligence *per se* claims, the trial court stated:

> (1) Plaintiffs' claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of "... federal and state regulations governing skilled facilities" are **DISMISSED** with prejudice. Kentucky law precludes any claim for negligence *per se*, under KRS 444.707(sic) or otherwise, based on alleged violations of federal statutes or regulations. Also, the federal statutes and regulations concerning certification of long-term care facilities, including particularly the

EXHIBIT B

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000027 of 000030

Federal Nursing Home Reform Act ("FNHRA") and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

*2 (2) Plaintiffs' claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of provisions of Kentucky Revised Statute (sic) Chapter 216 and 216B, and any regulations thereunder, including but not limited to 902 KAR 20:026; 902 KAR 20:048 and 902 KAR 20:300 concerning certification of nursing homes are **DISMISSED** with prejudice. The specific statutory remedy provided in KRS 216.515(26) precludes the use of KRS 446.070 to infer additional statutory claims under other provisions of KRS Chapther (sic) 21(sic) and 216B or its implementing regulations. Also, the statutes and regulations concerning certification of long-term care facilities, including KRS Chapter 216 and 216B and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

This appeal followed.

Puckett raises two allegations of error in seeking reversal of the trial court's decision. First, she contends the inclusion of a statutory remedy in KRS 216.215(26) does not preclude her negligence *per se* claims based on the remainder of KRS Chapters 216 and 216B or the various regulations promulgated thereunder, and the trial court's conclusion to the contrary was erroneous. Second, she argues the trial court erred in concluding the federal and state statutes were inadmissible as evidence of the standard of care in a common law negligence claim.

The Appellees' motion to dismiss was based on CR 12.03, which provides for a party to make a motion for a "judgment on the pleadings." As construed by the Supreme Court of Kentucky, CR 12.03 is intended:

> to expedite the termination of a controversy where the ultimate and controlling facts are not in dispute. It is designed to provide a method of disposing of cases where the allegations of the pleadings are admitted and only a question of law is to be decided.... The judgment should be granted if it appears beyond doubt that the nonmoving party cannot prove any set of facts that would entitle him/her to relief.

*City of Pioneer Village v. Bullitt County,* 104 S.W.3d 757, 759 (Ky.2003). Whether the dismissal was proper is a question of law. Therefore, the standard on appellate review is *de novo. Benningfield v. Pettit Environmental, Inc.,* 183 S.W.3d 567, 570 (Ky.App.2005). Our review proceeds accordingly.

Puckett first contends the trial court erred in concluding the statutory remedy in KRS 216.215(26) precludes her from maintaining negligence *per se* claims based on the remainder of KRS Chapters 216 and 216B or the various regulations promulgated thereunder. She concedes she cannot maintain a negligence *per se* claim against the Appellees for alleged violations of the rights set forth in KRS 216.515, but maintains that the remainder of her negligence *per se* claims based on statutory and regulatory violations are valid and must be permitted to stand. We disagree.

The doctrine of negligence *per se* allows a court to determine a standard of conduct by reference to a statute. In essence, "[n]egligence *per se* is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." *Young v. Carran,* 289 S.W.3d 586, 588–89 (Ky.App.2009).

Kentucky has codified the common law negligence *per se* doctrine and created an avenue whereby an individual may seek relief even where a statute does not specifically provide a private remedy. KRS 446.070 provides "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." This statute creates a private right of action under which a damaged party may sue for a violation of a statutory standard of care, provided that three prerequisites are met: first, the statute in question must be penal in nature or provide "no inclusive civil remedy," *Hargis v. Baize,* 168 S.W.3d 36, 40 (Ky.2005); second, "the party [must be] within the class of persons the statute is intended to protect," *Young,* 289 S.W.3d at 589 (citing *Hargis,* 168 S.W.3d at 40); and third, the plaintiff's injury must be of the type the statute was designed to prevent. *Carman v. Dunaway Timber Co.,* 949 S.W.2d 569, 570 (Ky.1997).

*3 Our Supreme Court has made clear "the 'any statute' language in KRS 446.070 is limited to Kentucky statutes," *Young,* 289 S.W.3d at 589, and does not "embrace the whole of the federal laws and the laws of other states and thereby confer a private civil remedy for such a vast array of violations." *T & M Jewelry v. Hicks,* 189 S.W.3d 526, 530 (Ky.2006). Thus, to the extent Puckett raises claims based on violations of any federal statute or regulation, those claims fail as a matter of law

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000028 of 000030

and were properly dismissed.

The enumeration of specific rights enforceable via KRS 216.515(26) precludes a negligence *per se* action to enforce the broader provisions of KRS Chapter 216. The specific enumeration evidences the intent of the General Assembly to confine private rights of action to those rights in KRS 216.515 to the exclusion of other aspects of Chapter 216. Any negligence *per se* claim for enforcement of the other provisions of KRS Chapter 216 fails as a matter of law because only those rights created by KRS 216.515 are enforceable in a private right of action.

A plaintiff lacks a negligence *per se* cause of action under KRS 446.070 where the more specific statute at issue "both declares the unlawful act and specifies the civil remedy available[.]" *Grzby v. Evans,* 700 S.W.2d 399, 401 (Ky.1985). In that situation, the plaintiff "is limited to the remedy provided by the statute." *Id.* (citations omitted). This outcome flows from the general rule of statutory construction that "when two statutes are in conflict, one which deals with the subject matter in a general way and the other in a specific way, the more specific provision prevails." *Travelers Indem. Co. v. Reker,* 100 S.W.3d 756, 763 (Ky.2003). The General Assembly, in KRS 216.515, expressly listed the rights granted to residents of long-term care facilities and made those rights enforceable via a private right of action in KRS 216.515(26). This evidences the legislature's intent and ability to create private rights of action for some of the provisions found in KRS Chapter 216 to the exclusion of others. A civil remedy need not be perfect to displace a private cause of action under KRS 446.070. Accordingly, because KRS 216.515 provides a cause of action to enforce the rights enumerated therein, Puckett is precluded from seeking private enforcement of the other provisions of KRS Chapter 216. Her claims grounded on alleged violations of this Chapter were therefore properly dismissed.

Further, as to Puckett's allegations under KRS Chapter 216B, we also conclude that Chapter does not grant a private cause of action to a nursing home resident for the types of claims asserted. The stated purpose of KRS Chapter 216B is

> to fully authorize and empower the Cabinet for Health and Family Services to perform any certificate-of-need function and other statutory functions necessary to improve the quality and increase access to health-care facilities, services, and providers, and to create a cost-efficient health-care delivery system for the citizens of the Commonwealth.

KRS 216B.010. The Chapter is focused on licensing provisions and the certificate-of-need process intended to provide safe, adequate and efficient medical care for all Kentuckians by limiting health-care providers from amassing new services and equipment and passing the costs of such additions on to patients. As before, we must determine whether the three prerequisites for maintaining a negligence *per se* action have been satisfied.

*4 KRS 216B.086 and 216B.990 provide for the Cabinet to levy civil penalties and assess fines for violations, but none of the penalties provide remedies to an individual. Thus, we conclude there is "no inclusive civil remedy," thereby meeting the first prerequisite for maintaining a negligence *per se* action. *Hargis,* 168 S.W.3d at 40. Further, if construed broadly, the Chapter's licensing provisions seek to protect users of health-care facilities—a class to which Blanton belonged as a Salyersville resident. *Young,* 289 S.W.3d at 589. Accordingly, Puckett's claims satisfy the second prong for maintaining her action.

However, Puckett's claims fail as to the third and final prerequisite as there has been no showing or assertion that Blanton suffered harm of the type KRS Chapter 216B was designed to prevent. *Carman,* 949 S.W.2d at 570. The clear thrust of the statutes is to prevent economic harm or the preclusion of access to health-care services by some of the citizenry by limiting the types and amount of costs which may be passed on by providers to patients. The claims raised in the instant case are related to physical injuries sustained by Blanton, not economic ones. Consequently, Puckett cannot state a negligence *per se* claim for alleged violations of KRS Chapter 216B, and those claims were properly dismissed.

Finally, Puckett contends the trial court erred in concluding the federal and state statutes were inadmissible as evidence of the standard of care in a common law negligence claim. Contrary to Puckett's allegation, we do not read the trial court's order as prohibiting the introduction of any evidence. In fact, the brief order makes no mention of any evidentiary issues whatsoever. "An appellate court is without authority to review issues not raised in or decided by the trial court." *Baumia v. Commonwealth,* 402 S.W.3d 530, 546 (Ky.2013) (citations and internal quotation marks omitted). Thus, Puckett's contention is without merit and warrants no further discussion.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000029 of 000030

Puckett v. Salyersville Healthcare Center, Not Reported in S.W.3d (2015)
2015 WL 3643437

For the foregoing reasons, the judgment of the Magoffin Circuit Court is affirmed.

ALL CONCUR.

All Citations

Not Reported in S.W.3d, 2015 WL 3643437

Footnotes

1 The complaint contained allegations against "Unknown Registered Nurses," "Unknown Nursing Supervisor and/or Administrator" and "Unknown Certified Nursing Assistant."

2 Kentucky Revised Statutes (KRS) 216.510 *et seq.*

3 Kentucky Rules of Civil Procedure.

End of Document

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works. 4

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
EXH : 000030 of 000030

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the
ESTATE of HELEN RAY, deceased,
and on behalf of the Wrongful Death
Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a
MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

---

**ORDER SUSTAINING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT TO DISMISS NEGLIGENCE *PER SE* CLAIMS**

---

Defendants, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View") and Life Care Centers of America, Inc. ("Defendants"), have moved for Partial Summary Judgment regarding Plaintiff's KRS 446.070

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

TD : 000001 of 000004

negligence *per se* claims based on various violations of federal and state statutes and regulations, and the Court being otherwise sufficiently advised;

**IT IS HEREBY ORDERED THAT:**

(1) Plaintiff's claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of "applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII or XIX of the Social Security Act" are **DISMISSED** with prejudice. (See Complaint, Paragraph 32(e)). Kentucky law precludes any claim for negligence per se under KRS 446.070 or otherwise, based on alleged violations of federal statutes or regulations. Also the federal statutes and regulations concerning certification of long-term care facilities, including particularly the Federal Nursing Home Reform Act ("FNHRA") and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(2) Plaintiff's claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of provisions of KRS Chapter 216 and any administrative regulations promulgated thereunder concerning certification of nursing homes are **DISMISSED** with prejudice. (See Complaint, Paragraphs 32(e) and 64 through 67. The specific statutory remedy provided in KRS 216.515(26) precludes the use of KRS 446.070 to infer additional statutory claims under other provisions of Chapter 216 or its implementing regulations; the state statutes and regulations concerning certification of long-term care facilities, including KRS Chapter 216 and 216B and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents; and the licensing and operation standards expressed in Chapter 216, along with the Cabinet's implementing regulations, are far too

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

TD : 000002 of 000004

generalized to establish a standard of care for claims that sound in medical negligence and require highly specialized common law elements for establishing a relevant standard of care.

(3) Plaintiff's claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of KRS 209.005, *et seq*. and any administrative regulations promulgated thereunder, are **DISMISSED** with prejudice. (See Complaint, Paragraph 32(a)). These provisions establish a committee and protocol for investigating elder abuse and neglect and providing the necessary protective services when the need is found, but do not contain any provisions concerning the care of residents in long-term care facilities. Neither the statute nor its implementing regulations establish any substantive standards of care that could be the basis for a negligence *per se* claim, nor evince an intent to create enforceable rights for the benefit of individual nursing home residents.

(4) Plaintiffs' claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of state criminal laws, including KRS §508.090 *et seq.*, KRS §530.080 *et seq.*, and §506.080 *et seq.*, are **DISMISSED** with prejudice. (See Complaint, Paragraph 32(b)-(d)). These statutes are intended to benefit the general public, not to create specific benefits or enforceable rights for individuals damaged by their violation, and thus cannot give rise to a claim for negligence *per se* under KRS §446.070.

So ordered, this the _____ day of __________________, 2016.

______________________________________
JUDGE, PIKE CIRCUIT COURT
DIVISION II

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

TD : 000003 of 000004

**Drafted and tendered by:**

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANTS

**CLERK'S CERTIFICATE OF SERVICE**

I hereby certify that on the ___ of _____________, 2016, I mailed a copy of the foregoing via regular mail to the following:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507
*Counsel for Plaintiff*

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
*Counsel for Defendants*

______________________________
PIKE CIRCUIT CLERK

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

TD : 000004 of 000004

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION NO. II

ACTION NO. 15-CI-00778

ESTATE OF HELEN RAY, ET AL PLAINTIFFS

V. ORDER

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA), ET AL DEFENDANTS

************

This cause is assigned for hearing on the 16th day of September, 2016, at the hour of 10:30 a.m. on all pending Motions.

ENTERED this 17th day of August, 2016.

HON. STEVEN D. COMBS
PIKE CIRCUIT COURT
DIVISION NO. II

CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Order was mailed to the parties and/or their attorneys of record, this the 18 day of Aug, 2016.

ANNA PINSON SPEARS, CLERK
PIKE CIRCUIT COURT

BY: D.C.

ENTERED
ANNA PINSON SPEARS
AUG 18 2016
PIKE CIRCUIT/DISTRICT COURT
BY: D.C.

3

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 15-CI-778

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFF

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * * * *

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR QUALIFIED PROTECTIVE ORDER TO HAVE *EX PARTE* COMMUNICATIONS WITH TREATING MEDICAL PROVIDERS**

Plaintiff, Jennifer Bingham as Executrix of the Estate of Helen Ray, deceased, and on Behalf of the Wrongful Death Beneficiaries of Helen Ray, deceased, hereby responds to Defendants' Motion for Qualified Protective Order for Ex Parte Communications with Treating Medical Providers. Plaintiff respectfully requests that this Court deny Defendants' Motion.

**INTRODUCTION**

Helen Ray began residing at Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center (sometimes referred to as "the facility") on approximately July 16, 2008, and other than periods of hospitalization, remained a resident there until her death on June 19, 2014. During her residency, she suffered from, injuries including but not limited to multiple

falls with injuries; dehydration, weight loss and malnutrition; infections, including urinary tract infections and sepsis; pressure ulcers; bruises, blisters and burns of unknown origin; contractures; and ultimately death. Jennifer Bingham, as Executrix of the Estate of Helen Ray, filed suit against the Defendants on Helen Ray's behalf to recover for the injuries that the Defendants inflicted upon Ms. Ray during her residency. Plaintiff has asserted causes of actions for negligence, medical negligence, corporate negligence, resident's rights violations, and wrongful death.

Before the Court is Defendants' Motion requesting a Qualified Protective Order allowing defense counsel to engage in *ex parte* communications with Plaintiff's treating physicians. Plaintiff objects to the Order and respectfully requests that the Court exercise its broad discretion to enter the attached Order denying the Defendants' Motion in its entirety.

Alternatively, if the Court is inclined to permit defense counsel to approach Plaintiff's treating physicians and request an *ex parte* meeting, Plaintiff requests that the Court enter the attached Modified Qualified Protective Order which reflects the limitations and conditions placed upon such orders by *Caldwell v. Chauvin,* 464 S.W.3d 139 (Ky. 2015), HIPAA, and the ethical and legal duties of the medical and legal professions.

The Modified Order is proposed with extreme reservation and caution because even as modified, the Modified Order does not protect the Plaintiff/patient or the treating physician from the risks of the physician violating the fiduciary, ethical, statutory, and regulatory duties attendant to the physician-patient relationship during an ex parte meeting. Nor does the Modified Order protect defense counsel from allegations of violating the ethical duties of the legal profession in the course of conducting ex parte interviews of Plaintiff's treating physicians.

When presented with the option to grant or deny a motion for permission to request ex parte interviews of Plaintiff's treating physicians, the only approach certain to preserve the integrity of the physician-patient relationship and the civil adversarial process is to deny the motion and limit communication between defense counsel and Plaintiff's treating physicians to written discovery and depositions.

The Court must exercise its discretion in considering the proposed Order, and, in this case, granting the order would be inappropriate. The Order which Defendants have proposed would destroy the fiduciary relationship between physician and patient. Additionally, while Kentucky law may not completely prohibit ex parte communications with physicians, the Court must still sanction such conduct in order to comply with HIPAA, and the Order should be narrowly tailored so as not to imply that physicians *must* speak with Defense counsel. The AMA Rules of Ethics do not allow such communications, and any order should remind physicians of this fact. Finally, it would be patently unfair to grant the Defendants unbridled access to any and all of Ms. Ray's medical information. For these reasons, the Defendants' motion should be denied.

## ARGUMENT

### A. The Limitations and Conditions of Qualified Protective Orders Authorizing Ex Parte Communications with Plaintiff's Treating Physicians.

In its recent *Caldwell v. Chauvin*, 464 S.W.3d 139 (Ky. 2015) decision, the Kentucky Supreme Court concluded that: while no Kentucky law "inhibits litigants from seeking ex parte interviews with the opposing party's treating physicians[,] … the disclosure of medical information during those ex parte meetings is controlled by" the Health Insurance Portability and Access Act ("HIPAA"). *Id.* at 143. The Court noted that ex parte meetings are "decidedly informal and entirely voluntary, unbefitting of the designation of lawful process ascribed to formal discovery tools." *Id.* at 152. Accordingly, the Court further held that "HIPAA's procedural prerequisites to disclosure of protected health information may only be satisfied by order of a court or administrative tribunal [as set forth in 45 C.F.R. § 164.512(e)(1)(i)] because ex parte interviews do not come within the meaning of **lawful process** as used in 45 C.F.R. § 165.512(e)(1)(ii)." *Id.* at 153 (emphasis added).

This so called "first prong" of HIPAA's litigation exception, 45 C.F.R. § 164.512(e)(1)(i), provides as follows:

> (e) Standard: Disclosures for judicial and administrative proceedings.
>
> (1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
>
> (i) In response to an order of a court or administrative tribunal, **provided that the covered entity discloses only the protected health information expressly authorized by such order**; ...
>
> ***
>
> (v) For purposes of paragraph (e)(1) of this section, a qualified protective order means, with respect to protected health information requested under paragraph (e)(1)(ii) of this section, an order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceeding that:
>
> (A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and
>
> (B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

45 C.F.R. § 164.512(e)(1)(i), (v) (emphasis added).

This above regulation presupposes that orders permitting ex parte communications will reasonably limit the disclosure of protected health information to matters at issue in the litigation. It further imposes strictures to ensure that the health information disclosed by court order is contained, i.e., prohibiting disclosure outside the litigation and requiring return or destruction of all permitted disclosures of health information at the end of the litigation.

The *Caldwell* Court discussed additional conditions and limitations for the trial court to consider when deciding whether it is prudent in a particular case to issue an order authorizing ex parte communications. First, the Court made it crystal clear that trial courts are not obligated to issue qualified protective orders. "Kentucky law does not create an entitlement or right to conduct ex parte interviews with treating physicians." *Caldwell*, 464 S.W.3d at 158. As with all

other discovery matters, the trial court is vested with broad discretion. Trial courts are "the gatekeepers" and may grant, deny, or modify "a party's request for a HIPAA-compliant order authorizing ex parte disclosure of protected health information at their discretion." *Id.* (*citing Holman v. Rasak*, 785 N.W.2d 98, 108-09 (Mich. 2010)) ("HIPAA does not require a trial court to grant a motion for a protective order. Therefore, a trial court retains its discretion ... to issue protective orders and to impose conditions on ex parte interviews.").

In *Geary v. Schoering,* 979 S.W.2d 134 (Ky. App. 1998), the Court of Appeals held that the trial court could not compel a personal injury plaintiff to execute a medical authorization because it would not maintain the plaintiff's "right of notice and right to be present." *Id.* The Court explained that unless the parties agreed otherwise, the Civil Rules were the proper mechanism by which Defendants could obtain discovery of Plaintiff's medical information. *Id.* By playing within the framework established by the Civil Rules, the defendants in *Geary* had access to records custodians, doctors, nurses, and caregivers by way of deposition. *Id.* Although the Defendants in this case would imply that they should have carte blanche access to Ms. Ray's medical providers, the Court in *Geary* stated that it was the adversarial approach, engendered by the Civil Rules, which "provide[s] a fair means of obtaining discovery." *Id.* at 135. This approach "is not an undue hardship but merely the means of taking discovery that is fundamentally fair to both sides." *Id.* at 136.

Ultimately, in *Geary,* the Court ordered a writ of prohibition, an extraordinary measure of relief. *Id.* The Kentucky Court of Appeals determined that the trial court's decision forcing a plaintiff to execute a medical authorization against her will was an error that would create irreparable injury from which there was no adequate remedy. *Id.* at 135. As the Court explained:

> [A]n executed medical authorization would act like an ex parte subpoena. It would allow [the defendants] to obtain medical information without any notice to [the plaintiff] and without any means for [the plaintiff] to protect her legitimate privacy interests. To compel execution of this medical authorization would allow [the defendants] to circumvent the Rules of Civil Procedure and permit discovery without any adversarial safeguards.

*Id.* at 136.

In 2009, the Court of Appeals reaffirmed the reasoning of *Geary* and the refusal to allow unrestricted ex parte discovery with its decision in *Peters v. Wooten,* 297 S.W.3d 55. Peters was injured in a car accident when he was rear-ended by Wooten. *Id.* at 58. Peters subsequently sued Wooten for his injuries, and through discovery, Wooten learned that Peters had filed an application for social security disability benefits. *Id.* Wooten made a motion requesting that the court compel Peters to sign an authorization granting Wooten access to all of the records related to the application. *Id.* Wooten, much like the Defendants here, argued she was entitled to the information because "Peters put his physical condition into controversy" by bringing a lawsuit to recover for his injuries. *Id.* The Circuit Court ordered Peters to make the authorization, but the Court of Appeals determined that this was an error. *Id.* at 61. Citing *Geary*, the Court explained that the compelled authorization was the equivalent of an "improper ex parte subpoena," and that [u]nless the parties otherwise agree, our Civil Rules provide the means by which [one party] can obtain [another party's] medical information." *Id.* (alterations in original).

Furthermore, the Court in *Caldwell* recognized that a Plaintiff's treating physicians are subject to professional duties of confidentiality, which are separate and apart from the proceeding to permit ex parte communication between defense counsel and treating physicians. Specifically, the Court recognized that the Kentucky Board of Medical Licensure has adopted the American Medical Association's Code of Medical Ethics, including § 5.05 of the Code, which guarantees a patient's right to confidentiality and expresses disapproval of the kind of ex parte disclosures requested in *Caldwell* and in this Motion. *Id.* at 155-156.

The relevant provision of the Code, § 5.05, reads as follows:

> The information disclosed to a physician by a patient should be held in confidence. The patient should feel free to make a full disclosure of information to the physician in order that the physician may most effectively provide needed services. The patient should be able to make this disclosure with the knowledge that the physician will respect the confidential nature of the communication. The physician should not reveal confidential information without the express consent of the patient, subject to certain exceptions which are ethically justified because of

> overriding considerations.
>
> When a patient threatens to inflict serious physical harm to another person or to him or herself and there is a reasonable probability that the patient may carry out the threat, the physician should take reasonable precautions for the protection of the intended victim, which may include notification of law enforcement authorities.
>
> When the disclosure of confidential information is required by law or court order, physicians generally should notify the patient. Physicians should disclose the minimal information required by law, advocate for the protection of confidential information and, if appropriate, seek a change in the law.

*See* American Medical Association, Council on Ethical and Judicial Affairs, CODE OF MEDICAL ETHICS § 5.05 (2007).

Additionally, the Court acknowledged that the Kentucky Board of Medical Licensure is the body with statutory authority to levy punishment upon physicians who violate the Code, noting that "the ethical dut[ies] may restrain the physician's willingness to agree to such an interview…." *Caldwell*, 464 S.W.3d at 156. Accordingly, the Court emphasized that court orders permitting ex parte contact with the Plaintiff's treating physicians do not operate like a Subpoena. Trial courts can only authorize defense counsel to **request** an ex parte meeting; they cannot compel the healthcare provider to agree to participate in such meetings. Plaintiff's treating physicians remain free to decline the request. *See*, *Id.* at 157.

Lastly, the *Caldwell* Court held that ex parte communications with treating physicians who have been identified by Plaintiff as witnesses expected to give expert testimony at trial are wholly improper. "Once retained as experts, CR 26.02(4) lists exclusively the manner in which discovery may be obtained." In such circumstances, CR 26.02(4) limits the means of discovery of any kind to written and deposition discovery. *Id.*

**B. The Court Should Deny Defendants' Motion in its Entirety.**

Plaintiff respectfully requests the Court to exercise its broad discretion and deny the Defendants' Motion on several grounds.

As discussed above, in Kentucky, the physician's duty of confidentiality is not merely an ethical duty, but a legal duty, which, if violated, exposes the physician to disciplinary action. *See* KRS 311.595(16); 311.565(1)(j); 311.595(9); and KRS 446.070. Permitting defense counsel to engage in informal, ex parte conferences with treating physicians, outside the presence of the Plaintiff or the Plaintiff's attorney, places the healthcare provider at grave risk of allegations of violating the fiduciary, ethical, statutory and regulatory duties attendant to the physician-patient relationship.

The Commonwealth of Kentucky recognized "there are many familiar and well recognized forms of fiduciary relationships such as attorney and client, trustee and beneficiary, physician and patient..." *Henkin* 566 S.W.2d at 423 (Ky. Ct. App. 1978); *see also Harrison v. Valentini,* 184 S.W.3d 521, 524 (2006) (noting relationship of trust and confidence between a doctor and a patient); Loudon v. Mhyre, 756 P.2d 138, 141, (Wash. 1988) (**"The relationship between physician and patient is 'a fiduciary one of the highest degree...**involv[ing] every element of trust, confidence and good faith."). As fiduciaries, physicians have a duty to their patients to protect the confidential medical information that their patients reveal during the treatment process.

Likewise, ex parte communications place defense counsel in equal peril if the attorney fails to advise prior to an ex parte meeting that the physician is entitled to have counsel present because the unauthorized release of patient information in the ex parte setting – whether inadvertent or intentional - may expose the physician to allegations by the patient of professional misconduct or of tort liability. For instance, a lawyer shall not: (1) knowingly falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law, e.g., violate duties set forth in the Code of Medical Ethics; (2) give legal advice to an unrepresented person; (3) violate or attempt to violate the Rules of Professional Conduct; (4) knowingly make a false statement of material fact or law to a third person; and (5) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value or counsel or assist another person to do any

such act. *See* SCR 3.130 (4.3), 3.130(8.4), 3.130(3.4), and 3.130(4.1).

Defense counsel may suggest ex parte discussions with non-party treating physicians are necessary to "level the playing field" in civil litigation and to assist in defending their client's interest in a strategic and cost-effective way. However, in practice, ex parte interviews are simply not worth the time and expense for courts, counsel and parties, and pose too great a risk for exposing counsel and medical providers to the consequences of inadvertent or intentional disclosure of private health information. The fact is that the defense attorney, as well as the court and the plaintiff's attorney, will spend more time and money seeking, objecting to, and enforcing court orders permitting ex parte meetings between defense counsel and Plaintiff's treating physicians than they would have by simply subpoenaing the physician's records and noticing the physician for a deposition.

Further, ex parte meetings place the physician-patient relationship at risk. How is an individual's relationship with her treating physician supposed to continue when she learns that the physician may meet ex parte with her legal adversary? How can she entrust confidential information to her physician when the attorney opposing her cause of action can engage the physician and possibly elicit information to use against the individual in court? Permitting defense counsel to approach treating physicians outside the legal process and interrupt the ongoing care of an individual in hopes of inducing physicians to testify against their own patient comes at too great a cost to the physician-patient relationship and leaves too much room for mischief on the part of overzealous counsel.

The above pitfalls of permitting ex parte contact are perhaps the most pronounced in medical negligence cases. Unsupervised ex parte discussions in the medical negligence context could devolve into a discussion of the impact of a jury's award upon a physician's professional reputation, the rising cost of malpractice insurance premiums (especially if the physicians are insured by the same malpractice carrier), the notion that the treating physician might be the next person to be sued, and other topics which might influence the treating physician's views on the Plaintiff's medical condition, diagnosis, prognosis, and whether the condition is causally

connected to the claims made in the patient's pending lawsuit.

Thus, it is prudent, and ultimately better for judicial fairness and economy, to limit communications with non-party treating physicians to a deposition, the only tried and true method to preserve the integrity of the physician-patient relationship and to ensure physicians the greatest structure and the least risk.

In its recent *Caldwell* decision, the Kentucky Supreme Court gave this Court full discretion to defer to this approach and it should do so in this case. The Defendants' motion relies heavily on the Supreme Court of Kentucky's recent ruling in *Caldwell v. Chauvin.* The Defendants argue that *Caldwell* summarily entitles them to ex parte access to Ms. Ray's medical providers. Plaintiff disagrees. *Caldwell* actually stands for the proposition that a litigant's ex parte access to medical providers is not guaranteed, rather it must be affirmatively granted by the court, in the court's sound discretion.

As Justice Keller noted in *Stidham v. Clark*, "[w]hile I agree with the majority opinion that no *testimonial privilege* exists in Kentucky for communications made between patient and physician for the purpose of medical treatment, I would still characterize such communications as *confidential* because 'physicians...have an ethical obligation not to disclose information regarding their patients, except with consent or pursuant to an obligation imposed by law or court order.'" *Stidham v. Clark*, 74 S.W.3d 719, 729 (Ky. 2002)(Keller, J., concurring).

Defendants will not suffer any prejudice by obtaining discovery through the ordinary channels prescribed by the Kentucky Rules of Civil Procedure. Defendants will have the opportunity, under the Kentucky Rules, to depose Plaintiff's treating physicians in the presence of Plaintiff's counsel. In *Geary*, the Court explained that the risk of granting defendants unrestricted access to a plaintiff's medical records was the equivalent of an ex parte subpoena, which would not allow the plaintiff to protect her privacy interests. 979 S.W.2d at 136.

Whereas the defendants in *Geary* merely sought blank medical authorizations, Defendants here intend to privately question Plaintiff's physicians without the presence of Plaintiff's counsel. Such communication would harm the fiduciary relationship between

physician and patient, and violates public policy. Defendants' motion should thus be denied.

**C. Alternatively, the Court Should Modify the Qualified Protective Order Permitting the Request for An Ex Parte Meeting to Reflect the Limitations and Conditions Placed upon Such Orders by *Caldwell v. Chauvin*, HIPAA, and the Ethical and Legal Duties of the Medical and Legal Professions.**

If the Court is inclined to grant Defendants permission to approach Plaintiff's treating physicians and request an ex parte meeting, Plaintiff respectfully requests the Court enter the attached Modified Qualified Protective Order.

As discussed above, in *Caldwell* the Kentucky Supreme Court placed a number of limitations and restrictions on Orders permitting ex parte contact in order to comply with HIPAA's "first prong" and to comport with the ethical restraints placed on treating physicians when making ex parte disclosures of a patient's private health information.

Further, while not addressed in the *Caldwell* decision, it is also undeniable that the ethical duties of attorneys are implicated when such ex parte meetings are requested and conducted.

This Modified Order is proposed reluctantly because even as modified, the Order does not protect the Plaintiff-patient or the treating physician from the risks of the physician violating the fiduciary, ethical, statutory, and regulatory duties attendant to the physician-patient relationship during an ex parte meeting. Nor does the Modified Order protect defense counsel from allegations of violating the ethical duties of the legal profession in the course of conducting ex parte interviews of Plaintiff's treating physicians. The prudent approach is for the Court to deny Defendants' request in its entirety. Having said this, the attached Modified Order is meant to honor the above discussed limitations and restrictions placed upon Qualified Protective Orders.

As required under the "first prong" of HIPAA's litigation exception, 45 C.F.R. § 164.512(e)(1)(i) and (v), Paragraph 1 of the Modified Order sets out the scope of the proposed ex parte conference and Paragraph 6 limits the disclosures of protected health information to that scope if the treating physician ultimately decides to agree to meet with defense counsel. Further,

Paragraphs 8 and 9 impose strictures to ensure that the health information disclosed by court order is contained, i.e., prohibiting disclosure outside the litigation and requiring return or destruction of all permitted disclosures of health information at the end of the litigation, as is required under HIPAA's litigation exception.

In Paragraph 2, the Modified Order makes it clear to counsel and the non-party treating physician that the Order is not a Subpoena; it only authorizes defense counsel to **request** an ex parte meeting with the Plaintiff's treating physicians. The Plaintiff's treating physicians remain free to decline the request.

Paragraphs 3 and 7 of the Modified Order are meant to acknowledge the fact that the ethical and legal duties of the medical profession may restrain the willingness of Plaintiff's treating physicians to agree to such an interview. To avoid any confusion, and in fairness to the non-party treating physician being approached with a request to meet, the Order advises the treating physicians as follows: (1) that by agreeing to an ex parte "interview" with defense counsel, the physician risks violating the American Medical Association's Code of Ethics which has been adopted by the Kentucky Board of Medical Licensure and (2) that treating physicians remain subject to ethical and disciplinary proceedings arising from any violation of the duties of the medical profession during the ex parte meeting, including duties regarding confidentiality set forth under the American Medical Association's Code of Ethics, § 5.05, and any and all legal duties arising under the Kentucky Revised Statutes, KRS 311.530, *et seq.*, and KRS 446.070. Paragraph 7 reflects the obligation of physicians to notify their patient when approached with a request to disclose protected health information. *See* AMA Code, § 5.05, ("When the disclosure of confidential information is required by law or court order, physicians generally should notify the patient. Physicians should disclose the minimal information required by law, advocate for the protection of confidential information and, if appropriate, seek a change in the law").

The purpose of Paragraph 4 of the proposed Modified Order is to direct defense counsel to make requests for ex parte meetings and to conduct the ex parte meetings with extreme care and caution. As discussed above, ex parte communications with treating physicians place defense

attorneys in equal peril if the attorney fails to advise prior to an ex parte meeting that the physician is entitled to have counsel present because the unauthorized release of patient information in the ex parte setting – whether inadvertent or intentional - may expose the physician to allegations by the patient of professional misconduct or of tort liability.

Lastly, Paragraph 5 simply requires defense counsel to furnish a copy of the Modified Order at the time of making the request for the ex parte meeting so that the physician is equally apprised of the limitations and conditions placed upon the permission to request ex parte disclosures by *Caldwell v. Chauvin*, HIPAA, and the ethical and legal duties of the medical and legal professions.

WHEREFORE, Plaintiff respectfully requests the Court exercise its broad discretion to deny Defendants' Motion in its entirety. Defendants' motion should be denied. There is no need to grant Defendants ex parte access to Ms. Ray's treating physicians. Plaintiff has no objection to deposing these individuals. This formal method of discovery is within the Court's discretion to order, and it also safeguards the confidential and highly sensitive medical information of Ms. Ray, unlike Defendants' suggestion, which would undermine the physician-patient relationship, the confidentiality afforded by HIPAA, and the fundamental fairness established by the Civil Rules. The Defendants are not being denied access to anything, and there is no need for the Court to grant them unfettered and unsupervised access to all of Ms. Ray's sensitive medical information under the guise of an order that purports to encourage physicians to disregard their ethical obligations. Accordingly, the Defendants' motion should be denied. Alternatively, if the Court is inclined to permit defense counsel to approach Plaintiff's treating physicians and request an ex parte meeting, Plaintiff requests that the Court enter the attached Modified Qualified Protective Order which reflects the limitations and conditions placed upon such orders by *Caldwell v. Chauvin*, HIPAA, and the ethical and legal duties of the medical and legal professions.

*Respectfully submitted,*

**GARCIA, ARTIGLIERE & MEDBY**

Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main Street, Suite 108
Lexington, KY 40507
Telephone 502.584.3805
Facsimile 502.584.3811
***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

This is to certify the original copy of the foregoing was sent via first class, United States mail, postage prepaid to **Clerk, Pike County Circuit Court, P.O. Box 1002, Pikeville, Kentucky 41502**, and a true and correct copy of the foregoing mailed this 12 day of September, 2016 to the following:

Donald L. Miller, II, Esq.
J. Peter Cassidy, III
Matthew C. Cocanougher, Esq.
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
PH: 859.226.0057
Fax: 859.226.0059
***Counsel for Defendants***

*Counsel for Plaintiff*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 15-CI-778

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFF

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * * * * *

**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS RESIDENT'S RIGHTS CLAIMS AND ATTENDANT CLAIMS FOR ATTORNEY'S FEES**

Plaintiff, Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, hereby responds to Defendants' *Motion to Dismiss Resident's rights Claims and Attendant Claims For Attorney's Fees.* Plaintiff prays this Court deny Defendants' Motion.

**ARGUMENT**

The Kentucky Supreme Court's case of *James Overstreet v. Kindred Nursing Centers Limited Partnership*, 479 S.W.3d 69 (Ky. 2015), is on point regarding the continuing viability of Plaintiff's claims premised upon KRS § 216.515. However, Defendants overreach in demanding Plaintiff's resident's right claims be dismissed as a matter of law.

These are the paragraphs from Plaintiff's Complaint:

50.    The violations of the resident's rights of Helen Ray include, but are not limited to, the following:

a)    Violation of the right to be free from mental and physical abuse and neglect;

b)    Violation of the right to be treated with consideration, respect, and full recognition of her dignity and individuality, including privacy in treatment and in care for her personal needs;

c)    Violation of the right to have a responsible party or family member or her guardian to be informed of the resident's medical condition unless medically contraindicated and documented by a physician in the resident's medical record;

d)    Violation of the right to have a responsible party or family member or her guardian notified immediately of any accident, sudden illness, disease, unexplained absence, or anything unusual involving the resident;

e)    Violation of the right to have an adequate and appropriate resident care plan developed, implemented and updated to meet her needs; and

f)    Violation of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services, pursuant to provisions of KRS Chapter 216 and the regulations promulgated there under.

51.    As a result of the aforementioned violations of the Resident's Rights Statutes by Nursing Home Defendants, pursuant to KRS 216.515(26), Plaintiff is entitled to recover actual damages in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, as well as costs and attorney's fees.

52.    With regard to the aforementioned violations of the Resident's Rights Act, Nursing Home Defendants acted with oppression, fraud, malice, or were grossly negligent by acting with wanton and reckless disregard for the rights of Helen Ray and, pursuant to KRS 216.515(26), Plaintiff is entitled to punitive damages from Nursing Home Defendants in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, as well as costs and attorney's fees.

As with *Overstreet*, the issue here is the survival of claims arising out of KRS § 216.515, after the nursing home resident's death. Helen Ray is indeed deceased, Defendants having killed her. KRS § 411.140 is Kentucky's survival statute in tort law, and it provides:

> No right of action for personal injury or for injury to real or personal property shall cease or die with the person injuring or injured, except actions for slander, libel, criminal conversation, and so much of the action for malicious prosecution as is intended to recover for the personal injury. For any other injury an action may be brought or revived by the personal representative or against the personal representative, heir or devisee, in the same manner as causes of action founded on contract.

In *Overstreet*, the Kentucky Supreme Court was put in the position where no predicate facts were relevant to the disposition of that case. To the extent that statutory claims could have lain, they were extinguished by the resident's death. To the extent that they were premised upon a statutory codification of the Common Law personal injury claims, those had been extinguished by the Statute of Limitations for personal injury claims. This latter concern from *Overstreet*, is not present in the case at bar.

## I. Pursuant to *Overstreet*, what claims terminate, and what claims survive?

KRS §411.140[1] provides that the right to recover for certain actions survives an individual's death, permitting the estate to recover damages posthumously. In other words, (and with limited exceptions not applicable here), no action for "personal injury" and "injury to real or personal property" dies with an individual and may be brought by the individual's personal representative after his death.

Plaintiff's argue that KRS §216.515(6) survives the death of the resident given into their care. Helen Ray is indeed deceased, Defendants having killed her. KRS § 411.140 is Kentucky's survival statute in tort law, and it provides:

> No right of action for personal injury or for injury to real or personal property shall cease or die with the person injuring or injured, except actions for slander, libel, criminal conversation, and so much of the action for malicious prosecution as is intended to recover for the personal injury. For any other injury an action

[1] **411.140 What action shall survive.**
No right of action for personal injury or for injury to real or personal property shall cease or die with the person injuring or injured, except actions for slander, libel, criminal conversation, and so much of the action for malicious prosecution as is intended to recover for the personal injury. For any other injury an action may be brought or revived by the personal representative, or against the personal representative, heir or devisee, in the same manner as causes of action founded on contract.

may be brought or revived by the personal representative, or against the personal representative, heir or devisee, in the same manner as causes of action founded on contract.

Another statute which pertains to the issue at bar is KRS § 446.070, which provides:

A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.

Defendant's allegations founded upon KRS § 216.515 either survive under the survivorship statute as interpreted by *Overstreet*, or are instances of pleading negligence per se. Furthermore, Plaintiff should not be seen to extinguish these claims based upon the death of the resident when the Defendants were the agency of that very death. Defendants' motion must be denied.

Yet, Defendants argue in retort that allowing this surviving claim to continue in this action would result in impermissible duplication. Defendants conveniently miss a couple points however.

Certainly duplication as to alternative theories of liability (though not damages) is permissible in Kentucky.

> [S]ubject to applicable limitations established by the legislature and the assorted rules and precedents of this Court, a plaintiff is the master of his own complaint, and is thus ***entitled to plead his cause of action among alternative courses of action*** as he deems best to pursue his litigation objectives.**Error! Objects cannot be created from editing field codes.** *See The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913) ("Of course, the party who brings a suit is master to decide what law he will rely upon[.]").

*Whitely v. Robertson County*, 4016 SW3d 11, 17 (Ky. 2013). While a plaintiff may not be entitled to duplicative recoveries stemming from his different theories, this is a circumstance to be addressed at the time of instructing the jury, and not by the motion at bar. At least inasmuch as Defendants have not moved for summary judgment on Plaintiffs' personal injury and

wrongful death claims, they cannot, as a matter of law, be entitled to the judgment requested on the residents' rights claim. Even though KRS § 216.515(6) represents a codification of Common Law personal injury law, it is not actually a predicate duplicate of Plaintiff's negligence claims, which is the real question on the issue of duplication. This subsection provides (emphasis added):

> (6) All residents shall be free from ***mental and physical abuse***, and free from chemical and physical restraints except in emergencies or except as thoroughly justified in writing by a physician for a specified and limited period of time and documented in the resident's medical record.

KRS § 209.020 defines abuse as "the infliction of injury, sexual abuse, unreasonable confinement, intimidation, or punishment that results in physical pain or injury, including mental injury." While this "abuse" allegation may, in a Venn diagram manner, overlap with Plaintiff's negligence allegations (ordinary and medical), nonetheless the three theories are obviously not synonymous nor equivalent to one another. For instance, Defendants may or may not have engaged in medical malpractice when they treated Ms. Ray to a regimen of abuse to her dignity and mental well-being. Abuse implies violations in a standard of care more severe, as well as distinctive from that covered in Plaintiffs' negligence claim. Defendants' motion regarding Paragraphs 27 through 47 and 60 through 71 of the Complaint therefore lacks merit.

Furthermore, there ***is an additional recovery available via KRS § 216.515***. "[T]he residents' rights plaintiff is entitled to recover ***attorney's fees*** in pursuit of the residents' rights claims. *See* KRS § 216.515(26). This distinguishes the claim from Plaintiff's other Common Law claims. By virtue of the presence of KRS § 216.515 in this action, if Plaintiff is successful (which Plaintiff surely will be) on the personal injury, or on the wrongful death claim; Plaintiff will automatically be entitled to recouping of attorney's fees.

**II. It is a long and venerable principle in Anglo-American law that "one cannot benefit from one's own wrongdoing."**

Finally, Defendants should not be seen to extinguish these claims, premised upon the death of the resident, when the Defendants were the very agency of that death. Defendants' motion must be denied on this ground as well. Having killed Helen Ray, Defendants should not be able to gain a legal advantage from this fact.

There is a wrongful death claim in this case. *Riggs v. Palmer*, 22 NE 188 (N.Y. 1889)—a case made famous in part through its usage by Professor Ronald Dworkin, *Law's Empire* (1988)—stands for the principle that a wrongdoer cannot benefit from his own wrongdoing. In *Riggs*, a grandson killed his grandfather so as to prevent the latter from altering his will, a will that had made the grandson the major devisee. Other heirs contested the will, challenging the wrongdoer's entitlement under the will. New York's probate laws were relatively silent on the matter (subsequently, several States passed the so-called "Slayer statutes," affecting wills, survivorship, insurance, etc...). The *Riggs* Court ultimately stripped the murdering grandson's entitlement to take through the will, holding in effect that property rights wickedly acquired were void. *Riggs v. Palmer*, 22 NE at 511. "No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime." *Id.*

A residents' rights action is a public denunciation of a nursing home by the resident. The resident's voice in the matter should not be silenced by the wrongdoing of that nursing home. *C.f.* KRE 804(5) ("A statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness."). Again, a wrongdoer should not be shielded by virtue of that wrongdoing. *See Riggs*,

*supra.* That this principle is generally accepted today should go without saying. *Egelhoff v. Egelhoff ex rel. Breiner*, 532 US 141, 152 (2001) (noting that the principle underlying Slayer statutes "- which have been adopted by nearly every State - is well established in the law and has a long historical pedigree").

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendants' *Motion to dismiss resident's rights claims and attendant claims for Attorney's Fees.*

*Respectfully submitted,*

**GARCIA, ARTIGLIERE & MEDBY**

Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main Street, Suite 108
Lexington, KY 40507
Telephone 502.584.3805
Facsimile 502.584.3811
***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

This is to certify the original copy of the foregoing was sent via first class, United States mail, postage prepaid to **Clerk, Pike County Circuit Court, P.O. Box 1002, Pikeville, Kentucky 41502**, and a true and correct copy of the foregoing mailed this 12 day of September, 2016 to the following:

Donald L. Miller, II, Esq.
J. Peter Cassidy, III
Matthew C. Cocanougher, Esq.
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
PH: 859.226.0057
Fax: 859.226.0059
***Counsel for Defendants***

***Counsel for Plaintiff***

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 15-CI-778

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFF

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * * * *

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Comes now the Plaintiff, Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, and on Behalf of the Wrongful Death Beneficiaries of Helen Ray, deceased, and hereby responds to Defendants' Motion for Partial Summary Judgment. Plaintiff respectfully requests that this Court deny Defendants' motion.

**INTRODUCTION**

Defendants have moved for partial judgment on the pleadings, seeking in effect to eliminate Plaintiff's allegations referencing violations of federal and state nursing home standards not specifically enumerated in KRS § 216.515. Specifically, Defendants' motion is directed toward Paragraph 38 of Plaintiff's Negligence Count in her Complaint, referencing KRS

violations of statutory and regulatory standards. Plaintiff's allegation/paragraph 32 of the Negligence Count in the Complaint states as follows:

> 32. Nursing Home Defendants further breached their duty of care to Helen Ray by violating certain laws and regulations in force in the Commonwealth of Kentucky at the time of the occurrences discussed herein including, but not limited to, those detailed below. These violations by the Nursing Home Defendants are further evidence of their negligence and include, but are not limited to, violation(s) of the following:
>
> a) Violation(s) of KRS 209.005 et seq. and the regulations promulgated thereunder, by abuse, neglect and/or exploitation of Helen Ray;
>
> b) Violation(s) of KRS 508.090 et seq., criminal abuse, by committing intentional, wanton or reckless abuse of Helen Ray, who was physically helpless or mentally helpless or permitting Helen Ray, a person of whom Nursing Home Defendants had actual custody, to be abused. Such abuse caused serious physical injury, placed Helen Ray in a situation that might cause her serious physical injury, and/or caused torture, cruel confinement or cruel punishment of Helen Ray;
>
> c) Violation(s) of KRS 530.080 et seq., endangering the welfare of an incompetent person, by knowingly acting in a manner which resulted in an injury to the physical and/or mental welfare of Helen Ray, who was unable to care for herself because of her illness;
>
> d) Violation(s) of KRS 506.080, criminal facilitation of criminal act(s), by acting with knowledge that another person or entity was committing one or more of the foregoing criminal acts or intending to commit one or more the foregoing criminal acts, and engaged in conduct which knowingly provided another person or entity the means or opportunity for the commission of such criminal act(s) and which in fact aided another person or entity to commit the criminal act(s); and/or
>
> e) Violation(s) of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services, pursuant to provisions of KRS Chapter 216 and the regulations promulgated thereunder, as well as the applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII or XIX of the Social Security Act.

Defendants misconstrue the content and purpose of the allegations set forth in Paragraph 32 of Plaintiff's Complaint as a separate and distinct cause of action for negligence *per* se. However,

contrary to the assumption that is the very basis of Defendants' motion, strictly-speaking, there is no negligence *per se* claim in Plaintiff's Complaint, in the sense of a statutory cause of action. In sum, Plaintiff is not seeking after a private right of action for the statutory violations set forth in Paragraph 38 of her Complaints as construed by the Defendants. Plaintiff simply asserts an ordinary negligence claims arising from Common Law, as delineated in the Complaint referencing State and Federal statutory and regulatory law. Accordingly, Plaintiff herein opposes Defendants' motion.

## ARGUMENT

Defendants in effect contend that no informed standard of care should be utilized at all in Plaintiff's cause of action for ***ordinary*** negligence at the nursing home. Rather, apparently, the jury is to be expected to simply unilaterally conjure up the standard of care, in what is a very heavily-regulated industry (nursing homes). Defendants contend that neither federal nor State, statutes and regulations, may be invoked. With respect to federal law, Defendants argue that federal law may never constitute negligence *per se* in a Kentucky State court, and that this is particularly the case when there is no federal right of action in the federal law. Defendants argue that Kentucky law may not be invoked because such law was not enacted for the purpose of public safety or health, and because the State did not intend for nursing home residents to be protected by the law. Defendants err at all points.

Contrary to the assumption that is the very basis of Defendants' motion, strictly-speaking, there is no negligence *per se* claim in Plaintiff's Complaint, in the sense of a statutory cause of action. Save the Residents' Rights claim, all of Plaintiff's claims are Common Law claims.[1]

[1] The claim for medical negligence will be supported by expert testimony that the applicable standard of care was violated. *See Blankenship v. Collier*, 302 SW3d 665, 668 (Ky.

Aside from a claim for violation of Kentucky's Residents' Rights Statutes, KRS § 216.515, Plaintiff is not seeking after a private right of action for statutory violations.

A KRS § 446.070 allegation however, is not necessarily a wholly new cause of action. Rather, "it is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." *Young v. Carran*, 289 SW3d 586, 588 (Ky.App. 2008). Despite Defendants' plethora of citations attempting to conflate the concept of a standard of care with the concept of creating a new and independent cause of action, regulations can in fact be used to establish standards of care for the Common Law action of ordinary negligence. Plaintiff's experts will in fact establish that the statutes and regulations in issue are part of the standard of care in this whole field—the business of operating a nursing facility—and this is a determination that should be left to experts and not somehow foreclosed by a court.

While Defendants object that State and federal law in question does not reflect an intention to impose enforceable standards of care for the benefit of individuals, this is an irrelevant point. The material question is whether the professional standards in the industry have imported this law into the applicable standard of care for how to run a nursing home. If there is expert testimony on the question, as a matter of binding Kentucky law, whether or not to accept a plaintiff's experts' opinion—in this case, whether to accept that the applicable standard of care for nursing homes includes binding guidance from various law and regulations applicable to nursing homes—is an issue for the fact finder. *Miller ex rel. Monticello Baking Co. v. Marymount Medical Center*, 125 SW3d 274, 278 (Ky. 2004).

## I.     Ordinary Negligence

There is an ***Ordinary Negligence*** (not Medical Negligence) claim arising from the

---

2013) (requiring expert testimony establishing standard of care for medical negligence, due to their complexity).

Common Law, delineated in the Complaint referencing State and federal statutory and regulatory law. In the proper circumstances, violations of statutes and administrative regulations can constitute negligence *per se*. In any event however, like statutes and ordinances, regulations, once adopted, have the force and effect of law, to be obeyed whether a private right of action is created or not ***and thus can be used to set the standard of care*** for the ordinary negligence claim, to serve the purpose that an expert serves in a medical negligence claim.

The Kentucky Court of Appeals has in fact permitted federal and State regulations to establish the standard of care in these very circumstances of an Ordinary Negligence claim at a nursing home. In the recent case of *Hazard Nursing Home, Inc. v. Ambrose*, 2013 WL 3808018 (Ky.App.) (*unpublished*) (**attached**),[2] the plaintiff relied in large part upon the defendant's own Long Term Care Survey Manual (LTCSM), a compilation of federal law regulations governing nursing homes, to establish a standard of care for the nursing home defendant in this industry. The *Ambrose* plaintiff called a nursing home administration expert to opine that the nursing home violated the standard of care required by the LTCSM. Because of the LTCSM's content, this was not improper, even though the plaintiff's expert was ***not a medical expert***. "The Nursing Home next contends that the trial court erred by allowing Arbeit, an expert in nursing home administration, to testify 'regarding the medical standard of care'.... [H]aving reviewed Arbeit's testimony at trial, we believe that he testified within his realm of expertise in nursing home administration." *Id.* at *3-4. In the end, the Court of Appeals in fact stated that liability attached because "[t]he Nursing Home not only ***failed to follow federal nursing home regulations*** but also failed to provide Anna the minimum care as required under its own care plan." *Id.* at *8 (emphasis added). In contrast, Plaintiffs' case envisions medical expert

[2] As an unpublished opinion, this case does not constitute precedent and is thus not binding in this forum. CR 76.28(4)(c).

testimony.

Feeding a person, cleaning a person, according a person basic civil rights… these actions do not require a medical degree. Parents of small children do this every day. But where the State acts to regulate activities of this kind (say, with regulations of day care centers), there is no reason why this may not satisfy the requirements of *Carman v. Dunaway Timber, Centre College v. Trzop, Hargis v. Baize, etc…*, for purposes of guiding the factfinder. Indeed, in *Centre College v. Trzop*, 127 S.W.3d 562 (Ky.2003), the Court very pointedly noted that regulations enacted pursuant to statutes "provid[ing] for the safety of citizens," and promulgated "consistent with the enabling legislation" had "the force and effect of law" and ***would*** support recovery. *Centre College*, 127 SW3d at 566-567. It is difficult to view Kentucky's nursing home statutes and regulations to be anything other than existent for the purpose of providing for the welfare of citizens. Thus Defendants' motion lacks merit and should be denied.

**II. Recognizing standards of care in State statutes**

There are legal safeguards which apply across the board, so as to prevent inappropriate State statutory and regulatory law from being imported improperly as a standard of care in a Common Law ordinary negligence action. For instance, in order for KRS § 446.070 to apply to anything, the victim must be a member of the class of persons intended ***to be protected*** by the statute/regulation, and the injury suffered must be an event which the regulation was ***designed to prevent***. *Carman v. Dunaway Timber Co., Inc.*, 949 S.W.2d 569, 570 (Ky.1997). If both questions are answered in the affirmative, KRS § 446.070 permits the statute/regulation to inform the litigation, either directly for ordinary negligence or established by expert proof in medical negligence.

Certainly KRS § 216B.010, the General Assembly's findings regarding Chapter 216 are

clear as to the statutory scheme's purpose (emphasis added):

> The General Assembly finds that the licensure of health facilities and health services is a means to insure that the citizens of this Commonwealth will have ***safe, adequate, and efficient medical care***....

This notwithstanding, Defendants argue that the regulations promulgated pursuant to Chapter 216 are not sufficiently definitive to support a standard of care via negligence *per se*. (*See* Defendants' memo at p. 14). Frankly, such a position is untenable.

For instance, under the medical record-keeping requirement of 902 KAR 20:048 § 3. (11) 7., there is a requirement for:

> Nurse's notes indicating changes in patient's condition, actions, responses, attitudes, appetite, etc. Nursing personnel shall make notation of response to medications, response to treatments, mode and frequency of PRN medications administered, condition necessitating administration of PRN medication, reaction following PRN medication, visits by physician and phone calls to the physician, medically prescribed diets and preventive maintenance or rehabilitative nursing measures.

It is not possible to read this as a "vague" requirement.

For another instance, under the personnel requirements of the same administrative regulation (902 KAR 20:048 § 3. (10) 6.), there is a requirement that "[n]ursing care shall be provided by or under the direction of a full-time registered nurse." If an expert testifies that these are part of the standards of care for nursing home operation in Kentucky, and if there is testimony that these were violated and resulted in Helen Ray's harm, why in the world would these regulations not be relevant and belong in Plaintiff's Complaint? There can be no answer.

These statutes seek to protect a class of persons to which Helen Ray belonged, are designed to prevent the injuries she suffered, and they incorporate definitive, non-vague standards. Again, note that the allegations of violations of Kentucky law go to establishing a standard of care in ordinary negligence, and not separate tort claims. It should also be self-

evident that the duty of a nursing home even under ordinary negligence should be different than that of other public accommodations. For instance, while an assault on a customer at a grocer, may or may not translate to civil negligence on the grocery store's part, an assault of a vulnerable person in a nursing home should almost automatically translate into just such liability.

**III. KRS § 216.515**

Defendants attempt to use the existence of KRS § 216.515 as a shield for them in this context, arguing that other law should be artificially excluded from consideration in a cause-of-action for nursing home abuse and violations of the rights of Helen Ray. Defendants cite a number of cases indicating that the existence of a statute providing a particularized remedy displaces the usage of the Common Law, and other statutes as negligence *per se*. This however is belied by the black letter of KRS § 216.515, which does provide a series of rights in twenty-five subsections. But then in a final subsection, the statute provides (emphasis added):

> (26) Any resident whose rights as specified in this section are deprived or infringed upon shall have a cause of action against any facility responsible for the violation. The action may be brought by the resident or his guardian. The action may be brought in any court of competent jurisdiction to enforce such rights and to recover actual and punitive damages for any deprivation or infringement on the rights of a resident. Any plaintiff who prevails in such action against the facility may be entitled to recover reasonable attorney's fees, costs of the action, and damages, unless the court finds the plaintiff has acted in bad faith, with malicious purpose, or that there was a complete absence of justifiable issue of either law or fact. Prevailing defendants may be entitled to recover reasonable attorney's fees. ***The remedies provided in this section are in addition to and cumulative with other legal and administrative remedies available to a resident and to the cabinet.***

As such, the General Assembly clearly did not intend for this statute to "occupy the field." The existence of KRS § 216.515 in no way forecloses the ability of a complainant to bring action for any Common Law theory, utilizing the standards of care supplied by other provisions of Kentucky's statutory scheme. Defendants' motion therefore lacks merit.

**IV. Federal law**

As with State law, there is no reason that federal statutes and regulations cannot form part of the standard of care for a Common Law cause of action, nor should federal law be treated any different than State law, if expert testimony bears out its inclusion in the professional, industry standards of care. The question is for the nursing home profession as *Ambrose*, *supra*, indicates. And certainly federal law may pass the test of *Carman*, *supra*, as surely as State law can. Whether federal law creates a private right of action is not really an issue. Plaintiff is not suing on a right of action from U.S. law. Plaintiff is suing under a Common Law tort theory of ordinary negligence, which in this field looks in part to federal law for guidance as to how to competently and non-negligently run a nursing home.

To be clear, despite Defendants' lengthy arguments trying to foreclose the question, there is precedent holding that the Federal Nursing Home Reform Act (FNHRA) does create enforceable private causes of action. *See Joseph S. Hogan*, 561 FSupp2d 280 303 (E.D.N.Y. 2008). The federal courts appear split.

Indeed, the U.S. Court of Appeals for the Third Circuit has decisively held that the FNHRA creates rights enforceable via private causes of action. *Grammer v. John J. Kane Regional Centers-Glen Hazel*, 570 F3d 520, 527-528 (3rd Cir. 2009). "[T]he FNHRA are directly concerned with 'whether the needs of any particular person have been satisfied.'" *Id.* (*quoting Blessing v. Freestone*, 520 US 329, 343 (1997). Because the FHNRA exists not merely to measure systemic performance for government purposes, but also "the FNHRA's concern is whether each individual placed in a nursing home receives proper care," it encompasses private causes of action. *Id.* "In all tort cases, a duty may be imposed either through common-law case development or through a statute." *DeJesus v. U.S. Dept. of Veterans Affairs*, 479 F3d 271, 280

(3d Cir. 2002). The FNHRA fixes a standard of care for nursing homes that offer care to Medicare and Medicaid beneficiaries and accept Medicare and Medicaid payments. *See Grammer*, 570 F.3d at 523.

In *Grammer*, the U.S. Court of Appeals worked through the potential application of the FNHRA in private tort actions, as separate causes of action, applying the U.S. Supreme Court three part test from *Blessing v. Freestone*, 520 US 329 (1997). Much like Kentucky's *Carman* test, to answer whether Congress has created a cause of action privately enforceable, courts will ask first whether the private individual was an intended beneficiary of the legislation. *Blessing*, 520 US at 340. The second criterion from *Blessing* is to ask whether the rights legislated and asserted are sufficiently tangible to be enforced, *i.e.*, are the statutory standards for enforcement sufficiently clear? *Id.* at 340-341. Finally, the language in the statute must be mandatory and not precatory. *Id.* at 341. The *Grammer* Court held that the FNHRA satisfied all three of these criteria. *Grammer*, 570 F3d at 525.

In *Hargis v. Baize*, 168 SW3d 36 (Ky. 2005), the Kentucky Supreme Court unambiguously recognized that federal regulations, imported by Kentucky State regulations, can and do serve as standards of care for a KRS § 446.070 violation. In *Hargis* the widow of a truck driver brought a wrongful death action pursuant to KRS § 446.070 premised on violations of State safety regulations that in turn incorporated federal OSHA regulations. *Hargis*, 168 SW3d at 41-42.

As in *Hargis*, there is little doubt that Kentucky's nursing home statutory scheme incorporates federal regulation. *See e.g.*, 902 KAR 20:026 ("Licensee shall be legally responsible for the facility and for compliance with federal, state and local laws and regulations pertaining to the operation of the facility.") Kentucky law in fact generally recognizes private

rights of action for violations of regulations that are consistent with their enabling legislation. *Hargis*, 168 SW3d at 41 (*citing Centre College v. Trzop*, 127 S.W.3d at 567). U.S. law applies in Kentucky. The important point for this Court to consider is that, while *Hargis* permitted a private right of action to arise from federal law through State law, here Plaintiff is not even attempting a separate right of action. Plaintiff is using federal and State law only to establish standards of care ***through expert testimony***, as *Ambrose* has indicated is appropriate. *See Ambrose*, *supra*. And coming through medical expert testimony, it is difficult to understand about which Defendants complain. This law will only play a role inasmuch as experts establish that it provides part of the standard of care.

**V. Chapter 209 DOES provide a basis for negligence per se**

Defendants' contentions regarding State criminal and adult protective services violations are misplaced and even perplexing. These statutes seek to protect a class of persons to which Helen King belonged, are designed to prevent the injuries she suffered, and they incorporate definitive, non-vague standards. Again, the allegations of violations of Kentucky law go to establishing a standard of care in ordinary negligence, and not separate tort claims. It should also be self-evident that the duty of a nursing home even under ordinary negligence should be different from that of other public accommodations. For instance, while an assault on a customer at a grocery store may or may not translate to civil negligence on the grocery store's part, an assault of a vulnerable person in a nursing home should almost automatically translate into just such liability.

Criminal acts perpetrated against nursing home residents have been the basis for liability against nursing owners, operators, and administrators in Kentucky before. *See Murphy v. EPI*

*Corporation*, 2004 WL 405754 (Ky. App.) (**attached**)[3]. A criminal act is normally a superseding act relieving those not *in pari delicto* from liability. However, "[w]hile it is true that a criminal act by a third party generally is a superseding cause it is not so when the danger [the criminal act] is one of the perils the plaintiff is to be protected from." *Murphy* at * 4. Similarly, Helen Ray was admitted to the Facility for care, rehabilitation and protection, and it is entirely appropriate that the Facility be held accountable for any such crimes or abuse against her.[4] The ultimate point is that, unlike other commercial businesses, a nursing home must accept the responsibility to ensure that certain crimes are not committed against their customer-residents, and this responsibility is part of their nursing-home-specific duty of care in ordinary negligence.

As such, Defendants' arguments in this regard are premature. KRS § 209 satisfies the *Carman* Test. KRS § 209.010 provides in part:

> 1) The purpose of this chapter is:
> (a) To provide for the protection of adults who may be suffering from abuse, neglect, or exploitation, and to bring said cases under the purview of the Circuit or District Court;
>
> * * *
>
> (2) This chapter shall apply to the protection of adults who are the victims of abuse, neglect, or exploitation inflicted by a person or caretaker. It shall not apply to victims of domestic violence unless the victim is also an adult as defined in KRS 209.020(4).

## CONCLUSION

There are four elements to any tort, generally-speaking. They are (1) duty; (2) breach; (3) cause (actual causation or proximate cause); and (4) damage. *Illinois Cent. R.R. v. Vincent*, 412 S.W.2d 874, 876 (Ky. 1967); *Helton v. Montgomery*, 595 S.W.2d 257, 258 (Ky.App. 1980). A standard of care is a term of art, going to the first element. The "standard of care" quantifies

---

[3] As an unpublished opinion, this case does not constitute precedent and will not be binding on the Circuit Court. *See* CR 76.28(4)(c).

[4] It is perplexing that a civil defendant would complain about the higher standards of criminal liability—proof beyond a reasonable doubt—being applied in any way to the civil defendant's case.

the duty owed in a given setting, and the concept has been defined as, "that degree of care which a reasonably prudent person should exercise in same or similar circumstances.... In medical, legal, etc., malpractice cases a standard of care is applied to measure the competence of the profession." BLACK'S LAW DICTIONARY 1404-1405 (6th ed. 1990). Plaintiff has pled certain law as forming part of the standard of care in this field. It should be up to the experts' testimony to establish that this is true. Not everything that a nursing home does is the practice of medicine. However, a nursing home is not just another commercial business, like a grocer or a mechanic's garage; there exists law and regulation that nursing homes must follow, some of which is specifically directed to the nursing home resident's safety and care. For all the reasons set forth *supra*, Plaintiff prays the Court deny Defendants' Motion for Partial Judgment on the Pleadings.

*Respectfully submitted,*

**GARCIA, ARTIGLIERE & MEDBY**

Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main Street, Suite 108
Lexington, KY 40507
Telephone 502.584.3805
Facsimile 502.584.3811
***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

This is to certify the original copy of the foregoing was sent via first class, United States mail, postage prepaid to **Clerk, Pike County Circuit Court, P.O. Box 1002, Pikeville, Kentucky 41502**, and a true and correct copy of the foregoing mailed this 12 day of September, 2016 to the following:

Donald L. Miller, II, Esq.
J. Peter Cassidy, III
Matthew C. Cocanougher, Esq.
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
PH: 859.226.0057
Fax: 859.226.0059
*Counsel for Defendant*
*Kentucky Medical Investors, LLC (GA)*

*Counsel for Plaintiff*

KeyCite Yellow Flag - Negative Treatment
Distinguished by Halcomb v. Brillhaven, Inc., E.D.Ky., March 5, 2015

2013 WL 3808018
Only the Westlaw citation is currently available.

Unpublished opinion. See KY ST RCP Rule 76.28(4) before citing.

NOT TO BE PUBLISHED
Court of Appeals of Kentucky.

HAZARD NURSING HOME, INC., Appellant
v.
Mark AMBROSE; and Mark Ambrose as Administrator of the Estate of Anna Ambrose, deceased, Appellee.

No. 2012–CA–000636–MR.
|
July 19, 2013.
|
Discretionary Review Denied by Supreme Court Aug. 13, 2014.

Appeal from Perry Circuit Court, Action No. 07–CI–00518; William Engle, III, Judge.

**Attorneys and Law Firms**

Donald K. Brown, Mark E. Hammond, Melissa F. Calabrese, Louisville, KY, for appellant.

Jeffrey R. Morgan, Hazard, KY, for appellee.

Before DIXON, MOORE, and TAYLOR, Judges.

*OPINION*

TAYLOR, Judge.

*1 Hazard Nursing Home, Inc., brings this appeal from a January 9, 2011, judgment of the Perry Circuit Court upon a jury verdict awarding Mark Ambrose, individually, and as administrator of the Estate of Anna Ambrose, deceased, damages of $30,000 for pain and suffering and $225,000 in punitive damages for Hazard Nursing Home Inc.'s negligent treatment of Anna. We affirm.

On July 10, 2006, Anna Ambrose presented to Appalachian Regional Healthcare, Inc. (Hospital) complaining of pain and swelling in her left thigh. Anna was a sixty-year-old woman with a medical history that included blindness, hypertension, diabetes, and end stage renal disease. She was admitted to the Hospital with a diagnosis of possible cellulitis. On July 31, 2006, Anna's physician released her from the Hospital to hospice care; Anna was then transferred directly to the Hazard Nursing Home, Inc. (Nursing Home).

Upon Anna's arrival at the Nursing Home, Anna became the patient of Mitchell Wicker, M.D. Wicker admitted Anna to the Nursing Home for rehabilitation with recommendations of physical and occupational therapy, rather than hospice care. Anna remained at the Nursing Home over the next twenty-five days, and on August 24, 2006, she was transferred back to the Hospital. Anna was admitted to the Hospital to treat rectal bleeding and debridement of the pressure ulcer on her coccyx. [1] Upon Anna's readmission to the Hospital, the pressure ulcer on her coccyx was identified as Stage IV, and additional pressure sores were noted on her heels and perianal area. The pressure ulcer on Anna's coccyx also tested positive for E-coli bacteria. Anna was ultimately discharged from the Hospital and returned to the Nursing Home on September 9, 2006. She died there on November 6, 2006.

Mark Ambrose, individually and as administrator of the Estate of Anna Ambrose, deceased, (collectively referred to as Ambrose) filed a complaint in Perry Circuit Court against the Nursing Home and the Hospital. Therein, Ambrose alleged that the Nursing Home was negligent in its care of Anna and that such negligence caused her pain, suffering and ultimately her death.

A jury trial ensued. Ambrose's wrongful death claim was voluntarily dismissed at the close of Ambrose's proof. Ultimately, the jury found that the Nursing Home breached its standard of care as to Anna and awarded $75,000 in damages for Anna's physical pain and suffering; of this amount the jury apportioned $30,000 to the Nursing home. [2] The jury also found that the Nursing Home acted in reckless disregard in its care of Anna and awarded $225,000 in punitive damages. This appeal follows.

The Nursing Home initially contends that the trial court erred by denying its motion for directed verdict upon the

issue of negligence. Specifically, the Nursing Home argues that there was no evidence of medical causation; thus, its motion for directed verdict upon same should have been granted.

A directed verdict is proper only when considering the evidence as a whole, reasonable jurors could not have found in favor of the nonmoving party. Kentucky Rules of Civil Procedure (CR) 50.01; *Lee v. Tucker*, 365 S.W.2d 849 (Ky.1963). In other words, a directed verdict is proper only where there exists "a complete absence of proof on a material issue." *Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910, 915 (Ky.App.2006) (quoting *Taylor v. Kennedy*, 700 S.W.2d 415, 416 (Ky.App.1985)). And, the trial court must consider the evidence in a light most favorable to the nonmoving party. *Zupp v. CSX Transp., Inc.*, 300 S.W.3d 219 (Ky.App.2009). With the foregoing in mind, we now consider whether the trial court erred by denying the Nursing Home's motion for directed verdict.

*2 In the complaint, Ambrose alleged that the Nursing Home was negligent in its care and treatment of Anna. To prove negligence, it is incumbent upon plaintiff to demonstrate duty, breach of duty, causation and damage. *See Baylis v. Lourdes Hosp., Inc.*, 805 S.W.2d 122 (Ky.1991). And, in most medical negligence cases, the testimony of an expert witness is necessary as "jurors are not competent to draw their own conclusions from the evidence without the aid of such expert testimony." *Id.* at 124 (citations omitted).

In this case, Ambrose called several witnesses to testify regarding the Nursing Home's negligent care of Anna. Jeffrey Levine, M.D., a geriatric and wound care specialist, testified as Ambrose's medical expert. Levine testified that Anna suffered from numerous pressure ulcers, with one being severe. According to Levine, Anna's severe pressure ulcer extended so deep as to be near a bone. Levine was critical of the Nursing Home's care of Anna and believed that the Nursing Home violated the standard of care and was negligent. He explained that the Nursing Home concluded that Anna should lose weight and placed her on a restricted caloric diet despite the presence of pressure ulcers. Levine testified that the Nursing Home's failure to provide adequate nutrition to Anna was a violation of the standard of care and that the inadequate nutrition prevented Anna's body from healing the pressure ulcers and contributed to further deterioration of her pressure ulcers. Levine classified the Nursing Home's breach of the standard of care as "gross" and "reckless."

Daniel Nantz also testified as a lay witness for Ambrose. Nantz was the funeral director who picked up Anna's body from the Nursing Home after she died. Nantz testified that Anna's body emanated a strong odor of feces and urine. He also testified that the pressure ulcer on her coccyx was so large he could have put his fist in it and during the embalming process embalming fluid leaked out of this pressure ulcer.

Ambrose also called Sheila Noe, the administrator of the Nursing Home. Noe testified that her job duties included ensuring the Nursing Home's compliance with all laws and relevant regulations. Noe stated that she often relies upon the Long Term Care Survey Manual (LTCSM), which is a compilation of the federal law and regulations that govern nursing homes. Noe affirmed that the LTCSM establishes the minimal standard of care required by nursing homes. Noe also acknowledged that on some occasions during Anna's stay the Nursing Home had inadequate staff to provide the minimal care required.

Janet McKee, R.D., testified as a dietary expert for Ambrose. McKee opined that adequate nutrition is essential for the health of a patient and the patient's skin. She stated that adequate nutrition is necessary to prevent pressure ulcer formation and aid in healing of pressure ulcers. McKee testified that the Nursing Home did not provide Anna adequate nutrition and that by failing to do so, Anna's pressure ulcers could not heal. And, in McKee's opinion, the lack of adequate nutrition was a substantial factor in the formation and continued presence of Anna's pressure ulcers.

*3 Ambrose also called an expert in nursing home administration, Byron Arbeit. Arbeit testified as to the standards applicable to administration of nursing homes as set forth by the LTCSM. He testified that the LTCSM requires that certain routine preventative care be taken in order to avoid a pressure ulcer. According to Arbeit, this preventative care includes adequate nutrition, hydration, bathing, turning, and repositioning of the patient. Arbeit reviewed the Nursing Home's care plan for Anna and stated that the care plan required two complete baths per week and sponge baths on other days. According to documentation of the Nursing Home, Ambrose pointed out, and the director of nursing admitted, the Nursing

Home violated Anna's care plan by not bathing her often enough. Ambrose stated that there were several weeks when Anna did not receive a complete bath or the requisite number of sponge baths. Arbeit also opined that the Nursing Home failed to reposition Anna in her bed as required by the LTCSM. In Arbeit's expert opinion, Anna did not receive the routine preventative care as required by the LTCSM and as required by Anna's care plan as to nutrition, hydration, bathing, turning and repositioning.

Considering the evidence in a light most favorable to Ambrose, as the nonmoving party, we believe more than sufficient evidence was presented demonstrating the Nursing Home breached the standard of care in its care and treatment of Anna and that such breach caused harm to Anna. Simply put, the evidence presented was sufficient to create a submissible issue to the jury and the trial court properly denied the Nursing Home's motion for directed verdict. *See Lee v. Tucker*, 365 S.W.2d 849.

The Nursing Home next contends that the trial court erred by allowing Arbeit, an expert in nursing home administration, to testify "regarding the medical standard of care." The Nursing Home specifically asserts that Arbeit is not a doctor or nurse and, thus, his testimony regarding whether Anna received adequate nutrition, hydration, bathing and repositioning was in violation of Kentucky Rules of Evidence (KRE) 702.

KRE 702 sets forth the standard for admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if:
>
> (1) The testimony is based upon sufficient facts or data;
>
> (2) The testimony is the product of reliable principles and methods; and
>
> (3) The witness has applied the principles and methods reliably to the facts of the case.

KRE 702 largely codified the evidentiary pronouncements set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Under *Daubert*, scientific or specialized evidence must be relevant and reliable to be admissible. *Id.; Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35 (Ky.2004). And, the trial court serves as a gatekeeper and must initially determine the relevancy and reliability of such specialized evidence before such evidence may be admitted during trial. Our review of the trial court's ruling on the admissibility of such expert testimony under *Daubert* is limited. *Daubert*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. We review the trial court's findings of fact as to the credibility of the evidence under the clearly erroneous standard, and the trial court's conclusion as to relevance under the abuse of discretion standard. *Lukjan v. Commonwealth*, 358 S.W.3d 33 (Ky.App.2012).

***4** The record reveals that counsel for both parties were at the bench during trial and were discussing the order in which witnesses would be called to testify. The Nursing Home was seeking to call a witness during Ambrose's case-in-chief. During this bench conference, the Nursing Home mentioned a *Daubert* hearing upon the qualification of Arbeit as an expert. The Nursing Home argued that Arbeit was not qualified to testify as to the medical standard of care. Ambrose agreed and stated Arbeit would not testify as to medical standard of care. Rather, Ambrose agreed that Arbeit would merely testify within his area of expertise; i.e., whether the Nursing Home complied with its own care plan for Anna and the standards of care set forth in the LTCSM. The trial court then offered to hold a *Daubert* hearing upon Arbeit's qualifications as an expert, but the Nursing Home withdrew the motion. From this record, we harbor grave doubt as to whether this issue is preserved for our review as the Nursing Home withdrew its *Daubert* motion.

Nevertheless, having reviewed Arbeit's testimony at trial, we believe that he testified within his realm of expertise in nursing home administration. At times, the standard of care outlined in the LTCSM may have slightly overlapped with the medical standard of care, but Arbeit was careful to base his opinion solely upon the standard of care outlined in the LTCSM and upon the Nursing Home's care plan for Anna. On several occasions, Arbeit prefaced his opinion as being purely based upon the standard of care contained in the LTCSM. Moreover, we note that the trial court sustained the Nursing Home's objections to Arbeit's testimony in several areas. Upon the whole, we are of the opinion that the trial court did not abuse its discretion or violate KRE 702 in permitting Arbeit's testimony.

The Nursing Home next contends that the trial court erred by failing to grant its motion for a new trial based upon the erroneous admission of "evidence of harm to non-parties." Specifically, the Nursing Home alleges that the trial court erred by allowing Ambrose's dietary expert, McKee, to testify regarding other instances where the Nursing Home failed to provide adequate nutrition to its residents. The Nursing Home argues McKee's testimony violated Kentucky Rules of Evidence (KRE) 404(b).

In the case *sub judice*, the Nursing Home called its dietician, Lora Jacobs, as a witness.[3] Jacobs had worked for the Nursing Home's parent company for approximately fourteen years. During her testimony, Jacobs stated that she was only aware of one instance of the Nursing Home being cited for a dietary deficiency, which related to a "dented can." Thereafter, Ambrose's dietary expert, McKee, was asked if she was aware of nutritional citations or deficiencies imposed upon the Nursing Home, other than the dented can, during the last ten years. McKee responded "Yes, there were systemic issues with the quality control of food, with the administration of tube feedings, with...." At this point, counsel for the Nursing Home objected to McKee's testimony concerning other instances of nutrition citations. The trial court sustained the objection and admonished the jury to disregard McKee's answer. McKee was instructed to give only a yes or no answer. Then, counsel for Ambrose repeated the question, and McKee simply answered "Yes, sir." When McKee mentioned the state surveys, counsel for Ambrose requested permission to approach the bench. Counsel argued that Jacobs's testimony regarding only one dietary deficiency opened the door to evidence of other dietary deficiencies. The trial court agreed and allowed Ambrose's counsel to ask McKee the question.

*5 KRE 404(b) generally prohibits the introduction into evidence of past acts or wrongs to prove action in conforming therewith. And, a trial court's decision as to the admission or exclusion of evidence is reviewed for abuse of discretion. *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575 (Ky.2000). An abuse of discretion occurs if the trial court's acts were "unfair, arbitrary, unreasonable, or unsupported by sound legal practice." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999). Additionally, "Kentucky has a long history of holding parties accountable who open the door to evidence." *Peters v. Wooten*, 297 S.W.3d 55, 63 (Ky.App.2009) (citing *Harris v. Thompson*, 497 S.W.2d 422, 430 (Ky.1973)). The legal concept of "opening the door" has been eruditely explained:

> The term "opening the door" describes what happens when one party introduces evidence and another introduces counterproof to refute or contradict the initial evidence.... If the first party objects to the counterproof, or loses the case and claims error in admitting it, typically the objection or claim of error is rejected because he "opened the door."

Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 1.10[5] (4th ed.2011) (quoting 1 Mueller & Kirkpatrick, *Federal Evidence*, § 12 (2d ed.1994)).

In this case, we cannot say that the trial court abused its discretion by allowing McKee to testify that there were other instances of dietary deficiency citations as the Nursing Home clearly "opened the door" to this line of questioning. *See Norris v. Commonwealth*, 89 S.W.3d 411 (Ky.2002). Hence, we hold that the trial court did not abuse its discretion as to McKee's testimony.

The Nursing Home next contends that the trial court erred by denying its motion for a new trial based upon Ambrose's improper references to the "wealth" of the Nursing Home during questioning of witnesses at trial and during counsel's closing argument.

We initially observe that the issue of improper references to the Nursing Home's wealth during the questioning and testimony of the witnesses was not raised in the Nursing Home's motion for a new trial; thus, the trial court could not have erred by failing to grant a new trial on this basis as it was not properly brought to the court's attention.

As concerns closing argument, we agree with the Nursing Home that Ambrose's counsel improperly injected the Nursing Home's wealth into his closing argument. However, we believe this error was waived by not making contemporaneous objections. The law is clear that an objection to statements made by counsel during closing argument must be made contemporaneously therewith. *Charash v. Johnson*, 43 S.W.3d 274 (Ky.App.2000); 19

Sheryl G. Snyder, Griffin Terry Sumner, & Matthew C. Blickensderfer, *Kentucky Practice–Appellate Practice* § 4:4 (2012–2013 ed.). The objection must be contemporaneous so as to allow the trial court an opportunity to cure any error. *Charash*, 43 S.W.3d 274. Here, the Nursing Home did not allege that a contemporaneous objection was made to counsel's comments about the Nursing Home's wealth during closing, nor upon review of the record can we find where an objection was made at closing. Therefore, we must conclude the error was waived.[4]

***6** The Nursing Home next contends that the trial court erred by denying its motion for a new trial due to the prejudicial effect of an advertisement published in the local newspaper during trial. The full-page advertisement was apparently placed by a West Virginia attorney who frequently represents plaintiffs in litigation against nursing homes in the region. This advertisement ostensibly warned that the Nursing Home was cited by the government for mistreatment and negligent care of its residents.

The record reveals the trial court conducted individual *voir dire* of the jurors. Only one juror acknowledged that he had seen the advertisement in the local newspaper. Thereafter, this particular juror was excused as an alternate juror before jury deliberations began. Based upon these circumstances, we do not believe that the Nursing Home is entitled to a new trial due to the advertisement.

The Nursing Home further argues that the trial court erred by denying its motion for a new trial due to the jury receiving certain exhibits with portions highlighted by Ambrose's counsel or expert witnesses. When this issue was raised during trial, the trial court instructed both attorneys to ensure that the highlighted copies were replaced with "clean" copies. Neither party complied with this directive nor did the Nursing Home bring the failure to do so to the court's attention at trial. Thus, we again conclude that any error was waived.

The Nursing Home finally contends that the trial court erred by failing to grant its CR 59 motion to alter, amend, or vacate the award of punitive damages. In this Commonwealth, punitive damages may be awarded upon a finding that the defendant acted with gross negligence. *Gibson v. Fuel Transport, Inc.*, —— S.W.3d —— (Ky.2013). To justify an award of punitive damages:

> [T]here must be first a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by wanton or reckless disregard for the lives, safety, or property of others.

*Gibson*, —— S.W.3d at —— (quoting *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389–90 (Ky.1985)). And, KRS 411.184(2) mandates that clear and convincing evidence must prove reckless or wanton behavior.

Specifically, the Nursing Home makes three arguments that the trial court's jury instruction upon punitive damages was improper: (1) that there was a lack of evidentiary support, (2) that the jury based its punitive damages award upon improperly admitted evidence of "prior bad acts," and (3) that the punitive damage award was excessive. We address each argument *seriatim*.

As for the erroneous jury instructions, the Nursing Home argues that Ambrose presented no evidence that the Nursing Home acted with "wanton or reckless disregard for the lives, safety or property of others." The Nursing Home thus asserts that the jury instruction as to punitive damages was improper and should not have been given to the jury. However, the punitive damage instruction given to the jury was the instruction actually tendered by the Nursing Home to the court at trial.

***7** It is well-established that where a trial court adopts a proposed jury instruction of a party, that party's complaint as to the jury instruction will not be heard on appeal. *Wright v. House of Imports, Inc.*, 381 S.W.3d 209 (Ky.2012). This rule is succinctly set forth as follows:

> The rule of appellate procedure that a party is estopped from complaining of errors committed or invited by himself applies to the instructions. A party can not [sic] complain of an instruction given in the exact, or substantially the same language of an instruction asked for by him, or if it is to the same effect. Nor can he question instructions which were prepared or requested by him, since he invited the error. This

> is so even though he excepted to the giving of it.

*Gibson v. Thomas*, 307 S.W.2d 779, 780 (Ky.1957) (citation omitted).

In this case, the final instruction given to the jury on punitive damages was the instruction tendered by the Nursing Home. Despite the Nursing Home's argument that the instruction was erroneous, the Nursing Home cannot submit the instruction and then argue that such instruction was erroneous. Thus, we conclude the Nursing Home's argument that the jury instruction upon punitive damages was erroneous to be without merit.

The Nursing Home also asserts that the punitive damages award should be set aside because the award was based upon improper evidence of prior bad acts. In particular, the Nursing Home argues that Ambrose's trial counsel made improper comments as to inadequate care of other residents in the Nursing Home and stated that the Nursing Home's patient care was not "what the people of Perry County deserve." Nursing Home's Brief at 33. Additionally, the Nursing Home points to the testimony of witness McKee that the Nursing Home had "systemic issues" with nutritional care. Nursing Home's Brief at 33.

It is clearly improper for a jury to award punitive damages based upon harm to nonparties. *See Sand Hill Energy, Inc. v. Smith*, 142 S.W.3d 153 (Ky.2004). However, in this case, there is no indication that the jury's award of punitive damages was so based. As to McKee's testimony, as previously discussed, the Nursing Home opened the door to such testimony and cannot now complain. And, we are unable to conclude that Ambrose' trial counsel's remarks were of such improper character as to require reversal of the punitive award. The trial court further admonished the jury during closing argument not to consider experiences of nonparties in the Nursing Home. We, thus, reject the Nursing Home's claim that the punitive damage award should be set aside because of references to prior bad acts.

We next address the Nursing Home's argument that the award of punitive damages was excessive and unconstitutional. The Nursing Home asserts that the punitive damage award was some seven and one-half times the compensatory damage award. The United States Supreme Court has ruled that an excessive and disapportionate punitive damage award violates the constitutional guarantee of due process under the United States Constitution. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). When reviewing an award of punitive damages for excessiveness, we are guided by three factors set forth in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). These factors are referred to as the "*Gore* guideposts." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 at 429, 123 S.Ct. 1513 at 1526, 155 L.Ed.2d 585. Under the *Gore* guideposts, the Court is to consider:

> ***8** (1) the degree of reprehensibility of the defendant's misconduct, (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*State Farm*, 538 U.S. at 409, 123 S.Ct. at 1515. And, our review of the excessiveness of a punitive damage award proceeds *de novo*. *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001); *Ragland v. Diguiro*, 352 S.W.2d 900 (Ky.2011).

As to the degree of reprehensibility of the Nursing Home's conduct, based upon the evidence introduced at trial, we must conclude that it was substantial. The Nursing Home not only failed to follow federal nursing home regulations for patient care but also failed to provide Anna the minimum care as required under its own care plan. Most importantly, the Nursing Home's failure to follow its own care plan revealed that the Nursing Home knew its care was substandard but, nevertheless, continued to provide substandard care to Anna. And, each instance of substandard care to Anna constitutes a separate and distinct act of negligence or gross negligence on the part of the Nursing Home.

We now consider whether a disparity of harm suffered by Anna and the punitive damage award existed. Anna was terminally ill and not able to assist in her own care upon her admission to the Nursing Home. Anna required assistance with all necessities of life. In short, Anna was totally dependent on the Nursing Home and was clearly the most helpless of victims. Nevertheless,

the evidence indicated that the Nursing Home's care of Anna was reckless and even failed to conform to its own care plan. Anna suffered from multiple pressure sores and one of these sores became infected with E-coli bacteria during her admission. Eventually, this pressure sore had to undergo surgical debridement. After she died, her body emanated with the odor of feces and urine. And, most disturbing, evidence indicated that Anna did not receive proper nutrition while a patient at the Nursing Home. Considering the substantial and considerable evidence of harm suffered by Anna, we do not believe a disparity exists.

As to the difference between the punitive damage award and the compensatory damage award, it is not excessive. The jury awarded a total of $75,000 in compensatory damages, with the Nursing Home being apportioned $30,000 of such award. The jury also awarded punitive damages against the Nursing Home in the amount of $225,000.[5] The Nursing Home calculates that the punitive damages were seven and one-half times the compensatory damages. On the other hand, Ambrose argues that the punitive damages were only three times the amount of the total compensatory damage award.

The United States Supreme Court has recognized there are no set limits on the ratio between compensatory damages and punitive damages. However, it observed that "single-digit multipliers are more likely to comport with due process." *State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 410, 123 S.Ct. at 1516. The Kentucky Supreme Court has also rejected a concrete ratio but instead instructed the Court to consider the egregiousness of defendant's conduct. *Phelps v. Louisville Water Co.*, 103 S.W.3d 46 (Ky.2003). In this case, the evidence supports a conclusion that the Nursing Home's conduct was highly egregious and was sufficient to justify the jury's award of punitive damages in the sum of $225,000.

***9** For the foregoing reasons, the judgment of the Perry Circuit Court is affirmed.

ALL CONCUR.

**All Citations**

Not Reported in S.W.3d, 2013 WL 3808018

Footnotes

1 It is uncontroverted that Anna Ambrose presented to Hazard Nursing Home, Inc. (Nursing Home) with a pressure ulcer on her coccyx. Pressure ulcers are rated according to the Skin Integrity Assessment, and there is a dispute between the parties regarding the severity of Anna's pressure ulcer upon her admission to the Nursing Home. Anna's patient records reflect the ulcer was either a Stage III or a Stage IV upon her admission to the Nursing Home.

2 The jury awarded compensatory damages and apportioned 60 percent of fault to Appalachian Regional Healthcare, Inc. (Hospital) and 40 percent to the Nursing Home. The Hospital settled with Ambrose prior to trial. The Nursing Home was the only remaining defendant at trial.

3 Lora Jacobs apparently testified out of order and during the case-in-chief of Mark Ambrose, individually and as administrator of the Estate of Anna Ambrose, deceased.

4 The Nursing Home does not state how this alleged error was preserved for appeal and specifically failed to identify any specific objections to trial counsel's references to wealth. As an appellate court, we will not search the record for objections; rather, the Nursing Home is required to begin each argument with a reference to preservation. Kentucky Rules of Civil Procedure 76.12(4)(c)(v). *See Monumental Life Ins. Co. v. Dep't. of Revenue*, 294 S.W.3d 10 (Ky.App.2008). There were at least four objections made during Ambrose's closing argument for which prompt admonitions were given to the jury by the court. We can find nothing in the record on appeal to support the position that the trial court's admonitions did not satisfy any irregularities in the closing argument made by Ambrose's attorney.

5 We also note that Ambrose asked for $500,000 in compensatory damages at trial and left open for the jury to determine what amount of punitive damages, if any, should be awarded, in his closing argument.

End of Document

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

2004 WL 405754
Only the Westlaw citation is currently available.

Unpublished opinion. See KY ST RCP Rule 76.28(4) before citing.

Court of Appeals of Kentucky.

Tonia MURPHY, by and Through Mitzi RELIFORD, Her Duly Appointed Guardian and Mother and Next Friend, Appellant
v.
EPI CORPORATION, d/b/a Summit Manor Nursing Home; Brenda Williams, Individually and in her Capacity as Administrator of Summit Manor Nursing Home; and Harlan Jessie, Individually and in his Capacity as CNA at Summit Manor Nursing Home, Appellees.

No. 2002-CA-002173-MR.
|
March 5, 2004.
|
Discretionary Review Denied by Supreme Court Feb. 9, 2005.

Appeal from Adair Circuit Court, Action No. 01-CI-00117; James G. Weddle, Judge.

**Attorneys and Law Firms**

Larry F. Sword, Elizabeth K. Broyles, Somerset, KY, Robert L. Bertram, Jamestown, KY, for Appellant.

Thomas N. Kerrick, Scott D. Laufenberg, Bowling Green, KY, for Appellees.

Before EMBERTON, Chief Judge; BARBER and BUCKINGHAM, Judges.

*OPINION*

BARBER, Judge.

*1 This is an appeal by Tonia Murphy, by and through Mitzi Reliford, her duly appointed Guardian and Mother and Next Friend (Murphy), from a summary judgment granted to the appellees, EPI Corporation d/b/a Summit Manor Nursing Home, Brenda Williams, Individually and in her capacity as Administrator, and Harlan Jessie, Individually and in his capacity as CNA at Summit Manor Nursing Home (collectively appellees). The appellees have also moved the Court to strike a portion of Murphy's brief for failing to comply with CR 76.03(8). We reverse and remand with respect to the summary judgment and deny the motion to strike.

In January 1999 Murphy suffered injuries from an automobile accident that left her in a persistent vegetative state. Shortly after her accident Murphy became a resident of Summit Manor Nursing Home (Summit Manor) and has remained there except for a few excursions for treatment.

In July 2000 Murphy's brother-in-law, Richard Oldham (Oldham) came to Summit Manor and raped Murphy in her room. An employee of Summit Manor caught Oldham in the act and chased him away. Oldham escaped at that time but was later caught and prosecuted for the crime and is now in prison.

Since Murphy's accident in 1999 she has been unable to talk or otherwise communicate with anyone. She is not able to feed herself or breathe on her own. She is incapable of performing any activities of daily living and is totally dependent upon the care given to her by Summit Manor.

Murphy's treating physician testified that after the rape occurred she was transported to a local emergency room and a rape kit was done. He also testified that he did not believe that Murphy was able to experience pain but admitted he could not rule out the possibility that she understands events and occurrences even though she is in a persistent vegetative state.

Testimony from the regional program manager of the Division of Community Health Services and from the Family Services Office Supervisor for the region established that Summit Manor followed the correct procedures once it had knowledge that a crime had been committed. The state focused on whether Summit Manor contacted the appropriate agencies in response to the rape; whether it sent Murphy to receive appropriate medical care following the rape; whether it removed the perpetrator from the premises; whether it contacted law enforcement; and whether anyone affiliated with Summit Manor perpetrated the crime or otherwise abused Murphy.

Summit Manor's administrator testified that the nursing home has not changed its procedures for protecting residents since the incident involving Murphy. Those procedures consist of watching out for visitors, orienting new employees, once a year in-service for employees, and reporting any happenings to appropriate agencies.

Although Oldham is Murphy's brother-in-law, she never met him prior to the accident in 1999 that resulted in her current state. When her sister visited her at Summit Manor she came with their mother since she could not drive. No one suspected Oldham of the rape before he was caught and prosecuted for the crime.

*2 Murphy's mother, Mitzi Reliford (Reliford), visited her daughter daily prior to the rape and approximately twice a week afterwards. She testified that after the rape Murphy cried during her visits. Murphy does open her eyes and there has been some question about whether she has followed movements in response to stimuli.

Reliford brought this action on Murphy's behalf alleging that Summit Manor and certain of its employees were negligent by allowing Oldham to rape Murphy. In her complaint Murphy asserts that the appellees failed to properly supervise Murphy and had inadequate security. She also alleges that the appellees had a duty to protect her from being raped and that they breached this duty as well as their duty to comply with proper standards of operation, management and control of Summit Manor. Murphy contends that this is in violation of the codes, rules and regulations of the Commonwealth of Kentucky. At the trial court level and on appeal Murphy further argues that the doctrine of *res ipsa loquitur* should apply thereby shifting the burden of persuasion to the appellees to show that their negligence was not a factor in causing her injuries.

The appellees admit that they owe Murphy a duty of protection but dispute the scope of that duty. They maintain that they did not breach their duty to Murphy; that even if a breach occurred no injury can be proven, and that *res ipsa loquitur* does not apply in this case. The appellees also argue that the trial court correctly ruled that Murphy could not recover any damages for pain and suffering. Finally, it is contended that Murphy did not properly preserve for review whether KRS 216.515 is applicable to this case.

The standard for review in cases where a circuit court has granted summary judgment is whether the court is correct in its finding that no genuine issues of material fact exist thus supporting the conclusion that the moving party is entitled to judgment as a matter of law. *James v. Wilson*, Ky.App., 95 S.W.3d 875, 883 (2002); *Seifres v. Kraft*, Ky.App., 916 S.W.2d 779, 781 (1996). Since summary judgment is decided as a matter of law the appellate court need not defer to the trial court's conclusion. *Id.*

The elements of a tort case require Murphy to prove that the appellees owed her a duty, they breached that duty, and she was harmed by the breach. *M & T Chemicals, Inc. v. Westrick*, Ky., 525 S.W.2d 740, 741 (1974); *James v. Wilson, supra* 95 S.W.3d at 889.

That a duty of protection is owed to Murphy is without question. 40A Am.Jur.2d Hospitals & Asylums § 39; KRS 216.515(6). In the context of this case there is a duty owed by the appellees to exercise ordinary care in their activities to prevent foreseeable harm to Murphy. The appellees have admitted throughout this case that they owe such a duty to Murphy. This is sometimes referred to in Kentucky as the "universal duty of care." *North Hardin Developers, Inc. v. Corkran*, Ky., 839 S.W.2d 258, 261 (1992); *Waldon v. Housing Authority of Paducah*, Ky.App., 854 S.W.2d 777, 778 (1992). Before applying the universal duty of care the harm to the plaintiff must be foreseeable. *North Hardin, supra.*

*3 The appellees contend Murphy cannot show a duty to her was breached. Murphy claims that the breach is inadequate security and supervision. Murphy's mother testified that Summit Manor employees did not know what was happening on one end of the hall when they were at another end. Summit Manor's administrator testified that, essentially, the only security measure taken by Summit Manor is to keep a look out and be aware of the people that visit.

A jury could conclude from this evidence that Summit Manor was under an obligation to do something more than look out for visitors. The appellees' argument that Oldham was a family member, and, therefore, not suspicious is unconvincing since at the time Murphy was attacked no one knew Oldham's identity.

Appellees' argument that they complied with the industry standard and thus did not breach their duty is equally unpersuasive because whether or not Summit Manor and its employees are doing what other nursing homes are doing does not answer the question of whether it fulfilled its duty to Murphy. *Vick v. Methodist Evangelical Hosp., Inc.*, Ky., 408 S.W.2d 428, 429-30 (1966); *Clark's Adm'r v. Kentucky Utilities Co.*, 289 Ky. 225, 158 S.W.2d 134, 136-37 (1941).

In the context of a nursing home the scope of the duty owed is analogous to the duty imposed on a hospital to exercise "such reasonable care and attention for his safety as his mental and physical condition, known or discoverable by the exercise of ordinary care, may require." *Miners Memorial Hosp. Ass'n of Kentucky v. Miller*, Ky., 341 S.W.2d 244, 245 (1960). *See also Vick*, *supra* 408 S.W.2d at 430; 40A Am.Jur.2d Hospitals & Asylums § 39.

No Kentucky cases directly address this duty in the context of a nursing home, but other states have considered the situation and those cases impose a duty on nursing homes to exercise ordinary care. *Associated Health Systems v. Jones*, 185 Ga.App., 798, 800, 366 S.E.2d 147, 150 (1988); *Bezark v. Kostner Manor, Inc.*, 29 Ill.App.. 2d 106, 111, 172 N.E.2d 424, 426 (1961); *Gray v. Jefferson Geriatric and Rehabilitation Ctr.*, 76 Ohio App., 3d 499, 502, 602 N.E.2d 396, 398 (1991); *Golden Villa Nursing Home, Inc. v. Smith*, 674 S.W.2d 343 (Tex.App.1984); *Niece v. Elmview*, 79 Wash., App. 660, 669-70, 79 Wash.App. 660, 904 P.2d 784, 789-90 (1995).

Ordinary care in the nursing home context has been expressed aptly by the Court in *Shepard v. Mielke*, 75 Wash., App. 201, 205-6, 75 Wash.App. 201, 877 P.2d 220. 223 (1994) where it stated:

> The duty of ordinary care here would include the duty of taking reasonable precautions to protect those who are unable to protect themselves. Ms. Shepard could not lock her door, screen visitors, or generally provide for her own safety. She was in Manor Care precisely because she was unable to perform these tasks for herself. Manor care, like other nursing homes, holds itself out to the public as willing and able to provide these services, for a fee. Its knowledge of the condition of its residents creates a concomitant duty much like that of a hospital to safeguard residents against reasonably foreseeable risks of harm.

*4 Like the patient in *Shepard* Murphy is totally dependent upon Summit Manor for her care.

The appellees make two further contentions with respect to foreseeability and causation: (1) that the criminal acts of a third person are not foreseeable, and, (2) that the criminal acts of a third person are an intervening superseding cause that relieves them of liability. Neither argument is persuasive.

Where a criminal act can fairly be anticipated as a consequence of another's negligence then the criminal act is foreseeable. *Britton v. Waldon*, Ky., 817 S.W.2d 443, 449 (1991); *Waldon v. Housing Authority of Paducah*, Ky.App., 854 S.W.2d 777, 779 (1991). Criminal acts, whether rape, robbery, or assault, against a resident of a nursing home can be foreseen. The specific criminal act need not be anticipated. This is particularly so in circumstances where, like Murphy, the resident is totally dependent on the nursing home and its staff for her care and protection.

It is, in fact one of the obligations that a nursing home takes on when accepting an individual as a resident that is, to provide protection in an effort to prevent its residents from being the victim of crimes whether committed by other residents, staff, or third persons from outside the facility. Other courts have similarly held that the criminal acts of such persons are foreseeable. *Associated Health Systems*, *supra* 185 Ga.App., at 802, 366 S.E.2d at 151; *Niece*, *supra* 79 Wash.App., at 669-70, 904 P.2d at 789-90; *Shepard*, *supra* 75 Wash.App., at 206, 877 P.2d at 223.

Oldham's criminal act is also not a superseding cause that would relieve the appellees of liability. While it is true that a criminal act by a third party generally is a superseding cause it is not so when the danger [the criminal act] is one of the perils the plaintiff is to be protected from. If the negligence of the appellees made it more likely that such an event would occur then they cannot be relived of liability. *See Restatement (Second) of Torts* § 448 & § 449; *Britton*,

*supra* 817 S.W.2d at 449-50; *NKC Hosps., Inc. v. Anthony*, Ky.App., 849 S.W.2d 564, 568 (1993).

It is also argued that Murphy cannot establish any damages directly attributable to the rape. Specifically the appellees contend that the trial court correctly found that Murphy could not show that she experienced any pain and suffering because she exists in a persistent vegetative state. What the circuit court found in this regard is not known because the ruling does not address this issue.

In Kentucky the damages recoverable in a tort action are those that "actually flow from the wrongful act, although the particular consequences may not have been contemplated...." *Western Union Telegraph Co. v. Ramsey*, 261 Ky. 657, 88 S.W.2d 675, 677, 103 A.L.R. 541 (1935). This includes actual damages as well as consequential damages. In this case there is also the possibility of punitive damages as afforded by KRS 216.515(26). Thus, whether or not Murphy can show any damages for pain and suffering does not deprive her of proof of other damages that may be available.

*5 With respect to pain and suffering it is necessary to show that there is some level of consciousness. *Vitale v. Henchey*, Ky., 24 S.W.3d 651, 659 (2000). According to Murphy's treating physician she is unable to experience pain. However, according to Murphy's Mother, Murphy exhibited signs of reaction to the trauma of being raped by crying when she visited. This suggests that Murphy did experience some pain and suffering following the incident. In addition, Murphy's physician testified that it is possible that she does experience consciousness at some level. *See also Wagner v. York Hosp.*, 415 Pa.Super. 1, 8, 608 A.2d 496, 499 (1992) where the Court rejected the argument that a patient in a persistent vegetative state does not feel any pain. We believe that this evidence is sufficient to preclude summary judgment.

Thus, taking the facts in the light most favorable to the party opposing summary judgment, as is required, we believe that the circuit court incorrectly granted summary judgment to the appellees. *Scifres, supra.*

Appellees also argue Murphy has not properly preserved the argument that Summit Manor can be held accountable under KRS 216.515 for any negligence in this case. It is again unclear whether the trial court considered any arguments with respect to the statute, but given our disposition of the case on the grounds above it is unnecessary for us to reach this issue.

Murphy argues that the trial court incorrectly found that the doctrine of *res ipsa loquitur* did not apply in this case. For that doctrine to apply Murphy must show: (1) that the instrumentality causing the harm was under the exclusive control of the appellees; (2) that the circumstances under common knowledge and experience create a clear inference that the accident would not have happened except for the negligence of the appellees; and (3) Murphy's injuries resulted from the incident. *Helton v. Forest Park Baptist Church*, Ky.App., 589 S.W.2d 217, 219 (1979); *Vernon v. Gentry*, Ky., 334 S.W.2d 266, 268 (1960).

The trial court was correct in its conclusion that *res ipsa loquitur* is not available to Murphy as a theory on which to base her case. The first element of the doctrine requires that the appellees have exclusive control over the instrumentality directly causing the harm. The instrumentality that directly caused the harm is Oldham, and, although his acts do not supersede any negligence that may exist on the part of appellees, neither is he within their exclusive control.

Finally, the appellees have made a separate motion to strike the portion of appellant's brief arguing the applicability of KRS 216.515. Since it is unclear whether the trial court had the opportunity to rule on this issue and it does not form the basis for our opinion, we deny the motion.

The ruling of the Adair Circuit Court is reversed and the case is remanded.

ALL CONCUR.

**All Citations**

Not Reported in S.W.3d, 2004 WL 405754

End of Document

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 15-CI-778

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFF

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * * * *

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO QUASH, OR IN THE ALTERNATIVE, FOR PROTECTIVE ORDER**

Plaintiff, Jennifer Bingham as Executrix of the Estate of Helen Ray, deceased, and on Behalf of the Wrongful Death Beneficiaries of Helen Ray, deceased, hereby responds to Defendants' Motion To Quash, Or In The Alternative, For Protective Order. Plaintiff respectfully requests that this Court deny Defendants' Motion.

## INTRODUCTION

Without presenting any substantial justification for its Motion, Defendants request to deny Plaintiff access to discoverable information relating to the claims Plaintiff is pursuing against Defendants. Instead, Defendants cobbled together a string of vague and disconnected arguments without taking any effort to set forth facts in support thereof. What few facts

Defendants do discuss are incomplete or misstated in an effort to justify otherwise unsupported assertions in support of the Motion. However, an examination of Plaintiff's CR 30.02(6) Deposition Notice (hereinafter "Deposition Notice") itself shows that the topics listed therein are reasonable and permitted under the Kentucky Rules of Civil Procedure. Defendants attempt, by analogy, to equate Plaintiff's requests to efforts to seek work product. Defendants' arguments are disingenuous and unsupported by Kentucky law, and their Motion to Quash, or in the Alternative, for Protective Order, should be overruled.

Plaintiff filed her Complaint in this Court on August 4, 2015. *See* Complaint, attached hereto as Exhibit 1. In her Complaint, Plaintiff alleged that the Defendants

> ...controlled the operation, planning, management, budget and quality control of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center. The authority exercised by Nursing Home Defendants over the nursing facility included, but was not limited to, control of marketing, human resources management, training, staffing, creation and implementation of all policy and procedure manuals used by the nursing facility, federal and state reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax and accounting control through fiscal policies established by Nursing Home Defendants.

Complaint, at paragraph 14. Specifically, Plaintiff plainly stated the duties owed to Helen Ray by the Defendants:

> Nursing Home Defendants owed a duty to Helen Ray to maintain their facility, including providing and maintaining medical equipment and supplies, and hiring, supervising and retaining nurses and other staff employees to meet the needs of residents, including Helen Ray, and are directly liable for the failure to exercise reasonable care in hiring, supervising, training and retaining sufficient numbers of qualified nurses and other staff employees and caregivers during the residency of Helen Ray. Said failures placed the residents of the facility, including Helen Ray, at risk of harm, and as a result, Nursing Home Defendants are directly liable for injuries suffered by Helen Ray as a result of these failures to exercise reasonable care.

Complaint at Paragraph 43. Plaintiff further alleged, with specificity, that Defendants as corporate entities owed Helen Ray certain duties to ensure the quality of her care:

> Nursing Home Defendants owed a duty to Helen Ray to have in place procedures and protocols that properly care for residents and to administer these policies through enforcement of any rules, regulations, by-laws or guidelines, which were adopted by Nursing Home Defendants to ensure smoothly run facilities and adequate resident care.

Complaint at Paragraph 44. These are allegations against the Defendants at large; they go beyond the local management of Mountain View Health Care Center and extend to the corporate entities that own, operate, manage and control the facility. Plaintiff's Notice of CR 30.02(6) Deposition, the document in question, is clearly relevant to Plaintiff's cause of action. The Notice of CR 30.02(6) Deposition of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center, attached hereto as Exhibit 2, seeks discovery *directly related* to these allegations.

**ARGUMENT**

Defendants object to topics 2 and 3, 12-30 and 34 of Plaintiff's CR 30.02(6) notice. In simple terms, Defendants seek to avoid testifying regarding the corporate governance of their facility, and their adherence to various regulations applicable to their facility contained within the Kentucky Administrative Regulations. Defendants characterize Plaintiff's efforts to prove her claims against them as a "fishing expedition." This supposition ignores Plaintiff's efforts to utilize the methods available to her under the Kentucky Rules of Civil Procedure to conduct discovery in an effort to prove her claims. CR 30.02(6) sets forth a party's right to such discovery as follows:

> A party may in his notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the

> organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which he will testify... The persons so designated shall testify as to matters known or reasonably available to the organization.

CR 30.02(6). Plaintiff must use these means, as pursuant to CR 43.01, she has the burden of proof. "The party holding the affirmative of an issue must produce the evidence to prove it." CR 43.01(1). Plaintiff complied with the rule in seeking a corporate representative to testify and "describe[d] with reasonable particularity the matters on which examination is requested."

As Defendants helpfully argued, "Pretrial discovery simplifies and clarifies the issues in a case; eliminates or significantly reduces the element of surprise; helps to achieve a balanced search for the truth, which in turn helps to ensure that trials are fair; and it encourages the settlement of cases." *LeFleur v. Shoney's, Inc.*, 83 S.W.2d 474, 478 (Ky. 2002). CR 26.02(1) further states that "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Examination of the CR 30.02(6) notice reveals that Plaintiff is merely seeking to achieve the purposes set forth in *LeFleur* and the Kentucky Rules of Civil Procedure in obtaining admissible evidence.

Defendants object to topic 2, which seeks "The existence of, name of, the intent of and the custodian of any **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action pertaining to or referencing the **PLAINTIFF** and/or by **YOU** to any named Defendant in this action referencing the **PLAINTIFF**." *See* Exhibit 2 at Paragraph 2. Plaintiff asks that the Defendants certify that they have provided all of the documents relating to Helen Ray, a rather simple request; in fact, a question that is asked in every civil deposition given by

any party in this Commonwealth: "Have you produced all relevant documents relating to my
client?" Defendants' objection to this request is absurd.

Defendants also object to topic 3: "The scope, nature and purpose in the **FACILITY** of
any and all Policy and Procedures in place during the residency of **PLAINTIFF** in the
**FACILITY**. (902 KAR 20:048 § 3(4) provides that the facility shall establish written policies
and procedures that govern all services provided by the facility." *See* Exhibit 2 at Paragraph 3.
Again, this is a topic relevant to the allegations contained in the Complaint. Plaintiff alleged in
her Complaint that Defendants owed Helen Ray a duty to develop and implement policies and
procedures as required by the Kentucky Administrative Regulations. Defendants cannot now
declare by fiat that the state regulations governing their operation of their facility are "irrelevant
and overly broad." Plaintiff is entitled to question the Defendants about their policies and
procedures; to state otherwise defies logic.

Defendants object that it is somehow unfair for Plaintiff to "attempt[ing] to bind
Defendant, through its corporate representative, to certain contentions and theories at this early
stage in the litigation." Defendants state that this course "prematurely attempts to bind Defendant
to testimony on an incredibly broad set of topics" and is "attempting to box Defendant in on the
elements of her claim before providing her required expert testimony as to what specific
breaches of the standard of care and damages she is claiming." This response seems to indicate
that the testimony given by Defendants is subject to change, depending upon the stage of the
litigation.

Plaintiff seeks *facts*. That is, after all, the purpose of conducting discovery. Explicitly,
what policies and procedures did Defendants have in place at their facility? Why were those
policies and procedures in place? Were they followed? These are not expert opinions concerning

the standard of care; they are basic, elemental facts relating to the way Defendants do business. Unfortunately for Defendants, Kentucky law does not designate that a CR 30.02(6) deposition must occur only after Plaintiff has produced CR 26 disclosures. CR 26.04 states that "methods of discovery may be used in any sequence." That may only be changed if the Court decides that the interests of justice require otherwise, and such is not the case here.

Defendants advanced other arguments in their motion that are, at best, a liberal attempt to apply well-settled discovery doctrine in inventive ways. Through rather impressive leaps of logic, Defendants are somehow convinced that Plaintiffs have constructed an elaborate scheme to uncover their "theories of the case **before** having to disclose her expert witnesses." Defendants believe that by attempting to conduct discovery regarding their operation of their facility, "Plaintiff seeks to bind Defendant to testimony on an incredibly broad set of topics at this early stage, to prematurely bind Defendant's expert to that testimony." Defendants engage in a lengthy explanation of "work product", how their CR 30.02(6) corporate representative's testimony apparently meets that definition, and how it should be protected. While thorough, Defendants' analysis is irrelevant. The United States Supreme Court explained the work product doctrine thusly:

> In performing his various duties, ... it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.

*Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). Defendants' testimony, under oath, does not fall within the United States Supreme Court's definition of work product. Seeking to discover facts, which is the purpose of a deposition, has no bearing on Defendants' counsel's thoughts and

impressions or theory of the case. Typically, legal strategies are developed in reaction to the facts; facts are not developed to fit the particular legal strategy Defendants' counsel seeks to employ. Defendants' arguments imply otherwise.

What Plaintiff *does* seek to do is discover how Defendants operated their facility; how they determined if they had appropriate staffing; if they properly trained their employees; if they properly addressed employee or resident complaints (if such complaints were made), if they complied with specifically enumerated state regulations, and other topics relevant to her claims against the Defendants. These are facts at issue in this litigation, not expert opinions or mental impressions of Defendants' counsel. Plaintiff is entitled to discover such facts; to suggest otherwise is antithetical to the interests of justice.

**CONCLUSION**

Plaintiff served upon Defendants a notice, pursuant to CR 30.02(6), to depose a corporate representative describing with reasonable particularity the matters on which examination is requested. These matters relate directly to the allegations set forth in her Complaint. The matters are relevant under the definition of KRE 401, meaning the notice seeks to adduce evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." As Plaintiff has the burden of proof, she must use the methods of discovery set forth in the Kentucky Rules of Civil Procedure to obtain that evidence. CR 30.02(6) depositions are one of those methods. Plaintiff does not seek Defendants' counsel's thoughts or mental impressions, their "theory of the case" or their expert testimony. Plaintiff seeks facts about how Defendants operated their facility. Nothing in the notice violates the Kentucky Rules of Civil Procedure. Therefore, Plaintiff respectfully requests this Court enter an Order overruling

Defendants' Motion to Quash, or in the Alternative, for Protective Order. Furthermore, Plaintiff requests this Court for entry of an Order compelling Defendants to designate one or more corporate representatives to testify to the matters designated in the CR 30.02(6) Notice and to provide dates for the deposition(s) of same within thirty (30) days of entry of said Order, at which time all of the requested documents shall be produced pursuant to the subpoena duces tecum.

*Respectfully submitted,*

**GARCIA, ARTIGLIERE & MEDBY**

Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main Street, Suite 108
Lexington, KY 40507
Telephone 502.584.3805
Facsimile 502.584.3811
***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

This is to certify the original copy of the foregoing was sent via first class, United States mail, postage prepaid to **Clerk, Pike County Circuit Court, P.O. Box 1002, Pikeville, Kentucky 41502**, and a true and correct copy of the foregoing mailed this 12th day of September, 2016 to the following:

Donald L. Miller, II, Esq.
J. Peter Cassidy, III
Matthew C. Cocanougher, Esq.
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
PH: 859.226.0057
Fax: 859.226.0059
***Counsel for Defendant***
***Kentucky Medical Investors, LLC (GA)***

***Counsel for Plaintiff***

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION ______
CIVIL ACTION NO. ________

JENNIFER BINGHAM, as Executrix
of the Estate of HELEN RAY, deceased,
and on behalf of the Wrongful Death
Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v. **COMPLAINT**

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA) DEFENDANTS
d/b/a MOUNTAIN VIEW HEALTH CARE CENTER
3450 Ridgewood Rd.
Atlanta, GA 30327

Serve: CT Corporation System
306 W. Main Street
Suite 512
Frankfort, KY 40601

KENTUCKY MEDICAL INVESTORS, LLC (GA)
3450 Ridgewood Rd.
Atlanta, GA 30327

Serve: CT Corporation System
306 W. Main Street
Suite 512
Frankfort, KY 40601

KENTUCKY MEDICAL INVESTORS, LLC
8325 Highway 60.
P.O. Box 249
Georgetown, TN 37336-0249

Serve: National Registered Agents, Inc.
306 W. Main Street
Suite 512
Frankfort, KY 40601

EXHIBIT
1

KENTUCKY MEDICAL INVESTORS, L.T.D.
3450 Ridgewood Rd.
Atlanta, GA 30327

      Serve:  CT Corporation System
             306 W. Main Street
             Suite 512
             Frankfort, KY 40601

SAK JR., LLC
200 Galleria Pkwy
Ste. 1800
Atlanta, GA 30339

      Serve:  CT Corporation System
             306 W. Main Street
             Suite 512
             Frankfort, KY 40601

SBK, LLC
3450 Ridgewood Rd.
Atlanta, GA 30327

      Serve:  CT Corporation System
             306 W. Main Street
             Suite 512
             Frankfort, KY 40601

LIFE CARE CENTERS OF AMERICA, INC.
3570 Keith Street, N.W.
Cleveland, TN 37311

      Serve:  CSC Lawyers Incorporating Service Company
             421 W. Main Street
             Frankfort, KY 40601

MISTY WARD, in her capacity as
Administrator of Mountain View Health Care Center
945 West Russell St.
Elkhorn City, KY 41522

      Serve:  Misty Ward
             945 West Russell St.
             Elkhorn City, KY 41522

JUDITH BRANHAM, in her capacity as
Administrator of Mountain View Health Care Center
945 West Russell St.
Elkhorn City, KY 41522

    Serve:  Judith Branham
            945 West Russell St.
            Elkhorn City, KY 41522

John Does 1 Through 5, Unknown Defendants

    COMES NOW the Plaintiff, Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, and on behalf of the Wrongful Death Beneficiaries of Helen Ray, deceased, and for this cause of action against Defendants, Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center; Kentucky Medical Investors, LLC (GA); Kentucky Medical Investors, LLC; Kentucky Medical Investors, LTD; SAK JR., LLC; SBK, LLC; Life Care Centers of America, Inc.; Misty Ward, in her capacity as Administrator of Mountain View Health Care Center; Judith Branham, in her capacity as Administrator of Mountain View Health Care Center, and Unknown Defendants, states as follows:

    1.    Jennifer Bingham is the Executrix of the Estate of Helen Ray, deceased, as appointed by the Order of Pike County District Court, Probate Division, Case No. 14-P-00683 (attached hereto as Exhibit A) and therefore brings this action on behalf of Helen Ray, deceased, pursuant to the Survival of Actions Statute (KRS 411.140), and on behalf of the wrongful death beneficiaries of Helen Ray pursuant to the Wrongful Death Statute (KRS 411.130). Additionally, Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, brings this action on behalf of Helen Ray, pursuant to the Resident's Rights Statute (KRS 216.515, KRS 216.520) and common law.

    2.    Upon information and belief, Helen Ray was admitted as a resident of Kentucky

Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center located at 945 West Russell Street, Elkhorn City, Pike County, Kentucky 41522 on or around July 16, 2008 and, excepting periods of hospitalization, remained a resident there until her death on June 19, 2014. At all relevant times referenced herein, Helen Ray was of unsound mind and remained of unsound mind until her death.

     3.    Defendant Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center is a Foreign Limited Liability Company with its principal office located at 3450 Ridgewood Rd., Atlanta, Fulton County, Georgia 30327 is authorized to do business in the Commonwealth of Kentucky. Upon information and belief, at times material this action, Defendant Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center owned, operated, managed, controlled, and /or provided services to Mountain View Health Care Center. Defendant Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center was, at times material to this action, the "licensee" of the facility. Under the laws and regulations promulgated and enforced by the Cabinet for Health and Family Services, as licensee of the facility, Defendant Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center was legally responsible for the facility and for ensuring compliance with all laws and regulations related to the operation of the facility. The causes of action made the basis of this suit arise out of such business conducted by said Defendant Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in the ownership, operation, management, control, licensing and/or services provided for the facility during the residency of Helen Ray. The registered agent for service of process of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center is CT Corporation System, 306 W. Main Street, Ste. 512, Frankfort, Franklin County, Kentucky 40601.

4. Defendant Kentucky Medical Investors, LLC (GA) is a Foreign Limited Liability Company with its principal office located at 3450 Ridgewood Rd., Atlanta, Fulton County, Georgia 30327. Upon information and belief, at times material to this action, Defendant Kentucky Medical Investors, LTD (GA) engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. At times material to this action, Defendant Kentucky Medical Investors, LTD (GA) owned, operated, managed, controlled, and/or provided services for nursing facilities, including Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in Elkhorn City, Pike County, Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant Kentucky Medical Investors, LTD (GA) in the ownership, operation, management, control and/or services provided for the facility during the residency of Helen Ray. The registered agent for service of process of Kentucky Medical Investors, LTD (GA) is CT Corporation System, 306 W. Main Street, Ste. 512, Frankfort, Franklin County, Kentucky 40601.

5. Defendant Kentucky Medical Investors, LLC is a Foreign Limited Liability Company with its principal office located at 8325 Hwy 60, Bradley County, Georgetown, TN. Upon information and belief, at times material to this action, Defendant Kentucky Medical Investors, LLC engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. At times material to this action, Defendant Kentucky Medical Investors, LLC owned, operated, managed, controlled, and/or provided services for nursing facilities, including Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in Elkhorn City, Pike County, Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant Kentucky Medical Investors, LLC in the ownership, operation, management, control and/or services provided for the facility

during the residency of Helen Ray. The registered agent for service of process of Kentucky Medical Investors, LLC is National Registered Agents, Inc., 306 W. Main Street, Ste. 512, Frankfort, Franklin County, Kentucky 40601.

6.    Defendant Kentucky Medical Investors, LTD is a Foreign Limited Liability Company with its principal office located at 3450 Ridgewood Rd., Atlanta, Fulton County, Georgia 30327. Upon information and belief, at times material to this action, Defendant Kentucky Medical Investors, LTD engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. At times material to this action, Defendant Kentucky Medical Investors, LTD owned, operated, managed, controlled, and/or provided services for nursing facilities, including Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in Elkhorn City, Pike County, Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant Kentucky Medical Investors, LTD in the ownership, operation, management, control and/or services provided for the facility during the residency of Helen Ray. The registered agent for service of process of Kentucky Medical Investors, LTD is CT Corporation System, 306 W. Main Street, Ste. 512, Frankfort, Franklin County, Kentucky 40601.

7.    Defendant SAK JR., LLC is a Foreign Limited Liability Company with its principal office located at 200 Galleria Pkwy, Ste. 1800, Atlanta, Fulton County, Georgia 30339. Upon information and belief, at times material to this action, Defendant SAK JR., LLC engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. At times material to this action, Defendant SAK JR., LLC owned, operated, managed, controlled, and/or provided services for nursing facilities, including Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in Elkhorn City, Pike County,

Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant SAK JR., LLC in the ownership, operation, management, control and/or services provided for the facility during the residency of Helen Ray. The registered agent for service of process of SAK JR., LLC is CT Corporation System, 306 W. Main Street, Ste. 512, Frankfort, Franklin County, Kentucky 40601.

8.    Defendant SBK, LLC is a Foreign Limited Liability Company with its principal office located at 3450 Ridgewood Rd., Atlanta, Fulton County, Georgia 30327. Upon information and belief, at times material to this action, Defendant SBK, LLC engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. At times material to this action, Defendant  SBK, LLC owned, operated, managed, controlled, and/or provided services for nursing facilities, including Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in Elkhorn City, Pike County, Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant SBK, LLC in the ownership, operation, management, control and/or services provided for the facility during the residency of Helen Ray. The registered agent for service of process of SBK, LLC is CT Corporation System, 306 W. Main Street, Ste. 512, Frankfort, Franklin County, Kentucky 40601.

9.    Defendant Life Care Centers of America, Inc. is a Foreign Corporation with its principal office located at 3570 Keith Street, Cleveland, Bradley County, TN 37312. Upon information and belief, at times material to this action, Defendant Life Care Centers of America, Inc. engaged in the business of for-profit custodial care of elderly and infirm nursing home residents in nursing facilities. At times material to this action, Defendant Life Care Centers of America, Inc. owned, operated, managed, controlled, and/or provided services for nursing

facilities, including Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center in Elkhorn City, Pike County, Kentucky. The causes of action made the basis of this suit arise out of such business conducted by said Defendant Life Care Centers of America, Inc. in the ownership, operation, management, control and/or services provided for the facility during the residency of Helen Ray. The registered agent for service of process of Life Care Centers of America, Inc. is CSC Lawyers Incorporating Service Company, 421 W. Main Street, Frankfort, Franklin County, Kentucky 40601.

10. Upon information and belief, Defendant Misty Ward was an Administrator of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center during the residency of Helen Ray. The causes of action that make the basis of this suit arise out of Defendant, Misty Ward's administration of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center during the residency of Helen Ray. Defendant Misty Ward may be served as indicated in the caption.

11. Upon information and belief, Defendant Judith Branham was an Administrator of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center during the residency of Helen Ray. The causes of action that make the basis of this suit arise out of Defendant, Judith Branham's administration of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center during the residency of Helen Ray. Defendant Judith Branham may be served as indicated in the caption.

12. John Does 1 through 5, Unknown Defendants are entities and/or persons, either providing care and services to Helen Ray, or directly or vicariously liable for the injuries of Helen Ray. Plaintiff is currently unable to identify these Unknown Defendants, despite diligent efforts, but may discover such identities upon further investigation. Said Defendants are named

insofar as their acts and/or omissions were negligent, tortious or otherwise wrongful with respect to care, treatment and services to Helen Ray during her residency at Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center.

13.    Whenever the term "Nursing Home Defendants" is utilized within this suit, such term collectively refers to and includes Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center; Kentucky Medical Investors, LTD (GA); Kentucky Medical Investors, LLC; Kentucky Medical Investors, LTD; SAK JR, LLC, SBK, LLC, and Life Care Centers of America, Inc.

14.    Nursing Home Defendants controlled the operation, planning, management, budget and quality control of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center. The authority exercised by Nursing Home Defendants over the nursing facility included, but was not limited to, control of marketing, human resources management, training, staffing, creation, and implementation of all policy and procedure manuals used by the nursing facility, federal and state reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax and accounting control through fiscal policies established by Nursing Home Defendants.

15.    Whenever the term "Administrator Defendants" is utilized within this suit, such term collectively refers to and includes Misty Ward and Judith Branham.

16.    Whenever the term "Defendants" is utilized within this suit, such term collectively refers to and includes all named Defendants in this lawsuit.

17.    Jurisdiction and venue are proper in this Court.

## CAUSES OF ACTION AGAINST NURSING HOME DEFENDANTS

## FACTUAL ALLEGATIONS

18. Plaintiff incorporates all of the allegations contained in Paragraphs 1-17 as if fully set forth herein.

19. Helen Ray began residing at Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center (sometimes referred to as "the facility") on approximately July 16, 2008, and, other than periods of hospitalization, remained a resident there until her death on June 19, 2014.

20. Upon information and belief, Helen Ray was looking to the Nursing Home Defendants for treatment of her total needs for custodial, nursing and medical care and not merely as the situs where others not associated with the facility would treat her.

21. At all relevant times mentioned herein, Nursing Home Defendants owned, operated, managed, controlled and/or provided services for Mountain View Health Care Center, either directly, or through a joint enterprise, partnership and/or the agency of each other and/or other diverse subalterns, subsidiaries, governing bodies, agents, servants or employees.

22. Nursing Home Defendants are directly or vicariously liable for any acts and omissions by any person or entity, controlled directly or indirectly, including any governing body, officer, partner, employee, ostensible or apparent agent, consultant or independent contractor, whether in-house or outside individuals, entities, agencies or pools.

23. Nursing Home Defendants failed to discharge their obligations of care to Helen Ray with a conscious disregard for her rights and safety. At all times mentioned herein, Nursing Home Defendants, through their corporate officers and administrators, had knowledge of, ratified and/or otherwise authorized all of the acts and omissions that caused the injuries suffered by

Helen Ray, as more fully set forth below. Nursing Home Defendants knew that this facility could not provide the minimum standard of care to the weak and vulnerable residents of Mountain View Health Care Center, including Helen Ray.

24. Nursing Home Defendants were on notice and aware of problems with resident care at Mountain View Health Care Center based on surveys conducted at the facility by the Cabinet for Health & Family Services prior to and during the residency of Helen Ray, yet failed to take appropriate action(s) to address and remedy said problems.

25. Due to the wrongful conduct of Nursing Home Defendants, Helen Ray suffered accelerated deterioration of her health and physical condition beyond that caused by the normal aging process, including , but not limited to, the following injuries:

a) Multiple falls with injuries;

b) Dehydration, weight loss and malnutrition;

c) Infections, including urinary tract infections and sepsis;

d) Pressure ulcers;

e) Bruises, blisters and burns of unknown origin;

f) Contractures; and

f) Death.

26. Helen Ray also suffered extreme pain and suffering, mental anguish, disability, disfigurement, hospitalizations, degradation, and unnecessary loss of personal dignity, all of which were caused by the wrongful conduct of Nursing Home Defendants as alleged herein.

**NEGLIGENCE**

27. Plaintiff re-alleges and incorporates all of the allegations contained in Paragraphs 1-26 as if fully set forth herein.

28. Nursing Home Defendants owed a non-delegable duty to Helen Ray to provide the custodial care, services and supervision that a reasonably careful nursing home would provide under similar circumstances.

29. Upon information and belief, Nursing Home Defendants knowingly developed and maintained staffing levels at the facility in disregard of patient acuity levels as well as the minimal time to perform the essential functions of providing care to Helen Ray.

30. Nursing Home Defendants negligently failed to deliver care, services and supervision, including, but not limited to, the following acts and omissions:

a) Failure by the members of the governing body of the facility to discharge their legal and lawful obligation by:

1) ensuring compliance with the rules and regulations designed to protect the health and safety of the residents, such as Helen Ray, as promulgated by the Cabinet for Health and Family Services, Division of Long Term Care;

2) ensuring compliance with the resident care policies for the facility; and

3) ensuring that appropriate corrective measures were implemented to correct problems concerning inadequate resident care.

b) Failure to develop, implement and follow policies to assist Helen Ray in attaining and maintaining the highest level of physical, mental and psychological well-being;

c) Failure to maintain/provide all records on Helen Ray in accordance with accepted professional standards and practices;

d) Failure to provide the minimum number of qualified personnel to meet the total needs of Helen Ray;

e) Failure to provide adequate nursing staff and other personnel that was properly qualified and trained;

f) Failure to ensure that Helen Ray received adequate and proper care;

g) Failure to protect the safety of Helen Ray;

h)    Failure adequately, timely and appropriately educate and inform caregivers at the facility of the needs, level of assistance, and prescribed care and treatment for Helen Ray;

i)    Failure to increase the number of personnel at the facility to ensure that Helen Ray received timely and appropriate custodial care, including, but not limited to, supervision;

j)    Failure to have in place adequate guidelines, and policies and procedures of the facility and to administer those policies through enforcement of any rules, regulations, by-laws or guidelines;

k)    Failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care at the facility;

l)    Failure to provide a safe environment for care, treatment and recovery, and to exercise ordinary care and attention for the safety of Helen Ray in proportion to her particular physical and mental ailments, known or discoverable by the exercise of reasonable skill and diligence;

m)    Failure to take all necessary and reasonable custodial measures to prevent the onset and progression of pressure sores during Helen Ray's residency; and

n)    Failure to inform the physician and family of significant changes in condition.

31.    A reasonably careful nursing facility would not have failed to provide the care listed above. It was foreseeable that these breaches of ordinary care would result in serious injuries to Helen Ray. With regard to each of the foregoing acts of negligence, Nursing Home Defendants acted with oppression, fraud, malice, or were grossly negligent by acting with wanton or reckless disregard for the health and safety of Helen Ray.

32.    Nursing Home Defendants further breached their duty of care to Helen Ray by violating certain laws and regulations in force in the Commonwealth of Kentucky at the time of the occurrences discussed herein including, but not limited to, those detailed below. These violations by the Nursing Home Defendants are further evidence of their negligence and include, but are not limited to, violation(s) of the following:

a)  Violation(s) of KRS  209.005 *et seq.* and the regulations promulgated thereunder, by abuse, neglect and/or exploitation of Helen Ray;

b)  Violation(s) of KRS 508.090 *et seq.*, criminal abuse, by committing intentional, wanton or reckless abuse of Helen Ray, who was physically helpless or mentally helpless or permitting Helen Ray, a person of whom Nursing Home Defendants had actual custody, to be abused. Such abuse caused serious physical injury, placed Helen Ray in a situation that might cause her serious physical injury, and/or caused torture, cruel confinement or cruel punishment of Helen. Ray;

c)  Violation(s) of KRS 530.080 *et seq.*, endangering the welfare of an incompetent person, by knowingly acting in a manner which resulted in an injury to the physical and/or mental welfare of Helen Ray, who was unable to care for herself because of her illness;

d)  Violation(s) of KRS 506.080, criminal facilitation of criminal act(s), by acting with knowledge that another person or entity was committing one or more of the foregoing criminal acts or intending to commit one or more the foregoing criminal acts, and engaged in conduct which knowingly provided another person or entity the means or opportunity for the commission of such criminal act(s) and which in fact aided another person or entity to commit the criminal act(s); and/or

e)  Violation(s) of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services, pursuant to provisions of KRS Chapter 216 and the regulations promulgated thereunder, as well as the applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII or XIX of the Social Security Act.

33.    As a direct and proximate result of such grossly negligent, wanton or reckless conduct, Helen Ray suffered the injuries described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Nursing Home Defendants including, but not limited to, medical expenses, extreme pain and suffering, mental anguish, disability, disfigurement, hospitalization, unnecessary loss of personal dignity, and death, in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

**MEDICAL NEGLIGENCE**

34. Plaintiff re-alleges and incorporates all of the allegations contained in Paragraphs 1-33 as if fully set forth herein.

35. Nursing Home Defendants had a duty to provide the standard of professional medical care and services of a reasonably competent nursing facility acting under the same and similar circumstances.

36. Nursing Home Defendants failed to meet applicable standards of medical care. The medical negligence or malpractice of Nursing Home Defendants included, but was not limited to, the following acts and omissions:

a) The overall failure to ensure that Helen Ray received the following:

1) timely and accurate care assessments;

2) prescribed treatment, medication and diet;

3) necessary supervision; and

4) timely nursing and medical intervention due to significant changes in condition.

b) Failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants and medication aides to meet the total needs of Helen Ray throughout her residency and provide a safe environment;

c) Failure to provide and implement an adequate nursing care plan based on the needs of Helen Ray;

d) Failure to provide care, treatment, diet, monitoring, assistance and medication in accordance with physician's orders;

e) Failure to assess the risk and prevent, treat or heal the development or skin issues including bruising, blisters and burns;

f) Failure to ensure Helen Ray was not deprived of the services necessary to maintain her health and welfare; and

g) Failure to inform the physician and family of significant changes in condition.

37. It was foreseeable that the breaches of care listed above would result in serious injuries Helen Ray. A reasonably competent nursing facility acting under the same or similar circumstances would not have failed to provide the care listed above.

38. With regard to each of the foregoing acts of professional or medical negligence, Nursing Home Defendants acted with oppression, fraud, malice, or were grossly negligent by acting with wanton or reckless disregard for the health and safety of Helen Ray.

39. As a direct and proximate result of such negligence, oppression, fraud, malice, or gross negligence, Helen Ray suffered the injuries described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Nursing Home Defendants including, but not limited to, medical expenses, extreme pain and suffering, mental anguish, disfigurement, hospitalizations, degradation, and unnecessary loss of personal dignity, in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court plus costs and all other relief to which Plaintiff is entitled by law.

**CORPORATE NEGLIGENCE**

40. Plaintiff re-alleges and incorporates all of the allegations contained in Paragraphs 1 – 39 as if fully set forth herein.

41. Upon information and belief, Helen Ray was looking to Nursing Home Defendants' facility for treatment of her physical ailments and not merely as the situs where others not associated with the facility would treat her for her problems. There is a presumption that the treatment Helen Ray received was being rendered through employees of Nursing Home Defendants and that any negligence associated with that treatment would render Nursing Home Defendants responsible. Nursing Home Defendants, or persons or entities under their control, or

to the extent Nursing Home Defendants were vicariously liable through the ostensible or apparent agency of others, owed a non-delegable duty to residents, including Helen Ray, to use the degree and skill of care which is expected of reasonably competent medical practitioners acting in the same or similar circumstances.

42.    Nursing Home Defendants owed a non-delegable duty to assist Helen Ray in attaining and maintaining the highest level of physical, mental and psychological well-being.

43.    Nursing Home Defendants owed a duty to Helen Ray to maintain their facility, including providing and maintaining medical equipment and supplies, and hiring, supervising and retaining nurses and other staff employees to meets the needs of residents, including Helen Ray, and are directly liable for the failure to exercise reasonable care in hiring, supervising, training and retaining sufficient numbers of qualified nurses and other staff employees and caregivers during the residency of Helen Ray. Said failures placed the residents of the facility, including Helen Ray, at risk of harm, and a result, Nursing Home Defendants are directly liable for injuries suffered by Helen Ray as a result of these failures to exercise reasonable care.

44.    Nursing Home Defendants owed a duty to Helen Ray to have in place procedures and protocols that properly care for residents and to administer these policies through enforcement of any rules, regulations, by-laws or guidelines, which were adopted by Nursing Home Defendants to ensure smoothly run facilities and adequate resident care.

45.    Nursing Home Defendants owed a duty to Helen Ray to provide a safe environment, treatment and recovery, and to exercise ordinary care and attention for the safety of residents in proportion to the physical and mental ailments of each particular resident, known or discoverable by the exercise of reasonable skill and diligence. The duty of reasonable care and attention extended to safeguarding Helen Ray from danger due to her inability to care for herself.

Nursing Home Defendants had a duty to protect Helen Ray from any danger which the surroundings would indicate might befall her in view of any peculiar trait exhibited by her or which her condition or aberration would suggest as likely to happen.

46. With regard to each of the foregoing acts of negligence, Nursing Home Defendants acted with oppression, fraud, malice, or were grossly negligent by acting with wanton or reckless disregard for the health and safety of Helen Ray.

47. As a direct and proximate result of such negligence, oppression, fraud, malice, or gross negligence, Helen Ray suffered the injuries described herein. Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Nursing Home Defendants including, but not limited to, medical expenses, extreme pain and suffering, mental anguish, degradation, unnecessary loss of personal dignity, and death in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of the Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

## VIOLATIONS OF LONG TERM CARE RESIDENT'S RIGHTS

48. Plaintiff incorporates all of the allegations contained in Paragraphs 1 -47 as if fully set forth herein.

49. Nursing Home Defendants violated statutory duties owed to Helen Ray as a resident of a long term care facility, KRS 216.510 *et seq*. These statutory duties were non-delegable.

50. The violations of the resident's rights of Helen Ray include, but are not limited to, the following:

a) Violation of the right to be free from mental and physical abuse and neglect;

b)   Violation of the right to be treated with consideration, respect, and full recognition of her dignity and individuality, including privacy in treatment and in care for her personal needs;

c)   Violation of the right to have a responsible party or family member or her guardian to be informed of the resident's medical condition unless medically contraindicated and documented by a physician in the resident's medical record;

d)   Violation of the right to have a responsible party or family member or her guardian notified immediately of any accident, sudden illness, disease, unexplained absence, or anything unusual involving the resident;

e)   Violation of the right to have an adequate and appropriate resident care plan developed, implemented and updated to meet her needs; and

f)   Violation of the statutory standards and requirements governing licensing and operation of long-term care facilities as set forth by the Cabinet for Health and Family Services, pursuant to provisions of KRS Chapter 216 and the regulations promulgated there under.

51.   As a result of the aforementioned violations of the Resident's Rights Statutes by Nursing Home Defendants, pursuant to KRS 216.515(26), Plaintiff is entitled to recover actual damages in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, as well as costs and attorney's fees.

52.   With regard to the aforementioned violations of the Resident's Rights Act, Nursing Home Defendants acted with oppression, fraud, malice, or were grossly negligent by acting with wanton and reckless disregard for the rights of Helen Ray and, pursuant to KRS 216.515(26), Plaintiff is entitled to punitive damages from Nursing Home Defendants in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, as well as costs and attorney's fees.

## CAUSE OF ACTION AGAINST ADMINISTRATOR DEFENDANTS

## FACTUAL ALLEGATIONS

53. Plaintiff incorporates all of the allegations contained in Paragraph 1-52 as if fully set forth herein.

54. Upon information and belief, Misty Ward and Judith Branham were Administrators of Mountain View Health Care Center during Helen Ray's residency there.

55. As nursing home administrators licensed by the Commonwealth of Kentucky, Administrator Defendants owed ordinary duties of care to Helen Ray, as well as professional duties and statutory duties owed to residents by licensed, nursing home administrators in Kentucky, pursuant to the Nursing Home Administrators Licensure Act of 1970, codified as KRS sections 216A.010 *et seq.*

56. As the holder(s) of the nursing home administrator's license, Administrator Defendants were legally and individually responsible for the operation of the facility and the welfare of its residents pursuant to Chapter 216A of the Kentucky Revised Statutes and Title 201, Chapter 6 of the Kentucky Administrative Regulations.

57. Administrator Defendants were also responsible for the total management of the facility pursuant to federal law.

58. Administrator Defendants' management responsibilities included ensuring that the facility operated and provided services in compliance with all applicable federal, state, and local laws, regulations, and codes, and within accepted professional standards and principles.

59. Administrator Defendants were responsible for ensuring that the facility complied with state and federal regulations related to nursing facilities. Administrator Defendants had duties to administrate the facility in a manner that enabled it to use resources effectively and

efficiently to attain or maintain the highest practicable, physical, mental and psychological well-being of each resident. The nursing facility, under the leadership of its administrators, is also required to operate and provide services in compliance with all applicable federal, state and local laws, regulations and codes and with accepted professional standards and principles that apply to professionals providing services in such a facility. Administrator Defendants breached their duties of care to Helen Ray by failing to meet these requirements.

**NEGLIGENCE**

60. Plaintiff incorporates all of the allegations contained in Paragraph 1-59 as if fully set forth herein.

61. As the administrators of the facility, Administrator Defendants owed a duty to the residents of Mountain View Health Care Center, including Helen Ray, to provide services as a reasonable administrator within accepted standards for nursing home administrators.

62. Administrator Defendants breached their duties owed to the residents of Mountain View Health Care Center, including Helen Ray, during their tenure as administrators by failing to supervise nurses and nurses' aides and failing to hire sufficient nurses and nurses' aides and, as such, the nurses and nurses' aides were unable to provide Helen Ray the care she required. The negligence of Administrator Defendants includes, but is not limited to, the following acts and omissions:

a) Failure to monitor or provide the number of qualified nursing personnel at the facility to ensure that Helen Ray:

1) received timely and accurate care assessments;

2) received prescribed treatment, medication, and diet;

3) received timely custodial, nursing and medical intervention due to a significant change in condition; and

4) was protected from injuries by the correct use of ordered and reasonable safety measures.

b) Failure to adequately screen, evaluate, and test for competence in selecting personnel to work at the facility;

c) Failure to ensure that Helen Ray was provided with basic and necessary care and supervision;

d) Failure to ensure that Helen Ray received care, treatment, and medication as prescribed or in accordance with physician's orders;

e) Failure to ensure that Helen Ray attained and maintained her highest level of physical, mental, and psychosocial well-being;

f) Failure to ensure that Helen Ray was treated with the dignity and respect that all nursing home residents are entitled to receive;

g) Failure to provide a safe environment for Helen Ray;

h) Failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care at the facility;

i) Failure to discipline or terminate employees at the facility assigned to Helen Ray that were known to be careless, incompetent, and unwilling to comply with the policy and procedures of the facility and the rules and regulations promulgated by the Cabinet for Health and Family Services;

j) Failure to adopt adequate guidelines, policies, and procedures for:

1) investigating the relevant facts, underlying deficiencies, or licensure violations or penalties found to exist at the facility by the Cabinet for Health and Family Services or any other authority;

2) determining the cause of any such deficiencies, violations, or penalties;

3) establishing the method and means for correcting deficiencies or licensure violations or penalties found to exist at the facility;

4) determining whether the facility had sufficient numbers of personnel to meet the total needs of Helen Ray ; and,

5) documenting, maintaining files, investigating and responding to any complaint regarding the quality of resident care, or misconduct by employees at the facility, regardless of whether such complaint derived

from a resident of said facility, an employee of the facility, or any interested person.

k) Failure to maintain all records on Helen Ray in accordance with accepted professional standards and practice that were complete, accurately documented, readily accessible, and systematically organized with respect to her diagnosis, treatment, and appropriate care plans of care and treatment.

l) Failure to inform the physician and family of significant changes in condition.

m) Failure to increase the number of personnel at the facility to ensure that Helen Ray received timely and appropriate custodial care, including, but not limited to, supervision.

n) Failure to ensure that staff provided proper supervision, treatment, assessment and monitoring of Helen Ray in order to prevent falls with injuries, infections, skin issues and death

63. A reasonably careful nursing home administrator would have foreseen that the failure to provide the ordinary care listed above would result in serious injuries to Helen Ray. Each of the foregoing acts of negligence on the part of Administrator Defendants were accompanied by such wanton or reckless disregard for the health and safety of Helen Ray as to constitute gross negligence.

64. Additionally, Administrator Defendants failed to operate, manage or administer Mountain View Health Care Center in compliance with federal, state, and local laws, regulations, and codes intended to protect nursing home residents, including, but not limited to:

a) Failure to ensure compliance with rules and regulations of the Cabinet for Health and Family Services, pursuant to Chapters 216, 216B and 13A of the Kentucky Revised Statutes and the administrative regulations promulgated there under, and the federal minimum standards imposed by the United States Department of Health and Human Services, 42 C.F.R. sections 405.301 *et seq*.;

b) Failure to ensure compliance with laws and regulations promulgated by the Cabinet for Health and Family Services to provide the minimum number of staff necessary to assist Helen Ray with her needs;

c) Failure to ensure compliance with law and regulations of the Board of Licensure for Nursing Home Administrators pursuant to the Nursing Home Administrators Licensure Act of 1970, Kentucky Revised Statutes sections 216A.010 *et seq.*;

d) Failure to provide the necessary care and services to attain or maintain the highest practicable, physical, mental, and psychosocial well-being of Helen Ray , and in accordance with the comprehensive assessment and plan of care created at the facility;

e) Failure to provide sufficient nursing staff and nursing personnel to provide adequate and appropriate nursing care to Helen Ray in accordance with the resident care plan generated at the facility;

f) Failure to administer the facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental and psychosocial well-being of Helen Ray .

g) Failure to ensure a nursing care plan based on Helen Ray 's problems and needs was established which contained measurable objectives and time tables to meet her medical, nursing, mental, and psychosocial needs as identified in her comprehensive assessment when Helen Ray's needs changed; and

h) Failure to notify Helen Ray 's family and physician of a need to alter her treatment significantly.

65. Helen Ray was member of a class intended to be protected by the above laws and regulations. The injuries alleged in Paragraph 25 resulted from events the laws and regulations were designed to prevent.

66. It was foreseeable that these breaches of statutory duties would result in serious injuries to Helen Ray. Each of the foregoing acts of negligence on the part of Administrator Defendants were accompanied by such wanton or reckless disregard for the health and safety of Helen Ray as to constitute gross negligence.

67. As a direct and proximate result of such negligent, grossly negligent, wanton, or reckless conduct, Helen Ray suffered the injuries described herein, and Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Administrator Defendants including, but not limited to, medical expenses, extreme pain and suffering, mental anguish,

disfigurement, hospitalizations, degradation, and unnecessary loss of personal dignity, in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court and exceeding that required for federal court jurisdiction in diversity of citizenship cases, plus costs and all other relief to which Plaintiff is entitled by law.

## CAUSES OF ACTION AGAINST ALL DEFENDANTS WRONGFUL DEATH

68. Plaintiff incorporates all of the allegations contained in Paragraphs 1-67.

69. As a direct and proximate result of the previously alleged conduct, all of which was grossly negligent, wanton or reckless, the Defendants caused the death of Helen Ray by their wrongful conduct.

70. Helen Ray suffered personal injuries, including excruciating pain and suffering, mental anguish, and emotional distress. The pain, disfigurement and loss of dignity suffered by Helen Ray caused her family to suffer more than normal grief upon her death.

71. As a direct and proximate result of such wrongful death suffered by Helen Ray, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against the Defendants including, but not limited to, medical expenses, funeral expenses and other related costs, pain and suffering, the grief suffered by statutory beneficiaries, mental anguish, disability and loss of life in an amount to be determined by the jury, but in excess of the minimum jurisdictional limits of this Court, as well as cost and attorney's fees, plus costs and all other relief to which Plaintiff is entitled by law.

## DAMAGES

72. Plaintiff incorporates all of the allegations contained in Paragraphs 1-69 as if fully set forth herein.

73. As a direct and proximate result of the negligence of all Defendants as set out above, Helen Ray suffered injuries including, but not limited to, those listed herein. As a result, Helen Ray incurred significant medical expenses, and suffered embarrassment and, physical impairment, and incurred funeral expenses.

74. Plaintiff seeks punitive and compensatory damages against all Defendants in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, and on behalf of the Wrongful Death Beneficiaries of Helen Ray, deceased, prays for judgment against Defendants, Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center; Kentucky Medical Investors, LTD (GA); Kentucky Medical Investors, LLC; Kentucky Medical Investors, LTD; SAK JR., LLC; SBK, LLC; Life Care Centers of America, Inc.; Misty Ward, in her capacity as Administrator of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center; Judith Branham, in her capacity as Administrator of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center, and Unknown Defendants; in an amount to be determined from the evidence, the costs herein expended, and all other relief to which Plaintiff is entitled, including TRIAL BY JURY.

*Respectfully Submitted,*

**GARCIA, ARTIGLIERE & MEDBY**

M. Brandon Faulkner
220 West Main Street, Suite 2250
Louisville, Kentucky 40202
Telephone:(502) 584-3805
Facsimile:(502) 584-3811
***Attorneys for Plaintiff***

FILED
ANNA FINSON SPEARS
AUG 01 2016
PIKE CIRCUIT/DISTRICT COURT
BY
D.C.

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION TWO
CIVIL ACTION NO. 15-CI-778

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFF

v. **NOTICE OF CR 30.02(6) DEPOSITION OF KENTUCKY MEDICAL INVESTORS, LLC (GA) D/B/A MOUNTAIN VIEW HEALTH CARE CENTER**

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER, et al. DEFENDANTS

*** *** *** ***

Please take notice that pursuant to Kentucky Rule of Civil Procedure 30.02(6) and for all purposes provided by the Kentucky Rules of Civil Procedure on **August 16, 2016** at the **office of Diddle & Pack, PLLC located at 137 Pike Street #1, Pikeville, KY 41501 beginning at 9:00 a.m. EST**, Plaintiff, by Counsel, will take the deposition of **Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center**. Pursuant to CR 30.02(6), **Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center** is directed to "designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which he will testify" on each of the topics of inquiry detailed below.

1. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** within the care, custody and/or control of the deponent which pertain, refer to and/or reference, in whatsoever manner, the **PLAINTIFF** (For this inquiry and all subsequent inquiries **PLAINTIFF** shall refer to **Helen Ray**. The terms **"DOCUMENT(S)"** and/or **"DOCUMENTATION"**, as used in this and all subsequent inquiries shall mean, includes all written, graphic or otherwise recorded matter however produced or reproduced, including the

EXHIBIT
tabbles
2

originals (or any copies when originals are not available) and non-identical copies (where different from the original because notes were made on such copies or because said copies may have been sent to different individuals than originals, or for any other reason) and preliminary or final drafts of writings, records, and recordings of every kind and description, whether inscribed by hand or by mechanical, electronic, microfilm, photographic or other means, as well as phonic (such as tape recordings) or visual reproductions of all statements, conversations or events and including, without limitation, correspondence, teletype messages, notes, reports, compilations, schedules, studies, tabulations, tallies, maps, charts, diagrams, drawings, plans, pictures, computer runs, advertising and promotional material, press releases, minutes and records of any memoranda of all press releases, minutes and records of any memoranda of all types. inter-office and intra-office communications, notes of conversations, vouchers, financial calculations and statements, working papers, statistical analyses, invoices, purchase orders, expense account records, stenographers, notebooks, desk calendars, appointment books, diaries, manuals, pamphlets, brochures, escrow instructions, contracts, deeds, agreements, title reports, listings, authorizations, and any abstracts, summaries and analyses of the above, and all other recorded matter of every nature and kind.) (902 KAR 20:300 § 3(2)(b) provides that the resident shall have the right to inspect and purchase photocopies of all records pertaining to the resident, upon written request and forty-eight (48) hours notice to the facility.);

2. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action pertaining to or referencing the **PLAINTIFF** and/or by **YOU** to any named Defendant in this action referencing the **PLAINTIFF**. (For purposes of these inquiries, **YOU** and **YOUR** refers individually and collectively to the defendant to whom this request is addressed and all persons acting or purporting to act on the behalf of said defendant.) (902 KAR 20:300 § 3(2)(b) provides that the resident shall have the right to inspect and purchase photocopies of all records pertaining to the resident, upon written request and forty-eight (48) hours notice to the facility.);

3. The scope, nature and purpose in the **FACILITY** of any and all Policy and Procedures in place during the residency of **PLAINTIFF** in the **FACILITY**. (902 KAR 20:048 § 3(4) provides that the facility shall establish written policies and procedures that govern all services provided by the facility. The written policies shall include: (a) Patient care and services to include physician, nursing, pharmaceutical (including medication stop orders policy), and residential services. (b) Adult and child protection. The facility shall have written policies which assure the reporting of cases of abuse, neglect or exploitation of adults and children pursuant to KRS Chapters 209 and 620. (c) Use of restraints. The facility shall have a written policy that addresses the use of restraints and a mechanism for monitoring and controlling their use. (d) Missing patient procedures. The facility shall [have] a written procedure to specify in a step-by-step manner the actions which shall be taken by staff when a patient is determined to be lost, unaccounted for or on other unauthorized absence.);

4. The intake process utilized by the **FACILITY** to determine the needs of an incoming resident and the purpose for same in effect upon the date of admission of the **PLAINTIFF** as a resident of the **FACILITY**. (902 KAR § 7 provides that [t]he facility shall conduct initially and periodically a comprehensive, accurate, standardized, reproducible assessment of each resident's functional capacity...(e) [t]he results of [which] are used to develop, review, and revise the resident's comprehensive plan of care. under subsection (4) of this section.);

5. The process, intent and reason for the creation of **FACILITY** Care Plans and modifications thereto as to the **PLAINTIFF** and **FACILITY** residents in general during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY**. (902 KAR § 7(4) provides that (a) [t]he facility shall develop a comprehensive care plan for each resident that includes measurable objectives and timetables to meet a resident's medical, nursing and psychosocial

needs that are identified in the comprehensive assessment [that is]...3. periodically reviewed and revised by a team of qualified persons after each assessment.);

6. The **IDENTITY** of all persons who the assessed the fall risk potential of the **PLAINTIFF** during the time period of **PLAINTIFF'S RESIDENCY** in the **FACILITY**, as well as the name of and custodian of all **DOCUMENTS** which memorialize the effort;

7. The **FACILITY** definition of the term "fall" during the during the time frame during which **PLAINTIFF** was a resident of **FACILITY** as well as the existence of, name of, content of, intent of and custodian of all **DOCUMENTS** which reflect said definition;

8. When and how the deponent contends that the **PLAINTIFF** suffered each fall in the **FACILITY**, as well as the **IDENTITY** of all persons who the **FACILITY** contends witnessed any such fall, or any witness who the **FACILITY** contends possess any information as to any such fall; as well as the **IDENTITY** of all persons who the **FACILITY** contends assessed the physical and mental condition of the **PLAINTIFF** after any such fall as well as the findings of the assessment(s) and the existence of, name of, the intent of and the custodian of any **DOCUMENTS** which memorialize said fall(s) and/or assessment(s).

9. The **IDENTITY** of all persons who prepared, modified, updated, changed and/or altered any **FACILITY** Care Plan or Plan of Care of the **PLAINTIFF** as well as the reasons for each modification, update, change or alteration;

10. The **IDENTITY** of all persons who on behalf the **FACILITY** contacted the physician of the **PLAINTIFF** after any fall in the **FACILITY**, as well as the date and time of, and modality by which the communication was made and the **IDENTITY** of the person who contacted the physician and content of any such communication. (902 KAR 20:300 § 2(i)(1) provides that [e]xcept in a medical emergency or when a resident is incompetent, a facility shall consult with the resident immediately and notify the resident's physician, and if known, the resident's legal representative or interested family member within twenty-four (24) hours when there is: a. An accident involving the resident which results in injury; b. A significant change in the resident's physical, mental, or psychosocial status; c. A need to alter treatment significantly; or d. A decision to transfer or discharge the resident from the facility as specified in Section 4(1) of this administrative regulation.)

11. The **IDENTITY** of all persons who on behalf the **FACILITY** contacted any **LEGAL REPRESENTATIVE OR INTERESTED FAMILY MEMBER** of the **PLAINTIFF** after any fall suffered by the **PLAINTIFF** in the **FACILITY**, as well as the date and time of the notification and modality by which the communication was made and the name of the person contacted and content of any such communication. ("**LEGAL REPRESENTATIVE OR INTERESTED FAMILY MEMBER**" shall mean "legal representative or interested family member" as that term is defined/referenced in 902 KAR 20:300 § 2(i)(1). 902 KAR 20:300 § 2(i)(1) provides that [e]xcept in a medical emergency or when a resident is incompetent, a facility shall consult with the resident immediately and notify the resident's physician, and if known, the resident's legal representative or interested family member within twenty-four (24) hours when there is: a. An accident involving the resident which results in injury; b. A significant change in the resident's physical, mental, or psychosocial status; c. A need to

alter treatment significantly; or d. A decision to transfer or discharge the resident from the facility as specified in Section 4(1) of this administrative regulation.)

12. The date of creation, circumstances of events leading to the creation, existence of, **IDENTITY** of the author and all persons whose names are listed upon, and the content of all **FACILITY** Incident Reports and/or Unusual Occurrence reports relating to and/or referencing the **PLAINTIFF**. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report.);

13. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** that confirm that the **FACILITY** had sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident and to meet the total needs each resident and to the **PLAINTIFF** during the time the **PLAINTIFF** was a resident of the **FACILITY** in accordance with the requirements of 902 KAR 20:300 § 9 and/or 902 KAR 20:048 § 3, 4. (902 KAR 20:300 § 9 provides [t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 § 3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 § 4(2)(a) provides [t]here shall be twenty (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receive proper care to prevent decubiti and shall be kept comfortable, clean, and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect.);

14. The mechanisms utilized for determining and recording levels of staff in the **FACILITY** and the **IDENTITY** all person(s) responsible for same, as well as the role staffing plays in the provision of care to residents of the **FACILITY** during the time frame of December 5, 2009 to December 11, 2009; January 3, 2010 to January 9, 2010, July 12, 2011 to July 18, 2011, July 28, 2013 to August 3, 2013; September 13, 2013 to September 19, 2013; and October 6, 2013 to October 12, 2013. (902 KAR 20:300 § 9 provides [t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 § 3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 § 4(2)(a) provides [t]here shall be twenty (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be

available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receive proper care to prevent decubiti and shall be kept comfortable, clean, and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect.);

15. The existence of, name of, intent of and custodian of all **DOCUMENTS** utilized by the deponent during the time frame during which **PLAINTIFF** was a resident of the **FACILITY** to determine the ratio of **NURSING HOURS** per patient day. (902 KAR 20:300 § 9 provides [t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 § 3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 § 4(2)(a) provides [t]here shall be twenty (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receive proper care to prevent decubiti and shall be kept comfortable, clean, and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect.);

16. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action and/or by **YOU** to any named Defendant in this action referencing the staffing levels of the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY**, as well as the **IDENTITY** of all persons who authored and/or received said **DOCUMENT(S)**;

17. The occurrence of, intent of and utilization by the deponent of any **FACILITY** "resident" and/or "family" council meeting which took place during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior as well as the existence of, name of, the intent of and the custodian of any **DOCUMENT** which memorialize and/or reference such meetings;

18. The occurrence of, intent of and utilization by the deponent of any employee "exit interviews" which reflect **FACILITY** operations during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior and as to any **DOCUMENT** reflecting the effort, the name of, content of and identity and location of the custodian of, said **DOCUMENT(S)**;

19. The utilization of, intent of and form of any "resident satisfaction surveys" and/or "family satisfaction surveys" and/or "employee satisfaction surveys" relating to **FACILITY** operations during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior, and the existence of, name of and name and location of the custodian of, any **DOCUMENT** reflecting the effort;

20. The occurrence of, intent of and utilization of by the deponent any "hotline" or "grievance procedure" which reflect **FACILITY** operations during any portion of the time period of during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior and as to any **DOCUMENT** reflecting the effort, the existence of, name of, content of

and identity and location of the custodian of said **DOCUMENT(S)**;

21. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** that the **FACILITY** utilized during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY** to ensure that its nursing service personnel were employed ...with the qualifications ...to provide the necessary nursing services for each resident of the **FACILITY** during the time the **PLAINTIFF** was a resident of the **FACILITY.** (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number.);

22. The existence of, name of, the intent of and the custodian of, any **DOCUMENTS** which the deponent relied upon during the time frame during which **PLAINTIFF** was a resident of **FACILITY** to ensure that any **FACILITY** employee who provided any services to the **PLAINTIFF** on behalf of the **FACILITY** were fit to perform their job duties. (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number.);

23. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** which evidence **YOUR** "in-service training and ongoing education" of **FACILITY** employees in accordance with the requirements of 902 KAR 20:048 § 3(10)(b)during the residency of the **PLAINTIFF** in the **FACILITY**. (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number. The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

24. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action and/or by **YOU** to any named Defendant in this action referencing the operating budget and/or financial performance of the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior as well as the **IDENTITY** of all persons who authored and/or received said **DOCUMENT(S)**;

25. The manner by which, and amount of any, consideration was paid by the **FACILITY** to any defendant named herein for services performed during the residency of the **PLAINTIFF** in the **FACILITY**;

26. The name, location, terms, scope, and content of any agreement, administrative services agreement and/or consulting agreement between the **FACILITY** and any named defendant herein relating to management, administrative and/or consulting services provided to the **FACILITY** during the residency of the **PLAINTIFF** in the **FACILITY** in accordance with the requirements of 902 KAR 20:048 § 3(3). (902 KAR 20:048 § 3(3)(b) provides the facility shall require and maintain written recommendations or comments from consultants regarding the program and its development on a per visit basis.);

27. The scope of job responsibilities for any and all **FACILITY** employees, including but not limited to, the categories set forth below during the time which **PLAINTIFF** was a resident of **FACILITY** in accordance with the requirements of 902 KAR 20:048 § 3. (902 KAR 20:048 § 3(10)(a) provides written job descriptions shall be developed for each category of

personnel, to include qualifications. lines of authority and specific job assignments.):

- Administrator;
- Director of Nursing;
- Admissions Coordinator;
- Business Office Manager;
- Director of Social Services;
- Director of Staff Development;
- Director of Activities;
- Director of Dietary Services;
- Minimum Data Set Coordinator;
- Case Managers;
- Charge Nurses;
- Registered Nurses;
- Licensed Vocational Nurses;
- Certified Nursing Assistants;
- Restorative Nurse's Aides;
- Physical Therapists;
- Occupational Therapists;
- Speech Therapists

28. The **FACILITY** policies and procedures relating to, as well as any effort to, adhere to applicable rules laws and regulations effecting the operations of the **FACILITY** during the residency of the **PLAINTIFF** in the **FACILITY** and the reasons for same. (902 KAR 20:048 § 3(4) provides that the facility shall establish written policies and procedures that govern all services provided by the facility. The written policies shall include: (a) Patient care and services to include physician, nursing, pharmaceutical (including medication stop orders policy), and residential services. (b) Adult and child protection. The facility shall have written policies which assure the reporting of cases of abuse, neglect or exploitation of adults and children pursuant to KRS Chapters 209 and 620. (c) Use of restraints. The facility shall have a written policy that addresses the use of restraints and a mechanism for monitoring and controlling their use. (d) Missing patient procedures. The facility shall [have] a written procedure to specify in a step-by-step manner the actions which shall be taken by staff when a patient is determined to be lost, unaccounted for or on other unauthorized absence.);

29. The existence of, name of, the intent of, reasons for, content of and the custodian of any **DOCUMENTS** as to any Corporate Integrity Agreement by which the **FACILITY** was bound to operate during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior through the date of this deposition.

30. The mechanisms utilized for determining and recording levels of staff in **FACILITY** and the identity and location of all person(s) responsible for same during the residency of **PLAINTIFF** in the **FACILITY**;

31. The **IDENTITY**, employment status and last known residence address and telephone number of all persons who on behalf the **FACILITY** provided any services to **PLAINTIFF** during the time frame **PLAINTIFF** was a resident of the **FACILITY**;

32. The intake process utilized by the **FACILITY** to determine the needs of an incoming resident and the purpose for same in effect upon the date of admission of the **PLAINTIFF** as a resident of the **FACILITY**;

33. The process, intent and reason for the creation of **FACILITY** Care Plans and modifications

thereto as to the **PLAINTIFF** and **FACILITY** residents in general during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY** in accordance with the requirements of 902 KAR 20:048 § 4(2)(d). (902 KAR 20:048 § 4(2)(d) provides there shall be a written nursing care plan for each patient based on the nature of illness, treatment prescribed, long and short term goals and other pertinent information. 1. The nursing care plan shall be a personalized, daily plan for individual patients. It shall indicate what nursing care is needed, how it can best be accomplished for each patient, what are the patients preferences, what methods and approaches are most successful, and what modifications are necessary to ensure best results. 2. Nursing care plans shall be available for use by all nursing personnel. 3. Nursing care plans shall be reviewed and revised as needed. 4. Relevant nursing information from the nursing care plan shall be included with other medical information when patients are transferred.):

34. The number of residents of residents in the **FACILITY** who suffered from falls during the residency of the **PLAINTIFF** in the **FACILITY** as well as six (6) months prior and the existence of, name of, custodian of and methodology of creation of, purpose of and recipients of, all **DOCUMENTS** which memorialize same;

**DEPONENTS ARE DIRECTED TO PRODUCE THE FOLLOWING DOCUMENTS IN RESPONSE TO THE ATTACHED SUBPOENA DUCES TECUM**

**Request for Production of Documents No. 1:**

Please provide copies of any and all **DOCUMENTS** in the deponent's care, custody or control which pertain, reference and/or refer to the **PLAINTIFF**. (902 KAR 20:300 § 3(2)(b) provides that the resident shall have the right to inspect and purchase photocopies of all records pertaining to the resident, upon written request and forty-eight (48) hour notice to the facility).

**Request for Production of Documents 2:**

Please provide a blank "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** utilized by the **FACILITY** to report or memorialize any occurrence relating to a resident which were utilized during the residency of the **PLAINTIFF** in the **FACILITY**. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents 3:**

Please provide any "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** utilized by the **FACILITY** to report or memorialize any occurrence relating to a resident which in any fashion mentions or relates to the **PLAINTIFF**. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents 4:**

Please provide each "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** prepared by the **FACILITY** to report or memorialize the development of falls and/or pressure ulcers as to any **FACILITY** resident during the time frame during which the **PLAINTIFF**

was a resident of the **FACILITY**. (The names of all residents other than the **PLAINTIFF** should be redacted from the production.) (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents No. 5:**

Please provide all **DOCUMENTS** which reflect the number of residents in the **FACILITY** who suffered from falls during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY**. (The name of any resident other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 6:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action referencing the **PLAINTIFF** and/or by **YOU** to any named Defendant in this action referencing the **PLAINTIFF**.

**Request for Production of Documents No. 7:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant, or by **YOU** to any named Defendant in this action referencing the staffing levels in the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 8:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant, or by **YOU** to any named Defendant in this action referencing the operating budget and/or financial performance of the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior.

**Request for Production of Documents No. 9:**

Please provide all **DOCUMENTS** which reflect the number of residents in the **FACILITY** who suffered falls during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6)

months prior. (The name of any resident other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents 10:**

Please provide the **FACILITY NURSING STAFFING INFORMATION** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior (The term **NURSING STAFFING INFORMATION** as utilized in this inquiry is defined as that term is defined in 42 C.F.R. §483.30(e) which is as follows:

> (e) *Nurse staffing information*—(1) *Data requirements*. The facility must post the following information on a daily basis:
>
> (i) Facility name.
>
> (ii) The current date.
>
> (iii) The total number and the actual hours worked by the following categories of licensed and unlicensed nursing staff directly responsible for resident care per shift:
>
> (A) Registered nurses.
>
> (B) Licensed practical nurses or licensed vocational nurses (as defined under State law).
>
> (C) Certified nurse aides.
>
> (iv) Resident census.
>
> (2) *Posting requirements*. (i) The facility must post the nurse staffing data specified in paragraph (e)(1) of this section on a daily basis at the beginning of each shift.
>
> (ii) Data must be posted as follows:
>
> (A) Clear and readable format.
>
> (B) In a prominent place readily accessible to residents and visitors.
>
> (3) *Public access to posted nurse staffing data*. The facility must, upon oral or written request, make nurse staffing data available to the public for review at a cost not to exceed the community standard.)

**Request for Production of Documents No. 11:**

Please provide all **DOCUMENTS** which confirm that the **FACILITY** Nursing service personnel were employed and in at least the number …to provide the necessary nursing services for

each resident of the **FACILITY** during the time the **PLAINTIFF** was a resident of the **FACILITY** in accordance with the requirements of 902 KAR 20:300 § 9 which states "[t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 § 3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 § 4(2)(a) provides [t]here shall be twenty (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receive proper care to prevent decubiti and shall be kept comfortable, clean, and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect.)

**Request for Production of Documents No. 12:**

Please provide all **DOCUMENTS** which evidence the **FACILITY** "in-service training and ongoing education" in accordance with the requirements of (902 KAR 20:048 § 3(10)(b) during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number. The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 14:**

Please produce all **DOCUMENTS** which constitute **YOUR** In-Service education during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior.

**Request for Production of Documents No. 15:**

Please produce all **DOCUMENTS** which were provided to those who attended any In-Service education put on by the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 16:**

Please provide all **DOCUMENTS** which consist of the **FACILITY** policies, procedures, manuals or guidelines in effect during the time frame during which the **PLAINTIFF** was a resident in the **FACILITY** relating to operations and resident care of the **FACILITY** as well as the **FACILITY** mechanisms utilized for determining and recording levels of staff in the **FACILITY** and the identity and location of all person(s) responsible for same; the **FACILITY** Business Office Policies and Procedures; and the **FACILITY** Policies and Procedures relating to assessing employees job performance and for memorializing discipline of employees and/or complaints received as it pertains to employees. (902 KAR 20:048 § 3(4) provides that the facility shall establish written policies and procedures that govern all services provided by the facility. The written policies shall include: (a) Patient care and services to include physician, nursing, pharmaceutical (including medication stop orders policy), and residential services. (b) Adult and child protection. The facility shall have written policies which assure the reporting of cases of abuse, neglect or exploitation of adults and children pursuant to KRS Chapters 209 and 620. (c) Use of restraints. The facility shall have a written policy that addresses the use of restraints and a mechanism for monitoring and controlling their use. (d) Missing patient procedures. The facility shall [have] a written procedure to specify in a step-by-step manner the actions which shall be taken by staff when a patient is determined to be lost, unaccounted for or on other unauthorized absence.)

**Request for Production of Documents No. 17:**

Please provide all **DOCUMENTS** in accordance with the requirements of 902 KAR 20:048 § 3 constituting the job description of any and all **FACILITY** personnel set forth below which were in effect during the residency of the **PLAINTIFF** at the **FACILITY**. (902 KAR 20:048 § 3(10)(a) provides written job descriptions shall be developed for each category of personnel, to include qualifications, lines of authority and specific job assignments.) These include, but are not limited to, the following:

1. Administrator;
2. Director of Nursing;
3. Business Office Manager;
4. Minimum Data Set Coordinator;
5. Case Managers;
6. Registered Nurses;
7. Licensed Vocational Nurses;
8. Charge Nurses;
9. Certified Nursing Assistants;
10. Restorative Nursing Assistants;
11. Physical Therapists;
12. Admissions Coordinator;
13. Business Office Manager;
14. Social Services Director;
15. Activities Personnel;
16. Dietary Services Personnel;
17. Director of Staff Development;
18. Medical Director;

**Request for Production of Documents No. 18:**

Please provide all **DOCUMENTS** constituting the **FACILITY** Employee Handbook in

effect during the residency of the **PLAINTIFF** at the **FACILITY**.

**Request for Production of Documents No. 19:**

Please provide all **DOCUMENTS** constituting Orientation Manuals intended for utilization by **FACILITY** new employees during the residency of the **PLAINTIFF** at the **FACILITY**.

**Request for Production of Documents No. 20:**

Please provide all **DOCUMENTS** constituting the **FACILITY** Code of Conduct for employees in effect during the residency of the **PLAINTIFF** at the **FACILITY**.

**Request for Production of Documents No. 21:**

Please provide all **DOCUMENTS** which constitute any Corporate Integrity Agreement by which the **FACILITY** was bound during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY**.

*Respectfully Submitted,*

**GARCIA, ARTIGLIERE & MEDBY**

Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III
444 East Main Street, Suite 108
Lexington, Kentucky 40507
Telephone: (502) 584-3805
Facsimile: (502) 584-3811
***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

This is to certify that the original of the foregoing was mailed first class United States mail. postage prepaid, to the **Clerk, Pike County Circuit Court, P.O. Box 1002, Pikeville, Kentucky 41502,** and that a true and correct copy of the foregoing was duly mailed this 26th day of July, 2016 to the following:

J. Peter Cassidy, III
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
PH: 859.226.0057
Fax: 859.226.0059
***Counsel for Defendants***

*Counsel for Plaintiff*

AOC-025.1 Doc. Code: RS
Rev. 3-09
Page 1 of 1
Commonwealth of Kentucky
Court of Justice www.courts.ky.gov
CR 45; RCr 7.02

[ ] SUBPOENA
[X] SUBPOENA DUCES TECUM

Case No. 15-CI-778
Court Division II
County Pike
Date 7/26/16

Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, and on behalf of the Wrongful Death Beneficiaries of Helen Ray, deceased — PLAINTIFF

VS

Kentucky Medical Investors, L L C (GA) d/b/a Mountain View Health Care Center, et al — DEFENDANT

**The Commonwealth of Kentucky to:**

Name Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center
Address Peter Cassidy, III
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509

**You are commanded to appear before:** *(select one of three choices)*
[ ] ______ Court [ ] The Grand Jury of ______ County
[x] Other a deposition

**You are to appear at:** Diddle & Pack, PLLC, 137 Pike ST, #1, Pikeville, KY 41501

on the 16 day of August, 20 16 at 9:00 [X] a.m. OR [ ] p.m. [X] Eastern [ ] Central Time

[ ] To testify in behalf of ______
[ ] To produce ______

[x] To give depositions

**You are commanded to produce and permit inspection and copying of the following documents or objects (or to permit inspection of premises):** ______

on the ______ day of ______, 20 ___ at ______ [ ] a.m. OR [ ] p.m. [ ] Eastern [ ] Central Time
at the following address: ______

Issuing Officer/Attorney Licensed in Kentucky

By ______

M Brandon Faulkner
**Name of Requesting Attorney**
**Phone#** (502) 584-3805

**PROOF OF SERVICE**

This subpoena was served by delivery of a true copy to: Peter Cassidy III

This 26 day of July, 2016 By: Chastity Smith

**Title**

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 15-CI-778

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFF

v. **PLAINTIFF'S RESPONSE TO MOTION TO INSPECT GUARDIANSHIP FILE**

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

Comes the Plaintiff, Jennifer Bingham and for her Response to Defendant, Mountain View Health Care Center's Motion to Inspect Guardianship File. This file contains information pertaining to the guardianship established over Ms. Helen Fuller Ray, Plaintiff's mother and ward, and its disclosure is protected by the provisions of KRS § 387.770.

## INTRODUCTION

This motion was previously filed by Defendant in Pike District Court. Judge Friend heard the motion and decided that he did not possess jurisdiction to rule on the disclosure of Ms. Ray's guardianship file. *See* Order, attached hereto as Exhibit 1. As such, Defendant re-filed the motion in this Court, seeking the same result: disclosure of a confidential guardianship file. Helen Fuller Ray was admitted as a resident of Mountain View Health Care Center on July 16, 2008 and, except for hospitalizations, remained a resident there until her death on June 19, 2014. As such,

Defendant already possesses a wealth of records relating to Ms. Ray's health and well-being, and any information obtained through the opening of Ms. Ray's confidential guardianship file would be cumulative.

The Court is not under a directive to order disclosure, and, in this instance, this Court is ***affirmatively prohibited*** by law from disclosing a confidential guardianship dossier on Helen Fuller Ray. Circuit Courts of Kentucky have so decided, and the Court of Appeals has so affirmed, *see infra.*

KRS § 387.770, the main statute in question here, provides in part (emphasis added):

> (1) All determinations of disability and orders of appointment, modification, and termination shall be filed as public records with the clerk of the court. All other court records of a respondent made in all proceedings under KRS 387.500 to 387.770 shall be **confidential** and ***shall not be open*** to the general public ***except*** as provided in subsection (3) of this section.
>
> * * *
>
> (3) Any person seeking to obtain confidential information contained in the court files or the court records of proceedings under KRS 387.500 to 387.770 may file a written motion stating why the information is needed. The court ***may issue*** an order to disclose such information upon a showing that the disclosure is **appropriate** under the circumstances **and in the best interest of the person or the public.** The court shall maintain a log of the individuals and entities granted access to the file or records.

## LAW AND ARGUMENT

Defendant advances two arguments in support of their request. First they argue that the requirements for inspection found in KRS § 387.770 are met by the existence of Plaintiff's Complaint and the guardianship file's potential usefulness to Defendant. Indeed, Defendant argues at length on the usefulness of the file to their defense. This argument is offensive, as KRS § 387.770 was drafted specifically to prevent such use of the file.

Second, Defendant argues that either Helen Fuller Ray, or Plaintiff, waived the confidentiality of the guardianship file. Yet, neither Helen Fuller Ray, nor Plaintiff had the ability to waive this confidentiality. It was not theirs to waive. KRS § 387.770 exists not to protect the privacy and/or reputation of Helen Fuller Ray; rather, it exists to protect the integrity of the guardianship system *(i.e.,* to protect the confidence that future participants would have in any future guardianships).

**I. Defendant has not met the requirements of KRS § 387.770 to inspect the confidential guardianship file.**

Defendant's argument that it has met the statute's requirements can be distilled to these points: 1) Defendant has been sued by Plaintiff, acting Administratrix of her mother's estate; and; 2) information regarding her mother's physical, mental, and emotional well-being contained within the confidential guardianship file might be useful to Defendant's defense. This is insufficient reasoning under the statute. The statute provides: "The court may issue an order to disclose such information upon a showing that the disclosure is appropriate under the circumstances and in the best interest of the person or the public." KRS § 387.770(3).

Guardianship is a function of the Commonwealth of Kentucky. KRS § 387.770 serves multiple purposes. First it exists to protect the privacy of the ward, who is being subjected to an involuntary process. Second, KRS § 387.770 exists to facilitate good and candid communications between the District Court and health providers and potential guardians. That is, KRS § 387.770 exists so that the Commonwealth can collect information as freely as possible, without the possibility that the information collected will be used for ***other matters*** unrelated to providing the best possible guardianship to the ward. It exists so that the Commonwealth may collect information with the assurance that the information will ***only*** be utilized for its stated purpose: establishing (and maintaining) guardianship which extinguishes the legal liberty of one

of the Commonwealth's citizens. The Commonwealth's interest is separate and distinct from the ward's privacy interest. As such, this interest remains ***whether or not the ward is deceased.***

To facilitate the Commonwealth's stated purpose, KRS § 387.770 was enacted to prevent exactly what Defendant is attempting here: slander the guardian and attack her character. Defendant discusses, at length, Jennifer Bingham's duties as Guardian of her mother. Jennifer Bingham, individually, is not a party to the this case. She brought this suit as Executrix of her Mother's estate. Jennifer Bingham's fulfillment of her duties as Guardian are irrelevant to the case at bar. Defendant's fixation on this point reveals its intentions in obtaining the Guardianship file: to attack the credibility of a non-party. Guardianship is an institution of the Commonwealth of Kentucky, and Defendant should not be permitted to suborn any part of that institution for its own benefit in a wholly unrelated civil matter. Thus, disclosure is not "appropriate under the circumstances." It is not appropriate simply because an unrelated legal matter involves Helen Fuller Ray's mental or physical condition. Defendant argues at length on how unique and therefore useful this file would be to its defense. The statute's implicit intent precludes inspection for just such a purpose. ***This is exactly the sort of thing for which KRS § 387. 770 was enacted to preclude.***

Acceptance of Defendant's interpretation of "appropriate under the circumstances" as synonymous with relevance in an unrelated legal matter would destroy the efficacy of the statute. Guardianship files were given these protections for a reason. Preventing their misuse as fodder for an unrelated civil suit fits within that purpose. Interpreting statutory language as an empty suit is inappropriate. *C.f Ally Cat v. Chauvin,* 274 SW3d 451, 455 (Ky. 2009) (the legislature's inclusion of words in a statute presumed to be for an efficacious reason and must be given effect).

Defendant argues that "in the best interest of the person or the public" is met inasmuch as Movant is a member of the public, and inasmuch as it hopes to find something useful to it contained within Helen Fuller Ray's confidential guardianship file. Defendant falls back upon the "search for the truth" argument so often advanced by parties embroiled in civil cases; however, Defendant's assertion that "the public…has a right to every man's evidence" does not overcome the destruction of a valid statutory privilege specifically enacted to protect against the use of the Commonwealth's own sealed legal proceedings for purposes other than those for which they were intended.

"[B]est interest of the public" must mean something more than merely the best interest of individuals of the public. Who else would be seeking access to any file, but an individual of the public, with some kind of interest? Why would the ward, made involuntarily subject to a guardianship, be less protected here from Defendant than a patient would be from an insurance company under HIPAA? The "best interest of the public" phraseology appears over one hundred times in statutes of the Commonwealth. A cursory review of its usage reveals an intention to connote something of concern that affects the entire Commonwealth community, or some substantial part thereof, not just single persons and nursing home conglomerates. While there is little doubt that a concern found to be in the public interest may affect certain members of the public more than others, there is no instance where the concern pertains to single members of the public while being of virtually zero concern to the public at large. How does exposing Ms. Helen Fuller Ray's confidential guardianship file to the prying eyes of Defendant, benefit the community at large? It does not. It should go without saying that the general public does not stand to gain any benefit from Defendant prowling aimlessly through Ms. Helen Fuller Ray's confidential guardianship file.

Defendant prattles on about how the information contained in the file is unobtainable elsewhere. In point of fact, Defendant already possesses reams of information relating to Ms. Ray's mental and physical status, health and well-being: her medical records from her lengthy residence at the Defendant's facility. Those records are no less authentic, and substantially more complete and relevant, than anything contained within Ms. Ray's Guardianship file.

## II. This is not a question of "waiver."

The issue at bar is not a question of waiving confidentiality mandated by a statutory scheme such as HIPAA, nor is Plaintiff in asserting a privilege. Plaintiff, as an interested party, is pointing to the law of the Commonwealth. This Court's guardianship file on Plaintiff's mother is a public document ***held by the Court of Justice*** (not by Plaintiff, nor by a doctor's office) under a law of confidentiality. This Court *must* uphold this confidentiality unless a showing is made pursuant to KRS § 387.770.

Defendant further implies that by placing "Ms. Ray's physical and mental condition at issue" Plaintiff has waived any confidentiality in the guardianship file, comparing it to the psychotherapist/patient privilege. Again, Ms. Ray was not under the care of a private psychiatrist or psychologist. She was evaluated by court-appointed personnel to make a determination of her mental status and ability to care for and/or make decisions for herself. Such a relationship is not akin to preexisting records from a private mental health provider; it is, instead, the fruit of an involuntary process presided over by the Commonwealth of Kentucky.

## III. Kentucky courts, from the District Court level to the Kentucky Court of Appeals, have properly denied inspection.

In a similar case involving the inspection of a guardianship file, the District Court of Daviess County denied movants' inspection motion, *in re William Franklin,* 07-H- 00153-001. The Daviess District Court reached its decision in part because the movants there had not made a

sufficient proffer of why the relevant material could not be acquired through other means, ***much less why disclosure would be in the public interest.*** This same reasoning applies in Helen Fuller Ray's case as well.

In another case involving the inspection of a guardianship file, the District Court of Powell County denied movants' inspection motion, *Commonwealth ex rel. Ema Ferguson v. Thomas Ferguson,* 1 O-H-00026-001. The Powell District Court therein stated:

> Whether or not a privilege exists and whether or not it has been waived is immaterial to the inquiry to be made by this court in applying KRS 387,770. Even if the court were to find the release of confidential information to them would be "appropriate under the circumstances", Kindred advances ***no basis for the court to find the release of the confidential information would be in the best interests of either the ward or the public.***

This decision was ***appealed to the Circuit Court*** of Powell County. The Circuit Court upheld the District Court decision. Even more noteworthy, movants in that case then moved for discretionary review in the Kentucky Court of Appeals, and ***the Court of Appeals denied review, thereby tacitly affirming denial of inspection.***

In the case *Commonwealth ex rel. Willie Hensley,* 11-H-00039-001, the Clark District Court had this to say:

> ***The subject of the file, Mr. Willie Hensley, Jr., did not cause this file to be made;*** rather, it was made about him through the operation of a statutory mechanism. As such, ***none of the information contained in the file constitutes a voluntary communication*** by Willie Hensley as a matter of law.... In this case, Movants argue that the information would be ***relevant to the defense in a civil suit*** in the Clark County Circuit Court. This is an ***insufficient demonstration*** that Movants' inspection of the file would be in the best interest of Willie Hensley or the public, or that the disclosure of such information would be appropriate under the circumstances.

Even more recently in *Commonwealth of Kentucky Ex Rel Sally Adkins, Mary Newman v. Girdell Hall,* 13-H-00080-1, the Floyd District Court stated in its Order that "The Movant has

failed to state any grounds or mention any specific factual disputes in which the Court would find that disclosure of this file is appropriate under these circumstances and that disclosure is in the best interest of the Respondent or in the best interest of the public." (Exhibit 2). No adequate reason has been given which would serve to justify the disclosure of confidential matters in the guardianship proceeding. The statute exists to prevent exactly what Defendant is openly attempting to do: To gain information not for the benefit of the ward, not for the benefit of government purposes, not for the benefit of a public good, but to gain information to be potentially used against the interest of those participating in the guardianship. For the foregoing reasons, it is respectfully requested that the motion be denied.

*Respectfully submitted,*

**GARCIA, ARTIGLIERE & MEDBY**

Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main Street, Suite 108
Lexington, KY 40507
Telephone 502.584.3805
Facsimile 502.584.3811
***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

This is to certify the original copy of the foregoing was sent via first class, United States mail, postage prepaid to **Clerk, Pike County Circuit Court, P.O. Box 1002, Pikeville, Kentucky 41502**, and a true and correct copy of the foregoing mailed this 12th day of September, 2016 to the following:

Donald L. Miller, II, Esq.
J. Peter Cassidy, III
Matthew C. Cocanougher, Esq.
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
PH: 859.226.0057
Fax: 859.226.0059
***Counsel for Defendant***
***Kentucky Medical Investors, LLC (GA)***

*Counsel for Plaintiff*

COMMONWEALTH OF KENTUCKY
PIKE DISTRICT COURT
CASE NO. 08-H-00153-001

COMMONWEALTH OF KENTUCKY, ex rel. PETITIONER

v. **ORDER**

HELEN FULLER RAY RESPONDENT

*** *** ***

Having heard the arguments of counsel, reviewed the record herein and being otherwise sufficiently advised, its is hereby ORDERED that: Movant's motion to inspect and/or copy any and all documents, transcripts or recordings in the above-captioned Guardianship case is hereby **held in abeyance** pending a ruling from the Pike Circuit Court as this Court does not have jurisdiction over this matter; it is further ordered that should the Pike Circuit Court grant the Movant's motion, no further proceedings in the Pike District Court shall be necessary.

[signature]
Judge, Pike District Court

Date: May 12, 2016

**HAVING SEEN:**

Matthew Cocanougher w/ permission by PLG

J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
Facsimile: 859-226-0059
***Counsel for Defendant Life Care Centers of America, Inc.***

EXHIBIT
1

Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III
GARCIA, ARTIGLIERE & MEDBY
444 E. Main Street, Suite 108
Lexington, KY 40507
Phone: 502.584.3805
Facsimile: 502.584.3811
*Attorneys for Plaintiff*

**CLERK'S CERTIFICATE OF SERVICE**

This is to certify that a true and correct executed copy of the foregoing was duly mailed this 3 day of Nov, 2016 to the following:

J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
Facsimile: 859-226-0059
*Counsel for Defendant Life Care Centers Of America, Inc.*

Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III
GARCIA, ARTIGLIERE & MEDBY
444 E. Main Street, Suite 108
Lexington, KY 40507
Facsimile: 502.584.3811
*Attorneys for Plaintiff*

CLERK, PIKE DISTRICT COURT

**COMMONWEALTH OF KENTUCKY**
**FLOYD DISTRICT COURT**
**DIVISION ONE**
**CASE NO. 13-H-00080-1**

COMMONWEALTH OF KENTUCKY, EX REL SALLY ADKINS, MARY NEWMAN — PLAINTIFF

FILED ✓ ENTERED RECEIVED TENDERED THIS DAY OF Aug, 2016 DOUGLAS R. HALL CLERK BY D.C.

VS.

GIRDELL HALL — RESPONDENT

## * * * ORDER * * *

This matter is submitted to the Court upon Movants' motion for release of all pleadings and other file materials and transcripts/video of all hearings. The motion was heard on August 5th, 2016 wherein both parties made their respective arguments.

In regards to Movants' motion which seeks the disclosure of the file, Movant claims that disclosure of Respondents guardianship file is appropriate because it directly relates to factual disputes that have arisen in a lawsuit filed against the Movant. At the hearing on this motion, the Movant failed to mention any specific factual disputes and how the disclosing of all the information contained in this file would clarify said disputes. The controlling statute KRS § 387.770 states that the Court may issue an order disclosing information upon a "showing that disclosure is appropriate under the circumstances and in the best interest of the persons or the public." The Movant has failed to state any grounds or mention any specific factual disputes in which the Court would find that disclosure of this file is appropriate under these circumstances and that disclosure is in the best interest of the Respondent or in the best interest of the public. Furthermore, the Respondent's Guardian Ad Litem was present at the hearing and also objected to the Movants' motion.

Wherefore the Movants' motion for release of guardianship file is overruled. This is a final and appealable order.

Hon. Jimmy R. Marcum, Judge

EXHIBIT 2

CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing instrument was sent via regular mail to O'Bryan, Brown and Toner, Attys at Law, Tipton and Tipton, Attys at Law, Gracia, Artigliere and Medby, Attys at Law, and Ron Diddle, Atty at Law, and the original filed of record in the Floyd County District Court Clerk this 25 day of Aug., 2016.

Donald Brown, Jr.
Mark E. Hammond
Whitney R. Kramer
O'Bryan, Brown & Toner, PLLC
1500 Starks Building
455 South Fourth Street
Louisville, KY 40202
Fax: 502-585-4703
**Counsel for Defendants**

Wesley Tipton, Esq.
TIPTON & TIPTON
P. O. Box 1284
Corbin, KY 40702
Fax: 606-528-1184
**Counsel for Defendants**

Stephen M. Gracia
M. Brandon Faulkner
Perry L. Greer, III
444 East Main Street/Suite 108
Lexington, KY 40507
Fax 502-584-3811
**Counsel for Plaintiff**

Ron Diddle
307 US Hwy 199 North
Pikeville, KY 41501
**Guardian Ad Litem**

7846F642-9FD3-4C8D-9BD5-E73B97F835F2 : 000001 of 000004

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the
ESTATE of HELEN RAY, deceased,
and on behalf of the Wrongful Death
Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a
MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * *

---

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR *EX PARTE* COMMUNICATIONS WITH HELEN RAY'S TREATING MEDICAL PROVIDERS**

---

Defendants, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View") and Life Care Centers of America, Inc. ("Defendants"), by counsel for their Reply in Support of Defendants' Motion for *Ex Parte*

7846F642-9FD3-4C8D-9BD5-E73B97F835F2 : 000002 of 000004

Communications with Helen Ray's Treating Medical Providers, state as follows:

**I. This Court Should Enter an Order Allowing Defendants to Have *Ex Parte* Communications with Ms. Ray's Treating Physicians.**

Ms. Ray's treating physicians are like any other fact witness in the eyes of the law. *See Caldwell v. Chauvin*, 456 S.W.3d 139, 158 (Ky. 2015). In fact, there is no Kentucky law prohibiting a defendant from seeking *ex parte* contact with a non-expert physician who treated a plaintiff. *Id.* at 159. As such, Defendants may request this Court enter an Order granting *ex parte* communications with Ms. Ray's non-expert treating physicians. *See id.*

Moreover, Plaintiff's "Modified Qualified Protective Order" is not necessary. First, while the American Medical Association's Code of Medical Ethics and its provisions on confidentiality applies to all physicians, it only creates a "professional duty." *Id.* at 156. The Code of Ethics does not carry the force of law and does not equate to any legal standard preventing *ex parte* communications between a defendant and a plaintiff's treating physician. *See id.* at 155-56.

Second, HIPAA does not prohibit *ex parte* communications with treating physicians; HIPAA only regulates what health information may be disclosed in the *ex parte* communications. *Id.* at 149-50. In fact, the *Caldwell* Court stated:

> We conclude, therefore, that there are no limitations on a defendant's ability to request an ex parte interview with the plaintiff's treating physicians. But the physician's ability to disclose the plaintiffs [sic] protected health information in an ex parte correspondence is regulated by HIPAA, so disclosure may only be permitted by order of the trial court satisfying 45 C.F.R. § 164.512(e)(1)(i).

*Id.* at 158.

7846F642-9FD3-4C8D-9BD5-E73B97F835F2 : 000003 of 000004

As such, as long as this Court's Order complies with 45 C.F.R. § 164.512(e)(1)(i),[1] then it satisfies HIPAA and authorizes the disclosure of Ms. Ray's protected health information in an *ex parte* communication between counsel for Defendants and Ms. Ray's treating non-expert physicians.

**II. Alternatively, this Court Should Prohibit Plaintiff's Counsel from Engaging in *Ex Parte* Communications with Ms. Ray's Treating Physicians.**

Due process requires fundamental fairness. In fairness, both parties should be allowed the opportunity to conduct this informal discovery. As such, should this Court deny Defendants' request for a qualified protective order, then Defendants request that this Court order Plaintiff's counsel not to engage in such discussions either.

It is manifestly unfair to deny Defendants' counsel the same unhindered ability as Plaintiff's counsel to speak with the medical fact witnesses who will be crucial to a determination of the medical issues in this case. After all, Plaintiff brought these claims, thus placing Ms. Ray's medical condition directly at issue. All applicable law establishes that both Defendants and Plaintiff must be granted equal opportunity to engage in *ex parte* communications with all medical fact witnesses.

**CONCLUSION**

For the reasons stated in Defendants' Motion for *Ex Parte* Communications with Helen Ray's Treating Medical Providers, and for the reasons stated herein, Defendants respectfully

[1] 45 C.F.R. § 164.512 (e)(1)(i) provides:

(e) Standard: Disclosures for judicial and administrative proceedings

(1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:

(i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order . . . .

7846F642-9FD3-4C8D-9BD5-E73B97F835F2 : 000004 of 000004

request this Court **GRANT** their Motion for a Qualified Protective Order allowing defense counsel to have *ex parte* communications with Ms. Ray's treating health care providers during the pendency of this litigation. In the alternative, Defendants respectfully request this Court to enter an order prohibiting all parties, including Plaintiff, from having *ex parte* communication with Ms. Ray's treating health care providers.

Respectfully submitted,

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANTS,
KENTUCKY MEDICAL INVESTORS, LLC (GA)
AND LIFE CARE CENTERS OF AMERICA, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served, this the 15th day of September, 2016, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507

*/s/ Matthew C. Cocanougher*
ATTORNEY FOR DEFENDANTS,
KENTUCKY MEDICAL INVESTORS, LLC (GA)
AND LIFE CARE CENTERS OF AMERICA, INC

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000001 of 000028

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the
ESTATE of HELEN RAY, deceased,
and on behalf of the Wrongful Death
Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v. **REPLY FOR MOTION TO INSPECT THE GUARDIANSHIP FILE**

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a
MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * *

Defendants, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View") and Life Care Centers of America, Inc. ("Defendants"), submit this Reply in Support of their Motion to Inspect the Guardianship File, concerning Helen Ray ("Ms. Ray"), whose condition is squarely at issue in this medical negligence case.

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000002 of 000028

## ARGUMENT

**1.    Defendants have met the requirements of KRS § 387.770**

Plaintiff argues that Defendants have not met the requirements of KRS § 387.770. As previously argued, the Kentucky Legislature has recognized there is no absolute rule of privilege as it applies to guardianship files and expressly provides for the disclosure of the Guardianship file under certain circumstances under KRS § 387.770. The threshold set forth in this statute is met here. A court is to order disclosure of a guardianship file upon a showing that (1) the disclosure is appropriate under the circumstances; and (2) in the best interest of the person or the public.

As to the first threshold, the requested disclosure is appropriate under the circumstances, as is necessary to discover information and testimony directly related to Plaintiff's claims leveled against Defendants of the alleged negligence and mistreatment of Ms. Ray. The guardianship file will contain not only the Judgment in that proceeding, but sworn statements relating to Ms. Ray's physical and mental condition, as well as sworn trial testimony. There is no other alternative to obtain this information. The file was necessary to the District Court's decision in the guardianship matter, and is also central to the allegations and defenses in the case before this Court.

Plaintiff asserts that it is not in the public interest to disclose the contents of the guardianship proceeding and cites case law denying inspection. However, other courts in Kentucky have recognized that the records generated during the guardianship proceedings are extremely relevant to the allegations such as those made against Defendants. District Courts in Mercer, Boyle, Pulaski, Clark, Franklin, Fayette, Warren, and Larue County have granted similar

motions to inspect. Defendants have attached redacted copies of these orders collectively as Exhibit A.

Plaintiff contends release is not in the public's or the person's best interests; however, respectfully, when would it *ever* be in the public's best interests for the whole truth to be shielded from a court of law, or from a defendant who has merely been accused, but not found liable, of intentional and criminal mistreatment of a patient? Kentucky courts have authority to release guardianship records made in their own proceedings pursuant to KRS 387.500 to 387.770 when justice so requires. Justice so requires in this instance. If records are not to be released under the circumstances found in this case, when the allegations in a civil matter relate directly to the contents of the file, when would the release of such records ever be appropriate?

Overall, any legitimate concern for privacy should not be extended to protect the identity of civil plaintiffs who, like in this case, voluntarily, positively, and purposefully have availed themselves of the court system with the intent to obtain monetary damages. There is no reason to allow a plaintiff to shield relevant information from the accused defendant and from the court, especially after that plaintiff has purposefully placed Helen Ray's condition at issue, while affirmatively accusing the defendant parties of acts that have not yet been proven.

**2. Waiver**

Plaintiff argues that the issue in this Motion is not a question of waiver. She argues that Ms. Ray was not under the care of a private psychiatrist or psychologist and the guardianship process is not akin to preexisting records from a health care provider because it is presided over by the Commonwealth of Kentucky.

However, Plaintiff should not be allowed to make Ms. Ray's mental and physical condition a central element of her Complaint while shielding that assertion from attack by using

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000003 of 000028

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000004 of 000028

the confidentiality provisions of KRS 387.770. "A party claiming damages in the form of mental anguish stemming exclusively from the alleged negligent act must anticipate that the opposing party will be allowed to fairly present mitigating evidence of his mental state before the incident." *Dudley v. Stevens*, 338 S.W. 3d 774, 776 (Ky. 2011). Similarly, Plaintiff must anticipate, and justice requires, that Mountain View be allowed access to any information that may be used to explain Ms. Ray's mental state.

**CONCLUSION**

For the above reasons, Defendants have met the statutory requirements delineated by KRS 387.770(3) and are entitled to know what testimony and/or evidence was presented during the proceedings regarding the physical conditions and disabilities of Helen Ray, and her capacity to understand and to comprehend events that occur in her life, as well as the scope of the authority extended to the guardian as a result of the proceedings. Therefore, Defendants respectfully request that this Court GRANT their Motion to Inspect.

Respectfully submitted,

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000005 of 000028

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 15th day of September, 2016, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507

*/s/ Matthew C. Cocanougher*
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000006 of 000028

COMMONWEALTH OF KENTUCKY
50TH JUDICIAL DISTRICT
MERCER DISTRICT COURT
CASE NO. 10-H-00014-001

COMMONWEALTH OF KENTUCKY PETITIONER

VS. **ORDER**

[redacted] RESPONDENT

This matter having come on for hearing on March 11, 2011 on Motion to inspect and/or copy documents, transcripts or recordings in the disability case of [redacted]. The Court having heard proof, taken testimony, and having reviewed the Motion to Inspect, Memorandum in Support of Motion to Inspect, and the Response to Motion to Inspect, and having reviewed Orders entered by the Warren District Court and Fayette District Court regarding motions to inspect mental health files, and having reviewed the record in its entirety it is hereby Ordered and Adjudged:

This Court finds that KRS 387.770(3) provides that a person seeking to obtain a court file or records may receive an order, "to disclose such information upon a showing that the disclosure is appropriate under the circumstances and in the best interest of the person or the public." In light of the fact that a civil action has been filed against the Movant in Mercer Circuit Court, Civil Action No. 10-CI-000392, alleging that [redacted] client of the Movant, suffered accelerated deterioration of her health and physical condition beyond that caused by the normal aging process, and that [redacted] suffered medical negligence while at

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000007 of 000028

Harrodsburg Health Care Center, this Court finds that the proceedings of the disability file of [redacted] are relevant to the allegations of the Complaint.

Accordingly, this Court hereby Orders that Paul A. Dzenitis, Esq. or a representative of his law firm, Reminger Co., LPA, counsel for Kindred Nursing Centers, Limited Partnership d/b/a Harrodsburg Health Care Center, be allowed to inspect and/or copy any and all documents and recordings in this case.

In entering this Order, the Court has duly inquired into the basis for the above Motion and finds that the reasons therefore are adequate to support the entry of the above Order.

This the 1 day of April, 2011.

Hon. Jeff L. Dotson, District Judge
Mercer District Court

CERTIFICATE OF SERVICE

This is to certify that, on this 1st day of April, 2011, the foregoing Order was served by first class mail to Hon. Paul A. Dzenitis and Hon. Richard E. Circo.

Beth Neal, Clerk

By: [signature] D.C.

ENTERED
APR 01 2011
MERCER CIRCUIT/DISTRICT COURT

cc: Dzenitis
Circo

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000008 of 000028

COMMONWEALTH OF KENTUCKY
50TH JUDICIAL DISTRICT
BOYLE DISTRICT COURT
CASE NO. 09-H-00107-001

COMMONWEALTH OF KENTUCKY PETITIONER

VS. ORDER

[redacted] RESPONDENT

ENTERED
NOV 2 2 2011
JONI G. TERRY
CLERK, BOYLE CIRCUIT COURT

This matter having come on for hearing on October 3, 2011 on Motion to inspect and/or copy documents, transcripts of recordings in the disability case of [redacted] The Court having heard proof, taken testimony, and having reviewed the Motion to Inspect, Memorandum in Support of Motion to Inspect, Jerry Leftew's Response to Kindred Nursing Centers Limited Partnership et al.'s Motion to Inspect, and Reply to Plaintiff's Response to Motion to Inspect and having reviewed Orders entered by the Warren District Court and Fayette District Court regarding motions to inspect mental health files, and having reviewed the record in its entirety it is hereby Ordered and Adjudged:

This Court finds that KRS 387.770(3) provides that a person seeking to obtain a court file or records may receive an order, "to disclose such information upon a showing that the disclosure is appropriate under the circumstances and in the best interest of the person or the public." In light of the fact that a civil action has been filed against the Movant in Mercer Circuit Court, Civil Action No. 11-CI-00090, alleging that [redacted] client of the Movant, suffered physical, mental and emotional injuries while a resident at Harrodsburg Health Care Center, and that [redacted] suffered "accelerated deterioration of his health and physical condition beyond that caused by the normal aging process", including multiple physical injuries, a loss of personal dignity, extreme pain and suffering.

degradation, mental anguish, and even "disability" among other listed injuries, which Plaintiff alleges that all injuries were caused by the Movants' wrongful and negligent conduct, this Court finds that the proceedings of the disability file ██████ ██████ are relevant to the allegations of the Complaint.

Accordingly, this Court hereby Orders that J. Peter Cassidy, III, Esq. or a representative of his law firm, Quintairos, Prieto, Wood and Boyer, P.A., as counsel for Kindred Nursing Centers, Limited Partnership d/b/a Harrodsburg Health Care Center, be allowed to inspect and/or copy any and all documents and recordings in this case.

In entering this Order, the Court has duly inquired into the basis for the above Motion and finds that the reasons therefore are adequate to support the entry of the above Order.

It is further Ordered that based upon this ruling, this case shall be removed from the Court docket of December 9, 2011, unless re-noticed by the parties.

This the 21 day of November, 2011.

_____
Hon. Jeff L. Dotson, District Judge
Boyle District Court

## CERTIFICATE OF SERVICE

This is to certify that on this 22 day of November, 2011, the foregoing Order was served by first class mail to Hon. Donald L. Miller, II, Hon. J. Peter Cassidy, III, Hon. Nathaniel R. Kissel, and Hon. Richard E. Circeo.

Joni H. Terry, Clerk

By: _____ D.C.

Page 2 of 2

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000010 of 000028

ENTERED
GEORGE FLYNN, CLERK
AUG 2 8 2013
PULASKI DIST COURT
BY D.C.

COMMONWEALTH OF KENTUCKY
PULASKI DISTRICT COURT
CASE NO.: 13-H-18-1

COMMONWEALTH OF KENTUCKY *ex rel.* PETITIONER

v.

[redacted] RESPONDENT

ORDER

This matter having come before the Court on the motion of Defendants/Movants, Extendicare, Inc.; Extendicare Homes, Inc. d/b/a Sunrise Manor Nursing and Rehabilitation Center; Extendicare Health Network, Inc.; Extendicare REIT; Extendicare, L.P.; Extendicare Holdings, Inc.; Extendicare Health Services, Inc.; and Extendicare Health Facility Holdings, Inc. (collectively "Movants",) to obtain a complete copy of the entire case file and proceedings in the above-styled action, the Court having reviewed the Record and being otherwise sufficiently advised:

IT IS HEREBY ORDERED AND ADJUDGED as follows:

1. This Court looks to KRS 387.770(3), for guidance on the disclosure of the information in a confidential guardianship proceeding, which provides that the movant show the disclosure is appropriate under the circumstances and in the best interest of the person or the public. This Court also notes that the guardianship file is a record of the Court of Justice, and as such, it is the duty of this Court to determine access to its own records. Ex Parte Farley, 570 S.W. 2d 617, 624 (Ky. 1978); Ky. Const. §§ 109,116; KRS 26A.200.

2. Movants have met the threshold requirements of KRS 387.770. By filing suit against the Movants in Pulaski Circuit Court, alleging that [redacted] suffered physical, mental

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000011 of 000028

and emotional injuries, Respondent/Plaintiff has put the mental, physical and emotional health of [redacted] at issue, making the disclosure of the contents of this guardianship proceeding appropriate under the circumstances.

3. Further, the contents of the guardianship file contain the type of information which cannot be obtained from any other source, including prior sworn statements of Respondent/Plaintiff relating to the condition of [redacted]. Due to the unique nature of such information, it is inequitable to allow the Respondent/Plaintiff to place such matters at issue in the Circuit Court matter, but shield the disclosure of relevant documents from the Defendants/Movants. The interests of justice require the disclosure of the contents of the file, and such interests satisfy the statute's requirements that the disclosure be in the best interests of the public.

WHEREFORE Movants' Motion to copy the entire case file including transcripts and audio recordings is SUSTAINED; and the Pulaski District Clerk is directed to copy the entire case file and proceedings of this Action and provide same to counsel for Movants and Respondent.

THIS IS A FINAL AND APPEALABLE ORDER, THERE BEING NO JUST REASON OR CAUSE FOR DELAY.

Date: August 27, 2013

[signature]
PULASKI DISTRICT JUDGE

Tendered by:

J. Peter Cassidy, III
COUNSEL FOR MOVANTS

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000012 of 000028

CLERK'S CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing was served via U.S. mail, first class, postage prepaid, on the 20 day of Aug., 2013, upon:

J. Peter Cassidy, III, Esq.
Anthony B. Gray, Esq.
2452 Sir Barton Way, Suite 300
Lexington, KY 40509

Ross F. Mann, Esq.
Wilkes & McHugh, P.A.
P.O. Box 1747
Lexington, KY 40588

M. Burkett D.C.
CLERK PULASKI DISTRICT COURT

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000013 of 000028

COMMONWEALTH OF KENTUCKY
CLARK DISTRICT COURT
CASE NUMBER: 11-H-00014-001

COMMONWEALTH OF KENTUCKY ex rel PETITIONER

v.

[redacted] RESPONDENT

**ORDER**

***** ***** ***** ***** *****

This matter having come before the Court on the motion of Defendants/Movants, Kindred Nursing Centers Limited Partnership, d/b/a/ Fountain Circle Health and Rehabilitation, Kindred Nursing Centers East, Kindred Hospitals Limited Partnership, Kindred Healthcare, Inc., Kindred Healthcare Operating, Inc., Kindred Rehab Services, Inc. d/b/a PeopleFirst Rehabilitation, Clark Dennis McNatt, in his capacity as Administrator of Fountain Circle Health and Rehabilitation, and Nancy C. Russell, in her capacity as Administrator of Fountain Circle Health and Rehabilitation (collectively "Movants"), to obtain a complete copy of the entire case file and proceedings in the above-styled action; the Court having reviewed the Record and being otherwise sufficiently advised:

IT IS HEREBY ORDERED AND ADJUDGED as follows:

1. The disclosure of the requested guardianship record is appropriate and in the best interest of justice, as the Respondent herein has placed her mental, physical and emotional conditions in issue in a lawsuit filed in the Clark Circuit Court, Case No.11-CI-00463;

2. Movants' Motion to copy the entire case file including transcripts and audio recordings is SUSTAINED; and

ENTERED 7/20/12
PAULA S. JOSLIN
CLARK CIRCUIT/DISTRICT COURT
BY [signature] D.C.

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000014 of 000028

3. The Clark District Clerk is directed to copy the entire case file and proceedings of this Action and provide same to counsel for Movants and Respondent, to be used only for Movant's stated purpose and not otherwise disclosed.

THIS IS A FINAL AND APPEALABLE ORDER, THERE BEING NO JUST REASON OR CAUSE FOR DELAY.

Date: 6-14-12

CLARK DISTRICT JUDGE

Tendered by:

Donald L. Miller, II
J. Peter Cassidy, III
Nathaniel R. Kissel
COUNSEL FOR MOVANTS

CLERK'S CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing was served via U.S. mail, first class, postage prepaid, on the ____ day of August, 2011, upon:

Donald L. Miller, II, Esq.
9300 Shelbyville Road, Suite 400
Louisville, KY 40222

J. Peter Cassidy, III, Esq.
Nathaniel R. Kissel, Esq.
2333 Alexandria Drive
Lexington, KY 40504

Richard B. Circeo, Esq.
Wilkes & McHugh, P.A.
P.O. Box 1747
Lexington, KY 40588

CLERK CLARK DISTRICT COURT

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000015 of 000028

FILED
OCT 2 8 2011
FRANKLIN CIRCUIT COURT
SALLY JUMP, CLERK

COMMONWEALTH OF KENTUCKY
FRANKLIN DISTRICT COURT
CASE NUMBER: 10-M-00046

ENTERED
NOV 0 3 2011
FRANKLIN CIRCUIT COURT
SALLY JUMP, CLERK

COMMONWEALTH OF KENTUCKY ex rel.

v.

[redacted]

[illegible]

## ORDER

This matter having come before the Court on the Motion of Defendants/Movants, Owenton Manor Nursing, LLC, d/b/a Owenton Manor Care and Rehabilitation Center, Sun Healthcare Group, Inc., SunBridge Healthcare Corporation, Harborside Healthcare Corporation/ HBR Kentucky, LLC, Glenda Lawrence in her capacity as Administrator of Harborside Healthcare and Stacie Shive, in her capacity as Administrator of Owenton Manor Care and Rehabilitation, (collectively herein "Movants") to obtain a complete copy of the entire case file and proceedings in the above-styled action. The Court having reviewed the record, heard argument of counsel, and being otherwise sufficiently advised, now makes the following Findings of Fact and Conclusions of Law, and Orders as follows:

## FINDINGS OF FACT

1. [redacted] was admitted as a resident to the Owenton Manor Nursing, LLC, d/b/a Owenton Manor Care and Rehabilitation Center ("Owenton") on or about June 29, 2009 to December 11, 2009 and January 15, 2010 until March 20, 2010.

2. Subsequent to [redacted] admission to Owenton, Beulah Hardy was appointed as Guardian of [redacted] an incapacitated person by Order of the Franklin County District Court.

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000016 of 000028

3. Daniel Hardy, as Guardian of [redacted], sued Movants in the Owen Circuit Court alleging, inter alia, that [redacted] suffered physical, mental, and emotional injuries including disability while a resident at Owenton.

4. Movants filed their Motion seeking access to the confidential guardianship files in this matter pursuant to KRS 387.770(3). A hearing was held October 24, 2016 where counsel for both parties was present and arguments were heard.

## CONCLUSIONS OF LAW

1. This Court looks to KRS 387.770(3) for guidance on the disclosure of the information in a confidential guardianship proceeding, which provides that the movant show the disclosure is appropriate under the circumstances, and in the best interest of the person or the public. This Court also notes that the guardianship file is a record of the Court of Justice, and as such, it is the duty of this Court to determine access to its own records. Ex Parte Farley, 570 S.W.2d 617, 624 (Ky. 1978); Ky. Const. §§ 109, 116; KRS 26A.200.

2. Movants have met the threshold requirements of KRS 387.770. By filing suit against the Movants in Owen Circuit Court, alleging that Bertha Dean suffered physical, mental, and emotional injuries, Respondent/Plaintiffs have put the mental, physical, and emotional health of Bertha Dean at issue, making the disclosure of the contents of this guardianship proceeding appropriate under the circumstances.

3. Further, the contents of the guardianship file contains the type of information which cannot be obtained from any other source, including prior sworn statements of Respondent/Plaintiff relating to the condition of [redacted]. Due to the unique nature of such information, it is inequitable to allow the Respondent/Plaintiff to place such matters at issue in the Circuit Court matter, but shield the disclosure of relevant documents from the

Defendant/Movants. The interests of justice require the disclosure of the contents of the file and such interests satisfy the statute's requirements that the disclosure be in the best interests of the public.

WHEREFORE Movants' Motion to copy the entire case file, including transcripts and audio recordings, is SUSTAINED and the Franklin District Clerk is directed to copy the entire case file and proceedings of this Action, including any audio recording of the trial or hearing to establish guardianship and provide same to counsel for Movants and Respondent.

This is a final and appealable Order, there being no just reason or cause for delay.

Date: 11/8/11

FRANKLIN DISTRICT JUDGE

Prepared and Tendered by:

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

J. Peter Cassidy, III, Esq.
Heather M. McCollum, Esq.
2333 Alexandria Dr.
Lexington, KY 40504

-and-

Donald L. Miller, II, Esq.
9300 Shelbyville Road
Suite 400
Louisville, KY 40222
COUNSEL FOR MOVANTS

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000017 of 000028



568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000018 of 000028

## CLERK'S CERTIFICATE OF SERVICE

I, Clerk of the Franklin District Court, hereby certify that a true and accurate copy of the foregoing Order was served via U.S. mail, first class, postage prepaid, on the [illegible] day of [illegible], 2011, upon the following:

Donald L. Miller, II, Esq.
9300 Shelbyville Road, Suite 400
Louisville, KY 40222

J. Peter Cassidy, III, Esq.
Heather M. McCollum, Esq.
2333 Alexandria Drive
Lexington, KY 40504

Mary J. Perry, Esq.
WILKES & McHUGH, P.A.
One North Dale Mabry, STE 800
Tampa, FL 33609

Susan D. Sellers
WILKES & McHUGH, P.A.
P.O. Box 1747
429 North Broadway
Lexington, KY 40508

[illegible]
CLERK, FRANKLIN DISTRICT COURT

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000019 of 000028

01/26/2010 09:00 AM CO FAYETTE
Court 1 COURTROOM 1
Judge: ... Page 8 of 8

CO 09-XX-00502-001 [redacted]

| Name | Role | |
|---|---|---|
| [redacted] | DEFENDANT/RESPONDENT | |
| ALLEN, BENJAMIN D., | ATTORNEY FOR PLAINTIFF | ALLEN |
| FANNIN, COLLETT | ATTORNEY-PRIVATE | FANNIN |
| MILLER, DONALD L. III | ATTORNEY-PRIVATE | MILLER |
| COOK, WAYNE E., | COUNTY ATTORNEY | COOKWE |
| LUSTER, RICK SON | FAMILY MEMBER | |
| LUSTER, MIKE SON | FAMILY MEMBER | |
| LUSTER, ROBERT SON | FAMILY MEMBER | |
| LUSTER, SHANNON P., GRANDDAUGHTER | GUARDIAN | |
| DONOVAN, MONICA M., | GUARDIAN AD LITEM | DONOVM |
| CENTRAL KENTUCKY BEHAVIORAL HEALTH, | OTHER PARTY | CENTRAL |
| NORTHPOINT HEALTH CARE | OTHER PARTY | |
| RICHARD, JOHN, | OTHER PARTY | RICH |
| WILSON, JOCELYN ..., | OTHER PARTY | |

OTHER HEARING
Note: RESPONSE FILED ON 1-25-10

MOTION - OTHER ATTORNEY-PRIVATE
MOTION TO INSPECT AND/OR COPY ANY & ALL DOCUMENTS, TRANSCRIPTS OR RECORDING W/A MEMORANDUM IN SUPPORT OF MOTION FILED BY DONALD L. MILLER

Mot. sust. @ cost of Movant. Copy of file to be provided to appealing counsel.

A True Copy 1-26-10
ATTEST: VINCENT RIGGS, CLERK
FAYETTE CIRCUIT COURT
BY ...

FILED AND ENTERED
ATTEST: VINCENT RIGGS, CLERK
JAN 26 2010
FAYETTE CIRCUIT COURT ...



568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000020 of 000028

KRS 387.770
KRS 202A.091

CASE NO. 07-H-29-1

WARREN DISTRICT COURT
MENTAL HEALTH DIVISION

IN RE: [redacted]

ORDER

**** **** **** **** ****

Upon Motion of Rosewood Healthcare Center ("Rosewood"), and the Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED THAT Donald L. Miller, II or a representative of his law firm, Ramlnger Co., LPA, counsel for Rosewood be allowed to inspect and/or copy any and all documents and recordings in this case.

In entering this Order, the Court has duly inquired into the basis for the above Motion and finds that the reasons therefore are adequate to support the entry of the above Order.

[illegible]
DATE: [illegible]
[illegible]

JUDGE, WARREN DISTRICT COURT

DATE: 3-26-2010

Copies to:

Donald Miller, II, Esq.
Paul A. Franklin, Esq.
Ramlnger Co., LPA
One Riverfront Plaza
401 West Main Street, Suite 710
Louisville, KY 40202

[illegible] Olvera, Esq.
Wilkes & McHugh, P.A.
429 North Broadway
Lexington, KY 40508

ENTERED [illegible]
PAT HOWELL SCOTT, CLERK
WARREN CIRCUIT COURT DIV [illegible]
BY [illegible] D.C.

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000021 of 000028

COMMONWEALTH OF KENTUCKY
LARUE DISTRICT COURT
CASE NO.: 09-H-00017-0001

RHONDA CARSON as LEGAL GUARDIAN of [redacted], PLAINTIFF/RESPONDENT

v. **ORDER**

KINDRED NURSING CENTERS LIMITED PARTNERSHIP d/b/a WOODLAND TERRACE HEALTH CARE FACILITY; and TONYA HAINES, DEFENDANTS/MOVANTS

Upon Motion of Harrodsburg Health Care Center ("Harrodsburg"), and the Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED THAT Jan G. Ahrens, Esq. or a representative of her law firm, Quintairos, Prieto, Wood & Boyer, P.A., counsel for Kindred Nursing Centers Limited Partnership d/b/a Woodland Terrace Health Care Facility and Tonya Haines be allowed to inspect and/or copy any and all documents and recordings in this case.

In entering this Order, the Court has duly inquired into the basis for the above Motion and finds that the reasons therefore are adequate to support the entry of the above Order.

ENTERED
DATE 4/19/11
LARRY G. BELL
LaRue Circuit Clerk

[signature]
JUDGE, LARUE DISTRICT COURT

DATE: 04-19-2011

Copies to:

Jan G. Ahrens
9300 Shelbyville Rd., Ste. 400
Louisville, KY 40222

Danny R. Darnall, Esq.
911 North Mulberry Street
Elizabethtown, KY 42701

TENDERED
Date: 4/19/11

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been served this 15th day of April, 2011, via U.S. Mail Service, postage prepaid, upon the following:

Danny E. Darnall, Esq.
911 North Mulberry Street
Elizabethtown, KY 42701
COUNSEL FOR PLAINTIFF/RESPONDENT

Original to:

Clerk of the Court
LaRue District Court
P.O. Box 191
Hodgenville, KY 42748-0191

COUNSEL FOR DEFENDANTS/MOVANTS

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000023 of 000028

CIVIL ACTION NO.: 12-CI-03746

JEFFERSON CIRCUIT COURT
DIVISION THREE (3)
JUDGE MITCH PERRY

Lois L. Black, as Next Friend
of Dorothy Higgs, an Incapacitated Person

PLAINTIFF

v.

**ORDER**

Sun Healthcare Group, Inc.;
Regency Nursing, LLC,
d/b/a Regency Care and Rehabilitation Center, et. al.

DEFENDANTS

* * * * * * * * * * * * * * *

This matter having come before the Court on the Motion of Defendants, Sun Healthcare Group, Inc.; Regency Nursing, LLC, d/b/a Regency Care and Rehabilitation Center; HBR Kentucky, LLC; Harborside Healthcare, LLC; SunBridge Healthcare, LLC; FMR, LLC; Chris Boyd, in his capacity as Administrator of Regency Care and Rehabilitation Center; Lisa Davis, in her capacity as Administrator of Regency Care and Rehabilitation Center; John Does 1 through 5, Unknown Defendants (hereinafter "Defendants"), to request this Court obtain a complete copy of the entire guardianship case file and proceedings in the case involving ward, Dorothy Higgs, and appointed Guardian, Lois L. Black, and to allow inspection and copying by Defendants, and the Court having reviewed the Record and being otherwise sufficiently advised,

**IT IS HEREBY ORDERED AND ADJUDGED** as follows:

1. This Court looks to KRS § 387.770(3), for guidance on the disclosure of the information in a confidential guardianship proceeding, which provides that the movant show the disclosure is appropriate under the circumstances and in the best interest of the person or the public. This Court also notes that the guardianship file is a record of the Court of Justice, and as

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000024 of 000028

such, it is the duty of this Court to determine access to its own records. *Ex Parte Farley*, 570 S.W. 2d 617, 624 (Ky. 1978); Ky. Const. §§ 109.116; KRS 26A.200.

2. Defendants have met the threshold requirements of KRS § 387.770. By filing suit against the Defendants in Jefferson Circuit Court, alleging that Dorothy Higgs suffered physical, mental and emotional injuries, Plaintiff has put the mental, physical and emotional health of Dorothy Higgs at issue, making the disclosure of the contents of the guardianship proceeding appropriate under the circumstances.

3. Further, the contents of the guardianship file contain the type of information which cannot be obtained from any other source, including prior sworn statements of Respondent/Plaintiff relating to the condition of Dorothy Higgs. ~~Due to the unique nature of such information, it is inequitable to allow the Plaintiff to place such matters at issue in the this Circuit Court matter, but shield the disclosure of relevant documents in the District Court Disability case from the Defendants.~~ The interests of justice require the disclosure of the contents of the file, and such interests satisfy the statute's requirements that the disclosure be in the best interests of the public.

WHEREFORE Defendants' Motion to ~~request this Court obtain a copy of the entire guardianship file including transcripts and audio recordings, and allow inspection and copy by Defendants is SUSTAINED.~~ to Review the file is granted

THIS ~~IS A FINAL AND APPEALABLE ORDER, THERE BEING NO JUST REASON OR CAUSE FOR DELAY.~~

ENTERED IN COURT
DAVID L. NICHOLSON, CLERK
DEC 2 2013
BY [signature] DEPUTY CLERK

[signature]
JUDGE, JEFFERSON CIRCUIT COURT

DATE: 12/2/13

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000025 of 000028

4

AOC-765 Doc. Code: RIET
Rev. 10-10
Page 1 of 3

Commonwealth of Kentucky
Court of Justice www.courts.ky.gov

KRS 387.540

**REPORT OF INTERDISCIPLINARY EVALUATION TEAM**

Case No. ______________

Court ______________

County ______________

COMMONWEALTH OF KENTUCKY )
Petitioner )
VS. )
)
______________ )
Respondent )

* * * * * * * * * * * *

We, the undersigned, hereby report to the court as follows:

1. That the nature and extent of the Respondent's disabilities may be described as follows:

______________

______________

______________

______________

2. That the evaluations ordered regarding the Respondent are current and were performed and signed by the following individuals:

| **Evaluation:** | **Name** | **Title** | **Date Performed** |
|---|---|---|---|
| **Intellectual:** | | | |
| **Physical:** | | | |
| **Educational:** | | | |
| **Adaptive Behavior:** | | | |
| **Social Skills:** | | | |

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000026 of 000028

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000027 of 000028

3. That guardianship:

☐ Is needed for the following reason:

☐ Is not needed for the following reason:

4. That the recommendation(s) of the type, scope, and duration of guardianship for the Respondent is/are as follows:

5. The conservatorship:

☐ Is needed for the following reason:

☐ Is not needed for the following reason:

6. That the recommendation(s) of the type, scope, and duration of conservatorship for the Respondent is/are as follows:

7. That the social, educational, medical, and rehabilitative services currently being provided to the Respondent are as follows:

8. That appropriate alternatives to guardianship/conservatorship:

☐ Are available (explain):

☐ Are not available (explain):

9. That the recommendations and reasons as to the most appropriate treatment or rehabilitation plan and living arrangement for the Respondent are as follows:

10. That for the Respondent to attend the hearing on the Petition filed herein:

☐ Would subject him/her to serious risk of harm.

☐ Would not subject him/her to serious risk of harm.

11. That appended hereto is a list of all medications currently being given to the Respondent on a continuous basis, the dosage of the medication, and a description of its impact upon the Respondent's mental and physical condition and behavior.

12. That any dissenting opinions or other comments are as follows:

_______________________________________________

_______________________________________________

_______________________________________________

Date

Signature of Licensed Physician

Signature of Licensed/Certified Psychologist

Signature of Licensed/Certified Social Worker

Signature of Other

Name of Facility or Agency

Address

Telephone Number

568C3096-0DA9-4E81-BF09-FFEC63C4A620 : 000028 of 000028

A0E65BA5-CDB6-4B21-AA3F-D27A65CA0DF6 : 000001 of 000005

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the
ESTATE of HELEN RAY, deceased,
and on behalf of the Wrongful Death
Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a
MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * *

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO QUASH, OR IN THE ALTERNATIVE, FOR PROTECTIVE ORDER**

For their Reply in support of their motion to quash, or in the alternative, for protective order, Defendants state as follows:

A0E65BA5-CDB6-4B21-AA3F-D27A65CA0DF6 : 000002 of 000005

## ARGUMENT

Plaintiff argues that she is merely attempting to use her 30.02(6) deposition notice in an attempt to simplify and clarify the issues under *LeFleur V. Shoney's, Inc.*, 83 S.W.3d 474, 478 (Ky. 2002) and the Kentucky Rules of Civil Procedure. She seeks to quickly dismiss Defendants' Motion, while failing to address the fact that due to the nature of information sought by Plaintiff, it would be an undue burden and expense to have a corporate level representative appear for a deposition given the less expensive alternatives available to seek this information (e.g., interrogatories or other forms of written discovery). Plaintiff's alleged attempt to simplify the issues is a thirty-four (34) paragraph CR 30.02(6) Deposition of Mountain View's Corporate Representative, including an additional twenty-one (21) Requests for Production of Documents from the corporate representative. The notice covers many discovery requests that were already propounded by Plaintiff and answered by Defendant. For those requests, Plaintiff is requesting that Defendant go through Ms. Ray's chart, which she have already been provided and have equal access to, and discover information that is just as easily discovered by Plaintiff's counsel.

Plaintiff argues she is seeking "facts" but any "facts" she seeks have already been provided to her through written discovery. As Defendants discussed in their motion, there is a distinct reason Plaintiff is seeking to establish Defendants' theory of the case (not "facts") through a corporate representative rather than simply reviewing the chart to answer their own questions. Plaintiff is attempting to box Defendant in on the elements of her claim before providing her required expert testimony as to what specific breaches of the standard of care and damages she is claiming.

Plaintiff takes issue with this argument, alleging that this seems to indicate that the testimony given by Defendants is subject to change depending on the stage of the litigation.

A0E65BA5-CDB6-4B21-AA3F-D27A65CA0DF6 : 000003 of 000005

Defendants addressed this very issue in their Motion, citing case law on contention interrogatories as an example:

> Second, **in cases with voluminous discovery and multiple allegations, all parties should expect changes to contention interrogatory responses.** Both the advisory committee notes and case law warn of such changes. "Since [contention] interrogatories involving mixed questions of law and fact may create disputes between the parties which are best resolved after much or all of the other discovery has been completed, the court is expressly authorized to defer an answer." Fed.R.Civ.P. 33 advisory committee notes (1970). "Answers to interrogatories must often be supplied before investigation is completed and can rest only upon knowledge which is available at the time." *Freed v. Erie Lackawanna Ry. Co.*, 445 F.2d 619, 621 (6th Cir.1971). "The district court has considerable discretion in overseeing compliance with the Federal Rules of Civil Procedure, including discretion to permit parties to defer supplementing responses to contention interrogatories until theories of the case have ripened for trial." *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed.Cir.2012). Given the well-recognized problems parties face giving complete answers to contention interrogatories early in the litigation process, litigants are well-advised to anticipate changes.

*U.S., ex rel. Nat. Res. Def. Council v. Lockheed Martin Corp.*, 2014 WL 6909652, at *3–4 (W.D. Ky. Dec. 8, 2014). Like contention interrogatories, Plaintiff is attempting to bind Defendant, through its corporate representative, to certain contentions and theories at this early stage in the litigation, while telling this Court she is only seeking "facts." While overly broad, Plaintiff's CR 30.02(6) Notice would be more appropriate as an expert discovery deposition after Plainitff (who carries the burden here) has identified her experts and first allowed Defendants to learn her theory of the case. Plaintiff is simply contorting CR 30.02(6) to Defendants prematurely. At a minimum, Plaintiff should be forced to disclose her expert witnesses to provide Defendant with information regarding the specific breaches of the standard of care and damages claimed. As *Lockheed Martin Corp.* points out, the questions sought in Plaintiff's Notice are best resolved after much more discovery has been completed. At this point, the parties have exchanged initial discovery responses, but there are no deadlines for expert disclosures and neither party has disclosed an expert.

A0E65BA5-CDB6-4B21-AA3F-D27A65CA0DF6 : 000004 of 000005

Plaintiff also takes issue with Defendants' arguments comparing their strategy of using this 30.02(6) notice to discovering Defendants' work product. Without disclosing her experts and providing specific breaches of the standard of care and damages, Plaintiff seeks to bind Defendant to testimony on an incredibly broad set of topics at this early stage, to prematurely bind Defendant's expert to that testimony. In so doing, she attempts to discover Defendant's work-product by seeking to gather Defendant's counsel's mental impressions in preparing the corporate representative to respond to the areas of inquiry. She once again argues that she is simply seeking facts. However, she does not mention the incredibly burdensome volume of information she is seeking. For example, in Request 21, Plaintiff is asking for nearly six years' worth of documents and information to confirm that each employee hired during those six years was qualified to care for residents. Plaintiff could spend the entire 30.02(6) deposition going over just this one question.

In addition to the fact that each of Plaintiff's requests asking for documents and information during Ms. Ray's residency constitutes nearly six years, she is also asking for nursing home operations, policies and procedures for compliance with nursing home certification requirements, and other proprietary business information is neither relevant nor necessary to this action. As such, in the alternative, to the extent Plaintiff's deposition notice is not quashed, this Court should issue a protective order directing any such 30.02(6) deposition to occur after Defendants have discovered Plaintiff's expert testimony.

A0E65BA5-CDB6-4B21-AA3F-D27A65CA0DF6 : 000005 of 000005

**CONCLUSION**

Defendants seek this Court's intervention to quash Plaintiff's CR 30.02(6) notice, or in the alternative to limit the requests made by Plaintiff and to use interrogatories instead of requiring production of a corporate representative to testify.

Respectfully submitted,

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANTS,
KENTUCKY MEDICAL INVESTORS, LLC (GA)
AND LIFE CARE CENTERS OF AMERICA, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 15th day of September, 2016, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507

*/s/ Matthew C. Cocanougher*
ATTORNEY FOR DEFENDANTS,
KENTUCKY MEDICAL INVESTORS, LLC (GA)
AND LIFE CARE CENTERS OF AMERICA, INC.

1FDA3B2B-DEBC-4954-9147-7DF7894A054C : 000001 of 000018

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the
ESTATE of HELEN RAY, deceased,
and on behalf of the Wrongful Death
Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a
MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * *

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS RESIDENT'S RIGHT CLAIMS**

For their Reply in support of their motion for summary judgment to dismiss resident's rights claims, Defendants state as follows:

**INTRODUCTION**

*Overstreet* compels this Court to grant Defendants' motion. Plaintiff acknowledges the decision then argues against it in her response pleading. *Overstreet* expressly holds that

1FDA3B2B-DEBC-4954-9147-7DF7894A054C : 000002 of 000018

resident's rights claims made by the Plaintiff herein following her mother Helen Ray's death are not viable as a matter of law. *Overstreet v. Kindred Nursing Centers Limited Partnership*, 479 S.W.3d 69, 71 (Ky. 2016). The Supreme Court has already ruled upon this issue thereby rejecting Plaintiff's speculative contentions. Plaintiff Jennifer Bingham is not a resident nor is she a resident's guardian. Therefore, *Overstreet* mandates dismissal of the claims in her Complaint at paragraphs 48-52.

**LEGAL ARGUMENTS**

Public policy does not allow recovery of two separate damages awards – one for common law claims and one for statutory claims – where both of these awards would be based entirely upon the same course of conduct allegedly carried out by Defendants. Kentucky Courts have voiced a strong public policy against double recovery and there is simply no reasoning applicable to the instant action which would justify a departure from that public policy here. *Morrison v. Kentucky Cent. Ins. Co.*, 731 S.W.2d 822, 824–25 (Ky. App. 1987) ("in Kentucky we have a strong policy against a double recovery for the same element of loss").

Similarly, in a recent case involving similar claims of negligence and separate resident's rights violations, the circuit court overturned a jury verdict based on erroneous instructions. (See Order in *Jennings v. The Terrace* attached hereto as Exhibit A). The docket order granting the new trial in *Jennings* makes clear that "erroneous instructions created a material prejudice such that a new trial is warranted" meaning that there should be no instructions, or evidence, of resident's rights violations when those claims do not survive the death. The Kentucky Supreme Court firmly held that actions brought to enforce rights created exclusively by KRS 216.515 must be brought by the resident or his guardian pursuant to KRS 216.515(26), and therefore those rights do not survive the resident's death. *Overstreet, supra,* 479 S.W.3d at 71. Similarly,

where, as now, Plaintiff claims violations of the statutorily-created resident's rights of her mother, but she is no longer a resident and she is not her guardian, there should be no jury instructions or evidence of those purported resident's rights violations as those claims do not even survive his death. *Id., and see, Jennings v. The Terrace*.

In *Jennings*, the Court's jury instructions first asked if The Terrace violated the reasonably prudent nursing home standard, and the answer was yes. The estate took $4,000,000 on this count. Next, the court's instructions asked the jury to consider if there had been a resident's rights violation. Again, the answer was yes (and that this violation had caused injury). The Court's instructions then permitted the jury to make separate awards for different violations (*e.g.*, estate awarded $500,000 for the right to be free from abuse; $2,000,000 for not treating resident with respect; $500,000 for not fully informing family; and $1,500,000 million for hygiene issues). The element of the verdict concerning resident's rights violations totaled $4.5 million (the estate already took $4,000,000 on the count that The Terrace violated the reasonably prudent nursing home standard). Citing *Overstreet*, Judge Logue overturned that verdict. Because the claims in this case were not brought by a living resident or a living resident's guardian, Plaintiff has no standing to bring claims brought under subsections (18) and (20); likewise, because there is no reason to ask a jury to decide duplicative claims, the claims brought under subsection (6) must also be dismissed.

With regard to Plaintiff's wildly misdirected Section II argument, it has not been established that Defendants committed any "wrongdoing." Defendants strongly contest this issue. Plaintiff's nonsensical argument in this regard is untrue and unproven (*e.g.*, "Having killed Helen Ray, Defendants should not be able to gain a legal advantage from this fact.") Because it lacks bearing to resolution the issues raised by the instant motion, this argument should be

1FDA3B2B-DEBC-4954-9147-7DF7894A054C : 000003 of 000018

1FDA3B2B-DEBC-4954-9147-7DF7894A054C : 000004 of 000018

disregarded. Additionally, the recent case of *William-Stavely v. Kindred* is instructive. In that case, Judge Stark issued an Order dismissing this exact argument. (See June 8, 2016 Order in *William-Stavely v. Kindred*, Graves Circuit Civil Action No. 12-CI-355 attached hereto as Exhibit B). The slayer statute had "no application" to that case because upon its reading of the resident's rights statute, the circuit court was satisfied that the Legislature did not want the nursing home resident to bear the cost of litigation. At the same time, the Legislature did not give the same protection to the beneficiaries of the nursing home resident's estate. Moreover, in any event, *Overstreet* was clear that "**actions under KRS 216.515 die with the claimant**." (See *William-Stavely v. Kindred*, Order issued June 8, 2016 granting Defendants' motion to dismiss resident's rights claims and attendant claims for attorneys' fees under the resident's rights statute attached hereto as Exhibit B).

## CONCLUSION

In sum, *Overstreet* holds that Plaintiff, as Ms. Ray's Administratrix, cannot maintain her claims made under KRS 216.515 because, as statutorily-created rights, those claims do not survive Ms. Ray's death.[1] Plaintiff's KRS 216.515(6) claim duplicates her previous personal injury allegations at paragraphs 48 through 52 of the Complaint; therefore, *Overstreet* recognized that even such a Subsection (6) claim does not survive the resident's death. Likewise, Plaintiff is not entitled to an award of attorney fees either under the statute or at common law. For all of the above-stated reasons, Defendants respectfully request that Plaintiff's resident's rights claims and her claims brought under KRS 216.515 for actual and punitive damages as well as her claims for attorney's fees now be dismissed.

[1] A compilation of court orders dismissing resident's rights claims under *Overstreet* is attached hereto as Exhibit C. Note that Plaintiff's same arguments were recently before Judge Clouse in the Madison Circuit Court in the Raleigh Olinger case. Plaintiff's arguments were denied and the attached order was entered granted Defendants' motion on July 7, 2016.

1FDA3B2B-DEBC-4954-9147-7DF7894A054C : 000005 of 000018

Respectfully submitted,

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANTS,
KENTUCKY MEDICAL INVESTORS, LLC (GA)
AND LIFE CARE CENTERS OF AMERICA, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 15th day of September, 2016, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507

*/s/ Matthew C. Cocanougher*
ATTORNEY FOR DEFENDANTS,
KENTUCKY MEDICAL INVESTORS, LLC (GA)
AND LIFE CARE CENTERS OF AMERICA, INC.

1:00 PM CI **MADISON** Run Date: 09/09/2015 8:13:52AM DocketList.Rpt

Pr .o @00000014806 09/09/2015 8:13:32AM 4

Court C CIRCUIT COURTRO

Judge HON. JEAN C. LOGUE

**09/09/2015 Court Docket**

Page 1 of 2

Start of docket 1

**4 CI 10-CI-00551 JENNINGS, JAMES W. VS. BEREA AREA DEVELOPMENT, LLC, , ET**

☐

| | | |
|---|---|---|
| ☐ FORGY, LAWRENCE | ATTORNEY FOR DEFENDANT (CIVIL) | FORGY |
| ☐ HARRISON, CHERYL | ATTORNEY FOR DEFENDANT (CIVIL) | HARRISONC |
| ☐ FANNIN, COREY T. | ATTORNEY FOR PLAINTIFF | FANNIN |
| ☐ BROWN, JONAH | CO-COUNSEL | BROWN |
| ☐ FULKERSON, CALVIN R. | CO-COUNSEL | FULKERSON |
| ☐ TREVEY, DAVID A. | CO-COUNSEL | TREV |
| ☐ BEREA AREA DEVELOPMENT, LLC, | DEFENDANT / RESPONDENT | |
| ☐ JOHN DOE 1, | DEFENDANT / RESPONDENT | |
| ☐ JOHN DOE 2, | DEFENDANT / RESPONDENT | |
| ☐ JOHN DOE 3, | DEFENDANT / RESPONDENT | |
| ☐ JOHN DOE 4, | DEFENDANT / RESPONDENT | |
| ☐ JOHN DOE 5, | DEFENDANT / RESPONDENT | |
| ☐ PROVIDER MANAGEMENT & DEVELOPMENT CORP, | DEFENDANT / RESPONDENT | |
| ☐ JENNINGS, JAMES W. | PLAINTIFF / PETITIONER | |

☐ Bail Credit Denied ☐ Danger to self or others ☐ Flight Risk

Bail Set: Posted:

ENTERED A.M./P.M. TIME SEP 10 2015 MADISON CIRCUIT COURT DARLENE SNYDER, CLERK

**OTHER HEARING**

Sch Memo: *RE: ALL MOTIONS*

*MOTION TO ALTER OR AMENDED WITHDRAWN*

MOTION - OTHER ATTORNEY FOR DEFENDANT (CIVIL)

*MOTION TO ELIMINATE AND REDUCE THE STATUTORY JUDGMENT INTEREST RATEPROVIDED IN KRS 630.040*

MOTION - OTHER ATTORNEY FOR DEFENDANT (CIVIL)

*MOTION TO SUSPEND THE STATUTORY JUDGMENT INTEREST RATE PROVIDED IN KRS 360.040*

---

Pursuant to CR 59.01(a), Court grants a new trial. Jury instructions were erroneous based on recent [illegible] Court decision of [illegible] v. [illegible]. Under circumstances, erroneous instructions created a material prejudice such that a new trial is warranted. Court finds that defects can only be corrected with a new trial, unless new trial granted an injustice will result with reasonable certainty.

 Judge Signature: [signature]

EXHIBIT A

1FDA3B2B-DEBC-4954-9147-7DF7894A054C : 000006 of 000018

1FDA3B2B-DEBC-4954-9147-7DF7894A054C : 000007 of 000018

**COMMONWEALTH OF KENTUCKY**
**GRAVES CIRCUIT COURT**
**Civil Action No. 12-CI-355**

**SHERRY WILLIAM-STAVELY, as Administratrix of the Estate of Nancy Summerville, deceased** — **PLAINTIFF**

**VS.**

**KINDRED NURSING CENTERS LIMITED PARTNERSHIP, d/b/a Heritage Manor Health Care Center, et al** — **DEFENDANTS**

## ORDER DISMISSING RESIDENT'S RIGHTS CLAIMS AND ATTENDANT CLAIMS FOR ATTORNEYS FEES

The Defendants have made a Motion to dismiss the Plaintiff's claim based on the resident's rights statute. In doing so the Defendant relies on *Overstreet v. Kindred Nursing Centers Limited Partnership*, 479 S.W. 3d 69 (Ky. 2015). Overstreet held:

> So, to the extent that Overstreet's claims are based upon the common law personal injury cause of action or a wrongful death claim, they survive Gordon's death, and in the normal course of events, could have been brought by Overstreet as Gordon's personal representative. However, as noted above, the statute of limitations for those claims had expired long before the action was initiated. To the extent that the claims are based upon liabilities created by KRS 216.515, and are not simply restatements of the common law personal injury action, KRS 411.140 does not provide for their survival beyond the death of the resident.

What the Court is saying is simply that no claim existing under KRS 216.515 survives the injured party. The only relevant cite to *Overstreet* addressing this is in a footnote to *Extendicare Homes, Inc. v. Whisman*, 478 S.W. 3d 306 (Ky. 2015). In footnote 9 the Court there stated that *Overstreet* held that resident's rights claims,

ENTERED
DATE 6-8-16
HEATHER CLAPP WINFREY, CLERK
GRAVES COUNTY CIRCUIT COURT
BY: D.C.

1FDA3B2B-DEBC-4954-9147-7DF7894A054C : 000008 of 000018

"…except for personal injury or property damage claims falling within the protective scope of KRS 411.140, may be brought only by the 'resident or his guardian' during the resident's lifetime." It does not appear from the language used in Overstreet that any claim under KRS 216.515 survives the injured party. It appears rather that the common law personal injury and wrongful death claims existed prior to the adoption of the statute and continue to exist independently, and are not affected by the bar enacted as part of the resident's rights statute.

Although the Plaintiff argues the Slayer's Statute, it has no application to the case at bar. As to the resident's rights statute, it is not illogical to believe that the Legislature did not want the nursing home resident to bear the cost of litigation, but the same protection was not given to the beneficiaries of the nursing home resident's estate. In any event, *Overstreet* seems clear – actions under KRS 216.515 die with the claimant.

**THEREFORE, IT IS HEREBY ORDERED** that the Defendant's Motion to Dismiss Resident's Rights Claims and Attendant Claims for Attorneys Fees under the resident's rights statute is **GRANTED**.

**DATED:** June 8, 2016

**Timothy C. Stark, JUDGE**
**GRAVES CIRCUIT COURT**

1FDA3B2B-DEBC-4954-9147-7DF7894A054C : 000009 of 000018

**Clerk's Certificate**

I hereby certify that I caused a true and correct attested copy of the foregoing Order to all parties by mailing same as follows:

Hon. Carl R. Wilander
Hon. Benjamin L. Carter
Wilkes & McHugh, P.A.
Tampa Commons, Suite 800
One North Dale Mabry Highway
Tampa, FL 33609
*Counsel for Plaintiff*

Hon. A. Pete Pullen
Hon. Donald L. Miller, II
Hon. Jan G. Ahrens
9300 Shelbyville Road, Suite 400
Louisville, KY 40222
*Counsel for the Defendants*

**on this 8 day of June, 2016 at __________ o'clock ___.m.**

**Heather Clapp Winfrey, CLERK**
**GRAVES CIRCUIT COURT**

**By** [signature]

**/jn**

Tendered 15-CI-00133 06/10/2016 Darlene Snyder, Madison Circuit Clerk

ENTERED
TIME 3:15 A.M. P.M.
JUL 07 2016
MADISON CIRCUIT COURT
DARLENE SNYDER, CLERK

COMMONWEALTH OF KENTUCKY
MADISON CIRCUIT COURT
CASE NO.: 15-CI-133
FIRST DIVISION

JANE OLINGER, as Administratrix of the ESTATE of RALEIGH OLINGER, deceased, PLAINTIFF

v.

PREFERRED CARE OF DELAWARE, INC., et al., DEFENDANTS

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS DISMISSING RESIDENT'S RIGHTS CLAIMS AND ATTENDANT CLAIMS FOR ATTORNEY'S FEES AND PUNITIVE DAMAGES**

Defendants Preferred Care of Delaware, Inc. d/b/a Preferred Care, Inc., Richmond Health Facilities – Madison, LP d/b/a Madison Health and Rehabilitation Center, Kentucky Partners Management, LLC, and Roy T. Baber, in his capacity as Administrator of Madison Health and Rehabilitation Center ("Defendants") have moved for Partial Judgment on the Pleadings regarding Plaintiff's Resident's Rights claims and attendant claim for attorney's fees made pursuant to KRS 216.515(26).

**IT IS HEREBY ORDERED THAT:**

(1) Defendants' motion is **GRANTED**; and

(2) Plaintiff's Resident's Rights claims asserted in the Complaint at Paragraphs 47-51 alleging several violations of the Resident's Rights Act, KRS 216.515, as well as all attendant claims for attorney's fees and punitive damages are **DISMISSED** pursuant to *Overstreet v. Kindred Nursing Centers Limited Partnership*, 479 S.W.3d 69 (Ky. 2015), *reh'g denied* (Feb. 18, 2016).

SO ORDERED THIS the 7 day of July, 2016.

Tendered 15-CI-00133 06/10/2016 Darlene Snyder, Madison Circuit Clerk

EXHIBIT C

1FDA3B2B-DEBC-4954-9147-7DF7894A054C : 000010 of 000018
Presiding Judge: HON. WILLIAM G. CLOUSE (625302)
TD : 000002 of 000003

WILLIAM G. CLOUSE, JR., CIRCUIT JUDGE

Prepared and tendered by:

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ David P. Kaiser
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
David P. Kaiser, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
*Counsel for Defendants*

**CLERK'S CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 7 day of July, 2016, upon the following, via U.S. Mail:

David P. Kaiser, Esq.
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509

Lisa Circeo, Esq.
Ross Mann, Esq.
WILKES & MCHUGH, P.A.
429 N. Broadway
P.O. Box 1747
Lexington, KY 40588-1747

Darlene Snyder / mm
MADISON CIRCUIT CLERK

1FDA3B2B-DEBC-4954-9147-7DF7894A054C : 000011 of 000018

Presiding Judge: HON. WILLIAM G. CLOUSE (625302)

TD : 000003 of 000003

TENDERED 2/29/16
BY [illegible]

COMMONWEALTH OF KENTUCKY
MADISON CIRCUIT COURT
CASE NO.: 15-CI-416
FIRST DIVISION

ENTERED
TIME 2:40 A.M. P.M.
MAR 17 2016
MADISON CIRCUIT COURT
DARLENE SNYDER, CLERK

1FDA3B2B-DEBC-4954-9147-7DF7894A054C : 000012 of 000018

EARNEST CURTIS, as Administrator of the ESTATE of LOIS KELLEY, deceased, PLAINTIFF

v.

PREFERRED CARE OF DELAWARE, INC. d/b/a PREFERRED CARE, INC.; et al. DEFENDANTS

---

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS DISMISSING RESIDENT'S RIGHTS CLAIMS AND ATTENDANT CLAIMS FOR ATTORNEY'S FEES AND PUNITIVE DAMAGES**

---

Defendants, Preferred Care of Delaware, Inc. d/b/a Preferred Care, Inc.; Kentucky Partners Management, LLC; Preferred Care Partners Management Group, L.P.; and Richmond Health Facilities - Kenwood, L.P. d/b/a Kenwood Health and Rehabilitation Center, have moved for Partial Judgment on the Pleadings regarding Plaintiff's Resident's Rights claims and attendant claim for attorney's fees made pursuant to KRS 216.515(26).

**IT IS HEREBY ORDERED THAT:**

(1) Defendants' motion is **GRANTED**; and

(2) Plaintiff's Resident's Rights claims asserted in the Complaint at Paragraphs 47-51 alleging several violations of the Resident's Rights Act, KRS 216.515, as well as all attendant claims for attorney's fees and punitive damages are **DISMISSED** pursuant to *James Overstreet, Administrator of the Estate of Lula Belle Gordon, Deceased v. Kindred Nursing Centers Limited Partnership, d/b/a Harrodsburg Health Care*

*Center, et al.*, 2013-SC-000620, 2015 WL 4967188 (Aug. 20, 2015), *reh'g denied*, February 18, 2016.

SO ORDERED THIS the 17 day of MARCH 2016.

WILLIAM G. CLOUSE, JR., CIRCUIT JUDGE

Prepared and tendered by:

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
David P. Kaiser, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
*Counsel for Defendants*

**CLERK'S CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 17 day of March, 2016, upon the following, via U.S. Mail:

David P. Kaiser, Esq.
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509

Corey T. Fannin, Esq.
Wilkes & McHugh, P.A.
429 N. Broadway
P.O. Box 1747
Lexington, KY 40588-1747

MADISON CIRCUIT CLERK

1FDA3B2B-DEBC-4954-9147-7DF7894A054C : 000013 of 000018

1FDA3B2B-DEBC-4954-9147-7DF7894A054C : 000014 of 000018

NO. 13CI6279

JEFFERSON CIRCUIT COURT
DIVISION THIRTEEN (13)
ANN BAILEY SMITH, JUDGE

DORIS ANDERSON DALE,
AS ADMINISTRATORS OF THE ESTATE
OF SHARON FOX, DECEASED

PLAINTIFF

V.

**OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIMS PURSUANT TO KRS 216.515**

SUN HEALTHCARE GROUP, ET AL

DEFENDANTS

*******

This case is before the Court on the Defendants' Motion to Dismiss Plaintiff's Statutory Resident's Rights Claims and Attendant Claims for Attorney's Fees. Plaintiff has filed a response to which Defendant has filed a reply. The causes of action in the complaint are based on the common law and Kentucky's Resident's Rights statute found in KRS 216.515. Defendant's move to dismiss the statutory claims, arguing that the Kentucky Supreme Court's decision in Overstreet v. Kindred Nursing Centers Limited Partnership, 2013 – SC – 000620, 2015 WL 4967188 (Ky. Aug 20, 2015) rehearing denied (Fed. 18, 2016), dictates that, with very limited exceptions, resident's rights claims do not survive the resident's death. Plaintiff agrees in her response and memorandum that the Overstreet decision is controlling on the viability of Plaintiff's claims under the Resident's Rights Statute. KRS 216.510 (26) expressly vests the right to assert a cause of action solely in the resident or her guardian, not in the personal representative of the resident or the executrix of the estate of a deceased person who was once a resident.

Plaintiff cites KRS 411.140 as authority for the administratrix to keep these claims alive after the resident's death. As recognized by the Kentucky Supreme Court in Overstreet, KRS 411.140 is limited to personal injury or for injury to property. The statute reads:

1FDA3B2B-DEBC-4954-9147-7DF7894A054C : 000015 of 000018

> No right of action for personal injury or for injury to real or personal property shall cease or die with the person injuring or injured, except actions for slander, libel, criminal conversation, and so much of the action for malicious prosecution as is intended to recover for the personal injury.

Plaintiff's complaint seeks, for example, recovery for violations of the deceased's "privacy in treatment and in care for… her personal needs," for "maintaining body hygiene and good grooming," and for "[v]iolation of the right to have an adequate and appropriate resident care plan developed, implemented, and updated to meet her needs." Plaintiff's complaint, Paragraph 46. These statutory causes of action based on KRS 216.515 cannot survive the resident's death by virtue of KRS 411.140 which is limited to personal injury or injury to property.

This Court does agree with Plaintiff that Paragraph 46 (a) of the complaint alleging abuse and neglect survives in light of the Overstreet holding and KRS 411.140. The Defendants however, can rest assured that should this case be tried by a jury, the instructions will be tailored so that Plaintiff will not recover twice for the same injuries on different theories of liability.

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiff's Statutory Residents' Rights Claims is **GRANTED** and the claims against Defendants made pursuant to the Kentucky Residents' Rights statutes, KRS 216.510 et seq. are hereby **DISMISSED WITH PREJUDICE** with the exception of the claim in paragraph 46 (a) of Plaintiff's Complaint.

[signature]

**ANN BAILEY SMITH, JUDGE**
**JEFFERSON CIRCUIT COURT**

May 18, 2016
**DATE**

1FDA3B2B-DEBC-4954-9147-7DF7894A054C : 000016 of 000018

*cc:* *Brian M. Jasper*
*Counsel for Plaintiff*

*Francisco D. Savinon, Jr.*
*Counsel for Defendants*

ENTERED TIME 12:55 A.M./P.M. MAY 19 2016 MADISON CIRCUIT COURT DARLENE SNYDER, CLERK

COMMONWEALTH OF KENTUCKY
MADISON CIRCUIT COURT
DIVISION I
CASE NO.: 13-CI-00176

SHARON BRESHERS, as Administratrix of the Estate of GERALDINE M. MCCAFFERTY, Deceased, PLAINTIFF

v.

EXTENDICARE, INC.; et al. DEFENDANTS

**AGREED ORDER OF PARTIAL DISMISSAL**

Upon Defendants' Motion made pursuant to *Overstreet v. Kindred Nursing Centers Limited Partnership*, 479 S.W.3d 69 (Ky. 2015), *reh'g denied* (Feb. 18, 2016) to dismiss all of Plaintiff's claims for violations of KRS 216.515, and the Court being otherwise sufficiently advised, Plaintiff has agreed to voluntarily dismiss these claims.

It is hereby ORDERED that all of Plaintiff's claims for violations of the Kentucky Resident's Rights Act, KRS 216.515, including Plaintiff's claims for attorneys' fees, are hereby dismissed with prejudice. The parties shall bear their own costs.

This is a final and appealable order there being no just reason for delay.

So ORDERED the 19 day of MAY, 2016.

WILLIAM G. CLOUSE, JR., CIRCUIT JUDGE

**Have seen and agreed:**

*/s/ Ross Mann, with permission*
Ross Mann, Esq.
WILKES & MCHUGH, P.A.
*Counsel for Plaintiff*

1FC4B9AF-4A3B-41D2-8B9D-75E5EC8FAFE1 : 000004 of 000005
1FDA3B2B-DEBC-4954-9147-7DF7894A054C : 000017 of 000018
Presiding Judge: HON. WILLIAM G. CLOUSE (625302)
TD : 000001 of 000002

1FDA3B2B-DEBC-4954-9147-7DF7894A054C : 000018 of 000018

1FC4B9AF-4A3B-41D2-8B5D-76E5EC8FAFE1 : 000005 of 000005

Presiding Judge: HON. WILLIAM G. CLOUSE (625302)

TD : 000002 of 000002

/s/ David Kaiser
David P. Kaiser, Esq.
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
*Counsel for Defendants*

**CLERK'S CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 19th day of May, 2016, upon the following:

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
David P. Kaiser, Esq.
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
*Counsel for Defendants*

Ross Mann, Esq.
WILKES & MCHUGH, P.A.
429 N. Broadway
P.O. Box 1747
Lexington, KY 40588-1747
*Counsel for Plaintiff*

Darlene Snyder / JK
MADISON CIRCUIT CLERK

9A14A4A9-603C-4049-A503-CAD287894206 : 000001 of 000042

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the ESTATE of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

* * * * * * * * * * *

**DEFENDANT'S REPLY FOR ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View") and Life Care Centers of America, Inc. ("Defendants"), by counsel, hereby respectfully submit this reply in support of Defendants' motion to for partial judgment on the pleadings, and state as follows:

9A14A4A9-603C-4049-A503-CAD287894206 : 000002 of 000042

## INTRODUCTION

Plaintiff alleged negligence *per se* in her Complaint (*see* Compl. ¶ 32), but now, in response to Defendants' motion, Plaintiff argues "there is no negligence per se claim in Plaintiff's Complaint, in the sense of a statutory cause of action." (Resp., p. 3). Because the allegations in paragraph 32 (a)-(e) of the Complaint are redundant, immaterial, or impertinent,[1] they should be dismissed.

To the extent that other allegations in the Complaint reference violations of state or federal statutory and regulatory law, and Plaintiff still claims state and federal statutory and regulatory law is somehow "imported" into this case to set the standard of care, these allegations also fail to state a claim for relief as a matter of law.

This is a straightforward health care negligence case and it should be tried as one. Plaintiff's attempt to use the verbatim language of state and federal regulations to "guide the fact finder," besides being unnecessary in this case, is improper and contrary to Kentucky law. The pertinent issue in this litigation is whether the Defendants deviated from the standard related to the care they provided to Helen Ray. Under Kentucky law, that standard of care is properly defined as the level of care that would be provided by "a reasonably competent practitioner" under similar circumstances.[2] KRS §446.070 does not apply and Plaintiff seems to have conceded as much. Accordingly, the Court should dismiss all claims based on violations of federal statutes and regulations.

[1] Under CR 12.06, the Court may strike from the Complaint "any sham, redundant, immaterial, impertinent or scandalous matter." Here, the allegations could be struck as immaterial because the issue (a) is plainly evident on the face of Plaintiff's own pleadings, (b) no substantial question of fact or law is raised, and (c) no extra-judicial material need be considered.

[2] *Hyman & Armstrong, PSC v. Gunderson*, 279 S.W.3d 93, 113 (Ky. 2008).

9A14A4A9-603C-4049-A503-CAD287894206 : 000003 of 000042

## LEGAL ARGUMENT

### A. FEDERAL CLAIMS MUST BE DISMISSED

It is well-established in Kentucky that violations of federal laws and regulations do not create a cause of action based on KRS §446.070. Thus, Plaintiff may not assert a negligence *per se* claim under Kentucky law for violation of the federal statutes and regulations at issue in this action.[3] Numerous courts in Kentucky have come to this conclusion, and dismissed claims based on both these Federal statutes and their Kentucky counterparts. *See* Collective Exhibit A. In fact, the Kentucky Court of Appeals recently affirmed the Magoffin Circuit Court's dismissal of negligence per se claims in a medical malpractice case involving a nursing home. *See Dinah Puckett, as Administratrix of the Estate of Bertha Blanton v. Salyersville Healthcare Center, et al*, 2015 WL 3643437 (Ky. App. 2015) (unpublished) at Exhibit B.

Plaintiff relies heavily on the recent unpublished case *Hazard Nursing Home, Inc. v. Ambrose* for the proposition that "[t]he Kentucky Court of Appeals has in fact permitted federal and state regulations to establish the standard of care in these circumstances of an [o]rdinary [n]egligence claim." (Resp. p. 5). This argument fails and must be rejected because *Ambrose* did not consider or decide the issue for which Plaintiff cites it here. Rather, the court merely commented on the evidence presented in that case, and made no determination as to whether statutes set the standard of care.

Plaintiff also cites *Joseph S. v. Hogan*,[4] and *Grammer v. John J. Kane Regional Centers-Glen Hazel*,[5] which discussed whether the U.S. Congress intended the Federal Nursing Home

---

[3] *See Young v. Carran*, 289 S.W.3d 586, 589 (Ky. App. 2009); *T&M Jewelry, Inc. v. Hicks*, 189 S.W.3d 526, 530 (Ky. 2006); *Alderman v. Bradley*, 957 S.W.2d 264, 266-67 (Ky. App. 1997); *St. Martin v. KFC Corp*., 935 F. Supp. 898, 907 (W.D. Ky. 1996); *Jackson v. JB Hunt Transport, Inc.*, 384 S.W.3d 177, 182 (Ky. App. 2012); *Cummins v. BIC USA, Inc.*, No. 1:08-CV-00019, 2011 WL 1399768, at *3 (W.D. Ky. April 13, 2011).

[4] *Joseph S. v. Hogan*, 561 F.Supp.2d 280, 303 (E.D.N.Y. 2008).

9A14A4A9-603C-4049-A503-CAD287894206 : 000004 of 000042

Reform Amendments to create a "federal right" enforceable directly from the statute itself under an implied private right of action under 23 U.S.C. § 1983.[6] The fact that both *Joseph S.* and *Grammar* addressed whether the FNHRA was enforceable against **state government entities** pursuant to 23 U.S.C. § 1983, not whether it created a private right of action against private facilities, was a distinction that the *Grammar* court recognized to be significant. Accordingly, those cases are distinguishable. More recent decisions have appropriately rejected the minority view represented in these opinions as inconsistent with U.S. Supreme Court precedent.[7]

Plaintiff's reliance on the federal cases *Blessing v. Freestone*,[8] and *DeJesus v. U.S. Dept. of Veterans Affairs*,[9] is likewise misplaced. Both cases are factually distinguishable from the case at bar and inapplicable. In *Blessing* the U.S. Supreme Court actually held Title IV–D did not give individuals a federal right to force a state agency to substantially comply with Title IV–D.[10] In *DeJesus*, the court held it was unlikely Pennsylvania would adopt a general common-law duty to commit a patient or otherwise protect third parties from a mental health patient absent a special relationship.[11] Regardless, the availability of a federal-law private right of action under the FNHRA is irrelevant here since the case at bar is obviously not a federal court action, and Plaintiff is not asserting a private right of action under federal law.

---

[5] *Grammer v. John J. Kane Regional Centers-Glen Hazel*, 570 F.3d 520, 525 (3d Cir. 2009).
[6] *See Joseph S.*, 561 F.Supp.2d at 303, and *Grammer*, 570 F.3d at 525.
[7] *See Duncan v. Johnson-Mathers*, No. 5:09-CV-00417-KKC, 2010 WL 3000718, *8 (E.D. Ky. July 28, 2010) (declining "to adopt the holding of the Third Circuit in *Grammar* because it appears to be inconsistent with the Supreme Court's admonition" that "statutes only display a Congressional intent to create federal rights when their text has an unmistakable focus on the benefitted class"), and *see Baum v. N. Dutchess Hosp.*, 764 F. Supp. 2d 410, 423 (N.D.N.Y. 2011).
[8] *Blessing v. Freestone*, 520 U.S. 329, 332-333 (1997).
[9] *DeJesus v. U.S. Dept. of Veterans Affairs*, 479 F.3d 271, 281-282 (3rd Cir. 2007).
[10] *Blessing*, 520 U.S. at 332-333.
[11] *DeJesus*, 479 F.3d at 281-282.

9A14A4A9-603C-4049-A503-CAD287894206 : 000005 of 000042

Plaintiff's reliance on *Carman v. Dunaway Timber Co., Inc.*,[12] and *Hargis v. Baize*,[13] for the proposition that federal regulations, imported by state regulations, can and do serve as standards of care is equally misplaced. Unlike the regulations at issue in *Carman* and *Hargis*, Kentucky nursing home statutes do not "import" federal regulations. *Carman* and *Hargis* dealt with Kentucky's OSHA regulations, which expressly incorporate federal OSHA regulations wholesale, and adopt the federal regulations as state law. The regulation to which Plaintiff cites, 902 KAR 20:026 (*see* Resp., p. 10), does no such thing. It merely defines the legal role of the designated "licensee" as including responsibility for ensuring compliance with applicable federal, state and local laws. No such exception applies here.

*Carman* stands for the black letter proposition that in order for a violation to become negligence *per se* (1) the plaintiff must be a member of the class of persons intended to be protected by the regulation, and (2) the injury suffered must be an event which the regulation was designed to prevent.[14] In that case, the Kentucky Supreme Court actually held the plaintiff "**was not a member of the class of persons intended to be protected**" by the regulation, so the duty owed to him was "**defined by common law**," which for an independent logger was "that degree of care exercised by reasonable and prudent timber companies toward persons who sell and deliver logs to their places of business."[15] Thus, this case directly contradicts Plaintiff's argument, and squarely supports Defendants' position that the standard of care is defined here as the level of treatment that would be provided by "a reasonably competent practitioner" under

[12] *Carman v. Dunaway Timber Co., Inc.*, 949 S.W.2d 569, 570 (Ky. 1997).
[13] *Hargis v. Baize*, 168 S.W.3d 36 (Ky. 2005).
[14] *Carman*, 949 S.W.2d at 570.
[15] *Id.* at 571.

9A14A4A9-603C-4049-A503-CAD287894206 : 000006 of 000042

similar circumstances, and not by a statute establishing standards for eligibility of Medicaid funding.[16]

**B. STATE CLAIMS MUST BE DISMISSED**

Kentucky law clearly establishes that the specific statutory remedy provided in KRS §216.515(26) precludes the use of KRS §446.070 to infer additional statutory claims under other provisions of Chapter 216 or its implementing regulations and forecloses implication of a generalized negligence *per se* remedy under KRS §446.070.[17] Indeed, Kentucky circuit courts have upheld this rule.[18]

Plaintiff's reliance in their Response on language from KRS §216.515(26) that the private right is "in addition to ... other legal and administrative remedies" is misplaced. That sentence does not purport to authorize any new or additional rights of action for violations of other provisions of Chapter 216 or its implementing regulations; it merely clarifies that KRS §216.515(26) does not preempt pre-existing common law or remedies, like administrative complaint remedies or the right to sue for common-law negligence. Notably, the FNHRA contains similar language concerning the continued availability of other remedies, and courts have interpreted that language as evidence the legislature did not intend to create additional statutory rights of action.[19] The same is true here.

Plaintiff contends their experts will allegedly incorporate regulatory standards into the applicable ordinary negligence standard of care. Consequently, they contend that it is an "issue

[16] *Hyman & Armstrong, PSC v. Gunderson*, 279 S.W.3d 93, 113 (Ky. 2008).

[17] *See Travelers Indem. Co. v. Reker*, 100 S.W.3d 756, 763 (Ky. 2003); *Gryzb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985); *Thompson v. Breeding*, 351 F.3d 732,737 (6th Cir. 2004); *Franklin County, Ky. v. Travelers Prop. Cas. Ins. Co.*, 368 Fed. Appx. 669, 672-73 (6th Cir. 2010); *Schwindel v. Meade County*, 113 S.W.3d 159, 168 (Ky. 2003); *Young*, 289 S.W.3d at 589.

[18] *See Francisco, supra,* and *Webb, supra* (dismissing these claims with prejudice).

[19] *See Baum*, 764 F. Supp. 2d at 426 ("[R]ather than establishing a new federally enforceable right, the statute explicitly announces that a resident may pursue any other federal and common law right.").

9A14A4A9-603C-4049-A503-CAD287894206 : 000007 of 000042

for the fact finder" as to whether the fact finder decides to accept their expert's opinions, relying on *Miller, ex rel. Monticello Baking Co. v. Marymount Medical Center*.[20] Their argument places the cart before the horse. It is palpably improper for a court to ask a jury to determine if a plaintiff stated a cause of action in the first place. *Miller* instructs that the court's role is to decide legal questions like this before trial. For example, in *Miller* the court decided whether the "intervening event" was or was not a "superseding cause" before trial.[21] Here, Plaintiff wrongly presupposes a new cause of action exists in the first place.[22] *Miller* does not support Plaintiff.

Plaintiff wrongly assumes that by simply supplying an expert witness they can introduce testimony concerning whether a statute was pertinent, set the standard of care, and was violated. Plaintiff's notion about expert testimony being able to save a legally unsupported claim is wrong. Plaintiff assumes that if there is expert testimony on the question, Defendants cannot possibly succeed on a motion for partial summary judgment. This is a matter of law for the Court to decide. Plaintiff states their "experts will in fact establish that the statutes and regulations in issue are part of the standard of care in this whole field— the business of operating a nursing facility—and this is a determination that should be left to experts and not somehow foreclosed by a court." (Resp., p. 4).

Again, this is a matter of law for the Court to decide. Based on Plaintiff's argument, Defendants will continue to be exposed to negligence *per se* claims until some point when their expert has finally had the chance to utilize the regulatory language in an attempt to define the alleged standard of care. Such a result would be preposterous. Kentucky law is clear that the

---

[20] *Miller, ex rel. Monticello Baking Co. v. Marymount Medical Center*, 125 S.W.3d 274, 287 (Ky. 2004).
[21] *Miller*, 125 S.W.3d 287.
[22] *See St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 534 -535 (Ky. 2011) (holding violations of federal laws and regulations and the laws of other states do not create a cause of action).

9A14A4A9-603C-4049-A503-CAD287894206 : 000008 of 000042

reasonably competent practitioner standard is applicable here. Consequently, this matter is ripe for ruling.

Using Plaintiff's argument, if the standard of care were defined only by language from a statute, purported opinion testimony on breach would be duplicative and unnecessary. KRS §446.070 does not address the discovery or admissibility of evidence from experts, or the burdens and presumptions concerning expert testimony on this issue; rather, it establishes a cause of action for negligence *per se* based on a violation of other statutes. Questions about the proper scope and subject matter of expert testimony concerning the standard of care would be more properly addressed in a motion *in limine* prior to trial; they have no relevance as to whether Plaintiff may maintain a claim under KRS §446.070.

Plaintiff cannot use the doctrine of negligence *per se* to circumvent the well-established burden they have to prove the relevant standard of care in a health care negligence case and that the standard was violated.[23] Allowing these claims to go forward would radically alter established Kentucky law concerning health care negligence claims, and controlling law does not permit this result.

## **CONCLUSION**

The federal statutes and regulations cannot form the basis for the standard of care. To do so would be to allege negligence per se based upon Federal statutes, which is explicitly forbidden under Kentucky law. These statutes exist to ensure a facility's compliance for reimbursement purposes, and do not demonstrate congressional intent to create a private cause of action. Numerous courts in Kentucky have come to this conclusion, and dismissed claims based on both these Federal statutes and their Kentucky counterparts. *See* Collective Exhibit A. In fact, the

[23] *Hyman & Armstrong, PSC,* 279 S.W.3d at 113.

9A14A4A9-603C-4049-A503-CAD287894206 : 000009 of 000042

Kentucky Court of Appeals recently affirmed the Magoffin Circuit Court's dismissal of negligence per se claims in a medical malpractice case involving a nursing home. *See Dinah Puckett, as Administratrix of the Estate of Bertha Blanton v. Salyersville Healthcare Center, et al*, 2015 WL 3643437 (Ky. App. 2015) (unpublished) at Exhibit B. The same should be done here.

For the foregoing reasons, Defendant's motion for partial judgment on the pleadings should be granted in its entirety and the Order tendered therewith entered by this Arbitrator.

Respectfully submitted,

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*<u>/s/ Matthew C. Cocanougher</u>*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANTS,
KENTUCKY MEDICAL INVESTORS, LLC (GA)
AND LIFE CARE CENTERS OF AMERICA, INC.

9A14A4A9-603C-4049-A503-CAD287894206 : 000010 of 000042

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 15th day of September, 2016, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507

*/s/ Matthew C. Cocanougher*
ATTORNEY FOR DEFENDANTS,
KENTUCKY MEDICAL INVESTORS, LLC (GA) AND LIFE CARE CENTERS OF AMERICA, INC.

9A14A4A9-603C-4049-A503-CAD287894206 : 000011 of 000042

TENDERED 3/3/16
BY DA

COMMONWEALTH OF KENTUCKY
MADISON CIRCUIT COURT
CASE NO.: 15-CI-416
FIRST DIVISION

ENTERED
TIME 2:45 A.M./P.M.
MAR 17 2016
MADISON CIRCUIT COURT
DARLENE SNYDER, CLERK

EARNEST CURTIS, as Administrator of the ESTATE of LOIS KELLEY, deceased,

PLAINTIFF

v.

PREFERRED CARE OF DELAWARE, INC. d/b/a PREFERRED CARE, INC.; et al.

DEFENDANTS

**ORDER SUSTAINING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Defendants, Preferred Care of Delaware, Inc. d/b/a Preferred Care, Inc.; Kentucky Partners Management, LLC; Preferred Care Partners Management Group, L.P.; Richmond Health Facilities - Kenwood, L.P. d/b/a Kenwood Health and Rehabilitation Center; and Glenn Cox, in his capacity as Administrator of Kenwood Health and Rehabilitation Center, have moved for Partial Judgment on the Pleadings regarding Plaintiff's KRS 446.070 negligence *per se* claims based on various violations of federal and state statutes and regulations, and the Court being otherwise sufficiently advised;

**IT IS HEREBY ORDERED THAT:**

(1) Plaintiff's claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of "applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII and XIX of the Social Security Act" are **DISMISSED** with prejudice. (Compl. ¶ 49(f)). Kentucky law precludes any claim for negligence per se under KRS 446.070 or



9A14A4A9-603C-4049-A503-CAD287894206 : 000012 of 000042

otherwise, based on alleged violations of federal statutes or regulations. Also the federal statutes and regulations concerning certification of long-term care facilities, including particularly the Federal Nursing Home Reform Act ("FNHRA") and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(2) Plaintiff's claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of provisions of KRS Chapter 216 and any administrative regulations promulgated thereunder concerning certification of nursing homes, are **DISMISSED** with prejudice. (Compl. ¶31(a),(b), and ¶ 49(f). The specific statutory remedy provided in KRS 216.515(26) precludes the use of KRS 446.070 to infer additional statutory claims under other provisions of Chapter 216 or its implementing regulations. Also, the state statutes and regulations concerning certification of long-term care facilities, including KRS Chapter 216 and 216B and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(3) Plaintiff's claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of KRS 209.005, *et seq.* and any administrative regulations promulgated thereunder, including but not limited to 922 KAR 5:070, are **DISMISSED** with prejudice. (Compl. ¶31(a)). These provisions establish a committee and protocol for investigating elder abuse and neglect and providing the necessary protective services when the need is found, but do not contain any provisions concerning the care of residents in long-term care facilities. Neither the statute nor its implementing regulations establish any substantive standards of care that could be the basis for a negligence *per se* claim, nor evince an intent to create enforceable rights for the benefit of individual nursing home residents.

9A14A4A9-603C-4049-A503-CAD287894206 : 000013 of 000042

SO ORDERED THIS the 17 day of MARCH, 2016.

WILLIAM G. CLOUSE, JR., CIRCUIT JUDGE

Prepared and tendered by:

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
David P. Kaiser, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
*Counsel for Defendants*

**CLERK'S CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 17 day of March, 2016, upon the following, via U.S. Mail:

David P. Kaiser, Esq.
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509

Corey T. Fannin, Esq.
Wilkes & McHugh, P.A.
429 N. Broadway
P.O. Box 1747
Lexington, KY 40588-1747

MADISON CIRCUIT CLERK

11/4/13. CM

300

COMMONWEALTH OF KENTUCKY
MADISON CIRCUIT COURT
DIVISION I
CIVIL ACTION NO. 12-CI-00795

FLONNIE COFFEY and SHERRA MORGAN, as Co-Administratrixes of the Estate of JAMES H. COFFEY, deceased, and FLONNIE COFFEY, Individually — PLAINTIFFS

v.

EXTENDICARE, INC.;
FIR LANE TERRACE CONVALESCENT CENTER, INC. d/b/a KENWOOD HEALTH & REHABILITATION CENTER f/k/a RICHMOND HEALTH & REHABILITATION COMPLEX-KENWOOD;
EXTENDICARE HEALTH NETWORK, INC.;
EXTENDICARE HOMES, INC.;
EXTENDICARE REIT;
EXTENDICARE, L.P.;
EXTENDICARE HOLDINGS, INC.;
EXTENDICARE HEALTH SERVICES, INC.;
EXTENDICARE HEALTH FACILITY HOLDINGS, INC.; AND
JOHN DOES 1 THROUGH 5, UNKNOWN DEFENDANTS — DEFENDANTS

---

**ORDER SUSTAINING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

---

Defendants have moved for Partial Judgment on the Pleadings regarding Plaintiffs' KRS §446.070 negligence *per se* claims based on various violations of federal and state statutes and regulations, and the Court being otherwise sufficiently advised;

**IT IS HEREBY ORDERED THAT:**

(1) Plaintiffs' claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of "applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII and XIX of the Social Security Act" are **DISMISSED** with prejudice. (Compl. ¶ 30(e)). Kentucky law precludes any claim for negligence *per se* under KRS §446.070 or otherwise, based on alleged violations of federal statutes or regulations. Also

9A14A4A9-603C-4049-A503-CAD287894206 : 000014 of 000042

9A14A4A9-603C-4049-A503-CAD287894206 : 000015 of 000042

the federal statutes and regulations concerning certification of long-term care facilities, including particularly the Federal Nursing Home Reform Act ("FNHRA") and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(2) Plaintiffs' claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of provisions of KRS Chapter 216 and the regulations promulgated thereunder concerning certification of nursing homes are **DISMISSED** with prejudice. (Compl. ¶ 30). The specific statutory remedy provided in KRS §216.515(26) precludes the use of KRS §446.070 to infer additional statutory claims under other provisions of Chapter 216 or its implementing regulations. Also, the state statutes and regulations concerning certification of long-term care facilities, including KRS Chapter 216 and 216B and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(3) Plaintiffs' claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of KRS §209.005 *et seq*. and any administrative regulations promulgated thereunder, including but not limited to 922 KAR 5:070, are **DISMISSED** with prejudice. (Compl. ¶30(a)). These provisions establish a committee and protocol for investigating elder abuse and neglect and providing the necessary protective services when the need is found, but do not contain any provisions concerning the care of residents in long-term care facilities. Neither the statute nor its implementing regulations establish any substantive standards of care that could be the basis for a negligence *per se* claim, nor evince an intent to create enforceable rights for the benefit of individual nursing home residents.

9A14A4A9-603C-4049-A503-CAD287894206 : 000016 of 000042

(4) Plaintiffs' claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of state criminal laws, including KRS §508.090 *et seq.*, KRS §530.080 *et seq.*, and §506.080 *et seq.*, are **DISMISSED** with prejudice. (Compl. ¶ 30(b)-(d)). These statutes are intended to benefit the general public, not to create specific benefits or enforceable rights for individuals damaged by their violation, and thus cannot give rise to a claim for negligence *per se* under KRS §446.070.

This Order is final and appealable ~~and there is~~ no just cause for delay.

SO ORDERED THIS the 18 day of December, 2013.

WILLIAM G. CLOUSE, JR., JUDGE
MADISON CIRCUIT COURT, DIVISION I

Prepared and Tendered by:

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**

Donald L. Miller, Esq.
J. Peter Cassidy, II, Esq.
David P. Kaiser, Esq.
2452 Sir Barton Way, Suite 300
Lexington, Kentucky 40509
Telephone: (859) 226-0057
Facsimile: (859) 226-0059
*Counsel for Defendants*

9A14A4A9-603C-4049-A503-CAD287894206 : 000017 of 000042

**CLERK'S CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing has been served this the 19 of Dec, 2013, via U.S. Mail Service, postage prepaid, upon the following:

Donald L. Miller, Esq.
J. Peter Cassidy, II, Esq.
David P. Kaiser, Esq.
**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
2452 Sir Barton Way, Suite 300
Lexington, Kentucky 40509

Carl R. Wilander, Esq.
**WILKES & MCHUGH, P.A.**
Tampa Commons
One North Dale Mabry Hwy, Ste. 800
Tampa, Florida 33609

CLERK, MADISON CIRCUIT COURT

9A14A4A9-603C-4049-A503-CAD287894206 : 000018 of 000042

COMMONWEALTH OF KENTUCKY
MADISON CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 12-CI-514

MICHAEL WEBB AS ADMINISTRATOR OF THE ESTATE OF DORIS WEBB, DECEASED — PLAINTIFF

v. **ORDER**

EXTENDICARE, INC.; FIR LANE TERRACE CONVALESCENT CENTER, INC. d/b/a KENWOOD HEALTH & REHABILITATION CENTER f/k/a RICHMOND HEALTH & REHABILITATION COMPLEX-KENWOOD; EXTENDICARE HEALTH NETWORK, INC.; EXTENDICARE HOMES, INC.; EXTENDICARE REIT; EXTENDICARE L.P., EXTENDICARE HOLDINGS, INC.; EXTENDICARE HEALTH SERVICES, INC. EXTENDICARE HEALTH FACILITY HOLDINGS, INC. AND JOHN DOES 1 THROUGH 5, UNKNOWN DEFENDANTS — DEFENDANTS

* * * * * * * * * *

Defendants have moved to dismiss Plaintiff's KRS 446.070 negligence *per se* claims based on various violations of federal and state statutes and regulations, and the Court being otherwise sufficiently advised;

IT IS HEREBY ORDERED THAT:

(1) Plaintiff's claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of "applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII and XIXI of the Social Security Act" are DISMISSED with prejudice. (Compl. ¶ 31.) Kentucky law precludes any claim for negligence *per se*, under KRS 446.070 or otherwise, based on alleged violations of federal statutes or regulations. Also, the federal statutes and regulations concerning certification of long-term care facilities, including particularly the Federal Nursing Home Reform Act ("FNHRA") and regulations promulgated

9A14A4A9-603C-4049-A503-CAD287894206 : 000019 of 000042

thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(2) Plaintiff's claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of provisions of KRS Chapter 216 and the regulations promulgated thereunder concerning certification of nursing homes are DISMISSED with prejudice. (Compl. ¶ 31.) The specific statutory remedy provided in KRS 216.515(26) precludes the use of KRS 446.070 to infer additional statutory claims under other provisions of Chapter 216 or its implementing regulations. Also, the state statutes and regulations concerning certification of long-term care facilities, including KRS Chapter 216 and 216B and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(3) Plaintiff's claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of KRS 209.005 *et seq.* and any administrative regulations promulgated thereunder, including but not limited to 922 KAR 5:070, are DISMISSED with prejudice. (Compl. ¶ 31.) These provisions establish a committee and protocol for investigating elder abuse and neglect and providing the necessary protective services when the need is found, but do not contain any provisions concerning the care of residents in long-term care facilities. Neither the statute nor its implementing regulations establish any substantive standards of care that could be the basis for a negligence *per se* claim, nor evince an intent to create enforceable rights for the benefit of individual nursing home residents.

(4) Plaintiff's claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of state criminal laws, including KRS 508.090 *et seq*, KRS 530. 080 *et seq*, and 506.080 *et seq*, are DISMISSED with prejudice. (Compl. ¶ 31.) These statutes are intended to

9A14A4A9-603C-4049-A503-CAD287894206 : 000020 of 000042

benefit the general public, not to create specific benefits or enforceable rights for individuals damaged by their violation, and thus cannot give rise to a claim for negligence *per se* under KRS 446.070.

This Order is final and appealable and there is no just cause for delay.

So Ordered this the 18 day of March, 2013.

JUDGE JEAN C. LOGUE

**Tendered by:**

Edmund J. Benson
Kathryn T. Martin

**CLERK'S CERTIFICATE OF SERVICE**

This is to certify that a true and accurate copy of the foregoing was served U.S. mail, first class, postage prepaid, on the 19th day of March, 2013, upon:

Lisa E. Circeo
WILKES & MCHUGH, P.A.
429 North Broadway
P.O. Box 1747
Lexington, KY 40588-1747
**COUNSEL FOR PLAINTIFF**

Edmund J. Benson
Kathryn T. Martin
Frost Brown Todd, LLC
250 West Main Street, Suite 2800
Lexington, KY 40507
**COUNSEL FOR DEFENDANTS**

Dariana Snyder /BO
CLERK, MADISON CIRCUIT COURT

LBXLibrary LR04669.0598387 541803vv1

9A14A4A9-603C-4049-A503-CAD287894206 : 000021 of 000042

COMMONWEALTH OF KENTUCKY
MADISON CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 12-CI-876

MARY FRANCISCO PLAINTIFF

v. **ORDER**

EXTENDICARE, INC.; FIR LANE TERRACE CONVALESCENT CENTER, INC., d/b/a MADISON HEALTH & REHABILITATION CENTER; EXTENDICARE HOMES, INC.; EXTENDICARE HEALTH NETWORK, INC.; EXTENDICARE REIT; EXTENDICARE L.P.; EXTENDICARE HOLDINGS, INC.; EXTENDICARE HEALTH SERVICES, INC.; AND JOHN DOES 1 THROUGH 5, UNKNOWN DEFENDANTS DEFENDANTS

* * * * * * * * * *

Defendants have moved to dismiss Plaintiff's KRS 446.070 negligence *per se* claims based on various violations of federal and state statutes and regulations, and the Court being otherwise sufficiently advised;

IT IS HEREBY ORDERED THAT:

(1) Plaintiff's claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of "applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII and XIXI of the Social Security Act" are DISMISSED with prejudice. (Compl. ¶ 29(e) and 47(f)). Kentucky law precludes any claim for negligence *per se*, under KRS 446.070 or otherwise, based on alleged violations of federal statutes or regulations. Also, the federal statutes and regulations concerning certification of long-term care facilities, including particularly the Federal Nursing Home Reform Act ("FNHRA") and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

9A14A4A9-603C-4049-A503-CAD287894206 : 000022 of 000042

(2) Plaintiff's claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of provisions of KRS Chapter 216 and the regulations promulgated thereunder concerning certification of nursing homes are DISMISSED with prejudice. (Compl. ¶ 29). The specific statutory remedy provided in KRS 216.515(26) precludes the use of KRS 446.070 to infer additional statutory claims under other provisions of Chapter 216 or its implementing regulations. Also, the state statutes and regulations concerning certification of long-term care facilities, including KRS Chapter 216 and 216B and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(3) Plaintiff's claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of KRS 209.005 *et seq.* and any administrative regulations promulgated thereunder, including but not limited to 922 KAR 5:070, are DISMISSED with prejudice. (Compl. ¶ 29(a)). These provisions establish a committee and protocol for investigating elder abuse and neglect and providing the necessary protective services when the need is found, but do not contain any provisions concerning the care of residents in long-term care facilities. Neither the statute nor its implementing regulations establish any substantive standards of care that could be the basis for a negligence *per se* claim, nor evince an intent to create enforceable rights for the benefit of individual nursing home residents.

(4) Plaintiff's claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of state criminal laws, including KRS 508.090 *et seq*, KRS 530. 080 *et seq*, and 506.080 *et seq*, are DISMISSED with prejudice. (Compl. ¶ 29 (b), (c) and (d).) These statutes are intended to benefit the general public, not to create specific benefits or enforceable rights for

9A14A4A9-603C-4049-A503-CAD287894206 : 000023 of 000042

individuals damaged by their violation, and thus cannot give rise to a claim for negligence *per se* under KRS 446.070.

This Order is final and appealable and there is no just cause for delay.

So Ordered this the 18th day of March, 2013.

JUDGE JEAN C. LOGUE

**Tendered by:**

Edmund J. Benson
William J. George

**CLERK'S CERTIFICATE OF SERVICE**

This is to certify that a true and accurate copy of the foregoing was served U.S. mail, first class, postage prepaid, on the 19th day of March, 2013, upon:

Brian M. Jasper
Ross F. Mann
WILKES & MCHUGH, P.A.
429 North Broadway
P.O. Box 1747
Lexington, KY 40588-1747
**COUNSEL FOR PLAINTIFF**

Edmund J. Benson
William J. George
FROST BROWN TODD LLC
250 West Main Street, Suite 2800
Lexington, KY 40507
**COUNSEL FOR DEFENDANTS**

CLERK, MADISON CIRCUIT COURT

LEXLibrary LR04669.0601645 557029v1



9A14A4A9-603C-4049-A503-CAD287894206 : 000024 of 000042

COMMONWEALTH OF KENTUCKY
MADISON CIRCUIT COURT
DIVISION II
CIVIL CASE NO.: 12-CI-469

YVONNE SAMS, as Executrix of the Estate of WILLIAM WITT, deceased — PLAINTIFF

v.

EXTENDICARE, INC.;
FIR LANE TERRACE CONVALESCENT CENTER, INC.
D/B/A KENWOOD HEALTH AND REHABILITATION CENTER
F/K/A RICHMOND HEALTH AND REHABILITATION COMPLEX-KENWOOD;
EXTENDICARE HEALTH NETWORK, INC.;
EXTENDICARE HOMES, INC.;
EXTENDICARE REIT;
EXTENDICARE, L.P.;
EXTENDICARE HOLDINGS, INC.;
EXTENDICARE HEALTH SERVICES, INC.;
EXTENDICARE HEALTH FACILITY HOLDINGS, INC.;
AND JOHN DOES 1 THROUGH 5,
UNKNOWN DEFENDANTS — DEFENDANTS

ENTERED
TIME 9:00 A.M./P.M.
DEC 05 2013
MADISON CIRCUIT COURT
DARLENE SNYDER, CLERK

**ORDER SUSTAINING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Defendants have moved for Partial Judgment on the Pleadings regarding Plaintiff's KRS §446.070 negligence *per se* claims based on various violations of federal and state statutes and regulations, and the Court being otherwise sufficiently advised;

**IT IS HEREBY ORDERED THAT:**

(1) Plaintiff's claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of "applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII and XIX of the Social Security Act" are **DISMISSED** with prejudice. (Compl. ¶ 30(e)). Kentucky law precludes any claim for negligence *per se* under KRS §446.070 or otherwise, based on alleged violations of federal statutes or regulations. Also

9A14A4A9-603C-4049-A503-CAD287894206 : 000025 of 000042

the federal statutes and regulations concerning certification of long-term care facilities, including particularly the Federal Nursing Home Reform Act ("FNHRA") and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(2)     Plaintiff's claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of provisions of KRS Chapter 216 and the regulations promulgated thereunder concerning certification of nursing homes are **DISMISSED** with prejudice. (Compl. ¶ 30). The specific statutory remedy provided in KRS §216.515(26) precludes the use of KRS §446.070 to infer additional statutory claims under other provisions of Chapter 216 or its implementing regulations. Also, the state statutes and regulations concerning certification of long-term care facilities, including KRS Chapter 216 and 216B and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(3)     Plaintiff's claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of KRS §209.005 *et seq.* and any administrative regulations promulgated thereunder, including but not limited to 922 KAR 5:070, are **DISMISSED** with prejudice (Compl. ¶ 30(a)). These provisions establish a committee and protocol for investigating elder abuse and neglect and providing the necessary protective services when the need is found, but do not contain any provisions concerning the care of residents in long-term care facilities. Neither the statute nor its implementing regulations establish any substantive standards of care that could be the basis for a negligence *per se* claim, nor evince an intent to create enforceable rights for the benefit of individual nursing home residents.

9A14A4A9-603C-4049-A503-CAD287894206 : 000026 of 000042

(4) Plaintiff's claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of state criminal laws, including KRS §508.090 *et seq*, KRS §530.080 *et seq*, and §506.080 *et seq*, are **DISMISSED** with prejudice. (Compl. ¶ 30(b)-(d).) These statutes are intended to benefit the general public, not to create specific benefits or enforceable rights for individuals damaged by their violation, and thus cannot give rise to a claim for negligence *per se* under KRS §446.070.

This Order is final and appealable and there is no just cause for delay.

SO ORDERED THIS the 4 day of December 2013.

HON. JEAN CHENAULT LOGUE
JUDGE, MADISON CIRCUIT COURT

Prepared and Tendered by:

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Anthony B. Gray, Esq.
2452 Sir Barton Way, Suite 300
Lexington, KY 40509
(859) 226-0057
(859) 226-0059 fax
DMiller@qpwblaw.com
PCassidy@qpwblaw.com
AGray@qpwblaw.com
*Counsel for Defendants*

9A14A4A9-603C-4049-A503-CAD287894206 : 000027 of 000042

## CLERK'S CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been served this the 5 of December 2013, via U.S. Mail Service, postage prepaid, upon the following:

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Suite 300
Lexington, Kentucky 40509

Tyler K. Forsythe, Esq.
Wilkes & McHugh, P.A.
429 North Broadway
P.O. Box 1747
Lexington, Kentucky 40588-1747

Darlene Snyder/BSJ
CLERK, MADISON CIRCUIT COURT

9A14A4A9-603C-4049-A503-CAD287894206 : 000028 of 000042

COMMONWEALTH OF KENTUCKY
MADISON CIRCUIT COURT
CIVIL BRANCH
DIVISION II
Civil Action No. 12-CI-199

ENTERED
TIME 2:35 A.M./P.M.
OCT 17 2013
MADISON CIRCUIT COURT
DARLENE SNYDER, CLERK

SANDRA BAUMGARDNER, as Administratrix of the Estate of ETHEL E. RAINS, deceased, and on behalf of the Wrongful Death Beneficiaries of ETHEL E. RAINS, deceased — PLAINTIFF

v.

FIR LANE TERRACE CONVALESCENT CENTER, INC. d/b/a KENWOOD HEALTH & REHABILITATION CENTER f/k/a RICHMOND HEALTH & REHABILITATION COMPLEX-KENWOOD;
EXTENDICARE, INC.;
EXTENDICARE HEALTH NETWORK, INC.;
EXTENDICARE HOMES, INC.;
EXTENDICARE REIT; EXTENDICARE, L.P.;
EXTENDICARE HOLDINGS, INC.;
EXTENDICARE HEALTH SERVICES, INC.;
EXTENDICARE HEALTH FACILITY HOLDINGS, INC.; and,
JOHN DOES 1 THROUGH 5,
UNKNOWN DEFENDANTS — DEFENDANTS

**ORDER SUSTAINING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Defendants have moved for Partial Judgment on the Pleadings regarding Plaintiff's KRS 446.070 negligence *per se* claims based on various violations of federal and state statutes and regulations, and the Court being otherwise sufficiently advised;

IT IS HEREBY ORDERED THAT:

(1) Plaintiff's claims for negligence per se pursuant to KRS 446.0707 for alleged violations of "applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII and XIXI of the Social Security Act" are DISMISSED with

9A14A4A9-603C-4049-A503-CAD287894206 : 000029 of 000042

prejudice. (Complaint ¶30 (e)). Kentucky law precludes any claim for negligence per se under KRS 446.070 or otherwise, based on alleged violations of federal statutes or regulations. Also the federal statutes and regulations concerning certification of long-term care facilities, including particularly the Federal Nursing Home Reform Act ("FNHRA") and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(2) Plaintiff's claims for negligence per se pursuant to KRS 446.070 for alleged violations of provisions of KRS Chapter 216 and the regulations promulgated thereunder concerning certification of nursing homes are DISMISSED with prejudice. (Complaint §30). The specific statutory remedy provided in KRS 216.515(26) precludes the use of KRS 446.070 to infer additional statutory claims under other provisions of Chapter 216 or its implementing regulations. Also, the state statutes and regulations concerning certification of long-term care facilities, including KRS Chapter 216 and 216B and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(3) Plaintiff's claims for negligence per se pursuant to KRS 446.070 for alleged violations of KRS 209.005 et seq. and any administrative regulations promulgated thereunder, including but not limited to 922 KAR 5:070, are DISMISSED with prejudice (Complaint ¶30(a)). These provisions establish a committee and protocol for investigating elder abuse and neglect and providing the necessary protective services when the need is found, but do not contain any provisions concerning the care of residents in long-term care facilities. Neither the statute nor its implementing regulations establish any substantive standards of care that could

9A14A4A9-603C-4049-A503-CAD287894206 : 000030 of 000042

be the basis for a negligence per se claim, nor evince an intent to create enforceable rights for the benefit of individual nursing home residents.

(4) Plaintiff's claims for negligence per se pursuant to KRS 446.070 for alleged violations of state criminal laws, including KRS 508.090 et seq, KRS 530.080 et seq, and 506.080 et seq, are DISMISSED with prejudice. (Complaint ¶30 (b), (c) and (d).) These statutes are intended to benefit the general public, not to create specific benefits or enforceable rights for individuals damaged by their violation, and thus cannot give rise to a claim for negligence per se under KRS 446.070.

This Order is final and appealable and there is no just cause for delay.

So Ordered this the 10 day of October, 2013.

JUDGE JEAN C. LOGUE

Prepared and Tendered by:

J. Peter Cassidy, III, Esq.
David P. Kaiser, Esq.
2432 Sir Barton Way, Suite 300
Lexington, KY 40509

9A14A4A9-603C-4049-A503-CAD287894206 : 000031 of 000042

## CLERK'S CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been served this the 17 of Oct, 2013, via U.S. Mail Service, postage prepaid, upon the following:

J. Peter Cassidy, III, Esq.
David P. Kaiser, Esq.
2452 Sir Barton Way, Suite 300
Lexington, KY 40504

Tyler Forsythe, Esq.
Wilkes & McHugh, P.A.
429 North Broadway
P.O. Box 1747
Lexington, Kentucky 40588-1747

Darlene Snyder/kb
Clerk, Madison Circuit Court

9A14A4A9-603C-4049-A503-CAD287894206 : 000032 of 000042

COMMONWEALTH OF KENTUCKY
CLARK CIRCUIT COURT
CASE NO.: 12-CI-00726
SECOND DIVISION

ENTERED July 3, 2014
PAULA S. JOSLIN
CLARK CIRCUIT/DISTRICT COURT
BY: ________ D.C.

BRENDA MACK, as ADMINISTRATRIX of the ESTATE of SHIRLEY RUSSELL, deceased, and on behalf of the WRONGFUL DEATH BENEFICIARIES of SHIRLEY RUSSELL,

PLAINTIFF

v.

KINDRED NURSING CENTERS LIMITED PARTNERSHIP
D/B/A KINDRED TRANSITIONAL CARE AND REHABILITATION – FOUNTAIN CIRCLE
F/K/A FOUNTAIN CIRCLE HEALTH AND REHABILITATION;
KINDRED HEALTHCARE, INC.;
KINDRED NURSING CENTERS EAST, LLC;
KINDRED HEALTHCARE OPERATING, INC.; and
KINDRED HOSPITALS LIMITED PARTNERSHIP

DEFENDANTS

**ORDER SUSTAINING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Defendants have moved for Partial Judgment on the Pleadings regarding Plaintiff's KRS §446.070 negligence *per se* claims based on alleged violations of federal and state statutes and regulations; the Court having reviewed the briefing and hard arguments from counsel, and being otherwise sufficiently advised;

**IT IS HEREBY ORDERED THAT:**

(1) Plaintiff's claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of applicable federal laws and regulations governing the certification of long-term care facilities under Titles XVIII and XIX of the Social Security Act" are **DISMISSED** with prejudice. (Compl. ¶ 23(n) and ¶ 25).

9A14A4A9-603C-4049-A503-CAD287894206 : 000033 of 000042

(2) Plaintiff's claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of provisions of KRS Chapter 216 and the regulations promulgated thereunder concerning certification of nursing homes are **DISMISSED** with prejudice. (Compl. ¶ 25(d)-(f)). The specific statutory remedy provided in KRS §216.515(26) precludes the use of KRS §446.070 to infer additional statutory claims under other provisions of Chapter 216 or its implementing regulations. Also, the state statutes and regulations concerning certification of long-term care facilities, including KRS Chapter 216 and 216B and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

(3) Plaintiff's claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of KRS §209.005 *et seq.* and any administrative regulations promulgated thereunder, including but not limited to 922 KAR 5:070, are **DISMISSED** with prejudice. (Compl. ¶25(a)). These provisions establish a committee and protocol for investigating elder abuse and neglect and providing the necessary protective services when the need is found, but do not contain any provisions concerning the care of residents in long-term care facilities. Neither the statute nor its implementing regulations establish any substantive standards of care that could be the basis for a negligence *per se* claim, nor evince an intent to create enforceable rights for the benefit of individual nursing home residents.

9A14A4A9-603C-4049-A503-CAD287894206 : 000034 of 000042

(4) Plaintiff's claims for negligence *per se* pursuant to KRS §446.070 for alleged violations of state criminal laws, including KRS §508.090 *et seq.*, KRS §530.080 *et seq.*, and §506.080 *et seq.*, are **DISMISSED** with prejudice. (Compl. ¶ 25(b), (c) and (e)). These statutes are intended to benefit the general public, not to create specific benefits or enforceable rights for individuals damaged by their violation, and thus cannot give rise to a claim for negligence *per se* under KRS §446.070.

This Order is final and appealable and there is no just cause for delay.

SO ORDERED THIS the 5 day of July, 2014.

HON. JEAN CHENAULT LOGUE, JUDGE
CLARK CIRCUIT COURT, DIVISION II

Prepared and Tendered by:

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Anthony B. Gray, Esq.
*Counsel for Defendants*

9A14A4A9-603C-4049-A503-CAD287894206 : 000035 of 000042

**CLERK'S CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing has been served this the 3rd of July, 2014, via U.S. Mail Service, postage prepaid, upon the following:

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Anthony B Gray, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509

Brent L. Moss, Esq.
Brian D. Reddick, Esq.
Matthew D. Swindle, Esq.
REDDICK MOSS, PLLC
One Information Way, Suite 201
Little Rock, AR 72202

Eric D. Wewers, Esq.
Law Offices of Eric D. Wewers, Esq.
Plaza West Building
415 North McKinley Street, Suite 1000
Little Rock, AR 72205

Sheila P. Hoistand, Esq.
Hughes & Coleman
9300 Shelbyville Road, Suite 110
Louisville, KY 40222

CLERK, CLARK CIRCUIT COURT

9A14A4A9-603C-4049-A503-CAD287894206 : 000036 of 000042

COMMONWEALTH OF KENTUCKY
CLARK CIRCUIT COURT
CASE NO.: 14-CI-00221
FIRST DIVSION

CHRISTAL FRENCH, as ADM'X of the ESTATE of TERESA ESTES, deceased, PLAINTIFF

v.

**ORDER**

SIGNATURE HEALTHCARE, LLC;
LP WINCHESTER, LLC d/b/a
FOUNTAIN CIRCLE CARE & REHABILITATION CENTER
SHC KY HOLDINGS, LLC;
SIGNATURE CONSULTING SERVICES, LLC;
SIGNATURE CLINICAL CONSULTING SERVICES, LLC;
SHC LP HOLDINGS, LLC;
LAS PALMAS SNF, LLC;
LPSNF, LLC;
JEFFREY STIDHAM, in his capacity as ADMINISTRATOR of
FOUNTAIN CIRCLE CARE & REHABILITATION CENTER;
S'LENA HUDSON, in her capacity as ADMINISTRATOR of
FOUNTAIN CIRCLE CARE & REHABILITATION CENTER;
ELIZABETH SMITH, in her capacity as ADMINISTRATOR of
FOUNTAIN CIRCLE CARE & REHABILITATION CENTER;
KINDRED HEALTHCARE, INC.;
KINDRED NURSING CENTERS LIMITED PARTNERSHIP d/b/a
FOUNTAIN CIRCLE CARE & REHABILITATION CENTER a/k/a
KINDRED TRANSITIONAL CARE AND REHABILITATION – FOUNTAIN CIRCLE;
KINDRED NURSING CENTERS EAST, LLC;
KINDRED HOSPITALS LIMITED PARTNERSHIP;
KINDRED HEALTHCARE OPERATING, INC.; and
KINDRED REHAB SERVICES, INC. d/b/a
PEOPLE*FIRST* REHABILITATION a/k/a
REHABCARE; and
JOHN DOES 1 THROUGH 5, Unknown Defendants, DEFENDANTS

* * * * * * * * * * * * *

Defendants have moved for Partial Judgment on the Pleadings regarding Plaintiff's KRS 446.070 negligence *per se* claims based on various violations of federal and state statutes and regulations; and the Court being otherwise sufficiently advised;

IT IS HEREBY ORDERED THAT:

9A14A4A9-603C-4049-A503-CAD287894206 : 000037 of 000042

(1) Plaintiff's claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of provisions of KRS Chapter 216 and the regulations promulgated thereunder concerning certification of nursing homes are DISMISSED with prejudice. (Complaint ¶41(b)). The specific statutory remedy provided in KRS 216.515(26) precludes the use of KRS 446.070 to infer additional statutory claims under other provisions of Chapter 216 or its implementing regulations.

(2) Plaintiff's claims for negligence per se pursuant to KRS 446.070 for alleged violations of KRS 209.005 et seq. and any administrative regulations promulgated thereunder, including but not limited to 922 KAR 5:070, are DISMISSED with prejudice (Complaint ¶41(a)). These provisions establish a committee and protocol for investigating elder abuse and neglect and providing the necessary protective services when the need is found, but do not contain any provisions concerning the care of residents in long-term care facilities. Neither the statute nor its implementing regulations establish any substantive standards of care that could be the basis for a negligence *per se* claim, nor evince an intent to create enforceable rights for the benefit of individual nursing home residents.

(3) The Court will consider whether to permit the testimony of expert witnesses pertaining to whether state or federal regulations establish, in whole or in part, the standards of care relevant to the care and treatment provided to Teresa Estes at Fountain Circle pursuant to a an appropriate Motion *in Limine*.

This Order is final and appealable and there is no just cause for delay.

So Ordered this the 4 day of MAY, 2015.

[signature]

JUDGE, CLARK CIRCUIT COURT

9A14A4A9-603C-4049-A503-CAD287894206 : 000038 of 000042

Prepared and Tendered by:

J. Peter Cassidy, III, Esq.
Nathaniel R. Kissel, Esq.
2452 Sir Barton Way, Suite 300
Lexington, KY 40509

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing has been served this the 04 of May, 2015, via U.S. Mail Service, postage prepaid, upon the following:

J. Peter Cassidy, III, Esq.
Nathaniel R. Kissel, Esq.
2452 Sir Barton Way, Suite 300
Lexington, KY 40504

Tyler Koch Forsythe, Esq.
Wilkes & McHugh, P.A.
429 N. Broadway
P.O. Box 1747
Lexington, KY 40588-1747

M. Brandon Faulkner, Esq.
Christopher Piekarski, Esq.
Garcia Artigliere & Medby
220 West Main Street, Suite 2250
Louisville, KY

Clark Circuit Court Clerk

9A14A4A9-603C-4049-A503-CAD287894206 : 000039 of 000042

2015 WL 3643437
Only the Westlaw citation is currently available.

Unpublished opinion. See KY ST RCP Rule 76.28(4) before citing.

NOT TO BE PUBLISHED
Court of Appeals of Kentucky.

Dinah Puckett, as the Administratrix of the Estate of Bertha Blanton, Appellant
v.
Salyersville Healthcare Center, Extendicare Homes, Inc., Extendicare Health Services, Inc. and Jason Jones, Director and Unknown Defendants, Appellees

NO. 2013–CA–001263–MR

RENDERED: JUNE 12, 2015; 10:00 A.M.

APPEAL FROM MAGOFFIN CIRCUIT COURT, HONORABLE KIMBERLY CORNETT CHILDERS, JUDGE, ACTION NO. 09–CI–00071

**Attorneys and Law Firms**

BRIEF FOR APPELLANT: Michael Lucas, Pikeville, Kentucky, Donald W. McFarland, Salyersville, Kentucky

BRIEF FOR APPELLEE: Edmund J. Benson, William J. George, Lexington, Kentucky, Jason P. Renzelmann, Louisville, Kentucky

BEFORE: KRAMER, J. LAMBERT, AND NICKELL, JUDGES.

*OPINION*

NICKELL, JUDGE:

*1 Dinah Puckett, as Administratrix of the Estate of Bertha Blanton, has appealed from the Magoffin Circuit Court's dismissal of her claims of negligence *per se* against Salyersville Healthcare Center ("Salyersville"), Extendicare Homes, Inc., Extendicare Health Services, Inc. (collectively "Extendicare"), Jason Jones, Director, and unknown defendants.[1] Following a careful review, we affirm.

Salyersville is a nursing home facility owned and/or operated by Extendicare. Blanton was a resident at Salyersville from May 11, 2007, to May 4, 2008. Jones was the Administrator of Salyersville during at least a portion of Blanton's residency. During her stay, Blanton allegedly suffered from falls, a fractured humerus, skin tears, bruising, malnourishment, dehydration, pneumonia and a liver laceration. On May 4, 2008, Blanton was transported by ambulance to a local hospital where she remained until passing away on May 13, 2008.

On March 12, 2009, Puckett filed the instant action alleging negligence, medical negligence, violations of the Long Term Care Resident's Rights statutes,[2] breach of contract and breach of fiduciary duty against Salyersville, and negligence claims against Jones and the unknown defendants. At issue in this appeal, Puckett further alleged Salyersville violated a sundry of state, federal and/or local laws and regulations related to long-term care facilities, which violations amounted to negligence *per se* pursuant to KRS 446.070.

Pursuant to CR [3] 12.03, the Appellees moved for a judgment on the pleadings and sought an order dismissing Puckett's negligence *per se* claims, asserting they were improper as a matter of law. They contended Puckett's claims for violations of state and federal certification laws were not independently actionable as negligence *per se* pursuant to the provisions of KRS 446.070 because the specific remedy provision of KRS 216.515(26) foreclosed such claims. Puckett countered by arguing she had not alleged any negligence *per se* claims based on violations of Blanton's rights set forth in KRS 216.515, but rather had advanced such claims for state regulatory violations relating to health facilities. Puckett argued she had certainly not advanced any claims based on violations of the federal regulatory scheme.

On June 17, 2013, the trial court granted the Appellees' motion. In dismissing Puckett's negligence *per se* claims, the trial court stated:

> (1) Plaintiffs' claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of "... federal and state regulations governing skilled facilities" are **DISMISSED** with prejudice. Kentucky law precludes any claim for negligence *per se*, under KRS 444.707(sic) or otherwise, based on alleged violations of federal statutes or regulations. Also, the federal statutes and regulations concerning certification of long-term care facilities, including particularly the

9A14A4A9-603C-4049-A503-CAD287894206 : 000040 of 000042

Federal Nursing Home Reform Act ("FNHRA") and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

*2 (2) Plaintiffs' claims for negligence *per se* pursuant to KRS 446.070 for alleged violations of provisions of Kentucky Revised Statute (sic) Chapter 216 and 216B, and any regulations thereunder, including but not limited to 902 KAR 20:026; 902 KAR 20:048 and 902 KAR 20:300 concerning certification of nursing homes are **DISMISSED** with prejudice. The specific statutory remedy provided in KRS 216.515(26) precludes the use of KRS 446.070 to infer additional statutory claims under other provisions of KRS Chapther (sic) 21(sic) and 216B or its implementing regulations. Also, the statutes and regulations concerning certification of long-term care facilities, including KRS Chapter 216 and 216B and regulations promulgated thereunder, were not intended to confer enforceable rights or standards of care for the benefit of individual nursing home residents.

This appeal followed.

Puckett raises two allegations of error in seeking reversal of the trial court's decision. First, she contends the inclusion of a statutory remedy in KRS 216.215(26) does not preclude her negligence *per se* claims based on the remainder of KRS Chapters 216 and 216B or the various regulations promulgated thereunder, and the trial court's conclusion to the contrary was erroneous. Second, she argues the trial court erred in concluding the federal and state statutes were inadmissible as evidence of the standard of care in a common law negligence claim.

The Appellees' motion to dismiss was based on CR 12.03, which provides for a party to make a motion for a "judgment on the pleadings." As construed by the Supreme Court of Kentucky, CR 12.03 is intended:

> to expedite the termination of a controversy where the ultimate and controlling facts are not in dispute. It is designed to provide a method of disposing of cases where the allegations of the pleadings are admitted and only a question of law is to be decided.... The judgment should be granted if it appears beyond doubt that the nonmoving party cannot prove any set of facts that would entitle him/her to relief.

*City of Pioneer Village v. Bullitt County,* 104 S.W.3d 757, 759 (Ky.2003). Whether the dismissal was proper is a question of law. Therefore, the standard on appellate review is *de novo. Benningfield v. Pettit Environmental, Inc.,* 183 S.W.3d 567, 570 (Ky.App.2005). Our review proceeds accordingly.

Puckett first contends the trial court erred in concluding the statutory remedy in KRS 216.215(26) precludes her from maintaining negligence *per se* claims based on the remainder of KRS Chapters 216 and 216B or the various regulations promulgated thereunder. She concedes she cannot maintain a negligence *per se* claim against the Appellees for alleged violations of the rights set forth in KRS 216.515, but maintains that the remainder of her negligence *per se* claims based on statutory and regulatory violations are valid and must be permitted to stand. We disagree.

The doctrine of negligence *per se* allows a court to determine a standard of conduct by reference to a statute. In essence, "[n]egligence *per se* is merely a negligence claim with a statutory standard of care substituted for the common law standard of care." *Young v. Carran,* 289 S.W.3d 586, 588–89 (Ky.App.2009).

Kentucky has codified the common law negligence *per se* doctrine and created an avenue whereby an individual may seek relief even where a statute does not specifically provide a private remedy. KRS 446.070 provides "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." This statute creates a private right of action under which a damaged party may sue for a violation of a statutory standard of care, provided that three prerequisites are met: first, the statute in question must be penal in nature or provide "no inclusive civil remedy," *Hargis v. Baize,* 168 S.W.3d 36, 40 (Ky.2005); second, "the party [must be] within the class of persons the statute is intended to protect," *Young,* 289 S.W.3d at 589 (citing *Hargis,* 168 S.W.3d at 40); and third, the plaintiff's injury must be of the type the statute was designed to prevent. *Carman v. Dunaway Timber Co.,* 949 S.W.2d 569, 570 (Ky.1997).

*3 Our Supreme Court has made clear "the 'any statute' language in KRS 446.070 is limited to Kentucky statutes," *Young,* 289 S.W.3d at 589, and does not "embrace the whole of the federal laws and the laws of other states and thereby confer a private civil remedy for such a vast array of violations." *T & M Jewelry v. Hicks,* 189 S.W.3d 526, 530 (Ky.2006). Thus, to the extent Puckett raises claims based on violations of any federal statute or regulation, those claims fail as a matter of law

9A14A4A9-603C-4049-A503-CAD287894206 : 000041 of 000042

and were properly dismissed.

The enumeration of specific rights enforceable via KRS 216.515(26) precludes a negligence *per se* action to enforce the broader provisions of KRS Chapter 216. The specific enumeration evidences the intent of the General Assembly to confine private rights of action to those rights in KRS 216.515 to the exclusion of other aspects of Chapter 216. Any negligence *per se* claim for enforcement of the other provisions of KRS Chapter 216 fails as a matter of law because only those rights created by KRS 216.515 are enforceable in a private right of action.

A plaintiff lacks a negligence *per se* cause of action under KRS 446.070 where the more specific statute at issue "both declares the unlawful act and specifies the civil remedy available[.]" *Grzby v. Evans,* 700 S.W.2d 399, 401 (Ky.1985). In that situation, the plaintiff "is limited to the remedy provided by the statute." *Id.* (citations omitted). This outcome flows from the general rule of statutory construction that "when two statutes are in conflict, one which deals with the subject matter in a general way and the other in a specific way, the more specific provision prevails." *Travelers Indem. Co. v. Reker,* 100 S.W.3d 756, 763 (Ky.2003). The General Assembly, in KRS 216.515, expressly listed the rights granted to residents of long-term care facilities and made those rights enforceable via a private right of action in KRS 216.515(26). This evidences the legislature's intent and ability to create private rights of action for some of the provisions found in KRS Chapter 216 to the exclusion of others. A civil remedy need not be perfect to displace a private cause of action under KRS 446.070. Accordingly, because KRS 216.515 provides a cause of action to enforce the rights enumerated therein, Puckett is precluded from seeking private enforcement of the other provisions of KRS Chapter 216. Her claims grounded on alleged violations of this Chapter were therefore properly dismissed.

Further, as to Puckett's allegations under KRS Chapter 216B, we also conclude that Chapter does not grant a private cause of action to a nursing home resident for the types of claims asserted. The stated purpose of KRS Chapter 216B is

> to fully authorize and empower the Cabinet for Health and Family Services to perform any certificate-of-need function and other statutory functions necessary to improve the quality and increase access to health-care facilities, services, and providers, and to create a cost-efficient health-care delivery system for the citizens of the Commonwealth.

KRS 216B.010. The Chapter is focused on licensing provisions and the certificate-of-need process intended to provide safe, adequate and efficient medical care for all Kentuckians by limiting health-care providers from amassing new services and equipment and passing the costs of such additions on to patients. As before, we must determine whether the three prerequisites for maintaining a negligence *per se* action have been satisfied.

*4 KRS 216B.086 and 216B.990 provide for the Cabinet to levy civil penalties and assess fines for violations, but none of the penalties provide remedies to an individual. Thus, we conclude there is "no inclusive civil remedy," thereby meeting the first prerequisite for maintaining a negligence *per se* action. *Hargis,* 168 S.W.3d at 40. Further, if construed broadly, the Chapter's licensing provisions seek to protect users of health-care facilities—a class to which Blanton belonged as a Salyersville resident. *Young,* 289 S.W.3d at 589. Accordingly, Puckett's claims satisfy the second prong for maintaining her action.

However, Puckett's claims fail as to the third and final prerequisite as there has been no showing or assertion that Blanton suffered harm of the type KRS Chapter 216B was designed to prevent. *Carman,* 949 S.W.2d at 570. The clear thrust of the statutes is to prevent economic harm or the preclusion of access to health-care services by some of the citizenry by limiting the types and amount of costs which may be passed on by providers to patients. The claims raised in the instant case are related to physical injuries sustained by Blanton, not economic ones. Consequently, Puckett cannot state a negligence *per se* claim for alleged violations of KRS Chapter 216B, and those claims were properly dismissed.

Finally, Puckett contends the trial court erred in concluding the federal and state statutes were inadmissible as evidence of the standard of care in a common law negligence claim. Contrary to Puckett's allegation, we do not read the trial court's order as prohibiting the introduction of any evidence. In fact, the brief order makes no mention of any evidentiary issues whatsoever. "An appellate court is without authority to review issues not raised in or decided by the trial court." *Baumia v. Commonwealth,* 402 S.W.3d 530, 546 (Ky.2013) (citations and internal quotation marks omitted). Thus, Puckett's contention is without merit and warrants no further discussion.

9A14A4A9-603C-4049-A503-CAD287894206 : 000042 of 000042

Puckett v. Salyersville Healthcare Center, Not Reported in S.W.3d (2015)
2015 WL 3643437

For the foregoing reasons, the judgment of the Magoffin Circuit Court is affirmed.

ALL CONCUR.

**All Citations**

Not Reported in S.W.3d, 2015 WL 3643437

Footnotes

1 The complaint contained allegations against "Unknown Registered Nurses," "Unknown Nursing Supervisor and/or Administrator" and "Unknown Certified Nursing Assistant."

2 Kentucky Revised Statutes (KRS) 216.510 *et seq.*

3 Kentucky Rules of Civil Procedure.

End of Document

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works. 4

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION NO. II

ACTION NO. 15-CI-00778

ESTATE OF HELEN RAY, ET AL — PLAINTIFFS

V. — ORDER

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA), ET AL — DEFENDANTS

*************

This cause coming before the Court on various defense Motions, and the Court having conducted a hearing on September 16, 2016, with the proceedings recorded on CD No. 35-2-2016-VR-40-A-1, IT IS HEREBY ORDERED AS FOLLOWS:

1. The Defendants' Motion to Quash a CR 30.02(6) deposition of a defense corporate representative or narrow the scope of the deposition is DENIED.

2. The Defendants' Motion to Dismiss the Long Term Residents' Rights claims is DENIED at this time.

3. As to the Defendants' Motion for Summary Judgment regarding claims based on violations of statutes and regulations, the Motion is PASSED, and the parties may submit an Agreed Order to the Court addressing this Motion.

4. The Defendants' Motion to Inspect Pike District Court Action No. 08-H-00153-001 & Motion to Compel Adult Protective Services, the Office of the Inspector General and the Cabinet for Health and Family Services to allow inspection and copying of records regarding Helen Ray are both GRANTED, and defense counsel shall be permitted to inspect and copy Pike District Court Action No. 08-H-00153-001 and Helen Ray's records compiled by Adult Protective Services, the Office of the Inspector General and the Cabinet for Health and Family Services. The Hon. Matthew Cocanougher and the law firm of QUINTAIROS, PRIETO, WOOD & BOYER, P.A., shall keep these records confidential, with no public disclosure, and the documents shall not be filed in the record. The documents shall also be kept confidential by any expert that

the Defendants' attorney may hire to review them. This ruling does not go to the admissibility of the documents in question.

ENTERED this 19th day of September, 2016.

[signature] JUDGE

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Order was this day mailed to:

Hon. M. Brandon Faulkner
444 East Main Street, Suite 108
Lexington, KY 40507

Hon. Matthew Cocanougher
2452 Sir Barton Way, Suite 300
Lexington, KY 40509

This is the 19 day of Sept, 2016.

ANNA PINSON SPEARS, CLERK
PIKE CIRCUIT COURT

BY: CW
D.C.

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION NO. II

ENTERED
ANNA PINSON SPEARS
SEP 20 2016
PIKE CIRCUIT/DISTRICT COURT
BY: D.C.

ACTION NO. 15-CI-00778

ESTATE OF HELEN RAY, ET AL PLAINTIFFS

V. QUALIFIED PROTECTIVE ORDER

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA), ET AL DEFENDANTS

*******************************

This cause coming before the Court on the Defendants' Motion to Enter a Qualified HIPAA Protective Order to allow them to conduct *ex parte* discovery interviews with Helen Ray's treating physicians, and the Court having conducted a hearing on September 16, 2016, with the proceedings recorded on CD No. 35-2-2016-VR-40-A-1, IT IS HEREBY ORDERED AS FOLLOWS:

1. The attorneys for the Defendants may request an *ex parte* meeting with Helen Ray's treating healthcare providers to discuss the facts pertaining to the care and treatment of Helen Ray's medical conditions at issue in this matter, of which there is first-hand knowledge, without giving opinion testimony.

2. This Order is NOT A SUBPOENA; it only authorizes defense counsel to REQUEST an *ex parte* meeting with Helen Ray's treating healthcare providers. Helen Ray's treating healthcare providers are free to decline the request.

3. This Order does NOT abate ANY professional duties of confidentiality to which Helen Ray's treating healthcare providers may be bound while participating in an *ex parte* meeting. Helen Ray's treating healthcare providers remain subject to ethical and disciplinary proceedings arising from ANY violation of the duties of the medical profession, including duties regarding confidentiality set forth under the American Medical Association's Code of Ethics § 5.05 and any and all legal duties arising under KRS 311.530, *et seq.*, and KRS 446.070.

4.  In making the request for an *ex parte* meeting, defense counsel shall abide by the Kentucky Rules of Professional Conduct under SCR 3.130, specifically §§ 3.4 (Fairness to opposing party and counsel), 4.1 (Truthfulness in statements to others), 4.3 (Dealing with unrepresented person) & 8.4 (Misconduct).

5.  A copy of this Order shall be furnished to Helen Ray's treating healthcare providers at the time of making the request for the *ex parte* meeting.

6.  If one or more of Helen Ray's treating healthcare providers agree to meet with defense counsel outside the presence of an authorized representative of the Estate of Helen Ray, such as her Executrix (Jennifer Bingham) and/or the Estate's attorney, there shall be NO disclosures before, during or after the meeting of protected health information that is beyond the scope of this Order as set forth in Paragraph No. 1 above.

7.  Also, if one or more of Helen Ray's treating healthcare providers agree to meet with defense counsel outside the presence of an authorized representative of the Estate of Helen Ray, such as her Executrix (Jennifer Bingham) and/or the Estate's attorney, defense counsel shall notify the Estate's attorney of the date, time and location of the meeting.   Such Notice shall be given at least seven (7) business days before the proposed *ex parte* conference.

8.  The Defendants and their agents are PROHIBITED from using or disclosing the protected health information for any purpose other than in this proceeding, for which such information was requested.

9.  The Defendants and their agents shall return the protected health information to Helen Ray's treating healthcare providers or destroy the protected health information, including all copies made, at the end of this litigation.

ENTERED this 19th day of September, 2016.

HON. STEVEN D. COMBS
PIKE CIRCUIT COURT
DIVISION NO. II

CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Order was this day mailed to:

Hon. M. Brandon Faulkner
444 East Main Street, Suite 108
Lexington, KY 40507

Hon. Matthew Cocanougher
2452 Sir Barton Way, Suite 300
Lexington, KY 40509

This is the 20 day of Sept, 2016.

ANNA PINSON SPEARS, CLERK
PIKE CIRCUIT COURT

BY: ______________________ D.C.

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION TWO
CIVIL ACTION NO. 15-CI-778

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFF

v. **SECOND NOTICE OF CR 30.02(6) VIDEO CONFERENCE DEPOSITION OF KENTUCKY MEDICAL INVESTORS, LLC (GA) D/B/A MOUNTAIN VIEW HEALTH CARE CENTER**

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER, et al. DEFENDANTS

*** *** *** ***

Please take notice that pursuant to Kentucky Rule of Civil Procedure 30.02(6) and for all purposes provided by the Kentucky Rules of Civil Procedure on **October 19, 2016** at the **office of Diddle & Pack, PLLC located at 137 Pike Street #1, Pikeville, KY 41501 beginning at 9:00 a.m. EST**, Plaintiff, by Counsel, will take the video conference deposition of **Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center**. Pursuant to CR 30.02(6), **Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center** is directed to "designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which he will testify" on each of the topics of inquiry detailed below.

1. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** within the care, custody and/or control of the deponent which pertain, refer to and/or reference, in whatsoever manner, the **PLAINTIFF** (For this inquiry and all subsequent inquiries **PLAINTIFF** shall refer to **Helen Ray**. The terms **"DOCUMENT(S)"** and/or **"DOCUMENTATION"**, as used in this and all subsequent inquiries shall mean, includes all

written, graphic or otherwise recorded matter however produced or reproduced, including the originals (or any copies when originals are not available) and non-identical copies (where different from the original because notes were made on such copies or because said copies may have been sent to different individuals than originals, or for any other reason) and preliminary or final drafts of writings, records, and recordings of every kind and description, whether inscribed by hand or by mechanical, electronic, microfilm, photographic or other means, as well as phonic (such as tape recordings) or visual reproductions of all statements, conversations or events and including, without limitation, correspondence, teletype messages, notes, reports, compilations, schedules, studies, tabulations, tallies, maps, charts, diagrams, drawings, plans, pictures, computer runs, advertising and promotional material, press releases, minutes and records of any memoranda of all press releases, minutes and records of any memoranda of all types, inter-office and intra-office communications, notes of conversations, vouchers, financial calculations and statements, working papers, statistical analyses, invoices, purchase orders, expense account records, stenographers, notebooks, desk calendars, appointment books, diaries, manuals, pamphlets, brochures, escrow instructions, contracts, deeds, agreements, title reports, listings, authorizations, and any abstracts, summaries and analyses of the above, and all other recorded matter of every nature and kind.) (902 KAR 20:300 § 3(2)(b) provides that the resident shall have the right to inspect and purchase photocopies of all records pertaining to the resident, upon written request and forty-eight (48) hours notice to the facility.);

2.  The existence of, name of, the intent of and the custodian of any **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action pertaining to or referencing the **PLAINTIFF** and/or by **YOU** to any named Defendant in this action referencing the **PLAINTIFF**. (For purposes of these inquiries, **YOU** and **YOUR** refers individually and collectively to the defendant to whom this request is addressed and all persons acting or purporting to act on the behalf of said defendant.) (902 KAR 20:300 § 3(2)(b) provides that the resident shall have the right to inspect and purchase photocopies of all records pertaining to the resident, upon written request and forty-eight (48) hours notice to the facility.);

3.  The scope, nature and purpose in the **FACILITY** of any and all Policy and Procedures in place during the residency of **PLAINTIFF** in the **FACILITY**. (902 KAR 20:048 § 3(4) provides that the facility shall establish written policies and procedures that govern all services provided by the facility. The written policies shall include: (a) Patient care and services to include physician, nursing, pharmaceutical (including medication stop orders policy), and residential services. (b) Adult and child protection. The facility shall have written policies which assure the reporting of cases of abuse, neglect or exploitation of adults and children pursuant to KRS Chapters 209 and 620. (c) Use of restraints. The facility shall have a written policy that addresses the use of restraints and a mechanism for monitoring and controlling their use. (d) Missing patient procedures. The facility shall [have] a written procedure to specify in a step-by-step manner the actions which shall be taken by staff when a patient is determined to be lost, unaccounted for or on other unauthorized absence.);

4.  The intake process utilized by the **FACILITY** to determine the needs of an incoming resident and the purpose for same in effect upon the date of admission of the **PLAINTIFF** as a resident of the **FACILITY**. (902 KAR § 7 provides that [t]he facility shall conduct initially and periodically a comprehensive, accurate, standardized, reproducible assessment of each resident's functional capacity...(e) [t]he results of [which] are used to develop, review, and revise the resident's comprehensive plan of care, under subsection (4) of this section.);

5.  The process, intent and reason for the creation of **FACILITY** Care Plans and modifications thereto as to the **PLAINTIFF** and **FACILITY** residents in general during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY**. (902 KAR § 7(4) provides that (a) [t]he facility shall develop a comprehensive care plan for each resident that includes

measurable objectives and timetables to meet a resident's medical, nursing and psychosocial needs that are identified in the comprehensive assessment [that is]...3. periodically reviewed and revised by a team of qualified persons after each assessment.);

6. The **IDENTITY** of all persons who the assessed the fall risk potential of the **PLAINTIFF** during the time period of **PLAINTIFF'S RESIDENCY** in the **FACILITY,** as well as the name of and custodian of all **DOCUMENTS** which memorialize the effort;

7. The **FACILITY** definition of the term "fall" during the during the time frame during which **PLAINTIFF** was a resident of **FACILITY** as well as the existence of, name of, content of, intent of and custodian of all **DOCUMENTS** which reflect said definition;

8. When and how the deponent contends that the **PLAINTIFF** suffered each fall in the **FACILITY,** as well as the **IDENTITY** of all persons who the **FACILITY** contends witnessed any such fall, or any witness who the **FACILITY** contends possess any information as to any such fall; as well as the **IDENTITY** of all persons who the **FACILITY** contends assessed the physical and mental condition of the **PLAINTIFF** after any such fall as well as the findings of the assessment(s) and the existence of, name of, the intent of and the custodian of any **DOCUMENTS** which memorialize said fall(s) and/or assessment(s).

9. The **IDENTITY** of all persons who prepared, modified, updated, changed and/or altered any **FACILITY** Care Plan or Plan of Care of the **PLAINTIFF** as well as the reasons for each modification, update, change or alteration;

10. The **IDENTITY** of all persons who on behalf the **FACILITY** contacted the physician of the **PLAINTIFF** after any fall in the **FACILITY,** as well as the date and time of, and modality by which the communication was made and the **IDENTITY** of the person who contacted the physician and content of any such communication. (902 KAR 20:300 § 2(i)(1) provides that [e]xcept in a medical emergency or when a resident is incompetent, a facility shall consult with the resident immediately and notify the resident's physician, and if known, the resident's legal representative or interested family member within twenty-four (24) hours when there is: a. An accident involving the resident which results in injury; b. A significant change in the resident's physical, mental, or psychosocial status; c. A need to alter treatment significantly; or d. A decision to transfer or discharge the resident from the facility as specified in Section 4(1) of this administrative regulation.)

11. The **IDENTITY** of all persons who on behalf the **FACILITY** contacted any **LEGAL REPRESENTATIVE OR INTERESTED FAMILY MEMBER** of the **PLAINTIFF** after any fall suffered by the **PLAINTIFF** in the **FACILITY,** as well as the date and time of the notification and modality by which the communication was made and the name of the person contacted and content of any such communication. ("**LEGAL REPRESENTATIVE OR INTERESTED FAMILY MEMBER**" shall mean "legal representative or interested family member" as that term is defined/referenced in 902 KAR 20:300 § 2(i)(1). 902 KAR 20:300 § 2(i)(1) provides that [e]xcept in a medical emergency or when a resident is incompetent, a facility shall consult with the resident immediately and notify the resident's physician, and if known, the resident's legal representative or interested family member within twenty-four (24) hours when there is: a. An accident involving the resident which results in injury; b. A

significant change in the resident's physical, mental, or psychosocial status; c. A need to alter treatment significantly; or d. A decision to transfer or discharge the resident from the facility as specified in Section 4(1) of this administrative regulation.)

12. The date of creation, circumstances of events leading to the creation, existence of, **IDENTITY** of the author and all persons whose names are listed upon, and the content of all **FACILITY** Incident Reports and/or Unusual Occurrence reports relating to and/or referencing the **PLAINTIFF**. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report.);

13. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** that confirm that the **FACILITY** had sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident and to meet the total needs each resident and to the **PLAINTIFF** during the time the **PLAINTIFF** was a resident of the **FACILITY** in accordance with the requirements of 902 KAR 20:300 § 9 and/or 902 KAR 20:048 § 3, 4. (902 KAR 20:300 § 9 provides [t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 § 3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 § 4(2)(a) provides [t]here shall be twenty (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receive proper care to prevent decubiti and shall be kept comfortable, clean, and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect.);

14. The mechanisms utilized for determining and recording levels of staff in the **FACILITY** and the **IDENTITY** all person(s) responsible for same, as well as the role staffing plays in the provision of care to residents of the **FACILITY** during the time frame of December 5, 2009 to December 11, 2009; January 3, 2010 to January 9, 2010, July 12, 2011 to July 18, 2011, July 28, 2013 to August 3, 2013; September 13, 2013 to September 19, 2013; and October 6, 2013 to October 12, 2013. (902 KAR 20:300 § 9 provides [t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 § 3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 § 4(2)(a) provides [t]here shall be twenty (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available

for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receive proper care to prevent decubiti and shall be kept comfortable, clean, and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect.);

15. The existence of, name of, intent of and custodian of all **DOCUMENTS** utilized by the deponent during the time frame during which **PLAINTIFF** was a resident of the **FACILITY** to determine the ratio of **NURSING HOURS** per patient day. (902 KAR 20:300 § 9 provides [t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 § 3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 § 4(2)(a) provides [t]here shall be twenty (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receive proper care to prevent decubiti and shall be kept comfortable, clean, and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect.);

16. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action and/or by **YOU** to any named Defendant in this action referencing the staffing levels of the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY**, as well as the **IDENTITY** of all persons who authored and/or received said **DOCUMENT(S)**;

17. The occurrence of, intent of and utilization by the deponent of any **FACILITY** "resident" and/or "family" council meeting which took place during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior as well as the existence of, name of, the intent of and the custodian of any **DOCUMENT** which memorialize and/or reference such meetings;

18. The occurrence of, intent of and utilization by the deponent of any employee "exit interviews" which reflect **FACILITY** operations during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior and as to any **DOCUMENT** reflecting the effort, the name of, content of and identity and location of the custodian of, said **DOCUMENT(S)**;

19. The utilization of, intent of and form of any "resident satisfaction surveys" and/or "family satisfaction surveys" and/or "employee satisfaction surveys" relating to **FACILITY** operations during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior, and the existence of, name of and name and location of the custodian of, any **DOCUMENT** reflecting the effort;

20. The occurrence of, intent of and utilization of by the deponent any "hotline" or "grievance procedure" which reflect **FACILITY** operations during any portion of the time period of during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months

prior and as to any **DOCUMENT** reflecting the effort, the existence of, name of, content of and identity and location of the custodian of said **DOCUMENT(S)**;

21. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** that the **FACILITY** utilized during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY** to ensure that its nursing service personnel were employed ...with the qualifications ...to provide the necessary nursing services for each resident of the **FACILITY** during the time the **PLAINTIFF** was a resident of the **FACILITY.** (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number.);

22. The existence of, name of, the intent of and the custodian of, any **DOCUMENTS** which the deponent relied upon during the time frame during which **PLAINTIFF** was a resident of **FACILITY** to ensure that any **FACILITY** employee who provided any services to the **PLAINTIFF** on behalf of the **FACILITY** were fit to perform their job duties. (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number.);

23. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** which evidence **YOUR** "in-service training and ongoing education" of **FACILITY** employees in accordance with the requirements of 902 KAR 20:048 § 3(10)(b)during the residency of the **PLAINTIFF** in the **FACILITY**. (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number. The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

24. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action and/or by **YOU** to any named Defendant in this action referencing the operating budget and/or financial performance of the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior as well as the **IDENTITY** of all persons who authored and/or received said **DOCUMENT(S)**;

25. The manner by which, and amount of any, consideration was paid by the **FACILITY** to any defendant named herein for services performed during the residency of the **PLAINTIFF** in the **FACILITY**;

26. The name, location, terms, scope, and content of any agreement, administrative services agreement and/or consulting agreement between the **FACILITY** and any named defendant herein relating to management, administrative and/or consulting services provided to the **FACILITY** during the residency of the **PLAINTIFF** in the **FACILITY** in accordance with the requirements of 902 KAR 20:048 § 3(3). (902 KAR 20:048 § 3(3)(b) provides the facility shall require and maintain written recommendations or comments from consultants regarding the program and its development on a per visit basis.);

27. The scope of job responsibilities for any and all **FACILITY** employees, including but not limited to, the categories set forth below during the time which **PLAINTIFF** was a resident of **FACILITY** in accordance with the requirements of 902 KAR 20:048 § 3. (902 KAR

20:048 § 3(10)(a) provides written job descriptions shall be developed for each category of personnel, to include qualifications, lines of authority and specific job assignments.):

- Administrator;
- Director of Nursing;
- Admissions Coordinator;
- Business Office Manager;
- Director of Social Services;
- Director of Staff Development;
- Director of Activities;
- Director of Dietary Services;
- Minimum Data Set Coordinator;
- Case Managers;
- Charge Nurses;
- Registered Nurses;
- Licensed Vocational Nurses;
- Certified Nursing Assistants;
- Restorative Nurse's Aides;
- Physical Therapists;
- Occupational Therapists;
- Speech Therapists

28. The **FACILITY** policies and procedures relating to, as well as any effort to, adhere to applicable rules laws and regulations effecting the operations of the **FACILITY** during the residency of the **PLAINTIFF** in the **FACILITY** and the reasons for same. (902 KAR 20:048 § 3(4) provides that the facility shall establish written policies and procedures that govern all services provided by the facility. The written policies shall include: (a) Patient care and services to include physician, nursing, pharmaceutical (including medication stop orders policy), and residential services. (b) Adult and child protection. The facility shall have written policies which assure the reporting of cases of abuse, neglect or exploitation of adults and children pursuant to KRS Chapters 209 and 620. (c) Use of restraints. The facility shall have a written policy that addresses the use of restraints and a mechanism for monitoring and controlling their use. (d) Missing patient procedures. The facility shall [have] a written procedure to specify in a step-by-step manner the actions which shall be taken by staff when a patient is determined to be lost, unaccounted for or on other unauthorized absence.);

29. The existence of, name of, the intent of, reasons for, content of and the custodian of any **DOCUMENTS** as to any Corporate Integrity Agreement by which the **FACILITY** was bound to operate during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior through the date of this deposition.

30. The mechanisms utilized for determining and recording levels of staff in **FACILITY** and the identity and location of all person(s) responsible for same during the residency of **PLAINTIFF** in the **FACILITY**;

31. The **IDENTITY**, employment status and last known residence address and telephone number of all persons who on behalf the **FACILITY** provided any services to **PLAINTIFF** during the time frame **PLAINTIFF** was a resident of the **FACILITY**;

32. The intake process utilized by the **FACILITY** to determine the needs of an incoming resident and the purpose for same in effect upon the date of admission of the **PLAINTIFF** as a resident of the **FACILITY**;

33. The process, intent and reason for the creation of **FACILITY** Care Plans and modifications thereto as to the **PLAINTIFF** and **FACILITY** residents in general during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY** in accordance with the requirements of 902 KAR 20:048 § 4(2)(d). (902 KAR 20:048 § 4(2)(d) provides there shall be a written nursing care plan for each patient based on the nature of illness, treatment prescribed, long and short term goals and other pertinent information. 1. The nursing care plan shall be a personalized, daily plan for individual patients. It shall indicate what nursing care is needed, how it can best be accomplished for each patient, what are the patients preferences, what methods and approaches are most successful, and what modifications are necessary to ensure best results. 2. Nursing care plans shall be available for use by all nursing personnel. 3. Nursing care plans shall be reviewed and revised as needed. 4. Relevant nursing information from the nursing care plan shall be included with other medical information when patients are transferred.);

34. The number of residents of residents in the **FACILITY** who suffered from falls during the residency of the **PLAINTIFF** in the **FACILITY** as well as six (6) months prior and the existence of, name of, custodian of and methodology of creation of, purpose of and recipients of, all **DOCUMENTS** which memorialize same;

**DEPONENTS ARE DIRECTED TO PRODUCE THE FOLLOWING DOCUMENTS IN RESPONSE TO THE ATTACHED SUBPOENA DUCES TECUM**

**Request for Production of Documents No. 1:**

Please provide copies of any and all **DOCUMENTS** in the deponent's care, custody or control which pertain, reference and/or refer to the **PLAINTIFF**. (902 KAR 20:300 § 3(2)(b) provides that the resident shall have the right to inspect and purchase photocopies of all records pertaining to the resident, upon written request and forty-eight (48) hour notice to the facility).

**Request for Production of Documents 2:**

Please provide a blank "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** utilized by the **FACILITY** to report or memorialize any occurrence relating to a resident which were utilized during the residency of the **PLAINTIFF** in the **FACILITY**. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents 3:**

Please provide any "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** utilized by the **FACILITY** to report or memorialize any occurrence relating to a resident which in any fashion mentions or relates to the **PLAINTIFF**. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents 4:**

Please provide each "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** prepared by the **FACILITY** to report or memorialize the development of falls and/or pressure ulcers as to any **FACILITY** resident during the time frame during which the **PLAINTIFF**

was a resident of the **FACILITY**. (The names of all residents other than the **PLAINTIFF** should be redacted from the production.) (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents No. 5:**

Please provide all **DOCUMENTS** which reflect the number of residents in the **FACILITY** who suffered from falls during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY**. (The name of any resident other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 6:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action referencing the **PLAINTIFF** and/or by **YOU** to any named Defendant in this action referencing the **PLAINTIFF**.

**Request for Production of Documents No. 7:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant, or by **YOU** to any named Defendant in this action referencing the staffing levels in the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 8:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant, or by **YOU** to any named Defendant in this action referencing the operating budget and/or financial performance of the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior.

**Request for Production of Documents No. 9:**

Please provide all **DOCUMENTS** which reflect the number of residents in the **FACILITY** who suffered falls during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6)

months prior. (The name of any resident other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents 10:**

Please provide the **FACILITY NURSING STAFFING INFORMATION** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior (The term **NURSING STAFFING INFORMATION** as utilized in this inquiry is defined as that term is defined in 42 C.F.R. §483.30(e) which is as follows:

> (e) *Nurse staffing information*—(1) *Data requirements.* The facility must post the following information on a daily basis:
>
> (i) Facility name.
>
> (ii) The current date.
>
> (iii) The total number and the actual hours worked by the following categories of licensed and unlicensed nursing staff directly responsible for resident care per shift:
>
> (A) Registered nurses.
>
> (B) Licensed practical nurses or licensed vocational nurses (as defined under State law).
>
> (C) Certified nurse aides.
>
> (iv) Resident census.
>
> (2) *Posting requirements.* (i) The facility must post the nurse staffing data specified in paragraph (e)(1) of this section on a daily basis at the beginning of each shift.
>
> (ii) Data must be posted as follows:
>
> (A) Clear and readable format.
>
> (B) In a prominent place readily accessible to residents and visitors.
>
> (3) *Public access to posted nurse staffing data.* The facility must, upon oral or written request, make nurse staffing data available to the public for review at a cost not to exceed the community standard.)

**Request for Production of Documents No. 11:**

Please provide all **DOCUMENTS** which confirm that the **FACILITY** Nursing service personnel were employed and in at least the number ...to provide the necessary nursing services for

each resident of the **FACILITY** during the time the **PLAINTIFF** was a resident of the **FACILITY** in accordance with the requirements of 902 KAR 20:300 § 9 which states "[t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 § 3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 § 4(2)(a) provides [t]here shall be twenty (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receive proper care to prevent decubiti and shall be kept comfortable, clean, and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect.)

**Request for Production of Documents No. 12:**

Please provide all **DOCUMENTS** which evidence the **FACILITY** "in-service training and ongoing education" in accordance with the requirements of (902 KAR 20:048 § 3(10)(b) during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number. The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 14:**

Please produce all **DOCUMENTS** which constitute **YOUR** In-Service education during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior.

**Request for Production of Documents No. 15:**

Please produce all **DOCUMENTS** which were provided to those who attended any In-Service education put on by the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 16:**

Please provide all **DOCUMENTS** which consist of the **FACILITY** policies, procedures, manuals or guidelines in effect during the time frame during which the **PLAINTIFF** was a resident in the **FACILITY** relating to operations and resident care of the **FACILITY** as well as the **FACILITY** mechanisms utilized for determining and recording levels of staff in the **FACILITY** and the identity and location of all person(s) responsible for same; the **FACILITY** Business Office Policies and Procedures; and the **FACILITY** Policies and Procedures relating to assessing employees job performance and for memorializing discipline of employees and/or complaints received as it pertains to employees.  (902 KAR 20:048 § 3(4) provides that the facility shall establish written policies and procedures that govern all services provided by the facility. The written policies shall include: (a) Patient care and services to include physician, nursing, pharmaceutical (including medication stop orders policy), and residential services. (b) Adult and child protection. The facility shall have written policies which assure the reporting of cases of abuse, neglect or exploitation of adults and children pursuant to KRS Chapters 209 and 620. (c) Use of restraints. The facility shall have a written policy that addresses the use of restraints and a mechanism for monitoring and controlling their use. (d) Missing patient procedures. The facility shall [have] a written procedure to specify in a step-by-step manner the actions which shall be taken by staff when a patient is determined to be lost, unaccounted for or on other unauthorized absence.)

**Request for Production of Documents No. 17:**

Please provide all **DOCUMENTS** in accordance with the requirements of 902 KAR 20:048 § 3 constituting the job description of any and all **FACILITY** personnel set forth below which were in effect during the residency of the **PLAINTIFF** at the **FACILITY**. (902 KAR 20:048 § 3(10)(a) provides written job descriptions shall be developed for each category of personnel, to include qualifications, lines of authority and specific job assignments.) These include, but are not limited to, the following:

1.  Administrator;
2.  Director of Nursing;
3.  Business Office Manager;
4.  Minimum Data Set Coordinator;
5.  Case Managers;
6.  Registered Nurses;
7.  Licensed Vocational Nurses;
8.  Charge Nurses;
9.  Certified Nursing Assistants;
10. Restorative Nursing Assistants;
11. Physical Therapists;
12. Admissions Coordinator;
13. Business Office Manager;
14. Social Services Director;
15. Activities Personnel;
16. Dietary Services Personnel;
17. Director of Staff Development;
18. Medical Director;

**Request for Production of Documents No. 18:**

Please provide all **DOCUMENTS** constituting the **FACILITY** Employee Handbook in

effect during the residency of the **PLAINTIFF** at the **FACILITY.**

**Request for Production of Documents No. 19:**

Please provide all **DOCUMENTS** constituting Orientation Manuals intended for utilization by **FACILITY** new employees during the residency of the **PLAINTIFF** at the **FACILITY.**

**Request for Production of Documents No. 20:**

Please provide all **DOCUMENTS** constituting the **FACILITY** Code of Conduct for employees in effect during the residency of the **PLAINTIFF** at the **FACILITY**.

**Request for Production of Documents No. 21:**

Please provide all **DOCUMENTS** which constitute any Corporate Integrity Agreement by which the **FACILITY** was bound during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY**.

*Respectfully Submitted,*

**GARCIA, ARTIGLIERE & MEDBY**

Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III
444 East Main Street, Suite 108
Lexington, Kentucky 40507
Telephone: (502) 584-3805
Facsimile: (502) 584-3811
***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

This is to certify that the original of the foregoing was mailed first class United States mail, postage prepaid, to the **Clerk, Pike County Circuit Court, P.O. Box 1002, Pikeville, Kentucky 41502,** and that a true and correct copy of the foregoing was duly mailed this 26th day of September, 2016 to the following:

J. Peter Cassidy, III
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
PH: 859.226.0057
Fax: 859.226.0059
***Counsel for Defendants***

***Counsel for Plaintiff***

F8584E94-4BD7-41E3-935A-8CB497CE6EE4 : 000001 of 000013

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 15-CI-00778

***ELECTRONICALLY FILED***

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFF

v.

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER , et al. DEFENDANTS

*** *** *** ***

**RE-NOTICE OF CR 30.02(6) DEPOSITION OF KENTUCKY MEDICAL INVESTORS, L.L.C. (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER**

PLEASE TAKE NOTICE that pursuant to Kentucky Rule of Civil Procedure 30.02(6) and for all purposes provided by the Kentucky Rules of Civil Procedure, on **Tuesday, December 6, 2016** beginning at **9:00 a.m., EST** and continuing until completed at the **Law Office of Michael Pack and Ron Diddle, 137 Pike St., Unit 1, Pikeville, KY 41501**, Plaintiff, by counsel, will take the deposition of Kentucky Medical Investors, L.L.C. (GA) d/b/a Mountain View Health Care Center on the following topics:

1. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** within the care, custody and/or control of the **FACILITY** which refer to and/or reference in whatsoever manner, the **PLAINTIFF**. (The term "**PLAINTIFF**" shall refer to Helen Ray. The term "FACILITY", as used in this and all subsequent inquiries, shall refer to Kentucky Medical Investors, L.L.C. (GA) d/b/a Mountain View Health Care Center, wherein PLAINTIFF was a resident. The terms **"DOCUMENT(S)"** and/or **"DOCUMENTATION"**, as used in this and all subsequent inquiries shall mean, includes all written, graphic or otherwise recorded matter however produced or reproduced, including the originals (or any copies when originals are not available) and non-identical copies (where different from the original because notes were made on such copies or because said copies may have been sent to different individuals than originals, or for any other reason) and preliminary or final drafts of writings, records, and recordings of every kind and description, whether inscribed by hand or by mechanical, electronic, microfilm, photographic or other means, as well as phonic (such as tape recordings) or visual reproductions of all statements, conversations or events and including, without limitation, correspondence, teletype messages, notes, reports,

F8584E94-4BD7-41E3-935A-8CB497CE6EE4 : 000002 of 000013

compilations, schedules, studies, tabulations, tallies, maps, charts, diagrams, drawings, plans, pictures, computer runs, advertising and promotional material, press releases, minutes and records of any memoranda of all press releases, minutes and records of any memoranda of all types, inter-office and intra-office communications, notes of conversations, vouchers, financial calculations and statements, working papers, statistical analyses, invoices, purchase orders, expense account records, stenographers, notebooks, desk calendars, appointment books, diaries, manuals, pamphlets, brochures, escrow instructions, contracts, deeds, agreements, title reports, listings, authorizations, and any abstracts, summaries and analyses of the above, and all other recorded matter of every nature and kind.)

2. The date and time of each occasion upon which the **PLAINTIFF** suffered any "fall" in the **FACILITY**.

3. The identify and employment status, and as to all former employees the last known residence address and telephone number, of each person who **YOU** contended has any knowledge or information relating to any "fall" suffered by the **PLAINTIFF** in the **FACILITY**. (For purposes of these inquiries, **YOU** and **YOUR** refers individually and collectively to the individual, partnership, or corporate defendant to whom this request is addressed and all persons acting or purporting to act on the behalf of said defendant.)

4. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each person who on **YOUR** behalf assessed the condition of the **PLAINTIFF** after any "fall" suffered by the **PLAINTIFF** in the **FACILITY**.

5. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each person who **YOU** contend witnessed any fall suffered by the **PLAINTIFF** in the **FACILITY**. (For purposes of these inquiries, **YOU** and **YOUR** refers individually and collectively to the individual, partnership, or corporate defendant to whom this request is addressed and all persons acting or purporting to act on the behalf of said defendant.)

6. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each person who on **YOUR** behalf assessed the condition of the **PLAINTIFF** after any fall suffered by the **PLAINTIFF** in the **FACILITY**.

7. The existence of and nature of the business relationship between **YOU** and any of the named co-defendant(s) in this action during the time frame during which **PLAINTIFF** was a patient in the **FACILITY**.

8. The existence of, scope of, and intent of any and all **FACILITY** policies and procedures which were in effect during the admission of the **PLAINTIFF** in the **FACILITY** in accordance with the provisions of 902 KAR 20:026 § 3(3). (902 KAR 20:026 § 3(3) provides as follows: "The **FACILITY** shall have written policies and procedures governing all aspects of the operation of the facility and the services provided.")

9. The purpose of and frequency of In-Service Education provided to **FACILITY** employees, including but not limited to In-Service education programs, for a period of time commencing six months prior to the admission in the **FACILITY** through the last date of the admission of the **PLAINTIFF** in the **FACILITY** in accordance with 902 KAR 20:026 § 3(9). (902 KAR 20:026 § 3(9)(e) provides as follows: "There shall be an in-service education program in effect for all nursing personnel at regular intervals in addition to a thorough job orientation for new personnel.")

10. The purpose, scope of, and nature of all training and job orientation provided to **FACILITY**

F8584E94-4BD7-41E3-935A-8CB497CE6EE4 : 000003 of 000013

employees for a period of time commencing six months prior to the admission in the **FACILITY** through the last date of the admission of the **PLAINTIFF** in the **FACILITY** in accordance with 902 KAR 20:026 § 3(9). (902 KAR 20:026 § 3(9)(e) provides as follows: "There shall be an in-service education program in effect for all nursing personnel at regular intervals in addition to a thorough job orientation for new personnel.")

11. The mechanisms utilized for determining and recording levels of staff in any wing or station in which the **PLAINTIFF** was in the **FACILITY** and the identity and location of all person(s) responsible for same, in effect during the time which **PLAINTIFF** was a patient of **FACILITY** in accordance with 902 KAR 20:026 § 3(9). (902 KAR 20:026 § 3(9)(d) provides as follows: "The **FACILITY** shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis.")

12. The **FACILITY** Policies and Procedures relating to assessing employees' job performance, memorializing discipline of employees and/or complaints received as it pertains to employees in effect during the time which **PLAINTIFF** was a patient of **FACILITY**;

13. The existence of, title of, location of, intent of, content of, and custodian of all **DOCUMENTS** utilized by the **FACILITY** during the time period during which the **PLAINTIFF** was a resident of the **FACILITY** so as to ensure that all **FACILITY** staff who provided services to the **PLAINTIFF** were fit to perform their job duties in accordance with 902 KAR 20:026 § 3(9). (902 KAR 20:026 § 3(9)(b) provides as follows: "Current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, evaluation of performance, records of in-service training and on-going education, along with employee's name, address and Social Security number.").

14. The name, location, terms, scope, and content of any agreement between the **FACILITY** and any named defendant herein or any other entity relating to management, administrative and/or consulting services provided to the **FACILITY** during the stay of the **PLAINTIFF** in the **FACILITY**.

15. The date of creation, circumstances of creation, existence, content of, and name, and as to former employees the last known residence address and telephone number, of all persons whose names are listed on any **FACILITY** Incident Report and/or Unusual Occurrence report and/or any investigation resulting therefrom relating to, or mentioning, the **PLAINTIFF**;

16. The job title and scope of job responsibilities for any and all **FACILITY** employees during the time she was a patient at the **FACILITY** in accordance with 902 KAR 20:026 § 3(9). (902 KAR 20:026 § 3(9)(a) provides as follows: "Written job descriptions shall be developed for each category of personnel to include qualifications, lines of authority and specific duty assignments.")

17. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each individual, agency, partnership or corporation who served as the "governing body" of the **FACILITY** during the time **PLAINTIFF** was a patient at the **FACILITY** in accordance with 42 CFR § 483.75. (42 CFR § 483.75(d)(1) provides as follows: The facility must have a governing body, or designated persons functioning as a governing body, that is legally responsible for establishing and implementing policies regarding the management and operation of the facility.")

F8584E94-4BD7-41E3-935A-8CB497CE6EE4 : 000004 of 000013

18. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each individual, agency, partnership or corporation who served as the "licensee" of the **FACILITY** during the time **PLAINTIFF** was a patient at the **FACILITY** in accordance with 902 KAR 20:026 § 3(1). (902 KAR 20:026 § 3(1) provides as follows: "The licensee shall be legally responsible for the facility and for compliance with federal, state and local laws and regulations pertaining to the operation of the facility.")

19. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each individual who served as the "administrator" of the **FACILITY** during the time **PLAINTIFF** was a patient at the **FACILITY** in accordance with 902 KAR 20:026 § 3(2). (902 KAR 20:026 § 3(2) provides as follows: "All facilities shall have an administrator who is responsible for the facility and who shall delegate such responsibility in his absence.")

20. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each individual who participated in any fall-related "nursing care plan" during the time **PLAINTIFF** was a patient at the **FACILITY** in accordance with 902 KAR 20:026 § 3(2). (902 KAR 20:026 § 3(2) provides as follows: "All facilities shall have an administrator who is responsible for the facility and who shall delegate such responsibility in his absence.")

21. The identity and employment status, and as to all former employees the last known residenee address and telephone number, of each individual who served as the physician to **PLAINTIFF** during the time **PLAINTIFF** was a patient at the **FACILITY** in accordance with 902 KAR 20:026 § 4(2). (902 KAR 20:026 § 4(2)(d) provides as follows: "There shall be written nursing care plans for each patient based on the nature of illness, treatment prescribed, long and short term goals and other pertinent information. (1) The nursing care plan shall be a personalized, daily plan for individual patients. It shall indicate what nursing care is needed, how it can best be accomplished for each patient, what are the patient's preferenees, what methods and approaches are most successful, and what modifications are necessary to insure best results.")

22. The existence of, scope of, and content of any and all **FACILITY** "nursing staff data/information" during the admission of the **PLAINTIFF** in the **FACILITY** in accordance with the provisions of 42 CFR § 483.30(e). (42 CFR § 483.30(e)(3) provides as follows: "The Facility must, upon oral or written request, make nurse staffing data available to the public for review at a cost not to exceed the community standard .")

23. The **IDENTITY** of all persons who the assessed the pressure sore risk potential of the **PLAINTIFF** during the admission of the **PLAINTIFF** in the **FACILITY** as well as the existence of, name of and custodian of all **DOCUMENTS** which memorialize the effort. (For the purposes of these inquiries, the term **IDENTITY** means to state or a statement of: a. in the case of a person other than a natural person, its name, the address of its principal place of business (including zip eode), its telephone number, and the name of its chief executive officer, as well as, if it has a person other than a natural person that ultimately controls it, that other person's name, the address of that person's principal place of business (including zip code), that other person's telephone number, and that person's chief executive officer; b. in the case of a natural person, his or her name, residential address and telephone number, business address and telephone number, employer, and title or position; c. in the case of a communication, its date, type (e.g., telephone conversation or discussion), the place where it occurred, the identity of the person who made the communication, the identity of the person that received the communication, the identity of each other person present when it was made, and the subject matter discussed; d. in the case of a document, the title of the document, the author, the title or position of the author, the addressee, each recipient, the

F8584E94-4BD7-41E3-935A-8CB497CE6EE4 : 000005 of 000013

type of document, the subject matter, the date of preparation, and its number of pages; and e. in the case of an agreement, its date, the place where it occurred, the identity of all persons who were parties to the agreement, the identity of each person who has knowledge of the agreement and all other persons present when it was made, and the subject matter of the agreement.)

24. The determination made as to the skin integrity and the existence of any pressure sores upon the person of the **PLAINTIFF** by **FACILITY** personnel conducting any skin assessment of the **PLAINTIFF** upon admission to the **FACILITY** as well as the name of and custodian of all **DOCUMENTS** which memorialize the effort.

25. The date of the deponent fist learning of the existence of any decubitus ulcer on the body of the **PLAINTIFF** during the admission of the **PLAINTIFF** in the **FACILITY** as well as the location and staging of any such decubitus ulcer, the **IDENTITY** of the person who made said discovery and the existence of, name of and custodian of all **DOCUMENTS** which memorialize the effort.

26. The **IDENTITY** of all persons who the turned and repositioned the **PLAINTIFF** to relieve pressure on bony prominences of the **PLAINTIFF** during the admission of the **PLAINTIFF** in the **FACILITY** as well as the existence of, name of and custodian of all **DOCUMENTS** which memorialize the effort;

27. The **IDENTITY** of all persons who prepared, modified, updated, changed and/or altered any **FACILITY** Care Plan or Plan of Care of the **PLAINTIFF** during the admission of the **PLAINTIFF** in the **FACILITY** as well as the date of, and reasons for each modification, update, change or alteration;

28. The date of the deponent fist learning of the existence of any injury of unknown origin on the body of the **PLAINTIFF** during the admission of the **PLAINTIFF** in the **FACILITY** as well as the location and description of said inury, the **IDENTITY** of the person who made said discovery and the existence of, name of and custodian of all **DOCUMENTS** which memorialize the effort;

29. The number of residents of residents in the **FACILITY** who suffered from pressure sores, decubitus ulcers, falls and injuries of unknown origin during the residency of the **PLAINTIFF** in the **FACILITY** as well as six (6) months prior and the existence of, name of, custodian of and methodology of creation of, purpose of and recipients of, all **DOCUMENTS** which memorialize same;

Pursuant to CR 30.02(6), Kentucky Medical Investors, L.L.C. (GA) d/b/a Mountain View Health Care Center is directed to "designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which he will testify" as described above.

F8584E94-4BD7-41E3-935A-8CB497CE6EE4 : 000006 of 000013

**DEPONENTS ARE DIRECTED TO PRODUCE THE FOLLOWING DOCUMENTS IN RESPONSE TO THE ATTACHED SUBPOENA DUCES TECUM**

**Request for Production of Documents No. 1:**

Please provide copies of any and all **DOCUMENTS** in the deponent's care, custody or control which pertain, reference and/or refer to the **PLAINTIFF**. (902 KAR 20:300 § 3(2)(b) provides that the resident shall have the right to inspect and purchase photocopies of all records pertaining to the resident, upon written request and forty-eight (48) hour notice to the facility).

**Request for Production of Documents 2:**

Please provide a blank "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** utilized by the **FACILITY** to report or memorialize any occurrence relating to a resident which were utilized during the residency of the **PLAINTIFF** in the **FACILITY**. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents 3:**

Please provide any "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** utilized by the **FACILITY** to report or memorialize any occurrence relating to a resident which in any fashion mentions or relates to the **PLAINTIFF**. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents 4:**

Please provide each "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** prepared by the **FACILITY** to report or memorialize the development of pressure sores, falls or aspiration as to any **FACILITY** resident during the time frame during which the

F8534E94-4BD7-41E3-935A-8CB497CE6EE4 : 000007 of 000013

**PLAINTIFF** was a resident of the **FACILITY**. (The names of all residents other than the **PLAINTIFF** should be redacted from the production.) (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents No. 5:**

Please provide all **DOCUMENTS** which reflect the number of residents in the **FACILITY** who suffered from pressure sores, falls or injuries of unknown origin during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY**. (The name of any resident other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 6:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action referencing the **PLAINTIFF** and/or by **YOU** to any named Defendant in this action referencing the **PLAINTIFF**.

**Request for Production of Documents No. 7:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant, or by **YOU** to any named Defendant in this action referencing the staffing levels in the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 8:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant, or by **YOU** to any named Defendant in this action referencing the operating budget and/or financial performance of the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior.

**Request for Production of Documents No. 9:**

Please provide the **FACILITY NURSING STAFFING INFORMATION** during the time

F8584E94-4BD7-41E3-935A-8CB497CE6EE4 : 000008 of 000013

frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior (The term **NURSING STAFFING INFORMATION** as utilized in this inquiry is defined as that term is defined in 42 C.F.R. §483.30(e) which is as follows:

(e) *Nurse staffing information*—(1) *Data requirements.* The facility must post the following information on a daily basis:

(i) Facility name.

(ii) The current date.

(iii) The total number and the actual hours worked by the following categories of licensed and unlicensed nursing staff directly responsible for resident care per shift:

(A) Registered nurses.

(B) Licensed practical nurses or licensed vocational nurses (as defined under State law).

(C) Certified nurse aides.

(iv) Resident census.

(2) *Posting requirements.* (i) The facility must post the nurse staffing data specified in paragraph (e)(1) of this section on a daily basis at the beginning of each shift.

(ii) Data must be posted as follows:

(A) Clear and readable format.

(B) In a prominent place readily accessible to residents and visitors.

(3) *Public access to posted nurse staffing data.* The facility must, upon oral or written request, make nurse staffing data available to the public for review at a cost not to exceed the community standard.)

**Request for Production of Documents No. 10:**

Please provide all **DOCUMENTS** which confirm that the **FACILITY** Nursing service personnel were employed and in at least the number ...to provide the necessary nursing services for each resident of the **FACILITY** during the time the **PLAINTIFF** was a resident of the **FACILITY** in accordance with the requirements of 902 KAR 20:300 § 9 which states "[t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest

F8584E94-4BD7-41E3-935A-8CB497CE6EE4 : 000009 of 000013

practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 § 3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 § 4(2)(a) provides [t]here shall be twenty (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receive proper care to prevent decubiti and shall be kept comfortable, clean, and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect.)

**Request for Production of Documents No. 11:**

Please provide all **DOCUMENTS** which evidence the **FACILITY** "in-service training and ongoing education" in accordance with the requirements of (902 KAR 20:048 § 3(10)(b) during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number. The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 12:**

Please produce all **DOCUMENTS** which were provided to those who attended any In-Service education put on by the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (The names of all residents other than the **PLAINTIFF**

F8584E94-4BD7-41E3-935A-8CB497CE6EE4 : 000010 of 000013

should be redacted from the production.)

**Request for Production of Documents No. 13:**

Please provide all **DOCUMENTS** which consist of the **FACILITY** policies, procedures, manuals or guidelines in effect during the time frame during which the **PLAINTIFF** was a resident in the **FACILITY** relating to operations and resident care of the **FACILITY** as well as the **FACILITY** mechanisms utilized for determining and recording levels of staff in the **FACILITY** and the identity and location of all person(s) responsible for same; the **FACILITY** Business Office Policies and Procedures; and the **FACILITY** Policies and Procedures relating to assessing employees job performance and for memorializing discipline of employees and/or complaints received as it pertains to employees. (902 KAR 20:048 § 3(4) provides that the facility shall establish written policies and procedures that govern all services provided by the facility. The written policies shall include: (a) Patient care and services to include physician, nursing, pharmaceutical (including medication stop orders policy), and residential services. (b) Adult and child protection. The facility shall have written policies which assure the reporting of cases of abuse, neglect or exploitation of adults and children pursuant to KRS Chapters 209 and 620. (c) Use of restraints. The facility shall have a written policy that addresses the use of restraints and a mechanism for monitoring and controlling their use. (d) Missing patient procedures. The facility shall [have] a written procedure to specify in a step-by-step manner the actions which shall be taken by staff when a patient is determined to be lost, unaccounted for or on other unauthorized absence.)

**Request for Production of Documents No. 14:**

Please provide all **DOCUMENTS** in accordance with the requirements of 902 KAR 20:048 § 3 constituting the job description of any and all **FACILITY** personnel set forth below which were in effect during the residency of the **PLAINTIFF** at the **FACILITY**. (902 KAR 20:048 § 3(10)(a) provides written job descriptions shall be developed for each category of personnel, to include qualifications, lines of authority and specific job assignments.) These include, but are not limited to, the following:

1. Administrator;

2. Director of Nursing;

3. Business Office Manager;

4. Minimum Data Set Coordinator;

5. Case Managers;

6. Registered Nurses;

7. Licensed Vocational Nurses;

8. Charge Nurses;

9. Certified Nursing Assistants;

10. Restorative Nursing Assistants;

11. Physical Therapists;

12. Admissions Coordinator;

13. Business Office Manager;

14. Social Services Director;

15. Activities Personnel;

16. Dietary Services Personnel;

17. Director of Staff Development;

18. Medical Director.

F8584E94-4BD7-41E3-935A-8CB497CE6EE4 : 000011 of 000013

**Request for Production of Documents No. 15:**

Please provide all **DOCUMENTS** constituting the **FACILITY** Employee Handbook in effect during the residency of the **PLAINTIFF** at the **FACILITY**.

**Request for Production of Documents No. 16:**

Please provide all **DOCUMENTS** constituting Orientation Manuals intended for utilization by **FACILITY** new employees during the residency of the **PLAINTIFF** at the **FACILITY**.

**Request for Productiou of Documents No. 17:**

Please provide all **DOCUMENTS** constituting the **FACILITY** Code of Conduct for employees in effect during the residency of the **PLAINTIFF** at the **FACILITY**.

F8584E94-4BD7-41E3-935A-8CB497CE6EE4 : 000013 of 000013

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing was electronically filed and served via U.S. Mail, postage prepaid, on this 27th day of October, 2016, upon the following:

J. Peter Cassidy, III
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
PH: 859.226.0057
Fax: 859.226.0059
***Counsel for Defendants***

US Legal Support
krstephens@uslegalsupport.com
Phone: 407.649.1892

/s/ M. Brandon Faulkner
***Counsel for Plaintiff***

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 15-CI-00778

***ELECTRONICALLY FILED***

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFF

v. **NOTICE TO CANCEL DEPOSITION**

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER , et al. DEFENDANTS

*** *** *** ***

PLEASE TAKE NOTICE that the deposition of Kentucky Medical Investors, L.L.C. (GA) d/b/a Mountain View Health Care Center scheduled for Tuesday, December 6, 2016 beginning at 9:00 a.m. EST at the Law Office of Michael Pack and Ron Diddle, 137 Pike St., Unit 1, Pikeville, KY 41501 is hereby cancelled.

*Respectfully Submitted,*

**GARCIA, ARTIGLIERE & MEDBY**

/s/ M. Brandon Faulkner
Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III
444 East Main Street, Suite 108
Lexington, Kentucky 40507
Telephone: (502) 584-3805
Facsimile: (502) 584-3811
***Counsel for Plaintiff***

83243FB9-A9CA-4C1B-A084-1841DA0A7935 : 000001 of 000002

83243FB9-A9CA-4C1B-A084-1841DA0A7935 : 000002 of 000002

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing was electronically filed and served via U.S. Mail, postage prepaid, on this 5th day of December, 2016, upon the following:

J. Peter Cassidy, III
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
PH: 859.226.0057
Fax: 859.226.0059
***Counsel for Defendants***

US Legal Support
krstephens@uslegalsupport.com
Phone: 407.649.1892

/s/ M. Brandon Faulkner
***Counsel for Plaintiff***

820718CF-DF7C-4F28-B260-1FE9EF7A3186 : 000001 of 000002

**COMMONWEALTH OF KENTUCKY**
**PIKE COUNTY CIRCUIT COURT**
**CIVIL ACTION NO.: 15-CI-778**

***ELECTRONICALLY FILED***

JENNIFER BINGHAM, as Executrix of the ESTATE of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased,

PLAINTIFF

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER, et al.

DEFENDANTS

*** *** ***

**MOTION FOR PRETRIAL CONFERENCE AND TRIAL DATE**

Plaintiff, by counsel, pursuant to CR 16 and Local Rule 7 of the 35th Judicial Circuit, respectfully moves this Court for an Order setting this case for a pretrial conference and trial by jury at the Court's earliest convenience.

*Respectfully Submitted,*

**GARCIA, ARTIGLIERE, MEDBY & FAULKNER**

/s/ M. Brandon Faulkner
Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III
444 East Main Street, Suite 108
Lexington, Kentucky 40507
Telephone:(502) 584-3805
Facsimile:(502) 584-3811
***Attorneys for Plaintiff***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing was electronically filed and served via U.S. Mail, postage prepaid, on this 27th day of January, 2017, upon the following:

J. Peter Cassidy, III, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
*Counsel for Defendants*

/s/ M. Brandon Faulkner
*Counsel for Plaintiff*

820718CF-DF7C-4F28-B260-1FE9EF7A3186 : 000002 of 000002

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION NO. II

ACTION NO. 15-CI-00778

ESTATE OF HELEN RAY, ET AL PLAINTIFFS

V. ORDER

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA), ET AL DEFENDANTS

*******************

This cause is assigned for Preliminary Conference on the 17th day of February, 2017, at the hour of 9:30 a.m.

ENTERED this 2nd day of February, 2017.

ENTERED
ANNA PINSON SPEARS
FEB 02 2017
PIKE CIRCUIT/DISTRICT COURT
BY: D.C.

HON. STEVEN D. COMBS
PIKE CIRCUIT COURT
DIVISION NO. II

CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Order was this day mailed to the parties and/or their attorneys of record, this the 2 day of February, 2017.

ANNA PINSON SPEARS, CLERK
PIKE CIRCUIT COURT

BY: D.C.

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000001 of 000084

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 15-CI-00778

***ELECTRONICALLY FILED***

JENNIFER BINGHAM, as Executrix
of the Estate of HELEN RAY, deceased,
and on behalf of the Wrongful Death
Beneficiaries of HELEN RAY, deceased, PLAINTIFF

v.

KENTUCKY MEDICAL INVESTORS, LLC.
(GA) d/b/a MOUNTAIN VIEW HEALTH CARE
CENTER , et al. DEFENDANTS

**PLAINTIFF'S MOTION TO COMPEL THE DEPOSITION OF KENTUCKY MEDICAL INVESTORS, LLC. (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER PURSUANT TO CR 30.02(6) AND MOTION FOR SANCTIONS PURSUANT TO CR 37.02**

* * * * * * * * * *

Comes the Plaintiff Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, and on behalf of the Wrongful Death Beneficiaries of Helen Ray, deceased (hereinafter "Plaintiff"), by and through counsel, and for her Motion to Compel the Deposition of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center pursuant to CR 30.02(6) and for Sanctions pursuant CR 37.02(2) and (3), states as follows:

**INTRODUCTION**

Following a hearing on September 19, 2016, the Court denied Defendant's Motion to Quash the CR 30.02(6) deposition of Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center thereby requiring the Defendant to produce a corporate representative or representatives responsive to each and every Topic of Inquiry and Request for Production of Documents set forth in

COM : 000001 of 000084

Plaintiff's CR 30.02(6) Deposition Notice. Accordingly, by agreement of the parties, the deposition was lawfully noticed for December 6, 2016. Thereafter, on December 2, 2016, Defense counsel advised the deponent was experiencing medical issues and unavailable for the deposition as noticed. Nonetheless, Defense counsel promised to work diligently to designate an alternate deponent(s) and provide alternative dates for the completion of said deposition. Having received no further communication in this regard, on January 27, 2017, sent defense counsel correspondence requesting a new deponent and alternate dates. However, as of the date of this Motion, Defense counsel has not responded, and therefore Plaintiff is left with no choice but to reluctantly seek the assistance of the Court in compelling said depositions and requesting Sanctions pursuant to CR 37.02 (2) and (3).

The deposition at issue is critical to the litigation of this matter and Plaintiff firmly believes the deposition of a corporate representative as contemplated by CR 30.02(6) to be the most cost effective and minimally intrusive mechanism for the timely acquisition of the evidence necessary to prove Plaintiff's claims. Deposing the corporate representative of Kentucky Medical Investors, LLC. (GA) d/b/a Mountain View Health Care Center (hereinafter "Mountain View") is necessary to prove the allegations of Plaintiff's Complaint – namely that as a direct result of budgetary constraints causing insufficiency of staff, in both number and training, by the Defendants, Helen Ray suffered multiple falls while a resident of Mountain View resulting in many injuries, one such injury being brain bleed. Additionally, Ms. Ray developed multiple painful pressure sores after Mountain View staff failed to assess or document assessment of Ms. Ray's skin condition due to Defendant's negligence.

Plaintiff's injuries are alleged to have been caused by the wrongful withholding of required care by the Defendants and would not have occurred but for knowing understaffing, lack of training, failure to allot sufficient economic resources, and unfitness of staff in capacity and competency, by

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000002 of 000084
COM : 000002 of 000084

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000003 of 000084

the Defendants. These allegations are well-supported by the factual record developed to date. In fact, as to the issues of falls, an Adult Protective Services (APS) investigation substantiated allegations of caretaker neglect due to lack of appropriate supervision.

Mountain View has no substantial justification to deny Plaintiff access to this very basic discovery at this time. Plaintiff has attempted to schedule the requested deposition on multiple occasions, yet Defendant has failed to produce a responsive deponent or deponents for deposition. After giving Defendant more than adequate time to produce a back-up deponent, they have still failed to do so. This lawsuit has now been ongoing for more than a year and Plaintiff can no longer sit idly while Defendant attempts to circumvent the Rules of Civil Procedure and deny Plaintiff the very evidence necessary to prove her claims.

Therefore, Plaintiff requests the court order Sanctions against Defendant pursuant to CR 37.02 (2) and (3). In sum, it is quite obvious defense counsel knows full well the importance of the deposition sought here as to *prima facie* elements of the causes of action alleged and hope through obstructionism, the Plaintiff will be precluded from acquiring this very important information. Given the defense counsel's obstructionist efforts and unwillingness to work collaboratively to resolve this discovery dispute, the matter is unfortunately before the Court. For all the reasons and for those set forth below, the Court should grant Plaintiff's Motion and order of Sanctions against Defendant.

## RELEVANT PROCEDURAL HISTORY

As detailed below, Plaintiff has made every reasonably effort to collaboratively schedule this deposition without the need for judicial intervention. On January 19, 2016, Plaintiff sent Defendant Mountain View the first Deposition Notice (Attached hereto as **Exhibit 1**). Plaintiff's Deposition Notice was directed only to Defendant Mountain View; not any of the Co-Defendants. The Deposition Notice set the deposition for March 3, 2016; giving Mountain View over a month to

COM : 000003 of 000084

comply with the Notice. Accompanying the deposition notice was a letter from Plaintiff's counsel stating:

> Should the date we have selected for said deposition prove inconvenient with your calendar, we are happy to reasonably accommodate you. However, reasonableness and collaboration require a joint effort and that would require your timely participation in the effort. To that end, should the date we have selected prove inconvenient with you or the deponent, please provide this office with two alternative dates and times upon which you propose this deposition proceeds such that said deposition is convened within forty-five (45) days from writing of this correspondence. Please provide your written preferences by no later than close of business on Monday, January 25, 2016. (Attached hereto as **Exhibit 2**)

Per the Defendant's request, Plaintiff extended the deadline to produce a deponent multiple times, until finally Defense counsel filed a Motion to Quash, or in the alternative, for Protective Order on August 12, 2016. (Attached hereto as **Exhibit 3**). On September 16, 2016, the Court conducted a hearing and subsequently on September 19, 2016 denied the Defendants Motion to Quash, thus forcing the Defendant to produce a deponent responsive to each and every Topic of Inquiry and Request for Production set forth in Plaintiff's Notice. (Attached hereto as **Exhibit 4**).

Consequently, on September 26, 2016, Plaintiff sent Defendant Mountain View a second Deposition Notice (attached hereto as **Exhibit 5**). The Deposition Notice set the deposition for October 19, 2016; once again giving Mountain View almost a month to comply with the Notice. Nonetheless, accompanying the deposition notice was a letter from Plaintiff's counsel advising

> Should the date we have selected for said deposition prove inconvenient with your calendar, we are happy to reasonably accommodate you. However, reasonableness and collaboration require a joint effort and that would require your timely participation in the effort. To that end, should the date we have selected prove inconvenient with you or the deponent, please provide this office with two alternative dates and times upon which you propose this deposition proceeds such that said deposition is convened within thirty (30) days from writing of this correspondence. Please provide your written preferences by no later than close of business on Thursday, September 29, 2016. (Attached hereto as **Exhibit 6**)

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000004 of 000084
COM : 000004 of 000084

Notwithstanding Plaintiff's clear timeline, Defendant requested on October 14, 2016 that the deposition be moved back to a series of available dates in December. (Attached hereto as **Exhibit 7**). Plaintiff subsequently agreed, rescheduled, and sent out a third Deposition Notice scheduled for December 6, 2016 (Attached hereto as **Exhibit 8**)

Nevertheless, on December 1, 2016, Defense counsel sent a letter to Plaintiff explaining that the witness they have been working with had developed medical issues and would not be available for the deposition(attached hereto as **Exhibit 9**). However, Defense counsel promised,

> "I am working on an alternative witness now but believe this development will likely result in preparation and presentation of multiple witnesses in response to the deposition notice, I will work diligently to identify the appropriate witness(es) and get back with you as soon as possible with Alternate dates and time for this purpose." *Id.*

Thereafter, Plaintiff then sent a letter to Defense counsel on January 27, 2017, almost two months later requesting a new deponent and alternate dates. (Attached hereto as **Exhibit 10**). As of this date, Defense counsel has not responded, and therefore Plaintiff is left with no choice but to reluctantly seek the assistance of the Court in requesting Sanctions against Defendant pursuant to CR 37.02 (2) and (3).

**LAW AND ARGUMENT**

The Court has already once ordered Defendant to produce a deponent in response to Plaintiff's request in a previous Order. While understandably the first deponent had medical issues and was unable to be deposed on the requisite date, now the Defendant has had over two months to produce another deponent as ordered by the Court. They have failed to do so.

The Court is of course aware that failure to comply with an order is governed by CR 37.02 of the Kentucky Rules of Civil Procedure, which provides in subsection (2) that sanctions by the Court in which action is pending is allowed:

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000005 of 000084
COM : 000005 of 000084

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000006 of 000084

> If a party or an officer, director, or managing agent of a party or a person designated under Rule 30.02(6) or 31.01(2) to testify on behalf of a party ***fails to obey an order*** to provide or permit discovery, ***including an order made under Rule 37.01*** or rule 35, the court in which the action is pending may make such orders in regard to the failure as are just…
>
> In lieu of any of the foregoing orders or in addition thereto, the court shall ***require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure***, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Kentucky R. Civ. P. 37.02(2) and (3) (emphasis added).

As set forth in the above procedural history, Plaintiff has been more than reasonable in attempting to schedule the deposition of the corporate representative of Mountain View. Clearly the Defendant has failed to obey an Order given directly by the Court, and has failed to produce a deponent on multiple occasions. Defendant's refusal to produce a deponent as ordered by the court is not justified and sanctions should be awarded based on their obvious failure to obey a Court Order.

**CONCLUSION**

Defendant should be compelled to pay sanctions as required under the Civil Rules. Defendants' refusal to comply with this Court Order in a timely manner brings this matter before the Court, places an unnecessary hardship on Plaintiff, and results in an inappropriately drawn out litigation process for both parties and this Court. Defendant must produce one or more representatives to testify as to the topics set forth in the Deposition Notice. In addition, Plaintiff requests the court order Sanctions under CR 37.02(2) and (3).

WHEREFORE, for the above stated reasons, Plaintiff Jennifer Bingham as Executrix of the Estate of Helen Ray, deceased, and on behalf of the Wrongful Death Beneficiaries of Helen Ray,

COM : 000006 of 000084

deceased, respectfully requests Plaintiff's Motion to Compel Sanctions to CR 37.02(2) and (3) be granted and an Order compelling this discovery be issued.

*Respectfully submitted,*

**GARCIA, ARTIGLIERE, MEDBY & FAULKNER**

/s/ M. Brandon Faulkner
Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III, Esq.
Garcia, Artigliere, Medby & Faulkner
444 East Main Street, Suite 108
Lexington, KY 40507
Telephone 502.584.3805
Facsimile 502.584.3811
***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

This is to certify the original copy of the foregoing was electronically filed and that a true and correct copy of the foregoing mailed this 9th day of February, 2017 to the following:

J. Peter Cassidy, III
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 - facsimile
***Counsel for Defendants***

/s/ M. Brandon Faulkner
***Counsel for Plaintiff***

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000007 of 000084

COM : 000007 of 000084

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000008 of 000084

# Exhibit "1"

COM : 000008 of 000084

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 15-CI-00778

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFF

v.

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER, et al. DEFENDANTS

*** *** *** ***

**NOTICE OF CR 30.02(6) DEPOSITION OF KENTUCKY MEDICAL INVESTORS, L.L.C. (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER**

PLEASE TAKE NOTICE that pursuant to Kentucky Rule of Civil Procedure 30.02(6) and for all purposes provided by the Kentucky Rules of Civil Procedure, on **Thursday, March 3, 2016** beginning at **10:00 a.m., EST** and continuing until completed at the **Law Office of Michael Pack and Ron Diddle, 137 Pike St., Unit 1, Pikeville, KY 41501**, Plaintiff, by counsel, will take the deposition of Kentucky Medical Investors, L.L.C. (GA) d/b/a Mountain View Health Care Center on the following topics:

1. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** within the care, custody and/or control of the **FACILITY** which refer to and/or reference in whatsoever manner, the **PLAINTIFF**. (The term "**PLAINTIFF**" shall refer to Helen Ray. The term "FACILITY", as used in this and all subsequent inquiries, shall refer to Kentucky Medical Investors, L.L.C. (GA) d/b/a Mountain View Health Care Center, wherein PLAINTIFF was a resident. The terms "**DOCUMENT(S)**" and/or "**DOCUMENTATION**", as used in this and all subsequent inquiries shall mean, includes all written, graphic or otherwise recorded matter however produced or reproduced, including the originals (or any copies when originals are not available) and non-identical copies (where different from the original because notes were made on such copies or because said copies may have been sent to different individuals than originals, or for any other reason) and preliminary or final drafts of writings, records, and recordings of every kind and description, whether inscribed by hand or by mechanical, electronic, microfilm, photographic or other means, as well as phonic (such as tape recordings) or visual reproductions of all statements, conversations or events and including, without limitation, correspondence, teletype messages, notes, reports, compilations, schedules, studies, tabulations, tallies, maps, charts, diagrams, drawings, plans, pictures, computer runs, advertising and promotional material, press releases, minutes and

K:\Ray, Helen (15-081-KY)\Depos\PMK.DepoNotice.docx

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000009 of 000084
COM : 000009 of 000084

records of any memoranda of all press releases, minutes and records of any memoranda of all types, inter-office and intra-office communications, notes of conversations, vouchers, financial calculations and statements, working papers, statistical analyses, invoices, purchase orders, expense account records, stenographers, notebooks, desk calendars, appointment books, diaries, manuals, pamphlets, brochures, escrow instructions, contracts, deeds, agreements, title reports, listings, authorizations, and any abstracts, summaries and analyses of the above, and all other recorded matter of every nature and kind.)

2. The date and time of each occasion upon which the **PLAINTIFF** suffered any "fall" in the **FACILITY**.

3. The identify and employment status, and as to all former employees the last known residence address and telephone number, of each person who **YOU** contended has any knowledge or information relating to any "fall" suffered by the **PLAINTIFF** in the **FACILITY**. (For purposes of these inquiries, **YOU** and **YOUR** refers individually and collectively to the individual, partnership, or corporate defendant to whom this request is addressed and all persons acting or purporting to act on the behalf of said defendant.)

4. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each person who on **YOUR** behalf assessed the condition of the **PLAINTIFF** after any "fall" suffered by the **PLAINTIFF** in the **FACILITY**.

5. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each person who **YOU** contend witnessed any fall suffered by the **PLAINTIFF** in the **FACILITY**. (For purposes of these inquiries, **YOU** and **YOUR** refers individually and collectively to the individual, partnership, or corporate defendant to whom this request is addressed and all persons acting or purporting to act on the behalf of said defendant.)

6. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each person who on **YOUR** behalf assessed the condition of the **PLAINTIFF** after any fall suffered by the **PLAINTIFF** in the **FACILITY**.

7. The existence of and nature of the business relationship between **YOU** and any of the named co-defendant(s) in this action during the time frame during which **PLAINTIFF** was a patient in the **FACILITY**.

8. The existence of, scope of, and intent of any and all **FACILITY** policies and procedures which were in effect during the admission of the **PLAINTIFF** in the **FACILITY** in accordance with the provisions of 902 KAR 20:026 § 3(3). (902 KAR 20:026 § 3(3) provides as follows: "The **FACILITY** shall have written policies and procedures governing all aspects of the operation of the facility and the services provided.")

9. The purpose of and frequency of In-Service Education provided to **FACILITY** employees, including but not limited to In-Service education programs, for a period of time commencing six months prior to the admission in the **FACILITY** through the last date of the admission of the **PLAINTIFF** in the **FACILITY** in accordance with 902 KAR 20:026 § 3(9). (902 KAR 20:026 § 3(9)(e) provides as follows: "There shall be an in-service education program in effect for all nursing personnel at regular intervals in addition to a thorough job orientation for new personnel.")

10. The purpose, scope of, and nature of all training and job orientation provided to **FACILITY** employees for a period of time commencing six months prior to the admission in the **FACILITY** through the last date of the admission of the **PLAINTIFF** in the **FACILITY** in

K:\Ray, Helen (15-081-KY)\Depos\PMK.DepoNotice.docx

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000010 of 000084
COM : 000010 of 000084

accordance with 902 KAR 20:026 § 3(9). (902 KAR 20:026 § 3(9)(e) provides as follows: "There shall be an in-service education program in effect for all nursing personnel at regular intervals in addition to a thorough job orientation for new personnel.")

11. The mechanisms utilized for determining and recording levels of staff in any wing or station in which the **PLAINTIFF** was in the **FACILITY** and the identity and location of all person(s) responsible for same, in effect during the time which **PLAINTIFF** was a patient of **FACILITY** in accordance with 902 KAR 20:026 § 3(9). (902 KAR 20:026 § 3(9)(d) provides as follows: "The **FACILITY** shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis.")

12. The **FACILITY** Policies and Procedures relating to assessing employees' job performance, memorializing discipline of employees and/or complaints received as it pertains to employees in effect during the time which **PLAINTIFF** was a patient of **FACILITY**;

13. The existence of, title of, location of, intent of, content of, and custodian of all **DOCUMENTS** utilized by the **FACILITY** during the time period during which the **PLAINTIFF** was a resident of the **FACILITY** so as to ensure that all **FACILITY** staff who provided services to the **PLAINTIFF** were fit to perform their job duties in accordance with 902 KAR 20:026 § 3(9). (902 KAR 20:026 § 3(9)(b) provides as follows: "Current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, evaluation of performance, records of in-service training and on-going education, along with employee's name, address and Social Security number.").

14. The name, location, terms, scope, and content of any agreement between the **FACILITY** and any named defendant herein or any other entity relating to management, administrative and/or consulting services provided to the **FACILITY** during the stay of the **PLAINTIFF** in the **FACILITY**.

15. The date of creation, circumstances of creation, existence, content of, and name, and as to former employees the last known residence address and telephone number, of all persons whose names are listed on any **FACILITY** Incident Report and/or Unusual Occurrence report and/or any investigation resulting therefrom relating to, or mentioning, the **PLAINTIFF**;

16. The job title and scope of job responsibilities for any and all **FACILITY** employees during the time she was a patient at the **FACILITY** in accordance with 902 KAR 20:026 § 3(9). (902 KAR 20:026 § 3(9)(a) provides as follows: "Written job descriptions shall be developed for each category of personnel to include qualifications, lines of authority and specific duty assignments.")

17. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each individual, agency, partnership or corporation who served as the "governing body" of the **FACILITY** during the time **PLAINTIFF** was a patient at the **FACILITY** in accordance with 42 CFR § 483.75. (42 CFR § 483.75(d)(1) provides as follows: The facility must have a governing body, or designated persons functioning as a governing body, that is legally responsible for establishing and implementing policies regarding the management and operation of the facility.")

18. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each individual, agency, partnership or corporation who

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000011 of 000084
COM : 000011 of 000084

served as the "licensee" of the **FACILITY** during the time **PLAINTIFF** was a patient at the **FACILITY** in accordance with 902 KAR 20:026 § 3(1). (902 KAR 20:026 § 3(1) provides as follows: "The licensee shall be legally responsible for the facility and for compliance with federal, state and local laws and regulations pertaining to the operation of the facility.")

19. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each individual who served as the "administrator" of the **FACILITY** during the time **PLAINTIFF** was a patient at the **FACILITY** in accordance with 902 KAR 20:026 § 3(2). (902 KAR 20:026 § 3(2) provides as follows: "All facilities shall have an administrator who is responsible for the facility and who shall delegate such responsibility in his absence.")

20. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each individual who participated in any fall-related "nursing care plan" during the time **PLAINTIFF** was a patient at the **FACILITY** in accordance with 902 KAR 20:026 § 3(2). (902 KAR 20:026 § 3(2) provides as follows: "All facilities shall have an administrator who is responsible for the facility and who shall delegate such responsibility in his absence.")

21. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each individual who served as the physician to **PLAINTIFF** during the time **PLAINTIFF** was a patient at the **FACILITY** in accordance with 902 KAR 20:026 § 4(2). (902 KAR 20:026 § 4(2)(d) provides as follows: "There shall be written nursing care plans for each patient based on the nature of illness, treatment prescribed, long and short term goals and other pertinent information. (1) The nursing care plan shall be a personalized, daily plan for individual patients. It shall indicate what nursing care is needed, how it can best be accomplished for each patient, what are the patient's preferences, what methods and approaches are most successful, and what modifications are necessary to insure best results.")

22. The existence of, scope of, and content of any and all **FACILITY** "nursing staff data/information" during the admission of the **PLAINTIFF** in the **FACILITY** in accordance with the provisions of 42 CFR § 483.30(e). (42 CFR § 483.30(e)(3) provides as follows: "The Facility must, upon oral or written request, make nurse staffing data available to the public for review at a cost not to exceed the community standard .")

23. The **IDENTITY** of all persons who the assessed the pressure sore risk potential of the **PLAINTIFF** during the admission of the **PLAINTIFF** in the **FACILITY** as well as the existence of, name of and custodian of all **DOCUMENTS** which memorialize the effort. (For the purposes of these inquiries, the term **IDENTITY** means to state or a statement of: a. in the case of a person other than a natural person, its name, the address of its principal place of business (including zip code), its telephone number, and the name of its chief executive officer, as well as, if it has a person other than a natural person that ultimately controls it, that other person's name, the address of that person's principal place of business (including zip code), that other person's telephone number, and that person's chief executive officer; b. in the case of a natural person, his or her name, residential address and telephone number, business address and telephone number, employer, and title or position; c. in the case of a communication, its date, type (e.g., telephone conversation or discussion), the place where it occurred, the identity of the person who made the communication, the identity of the person that received the communication, the identity of each other person present when it was made, and the subject matter discussed; d. in the case of a document, the title of the document, the author, the title or position of the author, the addressee, each recipient, the type of document, the subject matter, the date of preparation, and its number of pages; and e. in the case of an agreement, its date, the place where it occurred, the identity of all persons

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk
40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000012 of 000084
COM : 000012 of 000084

who were parties to the agreement, the identity of each person who has knowledge of the agreement and all other persons present when it was made, and the subject matter of the agreement.)

24. The determination made as to the skin integrity and the existence of any pressure sores upon the person of the **PLAINTIFF** by **FACILITY** personnel conducting any skin assessment of the **PLAINTIFF** upon admission to the **FACILITY** as well as the name of and custodian of all **DOCUMENTS** which memorialize the effort.

25. The date of the deponent fist learning of the existence of any decubitus ulcer on the body of the **PLAINTIFF** during the admission of the **PLAINTIFF** in the **FACILITY** as well as the location and staging of any such decubitus ulcer, the **IDENTITY** of the person who made said discovery and the existence of, name of and custodian of all **DOCUMENTS** which memorialize the effort.

26. The **IDENTITY** of all persons who the turned and repositioned the **PLAINTIFF** to relieve pressure on bony prominences of the **PLAINTIFF** during the admission of the **PLAINTIFF** in the **FACILITY** as well as the existence of, name of and custodian of all **DOCUMENTS** which memorialize the effort;

27. The **IDENTITY** of all persons who prepared, modified, updated, changed and/or altered any **FACILITY** Care Plan or Plan of Care of the **PLAINTIFF** during the admission of the **PLAINTIFF** in the **FACILITY** as well as the date of, and reasons for each modification, update, change or alteration;

28. The date of the deponent fist learning of the existence of any injury of unknown origin on the body of the **PLAINTIFF** during the admission of the **PLAINTIFF** in the **FACILITY** as well as the location and description of said inury, the **IDENTITY** of the person who made said discovery and the existence of, name of and custodian of all **DOCUMENTS** which memorialize the effort;

29. The number of residents of residents in the **FACILITY** who suffered from pressure sores, decubitus ulcers, falls and injuries of unknown origin during the residency of the **PLAINTIFF** in the **FACILITY** as well as six (6) months prior and the existence of, name of, custodian of and methodology of creation of, purpose of and recipients of, all **DOCUMENTS** which memorialize same;

Pursuant to CR 30.02(6), Kentucky Medical Investors, L.L.C. (GA) d/b/a Mountain View Health Care Center is directed to "designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which he will testify" as described above.

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000013 of 000084

COM : 000013 of 000084

K:\Ray, Helen (15-081-KY)\Depos\PMK DepoNotice.docx

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000014 of 000084

**DEPONENTS ARE DIRECTED TO PRODUCE THE FOLLOWING DOCUMENTS IN RESPONSE TO THE ATTACHED SUBPOENA DUCES TECUM**

**Request for Production of Documents No. 1:**

Please provide copies of any and all **DOCUMENTS** in the deponent's care, custody or control which pertain, reference and/or refer to the **PLAINTIFF**. (902 KAR 20:300 § 3(2)(b) provides that the resident shall have the right to inspect and purchase photocopies of all records pertaining to the resident, upon written request and forty-eight (48) hour notice to the facility).

**Request for Production of Documents 2:**

Please provide a blank "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** utilized by the **FACILITY** to report or memorialize any occurrence relating to a resident which were utilized during the residency of the **PLAINTIFF** in the **FACILITY**. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents 3:**

Please provide any "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** utilized by the **FACILITY** to report or memorialize any occurrence relating to a resident which in any fashion mentions or relates to the **PLAINTIFF**. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents 4:**

Please provide each "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** prepared by the **FACILITY** to report or memorialize the development of pressure sores, falls or aspiration as to any **FACILITY** resident during the time frame during which the

COM : 000014 of 000084

PLAINTIFF was a resident of the FACILITY. (The names of all residents other than the PLAINTIFF should be redacted from the production.) (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents No. 5:**

Please provide all **DOCUMENTS** which reflect the number of residents in the **FACILITY** who suffered from pressure sores, falls or injuries of unknown origin during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY**. (The name of any resident other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 6:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action referencing the **PLAINTIFF** and/or by **YOU** to any named Defendant in this action referencing the **PLAINTIFF**.

**Request for Production of Documents No. 7:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant, or by **YOU** to any named Defendant in this action referencing the staffing levels in the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 8:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant, or by **YOU** to any named Defendant in this action referencing the operating budget and/or financial performance of the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior.

**Request for Production of Documents No. 9:**

Please provide the **FACILITY NURSING STAFFING INFORMATION** during the time

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk
40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000015 of 000084
COM : 000015 of 000084

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000016 of 000084

frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior (The term **NURSING STAFFING INFORMATION** as utilized in this inquiry is defined as that term is defined in 42 C.F.R. §483.30(e) which is as follows:

(e) *Nurse staffing information*—(1) *Data requirements.* The facility must post the following information on a daily basis:

(i) Facility name.

(ii) The current date.

(iii) The total number and the actual hours worked by the following categories of licensed and unlicensed nursing staff directly responsible for resident care per shift:

(A) Registered nurses.

(B) Licensed practical nurses or licensed vocational nurses (as defined under State law).

(C) Certified nurse aides.

(iv) Resident census.

(2) *Posting requirements.* (i) The facility must post the nurse staffing data specified in paragraph (e)(1) of this section on a daily basis at the beginning of each shift.

(ii) Data must be posted as follows:

(A) Clear and readable format.

(B) In a prominent place readily accessible to residents and visitors.

(3) *Public access to posted nurse staffing data.* The facility must, upon oral or written request, make nurse staffing data available to the public for review at a cost not to exceed the community standard.)

**Request for Production of Documents No. 10:**

Please provide all **DOCUMENTS** which confirm that the **FACILITY** Nursing service personnel were employed and in at least the number …to provide the necessary nursing services for each resident of the **FACILITY** during the time the **PLAINTIFF** was a resident of the **FACILITY** in accordance with the requirements of 902 KAR 20:300 § 9 which states "[t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest

COM : 000016 of 000084

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 § 3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 § 4(2)(a) provides [t]here shall be twenty (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receive proper care to prevent decubiti and shall be kept comfortable, clean, and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect.)

**Request for Production of Documents No. 11:**

Please provide all **DOCUMENTS** which evidence the **FACILITY** "in-service training and ongoing education" in accordance with the requirements of (902 KAR 20:048 § 3(10)(b) during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number. The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 12:**

Please produce all **DOCUMENTS** which were provided to those who attended any In-Service education put on by the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (The names of all residents other than the **PLAINTIFF**

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000017 of 000084
COM : 000017 of 000084

should be redacted from the production.)

**Request for Production of Documents No. 13:**

Please provide all **DOCUMENTS** which consist of the **FACILITY** policies, procedures, manuals or guidelines in effect during the time frame during which the **PLAINTIFF** was a resident in the **FACILITY** relating to operations and resident care of the **FACILITY** as well as the **FACILITY** mechanisms utilized for determining and recording levels of staff in the **FACILITY** and the identity and location of all person(s) responsible for same; the **FACILITY** Business Office Policies and Procedures; and the **FACILITY** Policies and Procedures relating to assessing employees job performance and for memorializing discipline of employees and/or complaints received as it pertains to employees. (902 KAR 20:048 § 3(4) provides that the facility shall establish written policies and procedures that govern all services provided by the facility. The written policies shall include: (a) Patient care and services to include physician, nursing, pharmaceutical (including medication stop orders policy), and residential services. (b) Adult and child protection. The facility shall have written policies which assure the reporting of cases of abuse, neglect or exploitation of adults and children pursuant to KRS Chapters 209 and 620. (c) Use of restraints. The facility shall have a written policy that addresses the use of restraints and a mechanism for monitoring and controlling their use. (d) Missing patient procedures. The facility shall [have] a written procedure to specify in a step-by-step manner the actions which shall be taken by staff when a patient is determined to be lost, unaccounted for or on other unauthorized absence.)

**Request for Production of Documents No. 14:**

Please provide all **DOCUMENTS** in accordance with the requirements of 902 KAR 20:048 § 3 constituting the job description of any and all **FACILITY** personnel set forth below which were in effect during the residency of the **PLAINTIFF** at the **FACILITY**. (902 KAR 20:048 § 3(10)(a) provides written job descriptions shall be developed for each category of personnel, to include qualifications, lines of authority and specific job assignments.) These include, but are not limited to, the following:

1. Administrator;

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000018 of 000084
COM : 000018 of 000084

2. Director of Nursing;
3. Business Office Manager;
4. Minimum Data Set Coordinator;
5. Case Managers;
6. Registered Nurses;
7. Licensed Vocational Nurses;
8. Charge Nurses;
9. Certified Nursing Assistants;
10. Restorative Nursing Assistants;
11. Physical Therapists;
12. Admissions Coordinator;
13. Business Office Manager;
14. Social Services Director;
15. Activities Personnel;
16. Dietary Services Personnel;
17. Director of Staff Development;
18. Medical Director.

**Request for Production of Documents No. 15:**

Please provide all **DOCUMENTS** constituting the **FACILITY** Employee Handbook in effect during the residency of the **PLAINTIFF** at the **FACILITY**.

**Request for Production of Documents No. 16:**

Please provide all **DOCUMENTS** constituting Orientation Manuals intended for utilization by **FACILITY** new employees during the residency of the **PLAINTIFF** at the **FACILITY**.

**Request for Production of Documents No. 17:**

Please provide all **DOCUMENTS** constituting the **FACILITY** Code of Conduct for employees in effect during the residency of the **PLAINTIFF** at the **FACILITY**.

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000019 of 000084
COM : 000019 of 000084

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000020 of 000084

**Request for Production of Documents No. 18:**

Please provide all **DOCUMENTS** which constitute any Corporate Integrity Agreement by which the **FACILITY** was bound during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY**.

**Request for Production of Documents No. 19:**

Please provide a list identifying all individuals who were employed at the **FACILITY** during the residency of **PLAINTIFF**; state whether each individual provided any care or services to **PLAINTIFF**, and state whether each individual is currently an employee of the **FACILITY** or any Defendant. For each individual identified as a former employee, please provide current contact information to include most recent telephone number and address.

**Request for Production of Documents No. 20::**

Please provide all **DOCUMENTS** which **IDENTIFY** and/or reference the nature of the business relationship between **YOU** and any of the named co-defendant(s) in this action during the time frame during which **PLAINTIFF** was a patient in the **FACILITY**.

*Respectfully Submitted,*

**GARCIA, ARTIGLIERE & MEDBY**

Stephen M. Garcia
M. Brandon Faulkner
220 West Main Street, Suite 2250
Louisville, Kentucky 40202
Telephone: (502) 584-3805
Facsimile: (502) 584-3811
***Counsel for Plaintiff***

COM : 000020 of 000084

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000021 of 000084

**CERTIFICATE OF SERVICE**

This is to certify that the original of the foregoing was mailed first class United States mail, postage prepaid, to the **Clerk, Pike County Circuit Court, P.O. Box 1002, Pikeville, Kentucky 41502,** and that a true and correct copy of the foregoing was duly faxed and mailed this 19 day of January 2016 to the following:

J. Peter Cassidy, III
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
PH: 859.226.0057
Fax: 859.226.0059
***Counsel for Defendants***

Kentuckiana Reporters
455 South 4th Street
Suite 250
Louisville, KY 40202
Facsimile: 502.584.0119

***Counsel for Plaintiff***

COM : 000021 of 000084

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk
40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000022 of 000084

# Exhibit "2"

COM : 000022 of 000084

GARCIA, ARTIGLIERE & MEDBY
220 WEST MAIN STREET
SUITE 2250
LOUISVILLE, KENTUCKY 40202
TELEPHONE (502) 584-3805
FACSIMILE (502) 584-3811

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000023 of 000084

January 19, 2016

**VIA FACSIMILE & U.S. MAIL**

J. Peter Cassidy, III, Esq.
Quintairos, Prieto, Wood & Boyer, PA
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509

**Re: Helen Ray v. Mountain View Healthcare Center**

Dear Mr. Cassidy:

Enclosed, please find the Notice of CR 30.02(6) Deposition of Kentucky Medical Investors, L.L.C. (GA) d/b/a Mountain View Health Care Center, as the same relates to the above-referenced matter. Should the date we have selected for said deposition prove inconvenient with your calendar, we are happy to reasonably accommodate you. However, reasonableness and collaboration require a joint effort and that would require your timely participation in the effort. To that end, should the date we have selected prove inconvenient with you or the deponent, please provide this office with two alternative dates and times upon which you propose this deposition proceeds such that said deposition is convened within forty-five (45) days from writing of this correspondence. Please provide your written preferences by no later than close of business on Monday, January 25, 2016. Should you decline to provide us with written alternative dates consistent with the time parameters set forth above, we will assume you have no preference and will proceed with the deposition as calendared. Should the deponent fail to appear at that point in time we will immediately seek the assistance of the court.

As always, please do not hesitate to call with questions or concerns. We solicit your prompt attention to this matter and thank you in advance for your anticipated cooperation.

Very truly yours,

M. Brandon Faulkner

MBF:sjh
Enclosure: Notice
cc: Client
K:\Ray, Helen (15-081-KY)\Correspondence\Cassidy.05.PMK Notice.docx

COM : 000023 of 000084

Filed                15-CI-00778    02/09/2017    Anna Pinson Spears, Pike Circuit Clerk

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000024 of 000084

# Exhibit "3"

COM : 000024 of 000084

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the ESTATE of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

---

**DEFENDANTS' MOTION TO QUASH, OR IN THE ALTERNATIVE, FOR PROTECTIVE ORDER**

---

Defendant, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View"), hereby moves the Court, pursuant to CR 26.03(1), to quash, or in the alternative, to issue a protective order in light of the discovery disputes outlined below. In support of this motion Defendants state as follows:

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000001 of 000067
40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000025 of 000084
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000001 of 000013
COM : 000025 of 000084

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000002 of 000067
40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000026 of 000084
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000002 of 000013
COM : 000026 of 000084

**BACKGROUND**

This is a medical malpractice action in which the Plaintiffs allege that Defendant breached nursing standards of care that caused certain alleged injuries and death to Helen Ray. Ms. Ray was a resident at the Elkhorn City facility from July 16, 2008 to June 19, 2014. After her nearly six year residency at Mountain View, Ms. Ray passed away on June 19, 2014. Her death certificate lists Cardiac Arrythmia and ASVD as the causes of death. Medical standards of care and medical causation are the central issues in this lawsuit. Ultimately, a jury will have to determine whether Defendant breached the standard of care in its treatment of Ms. Ray and whether any breach was caused by compensable injury.

Discovery has progressed and both parties have now served and answered a set of written discovery. Recently, Plaintiffs served a thirty-four (34) paragraph CR 30.02(6) Deposition of Mountain View's Corporate Representative, including an additional twenty-one (21) Requests for Production of Documents from the corporate representative. *See* Notice attached hereto as Exhibit A. This notice covers many discovery requests that were already propounded by Plaintiff and answered by Defendant. For those requests, Plaintiff is requesting that Defendant go through Ms. Ray's chart, which she have already been provided and have equal access to, and discover information that is just as easily discovered by Plaintiff's counsel. These requests should be denied as Plaintiff is just as capable as Defendants to review the records and determine these answers.

This notice also contains some overly broad requests wholly unrelated to the care and treatment Ms. Ray received at Mountain View (See topics 2-3, 12-30, and 34, discussed in more detail below). As such, Defendant respectfully requests that this Court quash Plaintiff's Notice

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

and related Requests for Production of Documents to prevent them from the undue burden and expense of preparing a corporate representative to testify as to broad topics regarding Ms. Ray's nearly six year residency for topics that Defendant has already responded to in written discovery. In the alternative, this Court should enter a protective order narrowing Plaintiff's overly broad topics 2-3, 12-30, and 34. Defendants seek to quash, or in the alternative, for this Court to issue a protective order as to Plaintiff's requests, and incorporate herein by reference Defendant's Objections to Plaintiff's Notice to Take Deposition of Corporate Representative Pursuant to CR 30.02(6).

## APPLICABLE LAW

Pursuant to CR 26.02(1), parties are allowed to discover "any matter, not privileged, which is *relevant* to the subject matter involved in the pending action." (emphasis added). If the information sought is not privileged, the only question is whether it is relevant or likely to lead to relevant and admissible evidence. *See* CR 26.02(1); *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 811 (Ky. 2004). If the information sought is irrelevant to a party's claim or defense and not reasonably calculated to lead to the discovery of admissible evidence, discovery into such matters would be inappropriate. *Id.*; *Morrow v. Brown, Todd & Heyburn*, 957 S.W.2d 722, 727 (Ky. 1997). Additionally, under KRE 402, evidence which is not relevant is not admissible.

The Sixth Circuit has held that "[a]lthough a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to go fishing,' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978)). The purpose of pretrial discovery is to simplify and clarify the issues in a case, to eliminate or significantly

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000003 of 000067
40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000027 of 000084
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000003 of 000013
COM : 000027 of 000084

reduce the element of surprise, and to achieve a balanced search for truth. *LeFleur V. Shoney's, Inc.*, 83 S.W.3d 474, 478 (Ky. 2002). In that context, it has been a long-recognized principle in this Commonwealth that discovery proceedings must be kept within reasonable bounds and restricted to questions having substantial and material relevancy. *Humana Inc. v. Fairchild*, 603 S.W.2d 918, 922 (Ky. App. 1980). In overseeing discovery, the trial court shall keep the inquiry within reasonable bounds and restrict questions to those having substantial relevancy to a sensible investigation. *Carpenter v. Wells*, 358 S.W.2d 524, 526 (Ky. 1962). Discovery should not be permitted into collateral issues that are irrelevant to the claims before the court. *Brooks v. Brooks Furniture Mfrs., Inc.*, 325 S.W.3d 904, 916 (Ky. App. 2010). Here, Plaintiff's discovery requests have overstepped all reasonable bounds and therefore Defendants are seeking protection from this Court.

CR 30.02(6) is nearly identical to Federal Rule of Civil Procedure 30(b)(6). "For a Rule 30(b)(6) deposition to operate effectively, the deposing party must designate the areas of inquiry with **reasonable particularity**..." *U.S. v. Taylor*, 166 F.R.D. 356, 360 (M.D.N.C. 1996)(emphasis added). This is because testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the corporation, not of the individual deponents. *Id.* The designated witness is "speaking for the corporation," and this testimony must be distinguished from that of a "mere corporate employee" whose deposition is not considered that of the corporation and whose presence must be obtained by subpoena. 8A Wright, Miller & Marcus § 2103, at 36–37.

Since FRCP 30(b)(6) does not set its own discovery standard, the standard provided in FRCP 26(b)(1) should be used to determine whether information sought is relevant and is capable of leading to discovery of relevant information. *Hooker v. Norfolk S. Ry.*, 204 F.R.D 124 (S.D. Ind. 2001). Discovery under FRCP 26(b)(1) is "subject to the limitations imposed by

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000004 of 000067
40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000028 of 000084
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000004 of 000013
COM : 000028 of 000084

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000005 of 000067
40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000029 of 000084
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000005 of 000013
COM : 000029 of 000084

Rule 26(b)(2)(C)." Under Rule 26(b)(2)(C), a court "must limit the frequency or extent of discovery otherwise allowed by these rules" if:

> i. the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> ii. the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> iii. the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Because CR 30.02(6) and FRCP 30(b)(6) are nearly identical, the limitations on discovery also should be read similarly. "If proof of relevancy or need is not established or if discovery would nevertheless be unreasonable, oppressive, annoying, or embarrassing, or otherwise unduly injurious, discovery should be denied." *Evercom Sys., Inc. v. Combined Pub. Commc'ns, Inc.*, 2012 WL 3555314, at *4 (W.D. Ky. Aug 16, 2012). Further, CR 26.03(1) allows for courts to issue protective orders limiting discovery in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

To prevent the abuse of discovery, the trial court has full authority to issue a protective order under CR 26.03(1). This Rule states that:

> Upon motion by the person from with whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the judicial district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

*Id.*; *see also Ewing v. May*, 705 S.W.2d 910, 913 (Ky. 1986). Indeed, a protective order is proper where a party requires protection from annoyance, embarrassment, oppression, or undue

Filed 15-CI-00778 08/12/2016 Anna Pinson Spears, Pike Circuit Clerk

expense or burden, and the trial court may forbid inquiry into certain topics and/or limit the scope of discovery to relevant matters. *Id.*; *Sexton v. Bates*, 41 S.W.3d 452, 455 (Ky. App. 2001) (court acted well within its broad discretion to determine what discovery is appropriate and to tailor discovery to materially relevant information).

**PLAINTIFF'S CR 30.02(6) DEPOSITION NOTICE SHOULD BE QUASHED, OR IN THE ALTERNATIVE, A PROTECTIVE ORDER SHOULD BE ISSUED.**

Defendants should not have to produce a corporate representative to testify regarding the irrelevant and overly broad topics enumerated in Plaintiff's deposition notice. *See* Exhibit A. The trier of fact will determine whether Defendants breached the requisite standard of care concerning the care and treatment of Ms. Ray. To make that determination under Kentucky law, the trier of fact must consider whether Mountain View used that degree of care and skill which is expected of a reasonably competent provider in the same class to which it belongs, acting in the same or similar circumstances. *See Blair v. Eblen*, 461 S.W.2d 373 (Ky. 1970). In Kentucky, the degree and skill to be expected of Mountain View is based upon the standard set by the medical profession only. To prevail, Plaintiff must provide expert testimony that the care Ms. Ray received breached the applicable professional standard of care.

Here, Plaintiff seeks by CR 30.02(6) notice to obtain information regarding Defendants' policies and procedures as well as administrative information and identification of individual persons employed by Mountain View. *See* Exhibit A. Due to the nature of information sought by Plaintiff, it would be an undue burden and expense to have a corporate level representative appear for a deposition given the less expensive alternatives available to seek this information (e.g., interrogatories or other forms of written discovery). As such, Plaintiff should be precluded from using CR 30.02(6) for this purpose.

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000006 of 000067
40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000030 of 000084
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000006 of 000013
COM : 000030 of 000084

Plaintiff's CR 30.02(6) notice prematurely attempts to bind Defendant to testimony on an incredibly broad set of topics all the while Plaintiff has not disclosed her experts and there are no deadlines in place for her to disclose her experts. Thus, Plaintiff is attempting to box Defendant in on the elements of her claim before providing her required expert testimony as to what specific breaches of the standard of care and damages she is claiming. Much like contention interrogatories or discovery seeking work product, the Court should not allow Plaintiff's strategy at this stage of the litigation.

*U.S., ex rel. Nat. Res. Def. Council v. Lockheed Martin Corp.*, 2014 WL 6909652, at *3–4 (W.D. Ky. Dec. 8, 2014) discussed contention interrogatories including mixed questions of law and fact in depth, citing their pros and cons:

> Contention interrogatories, in particular, receive the advisory committee's special attention. While the advisory committee sought to allow the use of contention interrogatories, it sought to avoid a rule "where[ ] parties were chained to misconceived contentions or theories, and ultimate determination on the merits was frustrated." Fed.R.Civ.P. 33(b) 1970 advisory committee's notes. Accordingly, courts have typically given answers to interrogatories requesting contentions greater leeway in satisfying Rule 26(e)'s "timely" supplementation requirement. *See, e.g., HTC Corp. v. Tech. Properties Ltd.*, C08–00882 JF HRL, 2011 WL 97787 (N.D.Cal. Jan. 12, 2011) ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before discovery is undertaken."); *In re eBay Seller Antitrust Litigation,* No. C07–1882 JF (RS), 2008 WL 5212170, at *1 (N.D.Cal. Dec. 11, 2008); *Fischer & Porter Co. v. Tolson,* 143 F.R.D. 93, 95 (E.D.Pa.1992) ("In fact, courts tend to deny contention interrogatories filed before substantial discovery has taken place, but grant them if discovery almost is complete."); *In re Convergent Technologies Securities Litigation,* 108 F.R.D. 328, 332–38 (N.D.Cal.1985).
>
> Despite this leniency in timing, contention interrogatories can serve valuable purposes even at early stages of the litigation. These purposes include dispensing with frivolous claims, serving as predicates for other motions, narrowing the scope of discovery, and facilitating settlement discussions. *Cleveland Const., Inc. v. Gilbane Bldg. Co.,* 2006 WL 2167238 at *7 (E.D.Ky. July 31, 2006) (*citing Convergent* ). Contention interrogatories' usefulness in early stages of litigation cautions courts to balance fairness and efficiency. While recognizing the impossibility of fully answering contention interrogatories at the outset of discovery, courts rely on compliance with the 26(e) duty to supplement to inform

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000007 of 000067
40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000031 of 000084
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000007 of 000013
COM : 000031 of 000084

opposing counsel of the allegations they face. Opposing parties should be informed of allegations against them as those allegations arise. This case, in part, asks this court to evaluate when the duty to supplement should displace the generally lenient attitude towards contention interrogatories.

The Court went on to discuss cases with voluminous discovery and multiple allegations, like the case before this Court, finding:

> Second, in cases with voluminous discovery and multiple allegations, all parties should expect changes to contention interrogatory responses. Both the advisory committee notes and case law warn of such changes. "Since [contention] interrogatories involving mixed questions of law and fact may create disputes between the parties which are best resolved after much or all of the other discovery has been completed, the court is expressly authorized to defer an answer." Fed.R.Civ.P. 33 advisory committee notes (1970). "Answers to interrogatories must often be supplied before investigation is completed and can rest only upon knowledge which is available at the time." *Freed v. Erie Lackawanna Ry. Co.*, 445 F.2d 619, 621 (6th Cir.1971). "The district court has considerable discretion in overseeing compliance with the Federal Rules of Civil Procedure, including discretion to permit parties to defer supplementing responses to contention interrogatories until theories of the case have ripened for trial." *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed.Cir.2012). Given the well-recognized problems parties face giving complete answers to contention interrogatories early in the litigation process, litigants are well-advised to anticipate changes.

*Id.* at *5.

Like contention interrogatories, Plaintiff is attempting to bind Defendant, through its corporate representative, to certain contentions and theories at this early stage in the litigation. While overly broad, Plaintiff's CR 30.02(6) Notice would be more appropriate after much more discovery has taken place. At a minimum, Plaintiff should be forced to disclose her expert witnesses to provide Defendant with information regarding the specific breaches of the standard of care and damages claimed. As *Lockheed Martin Corp.* points out, the questions sought in Plaintiff's Notice are best resolved after much more discovery has been completed. At this point, the parties have exchanged initial discovery responses, but there are no deadlines for expert disclosures and neither party has disclosed an expert.

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000008 of 000067
40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000032 of 000084
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000008 of 000013
COM : 000032 of 000084

Plaintiff's CR 30.02(6) Notice is also similar to a discovery request for work product. Without disclosing her experts and providing specific breaches of the standard of care and damages, Plaintiff seeks to bind Defendant to testimony on an incredibly broad set of topics at this early stage, to prematurely bind Defendant's expert to that testimony. In so doing, she attempts to discover Defendant's work-product by seeking to gather Defendant's counsel's mental impressions in preparing the corporate representative to respond to the areas of inquiry.

The work product privilege provided in CR 26.02(3)(a) is nearly identical to its federal counterpart, Fed. R. Civ. P. 26(b)(3), and provides that the court "shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." CR 26.02(3)(a). "The work-product doctrine is designed to protect an adversary system of justice," *Morrow v. Brown, Todd & Heyburn*, 957 S.W.2d 722, 724 (Ky. 1997), and is rooted in the United States Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

Kentucky's civil rule on work product, CR 26.02(3)(a), provides, in pertinent part:

> Subject to the provisions of paragraph (4) of this rule, a party may obtain discovery of <u>documents and tangible things</u> otherwise discoverable under paragraph (1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Accordingly, a two-step analysis is necessary under this rule to determine if particular documents are discoverable under CR 26.02(3)(a). First, the court must determine whether the material is work product because it was prepared in anticipation of litigation. *Duffy v. Wilson*,

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000009 of 000067
40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000033 of 000084
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000009 of 000013
COM : 000033 of 000084

289 S.W.3d 555, 559 (Ky. 2009). Second, if the material is work product, the court must determine whether the requesting party has a "substantial need" for the material and is unable to obtain the "substantial equivalent" without "undue hardship." *Id.*

*Newsome v. Lowe*, 699 S.W.2d 748 (Ky. Ct. App. 1985) is instructive on this point. The relevant issue in *Newsome* was whether a pre-litigation consultant report from a physician to Plaintiff's counsel was properly discoverable. The Court found it was privileged work product, explaining:

> The respondent now wants to discover information concerning Dr. Nathanson as the prelitigation consultant. We say that that aspect of Dr. Nathanson is not discoverable. We come to this conclusion for two reasons: First, we believe that when a consultant is hired for the purpose, as was Dr. Nathanson, of evaluating claims and rendering consultative evaluation reports, his consultation reports are certainly within the orbit of privileged matters. Prelitigation consultative evaluations are encouraged; if there is no confidentiality with them, the procedure will not be utilized. One need only read the cases of *Raine v. Drasin,* Ky., 621 S.W.2d 895 (1981), and *Daugherty v. Runner,* Ky.App., 581 S.W.2d 12 (1978), to sense the advisability of obtaining prelitigation evaluations, particularly in professional negligence cases...
>
> The purpose for restricting the discovery of the prelitigation consultative letter is to protect the confidentiality of such matters and to encourage the use of such consultations. Baseless and frivolous claims should not be pursued, and whether they are such in complex and technical cases, principally in professional negligence cases, requires free and open exchange of information with the consultant.

*Id.* at 751–52.

Plaintiff's 30.02(6) Notice should be quashed at this stage of the litigation as it is similar to an attempt to determine Defendant's counsel's theories of the case **before** having to disclose her expert witnesses. Like a contention interrogatory or request for work product, she is improperly attempting to box Defendant in to what will be its expert testimony before expert deadlines and before she has disclosed her own expert.

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000010 of 000067
40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000034 of 000084
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000010 of 000013
COM : 000034 of 000084

The Notice should also be quashed as the information sought is intrusive, harassing, and makes no sense from a discovery perspective. Plaintiff cannot believe that the proposed discovery is relevant to the care given to Ms. Ray at Mountain View. The proposed discovery does not have any tendency whatsoever to make the existence of any fact that is of consequence to the determination more or less probable than it would be without the evidence. The proposed discovery is confidential and proprietary, and neither relevant nor material to the subject matter of any claim or defense. Nor is it reasonably calculated to lead to the discovery of admissible evidence. Allowing Plaintiff to delve into these overly-broad and irrelevant topics would unduly prejudice Defendants. This overreaching and harassing conduct on the part of Plaintiff is exactly the type of situation where this Court should exercise the authority provided to it by CR 26.03 to protect Defendants from Plaintiff's abusive use of the discovery process. Based on the forgoing, Plaintiff should be prevented from noticing and/or Plaintiff's CR 30.02(6) notice to take the deposition of a corporate representative should be quashed. Accordingly, Defendants seek that Plaintiff initially address these issues in written discovery rather than to incur the cost of a CR 30.02(6) deposition at this early stage of the litigation.

Several categories and subcategories in Plaintiff's notice deal with specific policies and procedures in place during the residency of Ms. Ray. Moreover, an additional twelve categories and/or subcategories deal with staff, staffing or staff training. These topics should be covered in the deposition of the Director of Nursing and/or the Administrator of Mountain View at the time of Ms. Ray's residency. While Plaintiff has yet to request these depositions, Defendants anticipate they are forthcoming.

In the alternative, to the extent Plaintiff's deposition notice is not quashed, this Court should issue a protective order limiting the scope of Plaintiff's 30.02(6) deposition to matters

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000011 of 000067
40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000035 of 000084
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000011 of 000013
COM : 000035 of 000084

having substantial and material relevancy to the claims alleged in the Complaint. Plaintiff's request for deposition testimony about nursing home operations, policies and procedures for compliance with nursing home certification requirements, and other proprietary business information is neither relevant nor necessary to this action. As such, Plaintiff should be barred from making inquiry into such matters. Accordingly, to the extent Plaintiff's 30.02(6) deposition notice is not quashed, Defendants request a protective order limiting the scope of Plaintiff's deposition to relevant matters (i.e., the actual care given to Ms. Ray at Mountain View) and forbidding Plaintiff from inquiring into any other matters included in her Notice of CR 30.02(6) Deposition.

## CONCLUSION

In summary, Defendants seek this Court's intervention to quash Plaintiff's CR 30.02(6) notice, or in the alternative to limit the requests made by Plaintiff and to use interrogatories instead of requiring production of a corporate representative to testify.

## NOTICE

This matter will come before the Court for a hearing on the 19th day of August, 2016, at the hour of 9:00 a.m. (EST), or as soon thereafter as can be heard.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

/s/ *Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000012 of 000067
40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000036 of 000084
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000012 of 000013
COM : 000036 of 000084

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 12th day of August, 2016, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507

*/s/ Matthew C. Cocanougher*
ATTORNEY FOR DEFENDANT,
KENTUCKY MEDICAL INVESTORS, LLC (GA)

C602397A-78B4-48FB-9F8E-F2B022BF884E : 000013 of 000067
40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000037 of 000084
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
QSH : 000013 of 000013
COM : 000037 of 000084

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000038 of 000084

# Exhibit "4"

COM : 000038 of 000084



COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION NO. II

ACTION NO. 15-CI-00778

ESTATE OF HELEN RAY, ET AL PLAINTIFFS

V. ORDER

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA), ET AL DEFENDANTS

*************

This cause coming before the Court on various defense Motions, and the Court having conducted a hearing on September 16, 2016, with the proceedings recorded on CD No. 35-2-2016-VR-40-A-1, IT IS HEREBY ORDERED AS FOLLOWS:

1. The Defendants' Motion to Quash a CR 30.02(6) deposition of a defense corporate representative or narrow the scope of the deposition is DENIED.

2. The Defendants' Motion to Dismiss the Long Term Residents' Rights claims is DENIED at this time.

3. As to the Defendants' Motion for Summary Judgment regarding claims based on violations of statutes and regulations, the Motion is PASSED, and the parties may submit an Agreed Order to the Court addressing this Motion.

4. The Defendants' Motion to Inspect Pike District Court Action No. 08-H-00153-001 & Motion to Compel Adult Protective Services, the Office of the Inspector General and the Cabinet for Health and Family Services to allow inspection and copying of records regarding Helen Ray are both GRANTED, and defense counsel shall be permitted to inspect and copy Pike District Court Action No. 08-H-00153-001 and Helen Ray's records compiled by Adult Protective Services, the Office of the Inspector General and the Cabinet for Health and Family Services. The Hon. Matthew Cocanougher and the law firm of QUINTAIROS, PRIETO, WOOD & BOYER, P.A., shall keep these records confidential, with no public disclosure, and the documents shall not be filed in the record. The documents shall also be kept confidential by any expert that

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000039 of 000084

COM : 000039 of 000084

the Defendants' attorney may hire to review them. This ruling does not go to the admissibility of the documents in question.

ENTERED this 19th day of September, 2016.

_______________ JUDGE

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Order was this day mailed to:

Hon. M. Brandon Faulkner
444 East Main Street, Suite 108
Lexington, KY 40507

Hon. Matthew Cocanougher
2452 Sir Barton Way, Suite 300
Lexington, KY 40509

This is the 19 day of Sept, 2016.

ANNA PINSON SPEARS, CLERK
PIKE CIRCUIT COURT

BY: _______________
D.C.

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000040 of 000084

COM : 000040 of 000084

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000041 of 000084

# Exhibit “5”

COM : 000041 of 000084

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION TWO
CIVIL ACTION NO. 15-CI-778

JENNIFER BINGHAM, as Executrix
of the Estate of HELEN RAY, deceased,
and on behalf of the Wrongful Death
Beneficiaries of HELEN RAY, deceased, PLAINTIFF

v. **SECOND NOTICE OF CR 30.02(6) VIDEO CONFERENCE DEPOSITION OF KENTUCKY MEDICAL INVESTORS, LLC (GA) D/B/A MOUNTAIN VIEW HEALTH CARE CENTER**

KENTUCKY MEDICAL INVESTORS, L.L.C.
(GA) d/b/a MOUNTAIN VIEW HEALTH CARE
CENTER, et al. DEFENDANTS

*** *** *** ***

Please take notice that pursuant to Kentucky Rule of Civil Procedure 30.02(6) and for all purposes provided by the Kentucky Rules of Civil Procedure on **October 19, 2016** at the **office of Diddle & Pack, PLLC located at 137 Pike Street #1, Pikeville, KY 41501 beginning at 9:00 a.m. EST**, Plaintiff, by Counsel, will take the video conference deposition of **Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center**. Pursuant to CR 30.02(6), **Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center** is directed to "designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which he will testify" on each of the topics of inquiry detailed below.

1. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** within the care, custody and/or control of the deponent which pertain, refer to and/or reference, in whatsoever manner, the **PLAINTIFF** (For this inquiry and all subsequent inquiries **PLAINTIFF** shall refer to **Helen Ray**. The terms **"DOCUMENT(S)"** and/or **"DOCUMENTATION"**, as used in this and all subsequent inquiries shall mean, includes all

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000042 of 000084
COM : 000042 of 000084

written, graphic or otherwise recorded matter however produced or reproduced, including the originals (or any copies when originals are not available) and non-identical copies (where different from the original because notes were made on such copies or because said copies may have been sent to different individuals than originals, or for any other reason) and preliminary or final drafts of writings, records, and recordings of every kind and description, whether inscribed by hand or by mechanical, electronic, microfilm, photographic or other means, as well as phonic (such as tape recordings) or visual reproductions of all statements, conversations or events and including, without limitation, correspondence, teletype messages, notes, reports, compilations, schedules, studies, tabulations, tallies, maps, charts, diagrams, drawings, plans, pictures, computer runs, advertising and promotional material, press releases, minutes and records of any memoranda of all press releases, minutes and records of any memoranda of all types, inter-office and intra-office communications, notes of conversations, vouchers, financial calculations and statements, working papers, statistical analyses, invoices, purchase orders, expense account records, stenographers, notebooks, desk calendars, appointment books, diaries, manuals, pamphlets, brochures, escrow instructions, contracts, deeds, agreements, title reports, listings, authorizations, and any abstracts, summaries and analyses of the above, and all other recorded matter of every nature and kind.) (902 KAR 20:300 § 3(2)(b) provides that the resident shall have the right to inspect and purchase photocopies of all records pertaining to the resident, upon written request and forty-eight (48) hours notice to the facility.);

2.  The existence of, name of, the intent of and the custodian of any **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action pertaining to or referencing the **PLAINTIFF** and/or by **YOU** to any named Defendant in this action referencing the **PLAINTIFF**. (For purposes of these inquiries, **YOU** and **YOUR** refers individually and collectively to the defendant to whom this request is addressed and all persons acting or purporting to act on the behalf of said defendant.) (902 KAR 20:300 § 3(2)(b) provides that the resident shall have the right to inspect and purchase photocopies of all records pertaining to the resident, upon written request and forty-eight (48) hours notice to the facility.);

3.  The scope, nature and purpose in the **FACILITY** of any and all Policy and Procedures in place during the residency of **PLAINTIFF** in the **FACILITY**. (902 KAR 20:048 § 3(4) provides that the facility shall establish written policies and procedures that govern all services provided by the facility. The written policies shall include: (a) Patient care and services to include physician, nursing, pharmaceutical (including medication stop orders policy), and residential services. (b) Adult and child protection. The facility shall have written policies which assure the reporting of cases of abuse, neglect or exploitation of adults and children pursuant to KRS Chapters 209 and 620. (c) Use of restraints. The facility shall have a written policy that addresses the use of restraints and a mechanism for monitoring and controlling their use. (d) Missing patient procedures. The facility shall [have] a written procedure to specify in a step-by-step manner the actions which shall be taken by staff when a patient is determined to be lost, unaccounted for or on other unauthorized absence.);

4.  The intake process utilized by the **FACILITY** to determine the needs of an incoming resident and the purpose for same in effect upon the date of admission of the **PLAINTIFF** as a resident of the **FACILITY**. (902 KAR § 7 provides that [t]he facility shall conduct initially and periodically a comprehensive, accurate, standardized, reproducible assessment of each resident's functional capacity...(e) [t]he results of [which] are used to develop, review, and revise the resident's comprehensive plan of care, under subsection (4) of this section.);

5.  The process, intent and reason for the creation of **FACILITY** Care Plans and modifications thereto as to the **PLAINTIFF** and **FACILITY** residents in general during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY**. (902 KAR § 7(4) provides that (a) [t]he facility shall develop a comprehensive care plan for each resident that includes

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000043 of 000084

COM : 000043 of 000084

measurable objectives and timetables to meet a resident's medical, nursing and psychosocial needs that are identified in the comprehensive assessment [that is]...3. periodically reviewed and revised by a team of qualified persons after each assessment.);

6. The **IDENTITY** of all persons who the assessed the fall risk potential of the **PLAINTIFF** during the time period of **PLAINTIFF'S RESIDENCY** in the **FACILITY**, as well as the name of and custodian of all **DOCUMENTS** which memorialize the effort;

7. The **FACILITY** definition of the term "fall" during the during the time frame during which **PLAINTIFF** was a resident of **FACILITY** as well as the existence of, name of, content of, intent of and custodian of all **DOCUMENTS** which reflect said definition;

8. When and how the deponent contends that the **PLAINTIFF** suffered each fall in the **FACILITY**, as well as the **IDENTITY** of all persons who the **FACILITY** contends witnessed any such fall, or any witness who the **FACILITY** contends possess any information as to any such fall; as well as the **IDENTITY** of all persons who the **FACILITY** contends assessed the physical and mental condition of the **PLAINTIFF** after any such fall as well as the findings of the assessment(s) and the existence of, name of, the intent of and the custodian of any **DOCUMENTS** which memorialize said fall(s) and/or assessment(s).

9. The **IDENTITY** of all persons who prepared, modified, updated, changed and/or altered any **FACILITY** Care Plan or Plan of Care of the **PLAINTIFF** as well as the reasons for each modification, update, change or alteration;

10. The **IDENTITY** of all persons who on behalf the **FACILITY** contacted the physician of the **PLAINTIFF** after any fall in the **FACILITY**, as well as the date and time of, and modality by which the communication was made and the **IDENTITY** of the person who contacted the physician and content of any such communication. (902 KAR 20:300 § 2(i)(1) provides that [e]xcept in a medical emergency or when a resident is incompetent, a facility shall consult with the resident immediately and notify the resident's physician, and if known, the resident's legal representative or interested family member within twenty-four (24) hours when there is: a. An accident involving the resident which results in injury; b. A significant change in the resident's physical, mental, or psychosocial status; c. A need to alter treatment significantly; or d. A decision to transfer or discharge the resident from the facility as specified in Section 4(1) of this administrative regulation.)

11. The **IDENTITY** of all persons who on behalf the **FACILITY** contacted any **LEGAL REPRESENTATIVE OR INTERESTED FAMILY MEMBER** of the **PLAINTIFF** after any fall suffered by the **PLAINTIFF** in the **FACILITY**, as well as the date and time of the notification and modality by which the communication was made and the name of the person contacted and content of any such communication. ("**LEGAL REPRESENTATIVE OR INTERESTED FAMILY MEMBER**" shall mean "legal representative or interested family member" as that term is defined/referenced in 902 KAR 20:300 § 2(i)(1). 902 KAR 20:300 § 2(i)(1) provides that [e]xcept in a medical emergency or when a resident is incompetent, a facility shall consult with the resident immediately and notify the resident's physician, and if known, the resident's legal representative or interested family member within twenty-four (24) hours when there is: a. An accident involving the resident which results in injury; b. A

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000044 of 000084
COM : 000044 of 000084

significant change in the resident's physical, mental, or psychosocial status; c. A need to alter treatment significantly; or d. A decision to transfer or discharge the resident from the facility as specified in Section 4(1) of this administrative regulation.)

12. The date of creation, circumstances of events leading to the creation, existence of, **IDENTITY** of the author and all persons whose names are listed upon, and the content of all **FACILITY** Incident Reports and/or Unusual Occurrence reports relating to and/or referencing the **PLAINTIFF**. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report.);

13. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** that confirm that the **FACILITY** had sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident and to meet the total needs each resident and to the **PLAINTIFF** during the time the **PLAINTIFF** was a resident of the **FACILITY** in accordance with the requirements of 902 KAR 20:300 § 9 and/or 902 KAR 20:048 § 3, 4. (902 KAR 20:300 § 9 provides [t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 § 3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 § 4(2)(a) provides [t]here shall be twenty (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receive proper care to prevent decubiti and shall be kept comfortable, clean, and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect.);

14. The mechanisms utilized for determining and recording levels of staff in the **FACILITY** and the **IDENTITY** all person(s) responsible for same, as well as the role staffing plays in the provision of care to residents of the **FACILITY** during the time frame of December 5, 2009 to December 11, 2009; January 3, 2010 to January 9, 2010, July 12, 2011 to July 18, 2011, July 28, 2013 to August 3, 2013; September 13, 2013 to September 19, 2013; and October 6, 2013 to October 12, 2013. (902 KAR 20:300 § 9 provides [t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 § 3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 § 4(2)(a) provides [t]here shall be twenty (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000045 of 000084
COM : 000045 of 000084

for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receive proper care to prevent decubiti and shall be kept comfortable, clean, and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect.);

15. The existence of, name of, intent of and custodian of all **DOCUMENTS** utilized by the deponent during the time frame during which **PLAINTIFF** was a resident of the **FACILITY** to determine the ratio of **NURSING HOURS** per patient day. (902 KAR 20:300 § 9 provides [t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 § 3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 § 4(2)(a) provides [t]here shall be twenty (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receive proper care to prevent decubiti and shall be kept comfortable, clean, and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect.);

16. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action and/or by **YOU** to any named Defendant in this action referencing the staffing levels of the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY**, as well as the **IDENTITY** of all persons who authored and/or received said **DOCUMENT(S)**;

17. The occurrence of, intent of and utilization by the deponent of any **FACILITY** "resident" and/or "family" council meeting which took place during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior as well as the existence of, name of, the intent of and the custodian of any **DOCUMENT** which memorialize and/or reference such meetings;

18. The occurrence of, intent of and utilization by the deponent of any employee "exit interviews" which reflect **FACILITY** operations during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior and as to any **DOCUMENT** reflecting the effort, the name of, content of and identity and location of the custodian of, said **DOCUMENT(S)**;

19. The utilization of, intent of and form of any "resident satisfaction surveys" and/or "family satisfaction surveys" and/or "employee satisfaction surveys" relating to **FACILITY** operations during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior, and the existence of, name of and name and location of the custodian of, any **DOCUMENT** reflecting the effort;

20. The occurrence of, intent of and utilization of by the deponent any "hotline" or "grievance procedure" which reflect **FACILITY** operations during any portion of the time period of during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000046 of 000084
COM : 000046 of 000084

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000047 of 000084

prior and as to any **DOCUMENT** reflecting the effort, the existence of, name of, content of and identity and location of the custodian of said **DOCUMENT(S)**;

21. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** that the **FACILITY** utilized during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY** to ensure that its nursing service personnel were employed ...with the qualifications ...to provide the necessary nursing services for each resident of the **FACILITY** during the time the **PLAINTIFF** was a resident of the **FACILITY.** (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number.);

22. The existence of, name of, the intent of and the custodian of, any **DOCUMENTS** which the deponent relied upon during the time frame during which **PLAINTIFF** was a resident of **FACILITY** to ensure that any **FACILITY** employee who provided any services to the **PLAINTIFF** on behalf of the **FACILITY** were fit to perform their job duties. (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number.);

23. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** which evidence **YOUR** "in-service training and ongoing education" of **FACILITY** employees in accordance with the requirements of 902 KAR 20:048 § 3(10)(b)during the residency of the **PLAINTIFF** in the **FACILITY**. (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number. The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

24. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action and/or by **YOU** to any named Defendant in this action referencing the operating budget and/or financial performance of the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior as well as the **IDENTITY** of all persons who authored and/or received said **DOCUMENT(S)**;

25. The manner by which, and amount of any, consideration was paid by the **FACILITY** to any defendant named herein for services performed during the residency of the **PLAINTIFF** in the **FACILITY**;

26. The name, location, terms, scope, and content of any agreement, administrative services agreement and/or consulting agreement between the **FACILITY** and any named defendant herein relating to management, administrative and/or consulting services provided to the **FACILITY** during the residency of the **PLAINTIFF** in the **FACILITY** in accordance with the requirements of 902 KAR 20:048 § 3(3). (902 KAR 20:048 § 3(3)(b) provides the facility shall require and maintain written recommendations or comments from consultants regarding the program and its development on a per visit basis.);

27. The scope of job responsibilities for any and all **FACILITY** employees, including but not limited to, the categories set forth below during the time which **PLAINTIFF** was a resident of **FACILITY** in accordance with the requirements of 902 KAR 20:048 § 3. (902 KAR

COM : 000047 of 000084

20:048 § 3(10)(a) provides written job descriptions shall be developed for each category of personnel, to include qualifications, lines of authority and specific job assignments.):

- Administrator;
- Director of Nursing;
- Admissions Coordinator;
- Business Office Manager;
- Director of Social Services;
- Director of Staff Development;
- Director of Activities;
- Director of Dietary Services;
- Minimum Data Set Coordinator;
- Case Managers;
- Charge Nurses;
- Registered Nurses;
- Licensed Vocational Nurses;
- Certified Nursing Assistants;
- Restorative Nurse's Aides;
- Physical Therapists;
- Occupational Therapists;
- Speech Therapists

28. The **FACILITY** policies and procedures relating to, as well as any effort to, adhere to applicable rules laws and regulations effecting the operations of the **FACILITY** during the residency of the **PLAINTIFF** in the **FACILITY** and the reasons for same. (902 KAR 20:048 § 3(4) provides that the facility shall establish written policies and procedures that govern all services provided by the facility. The written policies shall include: (a) Patient care and services to include physician, nursing, pharmaceutical (including medication stop orders policy), and residential services. (b) Adult and child protection. The facility shall have written policies which assure the reporting of cases of abuse, neglect or exploitation of adults and children pursuant to KRS Chapters 209 and 620. (c) Use of restraints. The facility shall have a written policy that addresses the use of restraints and a mechanism for monitoring and controlling their use. (d) Missing patient procedures. The facility shall [have] a written procedure to specify in a step-by-step manner the actions which shall be taken by staff when a patient is determined to be lost, unaccounted for or on other unauthorized absence.);

29. The existence of, name of, the intent of, reasons for, content of and the custodian of any **DOCUMENTS** as to any Corporate Integrity Agreement by which the **FACILITY** was bound to operate during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior through the date of this deposition.

30. The mechanisms utilized for determining and recording levels of staff in **FACILITY** and the identity and location of all person(s) responsible for same during the residency of **PLAINTIFF** in the **FACILITY**;

31. The **IDENTITY**, employment status and last known residence address and telephone number of all persons who on behalf the **FACILITY** provided any services to **PLAINTIFF** during the time frame **PLAINTIFF** was a resident of the **FACILITY**;

32. The intake process utilized by the **FACILITY** to determine the needs of an incoming resident and the purpose for same in effect upon the date of admission of the **PLAINTIFF** as a resident of the **FACILITY**;

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000048 of 000084
COM : 000048 of 000084

33. The process, intent and reason for the creation of **FACILITY** Care Plans and modifications thereto as to the **PLAINTIFF** and **FACILITY** residents in general during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY** in accordance with the requirements of 902 KAR 20:048 § 4(2)(d). (902 KAR 20:048 § 4(2)(d) provides there shall be a written nursing care plan for each patient based on the nature of illness, treatment prescribed, long and short term goals and other pertinent information. 1. The nursing care plan shall be a personalized, daily plan for individual patients. It shall indicate what nursing care is needed, how it can best be accomplished for each patient, what are the patients preferences, what methods and approaches are most successful, and what modifications are necessary to ensure best results. 2. Nursing care plans shall be available for use by all nursing personnel. 3. Nursing care plans shall be reviewed and revised as needed. 4. Relevant nursing information from the nursing care plan shall be included with other medical information when patients are transferred.);

34. The number of residents of residents in the **FACILITY** who suffered from falls during the residency of the **PLAINTIFF** in the **FACILITY** as well as six (6) months prior and the existence of, name of, custodian of and methodology of creation of, purpose of and recipients of, all **DOCUMENTS** which memorialize same;

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000049 of 000084

COM : 000049 of 000084

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000050 of 000084

**DEPONENTS ARE DIRECTED TO PRODUCE THE FOLLOWING DOCUMENTS IN RESPONSE TO THE ATTACHED SUBPOENA DUCES TECUM**

**Request for Production of Documents No. 1:**

Please provide copies of any and all **DOCUMENTS** in the deponent's care, custody or control which pertain, reference and/or refer to the **PLAINTIFF**. (902 KAR 20:300 § 3(2)(b) provides that the resident shall have the right to inspect and purchase photocopies of all records pertaining to the resident, upon written request and forty-eight (48) hour notice to the facility).

**Request for Production of Documents 2:**

Please provide a blank "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** utilized by the **FACILITY** to report or memorialize any occurrence relating to a resident which were utilized during the residency of the **PLAINTIFF** in the **FACILITY**. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents 3:**

Please provide any "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** utilized by the **FACILITY** to report or memorialize any occurrence relating to a resident which in any fashion mentions or relates to the **PLAINTIFF**. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents 4:**

Please provide each "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** prepared by the **FACILITY** to report or memorialize the development of falls and/or pressure ulcers as to any **FACILITY** resident during the time frame during which the **PLAINTIFF**

COM : 000050 of 000084

was a resident of the **FACILITY**. (The names of all residents other than the **PLAINTIFF** should be redacted from the production.) (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents No. 5:**

Please provide all **DOCUMENTS** which reflect the number of residents in the **FACILITY** who suffered from falls during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY**. (The name of any resident other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 6:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action referencing the **PLAINTIFF** and/or by **YOU** to any named Defendant in this action referencing the **PLAINTIFF**.

**Request for Production of Documents No. 7:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant, or by **YOU** to any named Defendant in this action referencing the staffing levels in the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 8:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant, or by **YOU** to any named Defendant in this action referencing the operating budget and/or financial performance of the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior.

**Request for Production of Documents No. 9:**

Please provide all **DOCUMENTS** which reflect the number of residents in the **FACILITY** who suffered falls during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6)

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000051 of 000084
COM : 000051 of 000084

months prior. (The name of any resident other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents 10:**

Please provide the **FACILITY NURSING STAFFING INFORMATION** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior (The term **NURSING STAFFING INFORMATION** as utilized in this inquiry is defined as that term is defined in 42 C.F.R. §483.30(e) which is as follows:

(e) *Nurse staffing information*—(1) *Data requirements.* The facility must post the following information on a daily basis:

(i) Facility name.

(ii) The current date.

(iii) The total number and the actual hours worked by the following categories of licensed and unlicensed nursing staff directly responsible for resident care per shift:

(A) Registered nurses.

(B) Licensed practical nurses or licensed vocational nurses (as defined under State law).

(C) Certified nurse aides.

(iv) Resident census.

(2) *Posting requirements.* (i) The facility must post the nurse staffing data specified in paragraph (e)(1) of this section on a daily basis at the beginning of each shift.

(ii) Data must be posted as follows:

(A) Clear and readable format.

(B) In a prominent place readily accessible to residents and visitors.

(3) *Public access to posted nurse staffing data.* The facility must, upon oral or written request, make nurse staffing data available to the public for review at a cost not to exceed the community standard.)

**Request for Production of Documents No. 11:**

Please provide all **DOCUMENTS** which confirm that the **FACILITY** Nursing service personnel were employed and in at least the number …to provide the necessary nursing services for

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000052 of 000084
COM : 000052 of 000084

each resident of the **FACILITY** during the time the **PLAINTIFF** was a resident of the **FACILITY** in accordance with the requirements of 902 KAR 20:300 § 9 which states "[t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 § 3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 § 4(2)(a) provides [t]here shall be twenty (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receive proper care to prevent decubiti and shall be kept comfortable, clean, and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect.)

**Request for Production of Documents No. 12:**

Please provide all **DOCUMENTS** which evidence the **FACILITY** "in-service training and ongoing education" in accordance with the requirements of (902 KAR 20:048 § 3(10)(b) during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number. The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000053 of 000084

COM : 000053 of 000084

**Request for Production of Documents No. 14:**

Please produce all **DOCUMENTS** which constitute **YOUR** In-Service education during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior.

**Request for Production of Documents No. 15:**

Please produce all **DOCUMENTS** which were provided to those who attended any In-Service education put on by the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 16:**

Please provide all **DOCUMENTS** which consist of the **FACILITY** policies, procedures, manuals or guidelines in effect during the time frame during which the **PLAINTIFF** was a resident in the **FACILITY** relating to operations and resident care of the **FACILITY** as well as the **FACILITY** mechanisms utilized for determining and recording levels of staff in the **FACILITY** and the identity and location of all person(s) responsible for same; the **FACILITY** Business Office Policies and Procedures; and the **FACILITY** Policies and Procedures relating to assessing employees job performance and for memorializing discipline of employees and/or complaints received as it pertains to employees. (902 KAR 20:048 § 3(4) provides that the facility shall establish written policies and procedures that govern all services provided by the facility. The written policies shall include: (a) Patient care and services to include physician, nursing, pharmaceutical (including medication stop orders policy), and residential services. (b) Adult and child protection. The facility shall have written policies which assure the reporting of cases of abuse, neglect or exploitation of adults and children pursuant to KRS Chapters 209 and 620. (c) Use of restraints. The facility shall have a written policy that addresses the use of restraints and a mechanism for monitoring and controlling their use. (d) Missing patient procedures. The facility shall [have] a written procedure to specify in a step-by-step manner the actions which shall be taken by staff when a patient is determined to be lost, unaccounted for or on other unauthorized absence.)

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000054 of 000084

COM : 000054 of 000084

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000055 of 000084

**Request for Production of Documents No. 17:**

Please provide all **DOCUMENTS** in accordance with the requirements of 902 KAR 20:048 § 3 constituting the job description of any and all **FACILITY** personnel set forth below which were in effect during the residency of the **PLAINTIFF** at the **FACILITY**. (902 KAR 20:048 § 3(10)(a) provides written job descriptions shall be developed for each category of personnel, to include qualifications, lines of authority and specific job assignments.) These include, but are not limited to, the following:

1. Administrator;
2. Director of Nursing;
3. Business Office Manager;
4. Minimum Data Set Coordinator;
5. Case Managers;
6. Registered Nurses;
7. Licensed Vocational Nurses;
8. Charge Nurses;
9. Certified Nursing Assistants;
10. Restorative Nursing Assistants;
11. Physical Therapists;
12. Admissions Coordinator;
13. Business Office Manager;
14. Social Services Director;
15. Activities Personnel;
16. Dietary Services Personnel;
17. Director of Staff Development;
18. Medical Director;

**Request for Production of Documents No. 18:**

Please provide all **DOCUMENTS** constituting the **FACILITY** Employee Handbook in

COM : 000055 of 000084

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000056 of 000084

effect during the residency of the **PLAINTIFF** at the **FACILITY**.

**Request for Production of Documents No. 19:**

Please provide all **DOCUMENTS** constituting Orientation Manuals intended for utilization by **FACILITY** new employees during the residency of the **PLAINTIFF** at the **FACILITY**.

**Request for Production of Documents No. 20:**

Please provide all **DOCUMENTS** constituting the **FACILITY** Code of Conduct for employees in effect during the residency of the **PLAINTIFF** at the **FACILITY**.

**Request for Production of Documents No. 21:**

Please provide all **DOCUMENTS** which constitute any Corporate Integrity Agreement by which the **FACILITY** was bound during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY**.

*Respectfully Submitted,*

**GARCIA, ARTIGLIERE & MEDBY**

Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III
444 East Main Street, Suite 108
Lexington, Kentucky 40507
Telephone: (502) 584-3805
Facsimile: (502) 584-3811
***Counsel for Plaintiff***

COM : 000056 of 000084

15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000057 of 000084

**CERTIFICATE OF SERVICE**

This is to certify that the original of the foregoing was mailed first class United States mail, postage prepaid, to the **Clerk, Pike County Circuit Court, P.O. Box 1002, Pikeville, Kentucky 41502,** and that a true and correct copy of the foregoing was duly mailed this 26th day of September, 2016 to the following:

J. Peter Cassidy, III
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
PH: 859.226.0057
Fax: 859.226.0059
***Counsel for Defendants***

***Counsel for Plaintiff***

COM : 000057 of 000084

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

# Exhibit “6”

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000058 of 000084
COM : 000058 of 000084

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

GARCIA, ARTIGLIERE & MEDBY
An Association of Lawyers, including
Stephen M. Garcia, A Professional Corporation
444 EAST MAIN STREET
SUITE 108
LEXINGTON, KENTUCKY 40507
TELEPHONE (502) 584-3805
FACSIMILE (502) 584-3811

September 26, 2016

**VIA FACSIMILE & U.S. MAIL**

J. Peter Cassidy, III, Esq.
Quintairos, Prieto, Wood & Boyer, PA
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509

**Re: Helen Ray v. Mountain View Healthcare Center**

Dear Mr. Cassidy:

As you know, on September 19, 2016, the Court entered an Order denying Defendants' Motion to Quash or Narrow the Scope of the previously noticed CR 30.02(6) Deposition of Kentucky Medical Investors, L.L.C. (GA) d/b/a Mountain View Health Care Center. Accordingly, enclosed, please find Plaintiff's Second Notice of CR 30.02(6) Deposition of Kentucky Medical Investors, L.L.C. (GA) d/b/a Mountain View Health Care Center, as the same relates to the above-referenced matter.

Should the date we have selected for said deposition prove inconvenient with your calendar, we are happy to reasonably accommodate you. However, reasonableness and collaboration require a joint effort and that would require your timely participation in the effort. To that end, should the date we have selected prove inconvenient with you or the deponent, please provide this office with two alternative dates and times upon which you propose this deposition proceeds such that said deposition is convened within thirty (30) days from writing of this correspondence. Please provide your written preferences by no later than close of business on Thursday, September 29, 2016. Should you decline to provide us with written alternative dates consistent with the time parameters set forth above, we will assume you have no preference and will proceed with the deposition as calendared. Should the deponent fail to appear at that point in time we will immediately seek the assistance of the court.

As always, please do not hesitate to call with questions or concerns. We solicit your prompt attention to this matter and thank you in advance for your anticipated cooperation.

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000059 of 000084

COM : 000059 of 000084

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

J. Peter Cassidy, III, Esq.
Re: Helen Ray v. Mountain View Healthcare Center
September 26, 2016
Page 2

Very truly yours,

***Dicated but not read.***

M. Brandon Faulkner

MBF:cmf
cc: Client
Enclosure: Second Notice
K:\Ray, Helen (15-081-KY)\Correspondence\Cassidy 13 PMK Depo Dates docx

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000060 of 000084

COM : 000060 of 000084

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

# Exhibit "7"

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000061 of 000084
COM : 000061 of 000084
Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk



From: unknown Page: 1/2 Date: 10/14/2016 3:28:19 PM

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

QPWB

Quintairos, Prieto, Wood & Boyer, P.A.
Attorneys at Law

www.qpwblaw.com

2452 Sir Barton Way, Suite 300
Lexington, Kentucky 40509

Telephone: (859) 226-0057 Facsimile: (859) 226-0059

# FAX COVER SHEET

**PRIVILEGED AND CONFIDENTIAL**

TO: M. Brandon Faulkner

FACSIMILE: (502) 584-3811

FROM: J. Peter Cassidy, III

DATE: October 14, 2016

RE: Estate of Helen Ray v. Mountain View Health Care

NUMBER OF PAGES INCLUDING COVER SHEET: 2

**MESSAGE:**

87177

THIS TRANSMISSION CONTAINS CONFIDENTIAL INFORMATION. IF THIS TRANSMISSION IS RECEIVED IN ERROR, PLEASE NOTIFY THE ABOVE SENDER AND RETURN IMMEDIATELY BY U.S. MAIL

www.QPWBLAW.com
Miami ◆ Tampa ◆ Jacksonville ◆ Orlando ◆ Ft. Lauderdale ◆ Tallahassee ◆ Ft. Myers
Louisville ◆ Lexington ◆ West Palm Beach ◆ Chicago ◆ Pensacola ◆ Phoenix ◆ Panama City
◆ U.S. Virgin Islands ◆ Los Angeles ◆ Dallas ◆ Michigan

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000062 of 000084

COM : 000062 of 000084



From: unknown Page: 2/2 Date: 10/14/2016 3:28:19 PM

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000063 of 000084

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

ATTORNEYS AT LAW

WWW.QPWBLAW.COM

2452 SIR BARTON WAY, SUITE 300
LEXINGTON, KY 40509
TELEPHONE: (859) 226-0057 ♦ FACSIMILE: (859) 226-0059

J. Peter Cassidy, III
PCassidy@qpwblaw.com

October 14, 2016

**VIA FACSIMILE & U.S. MAIL**
M. Brandon Faulkner, Esq.
Garcia, Artigliere & Medby
220 W. Main St., Ste. 2250
Louisville, KY 40202

**RE: Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, and on behalf of the Wrongful Death Beneficiaries of Helen Ray, deceased vs. Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center, et al. -- Pike Circuit Court, Civil Action No. 15-CI-778**

Dear Brandon:

Pursuant to the recent Court Order I have been working on scheduling the corporate representative deposition and preparation for same. The witness I would like to designate for most, if not all, of the topic areas is not available next Wednesday but does have availability on December 2, 5, 6, 7, 8, and 9.

Could you please review your calendar and let me know which, if any, of these dates would work best for you?

Thank you.

Sincerely,

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**

J. Peter Cassidy, III

JPC/alh
87177

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

ATLANTA ♦ CHICAGO ♦ DALLAS ♦ FT. LAUDERDALE ♦ FT. MYERS ♦ JACKSONVILLE ♦ LEXINGTON ♦ LOS ANGELES ♦ LOUISVILLE ♦ MIAMI
NOVI ♦ ORLANDO ♦ PANAMA CITY ♦ PENSACOLA ♦ PHOENIX ♦ TALLAHASSEE ♦ TAMPA ♦ U.S. VIRGIN ISLANDS ♦ WEST PALM BEACH

COM : 000063 of 000084

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000064 of 000084

# Exhibit "8"

COM : 000064 of 000084

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION II
CIVIL ACTION NO. 15-CI-00778

***ELECTRONICALLY FILED***

JENNIFER BINGHAM, as Executrix of the Estate of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFF

v.

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER , et al. DEFENDANTS

*** *** *** ***

**RE-NOTICE OF CR 30.02(6) DEPOSITION OF KENTUCKY MEDICAL INVESTORS, L.L.C. (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER**

PLEASE TAKE NOTICE that pursuant to Kentucky Rule of Civil Procedure 30.02(6) and for all purposes provided by the Kentucky Rules of Civil Procedure, on **Tuesday, December 6**, **2016** beginning at **9:00 a.m.**, **EST** and continuing until completed at the **Law Office of Michael Pack and Ron Diddle, 137 Pike St., Unit 1, Pikeville, KY 41501**, Plaintiff, by counsel, will take the deposition of Kentucky Medical Investors, L.L.C. (GA) d/b/a Mountain View Health Care Center on the following topics:

1. The existence of, name of, the intent of and the custodian of any **DOCUMENTS** within the care, custody and/or control of the **FACILITY** which refer to and/or reference in whatsoever manner, the **PLAINTIFF**. (The term "**PLAINTIFF**" shall refer to Helen Ray. The term "FACILITY", as used in this and all subsequent inquiries, shall refer to Kentucky Medical Investors, L.L.C. (GA) d/b/a Mountain View Health Care Center, wherein PLAINTIFF was a resident. The terms **"DOCUMENT(S)"** and/or **"DOCUMENTATION"**, as used in this and all subsequent inquiries shall mean, includes all written, graphic or otherwise recorded matter however produced or reproduced, including the originals (or any copies when originals are not available) and non-identical copies (where different from the original because notes were made on such copies or because said copies may have been sent to different individuals than originals, or for any other reason) and preliminary or final drafts of writings, records, and recordings of every kind and description, whether inscribed by hand or by mechanical, electronic, microfilm, photographic or other means, as well as phonic (such as tape recordings) or visual reproductions of all statements, conversations or events and including, without limitation, correspondence, teletype messages, notes, reports,

K:\Ray, Helen (15-081-KY)\Depos\PMK.DepoNotice.3.docx
Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk
Filed 15-CI-00778 10/27/2016 Anna Pinson Spears, Pike Circuit Clerk

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
000065 of 000083

compilations, schedules, studies, tabulations, tallies, maps, charts, diagrams, drawings, plans, pictures, computer runs, advertising and promotional material, press releases, minutes and records of any memoranda of all press releases, minutes and records of any memoranda of all types, inter-office and intra-office communications, notes of conversations, vouchers, financial calculations and statements, working papers, statistical analyses, invoices, purchase orders, expense account records, stenographers, notebooks, desk calendars, appointment books, diaries, manuals, pamphlets, brochures, escrow instructions, contracts, deeds, agreements, title reports, listings, authorizations, and any abstracts, summaries and analyses of the above, and all other recorded matter of every nature and kind.)

2. The date and time of each occasion upon which the **PLAINTIFF** suffered any “fall” in the **FACILITY**.

3. The identify and employment status, and as to all former employees the last known residence address and telephone number, of each person who **YOU** contended has any knowledge or information relating to any “fall” suffered by the **PLAINTIFF** in the **FACILITY**. (For purposes of these inquiries, **YOU** and **YOUR** refers individually and collectively to the individual, partnership, or corporate defendant to whom this request is addressed and all persons acting or purporting to act on the behalf of said defendant.)

4. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each person who on **YOUR** behalf assessed the condition of the **PLAINTIFF** after any “fall” suffered by the **PLAINTIFF** in the **FACILITY**.

5. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each person who **YOU** contend witnessed any fall suffered by the **PLAINTIFF** in the **FACILITY**. (For purposes of these inquiries, **YOU** and **YOUR** refers individually and collectively to the individual, partnership, or corporate defendant to whom this request is addressed and all persons acting or purporting to act on the behalf of said defendant.)

6. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each person who on **YOUR** behalf assessed the condition of the **PLAINTIFF** after any fall suffered by the **PLAINTIFF** in the **FACILITY**.

7. The existence of and nature of the business relationship between **YOU** and any of the named co-defendant(s) in this action during the time frame during which **PLAINTIFF** was a patient in the **FACILITY**.

8. The existence of, scope of, and intent of any and all **FACILITY** policies and procedures which were in effect during the admission of the **PLAINTIFF** in the **FACILITY** in accordance with the provisions of 902 KAR 20:026 § 3(3). (902 KAR 20:026 § 3(3) provides as follows: “The **FACILITY** shall have written policies and procedures governing all aspects of the operation of the facility and the services provided.”)

9. The purpose of and frequency of In-Service Education provided to **FACILITY** employees, including but not limited to In-Service education programs, for a period of time commencing six months prior to the admission in the **FACILITY** through the last date of the admission of the **PLAINTIFF** in the **FACILITY** in accordance with 902 KAR 20:026 § 3(9). (902 KAR 20:026 § 3(9)(e) provides as follows: “There shall be an in-service education program in effect for all nursing personnel at regular intervals in addition to a thorough job orientation for new personnel.”)

10. The purpose, scope of, and nature of all training and job orientation provided to **FACILITY**

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

employees for a period of time commencing six months prior to the admission in the **FACILITY** through the last date of the admission of the **PLAINTIFF** in the **FACILITY** in accordance with 902 KAR 20:026 § 3(9). (902 KAR 20:026 § 3(9)(e) provides as follows: "There shall be an in-service education program in effect for all nursing personnel at regular intervals in addition to a thorough job orientation for new personnel.")

11. The mechanisms utilized for determining and recording levels of staff in any wing or station in which the **PLAINTIFF** was in the **FACILITY** and the identity and location of all person(s) responsible for same, in effect during the time which **PLAINTIFF** was a patient of **FACILITY** in accordance with 902 KAR 20:026 § 3(9). (902 KAR 20:026 § 3(9)(d) provides as follows: "The **FACILITY** shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis.")

12. The **FACILITY** Policies and Procedures relating to assessing employees' job performance, memorializing discipline of employees and/or complaints received as it pertains to employees in effect during the time which **PLAINTIFF** was a patient of **FACILITY**;

13. The existence of, title of, location of, intent of, content of, and custodian of all **DOCUMENTS** utilized by the **FACILITY** during the time period during which the **PLAINTIFF** was a resident of the **FACILITY** so as to ensure that all **FACILITY** staff who provided services to the **PLAINTIFF** were fit to perform their job duties in accordance with 902 KAR 20:026 § 3(9). (902 KAR 20:026 § 3(9)(b) provides as follows: "Current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, evaluation of performance, records of in-service training and on-going education, along with employee's name, address and Social Security number.").

14. The name, location, terms, scope, and content of any agreement between the **FACILITY** and any named defendant herein or any other entity relating to management, administrative and/or consulting services provided to the **FACILITY** during the stay of the **PLAINTIFF** in the **FACILITY**.

15. The date of creation, circumstances of creation, existence, content of, and name, and as to former employees the last known residence address and telephone number, of all persons whose names are listed on any **FACILITY** Incident Report and/or Unusual Occurrence report and/or any investigation resulting therefrom relating to, or mentioning, the **PLAINTIFF**;

16. The job title and scope of job responsibilities for any and all **FACILITY** employees during the time she was a patient at the **FACILITY** in accordance with 902 KAR 20:026 § 3(9). (902 KAR 20:026 § 3(9)(a) provides as follows: "Written job descriptions shall be developed for each category of personnel to include qualifications, lines of authority and specific duty assignments.")

17. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each individual, agency, partnership or corporation who served as the "governing body" of the **FACILITY** during the time **PLAINTIFF** was a patient at the **FACILITY** in accordance with 42 CFR § 483.75. (42 CFR § 483.75(d)(1) provides as follows: The facility must have a governing body, or designated persons functioning as a governing body, that is legally responsible for establishing and implementing policies regarding the management and operation of the facility.")

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
NOT : 000063 of 000083

18. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each individual, agency, partnership or corporation who served as the "licensee" of the **FACILITY** during the time **PLAINTIFF** was a patient at the **FACILITY** in accordance with 902 KAR 20:026 § 3(1). (902 KAR 20:026 § 3(1) provides as follows: "The licensee shall be legally responsible for the facility and for compliance with federal, state and local laws and regulations pertaining to the operation of the facility.")

19. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each individual who served as the "administrator" of the **FACILITY** during the time **PLAINTIFF** was a patient at the **FACILITY** in accordance with 902 KAR 20:026 § 3(2). (902 KAR 20:026 § 3(2) provides as follows: "All facilities shall have an administrator who is responsible for the facility and who shall delegate such responsibility in his absence.")

20. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each individual who participated in any fall-related "nursing care plan" during the time **PLAINTIFF** was a patient at the **FACILITY** in accordance with 902 KAR 20:026 § 3(2). (902 KAR 20:026 § 3(2) provides as follows: "All facilities shall have an administrator who is responsible for the facility and who shall delegate such responsibility in his absence.")

21. The identity and employment status, and as to all former employees the last known residence address and telephone number, of each individual who served as the physician to **PLAINTIFF** during the time **PLAINTIFF** was a patient at the **FACILITY** in accordance with 902 KAR 20:026 § 4(2). (902 KAR 20:026 § 4(2)(d) provides as follows: "There shall be written nursing care plans for each patient based on the nature of illness, treatment prescribed, long and short term goals and other pertinent information. (1) The nursing care plan shall be a personalized, daily plan for individual patients. It shall indicate what nursing care is needed, how it can best be accomplished for each patient, what are the patient's preferences, what methods and approaches are most successful, and what modifications are necessary to insure best results.")

22. The existence of, scope of, and content of any and all **FACILITY** "nursing staff data/information" during the admission of the **PLAINTIFF** in the **FACILITY** in accordance with the provisions of 42 CFR § 483.30(e). (42 CFR § 483.30(e)(3) provides as follows: "The Facility must, upon oral or written request, make nurse staffing data available to the public for review at a cost not to exceed the community standard .")

23. The **IDENTITY** of all persons who the assessed the pressure sore risk potential of the **PLAINTIFF** during the admission of the **PLAINTIFF** in the **FACILITY** as well as the existence of, name of and custodian of all **DOCUMENTS** which memorialize the effort. (For the purposes of these inquiries, the term **IDENTITY** means to state or a statement of: a. in the case of a person other than a natural person, its name, the address of its principal place of business (including zip code), its telephone number, and the name of its chief executive officer, as well as, if it has a person other than a natural person that ultimately controls it, that other person's name, the address of that person's principal place of business (including zip code), that other person's telephone number, and that person's chief executive officer; b. in the case of a natural person, his or her name, residential address and telephone number, business address and telephone number, employer, and title or position; c. in the case of a communication, its date, type (e.g., telephone conversation or discussion), the place where it occurred, the identity of the person who made the communication, the identity of the person that received the communication, the identity of each other person present when it was made, and the subject matter discussed; d. in the case of a document, the title of the document, the author, the title or position of the author, the addressee, each recipient, the

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

type of document, the subject matter, the date of preparation, and its number of pages; and e. in the case of an agreement, its date, the place where it occurred, the identity of all persons who were parties to the agreement, the identity of each person who has knowledge of the agreement and all other persons present when it was made, and the subject matter of the agreement.)

24. The determination made as to the skin integrity and the existence of any pressure sores upon the person of the **PLAINTIFF** by **FACILITY** personnel conducting any skin assessment of the **PLAINTIFF** upon admission to the **FACILITY** as well as the name of and custodian of all **DOCUMENTS** which memorialize the effort.

25. The date of the deponent fist learning of the existence of any decubitus ulcer on the body of the **PLAINTIFF** during the admission of the **PLAINTIFF** in the **FACILITY** as well as the location and staging of any such decubitus ulcer, the **IDENTITY** of the person who made said discovery and the existence of, name of and custodian of all **DOCUMENTS** which memorialize the effort.

26. The **IDENTITY** of all persons who the turned and repositioned the **PLAINTIFF** to relieve pressure on bony prominences of the **PLAINTIFF** during the admission of the **PLAINTIFF** in the **FACILITY** as well as the existence of, name of and custodian of all **DOCUMENTS** which memorialize the effort;

27. The **IDENTITY** of all persons who prepared, modified, updated, changed and/or altered any **FACILITY** Care Plan or Plan of Care of the **PLAINTIFF** during the admission of the **PLAINTIFF** in the **FACILITY** as well as the date of, and reasons for each modification, update, change or alteration;

28. The date of the deponent fist learning of the existence of any injury of unknown origin on the body of the **PLAINTIFF** during the admission of the **PLAINTIFF** in the **FACILITY** as well as the location and description of said inury, the **IDENTITY** of the person who made said discovery and the existence of, name of and custodian of all **DOCUMENTS** which memorialize the effort;

29. The number of residents of residents in the **FACILITY** who suffered from pressure sores, decubitus ulcers, falls and injuries of unknown origin during the residency of the **PLAINTIFF** in the **FACILITY** as well as six (6) months prior and the existence of, name of, custodian of and methodology of creation of, purpose of and recipients of, all **DOCUMENTS** which memorialize same;

Pursuant to CR 30.02(6), Kentucky Medical Investors, L.L.C. (GA) d/b/a Mountain View Health Care Center is directed to "designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which he will testify" as described above.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
COV : 000069 of 000083

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

**DEPONENTS ARE DIRECTED TO PRODUCE THE FOLLOWING DOCUMENTS IN RESPONSE TO THE ATTACHED SUBPOENA DUCES TECUM**

**Request for Production of Documents No. 1:**

Please provide copies of any and all **DOCUMENTS** in the deponent's care, custody or control which pertain, reference and/or refer to the **PLAINTIFF**. (902 KAR 20:300 § 3(2)(b) provides that the resident shall have the right to inspect and purchase photocopies of all records pertaining to the resident, upon written request and forty-eight (48) hour notice to the facility).

**Request for Production of Documents 2:**

Please provide a blank "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** utilized by the **FACILITY** to report or memorialize any occurrence relating to a resident which were utilized during the residency of the **PLAINTIFF** in the **FACILITY**. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents 3:**

Please provide any "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** utilized by the **FACILITY** to report or memorialize any occurrence relating to a resident which in any fashion mentions or relates to the **PLAINTIFF**. (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents 4:**

Please provide each "Incident Report" and/or "Unusual Occurrence Report" and/or any other **DOCUMENT** prepared by the **FACILITY** to report or memorialize the development of pressure sores, falls or aspiration as to any **FACILITY** resident during the time frame during which the

**PLAINTIFF** was a resident of the **FACILITY**. (The names of all residents other than the **PLAINTIFF** should be redacted from the production.) (902 KAR 20:048 § 3(d) provides that a written report of any incident or accident involving a patient (including medication errors or drug reactions), visitor or staff shall be made and signed by the administrator or nursing service supervisor, and any staff member who witnessed the incident. The report shall be filed in an incident report).

**Request for Production of Documents No. 5:**

Please provide all **DOCUMENTS** which reflect the number of residents in the **FACILITY** who suffered from pressure sores, falls or injuries of unknown origin during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY**. (The name of any resident other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 6:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant in this action referencing the **PLAINTIFF** and/or by **YOU** to any named Defendant in this action referencing the **PLAINTIFF**.

**Request for Production of Documents No. 7:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant, or by **YOU** to any named Defendant in this action referencing the staffing levels in the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 8:**

Please provide all **DOCUMENTS** which were provided to **YOU** by any named Defendant, or by **YOU** to any named Defendant in this action referencing the operating budget and/or financial performance of the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior.

**Request for Production of Documents No. 9:**

Please provide the **FACILITY NURSING STAFFING INFORMATION** during the time

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk
Filed 15-CI-00778 10/27/2016 Anna Pinson Spears, Pike Circuit Clerk
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
NOT ORIGINAL DOCUMENT : 000071 of 000083

frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior (The term **NURSING STAFFING INFORMATION** as utilized in this inquiry is defined as that term is defined in 42 C.F.R. §483.30(e) which is as follows:

(e) *Nurse staffing information*—(1) *Data requirements.* The facility must post the following information on a daily basis:

(i) Facility name.

(ii) The current date.

(iii) The total number and the actual hours worked by the following categories of licensed and unlicensed nursing staff directly responsible for resident care per shift:

(A) Registered nurses.

(B) Licensed practical nurses or licensed vocational nurses (as defined under State law).

(C) Certified nurse aides.

(iv) Resident census.

(2) *Posting requirements.* (i) The facility must post the nurse staffing data specified in paragraph (e)(1) of this section on a daily basis at the beginning of each shift.

(ii) Data must be posted as follows:

(A) Clear and readable format.

(B) In a prominent place readily accessible to residents and visitors.

(3) *Public access to posted nurse staffing data.* The facility must, upon oral or written request, make nurse staffing data available to the public for review at a cost not to exceed the community standard.)

**Request for Production of Documents No. 10:**

Please provide all **DOCUMENTS** which confirm that the **FACILITY** Nursing service personnel were employed and in at least the number …to provide the necessary nursing services for each resident of the **FACILITY** during the time the **PLAINTIFF** was a resident of the **FACILITY** in accordance with the requirements of 902 KAR 20:300 § 9 which states "[t]he facility shall have sufficient nursing staff to provide nursing and related services to attain or maintain the highest

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
NOT : 000072 of 000083

practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care. 902 KAR 20:048 § 3(10)(c) provides the facility shall have adequate personnel to meet the needs of the patients on a twenty-four (24) hour basis. The number and classification of personnel required shall be based on the number of patients and the amount and kind of personal care, nursing care, supervision and program needed to meet the needs of the patients as determined by medical orders and services required by this administrative regulation. 902 KAR 20:048 § 4(2)(a) provides [t]here shall be twenty (24) hour nursing service with sufficient number of nursing personnel on duty at all times to meet the total needs of patients. Nursing personnel shall include registered nurses, licensed practical nurses, aides and orderlies. The amount of nursing time available for patient care shall be exclusive of non-nursing duties. Sufficient nursing time shall be available to assure that each patient: 1. Shall receive treatments, medications, and diets as prescribed; 2. Shall receive proper care to prevent decubiti and shall be kept comfortable, clean, and well-groomed; 3. Shall be protected from accident and injury by the adoption of indicated safety measures; 4. Shall be treated with kindness and respect.)

**Request for Production of Documents No. 11:**

Please provide all **DOCUMENTS** which evidence the **FACILITY** "in-service training and ongoing education" in accordance with the requirements of (902 KAR 20:048 § 3(10)(b) during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (902 KAR 20:048 § 3(10)(b) provides current employee records shall be maintained and shall include a resume of each employee's training and experience, evidence of current licensure or registration where required by law, health records, records of in-service training and ongoing education, and the employee's name, address, and Social Security number. The names of all residents other than the **PLAINTIFF** should be redacted from the production.)

**Request for Production of Documents No. 12:**

Please produce all **DOCUMENTS** which were provided to those who attended any In-Service education put on by the **FACILITY** during the time frame **PLAINTIFF** was a resident of the **FACILITY** and six (6) months prior. (The names of all residents other than the **PLAINTIFF**

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
COM : 000079 of 000083

should be redacted from the production.)

**Request for Production of Documents No. 13:**

Please provide all **DOCUMENTS** which consist of the **FACILITY** policies, procedures, manuals or guidelines in effect during the time frame during which the **PLAINTIFF** was a resident in the **FACILITY** relating to operations and resident care of the **FACILITY** as well as the **FACILITY** mechanisms utilized for determining and recording levels of staff in the **FACILITY** and the identity and location of all person(s) responsible for same; the **FACILITY** Business Office Policies and Procedures; and the **FACILITY** Policies and Procedures relating to assessing employees job performance and for memorializing discipline of employees and/or complaints received as it pertains to employees. (902 KAR 20:048 § 3(4) provides that the facility shall establish written policies and procedures that govern all services provided by the facility. The written policies shall include: (a) Patient care and services to include physician, nursing, pharmaceutical (including medication stop orders policy), and residential services. (b) Adult and child protection. The facility shall have written policies which assure the reporting of cases of abuse, neglect or exploitation of adults and children pursuant to KRS Chapters 209 and 620. (c) Use of restraints. The facility shall have a written policy that addresses the use of restraints and a mechanism for monitoring and controlling their use. (d) Missing patient procedures. The facility shall [have] a written procedure to specify in a step-by-step manner the actions which shall be taken by staff when a patient is determined to be lost, unaccounted for or on other unauthorized absence.)

**Request for Production of Documents No. 14:**

Please provide all **DOCUMENTS** in accordance with the requirements of 902 KAR 20:048 § 3 constituting the job description of any and all **FACILITY** personnel set forth below which were in effect during the residency of the **PLAINTIFF** at the **FACILITY**. (902 KAR 20:048 § 3(10)(a) provides written job descriptions shall be developed for each category of personnel, to include qualifications, lines of authority and specific job assignments.) These include, but are not limited to, the following:

1. Administrator;

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

2. Director of Nursing;

3. Business Office Manager;

4. Minimum Data Set Coordinator;

5. Case Managers;

6. Registered Nurses;

7. Licensed Vocational Nurses;

8. Charge Nurses;

9. Certified Nursing Assistants;

10. Restorative Nursing Assistants;

11. Physical Therapists;

12. Admissions Coordinator;

13. Business Office Manager;

14. Social Services Director;

15. Activities Personnel;

16. Dietary Services Personnel;

17. Director of Staff Development;

18. Medical Director.

**Request for Production of Documents No. 15:**

Please provide all **DOCUMENTS** constituting the **FACILITY** Employee Handbook in effect during the residency of the **PLAINTIFF** at the **FACILITY**.

**Request for Production of Documents No. 16:**

Please provide all **DOCUMENTS** constituting Orientation Manuals intended for utilization by **FACILITY** new employees during the residency of the **PLAINTIFF** at the **FACILITY**.

**Request for Production of Documents No. 17:**

Please provide all **DOCUMENTS** constituting the **FACILITY** Code of Conduct for employees in effect during the residency of the **PLAINTIFF** at the **FACILITY**.

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
COM : 000071 of 000083

**Request for Production of Documents No. 18:**

Please provide all **DOCUMENTS** which constitute any Corporate Integrity Agreement by which the **FACILITY** was bound during the time frame during which the **PLAINTIFF** was a resident of the **FACILITY**.

**Request for Production of Documents No. 19:**

Please provide a list identifying all individuals who were employed at the **FACILITY** during the residency of **PLAINTIFF**; state whether each individual provided any care or services to **PLAINTIFF**, and state whether each individual is currently an employee of the **FACILITY** or any Defendant. For each individual identified as a former employee, please provide current contact information to include most recent telephone number and address.

**Request for Production of Documents No. 20::**

Please provide all **DOCUMENTS** which **IDENTIFY** and/or reference the nature of the business relationship between **YOU** and any of the named co-defendant(s) in this action during the time frame during which **PLAINTIFF** was a patient in the **FACILITY**.

*Respectfully Submitted,*

**GARCIA, ARTIGLIERE & MEDBY**

/s/ M. Brandon Faulkner
Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III
444 East Main Street, Suite 108
Lexington, Kentucky 40507
Telephone: (502) 584-3805
Facsimile: (502) 584-3811
***Counsel for Plaintiff***

K:\Ray, Helen (15-081-KY)\Depos\PMK.DepoNotice.3.docx

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk
Filed 15-CI-00778 10/27/2016 Anna Pinson Spears, Pike Circuit Clerk
Presiding Judge: HON. STEVEN DANIEL COMBS (635210)
000072 of 000083

Presiding Judge: HON. STEVEN DANIEL COMBS (635210)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was electronically filed and served via U.S. Mail, postage prepaid, on this 27th day of October, 2016, upon the following:

J. Peter Cassidy, III
Quintairos, Prieto, Wood & Boyer, P.A.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
PH: 859.226.0057
Fax: 859.226.0059
***Counsel for Defendants***

US Legal Support
krstephens@uslegalsupport.com
Phone: 407.649.1892

/s/ M. Brandon Faulkner
***Counsel for Plaintiff***

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

# Exhibit "9"

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000078 of 000084
COM : 000078 of 000084
Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk



From: unknown Page: 1/3 Date: 12/1/2016 4:00:34 PM
Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

QPWB

Quintairos, Prieto, Wood & Boyer, P.A.
Attorneys at Law

www.qpwblaw.com

2452 Sir Barton Way, Suite 300
Lexington, Kentucky 40509

Telephone: (859) 226-0057 Facsimile: (859) 226-0059

# FAX COVER SHEET

**PRIVILEGED AND CONFIDENTIAL**

TO: M. Brandon Faulkner

FACSIMILE: (502) 584-3811

FROM: J. Peter Cassidy, III

DATE: December 1, 2016

RE: Estate of Helen Ray v. Mountain View Health Care

NUMBER OF PAGES INCLUDING COVER SHEET: 3

**MESSAGE:**

**PLEASE SEE ATTACHED. THANK YOU.**

97177

www.QPWBLAW.com
Miami ◆ Tampa ◆ Jacksonville ◆ Orlando ◆ Ft. Lauderdale ◆ Tallahassee ◆ Ft. Myers
Louisville ◆ Lexington ◆ West Palm Beach ◆ Chicago ◆ Pensacola ◆ Phoenix ◆ Panama City
◆ U.S. Virgin Islands ◆ Los Angeles ◆ Dallas ◆ Michigan

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000079 of 000084
COM : 000079 of 000084

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

ATTORNEYS AT LAW

WWW.QPWBLAW.COM

2452 SIR BARTON WAY, SUITE 300
LEXINGTON, KY 40509
TELEPHONE: (859) 226-0057 ♦ FACSIMILE: (859) 226-0059

J. Peter Cassidy, III
PCassidy@qpwblaw.com

December 1, 2016

**VIA FACSIMILE & U.S. MAIL**

M. Brandon Faulkner, Esq.
Garcia, Artigliere & Medby
220 W. Main St., Ste. 2250
Louisville, KY 40202

**RE: Jennifer Bingham, as Executrix of the Estate of Helen Ray, deceased, and on behalf of the Wrongful Death Beneficiaries of Helen Ray, deceased vs. Kentucky Medical Investors, LLC (GA) d/b/a Mountain View Health Care Center, et al. -- Pike Circuit Court, Civil Action No. 15-CI-778**

Dear Brandon:

We have a deposition currently scheduled for Tuesday, December 6, at 9 a.m. in Pikeville in this case. Unfortunately, the witness I have been working with (Aimee Mullins) to present for the deposition has very recently had some cardiac issues and has been placed on a heart monitor. Her physician has advised her to avoid stress. As such, I will be unable to present Ms. Mullins as the corporate representative to address the topics of inquiry in your notice. I am working on an alternative witness now but believe this development will likely result in preparation and presentation of multiple witnesses in response to the deposition notice. I will work diligently to identify the appropriate witness(es) and get back with you as soon as possible with alternate dates and time for this purpose. I appreciate your understanding of this unfortunate situation.

ATLANTA ♦ CHICAGO ♦ DALLAS ♦ FT. LAUDERDALE ♦ FT. MYERS ♦ JACKSONVILLE ♦ LEXINGTON ♦ LOS ANGELES ♦ LOUISVILLE ♦ MIAMI
NOVI ♦ ORLANDO ♦ PANAMA CITY ♦ PENSACOLA ♦ PHOENIX ♦ TALLAHASSEE ♦ TAMPA ♦ U.S. VIRGIN ISLANDS ♦ WEST PALM BEACH

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000080 of 000084
COM : 000080 of 000084

From: unknown Page: 3/3 Date: 12/1/2016 4:00:34 PM
Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

Please do not hesitate to contact me to discuss this matter further.

Sincerely,

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**

J. Peter Cassidy, III

JPC/mls

87177

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000081 of 000084
COM : 000081 of 000084
Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk
QUINTAIROS, PRIETO, WOOD & BOYER, P.A., ATTORNEYS AT LAW
2452 SIR BARTON WAY, SUITE 300, LEXINGTON, KY 40509 ◆ TEL: (859) 226-0057

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000082 of 000084

# Exhibit "10"

COM : 000082 of 000084

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

GARCIA, ARTIGLIERE MEDBY & FAULKNER
An Association of Lawyers, including
Stephen M. Garcia, A Professional Corporation
444 EAST MAIN STREET
SUITE 108
LEXINGTON, KENTUCKY 40507
TELEPHONE (502) 584-3805
FACSIMILE (502) 584-3811

January 27, 2017

**VIA FACSIMILE AND U.S. MAIL**

J. Peter Cassidy, III, Esq.
Quintairos, Prieto, Wood & Boyer, PA
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509

**Re: Helen Ray vs. Mountain View Healthcare Center**

Dear Mr. Cassidy:

As you know, the Court previously entered an Order denying Defendants' Motion to Quash or Narrow the Scope of the previously noticed CR 30.02(6) Deposition of Kentucky Medical Investors, L.L.C. (GA) d/b/a Mountain View Health Care Center. Accordingly, the deposition was noticed for December 6, 2016 at 9:00 a.m. However, via correspondence dated December 1, 2016, you advised the designated deponent, Aimee Mullins, was unavailable for the previously agreed upon date due to medical issues. Nonetheless, in said correspondence you promised to "work diligently to identify the appropriate witness(es) and get back with [me] as soon as possible with alternate dates and times for this purpose." Unfortunately, to date we have received no further communication from you this regard.

As such, we must respectfully request that you provide us with at least ***two*** alternative dates for the deposition, such that the deposition is convened within 30 days of the writing of this letter. Please provide your written preferences, consistent with the time parameters set forth above, in writing by no later than the close of business on Tuesday, January 21, 2017. Absent receipt of the foregoing, we will have no choice but to file a Motion to Compel said deposition and will justifiably seek sanctions pursuant to CR 37.02. We hope this will not be necessary and look forward to receiving dates for this deposition within the time parameters set forth above.

We solicit your prompt attention to this matter and thank you, in advance, for your anticipated cooperation.

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000083 of 000084

COM : 000083 of 000084

Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

J. Peter Cassidy, III, Esq.
Re: Helen Ray vs. Mountain View Healthcare Center
January 27, 2017
Page 2

Very truly yours,

Michael Brandon Faulkner

MBF:mbf
cc: Client
K:\Ray, Helen (15-081-KY)\Correspondence\Cassidy 14.M&C PMK docx

40A42463-3AF7-40AF-97D7-871469FA9CA1 : 000084 of 000084
COM : 000084 of 000084
Filed 15-CI-00778 02/09/2017 Anna Pinson Spears, Pike Circuit Clerk

4222E894-D1E2-40D8-90DA-DC3888ED6EE3 : 000001 of 000009

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the ESTATE of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

---

**DEFENDANTS' MOTION TO DISQUALIFY COUNSEL FOR PLAINTIFF**

---

Defendants, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View"), and Life Care Centers of America, Inc., hereby move the Court to disqualify M. Brandon Faulkner, Esq. and the law firm of Garcia, Artigliere, Medby & Faulkner, from representing Plaintiffs in this action. In support of this motion Defendants state as follows:

MOT : 000001 of 000006

4222E894-D1E2-40D8-90DA-DC3888ED6EE3 : 000002 of 000009

**BACKGROUND**

This is a medical malpractice action in which the Plaintiffs allege that Defendants breached nursing standards of care that caused certain alleged injuries and death to Helen Ray. Ms. Ray was a resident at the Elkhorn City facility for nearly six years from July 16, 2008 to June 19, 2014. After her nearly six year residency at Mountain View, Ms. Ray passed away on June 19, 2014. Her death certificate lists the causes of death as Cardiac Arrhythmia and ASVD with significant conditions contributing to death of diabetes mellitus, hyperlipidemia, and esophageal mass. Plaintiffs filed their Complaint in this Court on August 4, 2015, alleging negligence, medical negligence, corporate negligence, violations of long-term care resident's rights, and wrongful death against various "corporate" defendants, and also alleging negligence and wrongful death against "administrator" defendants, Judith Branham and Misty Ward[1].

On or about December 16, 2016 and December 28, 2016, Attorney M. Brandon Faulkner and law firm of Garcia, Artigliere, Medby & Faulkner, entered their appearance and filed Answers of behalf of Judith Branham (a Defendant in the present action) in the cases of *Linda Bentley, administrator of the Estate of Barbara Kendrick v. LP Pikeville, LLC d/b/a Signature HealthCARE of Pikeville, et al.*, Pike Circuit Court, Second Division, Case No. 16-CI-01122 and *Darlene Atkinson, as Emergency Guardian for Marine Hamilton v. LP Pikeville, LLC d/b/a Signature HealthCARE of Pikeville, et al.*, Pike Circuit Court, Second Division, Case No. 16-CI-01156, respectively. After Judith Branham left the employment of Mountain View, she was employed by Signature Healthcare, a client of Mr. Faulkner's firm.

[1] Discovery has subsequently revealed that Misty Ward was not an Administrator at Mountain View Health Care Center. The basis for her alleged liability and Plaintiff's Complaint against Misty Ward is unknown.

MOT : 000002 of 000006

4222E894-D1E2-40D8-90DA-DC3888ED6EE3 : 000003 of 000009

Both the claims in the present action against Judith Branham, as well as the claims in the *Barbara Kendrick* and *Marine Hamilton* matters concern allegations that Judith Branham was negligent in performing her duties as administrator of a nursing home.

**APPLICABLE LAW**

Supreme Court Rule 3.130 (1.7) specifies that a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. The rule further explains that a concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

*Id*.

Under the rule stated above, a concurrent conflict of interest exists with Attorney M. Brandon Faulkner and law firm of Garcia, Artigliere, Medby & Faulkner prosecuting the present civil action on behalf of Plaintiffs herein against Judith Branham and the remaining defendants while at the same time representing Judith Branham as a named defendant in the *Barbara Kendrick* and *Marine Hamilton* matters noted above.

The rule goes on to state that, notwithstanding such a concurring conflict, the lawyer may represent a client *if*:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) **the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal**; ***and***

MOT : 000003 of 000006

4222E894-D1E2-40D8-90DA-DC3888ED6EE3 : 000004 of 000009

> (4) each affected client gives informed consent, confirmed in writing. The consultation shall include an explanation of the implications of the common representation and the advantages and risks involved.

*Id.* (emphasis added).

Notwithstanding whatever counsel for Plaintiffs' subjective belief may be with respect to his and his firm's ability to provide competent and diligent representation to each affected client, or even each clients' informed consent (if given), subparagraph (b)(3) of the rule, as applied to the facts here, make the concurrent conflict "nonconsentable." In this case, M. Brandon Faulkner and law firm of Garcia, Artigliere, Medby & Faulkner represent Plaintiffs in the Pike Circuit Court, Second Division, and are asserting a direct claim against Judith Branham, a client that M. Brandon Faulkner and law firm of Garcia, Artigliere, Medby & Faulkner represent as a defendant in two separate civil actions currently pending before this same Court. Accordingly, subparagraph (b)(3) prohibits M. Brandon Faulkner and law firm of Garcia, Artigliere, Medby & Faulkner from representing Plaintiffs herein.

A review of the Supreme Court commentary to the rule clarifies that representation of Plaintiffs herein and Judith Branham by Attorney M. Brandon Faulkner and law firm of Garcia, Artigliere, Medby & Faulkner is a "prohibited representation":

> Prohibited Representations
>
> (14) Ordinarily, clients may consent to representation notwithstanding a conflict. However, as indicated in paragraph (b), some conflicts are nonconsentable, meaning that the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent. When the lawyer is representing more than one client, the question of consentability must be resolved as to each client. . .
>
> (17) Paragraph (b)(3) describes conflicts that are nonconsentable because of the institutional interest in vigorous development of each client's position when the clients are aligned directly against each other in the same litigation or other proceeding before a tribunal. . .

MOT : 000004 of 000006

4222E894-D1E2-40D8-90DA-DC3888ED6EE3 : 000005 of 000009

*Id*.

In deciding disqualification questions, trial courts should apply the standard that is currently in the Rules of Professional Conduct, which at this time requires a showing of an actual conflict of interest. *Marcum v. Scorsone*, 457 S.W.3d 710, 718 (2015). To resolve that question, the trial court must hold an evidentiary hearing. *Id*. Before disqualifying counsel, the court must find that an actual conflict exists, and state on the record what that conflict is. *Id*.

Here, it is apparent that a concurrent conflict of interest exists in counsel's representation of Plaintiffs in the matter against Judith Branham, while concurrently representing Judith Branham in pending litigation before this Court. It is inescapable that the representation of Plaintiffs herein in an action against Judith Branham, who is represented by the same counsel, is representation by one client that is directly adverse to another client. Representation in this circumstance is directly prohibited by Supreme Court Rule 3.130 (1.7). Additionally, this conflict is "nonconsentable" under subparagraph (b)(3) of the rule.

In addressing a similar factual situation, and ordering disqualification of counsel, the Second Circuit Court of Appeals noted as follows:

> A lawyer's duty to his client is that of a fiduciary or trustee. *Hafter v. Farkas*, 498 F.2d 587, 589 (2d Cir. 1974); *Spector v. Mermelstein*, 361 F.Supp. 30, 38 (S.D.N.Y.1972), *modified on other grnds.*, 485 F.2d 474 (2d Cir. 1973); Wise, Legal Ethics 256 (2d ed.). When Cinerama retained Mr. Fleischmann as its attorney in the Western District litigation, it was entitled to feel that at least until that litigation was at an end, it had his undivided loyalty as its advocate and champion, *Grievance Committee v. Rottner*, 152 Conn. 59, 65, 203 A.2d 82 (1964), and could rely upon his 'undivided allegiance and faithful, devoted service.' *Von Moltke v. Gillies*, 332 U.S. 708, 725, 68 S.Ct. 316, 324, 92 L.Ed. 309 (1948). Because 'no man can serve two masters', Matthew 6:24; *In re W. T. Byrns, Inc.*, 260 F.Supp. 442, 445 (E.D.Va.1966); *Woods v. City Nat'l Bank and Trust Co.*, 312 U.S. 262, 268, 61 S.Ct. 493, 85 L.Ed. 820 (1941), it had the right to expect also that he would 'accept no retainer to do anything that might be adverse to his client's interests.' *Loew v. Gillespie*, 90 Misc. 616, 619, 153 N.Y.S. 830, 832 (1915), *aff'd*, 173 App.Div. 889, 157 N.Y.S. 1133 (1st Dep't 1916). Needless to say, when Mr. Fleischmann and his New York City partners

MOT : 000005 of 000006

4222E894-D1E2-40D8-90DA-DC3888ED6EE3 : 000006 of 000009

> undertook to represent Cinema 5, Ltd., they owed it the same fiduciary duty of undivided loyalty and allegiance.

*Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2nd Cir. 1976).

**CONCLUSION**

In summary, Defendants request this Court to enter an Order scheduling an evidentiary hearing in accordance with *Marcum v. Scorsone*, 457 S.W.3d 710 (2015), and upon a finding that an actual conflict of interest exists, thereafter enter an Order disqualifying Attorney M. Brandon Faulkner and law firm of Garcia, Artigliere, Medby & Faulkner from representing Plaintiffs in this matter.

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 16th day of February, 2017, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Suite 108
Lexington, KY 40507

*/s/ Matthew C. Cocanougher*
ATTORNEY FOR DEFENDANTS

MOT : 000006 of 000006

4222E894-D1E2-40D8-90DA-DC3888ED6EE3 : 000007 of 000009

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the ESTATE of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

---

**ORDER GRANTING MOTION TO DISQUALIFY**

---

Upon Motion of Defendants, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View"), and Life Care Centers of America, Inc., to Disqualify Counsel for Plaintiffs in the present matter; the Court having reviewed the record and being otherwise sufficiently advised;

**IT IS HEREBY ORDERED THAT:**

TD : 000001 of 000003

1. An actual conflict of interest exists in the representation of Plaintiffs by M. Brandon Faulkner, Esq. and the law firm of Garcia, Artigliere, Medby & Faulkner in this matter against Defendant, Judith Branham, and the concurrent representation of Judith Branham by M. Brandon Faulkner, Esq. and the law firm of Garcia, Artigliere, Medby & Faulkner in the in the matters of *Linda Bentley, administrator of the Estate of Barbara Kendrick v. LP Pikeville, LLC d/b/a Signature HealthCARE of Pikeville, et al.*, Pike Circuit Court, Second Division, Case No. 16-CI-01122 and *Darlene Atkinson, as Emergency Guardian for Marine Hamilton v. LP Pikeville, LLC d/b/a Signature HealthCARE of Pikeville, et al.*, Pike Circuit Court, Second Division, Case No. 16-CI-01156, all of which are currently pending before this Court;

2. The Court finds that disqualification of M. Brandon Faulkner, Esq. and the law firm of Garcia, Artigliere, Medby & Faulkner is required under Supreme Court Rule 3.130 (1.7) and applicable law;

3. M. Brandon Faulkner, Esq. and the law firm of Garcia, Artigliere, Medby & Faulkner are hereby disqualified as counsel for Plaintiffs in this Action.

So ordered, this the _____ day of __________________, 2017.

______________________________
JUDGE, PIKE CIRCUIT COURT
SECOND DIVISION

4222E894-D1E2-40D8-90DA-DC3888ED6EE3 : 000008 of 000009

TD : 000002 of 000003

4222E894-D1E2-40D8-90DA-DC3888ED6EE3 : 000009 of 000009

**Drafted and tendered by:**

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059- facsimile
ATTORNEY FOR DEFENDANTS

**CLERK'S CERTIFICATE OF SERVICE**

I hereby certify that on the ___ of _____________, 2017, I mailed a copy of the foregoing via regular mail to the following:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 E. Main St., Ste. 108
Lexington, KY 40507

Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509

_______________________________
PIKE CIRCUIT CLERK

TD : 000003 of 000003

19F90638-BA9F-4393-B995-F9F1A403D82F : 000001 of 000004

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the
ESTATE of HELEN RAY, deceased,
and on behalf of the Wrongful Death
Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a
MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

---

**DEFENDANTS' RESPONSE TO MOTIONS TO COMPEL
CR 30.02 DEPOSITION AND FOR SANCTIONS**

---

Defendants, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View"), and Life Care Centers of America, Inc., hereby respond to Plaintiffs' Motion to Compel 30.02 Deposition and for Sanctions.

This is a medical malpractice action in which the Plaintiffs allege that Defendants breached nursing standards of care that caused certain alleged injuries and death to Helen Ray.

19F90638-BA9F-4393-B995-F9F1A403D82F : 000002 of 000004

Ms. Ray was a resident at the Elkhorn City facility from July 16, 2008 to June 19, 2014. After her nearly six year residency at Mountain View, Ms. Ray passed away on June 19, 2014. Plaintiffs filed their Complaint in this Court on August 4, 2015, alleging negligence, medical negligence, corporate negligence, violations of long-term care resident's rights, and wrongful death against various "corporate" defendants, and also alleging negligence and wrongful death against "administrator" defendants, Judith Branham and Misty Ward[1].

On or about December 16, 2016 and December 28, 2016, Attorney M. Brandon Faulkner and law firm of Garcia, Artigliere, Medby & Faulkner, entered their appearance and filed Answers of behalf of Judith Branham (a Defendant in the present action) in the cases of *Linda Bentley, administrator of the Estate of Barbara Kendrick v. LP Pikeville, LLC d/b/a Signature HealthCARE of Pikeville, et al.*, Pike Circuit Court, Second Division, Case No. 16-CI-01122 and *Darlene Atkinson, as Emergency Guardian for Marine Hamilton v. LP Pikeville, LLC d/b/a Signature HealthCARE of Pikeville, et al.*, Pike Circuit Court, Second Division, Case No. 16-CI-01156, respectively.

Both the claims in the present action against Judith Branham, as well as the claims in the *Barbara Kendrick* and *Marine Hamilton* matters concern allegations that Judith Branham was negligent in performing her duties as administrator of a nursing home. Under Supreme Court Rule 3.130 (1.7), Attorney M. Brandon Faulkner and law firm of Garcia, Artigliere, Medby & Faulkner are prohibited from further representation of Plaintiffs in this matter. Defendants have filed a separate Motion to Disqualify Plaintiffs' Counsel, which Motion needs to be ruled upon

[1] Discovery has subsequently revealed that Misty Ward was not an Administrator at Mountain View Health Care Center. The basis for her alleged liability and Plaintiff's Complaint against Misty Ward is unknown.

19F90638-BA9F-4393-B995-F9F1A403D82F : 000003 of 000004

before this Court can enter any further substantive Orders regarding the progress of this case to trial or otherwise concerning substantive merits and defenses to the claims at issue here. Because a conflict of interest could affect the fairness and impartiality of the proceeding, or the perception of fairness and impartiality, a plausible claim of conflict must be resolved before allegedly conflicted counsel or the court takes further action in the case. *Grimes v. District of Columbia*, 794 F.3d 83, 86 (DC Cir. 2015). Resolving asserted conflicts before deciding substantive motions assures that no conflict taints the proceeding, impairs the public's confidence, or infects any substantive motion prepared by or under the auspices of conflicted counsel. *Id*. at 90.

In summary, Defendants have requested by a properly supported Motion to Disqualify Plaintiffs' counsel that this Court to enter an Order scheduling an evidentiary hearing in accordance with *Marcum v. Scorsone*, 457 S.W.3d 710 (2015), and upon a finding that an actual conflict of interest exists, thereafter enter an Order disqualifying Attorney M. Brandon Faulkner and law firm of Garcia, Artigliere, Medby & Faulkner from representing Plaintiffs in this matter. Until that Motion is decided, this Court should refrain from entering any further substantive Orders regarding the progress of this case to trial or otherwise concerning substantive merits and defenses to the claims at issue here. See *Grimes v. District of Columbia*, 794 F.3d 83 (DC Cir. 2015).

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 - facsimile

19F90638-BA9F-4393-B995-F9F1A403D82F : 000004 of 000004

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 16th day of February, 2017, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Ste. 108
Lexington, KY 40507

*/s/ Matthew C. Cocanougher*
ATTORNEY FOR DEFENDANTS

D816D65D-B2AC-4EEC-8232-303CE96D0080 : 000001 of 000004

*ELECTRONICALLY FILED*

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
CASE NO.: 15-CI-778
SECOND DIVISION

JENNIFER BINGHAM, as Executrix of the
ESTATE of HELEN RAY, deceased,
and on behalf of the Wrongful Death
Beneficiaries of HELEN RAY, deceased, PLAINTIFFS

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a
MOUNTAIN VIEW HEALTH CARE CENTER;
KENTUCKY MEDICAL INVESTORS, LLC (GA);
KENTUCKY MEDICAL INVESTORS, LLC;
KENTUCKY MEDICAL INVESTORS, LTD.;
SAK JR., LLC;
SBK, LLC;
LIFE CARE CENTERS OF AMERICA, INC.;
MISTY WARD in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER;
JUDITH BRANHAM in her capacity as ADMINISTRATOR of
MOUNTAIN VIEW HEALTH CARE CENTER; and
JOHN DOES 1 through 5, UNKNOWN DEFENDANTS, DEFENDANTS

---

**DEFENDANTS' RESPONSE TO MOTION
FOR PRETRIAL CONFERENCE AND TRIAL DATE**

---

Defendants, Mountain View Health Care Center, an assumed name of Kentucky Medical Investors, LLC (GA) (hereinafter "Mountain View"), and Life Care Centers of America, Inc., hereby respond to Plaintiffs' Motion for Pretrial Conference and Trial Date.

This is a medical malpractice action in which the Plaintiffs allege that Defendants breached nursing standards of care that caused certain alleged injuries and death to Helen Ray.

RES : 000001 of 000004

Ms. Ray was a resident at the Elkhorn City facility from July 16, 2008 to June 19, 2014. After her nearly six year residency at Mountain View, Ms. Ray passed away on June 19, 2014. Plaintiffs filed their Complaint in this Court on August 4, 2015, alleging negligence, medical negligence, corporate negligence, violations of long-term care resident's rights, and wrongful death against various "corporate" defendants, and also alleging negligence and wrongful death against "administrator" defendants, Judith Branham and Misty Ward[1].

On or about December 16, 2016 and December 28, 2016, Attorney M. Brandon Faulkner and law firm of Garcia, Artigliere, Medby & Faulkner, entered their appearance and filed Answers of behalf of Judith Branham (a Defendant in the present action) in the cases of *Linda Bentley, administrator of the Estate of Barbara Kendrick v. LP Pikeville, LLC d/b/a Signature HealthCARE of Pikeville, et al.*, Pike Circuit Court, Second Division, Case No. 16-CI-01122 and *Darlene Atkinson, as Emergency Guardian for Marine Hamilton v. LP Pikeville, LLC d/b/a Signature HealthCARE of Pikeville, et al.*, Pike Circuit Court, Second Division, Case No. 16-CI-01156, respectively.

Both the claims in the present action against Judith Branham, as well as the claims in the *Barbara Kendrick* and *Marine Hamilton* matters concern allegations that Judith Branham was negligent in performing her duties as administrator of a nursing home. Under Supreme Court Rule 3.130 (1.7), Attorney M. Brandon Faulkner and law firm of Garcia, Artigliere, Medby & Faulkner are prohibited from further representation of Plaintiffs in this matter. Defendants have filed a separate Motion to Disqualify Plaintiffs' Counsel, which Motion needs to be ruled upon

[1] Discovery has subsequently revealed that Misty Ward was not an Administrator at Mountain View Health Care Center. The basis for her alleged liability and Plaintiff's Complaint against Misty Ward is unknown.

D816D65D-B2AC-4EEC-8232-303CE96D0080 : 000002 of 000004
RES : 000002 of 000004

D816D65D-B2AC-4EEC-8232-303CE96D0080 : 000003 of 000004

before this Court can enter any further substantive Orders regarding the progress of this case to trial or otherwise concerning substantive merits and defenses to the claims at issue here. Because a conflict of interest could affect the fairness and impartiality of the proceeding, or the perception of fairness and impartiality, a plausible claim of conflict must be resolved before allegedly conflicted counsel or the court takes further action in the case. *Grimes v. District of Columbia*, 794 F.3d 83, 86 (DC Cir. 2015). Resolving asserted conflicts before deciding substantive motions assures that no conflict taints the proceeding, impairs the public's confidence, or infects any substantive motion prepared by or under the auspices of conflicted counsel. *Id*. at 90.

In summary, Defendants have requested by a properly supported Motion to Disqualify Plaintiffs' counsel that this Court to enter an Order scheduling an evidentiary hearing in accordance with *Marcum v. Scorsone*, 457 S.W.3d 710 (2015), and upon a finding that an actual conflict of interest exists, thereafter enter an Order disqualifying Attorney M. Brandon Faulkner and law firm of Garcia, Artigliere, Medby & Faulkner from representing Plaintiffs in this matter. Until that Motion is decided, this Court should refrain from entering any further substantive Orders regarding the progress of this case to trial or otherwise concerning substantive merits and defenses to the claims at issue here. See *Grimes v. District of Columbia*, 794 F.3d 83 (DC Cir. 2015).

QUINTAIROS, PRIETO, WOOD & BOYER, P.A.

*/s/ Matthew C. Cocanougher*
Donald L. Miller, II, Esq.
J. Peter Cassidy, III, Esq.
Matthew C. Cocanougher, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 - facsimile

RES : 000003 of 000004

D816D65D-B2AC-4EEC-8232-303CE96D0080 : 000004 of 000004

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served, this the 16th day of February, 2017, upon the following, via electronic service, pursuant to the Kentucky Court of Justice's eFiling Rules, to:

Stephen M. Garcia, Esq.
M. Brandon Faulkner, Esq.
Perry L. Greer, III, Esq.
Garcia, Artigliere & Medby
444 East Main St., Ste. 108
Lexington, KY 40507

*/s/ Matthew C. Cocanougher*
ATTORNEY FOR DEFENDANTS

RES : 000004 of 000004

COMMONWEALTH OF KENTUCKY
PIKE CIRCUIT COURT
DIVISION NO. II

ENTERED ANNA PINSON SPEARS FEB 17 2017 PIKE CIRCUIT/DISTRICT COURT BY ___ D.C.

ACTION NO. 15-CI-00778

ESTATE OF HELEN RAY, ET AL PLAINTIFFS

V. ORDER

KENTUCKY MEDICAL INVESTORS, L.L.C. (GA), ET AL DEFENDANTS

************

This cause is assigned for hearing on the 10th day of March, 2017, at the hour of 2:00 p.m. on the Defendants' Motion to Disqualify the Plaintiffs' Counsel. If that Motion is denied, the parties shall be prepared to assign a jury trial date for this Action and argue the Plaintiffs' Motion to Compel the deposition of a corporate representative of Kentucky Medical Investors, pursuant to CR 30.02(6) & for Sanctions.

ENTERED this 17th day of February, 2017.

HON. STEVEN D. COMBS
PIKE CIRCUIT COURT
DIVISION NO. II

CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Order was mailed to the parties and/or their attorneys of record, this the 17 day of Feb, 2017.

ANNA PINSON SPEARS, CLERK
PIKE CIRCUIT COURT

BY: ______________ D.C.



592F856B-F0B0-4B49-A47C-A9DB2587BA79 : 000001 of 000004

**COMMONWEALTH OF KENTUCKY**
**PIKE COUNTY CIRCUIT COURT**
**CIVIL ACTION NO.: 15-CI-778**

***ELECTRONICALLY FILED***

JENNIFER BINGHAM, as Executrix of the ESTATE of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased,

PLAINTIFF

v.

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER, et al.

DEFENDANTS

*** *** ***

**NOTICE OF VOLUNTARY DISMISSAL OF JUDITH BRANHAM, OR IN THE ALTERNATIVE, MOTION TO DISMISS JUDITH BRANHAM**

Comes now the Plaintiff, Jennifer Bingham, as Executrix of the Estate of Helen Ray, by counsel, pursuant to CR 41.01(1), and hereby gives notice of the voluntary dismissal of all claims against Defendant Judith Branham, in her capacity as Administrator of Mountain View Health Care Center. Plaintiff's claims against any and all remaining Defendants are not impacted by this Notice of Voluntary Dismissal and remain pending before the Court.

Alternatively, Plaintiff moves the Court, pursuant to CR 41.02, to dismiss all claims against Defendant Judith Branham, in her capacity as Administrator of Mountain View Health Care Center.

NO : 000001 of 000002

*Respectfully Submitted,*

**GARCIA, ARTIGLIERE, MEDBY & FAULKNER**

/s/ M. Brandon Faulkner
Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III
444 East Main Street, Suite 108
Lexington, Kentucky 40507
Telephone:(502) 584-3805
Facsimile:(502) 584-3811
***Attorneys for Plaintiff***

592F856B-F0B0-4B49-A47C-A9DB2587BA79 : 000002 of 000004

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing was electronically filed and served via U.S. Mail, postage prepaid, on this 27th day of February, 2017, upon the following:

J. Peter Cassidy, III, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
***Counsel for Defendants***

/s/ M. Brandon Faulkner
***Counsel for Plaintiff***

NO : 000002 of 000002

**COMMONWEALTH OF KENTUCKY**
**PIKE COUNTY CIRCUIT COURT**
**CIVIL ACTION NO.: 15-CI-778**

***ELECTRONICALLY FILED***

JENNIFER BINGHAM, as Executrix of the ESTATE of HELEN RAY, deceased, and on behalf of the Wrongful Death Beneficiaries of HELEN RAY, deceased,

PLAINTIFF

v.

**NOTICE OF CHANGE IN FIRM NAME**

KENTUCKY MEDICAL INVESTORS, LLC (GA) d/b/a MOUNTAIN VIEW HEALTH CARE CENTER, et al.

DEFENDANTS

*** *** ***

The undersigned counsel for the Plaintiff hereby gives notice that the law firm of Garcia, Artigliere & Medby shall now be known as and operated under the name Garcia, Artigliere, Medby & Faulkner. Accordingly, effective immediately, please direct all correspondence, pleadings, and other matters regarding the above-referenced case to the following:

Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III
GARCIA, ARTIGLIERE, MEDBY & FAULKNER
444 East Main Street, Suite 108
Lexington, KY 40507
Telephone: 502.584.3805
Facsimile: 502.584.3811

592F856B-F0B0-4B49-A47C-A9DB2587BA79 : 000003 of 000004

NO : 000001 of 000002

*Respectfully Submitted,*

**GARCIA, ARTIGLIERE, MEDBY & FAULKNER**

/s/ M. Brandon Faulkner
Stephen M. Garcia
M. Brandon Faulkner
Perry L. Greer, III
444 East Main Street, Suite 108
Lexington, Kentucky 40507
Telephone:(502) 584-3805
Facsimile:(502) 584-3811
***Attorneys for Plaintiff***

592F856B-F0B0-4B49-A47C-A9DB2587BA79 : 000004 of 000004

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing was electronically filed and served via U.S. Mail, postage prepaid, on this 27th day of February, 2017, upon the following:

J. Peter Cassidy, III, Esq.
2452 Sir Barton Way, Ste. 300
Lexington, KY 40509
859-226-0057
859-226-0059 – facsimile
***Counsel for Defendants***

/s/ M. Brandon Faulkner
***Counsel for Plaintiff***

NO : 000002 of 000002